SHABNAM LOTFI* (WI SBN 1090020)         MARK D. ROSENBAUM (CA SBN 59940)
VERONICA SUSTIC* (WI SBN 1093862)        JUDY LONDON (CA SBN 149431)
LOTFI LEGAL, LLC                          PUBLIC COUNSEL
22 East Mifflin Street, Suite 302         610 South Ardmore Avenue
Madison, WI 53703                         Los Angeles, CA 90005
Telephone: (608) 259-6226                 Telephone: (213) 385-2977
Facsimile: (208) 977-9974                 Facsimile: (213) 385-9089
shabnam@lofilegal.com                     mrosenbaum@publiccounsel.org
veronica@lotfilegal.com                   jlondon@publiccounsel.org

LUIS CORTES ROMERO (CA SBN 310852)
ALMA DAVID (CA SBN 257676)
IMMIGRANT ADVOCACY & LITIGATION CENTER, PLLC
19309 68th Avenue S., Suite R102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591
lcortes@ia-lc.com
adavid@ia-lc.com

*Pro hac vice forthcoming

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Soheil Vazehrad;  Atefehossadat Motavaliabyazani; Behnam Babalou; Hoda Mehrabi Mohammad Abadi; Mahdi Afshar Arjmand; Ehsan Heidaryan; Najmeh Maharlouei; Nastaran Hajiheydari; Afrooz Kharazmi; Afshan Alamshah Zadeh; Bamshad Azizi; Roghayeh Azizikoutenaei; Hojjatollah Azizikoutenaei; Clyde Jean Tedrick II; Mitra Farnoodian-Tedrick; Farajollah Farnoudian; Farangis Emami; Tannaz Toloubeydokhti; Fathollah Tolou Beydokhti; Behnaz Malekghaeini; Maral Charkhtab Tabrizi; Zahra Rouzbehani; Bahram Charkhtab Tabrizi; Maryam Mozafari; Nahid Golestanian; Mohammad Mehdi Mozaffary<br><br>                    Plaintiffs, | Civil Case No.<br><br>**COMPLAINT FOR WRIT OF MANDAMUS AND INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**CLASS ACTION**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

COMPLAINT - 1

-against-

DONALD J. TRUMP, as President of the United
States of America; JEFFERSON BEAUREGARD
SESSIONS III, in his official capacity as Attorney
General of the United States; U.S. DEPARTMENT
OF JUSTICE; KIRSTJEN NIELSEN, in her official
capacity as Secretary of Homeland Security; U.S.
DEPARTMENT OF HOMELAND SECURITY;
REX W. TILLERSON, in his official capacity as
Secretary of State; U.S. DEPARTMENT OF STATE;
DAN COATS, in his official capacity as
Director of National Intelligence; OFFICE OF THE
DIRECTOR OF NATIONAL INTELLIGENCE

Defendants.

## INTRODUCTION

1.     Mania Pour Aghdasi is a U.S. citizen residing in California. In September 2016, Ms. Aghdasi's brother passed away after battling brain cancer in the house in which her father lived in Iran. Ms. Aghdasi is her father's last remaining family member. She assisted her father, a 78-year-old Iranian national, in applying for a visitor's visa so they could be together in their grief. During the long 14 months that followed, Ms. Aghdasi repeatedly contacted the U.S. Embassy, her congressional representatives, the State Department, the White House—anyone who would listen—to get her father's visa approved as his health deteriorated. Ms. Aghdasi's father died on December 24, 2017, waiting for his visa to be issued. Two weeks later, his visa application was denied pursuant to the Presidential Proclamation that established the latest travel ban. At no point did anyone consider Ms. Aghdasi's father for a waiver from the travel ban. Nonetheless his visa was denied. Ms. Aghdasi's story is emblematic of the destruction and tragedy that has been wrought by the Proclamation's reckless implementation, but her experience is sadly not uncommon.

COMPLAINT - 2

2.     Plaintiffs and proposed class members are American citizens, U.S. lawful permanent residents, and foreign nationals who have approved visa petitions, or who have assisted family members with filing for U.S. visas, and who seek entry to the United States to be reunited with their American families or fulfill significant U.S. business relations.

3.     In 2017, President Donald J. Trump attempted to institute three travel bans via executive order and presidential proclamation. Each ban applied mostly to Muslim-majority countries. The first two versions were struck down by federal district and appellate courts. The constitutionality of the third travel ban is currently being litigated at the U.S. Supreme Court. On December 4, 2017, the Court issued a decision allowing the third travel ban to be implemented while the case was heard on its merits.

4.     On December 8, 2017, Defendants began implementing the third version of the travel ban in a way that violates the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and Plaintiffs' right to due process under the Fifth Amendment to the U.S. Constitution. The Presidential Proclamation ("Proclamation") that established this ban specifically states that "case-by-case waivers" may be granted by consular officers under a non-exclusive list of circumstances for visa applicants from the banned countries. Nonetheless, in direct contravention of the terms of the Proclamation, Defendants have refused to consider such waivers and have instead issued blanket denials of visas, regardless of personal circumstances and without giving applicants the opportunity to argue their cases, thereby violating the APA, the INA, and Plaintiffs' right to Fifth Amendment due process.

5.     These claims are backed up by numbers published by Defendants themselves: State Department has revealed that, as of March 6, 2018, only about a hundred waivers had been granted to visa applicants from the banned countries, a rejection rate of more than 98%.

COMPLAINT - 3

6.      Defendants' unlawful and discriminatory actions have shattered Plaintiffs' lives and their prospects for being reunited with their loved ones as well as the lives and reunification prospects of the scores of similarly situated families and individuals they seek to represent through this action. They seek this Court's intervention to cease visa denials due to the Proclamation. Such intervention is needed to prevent ongoing and future harm to such applicants and to protect the integrity of the U.S. visa process.

7.      At issue in this suit is Section 3 of the Proclamation, which allows for case-by-case waivers from the Proclamation for visa applicants from the countries banned by the Proclamation.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

8.      Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (Mandamus and Venue Act of 1962), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 220 (Declaratory Judgment Act). The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702. This Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1651, and 28 U.S.C. § 2201–2202. A claim for attorney's fees will be brought pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412(d).

9.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States acting in their official capacities and agencies of the United States, many Plaintiffs reside in this judicial district, and no real property is involved in this action.  Plaintiffs have exhausted all administrative remedies.

10.     Intradistrict assignment is proper in the San Francisco Division because a substantial part of the events or omissions that give rise to the claim occurred in San Francisco and Napa Counties.  Civil L. R. 3-2(c), (d).

**PARTIES**

11.     Plaintiff Soheil Vazehrad is a U.S. citizen, residing in Napa, California.

12.     Plaintiff Atefehossadat Motavaliabyazani is an Iranian national residing in Iran.

13.     Ms. Motavaliabyazani has a pending nonimmigrant visa based on Mr. Vazehrad's approved K1 fiancée visa petition.

14.     Plaintiff Mr. Behnam Babalou is an Iranian national residing in Iran who invested $500,000.00 in CMB Infrastructure Investment Group XIV, L.P., located in San Bernardino, California.

15.     Plaintiff Mr. Behnam Babalou has an approved immigrant visa petition based on his investments and significant business ties in CMB Infrastructure Investment Group XIV, L.P.

16.     Plaintiff Hoda Mehrabi Mohammad Abadi is an Iranian national residing in Iran who and has an approved immigrant visa petition based on her $500,000.00 investment in Kimpton Hotels & Restaurants in Milwaukee, Wisconsin.

17.     Plaintiff Dr. Mahdi Afshar Arjmand is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on his extensive record of achievements as an alien with extraordinary ability.

18.     Plaintiff Dr. Ehsan Heidaryan is an Iranian national, currently residing in Brazil, who has an approved immigrant visa petition based on his extensive record of achievements as an alien with extraordinary ability.

COMPLAINT - 5

19.     Plaintiff Najmeh Maharlouei is an Iranian national currently residing in Shiraz, Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the U.S. national interest.

20.     Plaintiff Nastaran Hajiheydari is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the U.S. national interest.

21.     Plaintiff Afrooz Kharazmi is a U.S. citizen residing in Loveland, Ohio.

22.     Plaintiff Afshan Alamshah Zadeh is an Iranian national residing in Iran.

23.     Ms. Alamshah Zadeh has a pending immigrant visa based on Ms. Kharazmi's approved family-based immigrant visa petition for her.

