JOHNATHAN SMITH (*pro hac vice*)
SIRINE SHEBAYA (*pro hac vice*)
NIMRA AZMI (NY SBN 5466693)*‡
JOSEPH SAEI (CA SBN 321341)†‡
MUSLIM ADVOCATES
P.O. Box 66408
Washington, DC 20035
Telephone: (202) 897-2622
Facsimile: (202) 508-1007
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
nimra@muslimadvocates.org
yusuf@muslimadvocates.org

SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
LOTFI LEGAL, LLC
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974
shabnam@lotfilegal.com
veronica@lotfilegal.com

LUIS CORTES ROMERO (CA SBN 310852)
ALMA DAVID (CA SBN 257676)
IMMIGRANT ADVOCACY & LITIGATION
CENTER, PLLC
19309 68th Avenue S., Suite R102
Kent, WA 89032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591
lcortes@ia-lc.com
adavid@ia-lc.com

MARK D. ROSENBAUM (CA SBN 59940)
JUDY LONDON (CA SBN 149431)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
jlondon@publiccounsel.org

*Attorneys for Plaintiffs*

*Pro hac vice admission application forthcoming
†Admission application forthcoming
‡ Not admitted to practice in DC; supervised by members of the DC bar

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Tanaz Toloubeydokhti; Fathollah Tolou Beydokhti; Behnaz Malekghaeini; Afrooz Kharazmi; Afshan Alamshah Zadeh; Najib Adi; Ismail Alghazali; Malik Almathil; Khalil Ali Nagi; Hezam Alarqaban; Abdurraouf Gseaa; Sudi Wardere; Khadija Aden; Ali Altuhaif; Aziz Altuhaif; Soheil Vazehrad; Atefehossadat Motavaliabyazani;  Bamshad Azizi; Roghayeh Azizikoutenaei; Hojjatollah | Civil Case No. 3:18-cv-01587 <br><br> **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR WRIT OF MANDAMUS** |

FIRST AMENDED COMPLAINT - 1

Azizikoutenaei; Clyde Jean Tedrick II; Mitra Farnoodian-Tedrick; Farajollah Farnoudian; Farangis Emami; Maral Charkhtab Tabrizi; Zahra Rouzbehani; Bahram Charkhtab Tabrizi; Maryam Mozafari; Mohammad Mehdi Mozaffary; Behnam Babalou; Hoda Mehrabi Mohammad Abadi; Mahdi Afshar Arjmand; Ehsan Heidaryan; Najmeh Maharlouei; Nastaran Hajiheydari; Mohamad Hamami,

Plaintiffs,

-against-

KIRSTJEN NIELSEN, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; MICHAEL R. POMPEO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; KEVIN K. MCALEENAN, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION; L. FRANCIS CISSNA, in his official capacity as Director of U.S. Citizenship and Immigration Services; U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants.

## **INTRODUCTION**

1.     Presidential Proclamation 9645 issued on September 24, 2017 ("the Proclamation") prohibits the entry of all immigrants and certain categories of non-immigrants for nationals of Iran, Libya, Somalia, Syria, and Yemen.[1] The Proclamation provides for case-by-case waivers from the

---

[1] Under the terms of the Proclamation, all Syrian nationals are banned; all Libyan and Yemeni nationals seeking immigrant or non-immigrant B1/B2 visas are banned; all Iranian nationals except non-immigrants seeking F, M, or J visas are banned; and all Somali nationals seeking immigrant visas are banned.

FIRST AMENDED COMPLAINT - 2

ban for individuals who can "demonstrate" that denial of entry "would cause undue hardship, . . . would not pose a threat to national security, . . . and would be in the national interest." Ex. A, Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), § 3(c). The Proclamation provides several examples of circumstances in which waivers may be appropriate, and further requires the Secretary of State and the Secretary of Homeland Security to adopt guidance establishing when waivers may be appropriate for foreign nationals who would otherwise be banned.

2.    To date, however, no such guidance has been issued or publicly promulgated. The agencies do not appear to have established—and certainly have not provided any meaningful information to the public—about waiver application procedures, how waiver eligibility determinations are made, or whether any recourse exists for persons who are not considered for a waiver in the first instance.

3.    Immediately after the Proclamation first went fully into effect in December 2017, thousands of individuals, including many plaintiffs in this action, reported receiving blanket, boilerplate denials of both visas and waivers, most before ever having had an opportunity to apply or to "demonstrate" that they meet the eligibility criteria described in the Proclamation. *Id.* Individuals denied include those who had previously been informed by American consular officials that their visas had been approved. Others were informed that their eligibility for a waiver is being considered, but have been waiting for many months without a decision in their cases. Both public reports and the latest government statistics illustrate that the number of waiver grants has been "a minuscule percentage" of those eligible for visas. *Trump v. Hawaii,* 585 U.S. ___(2018) (Breyer, J., dissenting). By all indications, the waiver process has been "a fraud." Ex. B, Decl. of

FIRST AMENDED COMPLAINT - 3

1   Christopher Richardson, Esq., *Alharbi v. Miller*, No. 1:18-cv-02435 (E.D.N.Y. filed April 25,

2   2018), ECF No. 24-2.

3   4.      Plaintiffs and putative class members are U.S. citizens, lawful permanent residents, and

4   Iranian, Libyan, Somali, Syrian, and Yemeni foreign nationals whose visa applications have been

5   denied or stalled by the government's failure to provide fair and meaningful access to case-by-

6   case waivers. Many have approved visa petitions for their family members; others have family

7   members who have applied for immigrant or non-immigrant visas and been summarily denied or

8   indefinitely stalled; and others have applied for business-related or extraordinary ability visas to

9   the United States. All seek entry to the United States to be reunited with their families or because

10  of significant business or professional relationships in the United States.

11  5.      Based upon all available data and information, Defendants have adopted a policy or

12  practice of not instituting an orderly waiver process through which individuals may "demonstrate,"

13  as stated in the Proclamation, their eligibility for a case-by-case waiver. Ex. A, § 3(c).

14  6.      Defendants have further adopted a policy or practice of not providing information about

15  the waiver process and have thereby hindered Plaintiffs' and their family members' ability to make

16  a showing that they meet the relevant criteria.

17  7.      Defendants have also adopted a policy or practice of denying or stalling virtually all visa

18  issuance and waiver grants under the Proclamation, and have not given consular officials the

19  discretion to grant any waivers.

20  8.      As set forth below, the government's failure to provide a meaningful, orderly, and

21  accessible process through which individuals covered by the ban can demonstrate their eligibility

22  for a waiver violates the Administrative Procedure Act ("APA"), the Immigration and Nationality

23

24

25  FIRST AMENDED COMPLAINT - 4

Act ("INA"), and Plaintiffs' right to due process under the Fifth Amendment to the U.S. Constitution.

9.      Accordingly, Plaintiffs request that this Court order Defendants to immediately cease their unlawful policies and/or practices of refusing to receive or consider requests for waivers under the Proclamation for visa applicants; retract visa denials issued before an orderly process is put in place; provide clear guidance that defines key words and sets well-defined standards for consular officers and applicants to use; provide an orderly process by which applicants may demonstrate their eligibility for a waiver; and give full consideration for case-by-case waivers to all visa applicants as set forth in the Proclamation.

## CLASS DEFINITION

10.     Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the following two subclasses: (i) the "Family Member Class" and (ii) the "Visa Applicant Class."

11.     The **Family Member Class** is comprised of United States citizens and lawful permanent residents with approved family-based visa petitions or whose family members have applied for visa categories covered by the ban, and whose family members have been or will be refused pursuant to the Proclamation without an opportunity to apply for and be meaningfully considered for a waiver or are awaiting adjudication of a waiver.

12.     The **Visa Applicant Class** is comprised of Iranian, Libyan, Somali, Syrian, and Yemeni nationals who have applied for immigrant or nonimmigrant visas that have been or will be refused pursuant to the Proclamation without the opportunity to apply for and be meaningfully considered for a waiver or who are awaiting adjudication of a waiver.

FIRST AMENDED COMPLAINT - 5

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

13.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (Mandamus and Venue Act of 1962), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 220 (Declaratory Judgment Act). The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702. This Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1651, and 28 U.S.C. § 2201–2202.

14.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States acting in their official capacities and agencies of the United States; many Plaintiffs reside in this judicial district; and no real property is involved in this action.  Plaintiffs have exhausted all administrative remedies.

15.     Intradistrict assignment is proper in the San Francisco Division because a substantial part of the events or omissions that give rise to the claim occurred in San Francisco and Napa Counties. Civil L. R. 3-2(c), (d).

**PARTIES**

**I.     Plaintiffs**

16.     Plaintiff Afrooz Kharazmi is a U.S. citizen residing in Loveland, Ohio. She seeks to be reunited with her sister, for whom she has an approved family-based visa petition.

17.     Plaintiff Afshan Alamshah Zadeh is an Iranian national residing in Iran. Ms. Alamshah Zadeh has a pending immigrant visa based on Ms. Kharazmi's approved family-based immigrant visa petition.

18.     Plaintiff Tanaz Toloubeydokhti is a U.S. citizen residing in San Diego, California. She seeks to be reunited with her parents, for whom she has an approved family-based immigrant visa petition.

FIRST AMENDED COMPLAINT - 6

19.     Plaintiffs Fathollah Tolou Beydokhti and Behnaz Malekghaeini are Iranian nationals residing in Iran. Mr. Tolou Beydokhti and Ms. Malekghaeini have pending immigrant visas based on Ms. Toloubeydokhti's approved family-based immigrant visa petitions.

20.     Plaintiff Dr. Najib Adi is a U.S. citizen residing in Bristow, Virginia. He seeks to be reunited with his Syrian mother, for whom he has an approved family-based visa petition. He has been awaiting adjudication of her eligibility for a waiver for more than seven months.

21.     Plaintiff Ismail Alghazali is a U.S. citizen currently residing in Djibouti. He had an approved family-based petition for his Yemeni wife, but her visa application was denied at the interview in Djibouti in December 2017 and she was not considered for a waiver. He is in Djibouti with his wife and five-month-old son, whom he wishes to bring home with him to the United States.

22.     Plaintiff Malik Almathil is a U.S. citizen residing in New York City. He had an approved family-based petition for his Yemeni wife, but her visa application was denied at the interview in Djibouti in December 2017 and she was not considered for a waiver. He seeks to be reunited with his wife.

23.     Plaintiff Khalil Ali Nagi is a U.S. citizen residing in Schenectady, New York with his four-year-old U.S. citizen daughter. He has an approved family-based petition for his Yemeni wife, who had her interview in Djibouti in October 2017. She was told at her interview that her visa would be approved, but in March 2018, her visa was denied and she was informed that she would not be considered for a waiver. He seeks to be reunited with his wife.

24.     Plaintiff Hezam Alarqaban is a lawful permanent resident of the United States residing in Oakland, California. He seeks to be reunited with his Yemeni wife and eleven children, for whom

FIRST AMENDED COMPLAINT - 7

he has approved family-based visa petitions and who had been issued visas that were later revoked. He is awaiting adjudication of his family's eligibility for a waiver.

25.    Plaintiff Abdurraouf Gseaa is a U.S. citizen residing in Houston, Texas. He seeks to be reunited with his pregnant Libyan wife, for whom he has an approved family-based visa petition. He is awaiting adjudication of her eligibility for a waiver.

26.    Plaintiff Sudi Wardere is a U.S. citizen residing in Kirkland, Washington. She seeks to be reunited with her Somali husband, for whom she has an approved family-based visa petition, so that they can live together and so that he can meet their son. She is awaiting adjudication of his eligibility for a waiver.

27.    Plaintiff Khadija Aden is a lawful permanent resident of the United States residing in Seattle, Washington. She seeks to be reunited with her son, who is currently living in a refugee camp in Kenya and for whom she has an approved family-based petition.

28.    Plaintiff Ali Altuhaif is a U.S. citizen residing in Dearborn, Michigan. His Yemeni son won an immigrant visa through the diversity visa lottery but was told at his interview in Djibouti in July 2018 that his visa type is categorically ineligible for a waiver. He seeks to be reunited with his son.

29.    Plaintiff Aziz Altuhaif is a Yemeni national residing in Djibouti. He won the diversity visa lottery but was told at his interview in Djibouti in July 2018 that his visa type is categorically ineligible for a waiver. He seeks to be reunited with his family in the United States.

30.    Plaintiff Soheil Vazehrad is a U.S. citizen residing in Napa, California. He seeks to be reunited with his fiancée, for whom he has an approved K1 fiancé visa petition.

FIRST AMENDED COMPLAINT - 8

31.     Plaintiff Atefehossadat Motavaliabyazani is an Iranian national residing in Iran. Ms. Motavaliabyazani has a pending nonimmigrant visa based on Mr. Vazehrad's approved K1 fiancé visa petition.

