JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
GISELA A. WESTWATER
Assistant Director
STACEY I. YOUNG
Senior Litigation Counsel
P. ANGEL MARTINEZ (NYBN 5009790)
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice

P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085
Facsimile: (202) 305-7000
Email: Angel.Martinez2@usdoj.gov

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARANGIS EMAMI, et al., | Case No. 3:18-cv-01587-JD |
| Plaintiffs, | |
| v. | **DEFENDANTS' NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM IN SUPPORT** |
| KIRSTJEN NIELSEN, et al., | |
| Defendants. | Judge: Hon. James Donato<br>Hearing: November 1, 2018, 10 a.m.<br>Place: San Francisco U.S. Courthouse,<br>Courtroom 11, 19th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS.................................................................**a**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.  INTRODUCTION ......................................................................................................... 1

II. LEGAL BACKGROUND............................................................................................. 1

III. FACTUAL BACKGROUND ...................................................................................... 2

IV.  ARGUMENT ............................................................................................................... 3

    A.  Plaintiff's Claims Are Not Justiciable. .................................................................. 3

       1.  Plaintiffs' Claims Are Precluded by Section 701(a)(1) of the APA Because
           the Statutory Scheme "Preclude[s] Judicial Review[.]" ...................................... 3

       2.  Plaintiffs' Claims Are Precluded by Section 701(a)(2) of the APA
           Because The Challenged Actions Are "Committed To Agency
           Discretion By Law." ............................................................................................. 4

       3.  Plaintiffs' Claims Are Precluded by Section 702(1) of the APA and the
           Doctrine of Consular Nonreviewability............................................................... 5

    B.  Plaintiffs Fail to State a Claims............................................................................. 7

       1.  Plaintiffs Fail to State a Claim for Violation of the Proclamation......................... 7

       2.  Plaintiffs Fail to State a Mandamus Claim  ........................................................... 9

       3.  Plaintiffs Fail to State Equal Protection and Due Process Claims........................ 11

          a.  The substantive due process and equal protection claims contravene
            *Hawaii*.......................................................................................................... 11

          b.  The substantive due process claim also fails as there is no fundamental
            right to reside in the United States with non-citizen family members................. 12

          c.  The procedural due process claim fails because any Plaintiff who has a
            protected liberty or property interest was afforded all process due .................... 13

       4.  Plaintiffs' General Claims Regarding the Waiver Assessment Process, Lack
           of Guidance, and Supposed "Blanket Denials" Lack Merit ................................ 14

V.  CONCLUSION............................................................................................................ 15

1
2

**TABLE OF AUTHORITIES**

**CASES**

3
4

*ACLU of N. Cal. v. FBI,*

    881 F.3d 776 (9th Cir. 2018) ........................................................ 10

5
6

*Air Transport Ass'n of America v. F.A.A.,*

    169 F.3d 1 (D.C. Cir. 1999) ........................................................ 8

7
8

*Allen v. Milas,*

    896 F.3d 1094 (9th Cir. 2018) ........................................................ passim

9
10

*Block v. Community Nutrition Inst.,*

    467 U.S. 340 (1984) ........................................................ 3

11
12

*Brownell v. Tom We Shung,*

    352 U.S. 180 (1956) ........................................................ 4

13
14

*Capistrano v. Dep't of State,*

    267 F. App'x 593 (9th Cir. 2008) ........................................................ 6, 7

15
16

*Chai v. Carroll,*

    48 F.3d 1331 (4th Cir. 1995) ........................................................ 8

17
18

*Chavez v. Martinez,*

    538 U.S. 760 (2003) ........................................................ 12

19
20

*Chun v. Powell,*

    223 F. Supp. 2d 204 (D.D.C. 2002) ........................................................ 6

21

*City of Carmel-By-The-Sea v. U.S. Dep't of Transp.,*

    123 F.3d 1142 (9th Cir. 1997) ........................................................ 8

22
23

*Ctr. for Biological Diversity v. U.S. Forest Serv.,*

    640 F. App'x 617 (9th Cir. 2016) ........................................................ 3

24
25

*De Castro v. Fairman,*

    164 F. App'x 930 (11th Cir. Jan. 31, 2006) ........................................................ 9

26
27

*De Mercado v. Mukasey,*

    566 F.3d 810 (9th Cir. 2009) ........................................................ 12

28

*Dia v. Ashcroft*,

    353 F.3d 228 (3d Cir .2003) ......................................................................... 13

*Garfias-Rodriguez v. Holder*,

    702 F.3d 504 (9th Cir. 2012) ...................................................................... 13

*Gebhardt v. Nielsen*,

    879 F.3d 980 (9th Cir. 2018) ...................................................................... 12

*Gov't Employees Ins. Co. v. Dizol*,

    133 F.3d 1220 (9th Cir. 1998) .................................................................... 15

*Haitian Refugee Ctr., Inc. v. Baker*,

    953 F. 2d 1498 (11th Cir. 1992) ............................................................... 5, 8

*Hawaii v. Trump*,

    138 S. Ct. 2392 (2018) ........................................................................ passim

*Heckler v. Chaney*,

    470 U.S. 821 (1985) ................................................................................. 4, 5

*Hussein v. Beecroft*,

    No. 17-cv-12356, 2018 WL 3574717 (E.D. Mich. July 25, 2018) .................... 10

