JOHNATHAN SMITH (*pro hac vice*)
SIRINE SHEBAYA (*pro hac vice*)
NIMRA AZMI (NY SBN 5466693)*‡
JOSEPH SAEI (CA SBN 321341)‡
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
Telephone: (202) 897-2622
Facsimile: (202) 508-1007
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
nimra@muslimadvocates.org
yusuf@muslimadvocates.org

LUIS CORTES ROMERO (CA SBN 310852)
ALMA DAVID (CA SBN 257676)
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue S., Suite R102
Kent, WA 89032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591
lcortes@ia-lc.com
adavid@ia-lc.com

SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
LOTFI LEGAL, LLC
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974
shabnam@lotfilegal.com
veronica@lotfilegal.com

*Attorneys for Plaintiffs*

*Pro hac vice admission application pending
‡ Not admitted to practice in D.C.; supervised by members of the D.C. bar

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| FARANGIS EMAMI, et al., | Case No. 3:18-cv-01587-JD |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| KIRSTJEN NIELSEN, et al., | |
| Defendants. | Judge: Hon. James Donato |
| | Hearing: December 13, 2018, 10 a.m. |
| | Place: San Francisco U.S. Courthouse, Courtroom 11, 19th Floor |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD ..........................................................................................................2

RELEVANT BACKGROUND..............................................................................................3

ARGUMENT ......................................................................................................................4

   I.  PLAINTIFFS' CLAIMS ARE JUSTICIABLE ...........................................................4

      A.  No statute precludes or limits judicial review of agency policy and guidance relating
          to consular decision-making...................................................................................4

      B.  The challenged actions are not "committed to agency discretion by law."........................7

   II.  PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR
        CLAIMS FOR RELIEF .........................................................................................9

      A.  Plaintiffs have adequately alleged APA violations.................................................9

      B.  Plaintiffs have stated violations of the Due Process Clause. ...........................................12

         i.  Due process.....................................................................................................12

         ii. Equal protection ...............................................................................................14

      C.  Plaintiffs have adequately stated a claim for relief for "agency action unlawfully
          withheld or unreasonably delayed" under the APA or, in the alternative,
          a mandamus claim...............................................................................................14

CONCLUSION ................................................................................................................15

