1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    PARS EQUALITY CENTER, et al.,          CASE NO. C18-1122JLR

11                         Plaintiffs,        ORDER GRANTING
                                              DEFENDANTS' MOTION TO
12         v.                                 TRANSFER VENUE

13    MIKE POMPEO, et al.,

14                         Defendants.

15                I.      INTRODUCTION

16         Before the court is Defendants Mike Pompeo, Kirstjen M. Nielsen, Kevin K.

17    McAleenan, United States Department of Homeland Security, United Sates Department

18    of State, and United States Customs and Border Protection's (collectively, "Defendants")

19    motion to transfer venue. (Mot. (Dkt. # 55).) Plaintiffs Pars Equality Center ("Pars

20    Equality"), OneAmerica, Pamela Whitehall Raghebi, Afshin Raghebi, Zeinab Mohamed

21    Hassan, Siraji Etha Siraji, Malayeen Ahmed, Reza Azimi, Yahya Ghaleb, Mitra Hannani,

22    Nicholas Hanout, Hossein Zamani Hosseinabadi, John Does 1-3, and Jane Doe 1

ORDER - 1

1 | (collectively "Plaintiffs") oppose the motion. (Resp. (Dkt. # 56).) Defendants filed a

2 | reply. (Reply (Dkt. # 63).) The court has considered the motion, the parties' submissions

3 | concerning the motion, the relevant portions of the record, and the applicable law. Being

4 | fully advised,[1] the court GRANTS Defendants' motion to transfer venue for the reasons

5 | set forth below.

6 | ## II.  BACKGROUND

7 | This lawsuit challenges Defendants' implementation of the waiver provision set

8 | forth in Presidential Proclamation No. 9645, entitled "Enhancing Vetting Capabilities and

9 | Processes for Detecting Attempted Entry into the United States by Terrorists or Other

10 | Public-Safety Threats" ("EO-3").[2] *See* Proclamation No. 9,645, 82 Fed. Reg. 45,161

11 | (Sept. 27, 2017); (Compl. (Dkt. # 1).) President Trump promulgated EO-3 in September

12 | 2017, following months of legal challenges to Executive Order No. 13,769, 82 Fed. Reg.

13 | 8,977 (Jan. 27, 2017) ("EO-1") and Executive Order No. 13,780, 82 Fed. Reg. 13,209

14 | (Mar. 6, 2017) ("EO-2"). Among other measures, EO-1 and EO-2 imposed entry and

15 | immigration restrictions on noncitizens from several majority-Muslim countries. *See*

16 | //

17 |

18 | [1] No party requests oral argument on Defendants' motion (*see* Mot. at 1; Resp. at 1), and
the court has determined that oral argument would not be of assistance in deciding the motion.

19 | *See* Local Rules W.D. Wash. LCR 7(b)(4).

20 | [2] The parties refer to Presidential Proclamation No. 9645 as "the Proclamation" (Mot. at
1; Resp. at 2), as did the Supreme Court in *Trump v. Hawaii*, -- U.S. --, 138 S. Ct. 2392 (2018).
However, the court refers to the Proclamation as "EO-3," so as to be consistent with the
21 | terminology employed in the court's prior orders concerning the President's executive actions on
immigration and refugee admissions. *See, e.g., Doe v. Trump*, 288 F. Supp. 3d 1045 (W.D.
22 | Wash. 2018).

ORDER - 2

Case 2:18-cv-01122-JLR Document 80 Filed 12/12/18 Page 3 of 19

1    *Doe v. Trump*, 288 F. Supp. 3d 1045, 1055-57 (W.D. Wash. 2018) (summarizing EO-1

2    and EO-2).

3         EO-3 indefinitely bars from entering the United States all immigrants and various

4    categories of nonimmigrants from Iran, Libya, North Korea, Somalia,[3] Syria, and Yemen.

5    *See* EO-3 § 2.  Section 3(c) of EO-3 ("the waiver provision") provides that nationals of

6    these countries may be permitted entry on a "case-by-case" basis if they apply for and are

7    granted a waiver.  *Id.* § 3(c).  Under the waiver provision, a consular officer or designee

8    of the Commissioner of Customs and Border Protection, may, in his or her discretion,

9    grant a waiver to a foreign national subject to EO-3 if the officer finds that the foreign

10   national satisfies three criteria:  (1) "denying entry would cause the foreign national

11   undue hardship"; (2) "entry would not pose a threat to the national security or public

12   safety of the United States"; and (3) "entry would be in the national interest."  *Id.*

13   § 3(c)(i).  In addition, EO-3 directs the Secretary of State and the Secretary of Homeland

14   Security to "coordinate to adopt guidance addressing the circumstances in which waivers

15   may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants."

