# Exhibit A



Federal Register / Vol. 82, No. 186 / Wednesday, September 27, 2017 / Presidential Documents    45161

# Presidential Documents

Proclamation 9645 of September 24, 2017

**Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats**

**By the President of the United States of America**

**A Proclamation**

In Executive Order 13780 of March 6, 2017 (Protecting the Nation from Foreign Terrorist Entry into the United States), on the recommendations of the Secretary of Homeland Security and the Attorney General, I ordered a worldwide review of whether, and if so what, additional information would be needed from each foreign country to assess adequately whether their nationals seeking to enter the United States pose a security or safety threat. This was the first such review of its kind in United States history. As part of the review, the Secretary of Homeland Security established global requirements for information sharing in support of immigration screening and vetting. The Secretary of Homeland Security developed a comprehensive set of criteria and applied it to the information-sharing practices, policies, and capabilities of foreign governments. The Secretary of State thereafter engaged with the countries reviewed in an effort to address deficiencies and achieve improvements. In many instances, those efforts produced positive results. By obtaining additional information and formal commitments from foreign governments, the United States Government has improved its capacity and ability to assess whether foreign nationals attempting to enter the United States pose a security or safety threat. Our Nation is safer as a result of this work.

Despite those efforts, the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, has determined that a small number of countries—out of nearly 200 evaluated—remain deficient at this time with respect to their identity-management and information-sharing capabilities, protocols, and practices. In some cases, these countries also have a significant terrorist presence within their territory.

As President, I must act to protect the security and interests of the United States and its people. I am committed to our ongoing efforts to engage those countries willing to cooperate, improve information-sharing and identity-management protocols and procedures, and address both terrorism-related and public-safety risks. Some of the countries with remaining inadequacies face significant challenges. Others have made strides to improve their protocols and procedures, and I commend them for these efforts. But until they satisfactorily address the identified inadequacies, I have determined, on the basis of recommendations from the Secretary of Homeland Security and other members of my Cabinet, to impose certain conditional restrictions and limitations, as set forth more fully below, on entry into the United States of nationals of the countries identified in section 2 of this proclamation.

NOW, THEREFORE, I, DONALD J. TRUMP, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that, absent the measures set forth in this proclamation, the immigrant and nonimmigrant entry into the United States of persons described in section 2 of this proclamation would be detrimental to the

interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions. I therefore hereby proclaim the following:

**Section 1**. *Policy and Purpose.* (a) It is the policy of the United States to protect its citizens from terrorist attacks and other public-safety threats. Screening and vetting protocols and procedures associated with visa adjudications and other immigration processes play a critical role in implementing that policy. They enhance our ability to detect foreign nationals who may commit, aid, or support acts of terrorism, or otherwise pose a safety threat, and they aid our efforts to prevent such individuals from entering the United States.

(b) Information-sharing and identity-management protocols and practices of foreign governments are important for the effectiveness of the screening and vetting protocols and procedures of the United States. Governments manage the identity and travel documents of their nationals and residents. They also control the circumstances under which they provide information about their nationals to other governments, including information about known or suspected terrorists and criminal-history information. It is, therefore, the policy of the United States to take all necessary and appropriate steps to encourage foreign governments to improve their information-sharing and identity-management protocols and practices and to regularly share identity and threat information with our immigration screening and vetting systems.

(c) Section 2(a) of Executive Order 13780 directed a ''worldwide review to identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the INA (adjudications) in order to determine that the individual is not a security or public-safety threat.'' That review culminated in a report submitted to the President by the Secretary of Homeland Security on July 9, 2017. In that review, the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, developed a baseline for the kinds of information required from foreign governments to support the United States Government's ability to confirm the identity of individuals seeking entry into the United States as immigrants and nonimmigrants, as well as individuals applying for any other benefit under the immigration laws, and to assess whether they are a security or public-safety threat. That baseline incorporates three categories of criteria:

(i) *Identity-management information.* The United States expects foreign governments to provide the information needed to determine whether individuals seeking benefits under the immigration laws are who they claim to be. The identity-management information category focuses on the integrity of documents required for travel to the United States. The criteria assessed in this category include whether the country issues electronic passports embedded with data to enable confirmation of identity, reports lost and stolen passports to appropriate entities, and makes available upon request identity-related information not included in its passports.

