# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALHARBI, AHMED et al., | ) ) ) Case No.: 18-cv-2435(BMC) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| MILLER, STEPHEN et al. | ) ) **DECLARATION OF** ) **CHRISTOPHER** ) **RICHARDSON, ESQ.** |
| Defendants. | ) ) |

## DECLARATION OF CHISTOPHER RICHARDSON, ESQ.

I, Christopher Richardson, Esq., do hereby declare:

1) I am a licensed attorney admitted to practice in the state of GEORGIA. Furthermore, I am a member in good standing of the bar of 643543.

2) I am over 18 years of age and if called upon to testify, I could and would competently testify to the following facts, as the same are personally known to me.

3) From 2011 to 2018, I was employed by the U.S. State of Department. My last post before resigning was at the U.S. Embassy in Madrid located at Calle de Serrano, 75 28006 Madrid, Spain and my title was American Citizens Services Chief.

4) My last day of employment was March 1, 2018. Therefore, I was employed when Executive Order 13769 and 13780 and also Presidential Proclamation 98645 were issued. I was also employed and had access to all the state department guidance, cables, sample Q's and A's and instructions regarding executing all three orders and had the opportunity to review all

1

those materials.

5) All of the above guidance cables, sample Q's and A's and instructions regarding executing all three orders were sent via email to consular posts, and the cable and corresponding Q's and A's were at the top center of the CAs internal homepage for 3 to 4 months.

6) I have had the opportunity to read from pages 53 and 68 of the transcript dated Thursday, May 10, 2018 from the above caption case. Specifically, I read where Mr. Amanat stated "There's no Q & A." … "This is the first time I am hearing about that." "Certainly, there's no reference to any such document in the documents themselves that I'm giving to your honor.

7) Those statements are inaccurate. First, there was not only one version of the Q's & A's but two, one redlined as Ms. Goldberg correctly identified. Moreover, this was common knowledge in the department and several federal agencies have access to Consular information.

8) Secondly, the Q's & A's was part of the cable and was definitely referenced in the cable itself as is with all Q's & A's.

9) On page 68 I also read where the Court is inquiring about the cable "referencing several other" documents. Mr. Amanat states that the document is "classified" and there is one with "unclassified excerpts." Having seen all these documents to the best of my recollection NONE of the documents were classified.

10) I can certainly understand why the government would not want release all of them because when read together with our training, it is understood that there really is no waiver and the Supreme Court was correct to point out that the waiver is merely "window dressing."

Case 1:18-cv-02435-BMC   Document 24-2   Filed 06/01/18   Page 4 of 5 PageID #: 937

11) As a Consular officer previously employed by the State Department my impression and interpretation of how we as officers were to apply the waiver process was as follows:

   (a) They gave us a list of things and we would go down the list one by one until we were able to determine at all possible cost that the person was not eligible to even apply for the waiver. My understanding was no one is to be eligible to apply.

   (b) If for some reason an applicant made it through the list and we had no choice but to determine we could find an applicant eligible to apply, regardless of the PP instructions that we had "discretion to grant the waiver," we were not allowed to exercise that discretion. We were mandated to send notice to Washington that we found this applicant eligible to apply and Washington would then make the decision to grant or deny the waiver.

12) In essence what the administration was doing was "hiding" behind the doctrine of consular non-reviewability for the benefit of issuing a Muslim ban and the same time usurping all of our authority given by both Congress and the PP by disallowing the consular officer to make a decision.

13) Approval notices like the samples attached to my declaration (Ecuador, Mexico, Djibouti, Turkey) are issued at US Embassies all over the world once a case is complete, (valid medicals received, applicant interviewed, and SAOs clearances received) while the applicant is waiting for the embassy to print the visa. This is not specific to Djibouti.

14) Even when SAOs clearance expire and needs to be updated, it can be done within 24-72 hours and the visa printed, since it is merely an update. The same hold true for the medical examination.

15) I declare under penalty of perjury of the law of New York and the United States that the foregoing is true and correct.

Dated on this June 1, 2018

*[signature]*

Christopher Richardson, Esq.