# Exhibit E



United States Department of State

*Washington, D.C. 20520*

FEB 2 2 2018

The Honorable
Chris Van Hollen
United States Senate
Washington, DC 20510

Dear Senator Van Hollen:

Thank you for your letter of January 31 regarding Presidential Proclamation 9645 on *Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or other Public Safety Threats* (the Proclamation), which suspended the entry into the United States of certain nationals of eight designated countries, Chad, Iran, Libya, Syria, Yemen, North Korea, Venezuela and Somalia.  In particular you request information regarding the processing of waivers for nationals of these countries following the Supreme Court's December 4, 2017 stay of injunctions entered by lower courts which enjoined the implementation of the Proclamation. We are responding questions posed in your letter that relate to the Department of State.  The Department of Homeland Security will write to you relating to issues under its authority.

Section 1(b) of the Proclamation stresses that it is the policy of the United States to protect its citizens from terrorist attacks and other public-safety threats and that screening and vetting protocols and procedures associated with visa adjudications and other immigration processes play a critical role in implementing that policy.  Further, the Proclamation notes that information-sharing and identity-management protocols and practices of foreign governments are important for the effectiveness of the screening and vetting protocols and procedures of the United States. It determines that the governments of Chad, Iran, Libya, Syria, Yemen, North Korea, Venezuela and Somalia had inadequate identity-management protocols, information-sharing practices, and risk factors, such that entry restrictions and limitations are required.

Section 3(b) of the Proclamation specifically excepts certain nationals of the designated countries from the Proclamation's entry restrictions, and section 3(c) provides for a case-by-case waivers of the entry restrictions.  The entry restrictions of the Proclamation may be waived if a consular officer determines that the applicant meets each of the following three criteria: (1) denying entry would cause the foreign national undue hardship; (2) entry would not pose a threat to the national security or public safety of the United States; and (3) entry would be in the national interest.

As part of the visa application process, all aliens are required to submit an online visa application form.  The application form requests a variety of information about the alien's history and background, including his family relationships, work experience, and criminal record. See, e.g., 8 U.S.C. § 1202(b).  The visa application process includes an in-person interview and results in a decision by a consular officer. 8 U.S.C. §§ 1201(a)(1), 1202(h), 1204; 22 C.F.R. §§ 41.102, 42.62.

When adjudicating the visa application of an applicant subject to the Proclamation, the consular officer must first determine whether the applicant is eligible for a visa under the provisions of the Immigration and Nationality Act (INA). The applications of both immigrant and nonimmigrant visa applicants from the designated countries are processed in the same manner as all other applicants for U.S. visas. This processing includes screening of their fingerprints and biometric information though the Department's Consular Lookout and Support System (CLASS) database; and screening through IDENT (which contains DHS fingerprint records), NGI (the FBI Next Generation Identification database), and the Department's Facial Recognition database, which contains watchlist photos of known and suspected terrorists obtained from the FBI's Terrorist Screening Center (TSC) as well as the entire gallery of prior visa applicant photos. If an applicant from one of the designated countries is determined to be otherwise eligible for a visa under the INA, the interviewing officer must then determine whether the applicant falls into one of the exceptions to the Proclamation. Only if the otherwise eligible applicant does not fall within an exception, will the consular officer consider the applicant for a waiver. Each applicant who meets the conditions set forth in section 3(c) of the Proclamation must be considered for a waiver. There is no waiver form to be completed by the applicant.

Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that he or she meets the three criteria discussed above. First, to satisfy the undue hardship criterion, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel. Second, the applicant's travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

Finally, to establish that the applicant does not constitute a threat to national security or public safety, the consular officer considers the information-sharing and identity-management protocols and practices of the government of the applicant's country of nationality as they relate to the applicant. If the consular officer determines, after consultation with the Visa Office, that an applicant does not pose a threat to national security or public safety and the other two requirements have been met, a visa may be issued with the concurrence of a consular manager.

Section 3(c)(iv) of the Proclamation provides examples of the circumstances in which a waiver might be appropriate. The Department's worldwide guidance to consular officers regarding waivers is drawn directly from the Proclamation. Further, consular officers may consult with the Visa Office if a consular officer believes a case may warrant a waiver but the applicant's circumstances do not align with one of the examples in the Proclamation.

Your letter also requests statistical information about the number of applicants from the designated countries who have applied for visas and those who have received waivers. Unfortunately, some of the information you seek is not readily available in the form you have requested. Nonetheless, we can provide the information attached.

-3-

We hope this information is responsive to your concerns.  Please do not hesitate to contact us further should you require additional information.

Sincerely,

Mary K. Waters
Assistant Secretary
Legislative Affairs

Enclosure:  As stated

**SENSITIVE BUT UNCLASSIFIED**

**VISA APPLICATIONS RECEIVED AND PROCESSED FROM NATIONALS SUBJECT TO PRESIDENTIAL PROCLAMATION 9645 (From December 8, 2017 to January 8, 2018**

*This non-public information is being provided to address your request as fully as possible. Not for public release without prior consultation with the Department of State.*

| | |
|---|---|
| Applications for nonimmigrant and immigrant visas: | 8,406 |
| Applicants refused for reasons unrelated to the Proclamation: | 1,723 |
| Applicants qualifying for an exception: | 128 |
| Applicants who failed to meet the criteria for a waiver | 6,282 |
| Applications refused under the Proclamation with waiver consideration: | 271 |
| Waivers approved (as of February 15):  2 | |

**SENSITIVE BUT UNCLASSIFIED**