1

SIRINE SHEBAYA (*pro hac vice*)
NIMRA AZMI (*pro hac vice*)*
JOSEPH SAEI (CA SBN 321341)*
MUSLIM ADVOCATES
P.O. Box 34440
Washington, DC 20043
Telephone: (202) 897-2622
Facsimile: (202) 508-1007
sirine@muslimadvocates.org
nimra@muslimadvocates.org
yusuf@muslimadvocates.org

SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
LOTFI LEGAL, LLC
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974
shabnam@lotfilegal.com
veronica@lotfilegal.com

*Attorneys for Plaintiffs*

*\*Not admitted to practice in DC; supervised by members of the DC bar*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Tannaz Toloubeydokhti; Fathollah Tolou Beydokhti; Behnaz Malekghaeini; Afrooz Kharazmi; Afshan Alamshah Zadeh; Najib Adi; Ismail Alghazali; Malik Almathil; Khalil Ali Nagi; Hezam Alarqaban; Abdurraouf Gseaa; Sudi Wardere; Khadija Aden; Soheil Vazehrad; Atefehossadat Motavaliabyazani; Bamshad Azizi; Roghayeh Azizikoutenaei; Hojjatollah Azizikoutenaei; Clyde Jean Tedrick II; Mitra Farnoodian-Tedrick; Farajollah Farnoudian; Farangis Emami; Maral Charkhtab Tabrizi; Zahra Rouzbehani; Bahram Charkhtab Tabrizi; Maryam Mozafari; Mohammad Mehdi Mozaffary; Behnam Babalou; Hoda Mehrabi Mohammad Abadi; Mahdi Afshar Arjmand; Ehsan Heidaryan; Najmeh Maharlouei; Nastaran Hajiheydari; Mohamad Hamami,<br><br>                 Plaintiffs,<br><br>                 -against-<br><br>KIRSTJEN NIELSEN, in her official capacity as Secretary of Homeland Security; U.S. | Civil Case No. 3:18-cv-01587<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR WRIT OF MANDAMUS** |

SECOND AMENDED COMPLAINT - 1

DEPARTMENT OF HOMELAND SECURITY; MICHAEL R. POMPEO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; KEVIN K. MCALEENAN, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION; L. FRANCIS CISSNA, in his official capacity as Director of U.S. Citizenship and Immigration Services; U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants.

## **INTRODUCTION**

1.   Presidential Proclamation 9645 issued on September 24, 2017 ("the Proclamation") prohibits the entry of all immigrants and certain categories of non-immigrants for nationals of Iran, Libya, Somalia, Syria, and Yemen.[1] The Proclamation provides for case-by-case waivers from the ban for individuals who can "demonstrate" that denial of entry "would cause undue hardship, . . . would not pose a threat to national security, . . . and would be in the national interest." Ex. A, Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), § 3(c). The Proclamation provides several examples of circumstances in which waivers may be appropriate, and further requires the Secretary of State and the Secretary of Homeland Security to adopt guidance establishing when waivers may be appropriate for foreign nationals who would otherwise be banned.

2.   To date, however, no meaningful guidance has been issued or publicly promulgated. The agencies do not appear to have established—and certainly have not provided information to the

---

[1] Under the terms of the Proclamation, all Syrian nationals are banned; all Libyan and Yemeni nationals seeking immigrant or non-immigrant B1/B2 visas are banned; all Iranian nationals except non-immigrants seeking F, M, or J visas are banned; and all Somali nationals seeking immigrant visas are banned.

SECOND AMENDED COMPLAINT - 2

public about—waiver application procedures that are accessible to visa applicants. To the extent guidance has been issued, it has been confusing, contradictory, in conflict with the terms of the Proclamation, or seemingly designed to result in the denial of meritorious applications. Such guidance also has failed to provide for a mechanism by which individuals may "demonstrate"— as the Proclamation says they must—that they meet the eligibility criteria described in the Proclamation. *Id.*

3.      Immediately after the Proclamation first went fully into effect in December 2017, thousands of individuals, including many plaintiffs in this action, reported receiving blanket, boilerplate denials of both visas and waivers, most before ever having had an opportunity to apply for a waiver or to "demonstrate" their eligibility. Individuals denied waivers include those who had previously been informed by U.S. consular officials that their visas had been approved. Others were informed that their eligibility for a waiver is being considered, but have been waiting for months or more than a year without a decision in their cases. Both public reports and the latest government statistics illustrate that the number of waiver grants has been "a minuscule percentage" of those eligible for visas. *Trump v. Hawaii,* 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting). By all indications, the waiver process has been a fraud. *See, e.g.*, Ex. B, Decl. of Christopher Richardson, Esq. ("Richardson Decl."), *Alharbi v. Miller*, No. 1:18-cv-02435 (E.D.N.Y. filed Apr. 25, 2018), ECF No. 24-2.

4.      Plaintiffs and putative class members are U.S. citizens, lawful permanent residents, and Iranian, Libyan, Somali, Syrian, and Yemeni foreign nationals whose visa applications have been denied or stalled by the government's failure to provide fair and meaningful access to case-by-case waivers. Many have approved visa petitions for their family members; others have family members who have applied for immigrant or non-immigrant visas and been summarily denied or

SECOND AMENDED COMPLAINT - 3

indefinitely stalled; and others have applied for business-related or extraordinary ability visas to the United States. All seek entry to the United States to be reunited with their families or because of significant business or professional relationships in the United States.

5.      Based upon all available data and information, Defendants have adopted a policy or practice of not instituting an orderly waiver process through which individuals may "demonstrate," as stated in the Proclamation, their eligibility for a case-by-case waiver. Ex. A, § 3(c).

6.      Defendants have further adopted a policy or practice of not providing information about the waiver process and have thereby hindered Plaintiffs' and their family members' ability to make a showing that they meet the relevant criteria.

7.      Defendants have also adopted a policy or practice of denying or stalling virtually all visa issuance and waiver grants under the Proclamation, and have not given consular officials the discretion to grant any waivers.

8.      As set forth below, the government's failure to provide a meaningful, orderly, and accessible process through which individuals covered by the ban can demonstrate their eligibility for a waiver violates the Administrative Procedure Act ("APA") and Plaintiffs' right to due process under the Fifth Amendment to the U.S. Constitution.

9.      Accordingly, Plaintiffs request that this Court order Defendants to provide clear guidance and an orderly process by which applicants may demonstrate their eligibility for a waiver; evaluate whether applicants previously denied waivers under an unlawful policy should be reconsidered for a waiver grant; act on waivers that have been pending for an unreasonable period of time; and give full consideration for case-by-case waivers to all visa applicants as set forth in the Proclamation.

SECOND AMENDED COMPLAINT - 4

**CLASS DEFINITION**

10.     Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the following two subclasses: (i) the "Family Member Class" and (ii) the "Visa Applicant Class."

11.     The **Family Member Class** is comprised of United States citizens and lawful permanent residents with approved family-based visa petitions or whose family members have applied for visa categories covered by the ban, and whose family members have been or will be refused pursuant to the Proclamation without an opportunity to apply for and be meaningfully considered for a waiver or are awaiting adjudication of a waiver.

12.     The **Visa Applicant Class** is comprised of Iranian, Libyan, Somali, Syrian, and Yemeni nationals who have applied for immigrant or nonimmigrant visas that have been or will be refused pursuant to the Proclamation without the opportunity to apply for and be meaningfully considered for a waiver or who are awaiting adjudication of a waiver.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

13.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (Mandamus and Venue Act of 1962), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 2201 (Declaratory Judgment Act). The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702. This Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1651, and 28 U.S.C. §§ 2201–2202.

14.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States acting in their official capacities and agencies of the United States; some Plaintiffs reside in this judicial district; and no real property is involved in this action. Plaintiffs have exhausted all administrative remedies.

SECOND AMENDED COMPLAINT - 5

15.   Intradistrict assignment is proper in the San Francisco Division because a substantial part of the events or omissions that give rise to the claim occurred in San Francisco and Napa Counties. Civil L. R. 3-2(c), (d).

**PARTIES**

I.   **Plaintiffs**

16.   Plaintiff Tannaz Toloubeydokhti is a U.S. citizen residing in San Diego, California. She seeks to be reunited with her parents, for whom she has an approved family-based immigrant visa petition.

17.   Plaintiffs Fathollah Tolou Beydokhti and Behnaz Malekghaeini are Iranian nationals residing in Iran. Mr. Tolou Beydokhti and Ms. Malekghaeini have pending immigrant visas based on Ms. Toloubeydokhti's approved family-based immigrant visa petitions.

18.   Plaintiff Afrooz Kharazmi is a U.S. citizen residing in Loveland, Ohio. She seeks to be reunited with her sister, for whom she has an approved family-based visa petition.

19.   Plaintiff Afshan Alamshah Zadeh is an Iranian national residing in Iran. Ms. Alamshah Zadeh has a pending immigrant visa based on Ms. Kharazmi's approved family-based immigrant visa petition.

20.   Plaintiff Dr. Najib Adi is a U.S. citizen residing in Bristow, Virginia. He seeks to be reunited with his Syrian mother, for whom he has an approved family-based visa petition. He has been awaiting adjudication of her eligibility for a waiver for more than a year.

21.   Plaintiff Ismail Alghazali is a U.S. citizen currently residing in Djibouti. He had an approved family-based petition for his Yemeni wife, but her visa application was denied at her interview in Djibouti in December 2017 and she was not considered for a waiver. He is separated from his wife and infant son, whom he wishes to bring home with him to the United States.

SECOND AMENDED COMPLAINT - 6

22.    Plaintiff Malik Almathil is a U.S. citizen residing in New York City. He had an approved family-based petition for his Yemeni wife, who was told at her interview on July 31, 2017 that her visa was approved. Shortly after the Proclamation went into effect in December 2017, she received a boilerplate letter denying her a waiver and revoking her visa approval. He seeks to be reunited with his wife.

23.    Plaintiff Khalil Ali Nagi is a U.S. citizen residing in Schenectady, New York with his four-year-old U.S. citizen daughter. He has an approved family-based petition for his Yemeni wife, who had her interview in Djibouti in October 2017. She was told at her interview that her visa would be approved, but in March 2018 her visa was denied and she was informed that she would not be considered for a waiver. Mr. Ali Nagi seeks to be reunited with his wife.

24.    Plaintiff Hezam Alarqaban is a lawful permanent resident of the United States residing in Oakland, California. He seeks to be reunited with his Yemeni wife and eleven children, for whom he has approved family-based visa petitions and who had been issued visas that were later revoked. He is awaiting adjudication of his family's eligibility for a waiver.

25.    Plaintiff Abdurraouf Gseaa is a U.S. citizen residing in Houston, Texas. He seeks to be reunited with his Libyan wife, for whom he has an approved family-based visa petition. He is awaiting adjudication of her eligibility for a waiver.

26.    Plaintiff Sudi Wardere is a U.S. citizen residing in Kirkland, Washington. She seeks to be reunited with her Somali husband, for whom she has an approved family-based visa petition. Ms. Wardere is awaiting adjudication of her husband's eligibility for a waiver.

27.    Plaintiff Khadija Aden is a lawful permanent resident of the United States residing in Seattle, Washington. She seeks to be reunited with her son, who was born and has lived his entire life in Ethiopia, and for whom she has an approved family-based petition.

SECOND AMENDED COMPLAINT - 7

28.     Plaintiff Soheil Vazehrad is a U.S. citizen residing in Napa, California. He seeks to be reunited with his fiancée, for whom he has an approved K1 fiancé visa petition.

29.     Plaintiff Atefehossadat Motavaliabyazani is an Iranian national residing in Iran. Ms. Motavaliabyazani has a pending nonimmigrant visa based on Mr. Vazehrad's approved K1 fiancé visa petition.

30.     Plaintiff Bamshad Azizi is a lawful permanent resident of the United States residing in San Jose, California. He has assisted his parents in applying for B1/B2 visitor visas so that they may come visit him in the United States.

31.     Plaintiffs Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei are Iranian nationals residing in Iran. Mr. and Mrs. Azizikoutenaei have applied for B1/B2 visitor visas to visit their son Mr. Azizi in the United States.

32.     Plaintiff Clyde Jean Tedrick II is a U.S. citizen residing in Rockville, Maryland. He is married to an Iranian national and has assisted his parents-in-law in applying for B1/B2 visitor visas so that they may come visit his family in the United States.

33.     Plaintiff Mitra Farnoodian-Tedrick is a lawful permanent resident of the United States residing in Rockville, Maryland. She is married to Mr. Tedrick. She has assisted her parents in applying for B1/B2 visitor visas so that they may come visit her family in the United States.

34.     Plaintiffs Farajollah Farnoudian and Farangis Emami are Iranian nationals residing in Iran. They have applied for B1/B2 visitor visas so that they may visit their daughter Ms. Farnoodian-Tedrick, their son-in-law Mr. Tedrick, and their family in the United States.

