Hon. James Donato
United States District Court, Northern District of California

**Re: Administrative Record in *Emami v. Nielsen,* No. 18-cv-1587-JD, and *Pars Equality v. Pompeo,* No. 18-cv-7817-JD**

Dear Judge Donato:

Defendants hereby respond to Plaintiffs' attempt to compel what they characterize as completion of the administrative record. Plaintiffs raised challenges to the implementation of the Proclamation's waiver provision, claiming violations under the Administrative Procedure Act ("APA"). In its order on the *Emami* motion to dismiss, this Court allowed the APA claim to proceed only on an *Accardi* claim, "the heart" of which is that the State Department has acted unlawfully by disregarding its own procedures in administering the waiver program. *Emami*, Dkt. No. 74, at 13-16. But this is not a normal *Accardi* claim because, here, Plaintiffs have not identified any final agency action that allegedly violated the agency's procedures; instead, the only agency actions potentially at issue – visa denials for the named Plaintiffs – are *not* subject to challenge under the doctrine of consular non-reviewability. Thus, this case does not call for a traditional APA record of a specified agency action. Beyond the individual visa denials, Plaintiffs have identified no final agency action to challenge, so it would be impossible to produce a traditional "record" of such an unidentified action. Plaintiffs allege "that a de facto policy of blanket [waiver] denials has usurped individualized waiver decisions," *id.*, but that "policy" does not and has never existed, so there is no natural way for the government to prepare an administrative record for it.

Defendants thus prepared an administrative record responsive to the issues as framed by this Court and in light of the reality that there is no final agency action being challenged. The record comprises the guidance implementing the waiver process, as well as the actions the State Department has taken on Plaintiffs' specific visa requests, both of which are directly responsive to Plaintiffs' allegation that the State Department has not followed its own guidance in adjudicating their applications and those of other applicants. The record conclusively demonstrates that Plaintiffs' allegations of a "sham" waiver process are totally false. The record shows that Defendants have implemented the Proclamation's waiver provisions by issuing a range of guidance documents, some public and others internal (just as other kinds of guidance regarding visa adjudications have both public and non-public components). The record also shows that consular officers rely on these documents and adjudicate waivers based on them, as opposed to issuing blanket denials of waivers. This record – together with the detailed statistics the State Department has produced to Congress showing action on waiver requests generally – is sufficiently detailed to allow the Court to grant summary judgment in this case. Based on the record, the Court can conclusively reject Plaintiffs' allegations that "the State Department has acted arbitrarily and unlawfully by disregarding" the waiver provisions or has denied waivers on a blanket basis without regard to its own internal procedures. *See Emami*, Dkt. No. 74, at 14.

Although Plaintiffs point to several reasons why they believe that the administrative record is incomplete, those reasons lack merit. First, the record is complete where it includes the guidance relied on by consular officers to render waiver determinations under the Proclamation. The comprehensive scope of the record is reflected in the wide array of guidance that it encompasses, including operational Q&As that are regularly updated to assist consular officers in applying the Proclamation to the specific factual circumstances presented by individual applicants. *See* A.R. 19-24, 38-52, 67-81, 98-113, 130-46. The Q&As, far from being "limited," demonstrate the extensive care taken by the agencies to ensure waiver adjudications are conducted in a manner consistent with the express terms of the Proclamation. A.R. 134, 139-40. Implementation of the waiver directives is shown not only by the operational Q&As, but also in the agency's other internal guidance, including the Foreign Affairs Manual, cables issued to consular posts, training materials, and press guidance. A.R. 3-11, 157-98, 200-84, 286-325, 327-45. Most importantly, these are the materials that address the question this court preserved for resolution: whether consular

1

officials were applying the waiver provisions by utilizing guidance or were instead issuing "blanket denials."