24.     Plaintiff Bamshad Azizi is a U.S. lawful permanent resident residing in San Jose, California.

25.     Plaintiffs Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei are Iranian nationals residing in Iran.

26.     Mr. Bamshad Azizi assisted his parents, Ms. Azizikoutenaei and Mr. Azizikoutenaei, with filing for tourist visas to visit him in San Jose, California.

27.     Plaintiff Clyde Jean Tedrick II is an American citizen residing in Rockville, Maryland.

28.     Plaintiff Mitra Farnoodian-Tedrick is a U.S. lawful permanent resident residing in Rockville, Maryland.

29.     Plaintiffs Farajollah Farnoudian and Farangis Emami are Iranian nationals currently residing in Iran.

30.     Mr. Tedrick and Ms. Farnoodian-Tedrick assisted Mr. Farnoudian and Ms. Emami with applying for tourist visas.

COMPLAINT - 6

31. Plaintiff Tannaz Toloubeydokhti is a U.S. citizen who resides in San Diego, California.

32. Plaintiffs Fatollah Tolou Beydokhti and Behnaz Malekghaeini are Iranian nationals residing in Iran.

33. Mr. Beydokhti and Ms. Malekghaeini have pending immigrant visas based on Ms. Toloubeydokhti's approved family-based immigrant visa petitions.

34. Plaintiff Maral Charkhtab Tabrizi is a U.S. lawful permanent resident living in Tempe, Arizona, who is married to a U.S. citizen and has just given birth to her first child.

35. Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi are Iranian nationals residing in Iran.

36. Ms. Tabrizi assisted her parents, Ms. Rouzbehani and Mr. Charkhtab Tabrizi, with filing for tourist visas.

37. Plaintiff Maryam Mozafari is an U.S. lawful permanent resident residing in San Francisco, California.

38. Plaintiffs Nahid Golestanian and Mohammad Mehdi Mozaffary are Iranian nationals residing in Iran.

39. Ms. Mozafari assisted her parents, Mrs. Golestanian and Mr. Mozaffary with filing for tourist visas.

40. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. President Trump issued the Proclamation challenged in this suit.

41. Defendant Jefferson Beauregard Sessions III is the U.S. Attorney General and is sued in his official capacity. Attorney General Sessions is responsible for overseeing the activities of the Department of Justice ("DOJ") with respect to the implementation and enforcement of the Proclamation.

COMPLAINT - 7

42.     Defendant DOJ is a cabinet-level department of the U.S. federal government. The Proclamation assigns DOJ a variety of responsibilities regarding its implementation and enforcement.

43.     Defendant Kirstjen Nielsen is the Secretary of Homeland Security and is sued in her official capacity. Secretary Nielsen is responsible for administration of the INA by the U.S. Department of Homeland Security ("DHS") and for overseeing enforcement and implementation of the Proclamation by all DHS staff.

44.     Defendant DHS is a cabinet-level department of the U.S. federal government. Its components include U.S. Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE"). USCIS's responsibilities include adjudicating requests for immigration benefits for individuals located within the United States. CBP's responsibilities include inspecting and admitting immigrants and nonimmigrants arriving with U.S. visas at international points of entry, including airports and land borders. ICE's responsibilities include enforcing federal immigration law within the interior of the United States.  The Proclamation assigns DHS a variety of responsibilities regarding its enforcement.

45.     Defendant Rex W. Tillerson is the Secretary of State and is sued in his official capacity. Secretary Tillerson is responsible for overseeing enforcement and implementation of the Proclamation by all U.S. Department of State ("State Department") staff.

46.     Defendant State Department is a cabinet-level department of the U.S. federal government responsible for the issuance of immigrant and nonimmigrant visas abroad. The Presidential Proclamation assigns the State Department a variety of responsibilities regarding its implementation and enforcement.

COMPLAINT - 8

47.     Defendant Dan Coats is the Director of National Intelligence and is sued in his official capacity. Director Coats is responsible for overseeing enforcement and implementation of the Proclamation by all Office of the Director of National Intelligence ("ODNI") staff.

48.     Defendant ODNI is an independent agency of the U.S. federal government which has specific responsibilities and obligations with respect to implementation of the Proclamation.

## FACTUAL ALLEGATIONS

### I.    Background

49.     On September 24, 2017, President Trump signed the third version of the travel ban, Presidential Proclamation 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats." Presidential Proclamation 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017). (Exhibit A) The Proclamation provides for discretionary case-by-case waivers from a now-indefinite travel ban on nationals of the six Muslim-majority countries.

50.     Affected states and individuals immediately brought suit against the Proclamation in federal district court in Hawaii and Maryland, seeking to block implementation of the travel ban. On October 17, 2017, the Hawaii court granted a nationwide temporary restraining order and, the following day, the Maryland court issued a nationwide preliminary injunction.

51.     The government appealed these decisions to the Ninth and Fourth Circuit Courts of Appeal. It also requested the U.S. Supreme Court to issue a stay of the Hawaii and Maryland courts' decisions blocking the Proclamation's implementation pending disposition of its appeals of those decisions in the circuit courts. The U.S. Supreme Court granted that request on

COMPLAINT - 9

Monday, December 4, 2017, thereby allowing the Proclamation's travel ban to take full effect. Oral arguments in the circuit courts proceeded.

52.    On Friday, December 22, 2017, the Ninth Circuit affirmed the Hawaii court's preliminary injunction order but stayed its decision pending review by the U.S. Supreme Court. On February 14, 2018, the Fourth Circuit affirmed the Maryland court's preliminary injunction order, but also stayed its decision pending review by the U.S. Supreme Court.

53.    In the midst of the legal challenges to the Proclamation, the State Department began implementing the travel ban. Since the U.S. Supreme Court allowed full implementation of the latest iteration of the ban, officials at consulates and embassies in the banned countries have engaged in a pattern of indiscriminately denying immigrant and non-immigrant visas to applicants from the banned countries.

54.    Indeed, in a response to an inquiry by two U.S. senators, the State Department has revealed that, as of January 8, 2018, only two waivers were granted to applicants of the banned countries out of a total of 6,555 applicants who were eligible to be considered for waivers. Letter from Mary K. Waters, U.S. Department of State, to Chris Van Hollen, U.S. Senator (Feb. 22, 2018), http://fingfx.thomsonreuters.com/gfx/reuterscom/1/60/60/letter.pdf (Exhibit B) As of March 6, 2018, the State Department had apparently issued 100 more waivers, meaning that consular officers have rejected more than 98% of visa applicants. Yaganeh Torbati & Mica Rosenberg, *Exclusive: Visa Waivers Rarely Granted Under Trump's Latest U.S. Travel Ban*, Reuters (Mar. 6, 2018), https://www.reuters.com/article/us-usa-immigration-travelban-exclusive/exclusive-visa-waivers-rarely-granted-under-trumps-latest-u-s-travel-ban-data-idUSKCN1GI2DW. (Exhibit C)

55.     The two most recent versions of the travel ban specifically provided for "case-by-case waivers" to be granted by consular officers under a non-exclusive list of circumstances for visa applicants from the banned countries. Nonetheless, in direct contravention of the terms of the Proclamation, Defendants have refused to consider such waivers and have instead issued blanket denials of visas, regardless of personal circumstances and without giving applicants the opportunity to argue their cases. Thus, irrespective of an applicant's personal circumstances or bona fide relationship to the United States, the government has found a way to circumvent both the courts and its own instruction and fully implement the Muslim travel ban.

56.     A mere three days after the U.S. Supreme Court's lifting of the stays preventing implementation of the travel ban, the State Department, without taking time to develop standards or protocols, recklessly and irresponsibly executed a ban that greatly harmed, and continues to harm, more than 150 million visa applicants worldwide. Visa applicants contacted embassies and consulates abroad to ask for clarity but were given the runaround. Attorneys contacted the State Department for clarification but received inadequate and inconsistent responses. The problem continues. As of the date of filing of this complaint, the State Department also lacks protocols for considering waiver applications for individuals whose cases were pending administrative processing[1] at the time the ban went into effect and for visa applicants whose visas were approved prior to implementation of the ban.