32.     Plaintiff Bamshad Azizi is a lawful permanent resident of the United States residing in San Jose, California. He has assisted his parents in applying for B1/B2 visitor visas so that they may come visit him in the United States.

33.     Plaintiffs Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei are Iranian nationals residing in Iran. Mr. and Mrs. Azizikoutenaei have applied for B1/B2 visitor visas to visit their son Mr. Azizi in the United States.

34.     Plaintiff Clyde Jean Tedrick II is a U.S. citizen residing in Rockville, Maryland. He is married to an Iranian national and has assisted his parents-in-law in applying for B1/B2 visitor visas so that they may come visit his family in the United States.

35.     Plaintiff Mitra Farnoodian-Tedrick is a lawful permanent resident of the United States residing in Rockville, Maryland. She is married to Mr. Tedrick. She has assisted her parents in applying for B1/B2 visitor visas so that they may come visit her family in the United States.

36.     Plaintiffs Farajollah Farnoudian and Farangis Emami are Iranian nationals residing in Iran. They have applied for B1/B2 visitor visas so that they may visit their daughter Ms. Farnoodian-Tedrick, their son-in-law Mr. Tedrick, and their family in the United States.

37.     Plaintiff Maral Charkhtab Tabrizi is a lawful permanent resident of the United States residing in Tempe, Arizona. She is married to a U.S. citizen and has recently given birth to her first child. She has assisted her Iranian parents in applying for B1/B2 visitor visas so that they may come visit her and meet their grandchild in the United States.

FIRST AMENDED COMPLAINT - 9

38.     Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi are Iranian nationals residing in Iran. Ms. Rouzbehani and Mr. Charkhtab Tabrizi have applied for B1/B2 visitor visas so that they may come visit their daughter Ms. Tabrizi and meet their grandchild in the United States.

39.     Plaintiff Maryam Mozafari is a lawful permanent resident of the United States residing in San Francisco, California. She has assisted her Iranian father in applying for a B1/B2 visitor visa so that he may come visit her in the United States.

40.     Plaintiff Mohammad Mehdi Mozaffary is an Iranian national residing in Iran. Mr. Mozaffary has applied for a B1/B2 visa so that he may visit his daughter Ms. Mozafari in the United States.

41.     Plaintiff Mr. Behnam Babalou is an Iranian national residing in Iran who invested $500,000.00 in CMB Infrastructure Investment Group XIV, L.P. ("CMB"), located in San Bernardino, California. Mr. Behnam Babalou has an approved immigrant visa petition based on his investments and significant business ties in CMB.

42.     Plaintiff Hoda Mehrabi Mohammad Abadi is an Iranian national residing in Iran who invested $500,000.00 in Kimpton Hotels & Restaurants ("Kimpton Hotels") in Milwaukee, Wisconsin. She has an approved immigrant visa petition based on her $500,000.00 investment in Kimpton Hotels.

43.     Plaintiff Dr. Mahdi Afshar Arjmand is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

44.     Plaintiff Dr. Ehsan Heidaryan is an Iranian national, currently residing in Brazil, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

FIRST AMENDED COMPLAINT - 10

45.    Plaintiff Najmeh Maharlouei is an Iranian national currently residing in Shiraz, Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the national interest of the United States.

46.    Plaintiff Nastaran Hajiheydari is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the national interest of the United States.

47.    Plaintiff Mohamad Hamami is a Syrian national and a world-class violinist, currently residing in Dubai, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

## II.    Defendants

48.    Defendant Kirstjen Nielsen is the Secretary of Homeland Security and is sued in her official capacity. Secretary Nielsen is responsible for the Department of Homeland Security ("DHS")'s administration of the Immigration and Nationality Act ("INA") and its implementation and enforcement of the Proclamation.

49.    Defendant DHS is an executive department of the United States government, headquartered in Washington, DC. DHS is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

50.    Defendant Michael R. Pompeo is the Secretary of State and is sued in his official capacity. Secretary Pompeo oversees the Department of State ("State Department")'s activities with respect to the INA and its implementation and enforcement of the Proclamation.

51.    Defendant State Department is an executive department of the United States, headquartered in Washington, DC. The State Department has primary responsibility for issuing visas and for

FIRST AMENDED COMPLAINT - 11

implementing the Proclamation. The State Department is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

52.     Defendant Kevin K. McAleenan is the Acting Commissioner of U.S. Customs and Border Protection ("CBP") and is sued in his official capacity. Acting Commissioner McAleenan is responsible for CBP's implementation of the INA and its implementation and enforcement of the Proclamation.

53.     Defendant CBP is an administrative agency within DHS, headquartered in Washington, DC. CBP is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

54.     Defendant L. Francis Cissna is the Director of U.S. Citizenship and Immigration Services ("USICIS") and is sued in his official capacity. Acting Director Cissna is responsible for USCIS's implementation of the INA and its enforcement of the Proclamation.

55.     Defendant USCIS is an administrative agency within DHS, headquartered in Washington, DC. USCIS oversees lawful immigration to the United States, including the approval of visa petitions. USCIS is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

## STATEMENT OF FACTS

**I.     The Proclamation**

56.     On September 24, 2017, President Trump issued Presidential Proclamation 9645 ("the Proclamation"), entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats." Ex. A. The Proclamation is the third version of a travel ban enacted by President Trump in fulfilment of promises he made on the campaign trail to institute a "total and complete shutdown" on Muslims

FIRST AMENDED COMPLAINT - 12

entering the United States. Jenna Johnson, *Trump Calls for 'Total and Complete Shutdown of Muslims Entering the United States,'* Wash. Post (Dec. 7, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/12/07/donald-trump-calls-for-total-and-complete-shutdown-of-muslims-entering-the-united-states/?utm_term=.6cf6b32b aba2. *See also* Todd Green, *By any other name: Why the 'travel ban' really is a Muslim ban,* Religion News Service (July 3, 2018), https://religionnews.com/2018/07/03/by-any-other-name-why-the-travel-ban-really-is-a-muslim-ban/.

57.     The Proclamation puts in place an indefinite travel ban on most nationals of five[2] predominantly Muslim countries, including all immigrants and various categories of non-immigrants from each of the enumerated countries.[3] Alongside these entry restrictions, the Proclamation provides for a waiver that may be granted on a case-by-case basis to individuals who meet three specific criteria.[4] Ex. A, § 3(c); *infra* Section II.

58.     The Proclamation was challenged in court, and before its effective date, two district courts issued nationwide injunctions prohibiting implementation of the ban against individuals with "bona fide relationships" to persons or entities in the United States. *See Int'l Refugee Assistance Project v. Trump,* 265 F.Supp.3d 570 (D. Md. 2017); *Hawaii v. Trump,* 265 F.Supp.3d 1140 (D.

---

[2] The Proclamation originally included six Muslim-majority countries: Chad, Iran, Libya, Somalia, Syria, and Yemen. Ex. A, § 2(a). In April 2018, the administration removed Chad from the list of targeted countries. Press Release, Dep't of State, Presidential Proclamation Lifts Travel Restrictions for Chad (April 10, 2018), https://www.state.gov/r/pa/prs/ps/2018/04/280364.htm. The Proclamation also prevents entry of certain Venezuelan government officials and their family members and of all North Korean nationals. *See* Ex. A, § 2(d), (f).

[3] Under the terms of the Proclamation, all Syrian nationals are banned; all Libyan and Yemeni nationals seeking immigrant or non-immigrant B1/B2 visas are banned; all Iranian nationals except non-immigrants seeking F, M, or J visas are banned; and all Somali nationals seeking immigrant visas are banned.

[4] The Second Executive Order created a waiver process, Exec. Order No. 13780, 82 Fed. Reg. 13209, § 3(c) (Mar. 6, 2017), which the Proclamation extended.

FIRST AMENDED COMPLAINT - 13

Haw. 2017). On December 4, 2017, the Supreme Court granted Defendants' application for a stay

of the preliminary injunctions entered by the district courts, allowing full implementation of the

travel ban to proceed. *See Trump v. Int'l Refugee Assistance Project,* 138 S. Ct. 542 (2017). The

Supreme Court subsequently upheld the Proclamation on the merits. *Trump v. Hawaii*, 585 U.S.

___, 138 S. Ct. 2392 (2018).

59.     Since December 4, 2017, the Proclamation has been in full effect, and the only means by

which covered individuals from the banned countries may enter the United States is through grant

of a case-by-case waiver.

## II.     Case-by-Case Waivers under the Proclamation

60.     Section 3 of the Proclamation contains a subsection entitled "Waivers," which states:

> Notwithstanding the suspensions of and limitations on entry set
> forth in section 2 of this proclamation, a consular officer, or the
> Commissioner, United States Customs and Border Protection
> (CBP), or the Commissioner's designee, as appropriate, may, in
> their discretion, grant waivers on a case-by-case basis to permit the
> entry of foreign nationals for whom entry is otherwise suspended or
> limited if such foreign nationals demonstrate that waivers would be
> appropriate and consistent with subsections (i) through (iv) of this
> subsection [laying out waiver standards].

Ex.  A, § 3(c).

61.     The Proclamation explains that a waiver may be granted if, in a consular officer's or CBP's

discretion, a foreign national has demonstrated that: (1) denial of entry "would cause the foreign

national undue hardship"; (2) his or her "entry would not pose a threat to the national security or

public safety of the United States"; and (3) his or her "entry would be in the national interest." *Id.*

§ 3(c)(i).

62.     The Proclamation then specifies that while "case-by-case waivers may not be granted

categorically," they "may be appropriate, subject to the limitations, conditions, and requirements

FIRST AMENDED COMPLAINT - 14

set forth" in subsection (c), "in individual circumstances …." *Id*. § 3(c)(iv). It proceeds to give a number of examples of circumstances under which issuance of a waiver may be appropriate, including:

> (A) the foreign national has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date … of this proclamation, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;
>
> (B) the foreign national has previously established significant contacts with the United States but is outside the United States on the applicable effective date ... of this proclamation for work, study, or other lawful activity;
>
> (C) the foreign national seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;
>
> (D) the foreign national seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship;
>
> (E) the foreign national is an infant, a young child or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case ….

*Id.*

63.    The Proclamation also instructs that, "[t]he Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id*. § 3(c). It further directs the Secretaries to:

> [A]ddress the standards, policies and procedures for:

FIRST AMENDED COMPLAINT - 15

> (A) determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States;
>
> (B) determining whether the entry of a foreign national would be in the national interest;
>
> (C) addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to the restrictions and limitations imposed by this proclamation;
>
> (D) assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy the requirements of subsection (i) of this subsection; and
>
> (E) determining the special circumstances that would justify granting a waiver under subsection (iv)(E) of this subsection.

*Id*. § 3(c)(ii).

### III.   **Agency Guidance and Implementation**

64.     The Proclamation itself only provides scant details about the case-by-case waiver process. Instead, it directs the Secretary of State and the Secretary of Homeland Security to develop specific guidance for consular officers and visa applicants on how the waiver provisions will be implemented. *Id*. § 3(c).

65.     Despite this clear mandate, the agencies have failed to provide any meaningful guidance. *See Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("The Government … has offered no explanation for how these [discretionary waiver] provisions would function in practice: how would the 'national interest' be determined, who would make that determination, and when?").

66.     After the Supreme Court's lifting of the stays on the Proclamation, the State Department did issue, through its website, some minimal instructions regarding its immediate implementation.

FIRST AMENDED COMPLAINT - 16

Ex. C, Dep't of State, *New Court Order on Presidential Proclamation* (Dec. 4, 2017). That posting stated that consular officers will review eligibility for a waiver at the time of an applicant's interview. *Id*.

67.     Yet, as set forth below, Defendants have not provided any meaningful guidance about the waiver process, leaving applicants and their attorneys confused about the process and unable to submit documents that could "demonstrate" their eligibility for a waiver. Ex. D, Jay Gairson Decl.

68.     All available evidence shows that Defendants are not providing any meaningful individualized consideration of waiver applicants' eligibility.  Just days after the Proclamation went into effect, several organizations and attorneys, including undersigned counsel, began receiving reports from individuals covered by the ban of *pro forma,* mass denials of both visas and waivers by consular offices in Armenia, Turkey, Djibouti, Dubai, Abu Dhabi, and elsewhere. *See* Yeganeh Torbati & Mica Rosenberg, *Exclusive: Visa Waivers Rarely Granted under Trump's Latest U.S. Travel Ban: Data,* Reuters (Mar. 6, 2018), https://www.reuters.com/article/us-usa-immigration-travelban-exclusive/ exclusive-visa-waivers- rarely-granted-under-trumps-latest-u-s-travel-ban-data-idUSKCN1GI2DW; Ex. D, Jay Gairson Decl.; *infra* Section IV. Many of the individuals who were notified that they had been denied waivers, including Plaintiffs in this action, had never been informed about or provided an opportunity to apply for a waiver. *See infra* Section IV. Automatically denied individuals included those who had previously been informed that their visas had been approved. *See infra* Section IV.