*In re Medicare Reimbursement Litig.*,

    414 F.3d 7 (D.C. Cir. 2005) ......................................................................... 9

*Kleindienst v. Mandel*,

    408 U.S. 753 (1972) .......................................................................... 4, 12, 13

*Lanza v. Ashcroft*,

    389 F.3d 917 (9th Cir. 2004) ...................................................................... 13

*Li Hing of Hong Kong, Inc. v. Levin*,

    800 F.2d 970 (9th Cir. 1986) ........................................................................ 6

*Lincoln v. Vigil*,

    508 U.S. 182 (1993) ................................................................................. 4, 5

*Lujan v. Nat'l Wildlife Fed'n*,

    497 U.S. 871 (1990) ................................................................................. 11

*Luo v. Coultice*,
    178 F. Supp. 2d 1135 (C.D. Cal. 2001) ........................................................................ 10, 11

*Malyutin v. Rice*,
    677 F. Supp. 2d 43 (D.D.C. 2009) ...................................................................................... 7

*Minor v. FedEx Office & Print Servs., Inc.*,
    78 F. Supp. 3d 1021 (N.D. Cal. 2015) ................................................................................ 3

*Morales-Izquierdo v. Dep't of Homeland Sec.*,
    600 F.3d 1076 (9th Cir. 2010) .......................................................................................... 12

*Nat'l Ass'n of Gov't Emps. v. FLRA*,
    179 F.3d 946 (D.C. Cir. 1999) ............................................................................................ 8

*Norton v. S. Utah Wilderness, All.*,
    542 U.S. 55 (2004) ......................................................................................................... 9, 10

*Nwansi v. Rice*,
    No. 06-cv-0003, 2006 WL 2032578 (N.D. Cal. Jul. 18, 2006) ..................................... 7, 10

*Patel v. Reno*,
    134 F.3d 929 (9th Cir. 1997) ......................................................................................... 9, 10

*Rodgers v. Lynch*,
    No. 16-cv-4398, 2016 WL 10966384 (C.D. Cal. Nov. 9, 2016) ........................................ 6

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ............................................................................... 3, 4, 5, 6

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017). ............................................................................ 2

*U.S. ex rel. Knauff v. Shaughnessy*,
    338 U.S 537 (1950) ...................................................................................................... 6, 13

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F. 2d 1221 (9th Cir. 1989) ........................................................................................ 15

*Thompson v. North Stainless, LP*,
    562 U.S. 170 (2011) ........................................................................................................... 8

*Toor v. Clinton*,

    No. 1:09-cv-279, 2009 WL 1582900 (E.D. Cal. Jun. 4, 2009) ......................................... 6, 10

*Town of Castle Rock v. Gonzales*,

    545 U.S. 748 (2005) ............................................................................................................ 13

*United States v. Ritchie*,

    342 F.3d 903 (9th Cir. 2003) ................................................................................................ 3

*Van Ravenswaay v. Napolitano*,

    613 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................... 7, 10

*Webster v. Doe*,

    486 U.S. 592 (1988) .............................................................................................................. 5

*W. Watershed Project v. Bureau of Land Mgmt.*,

    629 F. Supp. 2d 951 (D. Az. 2009) ...................................................................................... 9

*ZigZag, LLC v. Kerry*,

    No. 14-cv-14118, 2015 WL 1061503 (D. Mass. Mar. 10, 2015) ........................................ 6

### STATUTES

5 U.S.C. § 555(b) .......................................................................................................................... 10

5 U.S.C. § 701(a)(1) .................................................................................................................... 3, 4

5 U.S.C. § 701(a)(2) ....................................................................................................................... 4

5 U.S.C. § 702 ................................................................................................................................. 8

5 U.S.C. § 702(1) ............................................................................................................................ 5

5 U.S.C. § 706(1) ....................................................................................................................... 9, 11

6 U.S.C. § 236(b)(1) ....................................................................................................................... 4

8 U.S.C. § 1182(a) .......................................................................................................................... 2

8 U.S.C. § 1182(f) ....................................................................................................................... 5, 8

8 U.S.C. § 1201(a)(1) ..................................................................................................................... 2

8 U.S.C. § 1201(g) .......................................................................................................................... 2

8 U.S.C. § 1201(i) ........................................................................................................................... 4

8 U.S.C. § 1361 ............................................................................................................................... 1

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

1

28 U.S.C. § 1361 ................................................................................................................ 9

2

**REGULATION**

3

22 C.F.R. § 42.81(a)…………………………………………………………………………………..2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

PLEASE TAKE NOTICE that on November 1, 2018, at 10:00 a.m., before the Honorable James Donato of the United States District Court for the Northern District of California, in Courtroom 11 of the 19th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, Defendants will move this Court to dismiss all claims in this case.

Defendants' motion to dismiss is being made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The basis for this is set forth more fully in the following Memorandum of Points and Authorities.

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

a

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats, 82 Fed. Reg. 45161 (Sept. 24, 2017) ("Proclamation"), suspends entry into the United States of certain foreign nationals, but also permits discretionary waivers of the Proclamation's entry restrictions. In *Hawaii v. Trump*, 138 S. Ct. 2392 (2018), the Supreme Court upheld the Proclamation, rejecting arguments that the Proclamation was invalid because its waiver process was artificial. *Id.* at 2422-23 & n.7. Nevertheless, in this putative class action, Plaintiffs bring a collateral attack against the Proclamation by challenging the waiver process. In their First Amended Complaint ("FAC"), Plaintiffs essentially allege that Defendants are wrongfully: (1) not providing public guidance on the waiver process; (2) delaying adjudication of waiver applications; and (3) denying waiver applications.