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Allen v. Milas,*

4

896 F.3d 1094 (9th Cir. 2018) ................................................................ 6

*Am. Hosp. Ass'n v. Burwell,*

5

812 F.3d 183 (D.C. Cir. 2016) ............................................................... 14

6

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles,*

7

648 F.3d 986 (9th Cir. 2011) ................................................................. 2

8

*Bautista-Perez v. Holder,*

681 F. Supp. 2d 1083 (N.D. Cal. 2009) ................................................. 4

9

*Bennett v. Spear,*

10

520 U.S. 154 (1997) .............................................................................. 9

11

*Bowen v. Mich. Acad. of Family Physicians,*

476 U.S. 667 (1986) .......................................................................... 2, 6

12

*Brown v. Holder,*

13

763 F.3d 1141 (9th Cir. 2014) ............................................................... 13

14

*Bustamante v. Mukasey,*

15

531 F.3d 1059 (9th Cir. 2008) .......................................................... 5, 13

16

*Chai v. Carroll,*

48 F.3d 1331 (4th Cir. 1995) ................................................................. 9

17

*Chamber of Commerce v. Reich,*

18

74 F.3d 1322 (D.C. Cir. 1996) ............................................................... 9

19

*Citizens to Preserve Overton Park, Inc. v. Volpe,*

401 U.S. 402 (1971) .............................................................................. 7

20

*City of Carmel-By-The-Sea v. U.S. Dep't of Transp.,*

21

123 F.3d 1142 (9th Cir. 1997) ............................................................... 9

22

*Crowley Caribbean Transp., Inc. v. Pena,*

23

37 F.3d 671 (D.C. Cir. 1994) ................................................................. 6

24

*Damus v. Nielsen,*

313 F. Supp. 3d 317 (D.D.C. 2018) ................................................... 6, 10

25

*Dia v. Ashcroft,*

353 F.3d 228 (3d Cir. 2003) .................................................................................. 13

*Estate of Saunders v. Comm'r,*

745 F.3d 953 (9th Cir. 2014) .................................................................................. 4

*Hawaii v. Trump,*

878 F.3d 662 (9th Cir. 2017) ............................................................................ 5, 6, 9

*Heckler v. Chaney,*

470 U.S. 821 (1985) ............................................................................................... 7

*In re E-L-H,*

23 I. & N. Dec. 700 (BIA 2004) ............................................................................. 8

*INS v. St. Cyr,*

533 U.S. 289 (2001) ............................................................................................... 5

*Int'l Refugee Assistance Project v. Trump,*

241 F. Supp. 3d 539 (D. Md. 2017) ....................................................................... 9

*Int'l Refugee Assistance Project  v. Trump,*

883 F.3d 233 (4th Cir. 2018) ............................................................................. 5, 6

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese,*

761 F.2d 798 (D.C. Cir. 1985) ............................................................................... 5

*Kerry v. Din,*

135 S.Ct. 2128 (2015) .................................................................................. 6, 12, 13

*Kleindienst v. Mandel,*

408 U.S. 753 (1972) ............................................................................................. 13

*Knievel v. ESPN,*

393 F.3d 1068 (9th Cir. 2005) ............................................................................... 2

*Lanza v. Ashcroft,*

389 F.3d 917 (9th Cir. 2004) ............................................................................... 13

*Li Hing of Hong Kong, Inc. v. Levin,*

800 F.2d 970 (9th Cir. 1986) ................................................................................. 6

*Lincoln v. Vigil,*

508 U.S. 182 (1993) ............................................................................................... 7

*Lopez v. FAA,*

318 F.3d 242 (D.C. Cir. 2003) ............................................................................. 10

*Marincas v. Lewis*,
   92 F.3d 195 (3d Cir. 1996) ................................................................................ 14

*Matter of Cervantes*,
   22 I. & N. Dec. 560 (BIA 1999) ........................................................................... 8

*Matter of Monreal-Aguinaga*,
   23 I. & N. Dec. 56 (BIA 2001) ............................................................................. 8

*Matthews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................................................... 14

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991) ....................................................................................... 5, 10

*Morton v. Ruiz*,
   415 U.S. 199 (1974) ........................................................................................... 10

*Ms. L. v. U.S. Immigration & Customs Enf't*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................................. 4

*Mulligan v. Schultz*,
   848 F.2d 655 (5th Cir. 1988) ................................................................................ 5

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*,
   168 F. Supp. 3d 268 (D.D.C. 2016) .................................................................... 15

*Pars Equal. Ctr. v. Pompeo*,
   No. 2:18-cv-01122-JLR (W.D. Wash. filed July 31, 2018) ................................... 4

*Patel v. Reno*,
   134 F.3d 929 (9th Cir. 1997) ................................................................................ 5

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ............................................................................................... 3

*Rodrigues v. Donovan*,
   769 F.2d 1344 (9th Cir. 1985) .............................................................................. 7

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) ............................................................................ 6

*Sackett v. EPA*,
   566 U.S. 120 (2012) ............................................................................................. 4

*Sale v. Haitian Ctrs. Council, Inc.*,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - iv

509 U.S. 155 (1993) ............................................................................................ 5

*Sidney Coal Co. v. Soc. Sec. Admin.,*

    427 F.3d 336 (6th Cir. 2005) ........................................................................... 4

*Spencer Enters., Inc. v. United States,* 3

    45 F.3d 683 (9th Cir. 2003) ......................................................................... 3, 8

*Stanley v. Illinois,*

    405 U.S. 645 (1972) ....................................................................................... 13

*Trump v. Hawaii,*

    138 S.Ct. 2392 (2018) ............................................................................ 1, 6, 14

*Trump v. Int'l Refugee Assistance Project,*

    857 F.3d 554 (4th Cir. 2017) ........................................................................... 6

*U.S. ex rel. Knauff v. Shaughnessy,*

    338 U.S. 537 (1950) .......................................................................................... 5

*U.S. v. Salerno,*

    481 U.S. 739 (1987) ....................................................................................... 14

*United States ex rel. Accardi v. Shaughnessy,*

    347 U.S. 260 (1954) ....................................................................................... 10

*Ventura-Escamilla v. INS,*

    647 F.2d 28 (9th Cir. 1981) .............................................................................. 6

*W. Ctr. for Journalism v. Cederquist,*

    235 F.3d 1153 (9th Cir. 2000) .......................................................................... 2

*Wilkinson v. Legal Servs. Corp.,*

    27 F. Supp. 2d 32 (D.D.C. 1998) .................................................................. 10

## **STATUTES**

5 U.S.C. § 555(b) ................................................................................................ 15

5 U.S.C. § 701(a)(1) ............................................................................................. 4

5 U.S.C. § 701(a)(2) ............................................................................................. 4

5 U.S.C. § 706(1) ............................................................................................... 12

5 U.S.C. § 706(2) ................................................................................................. 9

5 U.S.C. § 706(2)(A) ............................................................................................ 4

8 U.S.C. § 1182(a)(9)(B)(v) ................................................................................. 8

8 U.S.C. § 1182(h)(1)(B) ................................................................................. 8

8 U.S.C. § 1182(i)(1) ....................................................................................... 8

8 U.S.C. § 1201(a)(1) ..................................................................................... 11

28 U.S.C. § 1361 ........................................................................................... 14

## REGULATIONS

22 C.F.R. § 40.6 ............................................................................................ 10

22 C.F.R. § 41.121(b)(1) ............................................................................... 11

22 C.F.R. § 42.81(a) ...................................................................................... 11

22 C.F.R. § 42.81(b) ...................................................................................... 11

22 C.F.R. § 41.105(a) .................................................................................... 11

22 C.F.R. § 42.65 ........................................................................................... 11

## OTHER AUTHORITIES

4 Admin. L. & Prac. § 12:10 (3d ed.) ............................................................. 3

9 Foreign Affairs Manual 504.11-3(A)(1)(b)(5) ........................................... 11

Brief for Amici Curiae Scholars of Immigration Law in Support of Respondents on the History
   of the Immigration and Nationality Act, *Trump v. Hawaii,* 138 S.Ct. 2392 (2018) (No. 17-
   965), 2018 WL 1586764 ............................................................................... 8

Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017) ................................ 15

**INTRODUCTION**

Plaintiffs in this action are U.S. citizens, lawful permanent residents, and Iranian, Libyan, Somali, Syrian, and Yemeni visa applicants who are suffering a range of ongoing harms because of Defendants' failure to institute reasonable guidelines and an orderly process by which they may seek to demonstrate their eligibility for waivers under Presidential Proclamation 9645 ("the Proclamation"). They are separated from family and loved ones at critical times in their lives including pregnancy, marriage, childbirth, and medical need; forced to live in desperate or dangerous circumstances; and suffering severe financial harms. Each of their circumstances fit squarely within one or more of the examples offered in the Proclamation as a situation where a waiver grant may be appropriate. They seek the bare minimum an agency is expected to provide when it holds itself out as making a waiver available: clear guidance about the process; an opportunity to apply in an orderly manner; and full and timely adjudication of their requests.

Unlike Plaintiffs in *Trump v. Hawaii,* 138 S.Ct. 2392 (2018), Plaintiffs here do not challenge the Proclamation itself. Rather, taking the Proclamation as the law of the land, they challenge Defendants' implementation of its waiver provisions. Plaintiffs allege that Defendants have failed to abide by the terms of the Proclamation, the Immigration and Nationality Act ("INA"), and its implementing regulations and guidelines by failing to provide appropriate guidance and an orderly application process for individuals to seek the grant of a waiver.

At its core, Defendants' case rests on a fundamental misunderstanding of the nature of Plaintiffs' claims. Plaintiffs do not challenge individual consular officer decisions on the merits and do not challenge the outcome of any particular consular officer's decision in a given case. (To the contrary, Plaintiffs allege *inter alia* that consular officials are not empowered to make a final determination with respect to waiver grants.) Instead, Plaintiffs challenge the arbitrary and

capricious nature of the limited agency guidance for adjudicating waivers, its insufficiency, and its inconsistency with both the text of the Proclamation and applicable provisions of the INA, implementing regulations, and the Foreign Affairs Manual ("FAM").

Defendants' arguments also rely centrally on a sweeping interpretation of the doctrine of consular nonreviewability that has roundly been rejected by the Ninth Circuit and that runs counter to well-established Supreme Court precedent. The doctrine of consular nonreviewability is straightforwardly inapplicable here because this is not a case seeking review of an individual consular officer's discretionary decision. As set forth below, Defendants' actions and inactions in implementing the waiver provisions of the Proclamation are subject to review, and Plaintiffs have adequately alleged each of their claims for relief. Accordingly, Defendants' Motion to Dismiss ("MTD") should be denied in full.

## **LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations of the complaint as true, construe its pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party. *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles,* 648 F.3d 986 (9th Cir. 2011); *W. Ctr. for Journalism v. Cederquist,* 235 F.3d 1153, 1154 (9th Cir. 2000). Documents attached or referred to in the complaint may be considered, but any ambiguity therein must be resolved in favor of the plaintiffs. *Knievel v. ESPN,* 393 F.3d 1068, 1076-77 (9th Cir. 2005). Where the government relies on a jurisdiction-stripping statute, courts begin with a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 670, 678-79 (1986). To grant a motion to dismiss on this basis, a court must find "clear and convincing evidence" of

congressional intent to foreclose review under the statute. *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 64 (1993). Agency actions are also generally reviewable under 28 U.S.C. § 1331, *Spencer Enters., Inc. v. United States,* 345 F.3d 683, 687 (9th Cir. 2003), and "there is a strong presumption against unreviewability." 4 Admin. L. & Prac. § 12:10 (3d ed.).

## **RELEVANT BACKGROUND**

Under the Proclamation, all immigrants and various categories of non-immigrants from five predominantly Muslim countries—Iran, Libya, Somalia, Syria, and Yemen—are subject to an indefinite ban, unless they can "demonstrate" that: (1) denial of entry would cause them "undue hardship"; (2) their entry would not pose a threat to national security or public safety; and (3) their entry would be in the national interest. First Amended Complaint ("FAC") ¶¶ 57, 61. A waiver is the only means by which covered individuals from the banned countries may enter the United States. *Id.* at ¶ 59.

The Proclamation provides that consular officers may grant waivers from the Proclamation and mandates that the agencies develop and promulgate guidance relating to the waiver criteria and the process by which waivers are to be adjudicated. *Id.* at ¶¶ 60-63. The Proclamation lists a number of detailed examples and illustrations to set the standard for agency guidance on waiver implementation. *Id.* The INA, its implementing regulations, and the FAM also provide generally applicable standards and procedures that establish the framework for visa and waiver adjudication. *See infra* at Sections I.B, II.A.