16   *Id.* § 3(c).

17        Shortly after he promulgated EO-3, President Trump issued Executive Order No.

18   13,815, entitled "Resuming the United States Refugee Admissions Program with

19   Enhanced Vetting Capabilities" ("EO-4").  *See* Executive Order No. 13, 815, 82 Fed.

20

---

21
        [3] EO-3 subjects to "additional scrutiny" nationals of Somalia who seek to enter the
     United States as nonimmigrants, but does not categorically suspend the entry of any class of
22   nonimmigrants of Somali origin.  *See* EO-3 § 2(h)(ii).

ORDER - 3

1   Reg. 50,055 (Oct. 24, 2017).  Notwithstanding EO-4's title, the memorandum that

2   accompanied EO-4—known as the "Agency Memo"—imposed another ban on certain

3   categories of refugees.  *See Doe*, 288 F. Supp. 3d at 1057-59 (describing the Agency

4   Memo).  Additionally, the Agency Memo indefinitely suspended the entry of

5   following-to-join ("FTJ") derivative refugees to the United States.  *See id.*

6          The President's executive actions on immigration and refugee admissions have

7   prompted a number of legal actions, including *Doe, et al. v. Trump, et al.*, C17-0178JLR

8   (W.D. Wash.) ("*Doe*"), originally filed in February 2017 as a challenge to EO-1.  *See*

9   *Doe*, Dkt. # 1.  *Doe* plaintiffs, who include refugees as well as individuals with lawful

10  nonimmigrant status, amended their complaint after the subsequent executive actions.

11  *Id.*, Dkt. ## 10, 30, 42.  Their third amended complaint, filed on November 6, 2017,

12  challenges both EO-3 and the Agency Memo that accompanied EO-4.  *Id.*, Dkt. # 42.  On

13  December 23, 2017, this court enjoined federal officials from enforcing those provisions

14  of the Agency Memo that suspended the processing and admission of FTJ applicants and

15  refugees from select countries.[4]  *See Doe*, 288 F. Supp. 3d at 1086.  Neither that order nor

16  any subsequent order in *Doe* addressed EO-3's waiver provision.

17         On July 31, 2018, Plaintiffs filed the present action in the Western District of

18  Washington.  (*See* Compl.)  The case was reassigned, as related to *Doe*, to the

19  undersigned Judge.  (*See* Not. of Related Case (Dkt. # 39).)  Plaintiffs allege that

20

21         ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
           [4] Shortly before the court issued the preliminary injunction, *Doe* was consolidated with
22  *Jewish Family Serv. of Seattle, et al. v. Trump, et al.*, No. C17-1707JLR (W.D. Wash.), which
    challenged EO-4 and the Agency Memo.  *See Doe*, Dkt. ## 52, 60, 61.

ORDER - 4

1    Defendants' implementation of EO-3's waiver provision violates the Administrative

2    Procedure Act ("APA"), 5 U.S.C. § 706(2)(B), and the Due Process Clause of the Fifth

3    Amendment. (Compl. ¶¶ 278-306.) In brief, Plaintiffs argue that the waiver provision

4    "has been implemented in such a haphazard, opaque, and capricious manner, and so few

5    visa applicants have actually been granted waivers under [EO-3], that the process by

6    which waivers are supposedly granted has become part and parcel of the ban [effected by

7    EO-3] itself." (*Id.* ¶ 2.)

8       Individual Plaintiffs challenge Defendants' implementation of the waiver

9    provision as representatives of three putative subclasses. (*Id.* ¶ 269.) The "U.S.

10    Petitioner Subclass" includes "[i]ndividuals in the United States with an approved

11    petition to be reunited with [a] family member[]" who is (i) a national of Iran, Libya,

12    Somalia, Syria, or Yemen, (ii) subject to EO-3, and (iii) currently awaiting a decision on

13    a waiver or has been denied a waiver. (*Id.* ¶ 269(a).) The "Lawfully Present Foreign

14    National Subclass" includes nationals of Iran, Libya, Somalia, Syria, or Yemen "who are

15    lawfully present in the United States [and] who, but for the uncertainty created by [EO-3]

16    and Defendants' implementation of the waiver provision, wish to travel abroad and return

17    to the United States." (*Id.* ¶ 269(b).) Finally, the "Visa Applicant Subclass" includes

18    "[i]ndividuals who have applied for a visa" who are (i) nationals of Iran, Libya, Somalia,

19    Syria, or Yemen, (ii) subject to EO-3, and (iii) currently awaiting a decision on a waiver

20    or have been denied a waiver. (*Id.* ¶ 269(c).)