(ii) *National security and public-safety information.* The United States expects foreign governments to provide information about whether persons who seek entry to this country pose national security or public-safety risks. The criteria assessed in this category include whether the country makes available, directly or indirectly, known or suspected terrorist and criminal-history information upon request, whether the country provides passport and national-identity document exemplars, and whether the country impedes the United States Government's receipt of information about passengers and crew traveling to the United States.

(iii) *National security and public-safety risk assessment.* The national security and public-safety risk assessment category focuses on national security risk indicators. The criteria assessed in this category include whether the country is a known or potential terrorist safe haven, whether it is

a participant in the Visa Waiver Program established under section 217 of the INA, 8 U.S.C. 1187, that meets all of its requirements, and whether it regularly fails to receive its nationals subject to final orders of removal from the United States.

(d) The Department of Homeland Security, in coordination with the Department of State, collected data on the performance of all foreign governments and assessed each country against the baseline described in subsection (c) of this section. The assessment focused, in particular, on identity management, security and public-safety threats, and national security risks. Through this assessment, the agencies measured each country's performance with respect to issuing reliable travel documents and implementing adequate identity-management and information-sharing protocols and procedures, and evaluated terrorism-related and public-safety risks associated with foreign nationals seeking entry into the United States from each country.

(e) The Department of Homeland Security evaluated each country against the baseline described in subsection (c) of this section. The Secretary of Homeland Security identified 16 countries as being "inadequate" based on an analysis of their identity-management protocols, information-sharing practices, and risk factors. Thirty-one additional countries were classified "at risk" of becoming "inadequate" based on those criteria.

(f) As required by section 2(d) of Executive Order 13780, the Department of State conducted a 50-day engagement period to encourage all foreign governments, not just the 47 identified as either "inadequate" or "at risk," to improve their performance with respect to the baseline described in subsection (c) of this section. Those engagements yielded significant improvements in many countries. Twenty-nine countries, for example, provided travel document exemplars for use by Department of Homeland Security officials to combat fraud. Eleven countries agreed to share information on known or suspected terrorists.

(g) The Secretary of Homeland Security assesses that the following countries continue to have "inadequate" identity-management protocols, information-sharing practices, and risk factors, with respect to the baseline described in subsection (c) of this section, such that entry restrictions and limitations are recommended: Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen. The Secretary of Homeland Security also assesses that Iraq did not meet the baseline, but that entry restrictions and limitations under a Presidential proclamation are not warranted. The Secretary of Homeland Security recommends, however, that nationals of Iraq who seek to enter the United States be subject to additional scrutiny to determine if they pose risks to the national security or public safety of the United States. In reaching these conclusions, the Secretary of Homeland Security considered the close cooperative relationship between the United States and the democratically elected government of Iraq, the strong United States diplomatic presence in Iraq, the significant presence of United States forces in Iraq, and Iraq's commitment to combating the Islamic State of Iraq and Syria (ISIS).

(h) Section 2(e) of Executive Order 13780 directed the Secretary of Homeland Security to "submit to the President a list of countries recommended for inclusion in a Presidential proclamation that would prohibit the entry of appropriate categories of foreign nationals of countries that have not provided the information requested until they do so or until the Secretary of Homeland Security certifies that the country has an adequate plan to do so, or has adequately shared information through other means." On September 15, 2017, the Secretary of Homeland Security submitted a report to me recommending entry restrictions and limitations on certain nationals of 7 countries determined to be "inadequate" in providing such information and in light of other factors discussed in the report. According to the report, the recommended restrictions would help address the threats that the countries' identity-management protocols, information-sharing inadequacies, and other risk factors pose to the security and welfare of the United

States. The restrictions also encourage the countries to work with the United States to address those inadequacies and risks so that the restrictions and limitations imposed by this proclamation may be relaxed or removed as soon as possible.