35.     Plaintiff Maral Charkhtab Tabrizi is a lawful permanent resident of the United States residing in Tempe, Arizona. She is married to a U.S. citizen and has recently given birth to her

first child. She has assisted her Iranian parents in applying for B1/B2 visitor visas so that they may come visit her and meet their grandchild in the United States.

36.     Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi are Iranian nationals residing in Iran. Ms. Rouzbehani and Mr. Charkhtab Tabrizi have applied for B1/B2 visitor visas so that they may come visit their daughter Ms. Charkhtab Tabrizi and meet their grandchild in the United States.

37.     Plaintiff Maryam Mozafari is a lawful permanent resident of the United States residing in San Francisco, California. She has assisted her Iranian father in applying for a B1/B2 visitor visa so that he may come visit her in the United States.

38.     Plaintiff Mohammad Mehdi Mozaffary is an Iranian national residing in Iran. Mr. Mozaffary has applied for a B1/B2 visa so that he may visit his daughter Ms. Mozafari in the United States.

39.     Plaintiff Behnam Babalou is an Iranian national residing in Iran who invested $500,000.00 in CMB Infrastructure Investment Group XIV, L.P. ("CMB"), located in San Bernardino, California. Mr. Behnam Babalou has an approved immigrant visa petition based on his investments in and significant business ties to CMB.

40.     Plaintiff Hoda Mehrabi Mohammad Abadi is an Iranian national residing in Iran who invested $500,000.00 in Kimpton Hotels & Restaurants ("Kimpton Hotels") in Milwaukee, Wisconsin. She has an approved immigrant visa petition based on her $500,000.00 investment in Kimpton Hotels.

41.     Plaintiff Dr. Mahdi Afshar Arjmand is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

SECOND AMENDED COMPLAINT - 9

42.     Plaintiff Dr. Ehsan Heidaryan is an Iranian national, currently residing in Brazil, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

43.     Plaintiff Najmeh Maharlouei is an Iranian national, currently residing in Shiraz, Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the national interest of the United States.

44.     Plaintiff Nastaran Hajiheydari is an Iranian national, currently residing in Iran, who has an approved immigrant visa petition based on her extensive record of achievements and the fact that her work is in the national interest of the United States.

45.     Plaintiff Mohamad Hamami is a Syrian national and a world-class violinist, currently residing in Dubai, who has an approved immigrant visa petition based on his extensive record of achievements as a noncitizen with extraordinary ability.

**II.    Defendants**

46.     Defendant Kirstjen Nielsen is the Secretary of Homeland Security and is sued in her official capacity. Secretary Nielsen is responsible for the U.S. Department of Homeland Security ("DHS")'s implementation and enforcement of the Proclamation.

47.     Defendant DHS is an executive department of the United States government, headquartered in Washington, DC. DHS is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

48.     Defendant Michael R. Pompeo is the Secretary of State and is sued in his official capacity. Secretary Pompeo oversees the U.S. Department of State ("State Department")'s activities and its implementation and enforcement of the Proclamation.

SECOND AMENDED COMPLAINT - 10

49.     Defendant State Department is an executive department of the United States government, headquartered in Washington, DC. The State Department has primary responsibility for issuing visas and for implementing the Proclamation. The State Department is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

50.     Defendant Kevin K. McAleenan is the Commissioner of U.S. Customs and Border Protection ("CBP") and is sued in his official capacity. Commissioner McAleenan is responsible for CBP's implementation of the Immigration and Nationality Act ("INA") and its implementation and enforcement of the Proclamation.

51.     Defendant CBP is an administrative agency within DHS, headquartered in Washington, DC. CBP is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

52.     Defendant L. Francis Cissna is the Director of U.S. Citizenship and Immigration Services ("USCIS") and is sued in his official capacity. Director Cissna is responsible for USCIS's implementation of the INA and its enforcement of the Proclamation.

53.     Defendant USCIS is an administrative agency within DHS, headquartered in Washington, DC. USCIS oversees lawful immigration to the United States, including the approval of visa petitions. USCIS is assigned several responsibilities regarding implementation and enforcement of the Proclamation.

## STATEMENT OF FACTS

### I.      The Proclamation

54.     On September 24, 2017, President Trump issued Presidential Proclamation 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats." Ex. A. The Proclamation is the third version

SECOND AMENDED COMPLAINT - 11

of a travel ban enacted by President Trump in fulfilment of promises he made on the campaign trail to institute a "total and complete shutdown" on Muslims entering the United States. Jenna Johnson, *Trump Calls for 'Total and Complete Shutdown of Muslims Entering the United States,'* Wash. Post (Dec. 7, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/12/07/donald-trump-calls-for-total-and-complete-shutdown-of-muslimsentering-the-united-states/?utm_term=.6cf6b32baba2. *See also* Todd Green, *By any other name: Why the 'travel ban' really is a Muslim ban*, Religion News Service (July 3, 2018), https://religionnews.com/2018/07/03/by-any-other-name-why-the-travel-ban-really-is-a-muslim-ban/.

55.     The Proclamation puts in place an indefinite travel ban on most nationals of five[2] predominantly Muslim countries, including all immigrants and various categories of non-immigrants from each of the enumerated countries.[3] Alongside these entry restrictions, the Proclamation provides for a waiver that may be granted on a case-by-case basis to individuals who meet three specific criteria.[4] Ex. A, § 3(c); *infra* Section II.

56.     The Proclamation was challenged in court, and before its effective date, two district courts issued nationwide injunctions prohibiting implementation of the ban against individuals with

---

[2] The Proclamation originally included six Muslim-majority countries: Chad, Iran, Libya, Somalia, Syria, and Yemen. Ex. A, § 2(a). In April 2018, the administration removed Chad from the list of targeted countries. Press Release, U.S. Dep't of State, Presidential Proclamation Lifts Travel Restrictions for Chad (Apr. 10, 2018), https://www.state.gov/r/pa/prs/ps/2018/04/280364.htm. The Proclamation also prevents entry of certain Venezuelan government officials and their family members and of all North Korean nationals. *See* Ex. A, § 2(d), (f).

[3] Under the terms of the Proclamation, all Syrian nationals are banned; all Libyan and Yemeni nationals seeking immigrant or non-immigrant B1/B2 visas are banned; all Iranian nationals except non-immigrants seeking F, M, or J visas are banned; and all Somali nationals seeking immigrant visas are banned.

[4] The Second Executive Order created a waiver process, Exec. Order No. 13780, 82 Fed. Reg. 13209, § 3(c) (Mar. 9, 2017), which the Proclamation extended.

SECOND AMENDED COMPLAINT - 12

"bona fide relationships" to persons or entities in the United States. *See Int'l Refugee Assistance Project v. Trump,* 265 F.Supp.3d 570 (D. Md. 2017); *Hawaii v. Trump,* 265 F.Supp.3d 1140 (D. Haw. 2017). On December 4, 2017, the Supreme Court granted Defendants' application for a stay of the preliminary injunctions entered by the district courts, allowing full implementation of the travel ban to proceed. *See Trump v. Int'l Refugee Assistance Project,* 138 S. Ct. 542 (2017). The Supreme Court subsequently reversed the preliminary injunction and allowed the Proclamation to remain fully in effect. *Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392 (2018). The Court found that the Proclamation likely did not violate the Constitution, in part because of the existence of a case-by-case waiver process that provides for individualized consideration of every visa applicant. *Id.* at 2422-23.

57.     Since December 4, 2017, the Proclamation has been in full effect, and the only means by which covered individuals from the banned countries may enter the United States is through grant of a case-by-case waiver.

### II.     Case-by-Case Waivers under the Proclamation

58.     Section 3 of the Proclamation contains a subsection entitled "Waivers," which states:

> Notwithstanding the suspensions of and limitations on entry set forth in section 2 of this proclamation, a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited if such foreign nationals demonstrate that waivers would be appropriate and consistent with subsections (i) through (iv) of this subsection [laying out waiver standards].

Ex. A, § 3(c).

59.     The Proclamation explains that a waiver may be granted if, in a consular officer's or CBP's discretion, a foreign national has demonstrated that: (1) denial of entry "would cause the foreign

SECOND AMENDED COMPLAINT - 13

national undue hardship"; (2) his or her "entry would not pose a threat to the national security or public safety of the United States"; and (3) his or her "entry would be in the national interest." *Id.* § 3(c)(i).

60.     The Proclamation then specifies that while "[c]ase-by-case waivers may not be granted categorically," they "may be appropriate, subject to the limitations, conditions, and requirements set forth" in subsection (c), "in individual circumstances …." *Id.* § 3(c)(iv). It proceeds to give a generous list of non-exhaustive examples of circumstances under which issuance of a waiver may be appropriate, including:

> (A) the foreign national has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date … of this proclamation, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;
>
> (B) the foreign national has previously established significant contacts with the United States but is outside the United States on the applicable effective date ... of this proclamation for work, study, or other lawful activity;
>
> (C) the foreign national seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;
>
> (D) the foreign national seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship;
>
> (E) the foreign national is an infant, a young child or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case ….

*Id.*

SECOND AMENDED COMPLAINT - 14

61.    The Proclamation also instructs that, "[t]he Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id*. § 3(c). It further directs the Secretaries to:

> [A]ddress the standards, policies and procedures for:
>
> (A) determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States;
>
> (B) determining whether the entry of a foreign national would be in the national interest;
>
> (C) addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to the restrictions and limitations imposed by this proclamation;
>
> (D) assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy the requirements of subsection (i) of this subsection; and
>
> (E) determining the special circumstances that would justify granting a waiver under subsection (iv)(E) of this subsection.

*Id*. § 3(c)(ii).

### III.    Agency Guidance and Implementation

62.    The Proclamation directs the Secretary of State and the Secretary of Homeland Security to develop specific guidance for consular officers and visa applicants on how the waiver provisions will be implemented. *Id*. § 3(c).

63.    Despite this clear mandate, the agencies have failed to provide meaningful guidance that sheds light on the waiver process or provides applicants with an orderly way to access that process.

SECOND AMENDED COMPLAINT - 15

*See Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("The Government … has offered no explanation for how these [discretionary waiver] provisions would function in practice: how would the 'national interest' be determined, who would make that determination, and when?").

64.     After the Supreme Court's lifting of the stays on the Proclamation, the State Department issued, through its website, some minimal instructions regarding its immediate implementation. Ex. C, U.S. Dep't of State, *New Court Order on Presidential Proclamation* (Dec. 4, 2017). That posting stated that consular officers will review eligibility for a waiver at the time of an applicant's interview. *Id.* But it did not explain how waivers would be adjudicated for individuals who had already had their interviews and, as set forth more fully below, it did not answer any critical questions about how individuals may apply for a waiver and how they may "demonstrate" their eligibility for a waiver.

65.     All available evidence shows that Defendants are not providing any meaningful individualized consideration of waiver applicants' eligibility. Just days after the Proclamation went into effect, several organizations and attorneys, including undersigned counsel, began receiving reports from individuals covered by the ban of *pro forma,* mass denials of both visas and waivers by consular offices in Armenia, Turkey, Djibouti, Dubai, Abu Dhabi, and elsewhere. *See* Yeganeh Torbati & Mica Rosenberg, *Exclusive: Visa Waivers Rarely Granted under Trump's Latest U.S. Travel Ban: Data,* Reuters (Mar. 6, 2018), https://www.reuters.com/article/us-usa-immigration-travelban-exclusive/ exclusive-visa-waivers- rarely-granted-under-trumps-latest-u-s-travel-ban-data-idUSKCN1GI2DW; Ex. D, Decl. of Jay Gairson ("Gairson Decl."); *infra* Section IV. Many of the individuals who were notified that they had been denied waivers, including Plaintiffs in this action, had never been informed about or provided an opportunity to apply for a waiver. *See infra*

SECOND AMENDED COMPLAINT - 16

Section IV. Automatically denied individuals included those who had previously been informed that their visas had been approved. *See infra* Section IV.

A.  The Guidance Provided by Federal Officials About the Waiver Process Has Been Non-Existent or Conflicting.

66.     After the Proclamation went into effect in December 2017, visa applicants immediately began to contact embassies and consulates abroad to ask for guidance and clarification, but received no response or standard automated responses that did not address their questions or provide meaningful information. *See infra* Section IV. Attorneys contacted the State Department for clarification but also received inadequate and inconsistent responses. *See infra* Section IV.

67.     More than fourteen months after the Proclamation went into effect and almost a year and a half since its issuance, Defendants have yet to promulgate clear guidance, and their practices continue to sow confusion and chaos. *See Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting) (stating that, although the Proclamation directs the Secretaries to develop guidance for consular officers, to the Court's "knowledge, no guidance has issued"). To the extent that guidance has issued, it has been confusing or contradictory, and has failed to shed light on key questions about the waiver process.