In the face of this guidance, Plaintiffs suggest that a small number of identified documents should have been included in the record. They fail, however, to rebut the presumption of completeness that applies to the record, which State Department officials have devoted considerable time and resources to compile – a task made no less difficult by Plaintiffs' continued failure to articulate a challenged final agency action. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("designation of the . . . Administrative Record . . . is entitled to a presumption of . . . regularity"). Moreover, while Plaintiffs argue that certain documents should be a part of the record strictly because they were at some point "referenced" by other documents in the record, the State Department reasonably provided the documents relied on by consular officials in making waiver determinations, and Plaintiffs fail to address how other documents are relevant to the allegation that the Proclamation waiver process is a sham. For example, 17 STATE 23338, does not relate to the Proclamation, but to an earlier expired travel order. In effect, Plaintiffs make the incorrect assumption that any document cited in the agency's internal guidance must be an element of the Proclamation waiver guidance. While consular officers must and do utilize a broad range of information in adjudicating a visa application, *see, e.g.*, A.R. 157, they are not required – nor would it be feasible – to expressly invoke, for each individual application, the whole universe of materials that relate to visa eligibility and the adjudication process.  Instead, as the administrative record amply shows, consular officers are consistently reminded to exercise their discretion in considering the particular factors of each waiver application before rendering any decision, and are provided with the necessary guidance in implementing the Proclamation. *See e.g.*, A.R. 130-46.

Plaintiffs' vision of the record would be impossible to produce or provide – and it is one reason why a case like this one, which does not challenge any identified final agency action, must be handled in a way suited to the specific allegation that the waiver process is a sham. Plaintiffs state that the record should include "any and all materials relied upon or considered by the Defendant agencies" in developing and promulgating guidance, First Req. for Prod., including work done by "subordinate" agency officials in developing the guidance. *See* Emami Dkt. 90 at 3 n.2. Their *Accardi* claim, however, does not challenge a specific agency action where the basis for that action must be evaluated and a record of the development of that action would be appropriate. Similarly, although Plaintiffs ask for all deliberative materials – however tangential – that would have been produced in formulating the detailed guidance already represented in the record, they fail to provide any reasoned explanation why such documents would be contained in a record addressing their actual claim that the waiver process is not being implemented. Critically, the operative part of their complaint that the Court has allowed to go forward does not substantively challenge any specific element of this guidance. Any deliberative documents related to the formulation of guidance therefore would not properly belong in the record or be relevant to the APA claim in this case.

Further, as this Court explained, "[t]he gravamen of the complaint is that the government *has flouted its own guidelines* and statements about case-by-case determinations of waiver applications in favor of a policy of blanket denials." *Emami*, Dkt. No. 74, at 12:6-8 (emphasis added). The Court's framing of the issues is consistent with the complaints in both cases, which focus on the allegation that the waiver adjudication process is a sham and that Defendants have constricted the ability of consular officers to render discretionary waiver decisions based on the particular factors of each case. *Emami*, Dkt. No. 68, at 17:12-15 (Plaintiffs' "APA claim fundamentally rests on that idea that when an agency holds itself forth as providing a process, it must actually provide that process," and must not "go against its own guidelines"); *Pars*, Dkt. No. 1 ¶ 102 ("These mass waiver denials appear to have been sent without regard to the status of any particular individual's visa application."). To evaluate that actual claim, the Court must look at precisely what the government has provided: the guidance being used by consular officials in adjudicating Proclamation waiver requests.

While Plaintiffs allege that the waiver-related guidance has not been as fulsome as they would have liked, *Emami*, Dkt. No. 75, ¶ 63; *Pars*, Dkt. No. 1 ¶ 69, the fulsomeness of the guidance does not bear on

whether consular officers have "flouted" the government's own "guidelines and statements." Moreover, this is an issue that must be evaluated based on the record provided by the agency. *Thompson v. U.S. Dep't. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based."). Moreover, as Defendants will explain in their response to the complaint, at this point Plaintiffs cannot seriously contend that *no* guidance has been issued, or that consular officials have been directed to issue blanket denials, or that the guidance has been lacking in meaningful content. In short, the central issue of these cases pertains specifically to whether the agencies have been conforming to the standards and procedures that have been delineated in the Proclamation guidance documents. And because the administrative record was compiled to enable the Court to rule on that question, it contains precisely those documents considered by consular officers in rendering waiver adjudications, and need not be supplemented by any materials falling outside the scope of those factual inquiries.