---

[1] Administrative processing is a period after a visa interview during which applicants undergo additional screening outside of "normal" visa processing. Maggio & Kattar & The Pennsylvania State University Law School's Center for Immigrants' Rights, Administrative Processing FAQ, *1, https://pennstatelaw.psu.edu/sites/default/files/documents/pdfs/Immigrants/Administrative-Processing-FAQ.pdf (accessed Jan. 21, 2018). "Before issuing a visa, consular officers review different databases to determine if information exists that may impact individual eligibility for a

COMPLAINT - 11

57.     The process remains so opaque that, in addition to the formal request for information from U.S. senators, civil rights organizations have filed a FOIA request seeking documents from the State Department related to the travel ban waiver process. (Exhibit D) As of the date of filing, Defendants have not yet complied with the request.

**II.     Relevant Law**

58.     Section 3 of the Proclamation contains a subsection entitled "Waivers," which states:

> Notwithstanding the suspensions of and limitations on entry set forth in section 2 of this proclamation, a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited if such foreign nationals demonstrate that waivers would be appropriate and consistent with subsections (i) through (iv) of this subsection [laying out waiver standards].

82 Fed. Reg. at 45167.

59.     The Proclamation explains that a waiver may be granted if, in a consular officer's or CBP's discretion, a foreign national has demonstrated that (1) a denial of entry "would cause the foreign national undue hardship"; (2) his or her "entry would not pose a threat to the national security or public safety of the United States"; and (3) his or her "entry would be in the national interest." 82 Fed. Reg. at 45168.

60.     The Proclamation then specifies that while "case-by-case waivers may not be granted categorically," they "may be appropriate, subject to the limitations, conditions, and requirements set forth" in subsection (c), "in individual circumstances …." *Id*. It proceeds to give a number of examples of such circumstances under which issuance of a waiver may be appropriate, including:

COMPLAINT - 12

(A) the foreign national has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date … of this proclamation, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

(B) the foreign national has previously established significant contacts with the United States but is outside the United States on the applicable effective date ... of this proclamation for work, study, or other lawful activity;

(C) the foreign national seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

(D) the foreign national seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship;

(E) the foreign national is an infant, a young child or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case ….

82 Fed. Reg. at 45169.

61.     The Proclamation also instructs that, "[t]he Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." 82 Fed. Reg. at 45168. It further directs the Secretaries to:

[A]ddress the standards, policies and procedures for:

(A) determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States;

(B) determining whether the entry of a foreign national would be in the national interest;

COMPLAINT - 13

(C) addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to the restrictions and limitations imposed by this proclamation;

(D) assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy the requirements of subsection (i) of this subsection; and

(E) determining the special circumstances that would justify granting a waiver under subsection (iv)(E) of this subsection.

*Id*.

62.     Defendants have not yet developed such guidance and have instead proceeded full speed to implement the ban, rejecting more than 98% of visa applicants.

**III.     Plaintiffs have been denied due consideration for a waiver of the Proclamation**

63.     Plaintiff Soheil Vazehrad is a U.S. citizen who is employed as a registered dental hygienist and resides in Napa, California. He filed an application with USCIS for a fiancée visa for his soon-to-be wife, Ms. Atefehossadat Motavaliabyazani, in April 2016. Ms. Motavaliabyazani is an Iranian national who currently resides in Iran. USCIS approved Mr. Vazehrad's petition on May 11, 2016. Ms. Motavaliabyazani attended her interview at the U.S. Embassy in Yerevan, Armenia, on October 20, 2016, and was told that her case would go through routine administrative processing. On January 4, 2018, she received an email stating the following:

Dear Applicant:

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality

> Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed....
>
> Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.

(Exhibit E)

64.     Thus, Ms. Motavaliabyazani's visa was refused pursuant to the Proclamation and she was ineligible for a waiver of the Proclamation, despite the facts that her fiancé, Mr. Vazehrad, is a U.S. citizen, that her interview took place almost a year *before* the Proclamation was signed, and that, once the Proclamation came into effect, she was never given the opportunity to request a waiver of the Proclamation.

65.     Mr. Benham Babalou is an Iranian national who invested five hundred thousand dollars ($500,000.00 USD) in the United States as part of his petition for an employment-based fifth preference (EB-5) investment visa[2] in 2011. USCIS adjudicated his case and sent him an approval notice four years later, on December 15, 2015. Mr. Babalou then attended his immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on May 24, 2016, after which his case was placed in administrative processing. On December 22, 2017, six years after his initial investment, he received a visa denial via an email identical to that sent to Ms. Motavaliabyazani.

66.     Thus, Mr. Babalou's visa was refused pursuant to the Proclamation and he was ineligible for a waiver of the Proclamation, despite the facts that the Proclamation would not

---

[2] The EB-5 investment visa is designed to give permanent resident status to entrepreneurs (and their spouses and unmarried children under 21) who (1) "[m]ake the necessary investment in a commercial enterprise in the United States" (either $500,000 or $1 million); and (2) "[p]lan to create or preserve 10 permanent full-time jobs for qualified U.S. workers." USCIS, EB-5 Immigrant Investor Program, https://www.uscis.gov/eb-5 (accessed Jan. 21, 2018).

COMPLAINT - 15

come into existence until almost a year and a half *after* Mr. Babalou's interview at the Embassy and, further, that once the Proclamation came into effect, he was never given the opportunity to request a waiver of the Proclamation. His attorneys continue to request a waiver of the Proclamation to no avail.

67.     Ms. Hoda Mehrabi Mohammad Abadi is an Iranian national who invested five hundred thousand dollars ($500,000.00) in the United States as part of her petition she filed on August 5, 2014, for an employment-based fifth preference (EB-5) investment visa. USCIS adjudicated her case and sent her an approval notice nearly two years later, on June 9, 2016. Ms. Mehrabi Mohammad Abadi attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on February 23, 2017, after which her case was placed in administrative processing. On December 14, 2017, her attorney received the same email that Mr. Babalou received stating that her visa was refused pursuant to the Proclamation and she was ineligible for a waiver.

68.     Her attorney tried to request the Embassy to consider Ms. Mehrabi Mohammad Abadi's case for a waiver from the Proclamation, but the Embassy responded again on December 17, 2017, with the following:

> Dear inquirer,
>
> Unfortunately, your case is not eligible for a waiver under Presidential Proclamation 9645. This refusal under Section 212(f) of the Immigration and Nationality Act applies only to the current visa application. Please be advised that Presidential Proclamation 9645 currently restricts issuance of most visas to nationals of Iran and seven other countries.

(Exhibit F)

69.     This despite the facts that the Proclamation would not come into existence until long after her visa interview and, further, that once it came into effect, she was never given the

COMPLAINT - 16

opportunity to request a waiver of the Proclamation, nor was she informed of her right to be considered for a waiver.

70.   Dr. Mahdi Afshar Arjmand is an Iranian national who filed for an EB-1A (alien with extraordinary ability) immigrant visa on December 27, 2016, and received an approval notice on January 9, 2017. He attended his immigrant visa interview with his family on July 25, 2017 at the U.S. Embassy in Yerevan, Armenia. The officer informed them that their case looked good, but just needed to go through administrative processing. On January 12, 2018, the Embassy emailed Dr. Afshar Arjmand the same denial letter that Mr. Babalou and Ms. Mehrabi Mohammad Abadi received. The consulate never mentioned anything about a waiver process. Dr. Afshar Arjmand had a job offer from the University of California, San Diego, to work as a researcher and professor. The Embassy refused to consider Dr. Afshar Arjmand for a waiver even though the university had sent multiple emails to the Embassy requesting it to issue Dr. Afshar Arjmand's visa so he could start his position there.

71.   Dr. Ehsan Heidaryan, a world-renowned professor of chemical engineering and Iranian national, filed a petition for an employment-based first preference visa for aliens with extraordinary ability (EB-1A)[3] with USCIS on February 7, 2017. Based on his impressive record of achievements in his field, USCIS approved Dr. Heidaryan's petition on March 3, 2017. He attended his immigrant visa interview at the U.S. Consulate General in Rio de Janeiro, Brazil, on December 23, 2017. Thereafter, the Consulate emailed Dr. Heidaryan to inform him

---

[3] To qualify for an EB-1A visa an applicant "must be able to demonstrate extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim." USCIS, Employment-Based Immigration: First Preference EB-1, https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-first-preference-eb-1 (accessed Jan. 21, 2018).