> A.     The Guidance Provided by Federal Officials About the Waiver Process Has Been Non-Existent or Conflicting.

69.     After the Proclamation went into effect in December 2017, visa applicants immediately began to contact embassies and consulates abroad to ask for guidance and clarification, but

FIRST AMENDED COMPLAINT - 17

received no response or standard automated responses that did not address their questions or provide meaningful information. *See infra* Section IV. Attorneys contacted the State Department for clarification but also received inadequate and inconsistent responses. *Id.*

70.    More than seven months after the Proclamation went into effect and almost a year since its issuance, Defendants have yet to promulgate such guidance, and their practices continue to sow confusion and chaos. *See Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting) (stating that, although the Proclamation directs the Secretaries to develop guidance for consular officers, to the Court's "knowledge, no guidance has issued").

71.    In addition to the failure to promulgate adequate guidance to consular officers, Defendants have not offered meaningful definitions of key terms that determine eligibility under the Proclamation's waiver provisions, including "undue hardship" and "significant contacts." Instead, the State Department has only provided the following general statement in response to a query by a U.S. Senator:

> First, to satisfy the undue hardship criterion, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel. Second, the applicant's travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.
> Finally, to establish that the applicant does not constitute a threat to national security or public safety, the consular officer considers the information-sharing and identity-management protocols and practices of the government of the applicant's country of nationality as they relate to the applicant. If the consular officer determines, after consultation with the Visa Office, that an applicant does not pose a threat to national security or public safety and the other two requirements have been met, a visa may be issued with the concurrence of a consular manager.

FIRST AMENDED COMPLAINT - 18

Ex. E, Letter from Mary K. Waters, U.S. Dep't of State, to Chris Van Hollen, U.S. Senator (Feb. 22, 2018) ("First Van Hollen Letter").

72.     Although the State Department asserted in the same letter that "[t]he Department's worldwide guidance to consular officers regarding waivers is drawn directly from the Proclamation," *id.,* the above-quoted statement adds a requirement of showing "that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted," which does not appear anywhere in the Proclamation.

73.     Individuals who clearly meet the criteria outlined in the Proclamation and the statement provided to Senator Van Hollen are nonetheless routinely being denied waivers without due consideration, in some cases just days after the ban went into effect. *See, e.g., Trump v. Hawaii*, 138 S. Ct. at 2431 (Breyer, J., dissenting) (identifying "numerous applicants who could meet the waiver criteria," but who have nonetheless been summarily rejected, including scholars, relatives of U.S. citizens, and a Yemeni child with cerebral palsy,[5] and pointing to an amicus brief which "identified 1,000 individuals—including parents and children of U. S. citizens—who sought and were denied entry under the Proclamation, hundreds of whom seem to meet the waiver criteria.")

74.     This lack of clarity has left applicants confused about applicable standards of eligibility for waivers—whether their hardships are undue, their contacts significant—and has left consular officers with the understanding that the goal is to deny waivers to the fullest extent possible. Ex. B, Christopher Richardson Decl.

---

[5] After Justice Ruth Bader Ginsburg inquired about her case at oral argument in Trump v. Hawaii on April 25, 2018, a waiver was granted in her case and her visa was issued, allowing her to come to the United States with her U.S. citizen father.

FIRST AMENDED COMPLAINT - 19

75.    Nor has the State Department provided an orderly process through which individuals who are covered by the ban may apply or seek to "demonstrate"—as the Proclamation specifically provides—their eligibility for a waiver. *See infra* Section IV. Instead, individuals, attorneys, and organizations seeking to assist impacted community members have had to resort to guesswork and have had to invent a process by which to obtain consideration of materials relevant to any meaningful waiver determination. *See* Ex. D, Jay Gairson Decl.

76.    Further, even where the State Department has provided minimal guidance, that guidance does not appear to be followed or applied with any consistency. For example, the State Department website provides a definition of "close family member," stating that the definition for purposes of the Proclamation is the same as the definition of "immediate relative" contained in the INA.[6] Ex. F, Dep't of State, *Revisions to Presidential Proclamation 9645* (Apr. 10, 2018) (citing 8 U.S.C. § 1151(b)(2)(A)(i)). But according to an email received by counsel from the U.S. consulate in Vancouver, Canada, visa applicants who seek to be reunited with a parent in the United States are ineligible for consideration for a waiver if they are over the age of 21, a definition that is found nowhere in immigration law and that is the reverse of the definition of "immediate relative" in the cited provision. The email exchange reads in relevant part as follows:

> COUNSEL: [I]t appears as though my client, [REDACTED], has been denied the opportunity to request a waiver of the presidential proclamation.
> According to the presidential proclamation itself and guidance on the State Department's website, foreign nationals who seek to enter the US to be reunited with a close family member (e.g. spouse, child, or parent) are eligible for requesting a waiver.
> My client is the daughter of a United States citizen. Could you kindly explain why your office has denied my client the opportunity to request a waiver of the presidential proclamation?

---

[6] 8 U.S.C. § 1151(b)(2)(A)(i) defines "immediate relatives" as the children, spouses, and parents of U.S. citizens, and only allows children *over* the age of 21 to petition for immigrant visas for their parents.

FIRST AMENDED COMPLAINT - 20

1

2

3

4

> CONSULATE: A consular officer may issue a visa based on a listed waiver category to nationals of countries identified in the Presidential Proclamation on a case-by-case basis.
> It has been determined that your client, [REDACTED], does not meet the definition of close family as she is over 21 years of age.
> This decision cannot be appealed.

5    Ex. G, Email sent by U.S. Consulate General in Vancouver, Canada, to Attorney Shabnam Lotfi

6    (Jan. 9, 2018).

7    77.    Applicants in certain visa categories, in particular the diversity visa lottery category, have

8    been told that they are categorically not eligible to be considered for a waiver—an assertion that

9    is both false and contrary to the terms of the Proclamation. *See infra* Section IV.C. In the absence

10   of standards to guide consular officers in their decision-making, different posts appear to have

11   adopted different practices. Ex. D, Jay Gairson Decl. The result has been an almost-uniform

12   denial of case-by-case waivers.

13   78.    Attorneys have also been told by consulates that they may not submit documents in

14   support of waiver applications for their clients, and that "[t]here is no role or requirement for

15   legal services to facilitate the waiver process." The email exchange reads in relevant part as

16   follows:

17

18

19

20

21

22

> COUNSEL: Could you please kindly let us know whether you will allow our office to submit a waiver packet on behalf of the beneficiary to outline and present evidence that he meets the grounds for approval of a waiver in consideration of the three grounds outlined by Sections 3(c) of the Proclamation…
> CONSULATE: As we said, we have all the required documents at this time. We have already submitted a waiver request on behalf of the applicant, as the applicant was informed during the interview. There is no role or requirement for legal services to facilitate the waiver process, which the Embassy initiated as soon as the applicant was interviewed. Please note – and inform your client – that only U.S. government officials can author waiver requests.

23

24   Ex. H, Email correspondence between Attorney Parastoo Zahedi and the Consular

      Section of the U.S. Embassy in Abu Dhabi (July 18-19, 2018).

25

FIRST AMENDED COMPLAINT - 21

79.     Existing guidance also does not explain how consular officers should consider the eligibility for a waiver of applicants who, like several Plaintiffs in this action, were interviewed prior to implementation of the Proclamation but were in administrative processing[7] at the time the ban went into effect, or for visa applicants whose applications were approved prior to implementation of the ban but who had not yet gotten their visas stamped in their passports. *See, e.g.,* Ex. K, Findings of Fact and Conclusions of Law, *Alharbi v. Miller*, No. 1:18-cv-02435 (E.D.N.Y. filed April 25, 2018), ECF No. 20.

80.     The government has staunchly refused to provide meaningful information or to institute an orderly, predictable process by which individuals may apply for a case-by-case waiver. Applicants are thus at a loss for what to do—they do not know whether to contact the embassy or whether the embassy will contact them; whether they should wait until administrative processing is completed or request a waiver while their cases are still pending administrative processing.[8]

---

[7] Administrative processing is a period after a visa interview during which applicants undergo additional screening outside of "normal" visa processing. Maggio & Kattar & The Pennsylvania State University Law School's Center for Immigrants' Rights, *Administrative Processing FAQ*, 1, Penn. State L. Sch., https://pennstatelaw.psu.edu/sites/default/files/documents/pdfs/ Immigrants/Administrative-Processing-FAQ.pdf (last visited July 29, 2018). "Before issuing a visa, consular officers review different databases to determine if information exists that may impact individual eligibility for a visa. A 'hit' on a particular database occurs when there is a match between the visa applicant and a database. These hits may be based on criminal convictions, security risks, and prior visa overstays or denials (this list is non-exhaustive)." *Id.* A hit may also occur when an applicant's name is similar to the name of someone suspected of criminal activity. *Id.* at 4. "When an individual case has been tagged in a database, the Department of State, at the request of the consular post, may initiate administrative processing." *Id.* at 1. Cases filed by nationals of several countries are routinely placed in administrative processing. *Id.* at 3.

[8] In fact, the waiver process remains so opaque that, in addition to formal requests for information from U.S. senators, two civil rights organizations, including undersigned counsel, have filed a FOIA request seeking documents from the State Department that could provide some clarity and transparency about the travel ban waiver process. Muslim Advocates and

FIRST AMENDED COMPLAINT - 22

B.  Denial Letters Issued by Consular Officers Provide Further Evidence of the Dearth of Meaningful Guidance.

81.     Defendants provided the consulates and embassies abroad with a template letter to provide to applicants when they have been denied a visa pursuant to the Proclamation. The letter has two options for a consular officer to select: (1) "Taking into account the provisions of the Proclamation, a waiver will not be granted in your case"; or (2) "The consular officer is reviewing your eligibility for a waiver under the Proclamation." Ex. I, Embassy letter regarding eligibility for waiver under the Proclamation.

82.     These form letters further confirm that not all individuals are being considered for case-by-case waivers, in direct conflict with agency statements that "[a] consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation . . . and, if so, whether the applicant qualifies for an exception or a waiver." Ex. F, Dep't of State, *Revisions to Presidential Proclamation 9645* (Apr. 10, 2018). As set forth previously, scores of denials were issued just days after the Proclamation went into effect, and numerous individuals who have received these form denials at the interview were told that their eligibility would not be considered and that they may not submit additional documents in support of such consideration. *See infra* Section IV.

C.  Defendants Have Granted a "Minuscule Percentage" of Waiver Applications.

---

Center for Constitutional Rights, *Freedom of Information Act Request Regarding the Waiver Process Provided for in Presidential Proclamation 9645* (January 23, 2018), https://www.muslimadvocates.org/files/2018.01.23_FOIA_Proclamation-Waivers-Signed.pdf. The State Department has not yet complied with that request, which is currently being litigated in the U.S. District Court for the District of Columbia. *Muslim Advocates v. Dep't of State*, No. 1:18-cv-01546 (D.D.C. filed June 28, 2018).

FIRST AMENDED COMPLAINT - 23

83.     To date, the overwhelming majority of waiver applicants have been denied or stalled by Defendants.

84.     In a letter dated February 22, 2018, the State Department disclosed that, as of January 8, only two waivers were granted to applicants of the banned countries out of at least 6,555 applicants who were eligible to be considered for waivers—a rejection rate of more than 99%. Ex. E, First Van Hollen Letter.

85.     The State Department subsequently asserted that as of March 6, 2018, 100 additional waivers had been cleared or granted, likely to an expanded pool of applicants—moving the rejection rate to at best 98% of visa applicants. Torbati & Rosenberg, *Exclusive: Visa Waivers Rarely Granted, supra* Section III.

86.     A more recent letter shows that the situation has not improved. Ex. J, Letter from Mary K. Waters, U.S. Dep't of State, to Chris Van Hollen, U.S. Senator (June 22, 2018) ("Second Van Hollen Letter"). As of April 30, out of 27,129 applicants from banned countries who were ostensibly considered for waivers, only 579 had been "cleared" for waivers. That figure rose to 768 as of May 31, *id.* and according to the latest numbers from the State Department website is now at 996. U.S. Dep't of State, *June 26 Supreme Court Decision on Presidential Proclamation 9645* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html (last visited July 29, 2018). On the most favorable reading of those numbers, the rejection rate remains greater than 98%. *See Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting) ("That number, … however, when compared with the number of pre-Proclamation visitors, accounts for a miniscule percentage of those likely eligible for visas, in such categories as persons requiring medical treatment, academic visitors, students, family

FIRST AMENDED COMPLAINT - 24

members, and others belonging to groups that, when considered as a group (rather than case by case), would not seem to pose security threats.").