14

15

16

17

18

19

20

21

22

23

Initially, Plaintiffs' challenges are not justiciable. Plaintiffs do not point to any statutory provision or regulation that supplies them with a valid cause of action. The Proclamation does not create individually enforceable rights. Moreover, consular nonreviewability prevent a court overturning consular officers' decisions or interfering with their decision-making. Even if justiciable, Plaintiffs' claims fail. First, Plaintiffs failed to plead the conditions for mandamus. Second, Plaintiffs' equal protection and due process claims fail for multiple reasons: they are contrary to Supreme Court precedent, and Plaintiffs do not have a liberty or property interest in the grant of a discretionary waiver. Even if such an interest existed, Defendants afforded all the process that is due. Finally, the Proclamation's terms, public information, *Hawaii*, and actual waivers foreclose Plaintiffs' challenges to the waiver process, guidance, and adjudications. For these reasons, Defendants respectfully ask the Court to dismiss Plaintiffs' FAC in its entirety.

24

**II.   LEGAL BACKGROUND**

25

26

27

Foreign nationals seeking visas to enter the United States must follow a process under the Immigration and Nationality Act (INA) and carry the burden of establishing eligibility to receive a visa. 8 U.S.C. § 1361. "When a visa application . . . [is properly] executed before a consular

28

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

1

officer . . . the consular officer must either issue or refuse the visa under [§ 1182(a) or § 1201(g)] or other applicable law." 22 C.F.R. § 42.81(a). This decision rests solely with the consular officer. *See* 8 U.S.C. § 1201(a)(1).

The Proclamation's waiver provision permits consular officers to grant discretionary waivers of the Proclamation's entry restrictions on a case-by-case basis. Proclamation, § 3(c). Applicants bear the burden of showing that a waiver would be appropriate and that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest. *Id.*, § 3(c)(i). The Proclamation also directs the adoption of guidance for issuing waivers, but does not require that the guidance be public. *Id.* The Department of State has promulgated internal guidance and also provided public information on the waiver process. *See generally* U.S. Department of State - Bureau of Consular Affairs, June 26 Supreme Court Decision on Presidential Proclamation 9645 (Sep. 3, 2018) ("State Dep't Website").[1] When adjudicating the visa application of an alien subject to the Proclamation, a consular officer must first determine whether the applicant is otherwise eligible for a visa under the INA. FAC Ex. E. (ECF 34-6 at 3). If so, and if the applicant is not eligible for an exception, then the applicant will automatically be considered for a waiver without the need to submit any separate application. *Id.* These individualized assessments may be time-consuming. FAC Ex. D (ECF 34-5 at ¶ 25).

## III.   FACTUAL BACKGROUND

Plaintiffs include U.S. citizens and lawful permanent residents who filed family-based visa petitions on behalf of one or more beneficiaries, or whose family members are visa applicants. FAC ¶¶ 11, 12, 16-47, 94-307, 309. Plaintiffs also include unadmitted and nonresident aliens who applied for and were denied visas under the Proclamation.[2] *Id.* Plaintiffs

---

[1] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html

[2] Defendants intend to oppose class certification when raised. *See* FAC ¶¶ 4, 10-12, 308-314. In addition, each of the named Plaintiffs has failed to "independently establish venue." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017).

claim that their visa applications and waivers were either inappropriately denied or have been pending too long, which they attribute to an alleged "blanket denial" policy; discrimination on the basis of national origin and religion; and undue interference with a fundamental right to family unity. *Id.* ¶¶ 3, 5, 7, 121, 171, 322-27, 330-33. Plaintiffs also claim that the Government has not issued public guidance for the adjudication of waivers. *Id.* ¶ 1-2.

## IV.   ARGUMENT

Rule 12(b)(6) allows dismissal for failure to state a claim upon which relief may be granted, including failure to allege a valid cause of action. *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, 640 F. App'x 617, 620 (9th Cir. 2016). A court may consider documents attached or incorporated by reference to the complaint, or matters of judicial notice, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), including public websites, *Minor v. FedEx Office & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015).

### A.  Plaintiffs' Claims Are Not Justiciable.

The Administrative Procedure Act (APA) does not permit challenges to consular visa decisions. *See Allen v. Milas*, 896 F.3d 1094, 1097, 1106-09 (9th Cir. 2018). Whether analyzed in terms of APA Section 701 or 702, "the conclusion is the same": Plaintiffs cannot state a claim under the APA. *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999); *see Allen*, 896 F.3d at 1097, 1106-09.

### 1.  Plaintiffs' Claims Are Precluded by Section 701(a)(1) of the APA Because the Statutory Scheme "Preclude[s] Judicial Review[.]"