Plaintiffs have alleged that Defendants have failed to promulgate appropriate guidance, to put in place an orderly application process by which individuals may get fair adjudication of their waiver requests, or to empower consular officials to grant waivers, in violation of the Administrative Procedure Act ("APA") and of Plaintiffs' due process rights.

1

2

## ARGUMENT

3

## I.   PLAINTIFFS' CLAIMS ARE JUSTICIABLE

4

The APA reflects a broad presumption in favor of judicial review. *Sackett v. EPA,* 566 U.S.

5

120, 128 (2012). It authorizes a court to "hold unlawful and set aside agency action, findings, and

6

conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in

7

accordance with law." 5 U.S.C. § 706(2)(A). This presumption is subject to two narrow exceptions:

8

first, where a statute explicitly precludes judicial review, *id.* § 701(a)(1); and second, where the

9

challenged action is "committed to agency discretion by law," *id.* § 701(a)(2). Contrary to

10

Defendants' arguments, neither exception is applicable in the present case.[1]

11

### A.   No statute precludes or limits judicial review of agency policy and guidance relating to consular decision-making.

12

13

As an initial matter, neither of the statutory provisions Defendants identify precludes

14

judicial review in this case. The first, 6 U.S.C. § 236 (f),[2] concerns individual consular decisions

15

16

17

---

18

[1] In a footnote, Defendants summarily state that each Plaintiff must establish venue individually in order for venue to be proper in this case. Defendants have now waived any improper venue argument by failing to include it in a responsive pleading. *See* Rule 12(h), *Bautista-Perez v. Holder,* 681 F. Supp. 2d 1083, 1091 (N.D. Cal. 2009); *Estate of Saunders v. Comm'r,* 745 F.3d 953, 962 (9th Cir. 2014) (arguments in footnote are not preserved). On the merits, Defendants are incorrect. *See Ms. L. v. U.S. Immigration & Customs Enf't,* 302 F. Supp. 3d 1149, 1158-59 (S.D. Cal. 2018) (residency requirements of 28 U.S.C. § 1391(e)(1)(C) are met if one plaintiff resides in the district); *Sidney Coal Co. v. Soc. Sec. Admin.,* 427 F.3d 336, 344 (6th Cir. 2005) (same). The government has also functionally waived its venue arguments by moving to change venue to this court in a related case currently pending in Seattle, *Pars Equal. Ctr. v. Pompeo,* No. 2:18-cv-01122-JLR (W.D. Wash. filed July 31, 2018).

19

20

21

22

23

[2] Neither of the two other subsections Defendants cite are about judicial review. Subsection (b)(1) divests *the Secretary of State* of "authority to alter or reverse the decision of a consular officer to refuse a visa," and subsection (c)(1) states that the Secretary "may direct a consular officer to refuse a visa . . . if the Secretary of State deems such refusal necessary or advisable in the foreign policy or security interests of the United States."

24

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - 4

to grant or deny a visa; the second, 8 U.S.C. § 1201(i), strips courts of jurisdiction to review visa *revocations,* which the Proclamation specifically does not authorize. *See Int'l Refugee Assistance Project ("IRAP") v. Trump,* 883 F.3d 233, 275-76 (4th Cir. 2018) , *vacated on other grounds*, (Gregory, J., concurring). In fact, 8 U.S.C. § 1182(f), which provides the statutory authority for the Proclamation, does not preclude judicial review. *See id.* at 276. Defendants' reliance on *Haitian R. Ctr. v. Baker* is also misplaced: the Supreme Court went on to review, on the merits, the same proclamation that was at issue in that case. *See Sale v. Haitian Ctrs. Council, Inc.,* 509 U.S. 155 (1993*); see also INS v. St. Cyr,* 533 U.S. 289, 289-99 (2001) (applying "strong presumption in favor of judicial review of administrative action" in the immigration context); *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492 (1991) (finding review permissible in class action and interpreting statutory preclusion as applying only to individual denials).

Defendants' arguments here thus rise and fall with the applicability of the doctrine of consular nonreviewability to this case. But that doctrine applies, as the Ninth Circuit recently explained, only to "individual visa denials," which are not at issue here. *Hawaii v. Trump,* 878 F.3d 662, 679 (9th Cir. 2017), *vacated on other grounds.* The Ninth Circuit has repeatedly applied the doctrine only to an individual "consular official's decision to issue or withhold a visa," *Bustamante v. Mukasey,* 531 F.3d 1059, 1061 (9th Cir. 2008), not to statutory challenges against a general *policy. Patel v. Reno,* 134 F.3d 929, 931-32 (9th Cir. 1997); *see also Int'l Union of Bricklayers & Allied Craftsmen v. Meese,* 761 F.2d 798, 801 (D.C. Cir. 1985); *Mulligan v. Schultz,* 848 F.2d 655, 657 (5th Cir. 1988); *cf. U.S. ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 543, 544-47 (1950) (noting in dicta that an individual decision "to exclude a given alien" may not be reviewable, but reviewing on the merits two statutory claims). Even the main case on which the government relies characterizes the doctrine of consular nonreviewability as applying only to the

merits of individual consular officers' decisions, *see Allen v. Milas,* 896 F.3d 1094, 1105 (9th Cir. 2018), as does *Saavedra Bruno v. Albright,* 197 F.3d 1153, 1160, 1162 (D.C. Cir. 1999). The Ninth Circuit has consistently construed the doctrine narrowly.