21       This action is not the only pending challenge to EO-3's waiver provision. On

22    March 13, 2018, plaintiffs comprising U.S. citizens and lawfully present foreign nationals

Case 2:18-cv-01122-JLR Document 80 Filed 12/12/18 Page 6 of 19

1  filed a putative class action in the Northern District of California, challenging the

2  government's implementation of the waiver provision. *See Emami, et al. v. Nielson, et*

3  *al.*, 3:18-cv-01587-JD (N.D. Cal.) ("*Emami*"), Dkt. # 1. Like Plaintiffs here, *Emami*

4  plaintiffs allege that the government's implementation of the waiver provision violates

5  the APA and the Due Process Clause of the Fifth Amendment. *Id.*, Dkt. # 34 ¶¶ 315-334.

6  *Emami* plaintiffs include two subclasses. The "Family Member Class" comprises

7  "United States citizens and lawful permanent residents with approved family-based visa

8  petitions or whose family members have applied for visa categories covered by [EO-3],

9  and whose family members have been or will be refused pursuant to [EO-3] without an

10  opportunity to apply for and be meaningfully considered for a waiver or are awaiting

11  adjudication of a waiver." *Id.* ¶ 11. The "Visa Applicant Class" comprises "Iranian,

12  Libyan, Somali, Syrian, and Yemeni nationals who have applied for immigrant or

13  nonimmigrant visas [who] have been or will be refused pursuant to [EO-3] without the

14  opportunity to apply for and be meaningfully considered for a waiver or who are awaiting

15  adjudication of a waiver." *Id.* ¶ 12.

16  On September 24, 2018, Defendants filed the instant motion to transfer venue.

17  (*See* Mot.) Defendants argue that this action should be transferred to the Northern

18  District of California and consolidated with *Emami* under the first-to-file rule, because

19  the two cases present nearly identical claims on behalf of substantially similar putative

20  classes. (Mot. at 5-13.) Plaintiffs, in contrast, contend that this case is closely related to

21  *Doe*, such that *Doe* should be considered the first-filed action. (Resp. at 5-6.) Plaintiffs

22  further argue that the convenience considerations embraced by the federal transfer statute,

1  28 U.S.C. §1404(a), weigh against transfer. (*Id.* at 6-12.)  The court now turns to

2  Defendants' motion.

3                                    **III.   ANALYSIS**

4  **A.   Legal Standard**

5        The first-to-file rule is a "generally recognized doctrine of federal comity" that

6  allows a district court to transfer, stay, or dismiss an action if a case with substantially

7  similar issues and parties was previously filed in another district court.  *Pacesetter Sys.,*

8  *Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th Cir. 1982); *Kohn Law Grp., Inc. v. Auto*

9  *Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015).  "The rule is primarily

10 meant to alleviate the burden placed on the federal judiciary by duplicative litigation and

11 to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh*

12 *Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013).  Accordingly, the

13 first-to-file rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods.,*

14 *Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States*

15 *Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

16       When deciding whether to transfer, stay, or dismiss a case under the first-to-file

17 rule, a district court analyzes three factors:  (1) the chronology of the actions; (2) the

18 similarity of the parties; and (3) the similarity of the issues. *Kohn*, 787 F.3d at 1240; *see*

19 *also Bewley v. CVS Health Corp.*, No. C17-0803RSL, 2017 WL 5158443, at *2 (W.D.

20 Wash. Nov. 7, 2017).  Notwithstanding these specific factors, the first-to-file rule "is not

21 a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a

22 view to the dictates of sound judicial administration." *Decker Coal Co. v.*

1    *Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986); *see also Kohn*, 787 F.3d

2    at 1240 (quoting *Cradle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir.