(i) In evaluating the recommendations of the Secretary of Homeland Security and in determining what restrictions to impose for each country, I consulted with appropriate Assistants to the President and members of the Cabinet, including the Secretaries of State, Defense, and Homeland Security, and the Attorney General. I considered several factors, including each country's capacity, ability, and willingness to cooperate with our identity-management and information-sharing policies and each country's risk factors, such as whether it has a significant terrorist presence within its territory. I also considered foreign policy, national security, and counterterrorism goals. I reviewed these factors and assessed these goals, with a particular focus on crafting those country-specific restrictions that would be most likely to encourage cooperation given each country's distinct circumstances, and that would, at the same time, protect the United States until such time as improvements occur. The restrictions and limitations imposed by this proclamation are, in my judgment, necessary to prevent the entry of those foreign nationals about whom the United States Government lacks sufficient information to assess the risks they pose to the United States. These restrictions and limitations are also needed to elicit improved identity-management and information-sharing protocols and practices from foreign governments; and to advance foreign policy, national security, and counterterrorism objectives.

(ii) After reviewing the Secretary of Homeland Security's report of September 15, 2017, and accounting for the foreign policy, national security, and counterterrorism objectives of the United States, I have determined to restrict and limit the entry of nationals of 7 countries found to be "inadequate" with respect to the baseline described in subsection (c) of this section: Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen. These restrictions distinguish between the entry of immigrants and nonimmigrants. Persons admitted on immigrant visas become lawful permanent residents of the United States. Such persons may present national security or public-safety concerns that may be distinct from those admitted as nonimmigrants. The United States affords lawful permanent residents more enduring rights than it does to nonimmigrants. Lawful permanent residents are more difficult to remove than nonimmigrants even after national security concerns arise, which heightens the costs and dangers of errors associated with admitting such individuals. And although immigrants generally receive more extensive vetting than nonimmigrants, such vetting is less reliable when the country from which someone seeks to emigrate exhibits significant gaps in its identity-management or information-sharing policies, or presents risks to the national security of the United States. For all but one of those 7 countries, therefore, I am restricting the entry of all immigrants.

(iii) I am adopting a more tailored approach with respect to nonimmigrants, in accordance with the recommendations of the Secretary of Homeland Security. For some countries found to be "inadequate" with respect to the baseline described in subsection (c) of this section, I am restricting the entry of all nonimmigrants. For countries with certain mitigating factors, such as a willingness to cooperate or play a substantial role in combatting terrorism, I am restricting the entry only of certain categories of nonimmigrants, which will mitigate the security threats presented by their entry into the United States. In those cases in which future cooperation seems reasonably likely, and accounting for foreign policy, national security, and counterterrorism objectives, I have tailored the restrictions to encourage such improvements.

(i) Section 2(e) of Executive Order 13780 also provided that the "Secretary of State, the Attorney General, or the Secretary of Homeland Security may also submit to the President the names of additional countries for which

any of them recommends other lawful restrictions or limitations deemed necessary for the security or welfare of the United States.'' The Secretary of Homeland Security determined that Somalia generally satisfies the information-sharing requirements of the baseline described in subsection (c) of this section, but its government's inability to effectively and consistently cooperate, combined with the terrorist threat that emanates from its territory, present special circumstances that warrant restrictions and limitations on the entry of its nationals into the United States. Somalia's identity-management deficiencies and the significant terrorist presence within its territory make it a source of particular risks to the national security and public safety of the United States. Based on the considerations mentioned above, and as described further in section 2(h) of this proclamation, I have determined that entry restrictions, limitations, and other measures designed to ensure proper screening and vetting for nationals of Somalia are necessary for the security and welfare of the United States.

(j) Section 2 of this proclamation describes some of the inadequacies that led me to impose restrictions on the specified countries. Describing all of those reasons publicly, however, would cause serious damage to the national security of the United States, and many such descriptions are classified.