68.     Documents released in response to Freedom of Information Act litigation demonstrate a waiver process that is designed to make it especially difficult for immigrants to obtain waivers—in clear conflict with the examples provided in the Proclamation. *See* Dara Lind, *Exclusive: Internal documents show how hard it is for some immigrants to get a travel ban waiver*, Vox (Sept. 21, 2018), https://www.vox.com/2018/9/20/17622622/travel-ban-waiver-muslim-how. The guidance, which includes significant redactions, fails to provide for a process by which individuals may demonstrate their eligibility for a waiver, and also appears not to be followed in

SECOND AMENDED COMPLAINT - 17

practice. For example, it states that consular officials may grant waivers, but by all indications, that is not true in practice. *See id. See also* U.S. Dep't of State, *Operational Q&As on P.P. 9645 in light of the U.S. Supreme Court orders of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 STATE 97682* (Jan. 23, 2018), https://refugeerights.org/wp-content/uploads/2018/09/FOIA-Waiver-Guidance.pdf; Ex. B, Richardson Decl.; Ex. D, Gairson Decl.; *infra* Section IV.

69.    The State Department initially provided the following general statement in response to a query by a U.S. Senator about the waiver eligibility criteria:

> First, to satisfy the undue hardship criterion, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel. Second, the applicant's travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.
>
> Finally, to establish that the applicant does not constitute a threat to national security or public safety, the consular officer considers the information-sharing and identity-management protocols and practices of the government of the applicant's country of nationality as they relate to the applicant. If the consular officer determines, after consultation with the Visa Office, that an applicant does not pose a threat to national security or public safety and the other two requirements have been met, a visa may be issued with the concurrence of a consular manager.

Ex. E, Letter from Mary K. Waters, U.S. Dep't of State, to Chris Van Hollen, U.S. Senator (Feb. 22, 2018) ("First Van Hollen Letter").

70.    Although the State Department asserted in the same letter that "[t]he Department's worldwide guidance to consular officers regarding waivers is drawn directly from the Proclamation," *id.,* the above-quoted statement adds a requirement of showing "that a U.S. person

SECOND AMENDED COMPLAINT - 18

or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted," which does not appear anywhere in the Proclamation.

71.     Moreover, individuals who clearly meet the criteria outlined in the Proclamation and the statement provided to Senator Van Hollen are routinely being denied waivers without due consideration, in some cases just days after the ban went into effect. *See, e.g., Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting) (identifying "numerous applicants who could meet the waiver criteria," but who have nonetheless been summarily rejected, including scholars, relatives of U.S. citizens, and a Yemeni child with cerebral palsy,[5] and pointing to an amicus brief which "identified 1,000 individuals—including parents and children of U. S. citizens—who sought and were denied entry under the Proclamation, hundreds of whom seem to meet the waiver criteria.")

72.     Consular officials, in fact, have been left with the understanding that the goal is to deny waivers to the fullest extent possible, Ex. B, Richardson Decl., and applicants and their attorneys remain completely confused about applicable standards of eligibility for waivers.

73.     Nor has the State Department provided an orderly process through which individuals who are covered by the ban may apply for a waiver or seek to "demonstrate"—as the Proclamation specifically provides—their eligibility for a waiver. *See infra* Section IV. Instead, individuals, attorneys, and organizations seeking to assist impacted community members have had to resort

---

[5] After Justice Ruth Bader Ginsburg inquired about the child's case at oral argument in Trump v. Hawaii on April 25, 2018, a waiver was granted in her case and her visa was issued, allowing her to come to the United States with her U.S. citizen father.

SECOND AMENDED COMPLAINT - 19

1    to guesswork and have had to invent a process by which to obtain consideration of materials

2    relevant to any meaningful waiver determination. *See* Ex. D, Gairson Decl.

3    74.      Further, even where the State Department has provided minimal guidance, that guidance

4    does not appear to be followed or applied with any consistency. For example, the State

5    Department website provides a definition of "close family member," stating that the definition

6    for purposes of the Proclamation is the same as the definition of "immediate relative" contained

7    in the INA.[6] Ex. F, U.S. Dep't of State, *Revisions to Presidential Proclamation 9645* (Apr. 10,

8    2018) (citing 8 U.S.C. § 1151(b)(2)(A)(i)). But according to an email received by counsel from a

9    U.S. Consulate in Canada, visa applicants who seek to be reunited with a parent in the United

10   States are ineligible for consideration for a waiver if they are over the age of 21, a definition that

11   is found nowhere in immigration law and that is the reverse of the definition of "immediate

12   relative" in the cited provision. The email exchange reads in relevant part as follows:

13

14         COUNSEL: [I]t appears as though my client, [REDACTED], has been
           denied the opportunity to request a waiver of the presidential
15         proclamation.
           According to the presidential proclamation itself and guidance on the
16         State Department's website, foreign nationals who seek to enter the US to
           be reunited with a close family member (e.g. spouse, child, or parent) are
17         eligible for requesting a waiver.
           My client is the daughter of a United States citizen. Could you kindly
18         explain why your office has denied my client the opportunity to request a
           waiver of the presidential proclamation?
19         CONSULATE: A consular officer may issue a visa based on a listed
           waiver category to nationals of countries identified in the Presidential
20         Proclamation on a case-by-case basis.
           It has been determined that your client, [REDACTED], does not meet the
21         definition of close family as she is over 21 years of age.
           This decision cannot be appealed.
22

23

24   ─────────────────────

25   [6] 8 U.S.C. § 1151(b)(2)(A)(i) defines "immediate relatives" as the children, spouses, and parents of U.S. citizens, and only allows children *over* the age of 21 to petition for immigrant visas for their parents.

SECOND AMENDED COMPLAINT - 20

Ex. G, Email correspondence between U.S. Consulate General in Vancouver, Canada, and Attorney Shabnam Lotfi (Jan. 3-9, 2018).

75.     Applicants in certain visa categories have been told that they are categorically not eligible to be considered for a waiver—an assertion that is contrary to the terms of the Proclamation, which states that every visa applicant will be considered for a waiver. *See infra* Section IV.C. In the absence of clear standards to guide consular officers in their decision-making, different posts appear to have adopted different practices. Ex. D, Gairson Decl. The result has been an almost-uniform denial of case-by-case waivers, and a de facto practice that consular officials do not have the authority to grant waivers. Ex. B, Richardson Decl.

76.     Attorneys have also been told by consulates that they may not submit documents in support of waiver applications for their clients, and that "[t]here is no role or requirement for legal services to facilitate the waiver process." One such email exchange reads in relevant part as follows:

> COUNSEL: Could you please kindly let us know whether you will allow our office to submit a waiver packet on behalf of the beneficiary to outline and present evidence that he meets the grounds for approval of a waiver in consideration of the three grounds outlined by Section 3(c) of the Proclamation…
> CONSULATE: As we said, we have all the required documents at this time. We have already submitted a waiver request on behalf of the applicant, as the applicant was informed during the interview. There is no role or requirement for legal services to facilitate the waiver process, which the Embassy initiated as soon as the applicant was interviewed. Please note – and inform your client – that only U.S. government officials can author waiver requests.

Ex. H, Email correspondence between Attorney Parastoo Zahedi and the Consular Section of the U.S. Embassy in Abu Dhabi (July 18-19, 2018).

77.     Existing guidance also does not explain how consular officers should consider the eligibility for a waiver of applicants who, like several Plaintiffs in this action, were interviewed

SECOND AMENDED COMPLAINT - 21

prior to implementation of the Proclamation but were in administrative processing[7] at the time

the ban went into effect, or for visa applicants whose applications were approved prior to

implementation of the ban but who had not yet gotten their visas stamped in their passports. *See,*

*e.g.,* Ex. K, Findings of Fact and Conclusions of Law, *Alharbi v. Miller*, No. 1:18-cv-02435

(E.D.N.Y. filed Apr. 25, 2018), ECF No. 20.

78.     The government has staunchly refused to provide meaningful information or to institute

an orderly, predictable process by which individuals may apply for a case-by-case waiver.[8]

> B.   Denial Letters Issued by Consular Officers Provide Further Evidence of the
> Dearth of Meaningful Guidance.

79.     Defendants provided the consulates and embassies abroad with a template letter to

provide to applicants when they have been denied a visa pursuant to the Proclamation. The letter

has two options for a consular officer to select: (1) "Taking into account the provisions of the

---

[7] Administrative processing is a period after a visa interview during which applicants undergo additional screening outside of "normal" visa processing. Maggio & Kattar & The Pennsylvania State University Law School's Center for Immigrants' Rights, *Administrative Processing FAQ*, 1, Penn. State L. Sch., https://pennstatelaw.psu.edu/sites/ default/files/documents/pdfs/Immigrants/Administrative-Processing-FAQ.pdf (last visited Feb. 22, 2019). "Before issuing a visa, consular officers review different databases to determine if information exists that may impact individual eligibility for a visa. A 'hit' on a particular database occurs when there is a match between the visa applicant and a database. These hits may be based on criminal convictions, security risks, and prior visa overstays or denials (this list is non-exhaustive)." *Id.* A hit may also occur when an applicant's name is similar to the name of someone suspected of criminal activity. *Id.* at 4. "When an individual case has been tagged in a database, the Department of State, at the request of the consular post, may initiate administrative processing." *Id.* at 1. Cases filed by nationals of several countries are routinely placed in administrative processing. *Id.* at 3.

[8] In fact, the waiver process has been so opaque that, in addition to formal requests for information from U.S. senators, two civil rights organizations, including undersigned counsel, have filed a FOIA request seeking documents from the State Department that could provide some clarity and transparency about the travel ban waiver process. Muslim Advocates and Center for Constitutional Rights, *Freedom of Information Act Request Regarding the Waiver Process Provided for in Presidential Proclamation 9645* (January 23, 2018), https://www.muslimad vocates.org/files/2018.01.23_FOIA_Proclamation-Waivers-Signed.pdf. The case is currently being litigated in the U.S. District Court for the District of Columbia. *Muslim Advocates v. U.S. Dep't of State*, No. 1:18-cv-01546 (D.D.C. filed June 28, 2018). In response to the litigation, the State Department has begun to produce documents, which have included some guidance issued to consular officials. But the guidance has not shed further light on the process, and has raised more questions than it has answered. It also appears to conflict with statements by former consular officials about the instructions they received.

SECOND AMENDED COMPLAINT - 22

Proclamation, a waiver will not be granted in your case"; or (2) "The consular officer is reviewing your eligibility for a waiver under the Proclamation." Ex. I, Embassy letter regarding eligibility for waiver under the Proclamation. There is no option indicating that a waiver has been granted.

80.     These form letters further confirm that not all individuals are being considered for case-by-case waivers, in direct conflict with agency statements that "[a] consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation . . . and, if so, whether the applicant qualifies for an exception or a waiver." Ex. F, U.S. Dep't of State, *Revisions to Presidential Proclamation 9645* (Apr. 10, 2018). As set forth previously, scores of denials were issued just days after the Proclamation went into effect, and numerous individuals who have received these form denials at the interview were told that their eligibility would not be considered and that they may not submit additional documents in support of such consideration. *See infra* Section IV.

                     C.   Defendants Have Granted a "Minuscule Percentage" of Waiver Applications.

81.     To date, the overwhelming majority of waiver applicants have been denied or stalled by Defendants.

82.     In a letter dated February 22, 2018, the State Department disclosed that, as of January 8, 2018, only two waivers were granted to applicants of the banned countries out of at least 6,555 applicants who were eligible to be considered for waivers—a rejection rate of more than 99%. Ex. E, First Van Hollen Letter.

83.     After the letter was made public, the State Department switched from disclosing the number of waivers *granted* to disclosing only the number of waivers *cleared*—a figure that does

SECOND AMENDED COMPLAINT - 23

not appear to bear any substantial relation to the number of waivers actually granted. The State Department has also refused to provide a clear explanation of the term "cleared".

84.     As of March 6, 2018, 102 applicants had been cleared for waivers, likely out of an expanded pool of applicants—moving the rejection rate to at least 98% of visa applicants. Torbati & Rosenberg, *Exclusive: Visa Waivers Rarely Granted, supra* Section III.

85.     As of April 30, out of 27,129 applicants from banned countries who were ostensibly considered for waivers, only 579 had been cleared for waivers. Ex. J, Letter from Mary K. Waters, U.S. Dep't of State, to Chris Van Hollen, U.S. Senator (June 22, 2018) ("Second Van Hollen Letter").