As to Plaintiffs' ancillary claim that the administrative record lacks materials from other agencies, such as the Department of Homeland Security ("DHS"), their claim makes little sense given that the State Department implements the waiver provision where the alien makes a visa application. State Department consular officers are provided guidance through the State Department, not DHS. Indeed, as the record shows, none of the plaintiffs have had their waiver applications adjudicated by DHS. *Emami*, A.R. 347-59; *Pars*, A.R. 347-60. As discussed above, to the extent that this Court has recognized Plaintiffs' complaints as chiefly alleging that the government has failed to render case-by-case determinations of waiver applications, they challenge a process that is squarely assigned to consular officers of the State Department in adjudicating visa applications.

In any case, it bears repeating that the crux of Plaintiffs' claim is that the government has disregarded "its own procedures and rules in administering the waiver program," and that consular officials have issued blanket denials of waiver requests. *See Emami*, Dkt. No. 74, at 14:19-21. Because consular officers are tasked with adjudicating waiver requests as part of visa applications, documents that reflect a consular officer's deliberations are not subject to review under the doctrine of consular nonreviewability, to which the APA is not an exception. As indicated above, consular officers are not responsible for devising the guidance related to waiver adjudications; rather, that guidance, after it has been developed by the State Department, is circulated to consular posts and officers, who simply use it to assist them in adjudicating individuals waivers in accordance with the Proclamation. The record shows this is happening: each of the plaintiffs has had their waiver request processed in accordance with State Department guidance.

Lastly, as to Plaintiffs' contention that Defendants should have provided a privilege log, notwithstanding that these are record-review cases, the Ninth Circuit has never held that privileged materials must be prepared for an administrative record, and the majority rule is that such deliberative materials are not part of the record. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998). In any event, while some unpublished decisions have required that a privilege log accompany an administrative record production, courts in both the Central and Eastern Districts of California have expressly rejected this approach. *See San Luis & Delta-Mendota Water Authority v. Jewell*, No. 15-cv-1290-LJO-GSA, 2016 WL 3543203, at *19 (E.D. Cal. Jun. 23, 2016) (requiring privilege logs in all APA cases "would undermine the presumption of correctness" and "shift the record compilation process too closely toward mechanisms employed in cases subject to regular civil discovery"); *ASSE Int'l, Inc.*, 2018 WL 3326687, at *3. Admittedly, there have been cases in this District where privilege logs were ordered to be produced after the courts in those cases found that documents directly considered by the agency were omitted from the administrative record. *See, e.g., Regents of Univ. of Cal. v. DHS*, Nos. 17-5211-WHA, 17-5235-WHA, 17-5329-WHA, 17-5380-WHA, 2017 WL 4642324, at *7 (N.D. Cal. 2018). However, that is not the case here, where Plaintiffs have failed to sufficiently rebut the presumed completeness of the record that the agencies diligently produced. Further, the nature of this case is not like that in those other cases, where, here, Plaintiffs have failed to identify a specific final agency action to challenge. Consequently, this Court should find that no privilege log is required to reject the claim at issue here – that agency guidance does not exist and the waiver process is a "sham."

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

GISELA A. WESTWATER
Assistant Director, Office of Immigration Litigation
District Court Section

STACEY I. YOUNG
Senior Litigation Counsel, Office of Immigration
Litigation
District Court Section

Dated: June 10, 2019         By:     /s/ David Kim
                                     DAVID KIM
                                     NICOLE GRANT
                                     ANGEL MARTINEZ
                                     Trial Attorneys
                                     Office of Immigration Litigation