COMPLAINT - 17

that since he is an Iranian national, his immigrant visa must be refused because of the

Proclamation. Specifically, the consulate wrote:

> Dear Sir,
>
> Unfortunately your immigrant visa is refused under Presidential
> Proclamation 9645 and now considered closed. Do not need to fill
> out the questionnaire we sent by email.

(Exhibit G)

Not only did the Consulate never mention anything about a waiver process or how Dr.

Heidaryan could prove his eligibility, but it affirmatively stopped him from even completing his

visa application.

72.     Ms. Najmeh Maharlouei is an Iranian national currently residing in Shiraz, Iran, where

she is employed as a health researcher and Associate Professor of Community Medicine at

Shiraz University of Medical Sciences. She filed an application with USCIS for an immigrant

visa under the category of employment-based second preference (EB-2) with a National Interest

Waiver[4] on June 20, 2015. Her case was approved on March 4, 2016, and Ms. Maharlouei

attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on October 6,

2016.  She was told at that interview that there were no problems with her case, but that she

would have to undergo routine administrative processing. Ms. Maharlouei received a notice

---

[4] An applicant can acquire permanent residency under the EB-2 category if she is a foreign
national who has an advanced degree and exceptional ability in the sciences, art, or business.
USCIS, Employment-Based Immigration: Second Preference EB-2,
https://www.uscis.gov/working-united-states/permanent-workers/employment-based-
immigration-second-preference-eb-2 (accessed Jan. 21, 2018). This category usually requires
that the applicant's employer get a labor certification from the U.S. Department of Labor, but an
applicant can receive a National Interest Waiver of that requirement if she shows that her work
is in the U.S. national interest.

COMPLAINT - 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

denying her visa application pursuant to the Proclamation on December 22, 2017. She at no point had the opportunity to request a waiver of the Proclamation despite the fact that the very reason her immigrant visa petition was approved by USCIS was a determination that her work is in the U.S. national interest. The Proclamation would not come into existence until more than a year after Ms. Maharlouei's interview.

73.     Plaintiff Nastaran Hajiheydari is an Iranian national currently residing in Iran where she works in the field of Information Technology Business as an Associate Professor at the University of Tehran. She filed an application with USCIS for an immigrant visa under the category of employment-based second preference (EB-2) with a National Interest Waiver on October 14, 2016. Her case was approved less than 40 days later in November 2016, and Ms. Hajiheydari and her family attended their immigrant visa interviews at the U.S. Embassy in Yerevan, Armenia, on October 26, 2017. Their cases were placed in routine administrative processing. Ms. Hajiheydari received an email notice denying her family's visa applications pursuant to the Proclamation on January 16, 2018. She at no point had the opportunity to request a waiver of the Proclamation despite the fact that the very reason her immigrant visa petition was approved by USCIS was a determination that her work is in the U.S. national interest.

74.     Plaintiff Afrooz Kharazmi, a U.S. citizen residing in Loveland, Ohio, filed an immigrant visa petition with USCIS on June 1, 2004, for her sister, Plaintiff Afshan Alamshah Zadeh, an Iranian national currently residing in Iran. Ms. Alamshah Zadeh waited in line for 12 years for

COMPLAINT - 19

her priority date[5] to become current. USCIS approved her petition in October 2016. The U.S. Embassy in Abu Dhabi, UAE, scheduled Ms. Alamshah Zadeh's immigrant visa interview for January 7, 2018. She attended the interview and was informed that her immigrant visa was denied pursuant to the Proclamation. Ms. Alamshah Zadeh did not have the opportunity to apply for a waiver, thus the consular officer did not consider the fact that she has two U.S. citizen parents and a U.S. citizen sister with whom she seeks to be reunited, or the fact that she patiently waited in line for 12 years for her visa number to become current.

75.    Plaintiff Bamshad Azizi is a U.S. lawful permanent resident residing in San Jose, California, and co-founder of a cybersecurity startup in the United States. His parents, Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei applied for tourist visas to come visit him and his sister. They attended their interview at the U.S. Consulate General in Dubai, UAE, on September 12, 2017, 12 days before the signing of the Proclamation, and were told that their visas would be ready in two weeks. In disbelief at their luck, Mr. and Mrs. Azizikoutenaei asked if their visas would really be ready in only two weeks, and the interviewing officer smiled and confirmed. On October 3, 2017, they received an email from the Embassy requesting that they send their passports so that their visas could be stamped. They did so and, to their dismay, their passports were returned eleven days later with no visas and with a letter stating that their applications had been placed in administrative processing. After following up multiple times with the Embassy and receiving only automated responses, Mr. and Mrs. Azizikoutenaei

---

[5] An applicant's priority date is the date upon which her application was filed. An applicant's priority date must become "current" before she can apply for an adjustment of status to that of permanent resident. Spouses, parents, and minor children of U.S. citizens do not have to wait for visas to become available, so their priority dates are irrelevant, but all other categories of immigrants have to wait in line, in some cases for decades, for their priority dates to become current.

COMPLAINT - 20

received rejections on January 10, 2018. Mrs. Azizikoutenaei was diagnosed with cancer about a year ago and had to undergo two surgeries and a series of intense chemotherapy sessions. Mr. Azizikoutenaei also had surgery recently. They are both still quite weak and the family just wants to be reunited. They were unable to tell officers about their circumstances as they did not have the opportunity to request a waiver from the Proclamation at any point.

76.     Plaintiff Clyde Jean Tedrick II is an American citizen residing in Rockville, Maryland, with Plaintiff Mitra Farnoodian-Tedrick, U.S. lawful permanent resident. They assisted Ms. Farnoodian-Tedrick's parents, Farajollah Farnoudian and Farangis Emami, with applying for tourist visas to attend their wedding on May 27, 2018. Mr. Farnoudian and Ms. Emami had visited the U.S. before and had fully complied with the terms of their tourist visas. They attended their visa interview on October 17, 2017, at the U.S. Consulate General in Dubai, UAE. Mr. Farnoudian's visa application was placed in administrative processing, but Ms. Emami's visa application was approved. Mr. Farnoudian received an email on January 8, 2018, informing him that his visa had been denied pursuant to the Proclamation. Ms. Emami was never notified that her already-approved visa had been denied pursuant to the Proclamation, but only found out after checking the status of her case online. At no point did anyone in the family have an opportunity to request a waiver. Due to the lack of opportunity to request a waiver, Mr. Tedrick and Ms. Farnoodian-Tedrick were forced to cancel their wedding.

77.     Plaintiff Tannaz Toloubeydokhti is a U.S. citizen who resides in San Diego, California. She is employed as an obstetric-gynecologist and has dedicated her career to improving the lives of American mothers and babies. She is herself in her last trimester of pregnancy and, knowing how difficult labor and caring for a newborn can be, she seeks family support for help both in delivery of the baby and with childcare afterwards. Ms. Toloubeydokhti petitioned for

COMPLAINT - 21

immigrant visas for her parents, Fathollah Tolou Beydokhti and Behnaz Malekghaeini, Iranian nationals, on September 1, 2016. Their cases were approved, and her parents attended their immigrant visa interviews on December 21, 2017, at the U.S. Embassy in Yerevan, Armenia. Mr. Beydokhti and Ms. Malekghaeini, went prepared to their interviews, ready to request waivers of the Proclamation with supporting documents in hand. But when they presented their documents, the officer refused to review them, told them that they did not qualify for a waiver, and their visas were denied.

78.     Plaintiff Maral Charkhtab Tabrizi is a U.S. lawful permanent resident residing in Arizona who is married to a U.S. citizen and is pregnant with her first child. Her parents, Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi, who have traveled to the United States many times before, applied for tourist visas to witness the birth of their first grandchild. They attended their interviews at the U.S. Consulate General in Dubai, UAE, on October 19, 2017. Ms. Rouzbehani was approved right away, but Mr. Charkhtab Tabrizi's case was sent for administrative processing. Ms. Rouzbehani decided to not send the passport for visa stamping immediately, but to wait for her husband's administrative processing to be completed first so that they could travel together to the United States. Immediately after the Supreme Court allowed the Proclamation to go into effect, Ms. Rouzbehani sent her passport for visa stamping. Near the end of December 2017, the passport was returned without a visa and their visas were refused pursuant to the Proclamation. They were not given the opportunity to apply for a waiver.