87.     Critically, however, not all individuals "cleared" for waivers have been *granted* a waiver or issued a visa. Based on all available evidence, being "cleared" for a waiver simply means that the consulate has forwarded the case for *consideration* for a waiver grant by the State Department in Washington, DC. Ex. D, Jay Gairson Decl. Individuals "cleared" for waivers may continue to be stalled and may not ultimately be granted a visa, rendering the government's 996 figure essentially meaningless. The percentage of persons who have *actually* been granted a waiver and issued a visa is, based upon all available evidence, considerably smaller than the bare 2 percent of individuals who have been "cleared" for consideration for a waiver grant.

> D.   Former Consular Officials Have Confirmed the Absence of a Meaningful Waiver Process.

88.     Former consular officers have confirmed the absence of a meaningful waiver consideration process.

89.     In a sworn affidavit submitted in related litigation in the Eastern District of New York, former consular official Mr. Christopher Richardson wrote:

> As a Consular officer previously employed by the State Department my impression and interpretation of how we as officers were to apply the waiver process was as follows:
>
> (a) They gave us a list of things and we would go down the list one by one until we were able to determine at all possible cost that the person was not eligible to even apply for the waiver. My understanding was no one is to be eligible to apply.
>
> (b) If for some reason an applicant made it through the list and we had no choice but to determine we could find an applicant eligible to apply, regardless of the [Presidential Proclamation] instructions that we had "discretion to grant the waiver," we were not allowed to exercise that discretion. We were mandated to send to Washington that we found this

FIRST AMENDED COMPLAINT - 25

applicant eligible to apply and Washington would then make the decision
to grant or deny the waiver.

Ex. B, Christopher Richardson Decl.; *see also* Jeremy Stahl, *"The Waiver Process Is Fraud,"* Slate (June 15, 2018), https://slate.com/news-and-politics/2018/06/trump-travel-ban-waiver-process-is-a-sham-two-consular-officers-say.html. A second consular official submitted a declaration to the same effect. *Id.*

90.    Mr. Richardson further stated: "[T]here really is no waiver [process] and the Supreme Court was correct to point out that the waiver [process] is merely 'window dressing.'" Ex. B, Christopher Richardson Decl. Mr. Richardson's description of the waiver process has been corroborated by another consular officer. Stahl, *supra*.

91.    These statements reveal a process that conflicts with the plain text of the Proclamation, the information provided by the State Department on its website and in letters to U.S. senators, and arguments made by the government while defending against litigation challenging the ban. As described by Mr. Richardson, officers were instructed not to consider applicants for waivers in good faith and to seek to deny eligibility to even apply for a waiver. They also were not allowed to exercise their discretion to grant a waiver even where they did consider an applicant to be eligible.

92.    Consistent with Mr. Richardson's representations, numerous visa applicants have stated that when they attended their visa interviews, officers informed them that waivers are processed in Washington, D.C. *See* Ex. D, Jay Gairson Decl.; *infra* Section IV. This is in conflict with the State Department's claims that a visa applicant's eligibility for a waiver is determined by the consular officer at the time of the interview.

93.     As a result of the inconsistent statements, the absence of meaningful guidance, and the absence of an orderly process by which applicants may "demonstrate" their eligibility for a waiver, applicants do not know who is adjudicating their requests for waivers, what information they are considering, and what the standards really are to qualify for a waiver grant.

## IV.     **The Plaintiffs**

94.     Plaintiffs include:

a.  U.S. citizens and lawful permanent residents who are of Iranian, Libyan, Somali, Syrian, and Yemeni national origin and/or who have Iranian, Libyan, Somali, Syrian, and Yemeni family members who seek to enter the United States to permanently reside with their family members;

b.  Iranian family members of U.S. citizens or lawful permanent residents who seek to enter the United States on family-based immigrant visas;

c.  Yemeni nationals who are diversity visa lottery winners with family in the United States;

d.   U.S. citizens and lawful permanent residents who are of Iranian, Libyan, Somali, Syrian, and Yemeni national origin and/or who have Iranian, Libyan, Somali, Syrian, and Yemeni family members who seek to enter the United States on non-immigrant visas;

e.  Iranian family members of U.S. citizens or lawful permanent residents who seek to enter the United States on fiancé or visitor visas;

f.  Iranian nationals who have approved immigrant visas because of their substantial investment in the United States; and

g.  Iranian and Syrian nationals who have approved immigrant visas because of their extraordinary abilities.

FIRST AMENDED COMPLAINT - 27

95.     Several Plaintiffs have approved visa petitions for their family members. Others have approved investment or extraordinary ability immigrant visas that have since been denied or stalled under the Proclamation. All are suffering a range of ongoing harms including separation from their family and loved ones; loss of jobs, research opportunities, and investments; emotional distress caused by extended separation from loved ones at critical times in their lives including pregnancy and childbirth; and a range of financial losses for visa application fees, travel costs, accommodation costs, medical fees, and other costs directly or indirectly associated with the visa application process.

96.     Each of the Plaintiffs' circumstances fit directly under one or more of the examples offered in the Proclamation as illustration of circumstances under which a waiver grant may be appropriate. Many have received boilerplate letters denying them visas and waivers. Others have been informed that their eligibility for a waiver is being considered, but have had their applications stalled and have been awaiting a decision on their visa applications for months. Most have had no opportunity to submit documents or materials demonstrating their eligibility for a waiver.

97.     Plaintiffs all seek clear guidance about the waiver process, an opportunity to apply in an orderly manner with full understanding of the criteria and methods by which waiver determinations are made, and full and timely adjudication of their waiver requests.

A.     Family members seeking reunification in the United States

i.     *Tanaz Toloubeydokhti, Fathollah Tolou Beydokhti, and Behnaz Malekghaeini*

98.     Plaintiff Tanaz Toloubeydokhti is a U.S. citizen of Iranian origin who resides in San Diego, California.

99.     Ms. Toloubeydokhti is employed as an obstetric-gynecologist and has dedicated her career to improving the lives of American mothers and their babies.

FIRST AMENDED COMPLAINT - 28

100.    Ms. Toloubeydokhti petitioned for immigrant visas for her parents, Plaintiffs Fathollah Tolou Beydokhti and Behnaz Malekghaeini, both Iranian nationals, on September 1, 2016. Her petitions were approved, and their visa interviews were scheduled for December 21, 2017, at the U.S. Embassy in Yerevan, Armenia.

101.    Despite the lack of guidance or information about waiver applications and criteria for consideration, Mr. Tolou Beydokhti and Ms. Malekghaeini put together documents they believed would demonstrate that they meet the criteria for a waiver under the terms of the Proclamation. But when they attempted to present those documents to the consular official, the official refused to review them, stated that they did not qualify for a waiver, and stated that their visas were denied.

102.    Mr. Tolou Beydokhti and Ms. Malekghaeini's cases fit within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

103.    Ms. Toloubeydokhti has suffered significant emotional distress because she has been deprived of the opportunity to have her parents present during her pregnancy and at the birth of her child. Her parents have similarly suffered emotional distress at their separation from their daughter during her time of need.

104.    The family has also suffered and is continuing to suffer significant financial losses. They have paid filing fees and travel costs which they will be unable to recover.  Ms. Toloubeydokhti now also has to incur significant childcare expenses in the absence of her parents, who would have helped take care of her child while she is at work.

   *ii.    Afrooz Kharazmi and Afshan Alamshah Zadeh*

105.    Plaintiff Afrooz Kharazmi, a U.S. citizen of Iranian origin residing in Loveland, Ohio, filed an immigrant visa petition with USCIS on June 1, 2004 for her sister, Plaintiff Afshan Alamshah Zadeh, an Iranian national currently residing in Iran.

FIRST AMENDED COMPLAINT - 29

106.    Ms. Alamshah Zadeh waited patiently for 12 years for her priority date[9] to become current.

107.    USCIS approved her petition in October 2016. The U.S. Embassy in Abu Dhabi, UAE, scheduled Ms. Alamshah Zadeh's immigrant visa interview for January 7, 2018.

108.    Ms. Alamshah Zadeh attended the interview and was informed during the interview that her immigrant visa was denied pursuant to the Proclamation.

109.    At no point was Ms. Alamshah Zadeh informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

110.    At no point was Ms. Alamshah Zadeh provided an opportunity to apply for a waiver or to submit documents in support of such application.

111.    Accordingly, the consular officer was not made aware of and likely did not consider any factors that would have been relevant to determining whether continuing separation would cause her and her family members "undue hardship." Ms. Alamshah Zadeh has been living in limbo for years while waiting to rejoin her family in the United States, and has not settled down or planned for her future in Iran because she reasonably believed that she would soon be reunited with her two U.S. citizen parents and her U.S. citizen sister.

112.    Ms. Alamshah Zadeh's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

---

[9] An applicant's priority date is the date upon which her application was filed. Unless the applicant is a spouse, parent, or minor child of a U.S. citizen, the applicant must wait until his or her priority date becomes "current" before she can apply for adjustment of her status to that of a lawful permanent resident. For siblings, priority dates can take more than a decade to become current.

FIRST AMENDED COMPLAINT - 30

113.   Ms. Kharazmi and Ms. Alamshah Zadeh have endured years of separation from each other. Ms. Alamshah Zadeh's entire family are U.S. citizens residing in the United States; she is the only family member left in Iran and now risks being permanently separated from them.

114.   Ms. Kharazmi and Ms. Alamshah Zadeh have also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which they will be unable to recover.

   *iii.*   *Dr. Najib Adi*

115.   Plaintiff Dr. Najib Adi is a U.S. citizen of Syrian origin who owns a highly successful dental practice in Gainesville, Virginia. He employs close to 20 people and provides dental services to well over 4,000 patients.

116.   Since war broke out in Syria in 2011, Dr. Adi has been unable to visit his family back home. His father was deceased in 2014 and he was not able to say goodbye or to attend his funeral. His mother is a 70-year-old widow living in war-torn Damascus. He wishes to bring her home so that she can spend her golden years with him, his wife, and his two children and so they can take care of her as she grows older.

117.   In February 2017, he petitioned for a family-based immigrant visa for his mother. The petition was approved in August 2017, and her interview was scheduled at the U.S. consulate in Amman, Jordan for December 26, 2017.

118.   Hoping to bring his mother home with him after the interview, Dr. Adi traveled to Jordan and went with his mother to the interview.

119.   At no point during this process was Dr. Adi or his mother informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation. However, on his own initiative and with the assistance of an immigration attorney, he prepared a letter and documentary evidence outlining the reasons his mother should be granted a waiver under the

FIRST AMENDED COMPLAINT - 31

Proclamation, and presented this evidence to the consular official at the interview. The consular official told Dr. Adi and his mother that because of the Proclamation, he is unable to grant her a visa even though everything looks to be in order, but that she would be considered for a waiver grant.

120.     For more than seven months since that time, Dr. Adi and his mother have been waiting for word on whether she has been granted a waiver. They have received no further information despite multiple queries, including a congressional inquiry, about the status of her case.

121.     Dr. Adi is suffering severe emotional distress at his separation from his mother, and his feeling of helplessness at not being able to take care of her when she needs him. He is worried about her safety in Syria and only wishes to bring her home so they can make up for lost time being apart from each other. Dr. Adi is additionally suffering emotional distress because he feels he is being treated like a second-class citizen and not being allowed to access the full privileges of citizenship due to his religion and national origin.

122.     Dr. Adi has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

   *iv.    Ismail Alghazali*

123.     Plaintiff Mr. Ismail Alghazali is a U.S. citizen of Yemeni origin currently residing in Djibouti. He was compelled to leave his home in the United States in order to be with his Yemeni wife, who has been unable to come to the United States because of the Proclamation.

124.     He petitioned for a family-based immigrant visa for his wife in or around June 2016, and the petition was approved on November 23, 2016. Her interview was scheduled for January 3, 2018 at the U.S. consulate in Djibouti.

FIRST AMENDED COMPLAINT - 32

125.    She attended her interview and was informed immediately that her visa was denied and that she would not be considered for a waiver.

126.    At no point was Mr. Alghazali or his wife informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

127.    At no point was Mr. Alghazali or his wife provided an opportunity to apply for a waiver or to submit documents in support of such application.

128.    Mr. Alghazali's wife's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

129.    Mr. Alghazali and his wife are currently stuck in Djibouti, where life is difficult and extremely expensive. Mr. Alghazali was forced to leave his job in the United States because his wife, who was pregnant at the time, could not be on her own in Djibouti. They are unable to go to Yemen, which is currently in the throes of a violent civil war the United Nations has described as the worst humanitarian crisis in the world.[10]  There is no security or stability; schools and health centers are closed; and there is no safe drinking water, access to food, or electricity in large portions of the country.