Plaintiffs' claims are barred by 5 U.S.C. § 701(a)(1) because the INA precludes judicial review of consular visa decisions. *See Saavedra Bruno*, 197 F.3d at 1160, 1162-63. The APA does not apply "to the extent that . . . statutes preclude judicial review," 5 U.S.C. §701(a)(1), a determination that turns not only on the statute's express language but also on the "structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). Here, the conclusion is "unmistakable" from the INA's text, structure, and history . . . that "the immigration laws 'preclude judicial review' of [ ] consular visa decisions." *Saavedra Bruno*, 197

F.3d at 1160 (citing 5 U.S.C. § 701(a)(1)). First, when the Supreme Court held that aliens physically present in the United States—but not aliens abroad—could seek review of their exclusion orders under the APA, *see Brownell v. Tom We Shung*, 352 U.S. 180, 184-86 (1956), Congress responded by abrogating that ruling. *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, §5(a), 75 Stat. 650, 651-53; *Saavedra Bruno*, 197 F.3d at 1157-62 (recounting history). The House Report for that statute explained that APA suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he may litigate in the courts of the United States against the U.S. Government as a defendant." H.R. Rep. No. 87-1086, at 33 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2950, 2976. Because an alien present in the United States cannot invoke the APA to obtain review of an exclusion order, then *a fortiori* neither can aliens abroad or U.S. persons acting on their behalf. Second, given that Congress has entirely foreclosed judicial review of visa revocations, *see* 8 U.S.C. § 1201(i)—except in the case of an alien who is in the United States and in removal proceedings—and has expressly rejected a cause of action to seek judicial review of visa denials, it is implausible that Congress would permit review of Executive decisions to restrict entry in the first instance. *See* 6 U.S.C. § 236(b)(1), (c)(1), (f).

### 2. Plaintiffs' Claims Are Precluded by Section 701(a)(2) of the APA Because The Challenged Actions Are "Committed To Agency Discretion By Law."

Consular officers' decisions to grant or deny waivers and to revoke visas are committed to their discretion by law and therefore judicially unreviewable. 5 U.S.C. § 701(a)(2); *see* 8 U.S.C. § 1201(i); *Kleindienst v. Mandel*, 408 U.S. 753, 759 (1972). Under § 701(a)(2), agency action is not subject to judicial review "'to the extent that such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993). The Supreme Court has held that § 701(a)(2) applies where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion" or where by tradition there has been no judicial review. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Id.* at 191-92.

Plaintiffs who had their applications for a visa and a waiver denied may not challenge those decisions. The Supreme Court has already held that the Proclamation, including its waiver

provisions, was a lawful exercise of the President's "discretion" pursuant to 8 U.S.C. § 1182(f). *Hawaii*, 138 S. Ct. at 2407-09, 2422-23 & n.7. The Proclamation then delegated that discretion to the relevant agencies who "*may*, in their *discretion*, grant waivers on a case-by-case basis[.]" Proclamation at § 3(c) (emphases added). It specifically states that waivers may be granted "in [the agency's] discretion." Proclamation § 3(c), § 9(c) (no judicial review clause).

Even if the implementation of the Proclamation's entry restrictions was not an explicitly discretionary function, it involves decisions that are "traditionally" unreviewable, and there is simply "no law to apply[.]" *Lincoln*, 508 U.S. at 191-92; *Heckler*, 470 U.S. at 830-31; *see Haitian Refugee Ctr., Inc. v. Baker*, 953 F. 2d 1498, 1508 (11th Cir. 1992). The Proclamation is broadly worded, and as Plaintiffs themselves concede, it does not itself define terms such as "undue hardship" or "national interest[.]" *See, e.g.*, FAC at ¶ 71; Proclamation at § 3(c). Instead, just as all visa adjudications call for the exercise of discretion by consular officers, application of the Proclamation's waiver criteria calls for consular officers to rely on their own judgment. Plaintiffs point to nothing that would provide a judicially manageable standard for this Court to determine how and when Defendants should exercise their discretion to grant or deny waivers. *See Webster v. Doe*, 486 U.S. 592, 599-601 (1988). When deciding whether to grant a waiver, consular officers must balance the competing interests of the foreign national and national interest with threats to national security and public safety that are particularly within the agencies' expertise. *See* Proclamation at § 3(c). Such choices are reserved to the political branches, not the judiciary, and consular officers do not make "*legal* determinations" easily reviewable by a court. *Allen*, 896 F.3d at 1107 & n.3 (emphasis in original); *see Hawaii*, 138 S. Ct. at 2415, 2421-22; *Haitian Refugee Ctr.*, 953 F.2d at 1507-08.

### 3. Plaintiffs' Claims Are Precluded by Section 702(1) of the APA and the Doctrine of Consular Nonreviewability.

The APA's cause of action and judicial review provisions do not apply when there are "limitations on judicial review," including the doctrine of consular nonreviewability. 5 U.S.C. § 702(1); *Allen*, 896 F.3d at 1104-07; *Saavedra Bruno*, 197 F.3d at 1160. Under that doctrine, a "consular official's decision to issue or withhold a visa is not subject either to administrative or

judicial review." *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986). The doctrine of consular nonreviewability, long recognized by the Supreme Court, preceded passage of the APA and therefore "represents one of" those areas "in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination." *Saavedra Bruno*, 197 F.3d at 1160 (citation omitted; brackets in original); *Allen*, 896 F.3d at 1107. The Ninth Circuit recently held that consular decisions are not subject to APA review and that a court may review such decisions only as constitutional challenges "under the limited *Mandel* standard[.]"*Allen*, 896 F.3d at 1097, 1106-09. U.S.-citizen plaintiffs are equally precluded from asserting such APA claims. *Li Hing*, 800 F.2d at 970.