In fact, the doctrine of consular nonreviewability applies specifically to decisions of consular officers that—unlike the current scheme—are *not* subject to review by the Secretary of State. *See, e.g., Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir. 1986); *Ventura-Escamilla v. INS,* 647 F.2d 28, 30 (9th Cir. 1981). This is not unique to the INA: there are numerous legislative schemes that make individualized fact-finding by executive officers immune from review, even where the "high-level government policy" is not. *Trump v. IRAP,* 857 F.3d 554, 587 (4th Cir. 2017), *vacated on other grounds*; *see, e.g., Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 675-76 (1986) (statute granted review of "a regulation" but not of an individual "determination" made under that regulation); *cf. Crowley Caribbean Transp., Inc. v. Pena,* 37 F.3d 671, 676-77 (D.C. Cir. 1994) (noting that "[t]here are ample reasons for distinguishing the two situations"). And the doctrine of consular nonreviewability does not apply to constitutional claims, which remain reviewable. *See, e.g., Kerry v. Din,* 135 S.Ct. 2128 (2015) (reviewing on the merits a constitutional challenge to a consular visa denial).

The *Hawaii* line of cases also makes clear that both the Proclamation and agency action under the Proclamation are reviewable, foreclosing Defendants' arguments. *See Hawaii,* 878 F.3d at 680-682 (finding Proclamation reviewable); *Hawaii,* 138 S.Ct. at 2407 (assuming without deciding that statutory claims are reviewable); *see also IRAP,* 883 F.3d at 287. Moreover, courts have found violations under the APA even where boilerplate language disclaiming substantive rights was part of the challenged policy. *See, e.g., Damus v. Nielsen*, 313 F. Supp. 3d 317, 338 (D.D.C. 2018) (finding APA violation where agency policy included language disclaiming

substantive rights because policy was binding on the agency and intended to benefit individuals who would otherwise have no protection). Finally, it is well-established that constitutional claims remain reviewable under the APA, even where the statute precludes judicial review. *See, e.g., Rodrigues v. Donovan,* 769 F.2d 1344, 1347 (9th Cir. 1985). Thus, Plaintiffs' challenge is not precluded by § 701(a)(1).  Because the doctrine of consular nonreviewability does not apply, Plaintiffs' claims are also not precluded by § 702(1) of the APA. *See* MTD at 5-7.

**B.  The challenged actions are not "committed to agency discretion by law."**

Defendants further argue that judicial review is not available under the APA because the challenged actions are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). But courts have long held that § 701(a)(2) is a "very narrow" exception to the general presumption of reviewability and is applicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977); *Heckler v. Chaney,* 470 U.S. 821, 830 (1985) (review is precluded where "a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

Here, too, Defendants' argument relies largely on the applicability of the doctrine of consular nonreviewability to this case. As argued in the preceding section, the doctrine does not apply. And other cases Defendants cite are generally inapposite.[3] Unlike the situation in *Lincoln v. Vigil,* 508 U.S. 182 (1993), both the text of the Proclamation and the INA and its regulatory framework for adjudicating waivers provide more than ample law to apply. *See Spencer Enters.,*

---

[3] In *Vigil,* for example, the statute at issue involved the allocation of funds from a lump-sum appropriation and therefore quintessentially presented the "rare circumstance[e]" in which a statute is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - 7

1   *Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (stating that a wholly discretionary decision

2   may be reviewable where "regulations or agency practice" provide comparable standards).

3          The Proclamation itself provides detailed illustrations and examples that are intended to

4   serve as guideposts for agency decision-making and that use terms familiar to the INA, including

5   "waivers" and "undue hardship,"[4] to set forth the parameters for the guidance the agencies are

6   ordered to adopt. The guidance the agencies did provide refers to the Proclamation's framework

7   as binding. *See* FAC Ex. E, First Van Hollen Letter (ECF 34-6). And the INA, regulations, and

8   FAM generally provide a detailed framework against which to compare the guidance and process

9   provided for this particular waiver scheme. For example, the INA provides for a number of waivers

10  to overcome grounds of inadmissibility. *See, e.g.,* 8 U.S.C. §§ 1182(a)(9)(B)(v); (h)(1)(B); (i)(1).