3    1999)) ("When applying the first-to-file rule, courts should be driven to maximize

4    'economy, consistency, and comity.'").  As a result, "[t]he most basic aspect of the

5    first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628.[5]

6    **B.    First-to-File Factors**

7           Defendants' motion argues in favor of an uncomplicated application of the

8    first-to-file factors.  According to Defendants, transfer is warranted under the first-to-file

9    rule because this case is not related to *Doe*, was filed some four months after *Emami*, and

10   shares substantially the same issues and parties as *Emami*.  (Mot. at 5-9.)  Plaintiffs, in

11   contrast, argue that transfer is not warranted under the first-to-file rule because *Doe* "is

12   the longest-pending case challenging the Trump administration's implementation of

13   [EO-3's] waiver provision and . . . is related to this case." (Resp. at 1.)  Plaintiffs further

14   argue that the convenience factors embraced by the federal transfer statute, 28 U.S.C.

15   § 1404(a), weigh against transfer. (*Id.* at 6-12.)

16          At the outset, the court addresses Defendants' contention that *Doe* "do[es] not

17   reveal any clear challenge to . . . [EO-3's] waiver provision or the manner in which the

18   Government has put that provision into effect" and thus should not bear on the court's

19   first-to-file analysis. (Rep. at 3.)  On the face of their complaint, *Doe* plaintiffs'

20
     ─────────────────
     [5] A court may decline to apply the first-to-file rule "for reasons of equity," such as "when
21   the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping."
     *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *see also*
     *Alltrade*, 946 F.2d at 628.  Plaintiffs do not allege that any such circumstances are present here.
22   (*See generally* Resp.)

ORDER - 8

1  challenges to the waiver provision are perhaps less developed than their challenges to the

2  Agency Memo's suspension of the entry of FTJ derivative refugees and refugees of

3  certain nationalities.  Nonetheless, the fourth and fifth counts of the complaint are fairly

4  read to challenge the waiver provision as unconstitutional under the Fifth Amendment's

5  Due Process Clause.  *See Doe*, Dkt. # 42 at ¶¶ 325-332; (*see also* Lin Decl. (Dkt. # 62)

6  ¶¶ 3-5.)  Moreover, among the proposed subclasses outlined in the *Doe* complaint is a

7  "Non-immigrant Visa Class," comprising nationals of Iran, Libya, Somalia, Syria, and

8  Yemen who are residents of Washington State, hold non-immigrant visas, lack unexpired

9  multiple-entry visas, and cannot leave the United States for fear of being denied reentry

10  under EO-3.  *Id.* ¶¶ 300, 332.  The court thus finds some degree of overlap between this

11  action and *Doe* and rejects Defendants' argument that *Doe* should not feature in the

12  court's analysis of the first-to-file factors.[6]  (*See* Mot. at 5-7.)

13       The presence of *Doe* on this court's docket is not dispositive for purposes of the

14  first-to-file rule, however.  Where more than two pending actions implicate similar

15  claims, a court deciding a motion to transfer may assess which of the actions are "more

16  closely related" under the first-to-file analysis.  *Hengle v. Curry*, No. 3:18-cv-100, 2018

17  WL 3016289, at *14 (E.D. Va. Jun. 15, 2018) (comparing the first-filed action with two

18  subsequently filed cases involving similar subject matter); *see also Wenzel v. Knight*, No.

19  3:14cv432, 2015 WL 222179, at *5-6 (E.D. Va. Jan. 14, 2015).  Here, transfer under the

20

21       ───────────────────
        [6] That *Doe* plaintiffs' challenges to the waiver provision are currently stayed (*see* Lin
        Decl. ¶ 4) has no bearing on the court's assessment of Defendants' motion.  *Doe* plaintiffs may,
22      in the future, seek to lift the stay in that case.  (*See id.* ¶ 5.)

ORDER - 9

1   first-to-file rule would be appropriate should the court find that this action is more closely

2   related to *Emami* than it is to *Doe*. *See Hengle*, 2018 WL 3016289, at \*14. Accordingly,

3   the court proceeds to compare the chronology, parties, and issues of this action, *Emami*,

4   and *Doe*.

5        1.  <u>Chronology</u>

6        The chronology-of-actions factor is straightforward. *Doe* plaintiffs filed suit in

7   2017 and amended their complaint to challenge both EO-3 and the Agency Memo on

8   November 6, 2017. *Doe*, Dkt. # 42. *Emami* was filed on March 13, 2018. *Emami*, Dkt.

9   # 1. Plaintiffs here filed suit on July 31, 2018. (Compl.) Of the three challenges to

10   EO-3, *Doe* is the first-filed action. Viewed broadly, the chronology factor weighs against

11   transfer. Should the court find that the parties and issues of this action are more closely

12   related to *Emami* than to *Doe*, however, as between *Emami* and this action, *Emami* would

13   constitute the first-filed action for purposes of the first-to-file rule.