**Sec. 2**. *Suspension of Entry for Nationals of Countries of Identified Concern.* The entry into the United States of nationals of the following countries is hereby suspended and limited, as follows, subject to categorical exceptions and case-by-case waivers, as described in sections 3 and 6 of this proclamation:

(a) *Chad.*

(i) The government of Chad is an important and valuable counterterrorism partner of the United States, and the United States Government looks forward to expanding that cooperation, including in the areas of immigration and border management. Chad has shown a clear willingness to improve in these areas. Nonetheless, Chad does not adequately share public-safety and terrorism-related information and fails to satisfy at least one key risk criterion. Additionally, several terrorist groups are active within Chad or in the surrounding region, including elements of Boko Haram, ISIS-West Africa, and al-Qa'ida in the Islamic Maghreb. At this time, additional information sharing to identify those foreign nationals applying for visas or seeking entry into the United States who represent national security and public-safety threats is necessary given the significant terrorism-related risk from this country.

(ii) The entry into the United States of nationals of Chad, as immigrants, and as nonimmigrants on business (B–1), tourist (B–2), and business/tourist (B–1/B–2) visas, is hereby suspended.

(b) *Iran.*

(i) Iran regularly fails to cooperate with the United States Government in identifying security risks, fails to satisfy at least one key risk criterion, is the source of significant terrorist threats, and fails to receive its nationals subject to final orders of removal from the United States. The Department of State has also designated Iran as a state sponsor of terrorism.

(ii) The entry into the United States of nationals of Iran as immigrants and as nonimmigrants is hereby suspended, except that entry by such nationals under valid student (F and M) and exchange visitor (J) visas is not suspended, although such individuals should be subject to enhanced screening and vetting requirements.

(c) *Libya.*

(i) The government of Libya is an important and valuable counterterrorism partner of the United States, and the United States Government looks forward to expanding on that cooperation, including in the areas of immigration and border management. Libya, nonetheless, faces significant challenges in sharing several types of information, including public-safety

and terrorism-related information necessary for the protection of the national security and public safety of the United States. Libya also has significant inadequacies in its identity-management protocols. Further, Libya fails to satisfy at least one key risk criterion and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States. The substantial terrorist presence within Libya's territory amplifies the risks posed by the entry into the United States of its nationals.

(ii) The entry into the United States of nationals of Libya, as immigrants, and as nonimmigrants on business (B–1), tourist (B–2), and business/tourist (B–1/B–2) visas, is hereby suspended.

(d) *North Korea.*

(i) North Korea does not cooperate with the United States Government in any respect and fails to satisfy all information-sharing requirements.

(ii) The entry into the United States of nationals of North Korea as immigrants and nonimmigrants is hereby suspended.

(e) *Syria.*

(i) Syria regularly fails to cooperate with the United States Government in identifying security risks, is the source of significant terrorist threats, and has been designated by the Department of State as a state sponsor of terrorism. Syria has significant inadequacies in identity-management protocols, fails to share public-safety and terrorism information, and fails to satisfy at least one key risk criterion.

(ii) The entry into the United States of nationals of Syria as immigrants and nonimmigrants is hereby suspended.

(f) *Venezuela.*

(i) Venezuela has adopted many of the baseline standards identified by the Secretary of Homeland Security and in section 1 of this proclamation, but its government is uncooperative in verifying whether its citizens pose national security or public-safety threats. Venezuela's government fails to share public-safety and terrorism-related information adequately, fails to satisfy at least one key risk criterion, and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States. There are, however, alternative sources for obtaining information to verify the citizenship and identity of nationals from Venezuela. As a result, the restrictions imposed by this proclamation focus on government officials of Venezuela who are responsible for the identified inadequacies.

(ii) Notwithstanding section 3(b)(v) of this proclamation, the entry into the United States of officials of government agencies of Venezuela involved in screening and vetting procedures—including the Ministry of the Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations—and their immediate family members, as nonimmigrants on business (B–1), tourist (B–2), and business/tourist (B–1/B–2) visas, is hereby suspended. Further, nationals of Venezuela who are visa holders should be subject to appropriate additional measures to ensure traveler information remains current.

(g) *Yemen.*

(i) The government of Yemen is an important and valuable counterterrorism partner, and the United States Government looks forward to expanding that cooperation, including in the areas of immigration and border management. Yemen, nonetheless, faces significant identity-management challenges, which are amplified by the notable terrorist presence within its territory. The government of Yemen fails to satisfy critical identity-management requirements, does not share public-safety and terrorism-related information adequately, and fails to satisfy at least one key risk criterion.