86.     According to the latest numbers from the State Department website, that figure is now at 2,673. U.S. Dep't of State, *June 26 Supreme Court Decision on Presidential Proclamation 9645* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html (last visited February 23, 2019). Assuming a stable number of applications per month, the rejection rate thus remains greater than 96%. *See Trump v. Hawaii*, 585 U.S. ___, 138 S. Ct. 2392, 2431 (2018) (Breyer, J., dissenting) ("That number, … however, when compared with the number of pre-Proclamation visitors, accounts for a miniscule percentage of those likely eligible for visas, in such categories as persons requiring medical treatment, academic visitors, students, family members, and others belonging to groups that, when considered as a group (rather than case by case), would not seem to pose security threats.").

87.     Ultimately, however, the numbers provided by the State Department are misleading, since not all individuals "cleared" for waivers have been granted a waiver or issued a visa. Based on all available evidence, being "cleared" for a waiver simply means that a consular official has

SECOND AMENDED COMPLAINT - 24

forwarded the case for *consideration* for a waiver grant by the State Department in Washington, DC. Ex. D, Gairson Decl. Individuals "cleared" for waivers may continue to be stalled and may not ultimately be granted a visa, rendering the government's 2,673 figure essentially meaningless.

88.     Thus, based upon all available evidence, the percentage of persons who have *actually* been granted a waiver and issued a visa remains considerably smaller than the bare 4% of individuals who have been "cleared" for consideration for a waiver grant.

> D.   Former Consular Officials Have Confirmed the Absence of a Meaningful Waiver Process.

89.     Former consular officers have confirmed the absence of a meaningful waiver consideration process.

90.     In a sworn affidavit submitted in related litigation in the Eastern District of New York, former consular official Mr. Christopher Richardson wrote:

> As a Consular officer previously employed by the State Department my impression and interpretation of how we as officers were to apply the waiver process was as follows:
>
> (a) They gave us a list of things and we would go down the list one by one until we were able to determine at all possible cost that the person was not eligible to even apply for the waiver. My understanding was no one is to be eligible to apply.
>
> (b) If for some reason an applicant made it through the list and we had no choice but to determine we could find an applicant eligible to apply, regardless of the [Presidential Proclamation] instructions that we had "discretion to grant the waiver," we were not allowed to exercise that discretion. We were mandated to send to Washington that we found this applicant eligible to apply and Washington would then make the decision to grant or deny the waiver.

SECOND AMENDED COMPLAINT - 25

Ex. B, Richardson Decl. at 4. *See also* Jeremy Stahl, *"The Waiver Process Is Fraud,"* Slate (June 15, 2018), https://slate.com/news-and-politics/2018/06/trump-travel-ban-waiver-process-is-a-sham-two-consular-officers-say.html.

91.     Mr. Richardson further stated: "[T]here really is no waiver [process] and the Supreme Court was correct to point out that the waiver [process] is merely 'window dressing.'" Ex. B, Richardson Decl. at 3. Mr. Richardson's description of the waiver process has been corroborated by another consular officer. Stahl, *supra*.

92.     These statements reveal a process that conflicts with the plain text of the Proclamation, the information provided by the State Department on its website and in letters to U.S. senators, the recently-released "guidance", and arguments made by the government while defending against litigation challenging the ban. As described by Mr. Richardson, officers were instructed not to consider applicants for waivers in good faith and to make every effort to deny eligibility even to apply for a waiver. They also were not allowed to exercise their discretion to grant a waiver even where they did consider an applicant to be eligible.

93.     Consistent with Mr. Richardson's representations, numerous visa applicants have stated that when they attended their visa interviews, officers informed them that waivers are processed in Washington, DC. *See* Ex. D, Gairson Decl.; *infra* Section IV. This is in conflict with the State Department's claims that a visa applicant's eligibility for a waiver is determined by the consular officer at the time of the interview.

94.     As a result of the inconsistent statements, the absence of meaningful guidance, and the absence of an orderly process by which applicants may "demonstrate" their eligibility for a waiver, applicants do not know who is adjudicating their requests for waivers, what information

SECOND AMENDED COMPLAINT - 26

they are considering, and what the standards really are to qualify for a waiver grant. The process continues to be "a sham".

IV.     **The Plaintiffs**

95.     Plaintiffs include:

a.  U.S. citizens and lawful permanent residents who are of Iranian, Libyan, Somali, Syrian, and Yemeni national origin and/or who have Iranian, Libyan, Somali, Syrian, and Yemeni family members who seek to enter the United States to permanently reside with their family members;

b.  Iranian family members of U.S. citizens or lawful permanent residents who seek to enter the United States on family-based immigrant visas;

c.  U.S. citizens and lawful permanent residents who are of Iranian, Libyan, Somali, Syrian, and Yemeni national origin and/or who have Iranian, Libyan, Somali, Syrian, and Yemeni family members who seek to enter the United States on non-immigrant visas;

d.  Iranian family members of U.S. citizens or lawful permanent residents who seek to enter the United States on fiancé or visitor visas;

e.  Iranian nationals who have approved immigrant visas because of their substantial investment in the United States; and

f.  Iranian and Syrian nationals who have approved immigrant visas because of their extraordinary abilities.

96.     Several Plaintiffs have approved visa petitions for their family members. Others have approved investment or extraordinary ability immigrant visas that have since been denied or stalled under the Proclamation. All are suffering a range of ongoing harms including separation from their family and loved ones; loss of jobs, research opportunities, and investments; emotional distress

SECOND AMENDED COMPLAINT - 27

caused by extended separation from loved ones at critical times in their lives including pregnancy and childbirth; and a range of financial losses for visa application fees, travel costs, accommodation costs, medical fees, and other costs directly or indirectly associated with the visa application process.

97.     Each of the Plaintiffs' circumstances fit directly under one or more of the examples offered in the Proclamation of circumstances under which a waiver grant may be appropriate. Many have received boilerplate letters denying them visas and waivers. Others have been informed that their eligibility for a waiver is being considered, but have had their applications stalled and have been awaiting a decision on their visa applications for months. Most have had no opportunity to submit documents or materials demonstrating their eligibility for a waiver.

98.     Plaintiffs all seek clear guidance about the waiver process, an opportunity to apply in an orderly manner with full understanding of the criteria and methods by which waiver determinations are made, and full and timely adjudication of their waiver requests.

### A.  Family members seeking reunification in the United States

*i.     Tannaz Toloubeydokhti, Fathollah Tolou Beydokhti, and Behnaz Malekghaeini*

99.     Plaintiff Tannaz Toloubeydokhti is a U.S. citizen of Iranian origin who resides in San Diego, California.

100.    Ms. Toloubeydokhti is employed as an obstetric-gynecologist and has dedicated her career to improving the lives of American mothers and their babies.

101.    Ms. Toloubeydokhti petitioned for immigrant visas for her parents, Plaintiffs Fathollah Tolou Beydokhti and Behnaz Malekghaeini, both Iranian nationals, on September 1, 2016. Her petitions were approved, and their visa interviews were scheduled for December 21, 2017, at the U.S. Embassy in Yerevan, Armenia.

SECOND AMENDED COMPLAINT - 28

102.   Despite the lack of guidance or information about waiver applications and criteria for consideration, Mr. Tolou Beydokhti and Ms. Malekghaeini put together documents they believed would demonstrate that they meet the criteria for a waiver under the terms of the Proclamation. But when they attempted to present those documents to the consular official, the official refused to review them, stated that they did not qualify for a waiver, and stated that their visas were denied.

103.   Mr. Tolou Beydokhti and Ms. Malekghaeini's cases fit within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

104.   Ms. Toloubeydokhti has suffered significant emotional distress because she has been deprived of the opportunity to have her parents present during her pregnancy and at the birth of her child. Her parents have similarly suffered emotional distress at their separation from their daughter during her time of need.

105.   The family has also suffered and is continuing to suffer significant financial losses. They have paid filing fees and travel costs which they will be unable to recover. Ms. Toloubeydokhti now also has to incur significant childcare expenses in the absence of her parents, who would have helped take care of her child while she is at work.

   ii.   *Afrooz Kharazmi and Afshan Alamshah Zadeh*

106.   Plaintiff Afrooz Kharazmi, a U.S. citizen of Iranian origin residing in Loveland, Ohio, filed an immigrant visa petition with USCIS on June 1, 2004 for her sister, Plaintiff Afshan Alamshah Zadeh, an Iranian national currently residing in Iran.

107.   Ms. Alamshah Zadeh waited patiently for 12 years for her priority date[9] to become current.

---

[9] An applicant's priority date is the date upon which her application was filed. Unless the applicant is a spouse, parent, or minor child of a U.S. citizen, the applicant must wait until his or her priority date becomes "current" before she can apply for adjustment of her status to that of a lawful permanent resident. For siblings, priority dates can take more than a decade to become current.

SECOND AMENDED COMPLAINT - 29

108.   USCIS approved her petition in October 2016. The U.S. Embassy in Abu Dhabi, UAE, scheduled Ms. Alamshah Zadeh's immigrant visa interview for January 7, 2018.

109.   Ms. Alamshah Zadeh attended the interview and was informed during the interview that her immigrant visa was denied pursuant to the Proclamation.

110.   At no point was Ms. Alamshah Zadeh informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

111.   At no point was Ms. Alamshah Zadeh provided an opportunity to apply for a waiver or to submit documents in support of such application.

112.   Accordingly, the consular officer was not made aware of and likely did not consider any factors that would have been relevant to determining whether continuing separation would cause her and her family members "undue hardship." Ms. Alamshah Zadeh has been living in limbo for years while waiting to rejoin her family in the United States, and has not settled down or planned for her future in Iran because she reasonably believed that she would soon be reunited with her two U.S. citizen parents and her U.S. citizen sister.

113.   Ms. Alamshah Zadeh's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

114.   Ms. Kharazmi and Ms. Alamshah Zadeh have endured years of separation from each other. Ms. Alamshah Zadeh's entire family are U.S. citizens residing in the United States; she is the only family member left in Iran and now risks being permanently separated from them.

115.   Ms. Kharazmi and Ms. Alamshah Zadeh have also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which they will be unable to recover.

   *iii.*      *Dr. Najib Adi*

SECOND AMENDED COMPLAINT - 30

116.    Plaintiff Dr. Najib Adi is a U.S. citizen of Syrian origin who owns a highly successful dental practice in Gainesville, Virginia. He employs close to 20 people and provides dental services to well over 4,000 patients.

117.    Since war broke out in Syria in 2011, Dr. Adi has been unable to visit his family back home. His father was deceased in 2014 and he was not able to say goodbye or to attend his funeral. His mother is a 70-year-old widow living in war-torn Damascus. He wishes to bring her home so that she can spend her golden years with him, his wife, and his two children and so they can take care of her as she grows older.

118.    In February 2017, he petitioned for a family-based immigrant visa for his mother. The petition was approved in August 2017, and her interview was scheduled at the U.S. Embassy in Amman, Jordan for December 26, 2017.

119.    Hoping to bring his mother home with him after the interview, Dr. Adi traveled to Jordan and went with his mother to the interview.

120.    At no point during this process was Dr. Adi or his mother informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation. However, on his own initiative and with the assistance of an immigration attorney, he prepared a letter and documentary evidence outlining the reasons his mother should be granted a waiver under the Proclamation, and presented this evidence to the consular official at the interview. The consular official told Dr. Adi and his mother that because of the Proclamation, he is unable to grant her a visa even though everything looked to be in order, but that she would be considered for a waiver grant.

SECOND AMENDED COMPLAINT - 31

121.    For more than a year, Dr. Adi and his mother have been waiting for word on whether she has been granted a waiver. They have received no further information despite multiple queries, including a congressional inquiry, about the status of her case.

122.    Dr. Adi is suffering severe emotional distress at his separation from his mother, and his feeling of helplessness at not being able to take care of her when she needs him. He is worried about her safety in Syria and only wishes to bring her home so they can make up for lost time being apart from each other. Dr. Adi is additionally suffering emotional distress because he feels he is being treated like a second-class citizen and not being allowed to access the full privileges of citizenship due to his religion and national origin.

123.    Dr. Adi has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

   iv.    *Ismail Alghazali*

124.    Plaintiff Mr. Ismail Alghazali is a U.S. citizen of Yemeni origin currently residing in Djibouti. He was compelled to leave his home in the United States in order to be with his Yemeni wife, who has been unable to come to the United States because of the Proclamation.

125.    He petitioned for a family-based immigrant visa for his wife in or around June 2016, and the petition was approved on November 23, 2016. Her interview was scheduled for January 3, 2018 at the U.S. Embassy in Djibouti.

126.    She attended her interview and was informed immediately that her visa was denied and that she would not be considered for a waiver.

127.    At no point was Mr. Alghazali or his wife informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

SECOND AMENDED COMPLAINT - 32

128.   At no point was Mr. Alghazali or his wife provided an opportunity to apply for a waiver or to submit documents in support of such application.