79.     Had they been given that opportunity, Ms. Charkhtab Tabrizi's parents would have told the adjudicating officer that they wanted to be there to support their daughter for a number of reasons. The first is financial. Ms. Charkhtab Tabrizi's household finances depend heavily on her salary and, because she is a contractor for Google and has been there for less than 12 months

COMPLAINT - 22

and is therefore not eligible for maternity leave or for time off under the Family Medical Leave Act, she had planned to return to work as soon as possible. Without her parents, Ms. Charkhtab Tabrizi will be unable to go back to work as quickly as she had hoped and will be unable to afford daycare after an unpaid leave during which time she and her husband will be depleting their savings. The second reason is medical. Ms. Charkhtab Tabrizi has a connective tissue disorder which has caused her severe pain during her pregnancy and makes her daily activities very difficult. She had hoped that her parents could be there to support her during her recovery so she could go back to work quickly; this is important because her contract may end before she has fully recovered and she may lose all of her benefits and her opportunity to extend her contract. The denial of Ms. Rouzbehani's and Mr. Charkhtab Tabrizi's visas is causing Ms. Charkhtab Tabrizi severe financial hardship and may even cost her her job.

80.     Plaintiff Maryam Mozafari is a U.S. permanent resident currently residing in San Francisco, California. She is pregnant and wanted her parents, Ms. Nahid Golestanian and Mr. Mohammad Mehdi Mozaffary, to come visit her and provide her the support she needs during this stressful time. They had both visited the United States in 2014, and had left the country well in advance of the expiration of their visas, and were thus confident they would be granted tourist visas again. On December 28, 2016, they applied for tourist visas at the U.S. Consulate General in Dubai, UAE. Ms. Golestanian's visa was granted immediately. Mr. Mozaffary was asked for his mandatory military service documents. He did not have them with him, as the documents were not mentioned in the list of required documents for the visa application, and he was asked to reapply and bring the documents with him to the next interview.

81.     Because of the timing of the first two travel bans, Mr. Mozaffary had to delay his interview, and was not able to get back in to the Consulate until July 30, 2017. He was told by

COMPLAINT - 23

the consular officer that his documents appeared to be in order, but that he would be sending Mr. Mozaffary additional forms to fill out. Mr. Mozaffary received the forms in August and returned them to the Consulate soon thereafter. For the next several months, Ms. Mozafari and Mr. Mozaffary sent several emails to the Consulate to inquire about the status of the cases, but either received no reply at all or a system-generated standard response. On January 11, 2018, Mr. Mozaffary's visa was denied pursuant to the Proclamation. He did not have an opportunity to request a waiver. Mr. Mozaffary suffers from a heart condition which requires that he be accompanied at all times. During this time, Ms. Golestanian came to the United States to visit Ms. Mozafari. She wants to stay with Ms. Mozafari to support her during her pregnancy, but she feels torn between her daughter and her ailing husband. She has been put in an impossible position.

82.     Despite the fact that the Proclamation contains examples of specific circumstances under which issuance of a waiver to an applicant would be appropriate, Defendants have abrogated their duty to consider Plaintiffs' individual circumstances—all of which fall cleanly under one or more of these examples—and have instead engaged in categorical refusals to consider waiver applications and, thus, categorical denials of visas to the individuals affected by the travel ban.


**IV.     President Trump's ongoing promise to implement "a total and complete shutdown of Muslims entering the United States"**

83.     Prior to his election, President Trump campaigned on the promise that he would ban Muslims from entering the United States. On December 7, 2015, then-candidate Trump issued a press release calling for "a total and complete shutdown of Muslims entering the United States."

COMPLAINT - 24

Donald J. Trump Campaign, *Donald J. Trump Statement on Preventing Muslim Immigration* (Dec. 7, 2015). (Exhibit H)

84.     When asked on the following day what the customs process would look like for a Muslim non-citizen attempting to enter the United States, candidate Trump stated, "[T]hey would say, 'are you Muslim?'" Nick Gass, *Trump not bothered by comparisons to Hitler*, POLITICO (Dec. 8, 2015), https://www.politico.com/trump-muslims-shutdown-hitler-comparison.  Candidate Trump then confirmed that, if they answered in the affirmative, they would not be allowed into the country. *Id*.

85.     On June 13, 2016, candidate Trump reiterated his promise to ban all Muslims entering this country until the United States is "in a position to properly and perfectly screen those people coming into our country." Ryan Teague Beckwith, *Read Donald Trump's Speech on the Orlando Shooting*, TIME (Jun. 13, 2016), http://time.com/4367120/orlando-shooting-donald-trump-

transcript/.

86.     In a foreign policy speech delivered on August 15, 2016, candidate Trump noted that the United States could not "adequate[ly] screen[]" immigrants because it admits "about 100,000 permanent immigrants from the Middle East every year." *Donald Trump Foreign Policy Speech in Youngstown*, C-SPAN (Aug. 15, 2016), https://www.c-span.org/video/?413977-1/donald-trump-delivers-foreign-policy-address (quoted remarks at 50:46). Candidate Trump proposed creating an ideological screening test for immigration applicants, which would "screen out any who have hostile attitudes towards our country or its principles – or who believe that Sharia law should supplant American law." He referred to this proposal as "extreme, extreme vetting." *Id*.

COMPLAINT - 25

87.     On June 5, 2017, after litigation against the first travel ban led to its replacement by a revised ban, President Trump issued a series of tweets criticizing the revision and calling for a return to the first travel ban. He stated, "The Justice Dept. should have stayed with the original Travel Ban, not the watered down, politically correct version they submitted to S.C." (Exhibit I) President Trump also tweeted: "People, the lawyers and the courts can call it whatever they want, but I am calling it what we need and what it is a TRAVEL BAN!" (Exhibit J)

88.     Defendants have pointed to the existence of a waivers provision in the Proclamation as proof of its constitutionality. But the president's statements, both before and during his time in office, combined with the blanket denials of waivers and visas to applicants from the banned Muslim-majority countries lay bare Defendants' intent to institute a complete ban on Muslims entering the United States.


**V.      President Trump's promise to end family reunification, a.k.a. chain migration**

89.     On January 4, 2018, President Trump tweeted, "…We must BUILD THE WALL, stop illegal immigration, end chain migration & cancel the visa lottery." (Exhibit K)

90.     On January 16, 2018, President Trump tweeted, "[W]e need to keep America safe, including moving away from a random chain migration and lottery system, to one that is merit-based." (Exhibit L)

91.     On January 25, 2018, the White House issued a fact sheet entitled, "White House Framework on Immigration Reform & Border Security," where it stated one of the administration's goal is to "[p]romote nuclear family migration by limiting family sponsorship to spouses and minor children only (for both Citizens and LPRs), ending extended-family chain migration." (Exhibit M)

COMPLAINT - 26

92.     Defendants have changed the terms of the travel ban that they themselves wrote by categorically limiting the number of visa applicants who can request consideration for a waiver of the travel ban. Defendants are therefore bypassing Congress and the INA and working to effectively end family reunification in the banned countries.

## VI.    Existing guidance from the State Department is inadequate to guide either consular officers or visa applicants with respect to the Proclamation's waiver process

93.     The guidance provided by the Proclamation itself is minimal, and the Proclamation directs the Secretary of State and the Secretary of Homeland Security to develop specific guidance for consular officers and visa applicants on how the waivers provision will be implemented. 82 Fed. Reg. at 45168; *see Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("The Government … has offered no explanation for how these [discretionary waiver] provisions would function in practice: how would the "national interest" be determined, who would make that determination, and when?").

94.     After the Supreme Court's lifting of the stays on the Proclamation, the State Department issued guidance regarding its immediate implementation on its website. Dep't of State, *New Court Order on Presidential Proclamation* (Dec. 4, 2017), https://travel.state.gov/content/travel/en/News/visas-news/new_court_orders_on_presidential_proclamation.html. (Exhibit N) The guidance indicates that consular officers will review eligibility for a waiver at the time of an applicant's interview. *Id*.

COMPLAINT - 27

95.     But the State Department's guidance does not offer definitions of key terms from the Proclamation's waivers provision like "undue hardship" or "significant contacts" or any explanation for how applicants can show that their entry into the United States would be in the national interest.