130.    Mr. Alghazali and his wife are experiencing ongoing difficulties in Djibouti on a number of levels. About a month after her interview, Mr. Alghazali's wife went into labor in the middle of the night. It took Mr. Alghazali a long time to find a taxi or an ambulance to take her to the hospital. When he finally found a taxi that would take them to the hospital, his wife was already

---

[10] *See* Daniel Nikbakht & Sheena McKenzie, *The Yemen war is the world's worst humanitarian crisis, UN says,* CNN (April 3, 2018), https://www.cnn.com/2018/04/03/middleeast/yemen-worlds-worst-humanitarian-crisis-un-intl/index.html; U.S. Dep't of State, *Yemen Travel Advisory* (Jul 5, 2018), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/yemen-travel-advisory.html.

FIRST AMENDED COMPLAINT - 33

1   in the process of delivering their baby, who was born in the taxi cab with no medical assistance.

2   He caught the baby in his hands and held him until they arrived at the hospital. Since that time,

3   his wife has suffered physical and emotional distress because of this experience. They continue

4   to live in extremely difficult circumstances in Djibouti, with no ability to work or to study.

5   131.   Mr. Alghazali's entire family are U.S. citizens. All reside in the United States, except for

6   his younger sister who accompanied him to Djibouti because he is her legal guardian. She suffers

7   from a speech disability, insomnia, depression, and loss of concentration. He is unable to

8   properly provide for her in Djibouti, and she is unable to access the services she needs. He

9   desperately needs to return to the United States with his wife, his infant son, and his sister, in

10  order to be able to take care of his family.

11      v.    *Malik Almathil*

12  132.   Plaintiff Malik Almathil is a U.S. citizen residing in New York City.

13  133.   In March 2015, he petitioned for a family-based immigrant visa for his wife, a Yemeni

14  national currently residing in Jordan. The petition was approved shortly thereafter, and his wife

15  attended her visa interview in Djibouti on July 31, 2017.

16  134.   On December 17, 2017, shortly after the Proclamation went into full effect, she received a

17  boilerplate denial of a visa and waiver.

18  135.   At no point was Mr. Almathil or his wife informed that his family could seek to

19  "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

20  136.   At no point was Mr. Almathil or his wife provided an opportunity to apply for a waiver or

21  to submit documents in support of such application.

22  137.   Mr. Almathil's wife's case fits within one of the examples provided in the Proclamation as

23  a situation in which a grant of a waiver may be appropriate.

FIRST AMENDED COMPLAINT - 34

138.    Mr. Almathil is suffering severe emotional distress at his inability to be with his wife and to bring her home with him to the United States. Because of the situation in Yemen, his wife had to leave the country in 2015 and is unable to return. Mr. Almathil had to give up continuing his college education in order to go be with his wife while they awaited processing of her visa application, and he spent two years with her in Djibouti trying to bring her home. Because of the significant expenses associated with living in Djibouti, he ultimately had to return to the United States to resume earning a living so that he can provide for himself and his wife. His ongoing separation from his wife is the most difficult thing he has ever had to endure.

139.    In addition to the significant costs of living in Djibouti, Mr. Almathil has spent thousands of dollars in filing fees, travel costs, and other expenses related to his wife's visa application, which he will be unable to recover.

vi.    *Khalil Ali Nagi*

140.    Plaintiff Khalil Ali Nagi is a U.S. citizen residing in Schenectady, New York with his four-year-old U.S. citizen daughter.

141.    In December 2015, he petitioned for a family-based immigrant visa for his Yemeni wife. The petition was approved in 2016, and her interview was scheduled in Djibouti for July 2017. The airport in Yemen was closed at that time, however, and she was unable to leave the country to attend her interview, which was rescheduled for October 31, 2017. Mr. Nagi traveled with her to Djibouti, where she attended the interview and was told that her application looked good and that her visa would be approved.

142.    Unable to return to Yemen and without an issued visa to the United States, Mr. Nagi, his wife, and their four-year-old child remained in Djibouti to wait for her visa to be issued. But in March 2018, she was informed that she would not be approved for a visa or a waiver.

FIRST AMENDED COMPLAINT - 35

143.    Mr. Nagi had to return to the United States along with his four-year-old daughter, forced to leave his wife behind. He is experiencing severe emotional distress because of their separation, and his four-year-old daughter constantly cries for her mother. He feels that he is unable to comfort her and that the distress she is suffering because of her separation from her mother is having lasting negative effects on her. He is desperate to be reunited with his wife so that their family can live together in their home in the United States.

144.    Mr. Nagi has paid thousands of dollars in living expenses, travel costs, filing fees, and other costs related to his wife's visa application, which he will be unable to recover.

   *vii.    Hezam Alarqaban*

145.    Plaintiff Hezam Alarqaban is a lawful permanent resident of Yemeni origin residing in Oakland, California.

146.    In March 2012, he petitioned for a family-based immigrant visa for his wife and his eleven children, all of whom are Yemeni nationals. The petition was approved in 2016, and the family had their interview at the U.S. consulate in Malaysia in March 2016.

147.    As the situation in Yemen deteriorated, the family moved to Djibouti in December 2016. They continued to wait for issuance of their visas, which were finally stamped in their passports in February 2017.

148.    In June 2017, however, their visas were canceled and stamped "revoked without prejudice." They submitted additional documents and in October 2017, their application was once again sent to the embassy in Djibouti.

149.    They attended another interview at the U.S. consulate in Djibouti in February 2018 and did not receive any further communication until June 2018, when they were told that their eligibility for a waiver was being reconsidered.

FIRST AMENDED COMPLAINT - 36

150.    At no point was Mr. Alarqaban or his family informed that his family could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

151.    At no point was Mr. Alarqaban or his family provided an opportunity to apply for a waiver or to submit documents in support of such application.

152.    Mr. Alarqaban's family's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

153.    Mr. Alarqaban has suffered and is continuing to suffer severe emotional distress at his separation from his family. He is not able to afford travel to visit his family. During the entire six years that they have been separated from each other, he has only been able to spend a total of two months with his wife and children.

154.    Mr. Alarqaban has incurred enormous expense supporting his family in Djibouti, where cost of living is extremely high. He has also paid thousands of dollars in filing fees, travel costs, medical fees, and other costs associated with the visa application process, which he will be unable to recover.

    *viii.    Abdurraouf Gseaa*

155.    Plaintiff Abdurraouf Gseaa is a U.S. citizen of Libyan origin who resides in Houston, Texas. He petitioned for a family-based immigrant visa petition for his wife, who is a Libyan national, on October 2016.

156.    USCIS approved the petition and scheduled her for an interview in April 2018 at the U.S. consulate in Casablanca, Morocco. She was unable to obtain a visa to travel to Morocco, however, and the interview had to be rescheduled.

FIRST AMENDED COMPLAINT - 37

157.    His wife's interview was then moved to the U.S. consulate in Tunis, and rescheduled for July 12, 2018. She attended her interview and was told that her eligibility for a waiver would be considered but that it would take several months to obtain a response.

158.    At no point was Mr. Gseaa or his wife informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

159.    At no point was Mr. Gseaa or his wife provided an opportunity to apply for a waiver or to submit documents in support of such application.

160.    Mr. Gseaa's wife's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

161.    Mr. Gseaa's wife is currently about six months pregnant with their first child, and she is alone in Libya, where the situation is precarious and the country has been ravaged by violence and war. Because of their separation and in order to give himself more flexibility to spend time with her, Mr. Gseaa had to quit a stable and well-paying job and has now become an Uber driver. He travels back and forth to Libya because he cannot bear to leave his wife alone, especially while she is pregnant with their baby. He cannot wait for the time when he can bring her home and they can live together and raise their child in the United States.

162.    Mr. Gseaa has spent thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

   *ix.    Sudi Wardere*

163.    Plaintiff Sudi Wardere is a U.S. citizen of Somali origin who resides in Kirkland, Washington. She petitioned for a family-based immigrant visa for her husband in October 2016. Her husband is a Somali national who has resided in South Africa since 2005.

FIRST AMENDED COMPLAINT - 38

164.    USCIS approved the visa petition on March 31, 2017, and Ms. Wardere's husband attended his interview at the U.S. consulate in South Africa on February 5, 2018. The consulate then interviewed him again on March 22, 2018. Since that time, they have been awaiting a decision on his visa application.

165.    At no point was Ms. Wardere or her husband informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

166.    At no point was Ms. Wardere or her husband provided an opportunity to apply for a waiver or to submit documents in support of such application.

167.    Ms. Wardere's husband's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

168.    Ms. Wardere has suffered great hardship because of their separation from each other. On May 26, 2018, she gave birth to their son, alone and without her husband's support. Her husband has yet to meet their child because she is unable to afford travel to South Africa while they are maintaining two separate households, and she cannot leave her job for long periods of time.

169.    Ms. Wardere was compelled to go back to work immediately after having her baby, who is now in daycare. He is frequently sick and she has had to take him to the emergency room on four separate occasions. She had to spend Eid-al-Fitr, one of the most important Muslim holidays, without her husband, and has had enormous difficulty juggling work and being a single parent to their child.

170.    Ms. Wardere's husband is also in a precarious situation. He owns a store in South Africa, which has been closed several times because of riots. Members of the Somali community in South Africa are frequently subjected to xenophobic attacks, and his store was robbed several times.

171.   Ms. Wardere has additionally suffered emotional distress because she believes she is being treated differently on account of her religion and nationality, and is not being allowed to access all the privileges of being a U.S. citizen simply because of her religion and national origin.

172.   In addition to the costs of maintaining two households, Ms. Wardere and her husband have also spent thousands of dollars in filing fees and medical fees, which they will be unable to recover.

   x.   *Khadija Aden*

173.   Plaintiff Khadija Aden is a lawful permanent resident of Somali origin who resides in Seattle, Washington. In October 2015, she petitioned for a family-based immigrant visa for her son, who is Somali but has never been to Somalia.

174.   Her petition was approved and her son attended his interview at the U.S. consulate in Addis Ababa, Ethiopia on June 11, 2018. His visa was denied at the interview, and he received a boilerplate letter stating that he is ineligible for a waiver.

175.   At no point was Ms. Aden or her son informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

176.   At no point was Ms. Aden or her son provided an opportunity to apply for a waiver or to submit documents in support of such application.

177.   Ms. Aden's son's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

178.   In fact, Ms. Aden's son arguably should not even be subject to the ban, as he has never been to Somalia and therefore should not be considered a Somali national. He was born in a refugee camp in Kenya and has lived in that camp his entire life. His parents left Somalia as refugees, and his father is recently deceased.

FIRST AMENDED COMPLAINT - 40

179.    Ms. Aden has suffered severe emotional distress because of her separation from her son. She is constantly worried about his safety and well-being, and is terrified at the prospect that he would have to go back to Somalia.

180.    Ms. Aden has also spent thousands of dollars in attorneys' fees, filing fees, medical costs, and other expenses related to their visa application, which she will be unable to recover.

      B.    Fiancés seeking reunification in the United States

          i.    *Soheil Vazehrad and Atefehossadat Motavaliabyazani*

181.    Plaintiff Soheil Vazehrad is a U.S. citizen of Iranian origin who is employed as a registered dental hygienist and resides in Napa, California.

182.    Mr. Vazehrad filed an application with USCIS for a fiancé visa for Plaintiff Atefehossadat Motavaliabyazani, an Iranian national currently in Iran, in April 2016.

183.    USCIS approved Mr. Vazehrad's petition on May 11, 2016.

184.    Ms. Motavaliabyazani attended her interview at the U.S. Embassy in Yerevan, Armenia, on October 20, 2016, and was told that her case would go through routine administrative processing.

185.    On January 4, 2018, she received a boilerplate email stating:

> Dear Applicant:
>
> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.
>
> Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.

Ex. L, Email sent by U.S. Embassy in Yerevan, Armenia, to Atefehossadat Motavaliabyazani (Jan. 4, 2018).

FIRST AMENDED COMPLAINT - 41

186.   At no point was Ms. Motavaliabyazani informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

187.   At no point was Ms. Motavaliabyazani provided an opportunity to apply for a waiver or to submit documents in support of such application.

188.   Ms. Motavaliabyazani's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

189.   Mr. Vazehrad and Ms. Motavaliabyazani are suffering ongoing severe emotional and mental distress because of their indefinite separation from each other.

190.   Mr. Vazehrad is suffering from loss of consortium since he has been deprived and continues to be deprived of the opportunity to be with his fiancée. He is also forced to take significant breaks from work and to incur significant expenses to travel to meet his fiancée outside of the United States.