Although Plaintiffs' challenge is styled as a challenge to the waiver process, they seek APA review of consular officers' individual decisions to deny visas. *See*, *e.g.*, FAC at ¶¶ 4, 96, 101, 108, 125, 148, 242, 310. But visa decisions, including associated waiver determinations, are not subject to judicial review under the longstanding doctrine of consular nonreviewability, which applies regardless of the manner in which the Executive Branch denies entry to an alien abroad. *See*, *e.g.*, *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). Plaintiffs' claims challenging individual denials of waivers must also be dismissed pursuant to the doctrine of consular nonreviewability because the decision to deny a waiver is part of the decision to deny a visa application. *See* Proclamation, § 3(c); *Hawaii*, 138 S. Ct. at 2412, 2414, 2422-23.

The doctrine sweeps so broadly that it "applies even where it is alleged that the consular officer failed to follow regulations[,] . . . where the applicant challenges the validity of the regulations on which the decision was based[,]" where the decision is alleged to have been based on a factual, procedural, or legal error, or where the applicant challenges "the process followed[.]" *Capistrano v. Dep't of State*, 267 F. App'x 593, 594-95 (9th Cir. 2008); *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (citations omitted).[3] Courts have rejected

---

[3] *See Rodgers v. Lynch*, No. 16-cv-4398, 2016 WL 10966384, at *2 & n.4 (C.D. Cal. Nov. 9, 2016) (doctrine barred challenges to consular officer's manner of considering application for another type of immigration waiver); *ZigZag, LLC v. Kerry*, No. 14-cv-14118, 2015 WL 1061503, at *4 (D. Mass. Mar. 10, 2015) (doctrine barred allegation that consular officer did not properly interview the applicant); *Toor v. Clinton*, No. 1:09-cv-279, 2009 WL 1582900, at *5 (E.D. Cal. Jun. 4, 2009) (applying doctrine to the process by which the U.S. Embassy reconsiders

plaintiffs' "attempts to circumvent the doctrine by claiming [they are] not seeking a review of the consular officer's decision, but [are] challenging some other, related aspect of the decision." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009) (citing cases), *summarily aff'd* No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010), *cert denied*, 562 U.S. 1140 (2011); *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 3-5 (D.D.C. 2009).

Plaintiffs here demand that this Court order Defendants to "retract all visa denials[,]" allow Plaintiffs to re-apply "for a waiver without submitting a new visa application, paying associated fees, and attending another interview[,]" and declare that Defendants did not fairly consider Plaintiffs for waivers in violation of the APA, the INA, and due process. FAC at 67 (prayer for relief), ¶¶ 1, 4. Putting aside the fact that such relief would be inappropriate, *see infra* at 9-11, Plaintiffs' request would require this Court to review consular officers' discretionary determinations and determine that they were made in error. *See Allen*, 896 F.3d at 1107 (Plaintiff's "theory converts consular nonreviewability into consular reviewability."); *Capistrano*, 267 F. App'x at 594-95. Because review of the substance of a consular officer's decision is barred by the APA and the doctrine of consular nonreviewability, Plaintiffs' claims challenging these individual consular decisions and the process surrounding them, must be dismissed. *Allen*, 896 F.3d at 1097, 1104-09.

**B. Plaintiffs Fail to State a Claim.**

Even if justiciable, Plaintiffs fail to state a claim upon which relief may be granted.

**1. Plaintiffs Fail to State a Claim for Violation of the Proclamation.**

Plaintiffs err in claiming that Defendants' alleged failure to adopt public guidance regarding waivers entitles them to relief. In the first place, proclamations are management tools for implementing the President's policies, not legally binding documents that may be enforced against the Executive Branch.[4] Thus, "there is no private right of action to enforce obligations

---

a visa application); *Nwansi v. Rice*, No. 06-cv-0003, 2006 WL 2032578, at *3-5 (N.D. Cal. Jul. 18, 2006) (finding doctrine applies to challenges to violations of State Department guidelines).

[4] The terms "proclamation" and "executive order" are used interchangeably since both are directives or actions by the President.

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

imposed on executive branch officials by executive orders." *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (internal quotations and citation omitted); *see Haitian Refugee Ctr.,* 953 F. 2d at 1510-11 (holding that plaintiffs failed to state a claim because President Reagan's executive order pursuant to Section 1182(f) did "not give rise to a private cause of action."), *cert. denied*, 502 U.S. 1122 (1992). There is a narrow exception to the general rule that executive orders are not privately enforceable, but the order must, at minimum: (1) have a "specific statutory foundation"; (2) "not preclude judicial review"; and (3) have "law to apply"—that is, an objective standard by which a court can judge the agency's actions. *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997). Plaintiffs have satisfied none of these requirements.