11  Every waiver includes an orderly application process and clear, publicly available criteria:

12  applicants submit application forms and supporting evidence, which adjudicators are required to

13  consider *before* arriving at a decision.[5]

14

15         Finally, although the Proclamation and public agency statements commit waiver decisions

16  to consular officers' discretion, Plaintiffs have alleged that consular officers have not in fact been

17  allowed to grant any waivers but instead have been required to refer such decisions to the Visa

18  Office in Washington, D.C., *see, e.g.,* FAC at ¶ 91-92; FAC Ex. D, Jay Gairson Decl. (ECF 34-5),

19  rendering the doctrine of consular nonreviewability further inapplicable. And beyond the grant of

20

21  _____

22  [4] The Board of Immigration Appeals has provided some guidance on the meaning of "undue
    hardship," which includes an inability to "maintain[] ties to close family members" *see In re E-*
23  *L-H,* 23 I. & N. Dec. 700, 703-4 (BIA 2004), and on the meaning of the related but more
    exacting standard of "extreme hardship" defined in the INA, *see e.g., Matter of Cervantes,* 22 I.
24  & N. Dec. 560 (BIA 1999); *Matter of Monreal-Aguinaga,* 23 I. & N. Dec. 56 (BIA 2001).
    [5] *See* Brief for Amici Curiae Scholars of Immigration Law in Support of Respondents on the
25  History of the Immigration and Nationality Act at 23,  *Trump v. Hawaii,* 138 S.Ct. 2392 (2018)
    (No. 17-965), 2018 WL 1586764.

discretion with respect to individual adjudications, the Proclamation provides a non-discretionary framework for the agencies' guidance and mandates the adoption of guidance and a process for adjudicating waivers. That guidance and process are clearly reviewable under the APA. *See* 5 U.S.C. § 706(2).

## II.   PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR CLAIMS FOR RELIEF

### A.   Plaintiffs have adequately alleged APA violations.

It is well-established that agency action to implement an executive order is not "insulate[d] . . . from judicial review under the APA." *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1326-27 (D.C. Cir. 1996). Plaintiffs challenge agency action that is well within the traditional province of the APA.[6] Consistent with the broad presumption of reviewability, most cases Defendants cite found the executive actions at issue reviewable, largely because there, as here, there was a "specific statutory foundation" and "law to apply." *See, e.g., City of Carmel-By-The-Sea v. U.S. Dep't of Transp.,* 123 F.3d 1142 (9th Cir. 1997)*; see also supra* Section I.B. Other cases Defendants cite concerned whether an individual may seek to challenge and reverse an *individual* denial under the APA, which, as previously discussed, is not part of Plaintiffs' challenge here. *See Chai v. Carroll,* 48 F.3d 1331, 1334 (4th Cir. 1995). The Supreme Court has also narrowly interpreted even similar *statutory* preclusions as applying only to individual visa denials, and not to systematic challenges such as this one. *See, e.g., McNary,* 498 U.S. at 492 (finding review permissible in class action and

---

[6] The requirements for finality are clearly met in this case. Defendants have been implementing the waiver provisions of the Proclamation for almost a year, and their implementation constitutes the "consummation" of the agency's decisionmaking process. *Bennett v. Spear,* 520 U.S. 154, 178 (1997). It is undeniable that those agency actions have "affected the legal rights" of impacted individuals who are clearly within the zone of interests protected by the INA. *Id.*; *see also Hawaii v. Trump,* 878 F.3d 662, 681-82 (9th Cir. 2017), *vacated on other grounds*; *IRAP v. Trump,* 241 F. Supp. 3d 539, 551 (D. Md. 2017), *vacated as moot.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - 9

interpreting statutory preclusion as applying only to individual denials). Finally, both the Ninth Circuit and the Supreme Court have found the Proclamation and its implementation reviewable, foreclosing Defendants' arguments in this case. *See supra* Section I.A. at 6.

Under the *Accardi* doctrine, "even in areas of expansive discretion," agencies must follow their own regulations, policies, and procedures. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018); *see United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); *Morton v. Ruiz,* 415 U.S. 199 (1974); *Wilkinson v. Legal Servs. Corp.,* 27 F. Supp. 2d 32, 48 (D.D.C. 1998). The critical inquiry is: (1) whether the relevant policies bind the agency; and (2) whether the policies are "procedural rules benefitting the agency" or ones "benefitting the party otherwise left unprotected." *Damus,* 313 F. Supp. 3d at 336 (internal citations omitted), citing *Lopez v. FAA,* 318 F.3d 242, 247 (D.C. Cir. 2003), as amended (Feb. 11, 2003). In this case, there is no question that the Proclamation is binding on the agency, and the waiver process clearly benefits visa applicants who are subject to the travel ban in the Proclamation and who would otherwise have no recourse. Thus, the *Accardi* doctrine applies to the waiver procedures under the Proclamation.

Plaintiffs have adequately alleged that Defendants have acted in a manner that conflicts with their own stated binding policy, as expressed in the Proclamation and in the guidance the agency issued (which states that all waiver-related agency guidance "is drawn directly from the Proclamation." FAC Ex. E, First Van Hollen Letter (ECF 34-6)). Defendants have also violated longstanding regulations that govern the issuance of visas and the consideration of eligibility for waivers. Regulations dictate, for example, that "[t]he burden of proof is upon the applicant to establish eligibility to receive a visa," 22 C.F.R. § 40.6, and that "[a]ll documents and other evidence presented" by an applicant "shall be considered by the consular officer" in determining visa eligibility. 22 C.F.R. §§ 41.105(a), 42.65. Plaintiffs have alleged that consular officers are

refusing to consider "documents and other evidence presented." FAC ¶¶ 76-78; FAC Ex. D, Jay

Gairson Decl. (ECF 34-5). The regulations mandate that consular officers inform applicants

"whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal."