14        2.  <u>Similarity of Parties</u>

15        The first-to-file rule "does not require exact identity of the parties." *Kohn*, 787

16   F.3d at 1240. Rather, the rule may apply where a court concludes that two actions

17   present "substantial similarity of parties." *Id.*; *see also Music Grp. Servs. US, Inc. v.*

18   *inMusic Brands, Inc.*, No. C13-0183MJP, 2013 WL 1499564, at \*2 (W.D. Wash. Apr.

19   11, 2013) ("The requirement of similar parties is satisfied if the parties are substantially

20   similar, although nonidentical."). In the context of class actions, a court should compare

21   the putative classes, rather than the named plaintiffs, to determine whether the classes

22   encompass at least some of the same individuals. *Bewley*, 2017 WL 5158443, at \*2; *see*

ORDER - 10

Case 2:18-cv-01122-JLR Document 80 Filed 12/12/18 Page 11 of 19

1   *also Hilton v. Apple, Inc.*, No. C-13-2167 EMC, 2013 WL 5487317, at *7 (N.D. Cal. Oct.

2   1, 2013) (collecting cases).[7]

3          The court begins by comparing the putative classes in this action and in *Doe*. The

4   "Lawfully Present Foreign National Subclass" asserted here resembles the

5   "Non-immigrant Visa Class" proposed in *Doe*. (*See* Compl. ¶ 269(c)); *Doe*, Dkt. # 42,

6   ¶¶ 300, 332. Both subclasses encompass nationals of Iran, Libya, Somalia, Syria, and

7   Yemen who are lawfully present in the United States, wish to travel abroad and return to

8   the United States, and fear being subject to EO-3 and barred from reentering the country.

9   (*See* Compl. ¶ 269(c)); *Doe*, Dkt. # 42, ¶¶ 300, 332. The scope of the subclasses differs,

10  however. *Doe*'s "Non-immigrant Visa Class" is limited to nonimmigrants who reside in

11  Washington State, *Doe*, Dkt. # 42, ¶ 300, whereas the subclass proposed here is national

12  in scope (Compl. ¶ 269(c)). Finally, the other two subclasses proposed in this action—

13  the "U.S. Petitioner Subclass" and the "Visa Applicant Subclass"—appear not to be

14  represented in *Doe*. *See generally Doe*, Dkt. # 42.

15         The two subclasses absent in *Doe*, however are virtually identical to the two

16  subclasses proposed in *Emami*. The "U.S. Petitioner Subclass" asserted here and the

17  "Family Member Class" in *Emami* appear to encompass the same individuals: U.S.

18

19        ────────────────

20  [7] As various courts have observed, if the first-to-file rule were to require a strict identity of the named plaintiffs, the rule would rarely apply in class actions. *See, e.g., Hilton*, 2013 WL 5487317, at *7; *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016).

21  "This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources—the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith."

22  *Hilton*, 2013 WL 5487317, at *7.

1    citizens and lawful permanent residents with an approved petition to be reunited with a

2    family member who is a national of Iran, Libya, Somalia, Syria, or Yemen, is subject to

3    EO-3, and has been denied a waiver or is currently awaiting a decision on a waiver.

4    (Compl. ¶ 269(a)); *Emami*, Dkt. # 34, ¶ 11. Similarly, the "Visa Applicant Subclass"

5    proposed here closely tracks the "Visa Applicant Class" asserted in *Emami*. Both

6    proposed subclasses include Iranian, Libyan, Somali, Syrian, and Yemeni nationals who

7    have applied for immigrant or nonimmigrant visas, are subject to EO-3, and have been

8    denied a waiver or are currently awaiting a decision on a waiver. (Compl. ¶ 269(c));

9    *Emami*, Dkt. # 34, ¶ 12. From the face of the complaints, and for purposes of the

10    first-to-file rule, the court can discern no meaningful differences in the parameters of

11    either set of subclasses.[8] Plaintiffs do not argue otherwise. (*See generally* Resp.)