(ii) The entry into the United States of nationals of Yemen as immigrants, and as nonimmigrants on business (B–1), tourist (B–2), and business/tourist (B–1/B–2) visas, is hereby suspended.

(h) *Somalia.*

(i) The Secretary of Homeland Security's report of September 15, 2017, determined that Somalia satisfies the information-sharing requirements of the baseline described in section 1(c) of this proclamation. But several other considerations support imposing entry restrictions and limitations on Somalia. Somalia has significant identity-management deficiencies. For example, while Somalia issues an electronic passport, the United States and many other countries do not recognize it. A persistent terrorist threat also emanates from Somalia's territory. The United States Government has identified Somalia as a terrorist safe haven. Somalia stands apart from other countries in the degree to which its government lacks command and control of its territory, which greatly limits the effectiveness of its national capabilities in a variety of respects. Terrorists use under-governed areas in northern, central, and southern Somalia as safe havens from which to plan, facilitate, and conduct their operations. Somalia also remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States. The State Department's 2016 Country Reports on Terrorism observed that Somalia has not sufficiently degraded the ability of terrorist groups to plan and mount attacks from its territory. Further, despite having made significant progress toward formally federating its member states, and its willingness to fight terrorism, Somalia continues to struggle to provide the governance needed to limit terrorists' freedom of movement, access to resources, and capacity to operate. The government of Somalia's lack of territorial control also compromises Somalia's ability, already limited because of poor record-keeping, to share information about its nationals who pose criminal or terrorist risks. As a result of these and other factors, Somalia presents special concerns that distinguish it from other countries.

(ii) The entry into the United States of nationals of Somalia as immigrants is hereby suspended. Additionally, visa adjudications for nationals of Somalia and decisions regarding their entry as nonimmigrants should be subject to additional scrutiny to determine if applicants are connected to terrorist organizations or otherwise pose a threat to the national security or public safety of the United States.

**Sec. 3**. *Scope and Implementation of Suspensions and Limitations.* (a) *Scope.* Subject to the exceptions set forth in subsection (b) of this section and any waiver under subsection (c) of this section, the suspensions of and limitations on entry pursuant to section 2 of this proclamation shall apply only to foreign nationals of the designated countries who:

(i) are outside the United States on the applicable effective date under section 7 of this proclamation;

(ii) do not have a valid visa on the applicable effective date under section 7 of this proclamation; and

(iii) do not qualify for a visa or other valid travel document under section 6(d) of this proclamation.

(b) *Exceptions.* The suspension of entry pursuant to section 2 of this proclamation shall not apply to:

(i) any lawful permanent resident of the United States;

(ii) any foreign national who is admitted to or paroled into the United States on or after the applicable effective date under section 7 of this proclamation;

(iii) any foreign national who has a document other than a visa—such as a transportation letter, an appropriate boarding foil, or an advance parole document—valid on the applicable effective date under section 7 of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission;

(iv) any dual national of a country designated under section 2 of this proclamation when the individual is traveling on a passport issued by a non-designated country;

(v) any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C–2 visa for travel to the United Nations, or G–1, G–2, G–3, or G–4 visa; or

(vi) any foreign national who has been granted asylum by the United States; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

(c) *Waivers.* Notwithstanding the suspensions of and limitations on entry set forth in section 2 of this proclamation, a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited if such foreign nationals demonstrate that waivers would be appropriate and consistent with subsections (i) through (iv) of this subsection. The Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants.

(i) A waiver may be granted only if a foreign national demonstrates to the consular officer's or CBP official's satisfaction that:

(A) denying entry would cause the foreign national undue hardship;

(B) entry would not pose a threat to the national security or public safety of the United States; and

(C) entry would be in the national interest.

(ii) The guidance issued by the Secretary of State and the Secretary of Homeland Security under this subsection shall address the standards, policies, and procedures for:

(A) determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States;

(B) determining whether the entry of a foreign national would be in the national interest;

(C) addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to the restrictions and limitations imposed by this proclamation;

(D) assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy the requirements of subsection (i) of this subsection; and

(E) determining the special circumstances that would justify granting a waiver under subsection (iv)(E) of this subsection.