129.   Mr. Alghazali's wife's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

130.   Mr. Alghazali and his wife are currently stuck in Djibouti, where life is difficult and extremely expensive. Mr. Alghazali was forced to leave his job in the United States because his wife, who was pregnant at the time, could not be on her own in Djibouti. They are unable to go to Yemen, which is currently in the throes of a violent civil war the United Nations has described as the worst humanitarian crisis in the world.[10] There is no security or stability; schools and health centers are closed; and there is no safe drinking water, access to food, or electricity in large portions of the country.

131.   Mr. Alghazali and his wife experienced intense difficulty in Djibouti on a number of levels. About a month after her interview, Mr. Alghazali's wife went into labor in the middle of the night. It took Mr. Alghazali a long time to find a taxi or an ambulance to take her to the hospital. When he finally found a taxi that would take them to the hospital, his wife was already in the process of delivering their baby, who was born in the taxi cab with no medical assistance. Since that time, his wife has suffered physical and emotional distress because of this experience. They continued to live in extremely difficult circumstances in Djibouti for months, with no ability to work or to study.

---

[10] *See* Daniel Nikbakht & Sheena McKenzie, *The Yemen war is the world's worst humanitarian crisis, UN says,* CNN (Apr. 3, 2018), https://www.cnn.com/2018/04/03/middleeast/yemen-worlds-worst-humanitarian-crisis-un-intl/index.html; U.S. Dep't of State, *Yemen Travel Advisory* (Feb. 14, 2019), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/yemen-travel-advisory.html.

SECOND AMENDED COMPLAINT - 33

132.   Mr. Alghazali's entire family are U.S. citizens. All reside in the United States, except for his younger sister who accompanied him to Djibouti because he is her legal guardian. She suffers from a speech disability, insomnia, depression, and loss of concentration. He was unable to properly provide for her in Djibouti, and she was unable to access the services she needs.

133.   Eventually, Mr. Alghazali had to return to his job in the United States, and his wife and infant son are now in Yemen, where the situation is extremely dangerous.

v.   *Malik Almathil*

134.   Plaintiff Malik Almathil is a U.S. citizen residing in New York City.

135.   In March 2015, he petitioned for a family-based immigrant visa for his wife, a Yemeni national currently residing in Jordan. The petition was approved shortly thereafter, and his wife attended her visa interview in Djibouti on July 31, 2017. At the interview, she was informed that her visa was approved.

136.   On December 17, 2017, shortly after the Proclamation went into full effect, she received a boilerplate denial of a visa and waiver.

137.   At no point was Mr. Almathil or his wife informed that his family could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

138.   At no point was Mr. Almathil or his wife provided an opportunity to apply for a waiver or to submit documents in support of such application.

139.   Mr. Almathil's wife's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

140.   Mr. Almathil is suffering severe emotional distress at his inability to be with his wife and to bring her home with him to the United States. Because of the situation in Yemen, his wife had to leave the country in 2015 and is unable to return. Mr. Almathil had to give up continuing his

SECOND AMENDED COMPLAINT - 34

college education in order to go be with his wife while they awaited processing of her visa application, and he spent two years with her in Djibouti trying to bring her home. Because of the significant expenses associated with living in Djibouti, he ultimately had to return to the United States to resume earning a living so that he can provide for himself and his wife. His ongoing separation from his wife is the most difficult thing he has ever had to endure.

141.     In addition to the significant costs of living in Djibouti, Mr. Almathil has spent thousands of dollars in filing fees, travel costs, and other expenses related to his wife's visa application, which he will be unable to recover.

   *vi.*     *Khalil Ali Nagi*

142.     Plaintiff Khalil Ali Nagi is a U.S. citizen residing in Schenectady, New York with his four-year-old U.S. citizen daughter.

143.     In December 2015, he petitioned for a family-based immigrant visa for his Yemeni wife. The petition was approved in 2016, and her interview was scheduled in Djibouti for July 2017. The airport in Yemen was closed at that time, however, and she was unable to leave the country to attend her interview, which was rescheduled for October 31, 2017. Mr. Nagi traveled with her to Djibouti, where she attended the interview and was told that her application looked good and that her visa would be approved.

144.     Unable to return to Yemen and without an issued visa to the United States, Mr. Nagi, his wife, and their four-year-old child remained in Djibouti to wait for her visa to be issued. But in March 2018, she was informed that she would not be approved for a visa or a waiver.

145.     Mr. Nagi had to return to the United States along with his four-year-old daughter, forced to leave his wife behind. He is experiencing severe emotional distress because of their separation, and his four-year-old daughter constantly cries for her mother. He feels that he is unable to comfort

SECOND AMENDED COMPLAINT - 35

her and that the distress she is suffering because of her separation from her mother is having lasting negative effects on her. He is desperate to be reunited with his wife so that their family can live together in their home in the United States.

146.    Mr. Nagi has paid thousands of dollars in living expenses, travel costs, filing fees, and other costs related to his wife's visa application, which he will be unable to recover.

   *vii.*    *Hezam Alarqaban*

147.    Plaintiff Hezam Alarqaban is a lawful permanent resident of Yemeni origin residing in Oakland, California.

148.    In March 2012, he petitioned for a family-based immigrant visa for his wife and his eleven children, all of whom are Yemeni nationals. The petition was approved in 2016, and the family had their interview at the U.S. Embassy in Malaysia in March 2016.

149.    As the situation in Yemen deteriorated, the family moved to Djibouti in December 2016. They continued to wait for issuance of their visas, which were finally stamped in their passports in February 2017.

150.    In June 2017, however, their visas were canceled and stamped "revoked without prejudice." They submitted additional documents and in October 2017, their application was once again sent to the U.S. Embassy in Djibouti.

151.    They attended another interview at the Embassy in Djibouti in February 2018 and did not receive any further communication until June 2018, when they were told that their eligibility for a waiver was being reconsidered.

152.    At no point was Mr. Alarqaban or his family informed that his family could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

SECOND AMENDED COMPLAINT - 36

153.    At no point was Mr. Alarqaban or his family provided an opportunity to apply for a waiver or to submit documents in support of such application.

154.    Mr. Alarqaban's family's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

155.    Mr. Alarqaban has suffered and is continuing to suffer severe emotional distress at his separation from his family. He is not able to afford travel to visit his family. During the entire six years that they have been separated from each other, he has only been able to spend a total of two months with his wife and children.

156.    Mr. Alarqaban has incurred enormous expense supporting his family in Djibouti, where cost of living is extremely high. He has also paid thousands of dollars in filing fees, travel costs, medical fees, and other costs associated with the visa application process, which he will be unable to recover.

   *viii.    Abdurraouf Gseaa*

157.    Plaintiff Abdurraouf Gseaa is a U.S. citizen of Libyan origin who resides in Houston, Texas. He petitioned for a family-based immigrant visa petition for his wife, who is a Libyan national, in October 2016.

158.    USCIS approved the petition and scheduled her for an interview in April 2018 at the U.S. Consulate General in Casablanca, Morocco. She was unable to obtain a visa to travel to Morocco, however, and the interview had to be rescheduled.

159.    His wife's interview was then moved to the U.S. Embassy in Tunisia, and rescheduled for July 12, 2018. She attended her interview and was told that her eligibility for a waiver would be considered but that it would take several months to obtain a response.

SECOND AMENDED COMPLAINT - 37

160.   At no point was Mr. Gseaa or his wife informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

161.   At no point was Mr. Gseaa or his wife provided an opportunity to apply for a waiver or to submit documents in support of such application.

162.   Mr. Gseaa's wife's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

163.   Mr. Gseaa's wife was alone in Libya for an extended period of time while she was pregnant, and she recently gave birth to their first child. The situation in Libya is precarious and the country has been ravaged by violence and war. Because of their separation and in order to give himself more flexibility to spend time with her, Mr. Gseaa had to quit a stable and well-paying job and has now become an Uber driver. He travels back and forth to Libya because he cannot bear to leave his wife and newborn child alone. He cannot wait for the time when he can bring them home and they can live together and raise their child in the United States.

164.   Mr. Gseaa has spent thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

ix.   *Sudi Wardere*

165.   Plaintiff Sudi Wardere is a U.S. citizen of Somali origin who resides in Kirkland, Washington. She petitioned for a family-based immigrant visa for her husband in October 2016. Her husband is a Somali national who has resided in South Africa since 2005.

166.   USCIS approved the visa petition on March 31, 2017, and Ms. Wardere's husband attended his interview at a U.S. Consulate General in South Africa on February 5, 2018. The Consulate then interviewed him again on March 22, 2018. Since that time, they have been awaiting a decision on his visa application.

SECOND AMENDED COMPLAINT - 38

167.    At no point was Ms. Wardere or her husband informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

168.    At no point was Ms. Wardere or her husband provided an opportunity to apply for a waiver or to submit documents in support of such application.

169.    Ms. Wardere's husband's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

170.    Ms. Wardere has suffered great hardship because of their separation from each other. On May 26, 2018, she gave birth to their son, alone and without her husband's support. Her husband did not meet his child for over a year because they were unable to afford travel to South Africa while they are maintaining two separate households, and Ms. Wardere cannot leave her job for long periods of time.

171.    Ms. Wardere was compelled to go back to work immediately after having her baby, who is now in daycare. He is frequently sick and she has had to take him to the emergency room on four separate occasions. She had to spend Eid-al-Fitr, one of the most important Muslim holidays, without her husband, and has had enormous difficulty juggling work and being a single parent to their child.

172.    Ms. Wardere's husband is also in a precarious situation. He owns a store in South Africa, which has been closed several times because of riots. Members of the Somali community in South Africa are frequently subjected to xenophobic attacks, and his store was robbed several times.

173.    Ms. Wardere has additionally suffered emotional distress because she believes she is being treated differently on account of her religion and nationality, and is not being allowed to access all the privileges of being a U.S. citizen simply because of her religion and national origin.

SECOND AMENDED COMPLAINT - 39

174.    In addition to the costs of maintaining two households, Ms. Wardere and her husband have also spent thousands of dollars in filing fees and medical fees, which they will be unable to recover.

    *x.*    *Khadija Aden*

175.    Plaintiff Khadija Aden is a lawful permanent resident of Somali origin who resides in Seattle, Washington. In October 2015, she petitioned for a family-based immigrant visa for her son, who is Somali but has never been to Somalia.

176.    Her petition was approved and her son attended his interview at the U.S. Embassy in Addis Ababa, Ethiopia on June 11, 2018. His visa was denied and he received a boilerplate letter stating that he is ineligible for a waiver.

177.    At no point was Ms. Aden or her son informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

178.    At no point was Ms. Aden or her son provided an opportunity to apply for a waiver or to submit documents in support of such application.

179.    Ms. Aden's son's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

180.    In fact, Ms. Aden's son arguably should not even be subject to the ban, as he has never been to Somalia and therefore should not be considered a Somali national. He was born in a refugee camp in Ethiopia after his parents left Somalia as refugees. He has lived his entire life in Ethiopia, where he resided with his father until his father died in 2015.

181.    Ms. Aden has suffered severe emotional distress because of her separation from her son. She is constantly worried about his safety and well-being, and is terrified at the prospect that he would have to go back to Somalia.

SECOND AMENDED COMPLAINT - 40

182.   Ms. Aden has also spent thousands of dollars in attorneys' fees, filing fees, medical costs, and other expenses related to their visa application, which she will be unable to recover.

   B.   Fiancés seeking reunification in the United States

   i.      *Soheil Vazehrad and Atefehossadat Motavaliabyazani*

183.   Plaintiff Soheil Vazehrad is a U.S. citizen of Iranian origin who is employed as a registered dental hygienist and resides in Napa, California.

184.   Mr. Vazehrad filed an application with USCIS for a fiancé visa for Plaintiff Atefehossadat Motavaliabyazani, an Iranian national currently in Iran, in April 2016.

185.   USCIS approved Mr. Vazehrad's petition on May 11, 2016.

186.   Ms. Motavaliabyazani attended her interview at the U.S. Embassy in Yerevan, Armenia, on October 20, 2016, and was told that her case would go through routine administrative processing.

187.   On January 4, 2018, she received a boilerplate email stating:

   Dear Applicant:

   This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

   Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.

Ex. L, Email sent by U.S. Embassy in Yerevan, Armenia, to Atefehossadat Motavaliabyazani (Jan. 4, 2018).

188.   At no point was Ms. Motavaliabyazani informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

SECOND AMENDED COMPLAINT - 41

189.   At no point was Ms. Motavaliabyazani provided an opportunity to apply for a waiver or to submit documents in support of such application.

190.   Ms. Motavaliabyazani's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

191.   Mr. Vazehrad and Ms. Motavaliabyazani are suffering ongoing severe emotional and mental distress because of their indefinite separation from each other.

192.   Mr. Vazehrad is suffering from loss of consortium since he has been deprived and continues to be deprived of the opportunity to be with his fiancée. He is also forced to take significant breaks from work and to incur significant expenses to travel to meet his fiancée outside of the United States.