96.     This lack of clarity leaves applicants guessing as to what the standards of eligibility are for waivers—whether their hardships are undue, whether their contacts are significant—and presumably also leaves consular officers guessing as to which applicants are eligible.

97.     The State Department's guidance does provide a definition of "close family member," and indicates that the definition for purposes of the Proclamation is the same as the definition for "immediate relative" that can be found elsewhere in immigration law. *See* 8 U.S.C. § 1151(b)(2)(A)(i).

98.     But according to an email received by counsel from the U.S. Consulate General in Vancouver, Canada, visa applicants who seek to be reunited with a parent in the U.S. are ineligible for consideration of a waiver if they are over 21 years old, the opposite of the definition under the rest of immigration law. The email exchange reads in relevant part as follows:

> COUNSEL: [I]t appears as though my client, [REDACTED], has been denied the opportunity to request a waiver of the presidential proclamation.
>
> According to the presidential proclamation itself and guidance on the State Department's website, foreign nationals who seek to enter the US to be reunited with a close family member (e.g. spouse, child, or parent) are eligible for requesting a waiver.
>
> My client is the daughter of a United States citizen. Could you kindly explain why your office has denied my client the opportunity to request a waiver of the presidential proclamation?

COMPLAINT - 28

1
2

> CONSULATE: A consular officer may issue a visa based on a listed waiver category to nationals of countries identified in the Presidential Proclamation on a case-by-case basis.

3
4

> It has been determined that your client, [REDACTED], does not meet the definition of close family as she is over 21 years of age.

5

> This decision cannot be appealed.

6

(Exhibit O)

7

99.    Defendants have thus limited the meaning of "close family member" to suit their

8

intended goal of broadly denying waivers to applicants from banned countries.

9

100.    The guidance also does not explain how consular officers should consider the eligibility

10

for a waiver of applicants, like several Plaintiffs, who were interviewed *prior* to implementation

11

of the Proclamation but were in administrative processing during the periods when the

12

Proclamation was being implemented.

13
14

101.    Nor does the guidance explain how applicants stuck in administrative processing should

15

handle the situation. Applicants are thus at a loss for what to do—they do not know whether

16

they are supposed to contact the embassy or whether the embassy will contact them; whether

17

they should wait until administrative processing is completed or request a waiver while their

18

cases are still pending administrative processing. Applicants fear that, if they contact the

19

embassy, attention will be brought to their cases, which will result in an immediate denial due to

20

the Proclamation. This fear is not unfounded: counsel have personal knowledge of cases in

21

which this occurred.

22

102.    Visa applicants have stated that when they attend interviews at embassies and consulates

23

abroad, the officers inform them that waivers are processed in Washington, D.C. This undercuts

24

the State Department's guidance which states that visa applicants' eligibility for waivers will be

25

COMPLAINT - 29

determined by the consular officer at the time of the interview and further muddies the water. Applicants do not even know *who* is adjudicating their requests for waivers, much less what the standards are to qualify for one.

103.   In a letter to two U.S. senators published on March 6, 2018, the State Department issued more guidance on the waiver process. (Exhibit B) This guidance contradicts both the Proclamation and the State Department's previous guidance on the process.

104.   For example, the letter states that "the applicant's travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions … are lifted." *Id*. Neither the Proclamation nor the guidance from the State Department's website ever make any mention of visa applicants being required to show that U.S. citizens or entities would suffer hardship if the applicant were not granted a visa, which belies the State Department's contention that "[t]he Department's worldwide guidance to consular officers regarding waivers is drawn directly from the Proclamation." *Id.*

105.   It is thus clear that Defendants are making things up as they go along, saying one thing on government websites, another thing to visa applicants and attorneys, and yet another thing when a U.S. senator is doing the inquiring.

**VII.   Denial letters issued by consular officers reveal Defendants' policy and practice of refusing to give applicants due consideration for waivers**

106.   Defendants provided the consulates and embassies abroad with a template letter to give to visa applicants when they have been denied a visa pursuant to the Proclamation. The letter has two options for a consular officer to select: (1) "Taking into account the provisions of the

COMPLAINT - 30

Proclamation, a waiver will not be granted in your case"; or (2) "The consular officer is reviewing your eligibility for a waiver under the Proclamation." (Exhibit P)

107.    This begs the question: why are consular officers not considering *all* applicants for a waiver? And on what basis does an officer decide in the first instance whether an applicant should be considered for a waiver at all?

108.    These form letters betray Defendants' policy and practice of judging applicants' eligibility for waivers based not on their personal circumstances or on a consideration of the guidance provided by the Proclamation, but instead on applicants' nationality and country of origin.

109.    These form letters also contradict the guidance found on the State Department website. *See* Dep't of State, *New Court Order on Presidential Proclamation* (Dec. 4, 2017), https://travel.state.gov/content/travel/en/News/visasnews/new_court_orders_on_presidential_proclamation.html. That guidance tells officers that if they are faced with a visa applicant who is subject to the Proclamation, they will determine whether the applicant "may be eligible for a waiver under the Proclamation and therefore issued a visa." The guidance goes on to state explicitly that, "[a] consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation . . . and, if so, whether the applicant qualifies for an exception or a waiver." *Id*.

110.    The fact that the form letters reveal that officers are not considering all applicants for waivers, and that the letters are inconsistent with the guidance given by State Department which explicitly tells officers to consider all applicants, shows that Defendants are making decisions based on inappropriate considerations of country of origin and nationality and not on valid and good faith considerations of applicants' personal circumstances.

COMPLAINT - 31

1

2

3

**VIII.   Plaintiffs and proposed class members have suffered and continue to suffer irreparable harm because of the flawed waiver process**

111.    Defendants' reckless and irresponsible implementation of the Proclamation, and their policy and practice of refusing to consider in good faith the facts of individual cases, has caused significant and irreparable harm to Plaintiffs and proposed class members.

112.    Mr. Vazehrad has suffered a loss of consortium as he has been deprived and continues to be deprived of the opportunity to be with his fiancée, Ms. Motavaliabyazani. Both Plaintiffs are suffering ongoing severe emotional and mental distress as a result of their prolonged separation. Because the Proclamation made the travel ban of indeterminate length, the separation may well be permanent. The couple have also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, which they will never recoup.

113.    Mr. Babalou is at risk of losing a $500,000 investment in the United States. From his home in Iran, he is unable to fulfill the duties assigned to him as part of running a business, unable to oversee the U.S. citizens he has employed, and therefore unable to effectively grow his business and continue contributing to the U.S. economy. In addition to the large investment he made into a U.S. business, Mr. Babalou has incurred substantial incidental costs over the last seven years, including $50,000 paid to a regional center for assistance with overseeing his investment and thousands of dollars more in attorney's fees, filing fees, travel costs, and medical fees. These are costs that Mr. Babalou can never recoup.

114.    Ms. Mehrabi Mohammad Abadi is also at risk of losing a $500,000 investment in the United States. From her home in Iran, she is unable to fulfill the duties assigned to her as part of running a business, unable to oversee the U.S. citizens she has employed, and therefore unable

COMPLAINT - 32

to effectively grow her business and continue contributing to the U.S. economy. In addition to her large investment, Ms. Mehrabi Mohammad Abadi incurred substantial incidental costs, including $50,000 paid to a regional center for assistance with overseeing her investment and thousands of dollars more in attorney's fees, filing fees, travel costs, and medical fees. These are costs that Ms. Mehrabi Mohammad Abadi will never recover.

115.   Dr. Afshar Arjmand risks losing a once-in-a-lifetime research and teaching opportunity at the University of California, San Diego, one of the world's leading public research universities. This despite the fact that Dr. Afshar Arjmand was deemed by USCIS to be "extraordinary"—and it would thus clearly be in the U.S. national interest to allow him to enter—and despite the university's persistence and assistance in the matter borne of its desire to secure Dr. Afshar Arjmand and his prodigious talent and expertise for its faculty. In addition to missing out on this incredible opportunity, he has also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, which he will be unable to recoup.

116.   Dr. Heidaryan risks losing the opportunity to use his hard-won skills and experience, deemed "extraordinary" by USCIS, to conduct research and teach in his area of expertise—chemical engineering—in America's top tier universities. Relatedly, Dr. Heidaryan risks losing the opportunity to take advantage of the substantial resources American universities have to more effectively further his research and, thus, the opportunity to contribute his expertise to the United States. He has also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, which he cannot recover.