191.   Mr. Vazehrad and Ms. Motavaliabyazani have also paid filing fees, travel costs, and other costs associated with the visa application process, which they are unable to recover.

   C.   Diversity visa applicants with family members in the United States

      i.   *Ali and Aziz Altuhaif*

192.   Plaintiff Ali Altuhaif is a U.S. citizen of Yemeni origin who resides in Dearborn, Michigan with most of his family. He has been in the United States since 1992. He seeks to be reunited with his Yemeni son, Plaintiff Aziz Altuhaif.

193.   Aziz Altuhaif won an immigrant visa through the diversity visa lottery.[11] He completed all the necessary paperwork and attended his interview in Djibouti in July 2018, where he was told

---

[11] The Diversity Immigrant Visa Program, known as the "diversity visa lottery," is a State Department-administered program that "makes up to 50,000 immigrant visas available annually, drawn from random selection among all

FIRST AMENDED COMPLAINT - 42

by the consular official that he is categorically ineligible for a waiver because of the type of visa he is seeking.

194.    At no point was Mr. Altuhaif informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

195.    At no point was Mr. Altuhaif provided an opportunity to apply for a waiver or to submit documents in support of such application.

196.    Mr. Altuhaif's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

197.    He is currently stranded in Djibouti, but may have to return to war-torn Yemen soon because his status is so uncertain. If he does not obtain an immigrant visa by September 30, 2018, he will lose his opportunity to come to the United States to rejoin his family.

198.    Both Mr. Ali and Mr. Aziz Altuhaif, along with the rest of their family, are suffering emotional distress at their ongoing separation and because of the precarious circumstance in which Mr. Aziz Altuhaif has been placed.

199.    Mr. Aziz Altuhaif has paid thousands of dollars in filing fees, travel costs, and other expenses relating to his visa application, which he is unable to recover.

    D.  Family members applying for visitor visas

        *i.  Bamshad Aziz, Roghayeh Azizikoutenaei, and Hojjatollah Azizikoutenaei*

---

entries to individuals who are from countries with low rates of immigration to the United States." U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *Green Card Through the Diversity Immigrant Visa Program* (last updated Jan. 11, 2018) https://www.uscis.gov/greencard/diversity-visa. Diversity visa lottery winners, including Mr. Altuhaif, who entered the lottery in Fiscal Year 2018 must complete their adjustment of status process by September 30, 2018 or they will lose their ability to obtain visas to enter the United States through this program. *Id.*

FIRST AMENDED COMPLAINT - 43

200.    Plaintiff Bamshad Azizi is a lawful permanent resident of Iranian origin residing in San Jose, California. He is the co-founder of a cybersecurity startup in the United States.

201.    Mr. Azizi's parents Plaintiffs Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei applied for B1/B2[12] tourist visas to come visit him and his sister in the United States. Mrs. Azizikoutenaei was diagnosed with cancer about a year ago and had to undergo two surgeries and a series of intense chemotherapy sessions. Mr. Azizikoutenaei had also had surgery recently. They both were considerably weakened by their illnesses and wanted nothing more than to spend time with their family members as they continue to recover.

202.    Mr. and Mrs. Azizikoutenaei attended their interview at the U.S. consulate in Dubai, UAE, on September 12, 2017, twelve days before the signing of the Proclamation, and were told that their visas would be ready in two weeks.

203.    On October 3, 2017, they received an email from the Embassy requesting that they send their passports so that their visas could be stamped. They complied with this request.

204.    Eleven days later, their passports were returned with no visas and with a letter stating that their applications had been placed in administrative processing.

---

[12] B1 and B2 visas are both nonimmigrant visitor visas "for persons who want to enter the United States temporarily for business (visa category B-1), for tourism (visa category B-2), or for a combination of both purposes (B-1/B-2)." U.S. Dep't of State, *Visitor Visa*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited July 29, 2018). Examples of activities permitted with a B1 visitor visa include: "Consult[ing] with business associates"; "Attend[ing] a scientific, educational, professional, or business convention or conference"; "Settl[ing] an estate"; and "Negotiat[ing] a contract." *Id.* Examples of activities permitted with a B2 visitor visa include: "Tourism"; "Vacation"; "Visit[ing] with friends or relatives"; "Medical treatment"; "Participation in social events hosted by fraternal, social, or service organizations"; "Participation by amateurs in musical, sports, or similar events or contests, if not being paid for participating"; and "Enrollment in a short recreational course of study, not for credit toward a degree." *Id.*

205.     After following up multiple times with the Embassy and receiving only automated responses, Mr. and Mrs. Azizikoutenaei received boilerplate rejection letters on January 10, 2018.

206.     At no point were Mr. and Mrs. Azizikoutenaei informed that they could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

207.     At no point were Mr. and Mrs. Azizikoutenaei provided an opportunity to apply for a waiver or to submit documents in support of such application.

208.     Accordingly, the consular officer was not made aware of the particular reasons they wanted to visit their family in the United States or their recent medical circumstances.

209.     Mr. and Mrs. Azizikoutenaei's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

210.     The entire family has suffered and is continuing to suffer significant emotional distress because of their ongoing separation from each other. Mr. and Mrs. Azizikoutenaei continue to be weakened by their surgeries and medical conditions, and they and Mr. Aziz are distressed at their inability to spend time with each other.

211.     The family has also paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they are unable to recover.

> ii.     *Maral Charkhtab Tabrizi, Zahra Rouzbehani, and Bahram Charktab Tabrizi*

212.     Plaintiff Maral Charkhtab Tabrizi is a lawful permanent resident of Iranian origin residing in Arizona who is married to a U.S. citizen and who recently had her first child.

FIRST AMENDED COMPLAINT - 45

213. Her parents, Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi, who have traveled to the United States many times in the past, applied for tourist visas while she was pregnant to witness the birth of their first grandchild and to provide support to their daughter.

214. They attended their interviews at the U.S. consulate in Dubai, UAE, on October 19, 2017. Ms. Rouzbehani was approved immediately, but Mr. Charkhtab Tabrizi's case was placed in administrative processing. Ms. Rouzbehani elected to wait for her husband's administrative processing to be completed before sending her passport to be stamped with the visa, so that they could travel to the United States together.

215. Immediately after the Supreme Court allowed the Proclamation to go into effect in December 2017, Ms. Rouzbehani sent her passport to the consulate in order for her visa to be issued.

216. Shortly thereafter, however, the passport was returned without a visa and both their visas were refused pursuant to the Proclamation.

217. At no point were Mr. Tabrizi and Ms. Rouzbehani informed that they could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

218. At no point were Mr. Tabrizi and Ms. Rouzbehani provided an opportunity to apply for a waiver or to submit documents in support of such application.

219. Accordingly, the consular officer was not made aware of specific circumstances that are highly relevant to a meaningful waiver adjudication. Mr. Tabrizi and Ms. Rouzbehani wanted to be there to support their daughter for several compelling reasons:

220. First, Ms. Charkhtab Tabrizi's household finances depend heavily on her salary. She is a contractor for Google and had been there for less than 12 months at the time she gave birth to her child. She therefore was not eligible for paid maternity leave under California laws or under the

FIRST AMENDED COMPLAINT - 46

Family Medical Leave Act, and had accordingly planned to return to work as soon as possible. Without her parents, Ms. Charkhtab Tabrizi was unable to return to work as quickly as she had hoped.

221.    Second, Ms. Charkhtab Tabrizi has a connective tissue disorder which has caused her severe pain during her pregnancy and makes her daily activities very difficult. She had hoped that her parents could be there to support her during her recovery.

222.    Instead, she had to remain at home with her baby by herself for two and a half months while recovering from an emergency cesarean section, and during that time was diagnosed with depression. She is currently unable to afford good daycare and has resorted to temporarily relying on her sister-in-law to take care of their child after a period of unpaid leave during which she and her husband depleted their savings. They had also been hoping that her parents could meet her in-laws for the first time when they visited, but her father-in-law has passed away in the intervening time since they applied for the visa. She continues to be in desperate need of emotional and logistical support from her parents.

223.    Ms. Rouzbehani and Mr. Tabrizi's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

224.    The denial of Ms. Rouzbehani's and Mr. Charkhtab Tabrizi's visas is causing Ms. Charkhtab Tabrizi severe financial hardship.

225.    All three family members have also suffered significant emotional distress. Ms. Tabrizi was deprived of the opportunity to have her parents present during her pregnancy, and her parents have been unable to be there to support her in her time of need. Ms. Rouzbehani and Mr. Tabrizi were unable to be there for the birth of their first grandchild, and were unable to ever meet their daughter's father-in-law.

FIRST AMENDED COMPLAINT - 47

226.   Ms. Tabrizi has also suffered increased physical pain because she has to carry out daily tasks for which she would have been able to rely on her parents' assistance.

227.   Ms. Charkhtab Tabrizi and her parents have paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they will be unable to recover.

### iii.   Maryam Mozafari and Mohammad Mehdi Mozaffary

228.   Plaintiff Maryam Mozafari is a lawful permanent resident of Iranian origin, currently residing in San Francisco, California. She was pregnant and wanted her parents, her mother and Plaintiff Mr. Mohammad Mehdi Mozaffary, to come visit her and provide her with much-needed support.

229.   Her mother and Mr. Mozaffary had both visited the United States in 2014, and had left the country well in advance of the expiration of their visas and their approved duration of stay in the United States.

230.   On December 28, 2016, they applied for tourist visas at the U.S. consulate in Dubai, UAE. Her mother's visa was granted immediately. Mr. Mozaffary was asked for his mandatory military service documents. He did not have them with him, as the documents were not mentioned in the list of required documents for the visa application. He was asked to reapply and bring the documents with him to the next interview.

231.   Because of the timing of the first two travel bans, Mr. Mozaffary had to delay his interview, and was not able to get back to the consulate until July 30, 2017. He was told by the consular officer that his documents appeared to be in order, but that he would be sending Mr. Mozaffary additional forms to fill out. Mr. Mozaffary received the forms in August 2017 and returned them to the consulate shortly thereafter.

FIRST AMENDED COMPLAINT - 48

232.   For the next several months, Ms. Mozafari and Mr. Mozaffary sent several emails to the consulate to inquire about the status of their cases, but received no reply or a system-generated automatic response.

233.   On January 11, 2018, Mr. Mozaffary's visa was denied pursuant to the Proclamation.

234.   At no point was Mr. Mozaffary informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

235.   At no point was Mr. Mozaffary provided an opportunity to apply for a waiver or to submit documents in support of such application.

236.   Mr. Mozaffary suffers from a heart condition which requires that he be accompanied at all times. Because he was unable to obtain a visa, Ms. Mozafari's mother was only able to come visit her in the United States for a brief time, as she felt torn between her daughter and being forced to leave her ailing husband behind.

> iv.     *Clyde Jean Tedrick II, Mitra Farnoodian-Tedrick, Farjollah Farnoudian, and Farangis Emami*

237.   Plaintiff Clyde Jean Tedrick II is a U.S. citizen residing in Rockville, Maryland, with Plaintiff Mitra Farnoodian-Tedrick, a lawful permanent resident of Iranian origin. They assisted Ms. Farnoodian-Tedrick's parents, Plaintiffs Farajollah Farnoudian and Farangis Emami, with applying for tourist visas to attend their wedding celebration that was planned for May 27, 2018.

238.   Mr. Farnoudian and Ms. Emami have visited the United States in the past and have fully complied with the terms of their tourist visas.

239.   Mr. Farnoudian and Ms. Emami attended their visa interview on October 17, 2017 at the U.S. consulate in Dubai, UAE.

FIRST AMENDED COMPLAINT - 49

240.    Mr. Farnoudian's visa application was placed in administrative processing, but Ms. Emami's visa application was approved.

241.    Mr. Farnoudian received an email on January 8, 2018, informing him that his visa had been denied pursuant to the Proclamation.

242.    Ms. Emami's visa, meanwhile, was revoked. She was never notified that her already-approved visa had been revoked pursuant to the Proclamation, and she only found out that that was the case after checking the status of her visa online.

243.    At no point was anyone in the family informed that Mr. Farnoudian and Ms. Emami could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

244.    At no point were Mr. Farnoudian and Ms. Emami provided an opportunity to apply for such a waiver or to submit documents in support of such application.

245.    Mr. Tedrick and Ms. Farnoodian-Tedrick were therefore forced to cancel their planned wedding celebration until such time that her parents would be able to attend.

246.    All family members have suffered emotional distress because of their inability to celebrate Mr. Tedrick and Ms. Farnoodian-Tedrick's wedding together with their closest family members. The family has also suffered significant financial losses. Mr. Tedrick and Ms. Farnoodian-Tedrick forfeited almost $4,000 in non-refundable deposits because they were compelled to cancel their planned celebration. Mr. Farnoudian and Ms. Emami also paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they will be unable to recover.