First, beyond conclusory assertions, Plaintiffs do not cite a single statutory or regulatory provision that was violated. *See FAC at ¶ 319; see also FAC at ¶¶ 8, 311, 328*. The APA provides a cause of action only for persons "adversely affected or aggrieved by an agency action within the meaning of a *relevant statute*,"—*i.e.*, persons to whom Congress intended to accord privately enforceable rights. 5 U.S.C. § 702 (emphases added); *see Thompson v. North Stainless, LP*, 562 U.S. 170, 177-78 (2011). Plaintiffs' suit is not an effort to enforce compliance with congressional directives, but "an indirect—and impermissible—attempt to enforce" compliance with Executive ones. *Air Transport Ass'n of America v. F.A.A.*, 169 F.3d 1, 8-9 (D.C. Cir. 1999); *see Haitian Refugee Ctr.*, 953 F.2d at 1510-11. Second, the Proclamation did not create a private cause of action. To the contrary, it expressly "preclu[des] judicial review," *Carmel-By-The-Sea*, 123 F.3d at 1166, stating that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity…." Proclamation, § 9(c). Courts have interpreted similar "no administrative or judicial review" clauses in a proclamation or executive order to preclude private enforcement through an APA action. *See Nat'l Ass'n of Gov't Emps. v. FLRA*, 204 F.3d 1272, 1276 (9th Cir. 2000); *Nat'l Ass'n of Gov't Emps. v. FLRA*, 179 F.3d 946, 951 (D.C. Cir. 1999). Third, as discussed above, *see supra* at 5, there is no "law to apply" or "objective standard" by which a court could judge the agencies' actions. *Carmel-By-The-Sea*, 123 F.3d at 1166. There is no administrative regulation or statute to measure a consular officer's

considerations of issues such as "national security or public safety" and "the national interest[.]" Proclamation, § 3(c). This is unsurprising given Congress's intent to vest the Executive with "flexible authority" and "broad discretion" over who is permitted to enter the United States. *Hawaii*, 138 S. Ct. at 2408, 2415. The Proclamation vests the agencies with authority to carry out the President's mandate, and it directs them to exercise their "discretion" in deciding whether to "grant waivers on a case-by-case basis" in light of a list of "individual circumstances[,]" but not "categorically[.]" Proclamation, § 3(c). Such directives are far from "sufficiently specific and objective," *W. Watershed Project v. Bureau of Land Mgmt.*, 629 F. Supp. 2d 951, 968 (D. Az. 2009), to subject these determinations, which implicate the Executive's core foreign-affairs and national-security responsibilities, to judicial review.

### 2. Plaintiffs Fail to State a Mandamus Claim.

Plaintiffs fail to state a claim for mandamus relief under either the Mandamus Act or the APA. 28 U.S.C. § 1361; 5 U.S.C. § 706(1); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (noting actions under APA Section 706(1) and the mandamus statute are equivalent). Plaintiffs ask this Court to order Defendants to provide "guidelines for the waiver process," to "immediately retract all visa denials[,]" to allow Plaintiffs to re-apply for waivers, and for a declaration that Defendants refused to fully and fairly consider applicants for waivers in violation of the APA, the INA, and the Due Process Clause. FAC at ¶¶ 317-20, 335-41, at 67-68 (prayer for relief), ¶¶ 1-6. Plaintiffs cannot meet any of the requisites for such drastic and "extraordinary" relief. *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997). Mandamus to compel agency action is available only where Plaintiffs have established that: (1) their "claim is clear and certain; (2) "the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Patel*, 134 F.3d at 931. Even where these requirements are met, a court may grant mandamus relief against an agency only where it finds compelling equitable grounds. *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005).

First, Plaintiffs have no clear right to the relief they seek, nor do Defendants have a nondiscretionary, ministerial duty to perform the acts requested. *See De Castro v. Fairman*, 164

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

1  F. App'x 930, 933 (11th Cir. Jan. 31, 2006); *Van Ravenswaay*, 613 F. Supp. 2d at 4. Mandamus

2  jurisdiction exists only for actions "required by law[,]"not for those "taken within the consul's

3  *discretion*[.]" *Patel*, 134 F.3d at 931-32 (emphasis added). Plaintiffs cannot point to any

4  "*discrete* agency action[s] that [the agencies are] *required to take*." *Norton*, 542 U.S. at 62-65

5  (emphasis in original); *see Toor*, 2009 WL 1582900, at *5-6; *Nwansi*, 2006 WL 2032578, at *3-

6  5. The language of the Proclamation emphasizes that no applicant has a "clear right" to a waiver,

7  and that it is up to consular officers, following guidance from the Secretaries of State and

8  Homeland Security, to decide "in their discretion" if a waiver "would be appropriate" in any

9  given case. Proclamation, § 3(c).

10        Even if the Proclamation were enforceable, it does not impose any timeline by which

11  waivers must be adjudicated. Proclamation, § 3(c); *see Luo v. Coultice*, 178 F. Supp. 2d 1135,

12  1140 (C.D. Cal. 2001). With no "statutory or regulatory provision[ ]" under which to bring suit,

13  Plaintiffs are forced to rely on the APA's "reasonable time" standard. 5 U.S.C. § 555(b);

14  Proclamation, § 3(c); FAC at ¶¶ 317, 337; *id*. Even if Plaintiffs' claims were subject to APA

15  review, *see supra* at 3-7, because the Proclamation has only been in effect since December 2017,

16  Plaintiffs fail to state a claim that Defendants have not acted "within a reasonable time[ ]," given

17  Defendants' need to review thousands of applications individually to assess the national-security

18  and public-safety requirements for a waiver. 5 U.S.C. § 555(b); *see Hussein v. Beecroft*, No. 17-

19  cv-12356, 2018 WL 3574717, at *7 (E.D. Mich. July 25, 2018); *Luo*, 178 F. Supp. 2d at 1140.