22 C.F.R. § 41.121(b)(1); *see also id.* § 42.81(b).[7] Plaintiffs have alleged that applicants are

receiving no such information, and instead are receiving either blanket denials before having had

an opportunity to apply, or a statement that their eligibility is being considered, without any

indication of how they may show they meet the eligibility criteria.[8] FAC ¶¶ 73, 75-82. The FAM

is also devoid of information on how waivers should be considered and processed.[9] Each of these

deviations from established policies and procedures is sufficient to constitute an APA violation

under the *Accardi* line of cases.

      Plaintiffs have further alleged that agency guidance and processes implementing the waiver

provisions have generally been arbitrary and capricious on their face. For example, the guidance

states that applicants bear the burden of demonstrating they meet the waiver criteria, but

simultaneously denies them the opportunity to apply for or submit evidence in support of a waiver.

---

[7] The FAM underscores this requirement, instructing consular officers that they must give written notice to an applicant who is denied a visa informing them of "[a]ny relief available to overcome the refusal." 9 FAM 504.11-3(A)(1)(b)(5).

[8] The FAM typically provides detailed procedures and guidance for matters relating to visa and waiver adjudication, and acts as a guidepost for both consular officers and applicants: applicants know what evidence to submit to meet their burden of demonstrating eligibility, and consular officers know what criteria to apply in making determinations. But in this case, contrary to years of well-established practice, the Department of State has failed to promulgate meaningful public guidance through the FAM or by other means.

[9] The FAM typically provides detailed procedures and guidance for matters relating to visa and waiver adjudication and acts as a guidepost for both consular officers and applicants: applicants know what evidence to submit to meet their burden of demonstrating eligibility, and consular officers know what criteria to apply in making determinations. But in this case, contrary to years of well-established practice, the Department of State has failed to promulgate meaningful public guidance through the FAM or by other means.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - 11

FAC Ex. D, Jay Gairson Decl. (ECF 34-5). The agency publicly states that consular officers make

waiver decisions at the interview, yet appears to have instructed its consular officers that they can

refuse but not grant waivers, and that all waiver grant requests are to be directed to the central Visa

Office in Washington, D.C. *Id.;* FAC Ex. B, Christopher Richardson Decl. (ECF 34-3). The agency

has further stated that candidates are considered automatically, but it has failed to explain (a) how

candidates who had their interviews prior to the date of the Proclamation and who now have denial

letters (or even eligibility review letters) could possibly have received that consideration "at the

interview," *see* FAC ¶79, or (b) how a consular officer can make the complex determination the

eligibility criteria require in a three- to five-minute interview without considering any relevant

evidence, *see* FAC Ex. D, Jay Gairson Decl. (ECF 34-5). This is particularly true in light of the

fact that in the ordinary course of applying for most visa categories covered by the ban, no

information bearing on the three waiver criteria is submitted. *Id.* The many contradictions and

irrationalities in the minimal process that *has* been established are sufficient on their face to show

that the agency's actions have been arbitrary and capricious.

Under the APA, a court may also "compel agency action unlawfully withheld or

unreasonably delayed." 5 U.S.C. § 706(1). In this case, Plaintiffs have adequately alleged that the

agency has either unlawfully withheld or unreasonably delayed the issuance of guidance and a

process for applicants to "demonstrate" their eligibility for a waiver, consistent with the text of the

Proclamation and the INA scheme for waiver application and adjudication.

**B. Plaintiffs have stated violations of the Due Process Clause.**

i.   Due process

Plaintiffs have also adequately alleged that Defendants have violated their rights under the

due process clause. As an initial matter, U.S. citizens have at least some procedural due process

rights related to applications for immigration benefits on behalf of their family members. *See Kerry v. Din,* 135 S.Ct. 2128 (2015) (assuming without deciding that U.S. citizen has procedural due process right with respect to family members' visa application). The Family Member Plaintiffs' fundamental rights also include their right to the "integrity of the family unit." *Stanley v. Illinois,* 405 U.S. 645, 651 (1972); *Bustamante v. Mukasey,* 531 F.3d 1059, 1062 (9th Cir. 2008); *see also Din,* 135 S.Ct. at 2139 (Kennedy, J., concurring). Plaintiffs agree that that right does not amount to a right of entry for foreign nationals, nor to an unfettered right to reside in the United States with family members who are foreign nationals. *See* MTD at 12. But even under the most attenuated standard of review, denial of such a fundamental interest requires, at the very least, rational adjudication procedures that include an opportunity to present evidence and to have that evidence considered. In fact, both *Din* and *Kleindienst v. Mandel,* 408 U.S. 753 (1972), rely centrally on the existence of such an orderly process of meaningful consular review: both cases involved multiple document submissions by the applicant and consideration by the consular official, along with specific reasons provided for the ultimate denial. *See Din,* 135 S.Ct. at 2140-42 (Kennedy, J., concurring); *Mandel,* 408 U.S. at 757-59. Plaintiffs have alleged that no such process has been followed or generated with respect to waivers and that this absence of process violates their due process rights. FAC ¶ 8.