12        The court acknowledges that the "Lawfully Present Foreign National Subclass," as

13    well as Pars Equality and OneAmerica, are not represented in *Emami*. The absence in an

14    earlier-filed action of a subclass proposed in a later-filed action is not dispositive for

15    purposes of the first-to-file analysis, however. *See, e.g., Herrera v. Wells Fargo Bank,*

16    *N.A.*, No. C 11-1485 SBA, 2011 WL 6141087, at *2 (N.D. Cal. Dec. 9, 2011) (finding

17    that "the absence of California subclass from the [first-filed] action is not determinative,

18    _____

19    [8] As Defendants point out, the "Family Member Class" proposed in *Emami* is in fact
slightly broader than the "U.S. Petitioner Subclass" proposed in this action. (Mot. at 10 n.3.)
The former includes not only United States citizens and lawful permanent residents who have

20    approved family-based immigration petitions, but also United States citizens and lawful
permanent residents who have noncitizen relatives abroad who wish to seek nonimmigrant visas
to enter the United States and are subject to EO-3. (*See id.*); *see also Emami*, Dkt. # 34, ¶ 11.

21    Defendants correctly note that "while the two [subclasses] are not exactly coterminous, all
members of the 'U.S. Petitioner Subclass' in [this action] fall within the 'Family Member Class'

22    in *Emami*." (Mot. at 10 n.3.)

ORDER - 12

1    particularly given that both actions involve the same defendant"). Nor is the absence in

2    *Emami* of the organizational Plaintiffs a determinative consideration, given the

3    significant overlap between the two above-mentioned subclasses. *See Intersearch*

4    *WorldWide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008)

5    ("The [first-to-file] rule is satisfied if some [of] the parties in one matter are also in the

6    other matter, regardless of whether there are additional unmatched parties in one or both

7    matters.").

8         In light of the substantial symmetry between this action's "U.S. Petitioner

9    Subclass" and "Visa Applicant Subclass," on the one hand, and *Emami*'s "Family

10   Member Class" and "Visa Applicant Class," on the other, the court finds that Plaintiffs

11   are more closely related to the plaintiffs in *Emami* than to those in *Doe*. Two of the three

12   proposed subclasses in this case sweep in virtually the same individuals as the two

13   proposed subclasses in *Emami*. In contrast, this action shares with *Doe* just one putative

14   subclass, which although national in scope here, is limited in *Doe* to residents of

15   Washington. The court further observes that each of the Defendants in this action is also

16   a defendant in *Emami*. (*See* Compl. at 1); *Emami*, Dkt. # 34 at 1. Plaintiffs thus do not

17   seek relief against any individual or agency not already implicated in *Emami*. For these

18   reasons, the court concludes that the parties in this case and *Emami* are substantially

19   similar for purposes of the first-to-file rule. The similarity-of-parties factor weighs in

20   favor of transfer.

21   //

22   //

ORDER - 13

1        3. Similarity of Issues

2        "The first-to-file rule is satisfied by a sufficient similarity of issues." *Intersearch*

3    *Worldwide*, 544 F. Supp. 2d at 959 (emphasis omitted).  District courts in this circuit

4    have held that the issues presented in the actions must be "substantially similar," rather

5    than identical, to warrant transfer. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d

6    1142, 1147 (E.D. Cal. 2010) (quoting *Inherent.com v. Martindale-Hubbell*, 420 F. Supp.

7    2d 1093, 1097 (N.D. Cal. 2006)); *see also Hill v. Robert's Am. Gourmet Food, LLC*, No.

8    13-cv-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. Jul. 10, 2013).

9        Plaintiffs allege that the wavier provision violates the Fifth Amendment's Due

10   Process Clause and the APA.  (Compl. ¶¶ 278-306.) *Doe* also contests the

11   constitutionality of the waiver provision on Due Process grounds. *See Doe*, Dkt. # 42,

12   ¶¶ 325-332.  Yet Plaintiffs' claims and the allegations underlying those claims share

13   more common ground with the Due Process and APA claims asserted in *Emami*.  With

14   respect to the Due Process claims, Plaintiffs here and plaintiffs in *Emami* allege that the

15   government has deprived U.S. citizens and lawful permanent residents of their

16   constitutionally protected interest in family reunification and certain statutory and

17   regulatory rights to petition for visas for their family members, without due process of

18   law. (Compl. ¶¶ 295-306); *Emami*, Dkt. # 34, ¶¶ 322-334.  With respect to the APA

19   claims, Plaintiffs here and plaintiffs in *Emami* allege, among other things, that they have

20   been denied waivers without ever having received notice of the waiver process or an

21   opportunity to demonstrate their eligibility for a waiver. (*See, e.g., Compl.* ¶¶ 281-285);

22   *Emami*, Dkt. # 34, ¶¶ 11-12, 319-320.  Notably, Plaintiffs do not argue that their claims

ORDER - 14

1    differ in any meaningful fashion from those asserted in *Emami*. (*See generally* Resp.)