(iii) Unless otherwise specified by the Secretary of Homeland Security, any waiver issued by a consular officer as part of the visa adjudication process will be effective both for the issuance of a visa and for any subsequent entry on that visa, but will leave unchanged all other requirements for admission or entry.

(iv) Case-by-case waivers may not be granted categorically, but may be appropriate, subject to the limitations, conditions, and requirements set forth under subsection (i) of this subsection and the guidance issued under subsection (ii) of this subsection, in individual circumstances such as the following:

(A) the foreign national has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date under section 7 of this proclamation, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

(B) the foreign national has previously established significant contacts with the United States but is outside the United States on the applicable effective date under section 7 of this proclamation for work, study, or other lawful activity;

(C) the foreign national seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

(D) the foreign national seeks to enter the United States to visit or reside with a close family member (*e.g.,* a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship;

(E) the foreign national is an infant, a young child or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

(F) the foreign national has been employed by, or on behalf of, the United States Government (or is an eligible dependent of such an employee), and the foreign national can document that he or she has provided faithful and valuable service to the United States Government;

(G) the foreign national is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C. 288 *et seq.,* traveling for purposes of conducting meetings or business with the United States Government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

(H) the foreign national is a Canadian permanent resident who applies for a visa at a location within Canada;

(I) the foreign national is traveling as a United States Government–sponsored exchange visitor; or

(J) the foreign national is traveling to the United States, at the request of a United States Government department or agency, for legitimate law enforcement, foreign policy, or national security purposes.

**Sec. 4**. *Adjustments to and Removal of Suspensions and Limitations.* (a) The Secretary of Homeland Security shall, in consultation with the Secretary of State, devise a process to assess whether any suspensions and limitations imposed by section 2 of this proclamation should be continued, terminated, modified, or supplemented. The process shall account for whether countries have improved their identity-management and information-sharing protocols and procedures based on the criteria set forth in section 1 of this proclamation and the Secretary of Homeland Security's report of September 15, 2017. Within 180 days of the date of this proclamation, and every 180 days thereafter, the Secretary of Homeland Security, in consultation with the Secretary of State, the Attorney General, the Director of National Intelligence, and other appropriate heads of agencies, shall submit a report with recommendations to the President, through appropriate Assistants to the President, regarding the following:

(i) the interests of the United States, if any, that continue to require the suspension of, or limitations on, the entry on certain classes of nationals of countries identified in section 2 of this proclamation and whether the restrictions and limitations imposed by section 2 of this proclamation should be continued, modified, terminated, or supplemented; and

(ii) the interests of the United States, if any, that require the suspension of, or limitations on, the entry of certain classes of nationals of countries not identified in this proclamation.

(b) The Secretary of State, in consultation with the Secretary of Homeland Security, the Secretary of Defense, the Attorney General, the Director of National Intelligence, and the head of any other executive department or agency (agency) that the Secretary of State deems appropriate, shall engage the countries listed in section 2 of this proclamation, and any other countries that have information-sharing, identity-management, or risk-factor deficiencies as practicable, appropriate, and consistent with the foreign policy, national security, and public-safety objectives of the United States.

(c) Notwithstanding the process described above, and consistent with the process described in section 2(f) of Executive Order 13780, if the Secretary of Homeland Security, in consultation with the Secretary of State, the Attorney General, and the Director of National Intelligence, determines, at any time, that a country meets the standards of the baseline described in section 1(c) of this proclamation, that a country has an adequate plan to provide such information, or that one or more of the restrictions or limitations imposed on the entry of a country's nationals are no longer necessary for the security or welfare of the United States, the Secretary of Homeland Security may recommend to the President the removal or modification of any or all such restrictions and limitations. The Secretary of Homeland Security, the Secretary of State, or the Attorney General may also, as provided for in Executive Order 13780, submit to the President the names of additional countries for which any of them recommends any lawful restrictions or limitations deemed necessary for the security or welfare of the United States.