193.   Mr. Vazehrad and Ms. Motavaliabyazani have also paid filing fees, travel costs, and other costs associated with the visa application process, which they are unable to recover.

        C.   <u>Family members applying for visitor visas</u>

     i.   *Bamshad Azizi, Roghayeh Azizikoutenaei, and Hojjatollah Azizikoutenaei*

194.   Plaintiff Bamshad Azizi is a lawful permanent resident of Iranian origin residing in San Jose, California. He is the co-founder of a cybersecurity startup in the United States.

195.   Mr. Azizi's parents Plaintiffs Roghayeh Azizikoutenaei and Hojjatollah Azizikoutenaei applied for B1/B2[11] tourist visas to come visit him and his sister in the United States. Mrs.

---

[11] B1 and B2 visas are both nonimmigrant visitor visas "for persons who want to enter the United States temporarily for business (visa category B-1), for tourism (visa category B-2), or for a combination of both purposes (B-1/B-2)." U.S. Dep't of State, *Visitor Visa*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Feb. 22, 2019). Examples of activities permitted with a B1 visitor visa include: "Consult[ing] with business associates"; "Attend[ing] a scientific, educational, professional, or business convention or conference"; "Settl[ing] an estate"; and "Negotiat[ing] a contract." *Id.* Examples of activities permitted with a B2 visitor visa include: "Tourism"; "Vacation"; "Visit[ing] with friends or relatives"; "Medical treatment"; "Participation in social events hosted by fraternal, social, or service organizations"; "Participation by amateurs in musical, sports, or similar events

SECOND AMENDED COMPLAINT - 42

Azizikoutenaei was diagnosed with cancer about a year ago and had to undergo two surgeries and a series of intense chemotherapy sessions. Mr. Azizikoutenaei had also had surgery recently. They both were considerably weakened by their illnesses and wanted nothing more than to spend time with their family members as they continue to recover.

196.    Mr. and Mrs. Azizikoutenaei attended their interview at the U.S. Consulate General in Dubai, UAE, on September 12, 2017, twelve days before the signing of the Proclamation, and were told that their visas would be ready in two weeks.

197.    On October 3, 2017, they received an email from the Consulate requesting that they send their passports so that their visas could be stamped. They complied with this request.

198.    Eleven days later, their passports were returned with no visas and with a letter stating that their applications had been placed in administrative processing.

199.    After following up multiple times with the Consulate and receiving only automated responses, Mr. and Mrs. Azizikoutenaei received boilerplate rejection letters on January 10, 2018.

200.    At no point were Mr. and Mrs. Azizikoutenaei informed that they could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

201.    At no point were Mr. and Mrs. Azizikoutenaei provided an opportunity to apply for a waiver or to submit documents in support of such application.

202.    Accordingly, the consular officer was not made aware of the particular reasons they wanted to visit their family in the United States or their recent medical circumstances.

---

or contests, if not being paid for participating"; and "Enrollment in a short recreational course of study, not for credit toward a degree." *Id.*

SECOND AMENDED COMPLAINT - 43

203.    Mr. and Mrs. Azizikoutenaei's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

204.    The entire family has suffered and is continuing to suffer significant emotional distress because of their ongoing separation from each other. Mr. and Mrs. Azizikoutenaei continue to be weakened by their surgeries and medical conditions, and they and Mr. Azizi are distressed at their inability to spend time with each other.

205.    The family has also paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they are unable to recover.

   ii.    *Maral Charkhtab Tabrizi, Zahra Rouzbehani, and Bahram Charkhtab Tabrizi*

206.    Plaintiff Maral Charkhtab Tabrizi is a lawful permanent resident of Iranian origin residing in Arizona who is married to a U.S. citizen and who recently had her first child.

207.    Her parents, Plaintiffs Zahra Rouzbehani and Bahram Charkhtab Tabrizi, who have traveled to the United States many times in the past, applied for tourist visas while she was pregnant to witness the birth of their first grandchild and to provide support to their daughter.

208.    They attended their interviews at the U.S. Consulate General in Dubai, UAE, on October 19, 2017. Ms. Rouzbehani was approved immediately, but Mr. Charkhtab Tabrizi's case was placed in administrative processing. Ms. Rouzbehani elected to wait for her husband's administrative processing to be completed before sending her passport to be stamped with the visa, so that they could travel to the United States together.

209.    Immediately after the Supreme Court allowed the Proclamation to go into effect in December 2017, Ms. Rouzbehani sent her passport to the Consulate in order for her visa to be issued.

SECOND AMENDED COMPLAINT - 44

210.    Shortly thereafter, however, the passport was returned without a visa and both their visas were refused pursuant to the Proclamation.

211.    At no point were Mr. Charkhtab Tabrizi and Ms. Rouzbehani informed that they could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

212.    At no point were Mr. Charkhtab Tabrizi and Ms. Rouzbehani provided an opportunity to apply for a waiver or to submit documents in support of such application.

213.    Accordingly, the consular officer was not made aware of specific circumstances that are highly relevant to a meaningful waiver adjudication. Mr. Charkhtab Tabrizi and Ms. Rouzbehani wanted to be there to support their daughter for several compelling reasons:

214.    First, Ms. Charkhtab Tabrizi's household finances depend heavily on her salary. She is a contractor for Google and had been there for less than 12 months at the time she gave birth to her child. She therefore was not eligible for paid maternity leave under California laws or under the Family Medical Leave Act, and had accordingly planned to return to work as soon as possible. Without her parents, Ms. Charkhtab Tabrizi was unable to return to work as quickly as she had hoped.

215.    Second, Ms. Charkhtab Tabrizi has a connective tissue disorder which has caused her severe pain during her pregnancy and makes her daily activities very difficult. She had hoped that her parents could be there to support her during her recovery.

216.    Instead, she had to remain at home with her baby by herself for two and a half months while recovering from an emergency cesarean section, and during that time was diagnosed with depression. She is currently unable to afford good daycare and has resorted to temporarily relying on her sister-in-law to take care of her child after a period of unpaid leave during which she and her husband depleted their savings. They had also been hoping that her parents could meet her in-

SECOND AMENDED COMPLAINT - 45

laws for the first time when they visited, but her father-in-law has passed away in the intervening time since they applied for the visa. She continues to be in desperate need of emotional and logistical support from her parents.

217.    Ms. Rouzbehani and Mr. Charkhtab Tabrizi's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

218.    The denial of Ms. Rouzbehani's and Mr. Charkhtab Tabrizi's visas is causing Ms. Charkhtab Tabrizi severe financial hardship.

219.    All three family members have also suffered significant emotional distress. Ms. Charkhtab Tabrizi was deprived of the opportunity to have her parents present during her pregnancy, and her parents have been unable to be there to support her in her time of need. Ms. Rouzbehani and Mr. Charkhtab Tabrizi were unable to be there for the birth of their first grandchild, and were unable to ever meet their daughter's father-in-law.

220.    Ms. Charkhtab Tabrizi has also suffered increased physical pain because she has to carry out daily tasks for which she would have been able to rely on her parents' assistance.

221.    Ms. Charkhtab Tabrizi and her parents have paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they will be unable to recover.

    *iii.*    *Maryam Mozafari and Mohammad Mehdi Mozaffary*

222.    Plaintiff Maryam Mozafari is a lawful permanent resident of Iranian origin, currently residing in San Francisco, California. She was pregnant and wanted her parents, her mother and Plaintiff Mr. Mohammad Mehdi Mozaffary, to come visit her and provide her with much-needed support.

SECOND AMENDED COMPLAINT - 46

223.    Her mother and Mr. Mozaffary had both visited the United States in 2014, and had left the country well in advance of the expiration of their visas and their approved duration of stay in the United States.

224.    On December 28, 2016, they applied for tourist visas at the U.S. Consulate General in Dubai, UAE. Her mother's visa was granted immediately. Mr. Mozaffary was asked for his mandatory military service documents. He did not have them with him, as the documents were not mentioned in the list of required documents for the visa application. He was asked to reapply and bring the documents with him to the next interview.

225.    Because of the timing of the first two travel bans, Mr. Mozaffary had to delay his interview, and was not able to get back to the Consulate until July 30, 2017. He was told by the consular officer that his documents appeared to be in order, but that he would be sending Mr. Mozaffary additional forms to fill out. Mr. Mozaffary received the forms in August 2017 and returned them to the Consulate shortly thereafter.

226.    For the next several months, Ms. Mozafari and Mr. Mozaffary sent several emails to the Consulate to inquire about the status of their cases, but received no reply or a system-generated automatic response.

227.    On January 11, 2018, Mr. Mozaffary's visa was denied pursuant to the Proclamation.

228.    At no point was Mr. Mozaffary informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

229.    At no point was Mr. Mozaffary provided an opportunity to apply for a waiver or to submit documents in support of such application.

230.    Mr. Mozaffary suffers from a heart condition which requires that he be accompanied at all times. Because he was unable to obtain a visa, Ms. Mozafari's mother was only able to come visit

SECOND AMENDED COMPLAINT - 47

her in the United States for a brief time, as she felt torn between her daughter and being forced to leave her ailing husband behind.

iv.    *Clyde Jean Tedrick II, Mitra Farnoodian-Tedrick, Farajollah Farnoudian, and Farangis Emami*

231.    Plaintiff Clyde Jean Tedrick II is a U.S. citizen residing in Rockville, Maryland, with Plaintiff Mitra Farnoodian-Tedrick, a lawful permanent resident of Iranian origin. They assisted Ms. Farnoodian-Tedrick's parents, Plaintiffs Farajollah Farnoudian and Farangis Emami, with applying for tourist visas to attend their wedding celebration, which was planned for May 27, 2018.

232.    Mr. Farnoudian and Ms. Emami have visited the United States in the past and have fully complied with the terms of their tourist visas.

233.    Mr. Farnoudian and Ms. Emami attended their visa interview on October 17, 2017 at the U.S. Consulate General in Dubai, UAE.

234.    Mr. Farnoudian's visa application was placed in administrative processing, but Ms. Emami's visa application was approved.

235.    Mr. Farnoudian received an email on January 8, 2018, informing him that his visa had been denied pursuant to the Proclamation.

236.    Ms. Emami's visa, meanwhile, was revoked. She was never notified that her already-approved visa had been revoked pursuant to the Proclamation, and she only found out that that was the case after checking the status of her visa online.

237.    At no point was anyone in the family informed that Mr. Farnoudian and Ms. Emami could seek to "demonstrate" their eligibility for a waiver under the terms of the Proclamation.

238.    At no point were Mr. Farnoudian and Ms. Emami provided an opportunity to apply for such a waiver or to submit documents in support of such application.

SECOND AMENDED COMPLAINT - 48

239.    Mr. Tedrick and Ms. Farnoodian-Tedrick were therefore forced to cancel their planned wedding celebration until such time that her parents would be able to attend.

240.    All family members have suffered emotional distress because of their inability to celebrate Mr. Tedrick and Ms. Farnoodian-Tedrick's wedding together with their closest family members.

241.    The family has also suffered significant financial losses. Mr. Tedrick and Ms. Farnoodian-Tedrick forfeited almost $4,000 in non-refundable deposits because they were compelled to cancel their planned celebration. Mr. Farnoudian and Ms. Emami also paid thousands of dollars in filing fees, travel costs, and other costs associated with the visa application process, which they will be unable to recover.

D.  Business and investment visa applicants

i.    Behnam Babalou

242.    Mr. Behnam Babalou is an Iranian national who invested five hundred thousand dollars ($500,000) in the United States as part of his petition for an employment-based fifth preference (EB-5) investment visa[12] in 2011.

243.    USCIS adjudicated his case and sent him an approval notice four years later, on December 15, 2015. Mr. Babalou then attended his immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on May 24, 2016, after which his case was placed in administrative processing.

244.    On December 22, 2017, six years after his initial investment, he received a boilerplate email denying him a visa and a waiver under the Proclamation.

---

[12] The EB-5 investment visa is designed to give permanent resident status to entrepreneurs (and their spouses and unmarried children under 21) who (1) "[m]ake the necessary investment in a commercial enterprise in the United States" (either $500,000 or $1 million); and (2) "[p]lan to create or preserve 10 permanent full-time jobs for qualified U.S. workers." U.S. Citizenship & Immigration Servs., U.S. Dep't of Homeland Sec., *EB-5 Immigrant Investor Program*, https://www.uscis.gov/eb-5 (last visited Feb. 22, 2019).

SECOND AMENDED COMPLAINT - 49

245.    At no point was Mr. Babalou informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

246.    At no point was Mr. Babalou provided an opportunity to apply for a waiver or to submit documents in support of such application.

247.    His immigration attorneys have since requested that he be considered for a waiver, but he has not received a response.