117.   Ms. Maharlouei also risks losing the opportunity to conduct research in the United States in her field of medical sciences, despite the fact that USCIS already deemed her research to be in the U.S. national interest. Ms. Maharlouei risks losing the opportunity to take advantage of

American universities' substantial resources to more effectively further her research and, thus, the opportunity to contribute her substantial expertise to the United States. She has also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, which she will be unable to recoup.

118.    Ms. Hajiheydari risks losing the opportunity to conduct research in the United States, despite the fact that USCIS already determined that her work is in the U.S. national interest. Ms. Hajiheydari risks losing the opportunity to take advantage of American universities' substantial resources to more effectively further her research and, thus, the opportunity to contribute her expertise to the United States. She has also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, for herself and three family members, all of which she will be unable to recoup.

119.    Plaintiff Afrooz Kharazmi and Plaintiff Afshan Alamshah Zadeh waited in line for more than 12 years for Ms. Alamshah Zadeh's priority date to become current, enduring years of hardship, separation, and sacrifice. Ms. Alamshah Zadeh's entire family are American citizens residing in the United States, and she is therefore at risk of permanently losing the ability to visit any member of her family and being left permanently alone in Iran. The sisters have also paid thousands of dollars in attorney's fees, filing fees, travel costs, and medical fees, which they cannot recover.

120.    Plaintiff Bamshad Azizi and his parents, Roghayeh and Hojjatollah Azizikoutenaei, have suffered and are suffering significant emotional distress at their ongoing separation.  Mrs. Azizikoutenaei has been suffering from cancer for the last year and Mr. and Ms. Azizikoutenaei both recently underwent surgeries. All the family wants is to be together, but, because the travel ban is of an indeterminate length, and Mr. and Mrs. Azizikoutenaei are quite weak after their

COMPLAINT - 34

illnesses and surgeries, they are unsure that they will ever get to be reunited. This prospect is also causing Mr. Azizi and his parents ongoing and significant emotional distress. The family have paid thousands of dollars in attorney's fees, filing fees, and travel costs, which they will be unable to recoup.

121.   Plaintiff Clyde Jean Tedrick II and Plaintiff Mitra Farnoodian-Tedrick cancelled their wedding and lost $3,976.76 because of Defendants' denial of Plaintiff Farajollah Farnoudian and Plaintiff Farangis Emami's case. They have all suffered considerable stress in connection with the wedding and have lost, perhaps permanently, an experience that everyone should get to enjoy: celebrating a wedding with one's parents. They have also paid thousands of dollars in attorney's fees, filing fees, and travel costs, which they cannot recoup.

122.   Plaintiff Tannaz Toloubeydokhti has suffered significant emotional distress as she has been deprived of the opportunity to have her parents, Mr. Fatholah Tolou Beydokhti and Ms. Behnaz Malekghaeini present during her pregnancy. They are also at risk of missing the birth of Ms. Toloubeydokhti's child. These experiences are ones none of them can ever get back and this loss is irreparable. Ms. Toloubeydokhti is also at risk of enduring a significant financial burden, as she had hoped that her parents would assist her with childcare for her newborn. She may have to seek hired help, an expensive prospect. Ms. Toloubeydokhti and her parents have also paid thousands of dollars in attorney's fees, filing fees, and travel costs, which they will be unable to recoup.

123.   Plaintiff Maral Charkhtab Tabrizi has suffered significant emotional distress as she was deprived of the opportunity to have her parents, Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi, present during her pregnancy. She also suffered increased physical pain and suffering, as she has a connective tissue disorder with associated pain that would have been

COMPLAINT - 35

lessened with the assistance of her parents. Additionally, Ms. Rouzbehani and Mr. Charkhtab Tabrizi missed the birth of their first grandchild. This is an experience none of them can never get back and their loss is therefore irreparable. Ms. Charkhtab Tabrizi is also at risk of enduring a significant financial burden, as she had hoped that her parents would assist her with childcare for her newborn. Because Ms. Charkhtab Tabrizi cannot take paid time off, without her parents' assistance, she will have to increase the amount of time she takes off, thereby losing far more money than she would have had her parents been present. Her unpaid leave, potentially extended due to Ms. Rouzbehani and Mr. Charkhtab Tabrizi's absence, may also result in the cancellation of her job contract and the loss of her medical benefits, harms that would be irreparable. Ms. Charkhtab Tabrizi and her parents have also paid thousands of dollars in attorney's fees, filing fees, and travel costs, which they will be unable to recoup.

124.     Applicants are told in their denial letters they can apply for visas again. But Defendants have no protocols in place and, despite having more than five months to do so, have issued no guidance to officers or applicants. Thus, applicants will have to pay application fees, buy plane tickets, make hotel reservations, and pay, again, all of the costs associated with applying for a visa and traveling to a U.S. embassy to attend yet another interview with no hope of achieving a different result.

125.     As a result, Plaintiffs' rights continue to be violated and they continue to be separated from their families, jobs, research, and investments on the basis of the unlawful and unconstitutional waiver process.

## CLASS ALLEGATIONS

COMPLAINT - 36

126.    Individual Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2), on behalf of themselves and all other persons similarly situated. A class action is proper because the class is so numerous that joinder of all members is impractical, this action involves questions of law and fact common to the class, Plaintiffs' claims are typical of the claims of the class, Plaintiffs will fairly and adequately protect the interests of the class, and Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

127.    In addition to the named plaintiffs, there are many other similarly situated individuals who have been denied waivers and visas pursuant to the Proclamation. Each of these similarly situated individuals is entitled to bring a complaint for declaratory and injunctive relief to prohibit Defendants' policy, pattern, and practice of denying waivers and visas to applicants from banned countries without a good faith consideration of their applications.

128.    The proposed class is defined as follows:

> All petitioners and beneficiaries of immigrant or nonimmigrant visa petitions that were refused or will be refused pursuant to the Proclamation without the opportunity to request a waiver of the Proclamation or that were refused or will be refused despite clearly falling under the examples provided by the Proclamation for circumstances under which a waiver may be appropriate. All individuals who were or will be considered for a waiver of the Proclamation and refused a waiver due to Defendants' narrow and incorrect definition of a "close family member."

129.    The proposed class meets the requirements of Rule 23(a)(1) because it is so numerous that joinder of all members is impracticable. The number of individuals who have been wrongly denied waivers is not known with precision by Plaintiffs but is easily ascertainable by Defendants. On any given day, thousands of visa applications are adjudicated at embassies and

COMPLAINT - 37

consulates abroad. As such, more individuals will become class members in the future, as Defendants continue to deny applicants a good faith opportunity to request a waiver of the Proclamation. The members of the class are ascertainable and identifiable by Defendants.

130.     The proposed class meets the commonality requirements of Rule 23(a)(2) because all proposed class members have been or will be subject to Defendants' common policy, pattern, and practice of refusing to consider applicants for waivers of the Proclamation. Plaintiffs and the proposed class share the same legal claims, which include, but are not limited to: whether Defendants' refusal to consider applicants for waivers in good faith and failure to develop standards or guidance for consular officers and visa applicants to follow violate the APA, the INA, and the Due Process Clause of the Fifth Amendment.

131.     Similarly, the proposed class meets the typicality requirements of Rule 23(a)(3) because the claims of the representative Plaintiffs are typical of the claims of the class as a whole. Plaintiffs, as with the class they seek to represent, are all individuals who have been or will be denied the chance to request a waiver of the Proclamation and who have been or will be stymied in their attempts to apply by a dearth of guidance from Defendants.

132.     The adequacy requirements of Rule 23(a)(4) are also met. Plaintiffs know of no conflict between their interests and those of the proposed class. Plaintiff seek the same relief as other members of the class, namely that the Court (a) order Defendants to immediately cease their unlawful policy and/or practice of refusing to receive or consider requests for waivers of the Proclamation; (b) retract visa denials due to the arbitrary and capricious nature of Defendants' decision to implement the ban without appropriate guidance in place; (c) provide clear guidance that defines key words and sets clear standards for consular officers and applicants to use; and (d) abide by the terms of the Proclamation and consider case-by-case waivers in good faith. In

COMPLAINT - 38

defending their own rights, the individual Plaintiffs will defend the rights of all class members fairly and adequately. Plaintiffs are represented by counsel with deep knowledge of immigration law and extensive experience litigating class actions and complex cases. Counsel have the requisite level of expertise to adequately prosecute this case on behalf of Plaintiffs and the proposed class.