     E.   Business and investment visa applicants

       *i.   Behnam Babalou*

FIRST AMENDED COMPLAINT - 50

247.   Mr. Behnam Babalou is an Iranian national who invested five hundred thousand dollars ($500,000) in the United States as part of his petition for an employment-based fifth preference (EB-5) investment visa[13] in 2011.

248.   USCIS adjudicated his case and sent him an approval notice four years later, on December 15, 2015. Mr. Babalou then attended his immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on May 24, 2016, after which his case was placed in administrative processing.

249.   On December 22, 2017, six years after his initial investment, he received a boilerplate email denying him a visa and a waiver under the Proclamation.

250.   At no point was Mr. Babalou informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

251.   At no point was Mr. Babalou provided an opportunity to apply for a waiver or to submit documents in support of such application.

252.   His immigration attorneys have since requested that he be considered for a waiver, but he has not received a response.

253.   Mr. Babalou is at risk of losing his $500,000 investment in the United States. Because he remains in Iran, he is unable to fulfill the duties assigned to him as part of running his business, unable to oversee the U.S. citizens he has employed, and therefore unable to effectively grow his business and continue contributing to the U.S. economy.

---

[13] The EB-5 investment visa is designed to give permanent resident status to entrepreneurs (and their spouses and unmarried children under 21) who (1) "[m]ake the necessary investment in a commercial enterprise in the United States" (either $500,000 or $1 million); and (2) "[p]lan to create or preserve 10 permanent full-time jobs for qualified U.S. workers." U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *EB-5 Immigrant Investor Program*, https://www.uscis.gov/eb-5 (last visited July. 29, 2018).

FIRST AMENDED COMPLAINT - 51

254.    In addition to the large investment he made into a U.S. business, Mr. Babalou has incurred substantial incidental costs over the last seven years, including $50,000 paid to a regional center for assistance with overseeing his investment and thousands of dollars more in attorneys' fees, filing fees, travel costs, and medical fees. These are costs Mr. Babalou will be unable to recover.

ii.    *Hoda Mehrabi Mohammad Abadi*

255.    Ms. Hoda Mehrabi Mohammad Abadi is an Iranian national who invested five hundred thousand dollars ($500,000.00) in the United States as part of her petition, filed on August 5, 2014, for an employment-based fifth preference (EB-5) investment visa.

256.    USCIS adjudicated her case and sent her an approval notice nearly two years later, on June 9, 2016. Ms. Mehrabi Mohammad Abadi attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on February 23, 2017, after which her case was placed in administrative processing.

257.    On December 14, 2017, her attorney received the same boilerplate email denying her a visa and a waiver under the Proclamation.

258.    At no point was Ms. Mehrabi Mohammad Abadi informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

259.    At no point was Ms. Mehrabi Mohammad Abadi provided an opportunity to apply for a waiver or to submit documents in support of such application.

260.    Her attorney contacted the embassy requesting that Ms. Mehrabi Mohammad Abadi's case be considered for a waiver from the Proclamation. The Embassy responded again on December 17, 2017, with the following:

Dear inquirer,

FIRST AMENDED COMPLAINT - 52

> Unfortunately, your case is not eligible for a waiver under
> Presidential Proclamation 9645. This refusal under Section 212(f) of
> the Immigration and Nationality Act applies only to the current visa
> application. Please be advised that Presidential Proclamation 9645
> currently restricts issuance of most visas to nationals of Iran and
> seven other countries.

Ex. M, Email sent by U.S. Embassy in Yerevan, Armenia, to Hoda Mehrabi Mohammad Abadi (Dec. 17, 2017).

261.    Accordingly, Ms. Mehrabi Mohammad Abadi was unable to submit documents in support of a waiver application and did not receive individualized consideration for a waiver.

262.    Ms. Mehrabi Mohammad Abadi is also at risk of losing a $500,000 investment in the United States. Because she remains in Iran, she is unable to fulfill the duties assigned to her as part of running a business, unable to oversee the U.S. citizens she has employed, and therefore unable to effectively grow her business and continue contributing to the U.S. economy.

263.    In addition to her large investment, Ms. Mehrabi Mohammad Abadi incurred substantial incidental costs, including $50,000 paid to a regional center for assistance with overseeing her investment and thousands of dollars more in attorneys' fees, filing fees, travel costs, and medical fees. These are costs Ms. Mehrabi Mohammad Abadi will never recover.

    F.   Individuals with extraordinary ability

        i.   *Dr. Mahdi Afshar Arjmand*

FIRST AMENDED COMPLAINT - 53

264.    Plaintiff Dr. Mahdi Afshar Arjmand is an Iranian national who filed for an EB-1A[14] (alien with extraordinary ability) immigrant visa on December 27, 2016, and received an approval notice on January 9, 2017.

265.    He attended his immigrant visa interview with his family on July 25, 2017 at the U.S. Embassy in Yerevan, Armenia. The officer informed them that their case looked good, but just needed to go through administrative processing.

266.    On January 12, 2018, the Embassy emailed Dr. Afshar Arjmand the same boilerplate denial letter that Mr. Babalou and Ms. Mehrabi Mohammad Abadi received.

267.    At no point was Dr. Afshar Arjmand informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

268.    At no point was Dr. Afshar Arjmand provided an opportunity to apply for a waiver or to submit documents in support of such application.

269.    In order to approve his visa, USCIS made a required finding that Dr. Afshar Arjmand has "extraordinary ability"—a fact that should render his entry in the national interest of the United States. Dr. Afshar Arjmand had a job offer from the University of California, San Diego, to work as a researcher and professor. The Embassy refused to consider Dr. Afshar Arjmand for a waiver even though the university sent multiple emails to the Embassy requesting that it issue Dr. Afshar Arjmand's visa because of his prodigious talent and expertise.

---

[14] To qualify for an EB-1A visa an applicant "must be able to demonstrate extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim." U.S. Citizenship & Immigration Servs., U.S. Dep't of Homeland Sec., *Employment-Based Immigration: First Preference EB-1* (last updated Oct. 29, 2015), https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-first-preference-eb-1.

FIRST AMENDED COMPLAINT - 54

270.    Dr. Afshar Arjmand's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

271.    Dr. Afshar Arjmand risks losing a once-in-a-lifetime research and teaching opportunity at the University of California, San Diego, one of the world's leading public research universities.

272.    In addition to this significant lost work and financial opportunity, Dr. Afshar Arjmand has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

        *ii.*    *Dr. Ehsan Heidaryan*

273.    Plaintiff Dr. Ehsan Heidaryan, a world-renowned professor of chemical engineering and an Iranian national, filed a petition for an employment-based first preference visa for aliens with extraordinary ability (EB-1A) on February 7, 2017.

274.    Based on his impressive record of achievements in his field, USCIS approved Dr. Heidaryan's petition on March 3, 2017. He attended his immigrant visa interview at the U.S. Consulate General in Rio de Janeiro, Brazil, on December 23, 2017.

275.    Thereafter, the Consulate emailed Dr. Heidaryan to inform him that since he is an Iranian national, his immigrant visa must be refused because of the Proclamation. Specifically, the consulate wrote:

> Dear Sir,
>
> Unfortunately your immigrant visa is refused under Presidential Proclamation 9645 and now considered closed. Do not need to fill out the questionnaire we sent by email.

Ex. N, Email sent by U.S. Consulate General in Rio de Janeiro, Brazil, to Dr. Ehsan Heidaryan (Dec. 27, 2017).

276.    At no point was Dr. Heidaryan informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

277.    At no point was Dr. Heidaryan provided an opportunity to apply for a waiver or to submit documents in support of such application.

278.    In order to approve his visa, USCIS made a required finding that Dr. Heidaryan has "extraordinary ability"—a fact that should render his entry in the national interest of the United States.

279.    Dr. Heidaryan's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

280.    Dr. Heidaryan is losing the opportunity to conduct research and to teach in his area of expertise—chemical engineering—in the United States' top tier universities. Dr. Heidaryan also risks losing the opportunity to take advantage of the substantial resources U.S. universities have to more effectively further his research and, thus, the opportunity to contribute his expertise to the United States.

281.    Dr. Heidaryan has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he is unable to recover.

   *iii.* *Najmeh Maharlouei*

282.    Ms. Najmeh Maharlouei is an Iranian national currently residing in Shiraz, Iran, where she is employed as a health researcher and Associate Professor of Community Medicine at Shiraz University of Medical Sciences. She filed an application with USCIS for an immigrant

visa under the category of employment-based second preference (EB-2) with a National Interest Waiver[15] on June 20, 2015.

283.   Ms. Maharlouei's case was approved on March 4, 2016, and she attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on October 6, 2016.  She was told at that interview that there were no problems with her case, but that she would have to undergo routine administrative processing.

284.   Ms. Maharlouei received a boilerplate notice denying her visa application pursuant to the Proclamation on December 22, 2017.

285.   At no point was Ms. Maharlouei informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

286.   At no point was Ms. Maharlouei provided an opportunity to apply for a waiver or to submit documents in support of such application.

287.   In order to approve her visa, USCIS made a required finding that Ms. Maharlouei has "extraordinary ability" and granted her a National Interest Waiver, which requires a determination that her entry would be in the national interest of the United States.

288.   Ms. Maharlouei's case also fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

---

[15] An applicant can acquire permanent residency under the EB-2 category if she is a foreign national who has an advanced degree and exceptional ability in the sciences, art, or business. U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *Employment-Based Immigration: Second Preference EB-2* (last updated Oct. 29, 2015, https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-second-preference-eb-2. This category usually requires that the applicant's employer get a labor certification from the U.S. Department of Labor, but an applicant can receive a National Interest Waiver of that requirement if she shows that her work is in the U.S. national interest.

FIRST AMENDED COMPLAINT - 57

289.    Ms. Maharlouei is losing the opportunity to conduct research in the United States in her field of medical sciences, despite the fact that USCIS already deemed her research to be in the national interest of the United States. Ms. Maharlouei is also losing the opportunity to take advantage of American universities' substantial resources to more effectively further her research and to contribute her substantial expertise to the United States.

290.    In addition, Ms. Maharlouei has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which she will be unable to recover.

    iv.    *Nastaran Hajiheydari*

291.    Plaintiff Nastaran Hajiheydari is an Iranian national currently residing in Iran where she works in the field of Information Technology Business as an Associate Professor at the University of Tehran. She filed an application with USCIS for an immigrant visa under the category of employment-based second preference (EB-2) with a National Interest Waiver on October 14, 2016.

292.    Her case was approved less than 40 days later in November 2016, and Ms. Hajiheydari and her family attended their immigrant visa interviews at the U.S. Embassy in Yerevan, Armenia, on October 26, 2017. Their cases were placed in routine administrative processing.

293.    On January 16, 2018, Ms. Hajiheydari received a boilerplate email notice denying her family's visa applications pursuant to the Proclamation.

294.    At no point was Ms. Hajiheydari informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

295.    At no point was Ms. Hajiheydari provided an opportunity to apply for such a waiver or to submit documents in support of such application.

FIRST AMENDED COMPLAINT - 58

296.     In order to approve her visa, USCIS made a required finding that Ms. Hajiheydari has "extraordinary ability" and granted her a National Interest Waiver, which requires a determination that her entry would be in the national interest of the United States.

297.     Ms. Hajiheydari's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

298.     Ms. Hajiheydari is losing the opportunity to conduct research in the United States, despite the fact that USCIS already determined that her work is in the national interest of the United States. Ms. Hajiheydari is also losing the opportunity to take advantage of American universities' substantial resources to more effectively further her research and the opportunity to contribute her expertise to the United States.

299.     In addition, Ms. Hajihevdari has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, for herself and three family members, all of which she will be unable to recover.

            *v.*     *Mohamad Hamami*

300.     Plaintiff Mohamad Hamami is a world-class Syrian violinist, composer, and conductor, and is an artist of extraordinary ability in the field of Arabic fusion music. Mr. Hamami is renowned internationally for his groundbreaking and unique cross-cultural fusions of Arabic music with musical genres from around the globe. Mr. Hamami is the conductor and soloist with the SharQ Orchestra – a one-of-a-kind Western-style ensemble of international symphony musicians playing traditional Arabic music. Due to his unparalleled talent and passion for Arabic fusion music, Mr. Hamami has collaborated with top producers, composers, and musicians from around the globe. He submitted an application for an EB-1 immigrant visa based on his extraordinary ability.

FIRST AMENDED COMPLAINT - 59

301.    His visa was approved in November 2016, and he had his interview at the U.S. Embassy in Dubai, UAE, where he has resided for more than a decade.