20        Regarding guidance, Defendants *have* acted. Plaintiffs themselves acknowledge that the

21  State Department has issued guidance on its implementation of the Proclamation and waiver

22  process. *See* State Dep't Website; see, *e.g.*, FAC at ¶ 86; ECF 34-4, 34-7. Nothing in the

23  Proclamation requires that this guidance be made public. The guidance is sensitive for the same

24  reason why most general guidance to consular officers regarding visa adjudications is not

25  publicly avaiable: if the government described in detail the process and standards that it uses to

26  vet visa applicants, then nefarious actors could manipulate their appliations in order to avoid

27  revealing derogatory information. *See ACLU of N. Cal. v. FBI*, 881 F.3d 776, 778 (9th Cir.

28  2018). Mandamus is not the appropriate avenue for Plaintiffs to voice their dissastisfaction with

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

10

the agencies' guidance and their implementation of the waiver program in the last nine months, because "programmatic improvements" must be sought in Congress or at the agency, not through the courts under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990).

Plaintiffs themselves concede that Defendants have adjudicated "[m]any" of Plaintiffs' visa applications and considered them for waivers. FAC at ¶ 96; *see* FAC at ¶¶ 185, 260. For those Plaintiffs allegedly still awaiting adjudication, they fail to state a mandamus claim because their waiver applications have been pending for less than one year, the evaluation process is time-consuming, and the agencies have many thousands of applications to process, each of which requires an individual national-security and public-safety examination. 5 U.S.C. § 706(1); *see Luo*, 178 F. Supp. 2d at 1140; *see, e.g.*, FAC at ¶¶ 117, 149, 157, 164.

### 3. Plaintiffs Fail to State Equal Protection and Due Process Claims.

Plaintiffs' challenge to the Proclamation on constitutional grounds lacks merit. First, the logic of *Hawaii* forecloses Plaintiffs' equal protection and substantive due process claims. Second, there is no substantive due process right to reside in the United States with non-citizen family members. Finally, even assuming that certain plaintiffs have a protected liberty or property interest, Defendants provided all the process that was due by providing statutory justifications for the visa denials.

#### a. The substantive due process and equal protection claims contravene *Hawaii*.

*Hawaii* forecloses Plaintiffs' challenges to individual waiver denials, and to the waiver provision and its implementation. *See* 138 S. Ct. at 2407-23. After finding that "the Proclamation . . . is facially neutral toward religion," *id.* at 2418, the Court undertook rational basis review of the Proclamation to consider "whether the entry policy is plausibly related to the Government's stated objective to protect the country and improve vetting processes," noting that the policy must be upheld "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id.* at 2420. The Court addressed extrinsic evidence of claimed discriminatory animus similar to what Plaintiffs cite here (*compare* FAC ¶¶ 121, 171, 330 *with Hawaii*, 138 S. Ct. at 2417-18, 2421) and found that such evidence "does not support an inference of religious hostility" or otherwise provide a basis to set aside the Proclamation, which

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

"is expressly premised on legitimate purposes: preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices." *Hawaii,* 138 S. Ct. at 2421. The Court thus held that "the Government has set forth a sufficient national security justification to survive rational basis review" and rejected First Amendment challenges to the Proclamation. *Id.* at 2423. Plaintiffs' allegations are based on theories similar to those rejected in *Hawaii*. Thus, whether Plaintiffs' challenges rest on due process or equal protection grounds, the same rational basis review applies, and the waiver provision is constitutional under *Hawaii*.

> **b. The substantive due process claim also fails as there is no fundamental right to reside in the United States with non-citizen family members.**

A plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising a substantive due process claim. *Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003). Plaintiffs have not met and cannot meet that standard. First, "unadmitted and nonresident alien[s]" have "no constitutional right of entry into the country." *Mandel*, 408 U.S. at 762. Second, foreign nationals have no "family unity" right to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009); *see Sianipar v. Holder*, 584 F. App'x 353, 354 (9th Cir. 2014) (rejecting due process claim based on family unity considerations); *see also Carrasco-Escobar v. Lynch*, 670 F. App'x 538 (9th Cir. 2016); *Mendoza-Calvillo v. Holder*, 521 F. App'x 579 (9th Cir. 2013); *Luna-Mastache v. Holder*, 469 F. App'x 546, 547 (9th Cir. 2012).

In *Gebhardt v. Nielsen*, the plaintiff brought a substantive due process claim attacking the denial of a visa petition for his non-citizen wife and her children, asserting a fundamental right to preserve the integrity of his family. 879 F.3d 980, 988 (9th Cir. 2018). The Ninth Circuit rejected that claim because "the generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." *Id.* (internal quotation marks omitted). The court in *Gebhardt* found that "a fundamental right to reside in the United States with [one's] non-citizen relatives" "would "run[ ] headlong into Congress' plenary power over immigration." *Id.* Similarly, in *Morales-Izquierdo v. Dep't of Homeland Sec.*, the Ninth Circuit held that "lawfully denying plaintiff's adjustment of status does not violate any of his or

his family's substantive rights protected by the Due Process Clause" even "when the impact of our immigration laws is to scatter a family or to require some United States citizen children to move to another country with their parent." 600 F.3d 1076, 1091 (9th Cir. 2010) *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc).

### c.   The procedural due process claim fails because any Plaintiff who has a protected liberty or property interest was afforded all process due.

A person seeking a government benefit, such as a visa, does not have "a protected entitlement" for due-process purposes where "government officials may grant or deny it in their discretion." *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Plaintiffs' procedural due process claim fails because Plaintiffs do not have a liberty or property interest in the grant of a discretionary waiver.