Even non-citizens applying for visas also have at least the "minimum due process rights [that] attach to statutory rights." *Lanza v. Ashcroft,* 389 F.3d 917, 927 (9th Cir. 2004) (quoting *Dia v. Ashcroft,* 353 F.3d 228, 239 (3d Cir. 2003)). In this context, the "minimum due process rights" at stake are Plaintiffs' right to have their visa applications adjudicated in a fair and rational manner and according to established procedures and guidelines. The INA and its implementing regulations establish procedures for the adjudication of visa applications generally—including visas issued

1    under the Proclamation—and their violation gives rise to a due process claim. *See Brown v. Holder,*

2    763 F.3d 1141, 1149 (9th Cir. 2014) ("[C]onstitutional rights [a]re implicated 'when the agency's

3    disregard of its rules results in a procedure which in itself impinges upon due process rights'").

4    "[I]t can be assumed that Congress intends [those] procedure[s] to be [] fair one[s]." *Marincas v.*

5    *Lewis,* 92 F.3d 195, 203 (3d Cir. 1996). Plaintiffs have alleged that Defendants have failed to

6    follow existing procedures and have failed to put in place such a process for applying for a waiver.

7    *See supra* Section II.A. They are thus arbitrarily denying Plaintiffs their due process right to a fair

8    and impartial process. *See U.S. v. Salerno,* 481 U.S. 739, 746 (1987); *Matthews v. Eldridge,* 424

9    U.S. 319, 335 (1976).

10            ii.   Equal protection

11           In *Trump v. Hawaii,* 138 S.Ct. 2392 (2018), the Court applied a deferential standard of

12   review to the plaintiffs' Establishment Clause claims. But even under rational basis review,

13   Plaintiffs have adequately stated a plausible equal protection claim. The FAC alleges that the

14   waiver guidance that has issued has been arbitrary and capricious and designed to result in almost-

15   uniform denials. Taken as true, and given the background against which the waiver scheme arose,

16   this supports an inference that the agency has a policy of denying waivers on discriminatory

17   grounds, including nationality or religion.

18

19   **C. Plaintiffs have adequately stated a claim for relief for "agency action unlawfully**
     **withheld or unreasonably delayed" under the APA or, in the alternative, a mandamus**
20   **claim.**

21           District courts have mandamus jurisdiction to "compel an officer or employee of the United

22   States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A court

23   may grant mandamus relief if the plaintiff has a clear right to relief; the defendant has a clear duty

24   to act; and there is no other adequate remedy available to the plaintiff. *Am. Hosp. Ass'n v. Burwell,*

25

812 F.3d 183, 189 (D.C. Cir. 2016); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry,* 168 F. Supp. 3d 268 (D.D.C. 2016). Should this Court find that Plaintiffs are not entitled to relief under the APA or the Due Process Clause, mandamus relief would still be available.

Plaintiffs have alleged that they have a clear right to non-arbitrary guidance, an application process, and fair adjudication of their waiver requests within a reasonable time. They have also alleged that Defendants have a clear duty to provide such guidance, application process, and adjudication, and that they have violated due process and the APA—which provides that agencies must proceed to conclude matters "within a reasonable time." 5 U.S.C. § 555(b). Multiple Plaintiffs have been awaiting action on their waiver requests for over 10 months and are entitled to a process by which they can make the "demonstrat[ion]" the agency is requiring them to make. Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017) § 3(c). Defendants have failed to carry out their obligations under the law, and Plaintiffs are entitled to a writ of mandamus directing Defendants to provide guidance and an application process for accessing waivers under the Proclamation.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: October 12, 2018                     Respectfully Submitted,
       Washington, D.C.

                                            /s/Sirine Shebaya_____
                                            JOHNATHAN SMITH (*pro hac vice*)
                                            SIRINE SHEBAYA (*pro hac vice*)
                                            NIMRA AZMI (NY SBN 5466693)*‡
                                            JOSEPH SAEI (CA SBN 321341)‡
                                            MUSLIM ADVOCATES
                                            P.O. Box 34440

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:18-CV-01587 - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Washington, D.C. 20043
Telephone: (202) 897-2622
Facsimile: (202) 508-1007
Email: sirine@muslimadvocates.org

SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
LOTFI LEGAL, LLC
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974

LUIS CORTES ROMERO (CA SBN 310852)
ALMA DAVID (CA SBN 257676)
IMMIGRANT ADVOCACY & LITIGATION
CENTER, PLLC
19309 68th Avenue S., Suite R102
Kent, WA 89032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591

*Attorneys for Plaintiffs*

*\*Pro hac vice admission application pending*
*‡ Not admitted to practice in D.C.; supervised by members of the D.C. bar*