2    The court finds that the issues presented in this action and in *Emami* are substantially

3    similar. The similarity-of-issues factor thus weighs in favor of transfer.

4           In sum, the court concludes that transfer of this action is warranted under the

5    first-to-file rule. In light of the congruence of two of the three proposed subclasses in this

6    action and in *Emami*, as well as the overlapping nature of the class members' claims,

7    transfer will obviate the risk that class members may face inconsistent rulings. Transfer

8    will also promote the principles of efficiency and comity that animate the first-to-file

9    rule. To allow two parallel class actions to proceed in separate districts would be

10   duplicative and inefficient. *See, e.g., Henry v. Home Depot U.S.A., Inc.*, No.

11   14-cv-04858-JST, 2016 WL 4538365, at *4 (N.D. Cal. Aug. 31, 2016) (noting that in the

12   context of transfer under the first-to-file rule, "[t]he potential efficiency gains are

13   particularity heightened where . . . the class actions involve overlapping claims and class

14   periods").

15   **C.      Convenience Factors**

16          Plaintiffs argue that in assessing the first-to-file factors, the court may, in its

17   discretion, analyze the balance of convenience pursuant to 28 U.S.C. § 1404(a). (Resp. at

18   4, 6-7.) Plaintiffs further argue that Plaintiffs' ties to the Western District of Washington

19   weigh decisively against transfer. (*Id.*) To that end, Plaintiffs furnish the declarations of

20   four individual Plaintiffs, which illustrate their ties to this district and investment in these

21   proceedings. (*See* Whitehall Raghebi Decl. (Dkt. # 57); Raghebi Decl. (Dkt. # 58); Siraji

22   Decl. (Dkt. # 59); Hassan Decl. (Dkt. # 60).) Defendants, in contrast, assert that because

1  the first-to-file rule and 28 U.S.C. § 1404(a) afford separate bases for transfer, the court

2  need not reach the convenience factors Plaintiffs emphasize.  (Reply at 4-5.)

3        District courts in the Ninth Circuit have expressly distinguished the first-to-file

4  rule from 28 U.S.C. § 1404(a), which permits transfer for the convenience of parties and

5  witnesses. *See, e.g., TGN, Inc. v. CRS, LLC*, No. C08-0680MJP, 2008 WL 11343671, at

6  *2 (W.D. Wash. Aug. 5, 2008).  "As other district courts have pointed out, a motion to

7  transfer pursuant to the first-to-file rule does not depend on the presence or absence of the

8  § 1404(a) considerations." *Priddy v. Lane Bryant, Inc.*, No. 08-06889 MMM (CWx),

9  2008 WL 11410109, at *9, n.52 (C.D. Cal. Nov. 24, 2008) (citation and quotation marks

10  omitted).  On occasion, a court assessing the first-to-file factors may consider the extent

11  to which the convenience of parties and witnesses weighs against transfer. *Pacesetter*,

12  678 F.2d at 96.  However, "[t]he Ninth Circuit has cautioned that relaxing the first-to-file

13  rule on the basis of convenience is a determination best left to the court in the first-filed

14  action." *Wallerstein*, 967 F. Supp. 2d at 1293 (citing *Ward v. Follet Corp.*, 158 F.R.D.

15  645, 648 (N.D. Cal. 1994)); *see also Pacesetter*, 678 F.2d at 96 (stating that "normally

16  the forum non conveniens argument should be addressed to the court in the first-filed

17  action").  Accordingly, a court deciding a motion to transfer a later-filed action pursuant

18  to the first-to-file rule typically should decline to assess the convenience factors of

19  § 1404(a). *See, e.g., Bewley*, 2017 WL 5158443, at *3 n.5 ("Because the Court finds that

20  transfer is warranted under the first-to-file rule, the Court does not address whether

21  transfer would be appropriate pursuant to § 1404(a)."); *Wallerstein*, 967 F. Supp. 2d at

22  //

ORDER - 16

1   1298 ("As this matter is transferred pursuant to the first-to-file rule, the Court will not

2   address transfer under Section 1404(a) . . . .").