**Sec. 5.** *Reports on Screening and Vetting Procedures.* (a) The Secretary of Homeland Security, in coordination with the Secretary of State, the Attorney General, the Director of National Intelligence, and other appropriate heads of agencies shall submit periodic reports to the President, through appropriate Assistants to the President, that:

(i) describe the steps the United States Government has taken to improve vetting for nationals of all foreign countries, including through improved collection of biometric and biographic data;

(ii) describe the scope and magnitude of fraud, errors, false information, and unverifiable claims, as determined by the Secretary of Homeland Security on the basis of a validation study, made in applications for immigration benefits under the immigration laws; and

(iii) evaluate the procedures related to screening and vetting established by the Department of State's Bureau of Consular Affairs in order to enhance the safety and security of the United States and to ensure sufficient review of applications for immigration benefits.

(b) The initial report required under subsection (a) of this section shall be submitted within 180 days of the date of this proclamation; the second report shall be submitted within 270 days of the first report; and reports shall be submitted annually thereafter.

(c) The agency heads identified in subsection (a) of this section shall coordinate any policy developments associated with the reports described in subsection (a) of this section through the appropriate Assistants to the President.

**Sec. 6.** *Enforcement.* (a) The Secretary of State and the Secretary of Homeland Security shall consult with appropriate domestic and international partners, including countries and organizations, to ensure efficient, effective, and appropriate implementation of this proclamation.

(b) In implementing this proclamation, the Secretary of State and the Secretary of Homeland Security shall comply with all applicable laws and regulations, including those that provide an opportunity for individuals to enter the United States on the basis of a credible claim of fear of persecution or torture.

(c) No immigrant or nonimmigrant visa issued before the applicable effective date under section 7 of this proclamation shall be revoked pursuant to this proclamation.

(d) Any individual whose visa was marked revoked or marked canceled as a result of Executive Order 13769 of January 27, 2017 (Protecting the Nation from Foreign Terrorist Entry into the United States), shall be entitled to a travel document confirming that the individual is permitted to travel to the United States and seek entry under the terms and conditions of the visa marked revoked or marked canceled. Any prior cancellation or revocation of a visa that was solely pursuant to Executive Order 13769 shall not be the basis of inadmissibility for any future determination about entry or admissibility.

(e) This proclamation shall not apply to an individual who has been granted asylum by the United States, to a refugee who has already been admitted to the United States, or to an individual granted withholding of removal or protection under the Convention Against Torture. Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture, consistent with the laws of the United States.

**Sec. 7**. *Effective Dates.* Executive Order 13780 ordered a temporary pause on the entry of foreign nationals from certain foreign countries. In two cases, however, Federal courts have enjoined those restrictions. The Supreme Court has stayed those injunctions as to foreign nationals who lack a credible claim of a bona fide relationship with a person or entity in the United States, pending its review of the decisions of the lower courts.

(a) The restrictions and limitations established in section 2 of this proclamation are effective at 3:30 p.m. eastern daylight time on September 24, 2017, for foreign nationals who:

(i) were subject to entry restrictions under section 2 of Executive Order 13780, or would have been subject to the restrictions but for section 3 of that Executive Order, and

(ii) lack a credible claim of a bona fide relationship with a person or entity in the United States.

(b) The restrictions and limitations established in section 2 of this proclamation are effective at 12:01 a.m. eastern daylight time on October 18, 2017, for all other persons subject to this proclamation, including nationals of:

(i) Iran, Libya, Syria, Yemen, and Somalia who have a credible claim of a bona fide relationship with a person or entity in the United States; and

(ii) Chad, North Korea, and Venezuela.

**Sec. 8**. *Severability.* It is the policy of the United States to enforce this proclamation to the maximum extent possible to advance the national security, foreign policy, and counterterrorism interests of the United States. Accordingly:

(a) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this proclamation and the application of its other provisions to any other persons or circumstances shall not be affected thereby; and

(b) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

**Sec. 9**. *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-fourth day of September, in the year of our Lord two thousand seventeen, and of the Independence of the United States of America the two hundred and forty-second.

*[signature: Donald Trump]*

[FR Doc. 2017–20899
Filed 9–26–17; 11:15 am]
Billing code 3295–F7–P