248.    Mr. Babalou is at risk of losing his $500,000 investment in the United States. Because he remains in Iran, he is unable to fulfill the duties assigned to him as part of running his business, unable to oversee the U.S. citizens he has employed, and therefore unable to effectively grow his business and continue contributing to the U.S. economy.

249.    In addition to the large investment he made into a U.S. business, Mr. Babalou has incurred substantial incidental costs over the last seven years, including $50,000 paid to a regional center for assistance with overseeing his investment and thousands of dollars more in attorneys' fees, filing fees, travel costs, and medical fees. These are costs Mr. Babalou will be unable to recover.

   *ii.    Hoda Mehrabi Mohammad Abadi*

250.    Ms. Hoda Mehrabi Mohammad Abadi is an Iranian national who invested five hundred thousand dollars ($500,000) in the United States as part of her petition, filed on August 5, 2014, for an employment-based fifth preference (EB-5) investment visa.

251.    USCIS adjudicated her case and sent her an approval notice nearly two years later, on June 9, 2016. Ms. Mehrabi Mohammad Abadi attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on February 23, 2017, after which her case was placed in administrative processing.

SECOND AMENDED COMPLAINT - 50

252.   On December 14, 2017, her attorney received the same boilerplate email denying her a visa and a waiver under the Proclamation.

253.   At no point was Ms. Mehrabi Mohammad Abadi informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

254.   At no point was Ms. Mehrabi Mohammad Abadi provided an opportunity to apply for a waiver or to submit documents in support of such application.

255.   Her attorney contacted the Embassy requesting that Ms. Mehrabi Mohammad Abadi's case be considered for a waiver from the Proclamation. The Embassy responded again on December 17, 2017, with the following:

> Dear inquirer,
>
> Unfortunately, your case is not eligible for a waiver under Presidential Proclamation 9645. This refusal under Section 212(f) of the Immigration and Nationality Act applies only to the current visa application. Please be advised that Presidential Proclamation 9645 currently restricts issuance of most visas to nationals of Iran and seven other countries.

Ex. M, Email sent by U.S. Embassy in Yerevan, Armenia, to Hoda Mehrabi Mohammad Abadi (Dec. 17, 2017).

256.   Accordingly, Ms. Mehrabi Mohammad Abadi was unable to submit documents in support of a waiver application and did not receive individualized consideration for a waiver.

257.   Ms. Mehrabi Mohammad Abadi is also at risk of losing a $500,000 investment in the United States. Because she remains in Iran, she is unable to fulfill the duties assigned to her as part of running a business, unable to oversee the U.S. citizens she has employed, and therefore unable to effectively grow her business and continue contributing to the U.S. economy.

258.   In addition to her large investment, Ms. Mehrabi Mohammad Abadi incurred substantial incidental costs, including $50,000 paid to a regional center for assistance with overseeing her

SECOND AMENDED COMPLAINT - 51

investment and thousands of dollars more in attorneys' fees, filing fees, travel costs, and medical fees. These are costs Ms. Mehrabi Mohammad Abadi will never recover.

E. Individuals with extraordinary ability

i. Dr. Mahdi Afshar Arjmand

259.    Plaintiff Dr. Mahdi Afshar Arjmand is an Iranian national who filed for an employment-based first preference visa for aliens with extraordinary ability (EB-1A)[13] immigrant visa on December 27, 2016, and received an approval notice on January 9, 2017.

260.    He attended his immigrant visa interview with his family on July 25, 2017 at the U.S. Embassy in Yerevan, Armenia. The officer informed them that their case looked good, but just needed to go through administrative processing.

261.    On January 12, 2018, the Embassy emailed Dr. Afshar Arjmand the same boilerplate denial letter that Mr. Babalou and Ms. Mehrabi Mohammad Abadi received.

262.    At no point was Dr. Afshar Arjmand informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

263.    At no point was Dr. Afshar Arjmand provided an opportunity to apply for a waiver or to submit documents in support of such application.

264.    In order to approve his visa, USCIS made a required finding that Dr. Afshar Arjmand has "extraordinary ability"—a fact that should render his entry in the national interest of the United States. Dr. Afshar Arjmand had a job offer from the University of California, San Diego, to work

---

[13] To qualify for an EB-1A visa an applicant "must be able to demonstrate extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim." U.S. Citizenship & Immigration Servs., U.S. Dep't of Homeland Sec., *Employment-Based Immigration: First Preference EB-1* (last updated Oct. 29, 2015), https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-first-preference-eb-1.

SECOND AMENDED COMPLAINT - 52

as a researcher and professor. The Embassy refused to consider Dr. Afshar Arjmand for a waiver even though the university sent multiple emails to the Embassy requesting that it issue Dr. Afshar Arjmand's visa because of his prodigious talent and expertise.

265.    Dr. Afshar Arjmand's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

266.    Dr. Afshar Arjmand risks losing a once-in-a-lifetime research and teaching opportunity at the University of California, San Diego, one of the world's leading public research universities.

267.     In addition to this significant lost work and financial opportunity, Dr. Afshar Arjmand has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he will be unable to recover.

    *ii.*    *Dr. Ehsan Heidaryan*

268.    Plaintiff Dr. Ehsan Heidaryan, a world-renowned professor of chemical engineering and an Iranian national, filed a petition for an employment-based first preference visa for aliens with extraordinary ability (EB-1A) on February 7, 2017.

269.    Based on his impressive record of achievements in his field, USCIS approved Dr. Heidaryan's petition on March 3, 2017. He attended his immigrant visa interview at the U.S. Consulate General in Rio de Janeiro, Brazil, on December 23, 2017.

270.    Thereafter, the Consulate emailed Dr. Heidaryan to inform him that since he is an Iranian national, his immigrant visa must be refused because of the Proclamation. Specifically, the Consulate wrote:

> Dear Sir,
>
> Unfortunately your immigrant visa is refused under Presidential Proclamation 9645 and now considered closed. Do not need to fill out the questionnaire we sent by email.

SECOND AMENDED COMPLAINT - 53

1
2
Ex. N, Email sent by U.S. Consulate General in Rio de Janeiro, Brazil, to Dr. Ehsan Heidaryan (Dec. 27, 2017).

3
4
271.   At no point was Dr. Heidaryan informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

5
6
272.   At no point was Dr. Heidaryan provided an opportunity to apply for a waiver or to submit documents in support of such application.

7
8
9
10
273.   In order to approve his visa, USCIS made a required finding that Dr. Heidaryan has "extraordinary ability"—a fact that should render his entry in the national interest of the United States.

11
12
274.   Dr. Heidaryan's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

13
14
15
16
17
275.   Dr. Heidaryan is losing the opportunity to conduct research and to teach in his area of expertise—chemical engineering—in the United States' top tier universities. He is also losing the opportunity to take advantage of the substantial resources U.S. universities have to more effectively further his research and, thus, the opportunity to contribute his expertise to the United States.

18
19
276.   Dr. Heidaryan has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which he is unable to recover.

20
   *iii.    Najmeh Maharlouei*

21
22
23
24
277.   Ms. Najmeh Maharlouei is an Iranian national currently residing in Shiraz, Iran, where she is employed as a health researcher and Associate Professor of Community Medicine at Shiraz University of Medical Sciences. She filed an application with USCIS for an immigrant

25
SECOND AMENDED COMPLAINT - 54

visa under the category of employment-based second preference (EB-2) with a National Interest Waiver[14] on June 20, 2015.

278.    Ms. Maharlouei's case was approved on March 4, 2016, and she attended her immigrant visa interview at the U.S. Embassy in Yerevan, Armenia, on October 6, 2016. She was told at that interview that there were no problems with her case, but that she would have to undergo routine administrative processing.

279.    Ms. Maharlouei received a boilerplate notice denying her visa application pursuant to the Proclamation on December 22, 2017.

280.    At no point was Ms. Maharlouei informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

281.    At no point was Ms. Maharlouei provided an opportunity to apply for a waiver or to submit documents in support of such application.

282.    In order to approve her visa, USCIS made a required finding that Ms. Maharlouei has "extraordinary ability" and granted her a National Interest Waiver, which requires a determination that her entry would be in the national interest of the United States.

283.    Ms. Maharlouei's case also fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

284.    Ms. Maharlouei is losing the opportunity to conduct research in the United States in her field of medical sciences, despite the fact that USCIS already deemed her research to be in the

---

[14] An applicant can acquire permanent residency under the EB-2 category if she is a foreign national who has an advanced degree and exceptional ability in the sciences, art, or business. U.S. Citizenship & Immigration Servs., U.S. Dep't of Homeland Sec., *Employment-Based Immigration: Second Preference EB-2* (last updated Oct. 29, 2015, https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-second-preference-eb-2. This category usually requires that the applicant's employer get a labor certification from the U.S. Department of Labor, but an applicant can receive a National Interest Waiver of that requirement if she shows that her work is in the U.S. national interest.

SECOND AMENDED COMPLAINT - 55

national interest of the United States. Ms. Maharlouei is also losing the opportunity to take advantage of American universities' substantial resources to more effectively further her research and to contribute her substantial expertise to the United States.

285.   In addition, Ms. Maharlouei has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, which she will be unable to recover.

   *iv.   Nastaran Hajiheydari*

286.   Plaintiff Nastaran Hajiheydari is an Iranian national currently residing in Iran where she works in the field of Information Technology Business as an Associate Professor at the University of Tehran. She filed an application with USCIS for an immigrant visa under the category of employment-based second preference (EB-2) with a National Interest Waiver on October 14, 2016.

287.   Her case was approved less than 40 days later in November 2016, and Ms. Hajiheydari and her family attended their immigrant visa interviews at the U.S. Embassy in Yerevan, Armenia, on October 26, 2017. Their cases were placed in routine administrative processing.

288.   On January 16, 2018, Ms. Hajiheydari received a boilerplate email notice denying her and her family's visa applications pursuant to the Proclamation.

289.   At no point was Ms. Hajiheydari informed that she could seek to "demonstrate" her eligibility for a waiver under the terms of the Proclamation.

290.   At no point was Ms. Hajiheydari provided an opportunity to apply for such a waiver or to submit documents in support of such application.

291.   In order to approve her visa, USCIS made a required finding that Ms. Hajiheydari has "extraordinary ability" and granted her a National Interest Waiver, which requires a determination that her entry would be in the national interest of the United States.

SECOND AMENDED COMPLAINT - 56

292.    Ms. Hajiheydari's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver would be appropriate.

293.    Ms. Hajiheydari is losing the opportunity to conduct research in the United States, despite the fact that USCIS already determined that her work is in the national interest of the United States. Ms. Hajiheydari is also losing the opportunity to take advantage of American universities' substantial resources to more effectively further her research and the opportunity to contribute her expertise to the United States.

294.    In addition, Ms. Hajiheydari has also paid thousands of dollars in attorneys' fees, filing fees, travel costs, and medical fees, for herself and three family members, all of which she will be unable to recover.

   *v.*    *Mohamad Hamami*

295.    Plaintiff Mohamad Hamami is a world-class Syrian violinist, composer, and conductor, and is an artist of extraordinary ability in the field of Arabic fusion music. Mr. Hamami is renowned internationally for his groundbreaking and unique cross-cultural fusions of Arabic music with musical genres from around the globe. Mr. Hamami is the conductor and soloist with the SharQ Orchestra—a one-of-a-kind Western-style ensemble of international symphony musicians playing traditional Arabic music. Due to his unparalleled talent and passion for Arabic fusion music, Mr. Hamami has collaborated with top producers, composers, and musicians from around the globe. He submitted a petition for an EB-1 immigrant visa based on his extraordinary ability.

296.    His visa was approved in November 2016, and he had his interview at the U.S. Consulate General in Dubai, UAE, where he has resided for more than a decade.

SECOND AMENDED COMPLAINT - 57

297.    After the ban went into effect, his attorneys attempted to request a waiver for him, but were told that he is ineligible for a waiver because he has insufficient ties to the United States—a factor that is neither a requirement for an EB-1 visa nor a requirement under the waiver factors set forth in the Proclamation.

298.    At no point was Mr. Hamami informed that he could seek to "demonstrate" his eligibility for a waiver under the terms of the Proclamation.

299.    At no point was Mr. Hamami provided an opportunity to apply for a waiver or to submit documents in support of such application.

300.    Mr. Hamami's case fits within one of the examples provided in the Proclamation as a situation in which a grant of a waiver may be appropriate.

301.    Mr. Hamami is losing the opportunity to work with the world's best violinists and orchestras and to contribute his prodigious talent and unique musical abilities to the artistic scene in the United States.

302.    In addition, Mr. Hamami has paid thousands of dollars in attorneys' fees, filing fees, travel costs, and other costs associated with the visa application process, which he will be unable to recover.