133.    The proposed class satisfies Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the class in refusing to fairly adjudicate waiver requests. Thus, final injunctive and declaratory relief is appropriate with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT ONE
### (Violation of Administrative Procedure Act)

134.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.    The APA prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is conducted "without observance of procedure required by law." 5 U.S.C. § 706(2).

136.    The INA prohibits discrimination in the issuance of immigrant visas based on nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A). The INA's implementing regulations specify the procedures for issuance or denial of a visa. 22 C.F.R. 42.81; 22 CFR 41.121; 22 C.F.R. § 40.6. Under these regulations, a denial must be based on legal grounds and made in conformance with the INA.

COMPLAINT - 39

137.    In denying waivers and visas to Plaintiffs and proposed class members based on their country of origin or nationality, Defendants have acted arbitrarily, capriciously, and not in accordance with the INA.

138.    Defendants' actions have resulted in the indefinite—and possibly permanent—separation of U.S. citizens and U.S. lawful permanent residents from their family members in contravention of Congress' purpose in enacting the INA: promoting family reunification. This conduct is not in accordance with the INA.

139.    Defendants have discriminated against Plaintiffs and proposed class members based on the proscribed grounds in implementing the Proclamation's waivers provisions. In this respect, they have failed to use the discretion granted them by law. They are therefore in violation of the APA.

140.    Defendants have a non-discretionary duty under the Proclamation to develop standards to guide visa applicants in compiling their applications for waivers and for consular officers to reference in adjudicating waiver and visa applications. *See* 82 Fed. Reg. at 45168. Defendants have failed to promulgate such guidance and have nonetheless proceeded in denying waivers and visas. Defendants have also failed to follow existing procedures prescribed by the INA and implementing regulations and the Foreign Affairs Manual in issuing these denials. In failing to develop or follow any procedures, instead basing their decisions on applicants' country of origin or nationality, Defendants have conducted themselves arbitrarily and capriciously and in contravention of the Proclamation, the INA, and the U.S. Constitution, and they have thus violated the APA.

141.    Defendants' violations of these laws have harmed and continue to harm Plaintiffs and proposed class members by indefinitely denying them access to their families and to economic and research opportunities.

**COUNT TWO**
**(Violation of Due Process Clause of the Fifth Amendment)**

142.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

143.    The Due Process Clause of the Fifth Amendment of the U.S. Constitution protects all individuals from the government denying equal protection of the law.

144.    The blanket denials of visas to applicants from banned countries without the opportunity to argue for a waiver from the Proclamation, together with statements made by Defendants concerning their intent and the application of the travel ban, makes clear that Defendants are targeting individuals for discriminatory treatment based on their country of origin or nationality, without any lawful justification.

145.    Defendants' implementation of the waivers provision has a disparate impact on applicants from certain countries and of certain nationalities.

146.    Defendants' discriminatory implementation of the waivers provisions serves no compelling government interest and is not narrowly tailored.

147.    Defendants' conduct violates the Fifth Amendment's guarantee of equal protection.

148.    The Due Process Clause of the Fifth Amendment also prohibits the federal government from depriving individuals of their fundamental rights without due process of law, i.e., substantive due process.

COMPLAINT - 41

149. Plaintiffs' fundamental rights include their right to the "integrity of the family unit." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

150. The implementation of the waiver provision of the Proclamation directly and substantially infringes on Plaintiffs' fundamental rights.

151. The Due Process Clause forbids Defendants from infringing on Plaintiffs' fundamental rights unless the infringement is narrowly tailored to serve a compelling governmental interest.

152. As applied, the Proclamation's waivers provision fails this test. It is not narrowly tailored to protect national security interests—it operates to block nearly all persons from banned countries from entry into the United States, regardless of their relationship to violence or terrorism. It is both under- and over-inclusive.

153. The Due Process Clause of the Fifth Amendment guarantees procedural due process rights, e.g., the right to fair and impartial processes, even to foreign nationals. Those due process rights are implicated by the deprivation of a fundamental liberty interest, e.g., family integrity, and they may also arise from statute. *See Lanza v. Ashcroft*, 389 F.3d 917, 927 (9th Cir. 2004) ("The due process afforded aliens stems from those statutory rights granted by Congress and the principle that 'minimum due process rights attach to statutory rights.'") (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003). The INA and its implementing regulations mandate various procedures for the processing of visas, procedures which Defendants have failed to follow.

154. In refusing to consider Plaintiffs' applications in good faith, Defendants have violated Plaintiffs' Fifth Amendment right to equal protection under the law and to substantive and procedural due process.

COMPLAINT - 42

155.   Defendants' violations of these laws have harmed and continue to harm Plaintiffs and proposed class members by indefinitely denying them access to their families and economic and research opportunities.

**COUNT THREE**
**(Writ of Mandamus)**

156.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

157.   Defendants owe Plaintiffs and class members a duty to adjudicate in good faith their requests for waivers of the Proclamation. The adjudication of waivers and development of guidance on such adjudication are clear, non-discretionary duties imposed upon Defendants by the INA and implementing regulations and by section 3 of the Proclamation.

158.   Defendants are unlawfully ignoring Plaintiffs' requests for waivers of the Proclamation and have failed to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiffs' cases.

159.   Defendants' refusal to consider applicants' eligibility for waivers on a case-by-case basis or develop meaningful guidance is, as a matter of law, arbitrary, capricious, and not in accordance with the law and is thus violative of the APA.

160.   Defendants' policy and practice of denying visa applications and waivers to people of a certain country of origin or nationality violates Plaintiffs' right against discrimination under the INA and implementing regulations.

161.   Defendants' discriminatory behavior in issuing blanket denials to visa applicants from banned countries without consideration of their personal circumstances violates Plaintiffs' Fifth

COMPLAINT - 43

Amendment rights to equal protection under the law and substantive and procedural due process.

162.    Because there are no other adequate remedies available to Plaintiffs, mandamus is appropriate. *See* 5 U.S.C. § 704.

163.    Defendants' violation of the law in denying Plaintiffs the opportunity to present waiver applications as a matter of course, and thereby refusing to consider waivers on a case-by-case basis, is substantially unjustified. Plaintiffs are, therefore, entitled to reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.  A temporary restraining order and/or preliminary and permanent injunction enjoining Defendants from denying visa applications due to the Proclamation;

2.  An order requiring Defendants to immediately retract all visa denials due to the Proclamation and notify applicants that they may apply for a waiver of the Proclamation without submitting a new visa application, paying associated fees, and attending another interview;

3.  An order requiring Defendants to fulfill their duties by providing clear and consistent guidelines for the waiver process, including definitions of key terms, standards for applicants to meet, and examples of documents needed to meet those standards;

4.  An order requiring Defendants to abide by the terms of the Proclamation and consider applicants' waiver applications on a case-by-case basis without discriminating based on applicants' country of origin or nationality;

COMPLAINT - 44

5.  An order declaring Defendants' refusal to consider waiver applications in good faith as violative of the APA, the INA, and the Due Process Clause of the Fifth Amendment;

6.  An order awarding Plaintiffs costs of suit and reasonable attorney's fees under the Equal Access to Justice Act and any other applicable law;

7.  Such other and further relief as this Court deems equitable, just, and proper.

DATED: March 13, 2018

Kent, Washington

Respectfully Submitted,

/s/ Luis Cortes Romero
IMMIGRANT ADVOCACY & LITIGATION
CENTER, PLLC
LUIS CORTES ROMERO (CA SBN 310852)
lcortes@ia-lc.com
ALMA DAVID* (CA SBN 257676)
*Pro hac vice forthcoming
adavid@ia-lc.com

/s/Mark D. Rosenbaum
PUBLIC COUNSEL
MARK D. ROSENBAUM (CA SBN 59940)
mrosenbaum@publiccounsel.org
JUDY LONDON (CA SBN 149431)
jlondon@publiccounsel.org

/s/ Shabnam Lotfi
LOTFI LEGAL LLC
SHABNAM LOTFI* (WI SBN 1090020)
shabnam@lotfilegal.com
VERONICA SUSTIC* (WI SBN 1093862)
*Pro hac vice forthcoming
veronica@lotfilegal.com

Attorneys for Plaintiffs