302.    After the ban went into effect, his attorneys attempted to request a waiver for him, but were told that he is ineligible for a waiver because he has insufficient ties to the United States—a factor that is neither a requirement for an EB-1 visa nor a requirement under the waiver factors set forth in the Proclamation.

303.    At no point was Mr. Hamami informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

304.    At no point was Mr. Hamami provided an opportunity to apply for a waiver or to submit documents in support of such application.

305.    Mr. Hamami's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

306.    Mr. Hamami is losing the opportunity to work with the world's best violinists and orchestras and to contribute his prodigious talent and unique musical abilities to the artistic scene in the United States.

307.    In addition, Mr. Hamami has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and other costs associated with the visa application process, which he will be unable to recover.

## CLASS ALLEGATIONS

308.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of themselves and all other persons similarly situated. A class action is proper because the class is so numerous that joinder of all members is impractical, this action involves questions of law and fact common to the class, Plaintiffs' claims are typical of the claims of the Class,

FIRST AMENDED COMPLAINT - 60

Plaintiffs will fairly and adequately protect the interests of the Class, and Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

309.    The Plaintiff Class includes two subclasses: (i) the "Family Member Class" and (ii) the "Visa Applicant Class." *See supra* at 5. The Plaintiffs representing the Family Members Class are Afrooz Kharazmi, Tanaz Toloubeydokhti, Dr. Najib Adi, Ismail Alghazali, Malik Almathil, Khalil Ali Nagi, Hezam Alarqaban, Abdurraouf Gseaa, Sudi Wardere, Khadija Aden, Ali Altuhaif, Soheil Vazehrad, Bamshad Azizi, Clyde Jean Tedrick II, Mitra Farnoodian-Tedrick, Maral Charkhtab Tabrizi, and Maryam Mozafari.  The Plaintiffs representing the Visa Applicant Class are Afshan Alamshah Zadeh, Fathollah Tolou Beydokhti, Behnaz Malekghaeini, Aziz Altuhaif, Atefehossadat Motavaliabyazani, Roghayeh Azizikoutenaei, Hojjatollah Azizikoutenaei, Farajollah Farnoudian, Farangis Emami, Zahra Rouzbehani, Bahram Charkhtab Tabrizi, Mohammad Mehdi Mozaffary, Behnam Babalou, Hoda Mehrabi Abadi, Dr. Mahdi Afshar Arjmand, Dr. Ehsan Heidaryan, Najmeh Maharlouei, Nastaran Hajiheydari, and Mohamad Hamami.

310.    The Class meets the requirements of Federal Rule of Civil Procedure 23(a)(1) because it is so numerous that joinder of all members is impracticable. The number of individuals who have been wrongly denied waivers or whose waiver applications are being stalled is not known with precision by Plaintiffs but is easily ascertainable by Defendants. On any given day, thousands of visa applications are adjudicated at embassies and consulates abroad. As such, more individuals will become class members in the future, as Defendants continue to deny applicants the opportunity to demonstrate their eligibility for waivers under the Proclamation. The members of the Class are ascertainable and identifiable by Defendants.

FIRST AMENDED COMPLAINT - 61

311.    The Class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2) because all Class members have been or will be subject to Defendants' common policy, pattern, and practice of failing to institute clear guidance, failing to provide an accessible and meaningful process by which individuals may seek consideration of their request for a waiver, and failing to provide individualized, case-by-case consideration for waivers under the Proclamation to all visa applicants, as required by the terms of the Proclamation. Plaintiffs and the Class share the same legal claims, which include, but are not limited to: whether Defendants' failure to consider all visa applicants for waivers, their failure to issue clear guidance, and their failure to provide an accessible, meaningful process by which individuals can seek to demonstrate their eligibility for a waiver violate the APA, the INA, and the Due Process Clause of the Fifth Amendment.

312.    Similarly, the Class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the claims of the Class as a whole. Plaintiffs, as with the Class they seek to represent, are all individuals who have been or will be denied the chance to request a waiver under the Proclamation and who have been or will be hindered from demonstrating their eligibility for a waiver because of Defendants' failure to provide clear guidance and an accessible process for submitting applications.

313.    The adequacy requirements of Federal Rule of Civil Procedure 23(a)(4) are also met. Plaintiffs know of no conflict between their interests and those of the Class. Plaintiffs seek the same relief as other members of the Class, namely that the Court: (a) order Defendants to immediately cease their unlawful policy and/or practice of refusing to receive or consider requests for waivers under the Proclamation for all visa applicants; (b) retract visa denials issued before an orderly and meaningful process is put in place; (c) provide clear guidance that defines key words and sets well-defined standards for consular officers and applicants to use; (d) provide an orderly

FIRST AMENDED COMPLAINT - 62

process by which applicants may demonstrate their eligibility for a waiver; and (e) give full consideration for case-by-case waivers to all visa applicants as set forth in the Proclamation. In defending their own rights, the individual Plaintiffs will defend the rights of all Class members fairly and adequately. Plaintiffs are represented by counsel with deep knowledge of immigration law and civil rights law and with extensive experience litigating class actions and complex cases. Counsel have the requisite level of expertise to adequately prosecute this case on behalf of Plaintiffs and the Class.

314.    The Class satisfies Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to the Class in refusing to fairly adjudicate waiver requests. Thus, final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of Administrative Procedure Act)

315.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

316.    The APA prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is conducted "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) and (D).

317.    The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. §§ 555(b) and 706(1).

318.    Defendants have a non-discretionary duty under the Proclamation to develop standards to guide visa applicants in compiling their applications for waivers and for consular officers to reference in adjudicating waiver and visa applications. *See* Ex. A § 3(c).

319.    Defendants have failed to promulgate such guidance and have nonetheless proceeded in denying or stalling waivers and visas. Defendants have also failed to follow existing procedures prescribed by the INA, implementing regulations, and the Foreign Affairs Manual in issuing these denials. In failing to develop or follow any procedures, Defendants have acted arbitrarily and capriciously and in contravention of the Proclamation, the INA, and the U.S. Constitution, and they have thus violated the APA.

320.    Defendants have also failed to follow their own stated policy by failing to create an orderly process for waiver applications and by failing to consider all visa applicants for a waiver.

321.    Defendants' violations of these laws have harmed and continue to harm Plaintiffs and proposed class members by indefinitely denying them access to their families and to economic and professional opportunities.

### SECOND CLAIM FOR RELIEF
#### (Violation of Due Process Clause of the Fifth Amendment)

322.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

323.    The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their fundamental rights without due process of law.

324.    Plaintiffs' fundamental rights include their right to the "integrity of the family unit." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

FIRST AMENDED COMPLAINT - 64

325.   The implementation of the waiver provision under the Proclamation directly and substantially infringes on Plaintiffs' fundamental rights.

326.   The Due Process Clause forbids Defendants from infringing on Plaintiffs' fundamental rights unless the infringement is narrowly tailored to serve a compelling governmental interest.

327.   As applied, the Proclamation's waivers provision fails this test. It is not narrowly tailored and it operates to block nearly all persons from banned countries from entry into the United States, regardless of whether they meet the criteria for a waiver grant.

328.   The Due Process Clause of the Fifth Amendment also guarantees procedural due process rights, including the right to fair and impartial processes, and applies to foreign nationals. Those due process rights are implicated by the deprivation of a fundamental liberty interest, e.g., family integrity, and they may also arise from statute. *See Lanza v. Ashcroft*, 389 F.3d 917, 927 (9th Cir. 2004) ("The due process afforded aliens stems from those statutory rights granted by Congress and the principle that '[m]inimum due process rights attach to statutory rights.'") (alteration in original) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003). The INA and its implementing regulations mandate various procedures for the processing of visas, procedures which Defendants have failed to follow.

329.   The Due Process Clause of the Fifth Amendment of the U.S. Constitution further guarantees all individuals equal protection under the law.

330.   The blanket denials of visas to applicants from banned countries without the opportunity to demonstrate their eligibility for a waiver from the Proclamation, together with statements made by Defendants concerning their intent and the application of the travel ban, makes clear that Defendants are targeting individuals for discriminatory treatment based on their country of origin or nationality, without any lawful justification.

FIRST AMENDED COMPLAINT - 65

331.    Defendants' discriminatory implementation of the waivers provisions has no rational basis.

332.    Defendants' conduct violates the Fifth Amendment's guarantee of equal protection.

333.    In refusing to duly consider Plaintiffs' applications, Defendants have violated Plaintiffs' Fifth Amendment right to substantive and procedural due process and to equal protection under the law.

334.    Defendants' violations of these laws have harmed and continue to harm Plaintiffs and proposed Class members by indefinitely denying them access to their families and to economic and research opportunities.

## THIRD CLAIM FOR RELIEF
### (Writ of Mandamus)

335.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

336.    Defendants have a non-discretionary duty to develop guidance on the waiver process and to receive and fully and fairly adjudicate applicants' requests for waivers under the Proclamation. These non-discretionary duties arise under section 3 of the Proclamation and under the INA and its implementing regulations.

337.    The APA requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

338.    Defendants are unlawfully failing to accept waiver applications and to consider Plaintiffs' requests for waivers under the Proclamation and are thus failing to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiffs' cases.

339.    Defendants' refusal to receive and fully consider applicants' eligibility for waivers on a case-by-case basis and to develop meaningful guidance is arbitrary, capricious, and not in accordance with the law.

340.    Defendants' issuance of blanket denials to visa applicants from banned countries without consideration of their individual circumstances violates Plaintiffs' Fifth Amendment rights to substantive and procedural due process and to equal protection under the law.

341.    Because there are no other adequate remedies available to Plaintiffs, mandamus is appropriate. *See* 5 U.S.C. § 704.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1.  Order Defendants to immediately retract all visa denials due to the Proclamation and notify applicants that they may apply for a waiver without submitting a new visa application, paying associated fees, and attending another interview;

2.  Order Defendants to fulfill their duties under the Proclamation by providing clear and consistent guidelines for the waiver process, including definitions of key terms, standards for applicants to meet, examples of documents needed to meet those standards, and an orderly process through which applicants can apply for a waiver;

3.  Order Defendants to abide by the terms of the Proclamation and consider all applicants' waiver applications on a case-by-case basis without discriminating based on applicants' country of origin or nationality;

FIRST AMENDED COMPLAINT - 67

4. Declare that Defendants' refusal to give full and fair consideration for waivers to all visa applicants from the banned countries violates the APA, the INA, and the Due Process Clause of the Fifth Amendment;

5. Award Plaintiffs costs of suit and reasonable attorney's fees under the Equal Access to Justice Act and any other applicable law; and

6. Grant such other and further relief as this Court deems equitable, just, and proper.

DATED: July 29, 2018
          Washington, DC

Respectfully Submitted,


/s/Sirine Shebaya                                    /s/Shabnam Lotfi
MUSLIM ADVOCATES                         LOTFI LEGAL, LLC
JOHNATHAN SMITH (*pro hac vice*)    SHABNAM LOTFI (*pro hac vice*)
johnathan@muslimadvocates.org          shabnam@lotfilegal.com
SIRINE SHEBAYA (*pro hac vice*)        VERONICA SUSTIC (*pro hac vice*)
sirine@muslimadvocates.org                  veronica@lotfilegal.com
NIMRA AZMI (NY SBN 5466693)*‡
nimra@muslimadvocates.org
JOSEPH SAEI (CA SBN 321341)†‡
yusuf@muslimadvocates.org


/s/Luis Cortes Romero                            /s/Mark D. Rosenbaum
IMMIGRANT ADVOCACY &              PUBLIC COUNSEL
LITIGATION CENTER, PLLC             MARK D. ROSENBAUM (CA SBN 59940)
LUIS CORTES ROMERO (CA SBN      mrosenbaum@publiccounsel.org
310852)                                            JUDY LONDON (CA SBN 149431)
lcortes@ia-lc.com                                jlondon@publiccounsel.org
ALMA DAVID (CA SBN 257676)
adavid@ia-lc.com

*Attorneys for Plaintiffs*

*\*Pro hac vice admission application forthcoming*
*†Admission application forthcoming*
*‡ Not admitted to practice in DC; supervised by members of the DC bar*


FIRST AMENDED COMPLAINT - 68

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on July 29, 2018, I electronically filed the foregoing document with
the Clerk of the Court using CM/ECF.  I also certify that the foregoing document should
automatically be served this day on all counsel of record via transmission of Notices of
Electronic Filing generated by CM/ECF.

3

4

5

*/s/ Sirine Shebaya*
Sirine Shebaya (*pro hac vice*)
Attorney for Plaintiffs

6

7

SIRINE SHEBAYA (*pro hac vice*)
sirine@muslimadvocates.org
Muslim Advocates
PO Box 66408
Washington, DC 20035
Telephone: 202-897-2622
Facsimile: 202-508-1007

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED COMPLAINT - 69