Although Plaintiffs nebulously mention the "right to fair and impartial processes" and claim a fundamental liberty interest of "family integrity," *see supra*, they essentially contend that Defendants did not follow "various procedures for the processing of visas." FAC ¶¶ 328. This claim lacks merit for several reasons. Most Plaintiffs do not have a protected liberty or property interest that could afford them any process. As "unadmitted and nonresident alien[s]," the visa applicant plaintiffs have "no constitutional right of entry into the country," *Mandel*, 408 U.S. at 762, and "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy*, 338 U.S. at 544.[5] Even assuming that a U.S.-citizen family member has any protected liberty or property interest, Defendants afforded them all process due by providing a statutory citation justifying the visa denials. *Hawaii*, 138 S. Ct. at 2419 . ("'[R]espect for the political branches' broad power over the creation and administration of the immigration system' meant that the Government need provide only a statutory citation to explain a visa denial." *Id.* at 2419 (quoting *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring)).[6]

---

[5] *Lanza v. Ashcroft*, 389 F.3d 917, 927 (9th Cir. 2004) and *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir .2003), *see* FAC ¶ 328, are inapt because they addressed due process rights in the context of *removal* of aliens who have entered the United States.

[6] FAC Ex. L at 2 (ECF No. 34-13) ("[A] consular officer found you ineligible for a visa under Section 212(f) of the [INA], pursuant to Presidential Proclamation 9645 . . . Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.").

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD

Thus, all Plaintiffs' procedural due process claims fail.

### 4. Plaintiffs' General Claims Regarding the Waiver Assessment Process, Lack of Guidance, and Supposed "Blanket Denials" Lack Merit.

The Proclamation's explicit terms, publicly-available information, the Supreme Court's decision in *Hawaii*, and consular officers' favorable adjudications of waivers foreclose Plaintiffs' claims targeting the waiver assessment process, guidance issuance, and supposed "blanket denials." Plaintiffs cannot plausibly contend that they were not considered for a waiver. Although Section 3(c) places the burden on the applicant to "demonstrate" eligibility for a waiver, the State Department has explained that there is no separate application from to "submit a waiver." Instead, *all* applicants covered by the Proclamation are automatically considered for a waiver based on information in the visa application and the applicant's interview. FAC Ex. E. (ECF 34-6 at 3); State Dep't Website. The Proclamation and public guidance explicitly set forth the eligibility factors for a waiver and provide examples of cases that may qualify. *See id*; Proclamation, § 3(c)(iv)(A).

Additionally, the Plaintiffs were considered for waivers based on information presented during their interviews. *See* FAC ¶ 94-307. Consular officers have continued to consider, under State Department guidance, whether applicants covered by the Proclamation are eligible for a waiver. *See* FAC ¶ 86 (noting 579 waivers granted as of April 2018, rising to 768 in July 2018). In fact, 1,607 waivers were granted as of August 31, 2018. State Dep't Website. Plaintiffs cannot dispute that the State Department has reviewed thousands of visa applications and continues to grant waivers. Thus, assertions of a policy of "blanket denials" and withholding an opportunity to demonstrate eligibility for a waiver fail. Moreover, nothing in the Proclamation imposes on the Government a duty to make public its guidance to consular officers. Nonetheless, the State Department has provided and continuously updates public guidance and information on the waiver process and the Proclamation's requirements. State Dep't Website.

Further, the Supreme Court in *Hawaii* expressly rejected arguments—very similar to those in the FAC—that waivers are too rarely granted and the Proclamation's waiver process is a sham. *Compare Hawaii*, 138 S. Ct. at 2422-23 *with* FAC ¶¶ 3, 83-87. Plaintiffs rely on many of

the same "selective statistics" and "anecdotal evidence" that was offered to the Supreme Court in order to "suggest[ ] that not enough individuals are receiving waivers or exemptions." *Id.* at 2423 n.7; *see id.* at 2431-33 (Breyer, J., dissenting) (referencing the Richardson declaration, attached to Plaintiffs' FAC as Exhibit B). If this Court took up Plaintiffs' suggestion to determine whether the number of granted waivers is too low, it would be required to review and assess the "correctness" of consular officer's individual discretionary decisions, which the doctrine of consular nonreviewability precludes. Accordingly, Plaintiffs' general allegations targeting the waiver assessment process, guidance issuance, and supposed "blanket denials" lack merit.[7]

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' FAC with prejudice.

Dated: September 12, 2018

JOSEPH H. HUNT
Assistant Attorney General
United States Department of Justice, Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation, District Court Section

By: GISELA A. WESTWATER
Assistant Director

By: STACEY I. YOUNG
Senior Litigation Counsel

By: */s/ P. Angel Martinez*
P. ANGEL MARTINEZ
Trial Attorney (NYBN 5009790)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
T: (202) 598-8085
F: (202) 305-7000
Angel.Martinez2@usdoj.gov

---

[7] The claim for declaratory relief under the Declaratory Judgment Act ("DJA") also fails as the DJA does not provide an independent basis for federal jurisdiction or a cause of action. *See* FAC at ¶ 13; pg. 68 at ¶ 4; *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Alternatively, this Court should exercise its discretion to dismiss the DJA claims. *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998).

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND MEMORANDUM IN SUPPORT
3:18-cv-01587-JD