3           Here, because Defendants move to transfer pursuant to the first-to-file rule, not 28

4   U.S.C. § 1404(a), and because this case is not the first-filed action, the court declines

5   Plaintiffs' invitation to assess the balance of convenience under § 1404(a). Nonetheless,

6   the court observes that, in general, Plaintiffs' ties to this district are not as overwhelming

7   as Plaintiffs' counsel suggest. Plaintiffs state that a "plurality" of Plaintiffs—four

8   individuals and OneAmerica—reside in the Western District of Washington. (Resp. at

9   9.) Yet Plaintiffs also concede that three named Plaintiffs, as well as Pars Equality, have

10  "ties . . . to the Northern District of California." (*Id.*) The court does not seek to

11  minimize the connections to this district of four individual Plaintiffs, as well as their

12  sincere investment in these proceedings. (*See* Whitehall Raghebi Decl.; Raghebi Decl.;

13  Siraji Decl.; Hassan Decl.) But as set forth in the record before the court, the balance of

14  convenience hardly appears to weigh so heavily against transfer as to justify a departure

15  from the first-to-file rule. *See, e.g., Am. Newland Communities, L.P. v. Axis Specialty*

16  *Ins. Co.*, No. 11CV1217 JLS (WMC), 2011 WL 5359335, at *4 (S.D. Cal. Nov. 7, 2011)

17  ("Because consideration of the respective convenience of the two courts is typically

18  addressed to the court in the first-filed action, . . . and because the Court finds that the

19  balance of convenience is neutral or at most only slightly more favorable to the California

20  //

21  //

22  //

ORDER - 17

1 | forum, it declines to exercise its discretion to depart from the first-to-file rule here.").

2 | Transfer is thus warranted under the first-to-file rule.[9]

### IV. CONCLUSION

4 | For the foregoing reasons, the court GRANTS Defendants' motion to transfer this

5 | action to the Northern District of California (Dkt. # 55). The court DIRECTS the clerk to

6 | strike from the court's calendar Defendants' pending motion to dismiss (Dkt. # 64),

7 | Plaintiffs' pending motion to compel (Dkt. # 65), and Defendants pending motion for

8 | //

9 | //

10 |

---

11 | [9] The Ninth Circuit recently held that the first-to-file rule does not negate the statutory requirement that an action may be transferred only to a district where it "might have been brought." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (quoting 28 U.S.C. §1404(a)). This is so because "[a]lthough the first-to-file rule guides the district court's exercise of discretion in handling related cases, the requirements of § 1404(a) cabin the exercise of that discretion." *Bozic*, 888 F.3d at 1054. The court understands *Bozic* to concern only § 1404(a)'s final clause, which restricts transfer to those districts in which the action "might have been brought," and not to require that a district court applying the first-to-file rule assess the convenience of the parties and "the interest of justice." 28 U.S.C. § 1404(a). At least one other district court in this circuit has adopted the same reading of *Bozic*. *Kutob v. L.A. Ins. Agency Franchising*, No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171, at *3 (D. Nev. Sept. 7, 2018).

Here, the Ninth Circuit's ruling in *Bozic* is satisfied because Plaintiffs could have brought this action in the Northern District of California. Subject matter jurisdiction exists because Plaintiffs bring claims arising under the Constitution and federal statutes. *See* 28 U.S.C. § 1331. Defendants, federal officials and agencies, do not dispute that they are subject to personal jurisdiction in the Northern District of California. (*See generally* Mot.; Reply.) Finally, venue is proper in the Northern District of California under 28 U.S.C. § 1391(e), because at least one of the original named Plaintiffs resides in that district. (*See* Compl. ¶ 16 (noting that "Plaintiff Pars Equality Center is . . . headquartered in Menlo Park, California"); *id.* ¶ 31 (noting that "Plaintiff Malayeen Ahmed . . . lives in Santa Clara, California); *id.* ¶ 35 (noting that "Plaintiff Nicolas Hanout . . . liv[es] in Castro Valley, California"); *id.* ¶ 41 (noting that Plaintiff John Doe # 3 . . . lives in San Francisco, California")); *see also F.L.B. v. Lynch*, 180 F. Supp. 3d 811, 815 (W.D. Wash. 2016) (holding that in a putative class action against the United States Attorney General and other officials, venue was proper under § 1391(e) "because at least one of the original plaintiffs resided in the district" where the action was filed).

ORDER - 18

1  reconsideration of the court's order granting Plaintiffs' motion to proceed under

2  pseudonym (Dkt. # 70), and to close this file.

3      Dated this 11th day of December, 2018.

4

5                                              JAMES L. ROBART
                                               United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 19