## **CLASS ALLEGATIONS**

303.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of themselves and all other persons similarly situated. A class action is proper because the class is so numerous that joinder of all members is impractical, this action involves questions of law and fact common to the Class, Plaintiffs' claims are typical of the claims of the Class, Plaintiffs will fairly and adequately protect the interests of the Class, and Defendants have acted

on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

304.    The Plaintiff Class includes two subclasses: (i) the "Family Member Class" and (ii) the "Visa Applicant Class." *See supra* at 5. The Plaintiffs representing the Family Members Class are Afrooz Kharazmi, Tannaz Toloubeydokhti, Dr. Najib Adi, Ismail Alghazali, Malik Almathil, Khalil Ali Nagi, Hezam Alarqaban, Abdurraouf Gseaa, Sudi Wardere, Khadija Aden, Soheil Vazehrad, Bamshad Azizi, Clyde Jean Tedrick II, Mitra Farnoodian-Tedrick, Maral Charkhtab Tabrizi, and Maryam Mozafari. The Plaintiffs representing the Visa Applicant Class are Afshan Alamshah Zadeh, Fathollah Tolou Beydokhti, Behnaz Malekghaeini, Atefehossadat Motavaliabyazani, Roghayeh Azizikoutenaei, Hojjatollah Azizikoutenaei, Farajollah Farnoudian, Farangis Emami, Zahra Rouzbehani, Bahram Charkhtab Tabrizi, Mohammad Mehdi Mozaffary, Behnam Babalou, Hoda Mehrabi Abadi, Dr. Mahdi Afshar Arjmand, Dr. Ehsan Heidaryan, Najmeh Maharlouei, Nastaran Hajiheydari, and Mohamad Hamami.

305.    The Class meets the requirements of Federal Rule of Civil Procedure 23(a)(1) because it is so numerous that joinder of all members is impracticable. The number of individuals who have been wrongly denied waivers or whose waiver applications are being stalled is not known with precision by Plaintiffs but is easily ascertainable by Defendants. On any given day, thousands of visa applications are adjudicated at embassies and consulates abroad. As such, more individuals will become Class members in the future, as Defendants continue to deny applicants the opportunity to demonstrate their eligibility for waivers under the Proclamation. The members of the Class are ascertainable and identifiable by Defendants.

306.    The Class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2) because all Class members have been or will be subject to Defendants' common policy, pattern,

and practice of failing to institute clear guidance, failing to provide an accessible and meaningful process by which individuals may seek consideration of their request for a waiver, and failing to provide individualized, case-by-case consideration for waivers under the Proclamation to all visa applicants, as required by the terms of the Proclamation. Plaintiffs and the Class share the same legal claims, which include, but are not limited to: whether Defendants' failure to consider all visa applicants for waivers, their failure to issue clear guidance, and their failure to provide an accessible, meaningful process by which individuals can seek to demonstrate their eligibility for a waiver violate the APA and the Due Process Clause of the Fifth Amendment.

307.    Similarly, the Class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the claims of the Class as a whole. Plaintiffs, as with the Class they seek to represent, are all individuals who have been or will be denied the chance to request a waiver under the Proclamation and who have been or will be hindered from demonstrating their eligibility for a waiver because of Defendants' failure to provide clear guidance and an accessible process for submitting applications.

308.    The adequacy requirements of Federal Rule of Civil Procedure 23(a)(4) are also met. Plaintiffs know of no conflict between their interests and those of the Class. Plaintiffs seek the same relief as other members of the Class, namely that the Court order Defendants to: (a) provide clear guidance and an orderly process by which applicants may demonstrate their eligibility for a waiver; (b) evaluate whether applicants previously denied waivers under an unlawful policy should be reconsidered for a waiver grant; (c) act on waivers that have been pending for an unreasonable period of time; and (d) give full consideration for case-by-case waivers to all visa applicants as set forth in the Proclamation.

SECOND AMENDED COMPLAINT - 60

309.     In defending their own rights, the individual Plaintiffs will defend the rights of all Class members fairly and adequately. Plaintiffs are represented by counsel with deep knowledge of immigration law and civil rights law and with extensive experience litigating complex cases and class actions. Counsel have the requisite level of expertise to adequately prosecute this case on behalf of Plaintiffs and the Class.

310.     The Class satisfies Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to the Class. Thus, final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of Administrative Procedure Act)

311.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

312.     The APA prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is conducted "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) and (D).

313.     Defendants have either failed to promulgate guidance or have promulgated guidance that is arbitrary and capricious on its face in that it contradicts the terms of the Proclamation and provides conflicting information to both consular officials and applicants.

314.     Defendants have further failed to follow their own policies and procedures and have put in place a waiver process in which applicants are denied waivers without ever receiving notice or an opportunity to apply, applicants are denied waivers without having had a consular interview since the time the Proclamation went into effect, applicants are denied waivers in a manner that

SECOND AMENDED COMPLAINT - 61

contravenes well-established regulations including 22 C.F.R. §§ 41.121 and 42.81 and the Foreign Affairs Manual, and applicants' visa and waiver applications are indefinitely stalled.

315.   Defendants have also failed to follow their own stated policy by failing to create an orderly process for waiver applications and by failing to consider all visa applicants for a waiver.

316.   In failing to comply with their own procedures and policies, Defendants' actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

317.   Because Defendants' actions violate their own procedures and policies, they should be set aside. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954).

318.   Defendants' violations of these laws have harmed and continue to harm Plaintiffs and proposed Class members by indefinitely denying them access to their families and to economic and professional opportunities.

**SECOND CLAIM FOR RELIEF**
**(Violation of Procedural Due Process under the Fifth Amendment)**

319.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

320.   The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their fundamental rights without due process of law.

321.   Family Member Plaintiffs' fundamental rights include their right to the "integrity of the family unit." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). This includes a cognizable liberty interest in their family members' ability to travel to the United States. *See Bustamante v. Mukasey,* 531 F.3d 1059, 1062 (9th Cir. 2008); *see also Kerry v. Din,* 135 S.Ct. 2128, 2139 (2018) (Kennedy,

SECOND AMENDED COMPLAINT - 62

1   J., concurring); *Cardenas v. United States,* 826 F.3d 1164, 1167 (9th Cir. 2016) (noting that J.

2   Kennedy's concurrence in *Din* is controlling).

3   322.   Congress has granted statutory rights and prescribed procedures applicable to prospective

4   immigrants and non-immigrants. Due process rights attach to those statutory rights, which create

5   cognizable liberty and property interests for both Family Member Plaintiffs and Visa Applicant

6   Plaintiffs. *See Lanza v. Ashcroft,* 389 F.3d 917, 927 (9th Cir. 2004) ("The due process afforded

7   aliens stems from those statutory rights granted by Congress and the principle that '[m]inimum

8   due process rights attach to statutory rights.'") (alteration in original) (quoting *Dia v. Ashcroft*, 353

9   F.3d 228, 239 (3d Cir. 2003). Those interests include reliance interests on the basis of which

10  Plaintiffs have spent significant resources. *See Perry v. Sindermann,* 408 U.S. 593, 601 (1972)

11  (mutually explicit expectations give rise to property interests).

12  323.   The "very essence" of due process is the "protection of the individual against arbitrary

13  action." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 584 (1972). Any deprivation of liberty

14  and property interests must, at the very least, have a rational basis.

15  324.   The waiver process Defendants have implemented is inherently arbitrary and has deprived

16  Plaintiffs of even the most minimal process that attaches to the statutory benefits conferred on

17  them by Congress. By not allowing them or their family members the opportunity to apply or be

18  meaningfully considered for a waiver, Defendants have deprived them of any opportunity to show

19  that they meet the eligibility criteria for visa categories for which they or their family members are

20  eligible by statute. In doing so, Defendants have deprived Plaintiffs of protected liberty and

21  property interests without due process of law.

22  325.   Defendants' actions have therefore violated Plaintiffs' right to procedural due process.

23

24

25  SECOND AMENDED COMPLAINT - 63

326.   Defendants' procedural due process violations have harmed and continue to harm Plaintiffs and proposed Class members by indefinitely denying them access to their families and to economic and research opportunities.

**THIRD CLAIM FOR RELIEF**
**(Violation of Due Process Clause of the Fifth Amendment)**

327.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

328.   The Due Process Clause of the Fifth Amendment of the U.S. Constitution guarantees all individuals equal protection under the law.

329.   In *Trump v. Hawaii,* the Supreme Court relied centrally on the asserted existence of a meaningful waiver process to find that the plaintiffs were unlikely to succeed on the merits of their constitutional claims. *See* 585 U.S. ___, 138 S. Ct. 2392, 2422-23 (2018). In the absence of a meaningful waiver process, Plaintiffs are being denied visas and waivers or are having their applications indefinitely stalled based solely on their national origin or religion, without any rational basis.

330.   The absence of a meaningful waiver process and the blanket denials of waivers to applicants from banned countries, without the opportunity to demonstrate their eligibility for a waiver from the Proclamation, amount to intentional discrimination based on national origin or religion, without any lawful justification.

331.   Defendants' conduct violates the Fifth Amendment's guarantee of equal protection.

332.   Defendants' equal protection violations have harmed and continue to harm Plaintiffs and proposed Class members by indefinitely denying them access to their families and to economic and research opportunities.

SECOND AMENDED COMPLAINT - 64

## FOURTH CLAIM FOR RELIEF
### (Mandamus)

333.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

334.   The APA requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

335.   Defendants have a non-discretionary duty to develop guidance on the waiver process and to receive and fully and fairly adjudicate applicants' requests for waivers under the Proclamation within a reasonable time.

336.   The Proclamation first went fully into effect on December 4, 2017. More than a year has passed and Defendants have nonetheless failed to develop meaningful guidance and a waiver process by which every individual applicant may receive full consideration for a waiver.

337.   Further, many individual Plaintiffs in this action have been awaiting decisions on their visa and waiver applications for several months up to well over a year. In failing to adjudicate their applications, Defendants have failed to act "within a reasonable time" in violation of the APA.

338.   In addition, Plaintiffs whose family members were told at the interview that their visas would be approved or who were issued visas that were later revoked pursuant to the Proclamation are entitled to immediate issuance of visas. This is because the approval of their visas was reversed in contravention to the explicit terms of the Proclamation and agency guidance, which provides that no visas will be revoked. *See Alharbi v. Miller*, No. 1:18-cv-02435 (E.D.N.Y. filed April 25, 2018).

339.   Because there are no other adequate remedies available to Plaintiffs, mandamus is appropriate. *See* 5 U.S.C. § 704.

SECOND AMENDED COMPLAINT - 65

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendants' actions in implementing and enforcing Section 3(c) of the Proclamation have been arbitrary, capricious, and otherwise contrary to law;

2. Declare that Defendants' actions in implementing and enforcing Section 3(c) of the Proclamation have violated Plaintiffs' procedural due process and equal protection rights under the Fifth Amendment;

3. Order Defendants to issue guidance and develop a waiver process that does not violate the APA or the constitutional guarantees of due process and equal protection and that provides meaningful consideration to every individual visa applicant;

4. Order Defendants to evaluate whether individual and Class member applicants previously denied waivers under an unlawful process should be reconsidered for a waiver grant;

5. Order Defendants to act on waivers that have been pending for an unreasonable period of time;

6. Award Plaintiffs costs of suit and reasonable attorney's fees under the Equal Access to Justice Act and any other applicable law; and

7. Grant such other and further relief as this Court deems equitable, just, and proper.

DATED: February 23, 2019
        Washington, DC

SECOND AMENDED COMPLAINT - 66

1    Respectfully Submitted,

2    /s/ Sirine Shebaya                          /s/ Shabnam Lotfi

3    MUSLIM ADVOCATES                            LOTFI LEGAL, LLC
     SIRINE SHEBAYA (*pro hac vice*)             SHABNAM LOTFI (*pro hac vice*)
4    sirine@muslimadvocates.org                  shabnam@lotfilegal.com
     NIMRA AZMI (*pro hac vice*)*                VERONICA SUSTIC (*pro hac vice*)
5    nimra@muslimadvocates.org                   veronica@lotfilegal.com
     JOSEPH SAEI (CA SBN 321341)*
6    yusuf@muslimadvocates.org

7    *Attorneys for Plaintiffs*

8    * *Not admitted to practice in DC; supervised by members of the DC bar*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SECOND AMENDED COMPLAINT - 67

1

2

**CERTIFICATE OF SERVICE**

3

I hereby certify that on February 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document should automatically be served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

4

5

6

*/s/ Sirine Shebaya*
Sirine Shebaya (*pro hac vice*)
Attorney for Plaintiffs

7

8

SIRINE SHEBAYA (*pro hac vice*)
sirine@muslimadvocates.org
Muslim Advocates
P.O. Box 34440
Washington, DC 20043
Telephone: (202) 897-2622
Facsimile: (202) 508-1007

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SECOND AMENDED COMPLAINT - 68