UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARANGIS EMAMI, et al., | Case No. 3:18-cv-01587-JD |
| Plaintiffs, | |
| v. | Judge: Hon. James Donato |
| KEVIN K. MCALEENAN, In His Official Capacity As Acting Director of the Department of Homeland Security, [1] et al., | |
| Defendants. | |

## DEFENDANTS' CERTIFICATION OF THE ADMINISTRATIVE RECORD

I, Jenny Cordell, hereby state as follows:

1. I am the Division Chief of the Outreach and Inquiries Division of the Office of Field Operations in the Visa Office in the Bureau of Consular Affairs of the U. S. Department of State.

2. I certify based on my position and information provided to me in the course of my official duties that the attached non-classified, non-privileged documents are the full and complete administrative record. In this case, the administrative record consists of information on the relevant visa applications as of May 9, 2019, and internal guidance relating to visa adjudications under Presidential Proclamation 9645 provided to consular officers responsible for those applications.

---

[1] Under Fed. R. Civ. P. 25(d), Acting Director Kevin K. McAleenan, in his official capacity, is substituted for his predecessor, Kirstjen M. Nielsen.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C., this 20 day of May, 2019.

Jenny Cordell

Division Chief, Outreach and Inquiries Division
Office of Field Operations
Visa Office
Bureau of Consular Affairs
U.S. Department of State

## TABLE OF CONTENTS

I.   Internal Guidance                                                    AR-001
   A. Foreign Affairs Manual                                            AR-002
   B. Q & As                                                            AR-012
        i.  2017
            1.  September 2017                                          AR-013
        ii. 2018
            1.  January 2018                                           AR-032
            2.  March 2018                                             AR-061
            3.  September 2018                                         AR-091
            4.  November 2018                                          AR-123
   C. Cables                                                            AR-156
        i.  2017
            1.  17 State 56801 (with updates)                          AR-157
            2.  17 State 97682                                         AR-163
            3.  17 State 105674                                        AR-172
            4.  17 State 114026                                        AR-174
            5.  17 State 120862                                        AR-183
        ii. 2018
            1.  18 State 33378                                         AR-185
            2.  18 State 65964                                         AR-188
            3.  18 State 110910                                        AR-190
        iii. 2019
            1.  19 State 8106                                          AR-193
   D. Presentations                                                     AR-199
        i.  2017
            1.  October 2017                                           AR-200
            2.  December 2017                                          AR-219
        ii. 2018
            1.  November 2018                                          AR-252
   E. CA Press Guidance                                                 AR-285
        i.   September 24, 2017                                        AR-286
        ii.  September 26, 2017                                        AR-290
        iii. November 2017                                            AR-301
        iv.  December 2017                                            AR-312
        v.   April 2018                                               AR-320
        vi.  June 2018                                                AR-324
   F. Other Documents                                                   AR-326
        i.   General Flowchart                                         AR-327
        ii.  Adjudicator Flowchart                                     AR-328
        iii. Map                                                       AR-338
        iv.  Visa Waiver Program & Executive Order No. 13708
             Information                                               AR-339
        v.   Sample Refusal Letters                                    AR-340
        vi.  Updated Adjudicator's Reference Guide - December 2017     AR-342
II.  Government Records Declaration                                      AR-346

# Internal Guidance

# Foreign Affairs Manual

# 9 FAM 302.14-10  (U) ENHANCING VETTING CAPABILITIES AND PROCESSES FOR DETECTING ATTEMPTED ENTRY INTO THE UNITED STATES BY TERRORISTS OR OTHER PUBLIC-SAFETY THREATS - PP 9645

## 9 FAM 302.14-10(A)  (U) Grounds

*(CT:VISA-589;   05-22-2018)*

**(U)** Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats, (PP 9645) suspends the entry into the United States, as immigrants or nonimmigrants, of certain aliens who are nationals of certain countries.

## 9 FAM 302.14-10(B)  (U) Application

### 9 FAM 302.14-10(B)(1)  (U) Nationalities Subject to Presidential Proclamation 9645

*(CT:VISA-616;   07-03-2018)*

a. **(SBU)** PP 9645's visa restrictions and suspension of entry provisions were tailored to each country with the goals of reducing the security threat the unrestricted entry of nationals of those countries might pose and encouraging improved identity-management and information-sharing practices by the countries' governments.  Below is the list of countries of identified concern in PP 9645; however, this list may change as listed countries overcome deficiencies in their identity-management or information-sharing practices or unlisted countries become deficient.  See 9 FAM 302.14-10(B)(2) and (D) for information on exceptions and waivers.

(1) **(U) Nationals of Iran:** The issuance of visas to nationals of Iran is suspended for the following visa categories:

(a) **(U)** All immigrant visas, including diversity visas

(b) **(SBU)** All NIVs, except diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visas for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visas, as described in 9 FAM 302.14-10(B)(2) below, and except for F, M, and J visas.  Please see 9 FAM 302.14-10(C) for information on LEP requirements for Iranian F, M, and J visa applicants.

DOS-001

(2) **(U) Nationals of Libya:** The issuance of visas to nationals of Libya is suspended for the following visa categories:

    (a) **(U)** All immigrant visas, including diversity visas

    (b) **(U)** All regular and official type B-1, B-2, and B-1/B-2 visas

(3) **(U) Nationals of North Korea:** The issuance of visas to nationals of North Korea is suspended for the following visa categories:

    (a) **(U)** All immigrant visas, including diversity visas

    (b) **(U)** All NIVs, except diplomatic (A-1 or A-2) or diplomatic-type visas (of any classification), NATO-1-6 visas, C-2 visas for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visas as described in 9 FAM 302.14-10(B)(2) below.

(4) **(U) Nationals of Syria:** The issuance of visas to nationals of Syria is suspended for the following visa categories:

    (a) **(U)** All immigrant visas, including diversity visas

    (b) **(U)** All NIVs, except diplomatic (A-1 or A-2) or diplomatic-type visas (of any classification), NATO-1-6 visas, C-2 visas for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visas as described in 9 FAM 302.14-10(B)(2) below.

(5) **(U) Nationals of Venezuela:** The issuance of visas to nationals of Venezuela is suspended for the following visa categories:

    (a) **(SBU)** B-1, B-2, and B-1/B-2 visas, including regular type, official-type, and diplomatic-type visas, for designated officials of the Ministry of the Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations; and their immediate family members.         LEP

(6) **(U) Nationals of Yemen:** The issuance of visas to nationals of Yemen is suspended for the following visa categories:

    (a) **(U)** All immigrant visas, including diversity visas

    (b) **(U)** All regular and official-type B-1, B-2, and B-1/B-2 visas

(7) **(U) Nationals of Somalia:** The issuance of visas to nationals of Somalia is subject to the following guidance:

DOS-002

(a) **(U)** All immigrant visas, including diversity visa issuance is suspended

(b) **(SBU)** All NIVs except diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visas for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visas, as described in 9 FAM 302.14-10(B)(2) below, are subject to LEP   Please see 9 FAM 302.14-10(C) for information on LEP for Somali NIV applicants.

b. **(U) Effective Dates:**

(1) **(U) Somalia, Syria, Libya, Iran, and Yemen.**  PP 9645's suspension of entry provisions for nationals of Somalia, Syria, Libya, Iran, and Yemen were effective on September 24, 2017.  Note that the effective date controls for the exceptions and waiver below even though the suspension for these countries was not fully implemented until December 8, 2017.

(2) **(U) Venezuela and North Korea.**  PP 9645's suspension of entry provisions for nationals of Venezuela and North Korea were effective on October 18, 2017.

## 9 FAM 302.14-10(B)(2)  (U) Exceptions to Presidential Proclamation 9645

*(CT:VISA-589;   05-22-2018)*

a. **(U)** PP 9645's suspension of entry does not apply to the following:

(1) **(U)** Any national who was in the United States on the applicable effective date described in 9 FAM 302.14-10(B)(1), paragraph b, regardless of immigration status;

(2) **(U)** Any national who had a valid visa on the applicable effective date described in 9 FAM 302.14-10(B)(1), paragraph b, for that national;

(3) **(U)** Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 such that he or she is or was entitled to a visa or other valid travel document under section 6(d) of PP 9645;

(4) **(U)** Any lawful permanent resident (LPR) of the United States;

(5) **(U)** Any national who is admitted to or paroled into the United States on or after the applicable effective date of PP 9645 for that national as described in 9 FAM 302.14-10(B)(1), paragraph b;

(6) **(U)** Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance

DOS-003

parole document – valid on the applicable effective date described in 9 FAM 302.14-10(B)(1), paragraph b, for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;

(7) **(U)** Any dual national of a country designated under PP 9645 when traveling on a passport issued by a non-designated country;

(8) **(SBU)** Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas as described in 9 FAM 302.14-10(B)(1)(a)(5); or

(9) **(U)** Any national who has been granted asylum; any refugee who has already been admitted to the United States or who has been approved for resettlement in the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

b. **(SBU) Annotations:** When issuing an NIV or IV, including DV, to an individual excepted from the PP 9645 visa restrictions per paragraph a above, you must annotate the visa to read, "Exception under Proclamation." You must also enter a clear case note stating the specific reason why the applicant qualifies for an exception.

# 9 FAM 302.14-10(C)  (SBU)                    LEP
LEP

*(CT:VISA-707;   11-09-2018)*

**(SBU)**                                                        LEP

(1) **(SBU)**                                              LEP
(2) **(SBU)**                                    LEP and
(3) **(SBU)**                                          LEP

DOS-004

# 9 FAM 302.14-10(D)  (U) Waiver for Immigrants and Nonimmigrants

*(CT:VISA-707;  11-09-2018)*

a. **(SBU)** PP 9645 permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the visa case meets all of the following three conditions:

(1) **(U)** Denying entry would cause undue hardship to the applicant;

(2) **(U)** His or her entry would not pose a threat to the national security or public safety of the United States; and

(3) **(U)** His or her entry would be in the U.S. national interest.

**(SBU) NOTE:** You must determine whether the applicant may qualify for a waiver. *All applicants who are subject to PP 9645 must be refused using refusal code "EO17" on the day of interview. For more information on refusal procedures see 9 FAM 302.14-10(E).*                            LEP

b. **(SBU)** To establish that visa denial under PP 9645 would cause undue hardship, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

c. **(SBU)** An applicant may meet the national interest condition if a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

d. **(SBU)** Consular officers may not categorically grant waivers.  PP 9645 includes the following examples where waivers may be appropriate on a case-by-case basis:

(1) **(U)** The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of PP 9645 for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity. See 9 FAM 302.14-10(B)(1), paragraph b above for the effective date;

(2) **(U)** The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of PP 9645 for the applicant for work, study, or other lawful activity.  See 9 FAM 302.14-10(B)(1), paragraph b above for the effective date;

(3) **(U)** The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

DOS-005

(4) **(U)** The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

(5) **(U)** The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

(6) **(U)** The applicant has been employed by, or on behalf of, the U.S. Government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. Government;

(7) **(U)** The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C. 288 et seq., traveling for purposes of conducting meetings or business with the United States Government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

(8) **(U)** The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

(9) **(U)** The applicant is traveling as a U.S. Government-sponsored exchange visitor; or

(10) **(U)** The applicant is traveling to the United States at the request of a U.S. Government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

e. **(SBU)**                                                                                                    LEP



f. **(SBU)** If the applicant does not fit under one of the waiver examples in 9 FAM 302.14-10(D), paragraph d, but the interviewing consular officer and consular manager believe that the applicant meets the undue hardship and national interest requirements for the waiver for other reasons, the consular officer should email countries-of-concern-inquiries@state.gov and include the facts they believe meet the undue hardship and national interest requirements. If the Visa Office concurs that a waiver

DOS-006

may be justified, then post should follow the instructions in 9 FAM 302.14-10(E)(2) below to determine if the national security/public safety requirement can be met.

g. **(SBU)  Issuance Pursuant to Waiver:** If the applicant qualifies for a waiver, you may issue the visa with the concurrence of a Visa Unit chief (IV or NIV) or the Consular Section chief.

   (1) **(SBU)** You must indicate in the NIV or IVO system that the EO17 refusal is waived.

   (2) **(SBU)** You must annotate the visa to read, "Presidential Proclamation Waived."

   (3) **(SBU)** Case notes must reflect the basis for the waiver; the undue hardship that would be caused by denying entry during the suspension; the national interest; the reasons the applicant does not pose a threat to U.S. national security or public safety; and the position title of the manager concurring with the waiver.

# 9 FAM 302.14-10(E)  (SBU) Refusals

## 9 FAM 302.14-10(E)(1)  (SBU) Refusals for Applicants not Eligible for a Waiver or an Exception

*(CT:VISA-589;   05-22-2018)*

**(SBU)** NIV, IV, and DV applicants who are otherwise eligible for the visa, but who do not qualify for an exception from PP 9645's suspension of entry provisions and who do not qualify for a waiver should be refused with the code "EO17," which indicates a refusal under INA 212(f).  Post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code into NIV, or IVO – here "EO17".  The consular officer should provide the applicant a denial letter noting the applicant will not be granted a waiver of PP 9645.  See paragraphs (3) and (4) for refusal letter text.

## 9 FAM 302.14-10(E)(2)  (SBU) LEP

*(CT:VISA-670;   08-30-2018)*

a. **(SBU)** When LEP to determine whether the applicant's entry would pose a threat to national security or public safety of the United States, before granting a waiver, the consular officer should refuse the case by entering EO17 and provide the applicant a denial letter noting the applicant's eligibility for a waiver of PP 9645 is being reviewed. See 9 FAM 302.14-10(E)(3) and (E)(4) for refusal letter text. LEP

DOS-007

(1) **(SBU)** LEP

(2) **(SBU)** LEP

(3) **(SBU)** LEP

(4) **(SBU)** LEP

(5) **(SBU)** LEP

b. **(SBU)** If, after proper procedures, the applicant subsequently qualifies for a waiver, the officer must waive the EO17 refusal before issuing the visa.                                                          LEP

LEP

# 9 FAM 302.14-10(E)(3)  (U) Refusal Letter for NIV Applicants

*(CT:VISA-589;   05-22-2018)*

(U) You must use the language below to inform NIV applicants who are refused under section 212(f) of the INA based on PP 9645, checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645.  Today's decision cannot be appealed.
>
> ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.  However, you may reapply for a visa at any time.  If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer.  If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.
>
> ☐ The consular officer is reviewing your eligibility for a waiver under the Proclamation.  To approve a waiver, the consular officer must determine that denying your entry would cause you undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f).  You will be contacted with a final determination on your visa application as soon as practicable.

DOS-008

### 9 FAM 302.14-10(E)(4)  (U) Refusal Letter for IV Applicants, Including DV Applicants

*(CT:VISA-589;  05-22-2018)*

**(U)** Consular officers must use the language below to inform IV and DV applicants who are refused under section 212(f) of the INA based on PP 9645, checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645.  Today's decision cannot be appealed.
>
> ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.
>
> ☐ The consular officer is reviewing your eligibility for a waiver.  To approve your waiver, the consular officer must determine that denying your entry would cause you undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f).  You will be contacted with a final determination on your application as soon as practicable.

## 9 FAM 302.14-10(F)  (SBU) CLASS Entries

### 9 FAM 302.14-10(F)(1)  (SBU) Refusals

*(CT:VISA-589;  05-22-2018)*

**(SBU)** If an applicant is ineligible under PP 9645 you must refuse the applicant under the refusal code EO17.  For more information on refusals codes see 9 FAM 303.3-4(A).

### 9 FAM 302.14-10(F)(2)  (SBU) Quasi-Refusals for Venezuelans

*(CT:VISA-589;  05-22-2018)*

**(SBU)** Venezuelan individuals with suspected ineligibility under PP 9645 are identified in CLASS under the refusal code EO17.   For more information on quasi-refusal codes see 9 FAM 303.3-4(B).

DOS-009

Q & As

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Operational Q&As on 17 STATE**

### Contents

Basics.................................................................................................................................1
SCOPE..............................................................................................................................3
EXCEPTIONS...................................................................................................................5
WAIVERS .........................................................................................................................7
Waivers: Definitions........................................................................................................8
Waivers: Other Issues ....................................................................................................10
NIV ..................................................................................................................................12
IMMIGRANT VISAS .....................................................................................................13
DV....................................................................................................................................13
INA 221(g) Cases ...........................................................................................................
133 ...................................................................................................................................14
Non-Visa Travel Documents; Parole..............................................................................14
Current and Prior Visa Holders ......................................................................................16

Visa Refusals ................................................................................................................ 155
Other Issues .....................................................................................................................
177

## Basics

**Q: What is the status of Executive Order 13780, 82 Fed. Reg. 13209 (March 6, 2017)?**
A: The temporary travel suspension imposed by E.O. 13780 has expired. The Presidential
Proclamation: Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into
the United States by Terrorists or other Public-Safety Threats (P.P.) imposes visa restrictions in
phases, beginning as of 3:30 p.m., eastern daylight time (EDT) on September 24, 2017.

**Q: What is the status of the Presidential Proclamation (P.P.) issued on September 24, 2017
titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into
the United States by Terrorists or other Public Safety Threats?"**
A: The P.P. effectively takes the place of E.O. 13780, with respect to visa restrictions. The P.P.
will be implemented in two phases. It is effective immediately for certain nationals of five
countries that were also named in E.O. 13780 (i.e., Iran, Libya, Syria, Yemen, and Somalia) if

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

the nationals *lack* a bona fide relationship to a close family member or entity in the United States. It will be effective as of 12:01 a.m. EDT on Monday, October 18, 2017 for all affected nationals of these countries regardless of whether they have such a relationship, and for certain nationals of Chad, North Korea, and Venezuela.

**Q: How do we implement the P.P. during the different phases?**

**A: Phase 1**: The restrictions established in Section 2 of the P.P. are effective at 3:30 p.m. EDT on Sunday, September 24, 2017 until 12:01 a.m. EDT on Tuesday, October 18, 2017 for the following categories of foreign nationals:

 a) **Nationals of Iran, Libya, Syria, Yemen, and Somalia.** These nationals were generally subject to the 90-day travel suspension in E.O. 13780, although some fit within the enumerated exceptions or qualified for a waiver under the terms of the E.O. These nationals in some or all visa categories will be subject to suspension of visa issuance under the P.P., subject to a modified list of exceptions and an amended waiver approval process. Pursuant to the terms of the P.P., during Phase 1, consular officers are to apply the visa restrictions consistent with the Supreme Court's order of June 26, 2017 and the U.S. District Court in Hawaii's order of July 13, 2017, which exempted from the suspension of entry applicants who had a credible claim of a bona fide relationship with a close family member or entity in the United States. If the national does not qualify for this exception, the consular officer must apply the visa restrictions, exceptions and waivers as outlined in the ALDAC immediately.

 b) **Nationals of Sudan.** These nationals were subject to the travel suspension in E.O. 13780, but are not subject to visa restrictions under the P.P. As of 3:30 p.m. EDT on Sunday, September 24, 2017, Sudanese nationals are no longer subject to travel suspension under the E.O and are not subject to visa restrictions under the P.P. Consular officers should process visa applications from Sudanese nationals in accordance with standard procedures.

**Phase 2**: Beginning 12:01 a.m. EDT on Tuesday, October 18, 2017:

 a) **Nationals of Chad, North Korea, and Venezuela**: Nationals of Chad, North Korea, and Venezuela are subject to the visa restrictions, exceptions and waivers as outlined in the ALDAC and discussed in more detail in this operational guidance.

 b) **Nationals of Iran, Libya, Syria, Yemen, and Somalia**: Nationals of Iran, Libya, Syria, Yemen, and Somalia who were exempt from application of E.O. 13780 and from application of the P.P. during Phase 1 because they had a credible claim of a bona fide relationship with a close family member or entity in the United States are now subject to

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

the operational guidance in the ALDAC, discussed in more detail in this operational guidance, as are nationals of these countries who were subject to Phase 1.

**Q: How does this P.P. affect adjudication standards for visas?**
A: Nothing in the P.P. or implementing guidance changes current legal and policy guidance for eligibility for any visa category. In every case involving a national of one of the eight countries named in the P.P., the consular officer should first determine whether the applicant is otherwise eligible under the INA, without regard to the P.P. If you find an applicant ineligible, the appropriate refusal code should be entered into CLASS, NIV or IVO. Any fraud reviews or other concerns about eligibility must be resolved prior to reviewing availability of an exception or waiver under the P.P.

## SCOPE

**Q: What visa restrictions does the P.P. impose?**
A: After determining that an applicant is otherwise eligible for the visa under the Immigration and Nationality Act, you should then implement the restrictions listed in the P.P. for nationals of the relevant country, reproduced immediately below, subject to applicable exceptions and waivers.

a) Nationals of Chad – The issuance of visas to nationals of Chad is suspended for the following visa categories:
- All immigrant and diversity visas
- All regular and official-type B-1, B-2, and B-1/B-2 visas

b) Nationals of Iran – The issuance of visas to nationals of Iran is suspended for the following visa categories:
- All immigrant and diversity visas
- All NIVs, except for F, M and J visas, and those specified in paragraph 19(h).                                                                      LEP

c) Nationals of Libya – The issuance of visas to nationals of Libya is suspended for the following visa categories:

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-3-
AR-015

- All immigrant and diversity visas
- All regular and official-type B-1, B-2, and B-1/B-2 visas

d) Nationals of North Korea – The issuance of visas to nationals of North Korea is suspended for the following visa categories: • All immigrant and diversity visas
- All NIVs, except as specified in paragraph 19(h) of ALDAC

e) Nationals of Syria – The issuance of visas to nationals of Syria is suspended for the following visa categories:
- All immigrant and diversity visas
- All NIVs, except as specified in paragraph 19(h) of ALDAC

f) Nationals of Venezuela – The issuance of visas to nationals of Venezuela is suspended for the following visa categories:
- B-1, B-2 and B-1/B-2 visas, including diplomatic-type visas, for officials of the Ministry of the Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations and their immediate family members.  This is the only limitation on the exceptions provided in paragraph 19(h) of ALDAC.  Guidance regarding additional measures as mentioned in the P.P. will be sent septel.

g) Nationals of Yemen – The issuance of visas to nationals of Yemen is suspended for the following visa categories:
- All immigrant and diversity visas
- All regular and official-type B-1, B-2, and B-1/B-2 visas

h) Nationals of Somalia – The issuance of visas to nationals of Somalia is subject to the following guidance:
- All immigrant and diversity visa issuance is suspended
- All NIVs, except those specified in paragraph 19(h).                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q: Are the travel suspensions under this P.P. temporary?**
**A:** There is no end date for the visa restrictions in the P.P. However, the P.P. requires a review every 180 days.

**Q: Should consular officers revoke visas based on the P.P.?**
A: No. Previously issued visas should not be revoked based on the P.P. Posts should continue to follow existing revocation guidance.

**Q: In what situations may a consular officer approve a visa for an individual from one of the affected countries while the visa restrictions are in effect?**
A: Applicants will be reviewed on a case-by-case basis, with consular officers taking into account the scope of the exception provisions in the P.P., and the applicant's qualification for a waiver, as reflected in this guidance. Consular officers may issue a visa to nationals covered by the P.P. only if cases where the applicant:

    a) Is found otherwise eligible for the visa requested, following completion of all
       applicable screening requirements; and

    b) either

        i) Falls into an exception category; or
        ii) Qualifies for a waiver.

## EXCEPTIONS

**Q: What are the exceptions for NIV, IV, and DV applicants?**
    a) Any national who was in the United States on applicable effective date of the P.P. for that national, regardless of immigration status;
    b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;
    c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who is entitled to a visa or other valid travel document under section 6(d) of the P.P.;
    d) Any lawful permanent resident (LPR) of the United States;
    e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;
    f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;
    g) Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

AR-017

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

h) Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

j) **Phase 1 Only:** Until 12:01 a.m. EDT on October 18, 2017, any national from Iran, Libya, Syria, Yemen, and Somalia who has a credible claim of a bona fide relationship with a close family member or entity in the United States. This exception does not apply to nationals from any of the eight countries named in P.P. during Phase 2 which will be implemented at 12:01 a.m. EDT on October 18.

**Q: What is the difference between an exception from the P.P. and a waiver under the P.P.?**
A: The P.P.'s visa restrictions, which include the suspension of issuance of certain types of visas to certain nationals, do not apply to individuals who fall into exception categories discussed in the preceding paragraph. These exceptions are explicit under the terms of this P.P. In addition, during Phase 1 only, applicants who have a credible claim of a bona fide relationship with a close family member or entity in the United States as defined in the Supreme Court's decision of June 26, 2017 and the U.S. District Court in Hawaii's order of July 13, 2017 are also excepted. In contrast, if an applicant does not fall within an exception and would be subject to a visa restriction in the P.P., the P.P. permits waivers for applicants who qualify.

**Q: Do consular officers need a consular manager's approval, or Washington approval, to determine an exception applies?**
A: No. A consular officer may make the determination that an application is qualified for an exception from the P.P. Consular managers at post should determine the workflow that best suits post's specific circumstances after the implementation of the P.P.

**Q: How should a consular officer document an exception?**
A: When issuing an IV or an NIV to an individual who falls into one of the exception categories, the visa should be annotated to state, "Exception under Proclamation." Interviewing officers must also enter a clear case note stating the specific reason why the applicant is excepted from the P.P.'s visa restrictions.

**Q: The guidance refers to "consular officers." How does this affect other consular adjudicators?**
A: "Consular officers" refers to individuals duly authorized to adjudicate visa applications.

**Q: If an applicant has family members traveling with them, does each applicant need to meet the exception criteria in the P.P.?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

A: Yes. An applicant can only benefit from an exception if he or she individually meets the conditions of the exceptions. If family members are traveling together and do not all benefit from an exception, consular officers should consider that factor in in evaluating applicants' waiver qualification.

**Q: What should we tell the public about exceptions?** A:
Public talking points can be found on CA Web.


# WAIVERS

**Q:  What are the waiver criteria for NIV, IV, and DV applicants?**
A: Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

> **Criterion #1)**  Denying entry during the suspension period would cause undue hardship to the applicant –To establish that visa denial under the P.P. will cause **undue hardship**, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

> **Criterion #2)**  His or her entry would be in the national interest – The requirement for issuance to be in the **national interest** may be met if a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

> **Criterion #3)**  His or her entry would not pose a threat to national security or public safety of the United States.  Additional information on satisfying this test will be sent septel.

**Q: Who can grant a waiver?**
A: The P.P. permits consular officers, with the concurrence of the visa chief (NIV or IV) or consular section chief, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:
> a.) denying entry would cause undue hardship to the applicant;
> b.) his or her entry would not pose a threat to national security or public safety; and
> c.) his or her entry would be in the national interest.

The P.P. also authorizes Customs and Border Protection (CBP) to grant waivers, but provides that any waiver issued by a consular officer is effective both for the issuance of a visa and for

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-7-
**AR-019**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

any subsequent entry on that visa.  CBP has confirmed that it intends to honor waivers approved by consular officer during the adjudication of the visa application.

P.P. Section 3(c) identifies several examples of circumstances in which a waiver may be appropriate, subject to a case-by-case determination that the three requirements above have been met, if the applicant is found otherwise eligible for the visa requested following completion of all applicable screening requirements.

## Waivers:  Definitions

**Q: One of the requirements for all waivers under P.P. section 3(c) is that barring travel would cause "undue hardship."  What constitutes "undue hardship"?  What are some examples?**

To establish that visa denial under the P.P. will cause undue hardship, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

**Q:  Another requirement for a waiver under P.P. section 3(c) is that entry would be in the national interest"?  What constitutes national interest?  What are some examples?** A:  An applicant may meet the national interest condition if a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

**Q: What are some examples of applicants who may be eligible for waivers?**
A: Consular officers may not categorically grant case-by-case-waivers.  The P.P. includes the following examples where case-by-case waivers may be appropriate:

 a) The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;
 b) The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;
 c) The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

d)  The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

e)  The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f)  The applicant has been employed by, or on behalf of, the U.S. Government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. Government;

g)  The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the United States Government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)  The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i)  The applicant is traveling as a U.S. Government-sponsored exchange visitor; or

j)  The applicant is traveling to the United States at the request of a U.S. Government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

**Q: What does "would not pose a threat to national security or public safety" mean?**  A: Additional instructions will be sent septel.

**Q: For purposes of waivers under P.P. Section 3(c)(iv)(B), what are "previously established significant contacts with the United States"?**
A: "Previously established significant contacts" are contacts established prior to issuance of the P.P., generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current, opportunity.

**Q: For purposes of waivers under P.P. Section 3(c)(iv)(C), what are significant business or professional obligations"? What are some examples?**
A: "Significant obligations," in this context, refer to events or activities in the United States that must occur on or before specified dates, and the applicant's failure to attend by the required date could result in substantial harm to existing or potential commercial relationships. Qualifying commercial relationships generally would be expected to currently generate income, have significant potential to do so in the future, or affect a large number of people. Examples could include: business meetings or trade shows that promote investment in the United States or by the United States in the host country; presenting at a large conference by an applicant who is an expert in the relevant field; a contractual requirement to provide service or installation by an

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**AR-021**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

applicant with specialized knowledge: Locally Employed Staff traveling to the U.S. for training required for their positions: or starring in a cultural performance in the United States.

**Q: The P.P. describes a waiver category for infants, young children, and individuals needing urgent medical care, also references waivers for others whose entry is "otherwise justified by the special circumstances of the case." What constitutes "special circumstances" under PP Section 3(c)(iv)(E)? What age are "young children"?**
A: In this context, "special circumstances" will be case-specific, but may include attendance at the funeral of an immediate family member or other humanitarian reasons for travel. Waivers based on special circumstances other than the examples set forth in Section 3(c)(iv)(E) require a consular chief approval and submission of an AO to VO/L/A. With VO's concurrence, the consular officer may approve a waiver based on special circumstances.

"Young" children generally include those beyond infancy but not beyond primary or elementary school age. In general, this would match our interview/fingerprint requirements, meaning younger than 14.

**Q: What kind of documentation is needed for a waiver under Section 3(c)(iv)(F) to prove that someone employed by, or on behalf of, the United States government has "provided faithful and valuable service to the United States Government?"**
A: For Locally Engaged Staff SIV applicants, this requirement has been satisfied by the COM committee's recommendation.

**Q: How should consular officers document an approved waiver on the visa?**
A: Please annotate the visa. "Presidential Proclamation Waived."

**Waivers: Other Issues**
**Q: How should consular officers document the national interest in case notes?**
A:                                                                                          LEP

**Q: How should consular officers document undue hardship in case notes?**
A:                                                                                          LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q: How should consular officers document that an applicant "would not pose a threat to national security or public safety"?**
A: Additional instructions for meeting this condition will be sent septel.

**Q: How should consular officers document waiver decisions in case notes?**
A: Consular officers must reflect the category of waiver for which the applicant is eligible by noting:

> 1) the category of waiver for which the applicant is eligible (i.e., citing the text from operational ALDAC);
> 2) the undue hardship caused by denying entry during the suspension (or that there is sufficient basis in the category);
> 3) the national interest; and
> 4) the position title of the manager concurring with the waiver (not the actual name of the officer). Sole consular officers do not need concurrence from their supervisor for waivers or exceptions, but should consult with their VO/F post liaison officer for with questions.

LEP



LEP

**Q: How long will it take to issue a waiver?**
A: The granting of a waiver under the P.P is a decision that is made by the consular officer and the manager as part of the adjudication. However, it will not likely be approvable at the time of the interview.

**Q: If an applicant is not eligible for a waiver, how does the consular officer process the case?**
A: NIV, DV, and IV applicants who do not have an exception from the P.P.'s suspension of entry provision and who do not qualify for a waiver should be refused with the code "EO17" which indicates a refusal under INA 212(f).

**Q: How should consular officers document support from the Chief of Mission or Assistant Secretary concerning a case in the national interest?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-11-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

A: Please make a case note in the system noting the COM or A/S support.

**Q: Should post add the name of the manager that approved the waiver?**
A: No. The title of the manager is sufficient. The name should not be noted in the case notes.

**Q: Given that a visa referral or priority appointment request documents the national interest in issuing and/or expediting a case, do referrals or priority appointment requests affect the application of the P.P.?**
A: The visa referral or priority appointment request could impact the national interest determination for the waiver, particularly for cases sent to CA for consideration. Each determination is still made on a case-by-case basis, and a referral or priority appointment request is not one of the waiver categories listed in the P.P. If the case doesn't clearly fit into one of the waiver categories, please follow the instructions in the operational ALDAC to submit the case to countries-of-concern-inquiries@state.gov.

**Q: In a single-officer section, or for cases adjudicated by the Consular Section Chief in a small section, may the Consular Section Chief self-certify eligibility for a waiver?** A: The consular section chief in a sole officer must receive concurrence from the Consular Country Coordinator if part of a multi-post mission or from VO via an email to countries-ofconcern-inquiries@state.gov.

**Q: What should we tell the public about waivers?** A:
Public talking points can be found on CA Web.

## NIV

**Q: May I issue diplomatic visas for government officials who are nationals of the countries identified in the P.P.?**
A: For each application, you must review the categories of visa applicants covered by the restrictions applicable to nationals of the relevant country. If the applicant is covered by the relevant restrictions, you should consider whether the applicant falls within an exception category or warrants a waiver. Note that, with limited exceptions for Venezuela, diplomatic type visas of any classification have exceptions, and in all cases A-1, A-2, C-2 visa for travel to the United Nations, G-1, G-2, G-3, G-4, or NATO-1 through NATO-6 visas have exceptions.

**Q: Who are considered officials of government agencies for processing visa restrictions on Venezuelan nationals of this P.P.?**
A: An applicant employed on behalf of the national/central government in a position that is comparable to a U.S. federal position would be considered a "government official." Local or provincial employees generally would not be considered "government officials."

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

National/central government employees in a position that would be considered a local/state position in the United States (e.g., teachers, firefighters, police officers) would also not be considered "government officials." In addition, national/central government employees of an organization engaged in commercial or competitive activities (e.g., bank, mining, transportation) would not be considered "government officials." (Please see 9 FAM 402.3-5(E) for additional clarification and exceptions).

The affected agencies are the Ministry of Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations and their immediate family members.

**Q: Are derivatives of government officials treated the same as the officials?**
A: In regard to the restrictions for government officials of Venezuela, eligible derivatives are treated the same as the principal applicant, for purposes of the P.P., and the restrictions placed on government officials and their immediate family members applying for B-1, B-2, or B-1/B-2 visas from Venezuela, also apply to their immediate family members.

## IMMIGRANT VISAS

**Q: May posts transfer to another post IV cases for applicants who are nationals of the eight countries named in the P.P.?**
A: Yes, posts may transfer IV cases to another post for affected applicants using the standard criteria to assess any transfer requests.

**Q: Will NVC still schedule IV cases in all categories?**
A: The National Visa Center (NVC) will continue to schedule IV appointments for all categories and all nationalities.

**Q: Do waivers or exceptions apply for IV cases?**
A: Yes. If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality, and if so, whether an exception or a waiver applies. IV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17. Consular officers may send an AO request to VO/L/A in these cases but are not required to submit one.

## DV

**Q: Will the Kentucky Consular Center (KCC) still schedule DV cases for affected nationals?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
AR-025

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

A: The only DV 2017 numbers that may be used are those already allocated to posts; however the KCC will schedule DV appointments for nationals of identified countries for DV 2018 cases. DV year 2017 ends September 30, 2017, and DV Year 2018 begins October 1, 2017.

**Q: Do waivers or exceptions apply for DV cases?**
A: Although on a case-by-case basis DV cases could fit within an exception or qualify for a waiver and should be evaluated to determine whether they fit within an exception or qualify for a waiver, based on the Department's experience with the DV program, we anticipate that very few DV applicants are likely to be exempt from the P.P.'s suspension or qualify for a waiver. DV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17. Consular officers may send AO requests to VO/L/A in these cases but are not required to do so.

## INA 221(g) Cases

**Q: How do we handle cases denied under INA 221(g), when the issue requiring the denial is resolved after the implementation date?  If we receive the information needed to complete the case to issuance under normal circumstances (e.g.,                          LEP submission of passport, etc.), do we then reassess the case to determine if it meets one of the exception or waiver categories in order to complete processing? Do we do nothing and leave the case in 221g status?  Do we refuse EO17?**
A: If an applicant who was previously refused under INA 221(g) subsequently overcomes the refusal and is determined otherwise eligible, the consular officer must then consider whether the applicant is subject to the P.P., whether any exceptions apply, and whether the applicant is qualifies for a waiver.  In short, process the case in accordance with the instructions in the operational ALDAC on the P.P.  If the applicant is otherwise eligible and subject to the P.P., then you should refuse the case using refusal code EO17.

## Non-Visa Travel Documents; Parole

**Q: Would an individual identified as being a foreign national admitted or paroled into the United States on or after the applicable effective date, or a foreign national who has a document other than a visa, valid on the applicable effective date or after be automatically exempt if they apply for a visa?  In other words, if the individual is exempt based on parole, advance parole or other status that permits him or her to travel to the United States and seek entry or admission, and then applies for a visa, is s/he exempt from the P.P. for the visa as well?**
A: Yes, individuals who fit within any exception category of the P.P. are not subject to the P.P. for all purposes.  This is an exception category.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q: Is an applicant from one of the eight countries and was approved for humanitarian parole exempt from the P.P.?**
A: Any national who is paroled into the United States on or after the applicable effective date is exempt from the visa restrictions.  Please process these requests following current 9 FAM guidance.

**Q: Does the P.P. apply to V92 cases?**
A: The P.P. does not affect V92 applicants, follow-to-join asylees, and post should adjudicate these cases per standard guidance.

**Q: Does the P.P. apply to V93 cases?**
A: The new P.P. does not affect V93, follow-to-join refugees, and they continue to be subject to Section 6 of E.O. 13780, which remains in effect, subject to the Supreme Court exceptions.  Post must continue processing and adjudicating V93 cases to determine their qualifications as normal and then determine if one of the court-ordered exceptions apply.  We believe that based on their follow-to-join status, most V93 applicants will qualify for an exception based on their relationship with the petitioner in the United States.  If posts have any questions about a specific case, please reach out to your VO/F liaison.  VO will send guidance when Section 6 of E.O. 13780 no longer applies to V93 cases.

**Q: Does the P.P. affect applicants granted refugee, asylee, permanent resident, or other status in a non-restricted country, carrying a travel document, refugee document, or other legal resident document from a non-restricted country, identifying them as a national of one of the eight restricted countries?  In other words, if the applicant does not hold a passport from one of the restricted countries and instead carries some type of travel documentation from a non-restricted country that identifies him or her as a national of one of the restricted countries, does the P.P. apply?**
A: Yes, unless the individual holds a passport from an unrestricted country.  A national of one of the eight restricted counties who has a travel document (other than a passport) from a nonrestricted country remains subject to the P.P.

Case-by-case waivers may not be granted categorically to nationals of the eight countries who are subject to visa restrictions pursuant to the P.P. but may be appropriate in individual circumstances.  One of the individual circumstances listed in the P.P. is Canadian permanent residents who apply for visas at a U.S. consular section in Canada.  Consular officers should verify the applicant's Canadian permanent residency status.  Consular officers must determinate that the applicant does not pose a threat to U.S. national security or public safety in accordance with additional guidance that will be available via septel.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
**AR-027**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## Current and Prior Visa Holders

**Q: How should posts deal with cases for nationals of countries subject to the P.P. whose visas were physically cancelled or revoked earlier this year based on E.O. 13769?** A: Certain posts have already been asked to facilitate travel documents for this small group of travelers. The P.P. states that these individuals are entitled to a travel document. Please contact your VO/F post liaison officer for instructions if you are contacted by any individual requesting a travel document under Section 5(d) of the P.P.

**Q: How does the P.P. apply to visas issued between January 27, 2017 and June 29, 2017?** A: The P.P. does not apply to an individual who has a valid visa on the applicable effective date. Unrevoked visas issued in the timeframe between January 27 and June 29 would generally be valid (unless the holder received, and already traveled on, a single entry visa), and therefore the bearer would be exempt from the P.P. on that basis.

**Q: If an applicant from one of the eight affected countries held a valid visa when E.O. 13769 was issued, but it expired before the applicable effective date under this P.P., is the applicant exempt from the P.P.?** A: The E.O. does not apply to individuals who had a valid visa on either January 27, 2017 at 5:00 p.m. EST or the applicable effective date; this P.P. also does not apply to nationals who are inside of the United States on the applicable effective date.

## Visa Refusals

**Q: What refusal procedures should post follow?** A: If the applicant is ineligible on some other ground unrelated to the P.P., post should refuse the application on that basis. Visa applicants should only be refused under INA section 212(f) (although you will use refusal code "EO17" in CLASS) if the visa applicant is otherwise eligible, subject to the restrictions in the P.P., and does not benefit from one of the exceptions to the P.P. You must inform the visa applicant orally and in writing that his or her visa application is refused pursuant to the P.P. and cite to INA 212(f) as the basis.

If you refuse an applicant under the P.P., you must inform the applicant that waivers are available, and whether you will have determined the applicant qualifies for the waiver or whether you are considering the applicant for a waiver. Whether the applicant qualifies for a waiver may in many cases not be resolved on the same day as the in-person interview. In such cases, post should refuse the applicant using CLASS code EO17. If you determine at a later date that the applicant indeed qualifies for a waiver, you may reopen the case and waive the refusal.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

It is important that any refusal letter provided by post explicitly addresses the applicant's qualification for a waiver. It is recommended that you retain a copy of the refusal letter provided to the applicant and scan it into the case.

**Q: What CLASS entries should post make?**
A: Post should enter the refusal code "EO17" into CLASS for applicants to whom the restrictions of the P.P. apply and who are not excepted from the P.P. As coordinated with DHS, this code represents a refusal under section 212(f) under the P.P. You should NOT use the refusal code 221(g) after you have determined that the applicant is subject to the P.P.: at that point the only appropriate refusal code will be EO17.

**Q: What should be included in the text of refusal letters?**
A: The following text should be used for NIV, IV, and DV refusals.

Visa Refusals under Presidential Proclamation – No Waiver

Consular officers must use the language below to inform NIV applicants who are refused under Sections 212(f)) of the INA based on the P.P. and whom you have determined do not qualify for the waiver:

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation [INSERT NUMBER WHEN RELEASED]. You do not qualify for a waiver at this time, as you have not demonstrated to the consular officer's satisfaction that denying your entry would cause undue hardship, that your entry would not pose a threat to national security or public safety, and/or that your entry would be in the national interest of the United States.

> Today's decision cannot be appealed.

> Additional language for NIV applicants only: However, you may reapply at any time. If you decide to reapply, you must submit a new application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original application, or to demonstrate that your circumstances have changed since that application.

Visa Refusals under Presidential Proclamation – Determining Qualification for a Waiver

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Consular officers must use the language below to inform an applicant that his or her visa was refused under INA section 212(f) based on the P.P. and that you are still considering his or her eligibility for a waiver:

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation [INSERT NUMBER WHEN RELEASED]. The consular officer is reviewing your eligibility for a waiver. To approve your waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f).

**Q: What refusal code should be used for applicant refused under P.P.?**
**A:** Applicants who do not qualify for a visa under P.P. during Phase 1 or Phase 2 and do not meet an exception should be refused under "EO17" not INA 221(g) while Post is determining whether the applicant qualifies for a waiver.

**Q: How do I proceed with a case for an applicant refused under EO17 if he qualifies for a waiver?**
A: After confirming the applicant qualifies for a waiver then Post may overcome/waive the EO17 inadmissibility and annotate the visa foil "Waiver of Presidential Proclamation Approved" and issue. This inadmissibility does not need to be CLOK deleted.

## Other Issues

**Q: The proclamation mentions Iraqi nationals. How to we process Iraqi visa applicants?**
A: Pursuant to the P.P., Iraqi nationals seeking to enter the United States are not subject to entry restrictions or limitations.                                                                LEP

LEP

**Q: What information may post include on its website concerning the P.P.?**
A: Posts may include translations of information posted on travel.state.gov but should not add any additional content that has not been cleared by CA.

**Q: Where can I find public talking points concerning the P.P.?**  A:
Public talking points can be found on CA Web.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q: In what kind of cases does an applicant receive protection under the Convention Against Torture and is therefore exempt from the P.P.?**
A: This factor would not be part of the visa application process and is more intended for DHS consideration of the P.P.

**Q: Are any additional steps necessary when requesting an ARIS waiver for an individual affected by P.P.?**
A: The order of consideration does not change in cases which the applicant requires an ARIS waiver. Once a consular officer has determined the applicant is eligible for the visa but for the ground of ineligibility for which the ARIS waiver is required, consular officers should make a determination as to whether an applicant is exempt from the suspension under the terms of the P.P., or whether the applicant qualifies for a waiver. If the applicant has an exception from P.P. or qualifies for a waiver, then clearly document the applicant's exception or waiver in the comments when requesting an ARIS waiver for an individual from one of the eight affected nations. CBP/ARO will adjudicate the waiver request normally once they see that a consular officer has made the determination that the applicant is not subject to the suspension and denoted that on the ARIS waiver request.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**January 23, 2018**

**Operational Q&As on P.P. 9645 in light of the U.S. Supreme Court orders of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 STATE 97682**

**Contents**

BASICS .................................................................................................................. 2

SCOPE .................................................................................................................. 3

EXCEPTIONS **(NEW/REVISED CONTENT)** ........................................................ 4

WAIVERS **(NEW/REVISED CONTENT)** ............................................................. 7

Waivers: Definitions **(NEW/REVISED CONTENT)** ............................................ 9

Waivers: Undue Hardship **(NEW/REVISED CONTENT)** ................................... 12

Waivers: Other Issues **(NEW/REVISED CONTENT)** ........................................ 17

NIV ..................................................................................................................... 21

IMMIGRANT VISAS ........................................................................................... 21

DV ...................................................................................................................... 22

INA 221(g) Cases **(NEW/REVISED CONTENT)** ............................................... 22

Non-Visa Travel Documents: Parole ................................................................. 23

Current and Prior Visa Holders **(NEW/REVISED CONTENT)** ......................... 25

Visa Refusals ..................................................................................................... 25

Other Issues **(NEW/REVISED CONTENT)** ...................................................... 28

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## BASICS

**Q1:  Following the lifting by the U.S. Supreme Court of the injunctions issued by U.S. District Courts in Hawaii and Maryland against P.P. 9645, does anything change for the adjudication of IVs, DVs, and NIVs?**

**A:**  Yes. P.P. 9645 calls for a suspension of the issuance of visas for categories of nationals of eight countries, with the precise visa restrictions varying by country and visa classification.  With the Supreme Court's orders lifting the lower courts' injunctions, the visa restrictions contained in the P.P. can now be applied to the relevant categories of nationals of all eight countries identified in the P.P., subject only to the exceptions and waivers provided for in the P.P.  Specifically, as a result of the Supreme Court's orders of December 4, 2017, the U.S. government may now fully apply the P.P.'s visa restrictions to individuals from Chad, Iran, Libya, Somalia, Syria, and Yemen.  There is no longer an exemption for nationals of those countries with "a credible claim of a bona fide relationship with a person or entity in the United States." Nationals of North Korea and Venezuela, who were not affected by the lower courts' injunctions, continue to be subject to the visa restrictions in the P.P.  There is also no exemption for nationals of these countries with a bona fide relationship.

**Q2:  What countries are affected by the Supreme Court's lifting of the injunctions of P.P. 9645?**

**A:**  Chad, Iran, Libya, Syria, Yemen, and Somalia.  Nationals of these countries are now fully subject to the visa restrictions in the P.P.  The previous exemption for nationals of these countries with "a credible claim of a bona fide relationship with a person or entity in the United States" is no longer applicable.

**Q3:  Does anything change for visa applicants who are nationals of North Korea and/or Venezuela?**

**A:**  No.  Nationals of North Korea and Venezuela were not affected by the lower courts' injunctions, so the Supreme Court's orders lifting the injunctions do not affect them.  Nationals of North Korea  and Venezuela continue to be subject to the visa restrictions in the P.P.

**Q4:  How does this P.P. affect adjudication standards for visas?**

**A:**  Nothing in the P.P. or guidance implementing the P.P. changes the legal standards or implementing guidance for adjudicating an applicant's eligibility for any visa category.  In every case involving a national of one of the eight countries named in the P.P., the consular officer should first determine whether the applicant is otherwise eligible under the INA, without regard  to the P.P.  If you find an applicant ineligible (including under INA section 214(b)), post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code into NIV or IVO.                                                                                    **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

## SCOPE

**Q1:  What visa restrictions does the P.P. impose now that the preliminary injunctions have been lifted?**
**A:**  All the country-specific visa restrictions listed at paragraph 7 of 17 STATE 97682 are in effect.  After determining that an applicant is otherwise eligible for the visa under the INA, you should then determine whether the applicant falls within the scope of the country-specific visa restrictions of the P.P., subject to applicable exceptions and waivers.    Exceptions to the P.P. are  found in paragraph 19 of 17 STATE 97682 and examples of circumstances in which a case-by-  case waiver may be appropriate are found in paragraph 24 of 17 STATE 97682.

**Q2:  Are the travel suspensions under this P.P. temporary?**
**A:**  There is no end date for the visa restrictions in the P.P.; however, the P.P. requires a review every 180 days.

**Q3:  Should consular officers revoke visas based on the P.P.?**
**A:**  No.  Previously issued visas should not be revoked based on the P.P.  Posts should continue to follow existing revocation guidance.

**Q4:  In what situations may a consular officer approve a visa for an individual from one of the affected countries while the visa restrictions are in effect?**
**A:**  Applicants who are subject to the restrictions under the P.P. must be reviewed on a case-by-case basis. Consular officers may issue a visa to nationals covered by the P.P. only in cases where the applicant:

 a) Is found otherwise eligible for the visa classification requested under the INA without regard to the  P.P., following completion of all applicable screening requirements; and

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

b) either
      i) Is excepted from the Proclamation; or
      ii) Qualifies for a waiver in accordance with the guidance on waivers below.

## EXCEPTIONS

**NEW Question (Q1): I understand that any national who had a valid visa on the applicable effective date of the P.P. qualifies for an exception under 19(b) of 17 STATE 97682. What about applicants who were issued visas after the applicable effective date and were either admitted or paroled into the United States? How should posts process their applications under the P.P.?**
A: Paragraph 19 of 17 STATE 97682 lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national." If you can confirm that an applicant was admitted or paroled into the United States after the P.P. went into effect, then the applicant is excepted from the P.P. Issuance of a visa after the effective date without proof of subsequent admission to the United States will not trigger this exception.

LEP

**Q3: How should consular officers annotate visas for applicants that are covered by an exception or qualify for a waiver?**
A: "Exception under Proclamation" or "Presidential Proclamation Waived."

Consular officers should annotate the visa "Exception under Proclamation" in all cases where the applicant is covered by the restrictions in the P.P. but meets an exception listed in paragraph 19 of 17 STATE 97682.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-4-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Consular officers should annotate the visa "Presidential Proclamation Waived" in all cases where the applicant is covered by the restrictions in the P.P., does not qualify for an exception listed in paragraph 19 of 17 STATE 97682, but meets the waiver criteria listed in paragraphs 21-29 of 17 STATE 97682.

Interviewing officers must also enter clear case notes stating the specific reason why the applicant is excepted or waived from the P.P.'s visa restrictions.

**Q4:  For those who are dual nationals of a country not subject to the P.P. and who are applying for a visa with a travel document from a non-designated country, how should the visa be annotated?**
**A:**  A dual national of a country designated under P.P. 9645 and of a country not designated under the P.P. who is traveling on a passport issued by a non-designated country, is excepted from the P.P.  If the applicant is otherwise eligible for a visa, the visa should be annotated "Exception under Proclamation" as the applicant meets the exception listed in paragraph 19 of 17 STATE 97682.

**Q5:  What are the exceptions for NIV, IV, and DV applicants?**
**A:** The exceptions are listed in paragraph 19 of 17 STATE 97682.  The following are excepted:

a)  Any national who was in the United States on applicable effective date in Section 7 of the P.P. for that national, regardless of immigration status;
b)  Any national who had a valid visa on the applicable effective date of the P.P. for that national;
c)  Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who qualifies for a visa or other valid travel document under section 6(d) of the P.P.;
d)  Any lawful permanent resident (LPR) of the United States;
e)  Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;
f)  Any national who has a document other than a visa – such as a transportation letter, an  appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;
g)  Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;
h)  Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a  diplomatic-type B-1, B-2, or B1/B2 visas; or

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

**Q6: What are the applicable effective dates for applicants seeking to qualify for an exception under paragraph 19(a) & (b) of 17 STATE 97682?**
**A:** Applicable effective dates are the dates that P.P.9645 affected nationals of the eight countries identified in the P.P. (i.e. applicable effective date for nationals of Somalia, Syria, Libya, Iran, and Yemen is September 24; applicable effective date for nationals of Chad, Venezuela, and North Korea is October 18).

Individuals covered by P.P. 9645 who possess a valid visa or valid travel document generally will be permitted to travel to the United States, irrespective of when the visa was issued. Paragraph 19(e) of 17 STATE 97682 lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national." **LEP**

**Q7: What is the difference between an exception from the P.P. and a waiver under the P.P.?**
**A:** The P.P.'s visa restrictions do not apply to individuals who fall into one or more of the exception categories listed in paragraph 19 of 17 STATE 97682. In contrast, if an applicant would be subject to a country-specific restriction in the P.P. and does not fall within an exception, the P.P. permits waivers of the P.P.'s restrictions for applicants who qualify under the waiver criteria.

**Q8: Do consular officers need a consular manager's approval, or Washington approval, to determine an exception applies?**
**A:** No. A consular officer may make the determination that an applicant meets the qualifications for an exception from the P.P. Consular managers at post should determine the workflow that best suits post's specific circumstances.

**Q9: How should a consular officer document an exception?**
**A:** When issuing an IV or an NIV to an individual who falls into one of the exception categories, the visa should be annotated to state, "Exception under Proclamation." Interviewing officers must also enter a clear case note stating the specific reason why the applicant is excepted from the P.P.'s visa restrictions.

**Q10: The guidance refers to "consular officers." How does this affect other consular adjudicators?**
**A:** "Consular officers" refers to individuals duly authorized to adjudicate visa applications.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q11:  If an applicant has family members traveling with them, does each applicant need to meet the exception criteria in the P.P.?**
**A:**  A derivative family member may only benefit from an exception if he or she individually meets the conditions of an exception in the P.P. If family members are traveling together and do not all benefit from an exception, consular officers should consider that factor in evaluating the applicants' waiver qualifications.

**Q12:  What should we tell the public about exceptions?**
**A:**  Public talking points can be found on CA Web.

## WAIVERS

**Q1:  The guidance in paragraph 25 of 17 STATE 97682, instructed officers to submit some waiver-related questions to VO/L/A for an Advisory Opinion while paragraph 28 instructed officers to submit other waiver-related questions to countries-of-concern-inquiries@state.gov.  How does this process work?**
**A:**  If the applicant does not fit under one of the undue hardship and national interest waiver examples in paragraph 24 of 17 STATE 97682, but the interviewing consular officer and consular manager believe that the applicant meets the undue hardship and national interest requirements for the waiver for other reasons, the consular officer should email the "countries-of-concern" mailbox and include the facts they believe meet the undue hardship and national interest requirements.  If the Visa Office concurs that a waiver may be justified, then post should determine if the national security/public safety requirement is met per 17 STATE 56801 and LEP ▮▮▮▮▮▮▮.

**REVISED Q2: What are the waiver criteria for NIV, IV, and DV applicants?**
**A:**  Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

> **Criterion #1)**  Denying entry during the suspension period would cause undue hardship to the applicant –To establish that visa denial under the P.P. will cause **undue hardship**, the applicant must demonstrate to the consular officer's satisfaction that (1) an unusual  situation exists that compels immediate travel by the applicant **and** (2) delaying visa  issuance and the associated travel plans until after visa restrictions imposed with respect  to nationals of that country are lifted would defeat the purpose of travel.

> **Criterion #2)**  His or her entry would be in the national interest – The requirement for issuance to be in the **national interest** may be met *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.  For the purpose of implementing the P.P., a U.S. person or entity includes a U.S. citizen, a lawful permanent resident, an alien who is lawfully present in the United States, and a corporation, partnership, or other organization

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

active and operating within the United States.

**Criterion #3)**  His or her entry would not pose a threat to national security or public safety of the United States.  Additional information on satisfying this test was made available in 17 STATE 56801.

LEP

**Q3:  Who can grant a waiver?**
**A:**  The P.P. permits consular officers, with the concurrence of the visa chief (NIV or IV) or consular section chief, and following required administrative processing, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:
    a) denying entry would cause undue hardship to the applicant;
    b) his or her entry would be in the national interest; and
    c) his or her entry would not pose a threat to national security or public safety.

The P.P. also authorizes Customs and Border Protection (CBP) to grant waivers, but provides that any waiver issued by a consular officer is effective both for the issuance of a visa and for any subsequent entry on that visa.  CBP has confirmed that it intends to honor waivers approved  by consular officers during the adjudication of the visa application.

P.P. Section 3(c) identifies several examples of circumstances in which a waiver may be appropriate, subject to a case-by-case determination that the three requirements above have been met, if the applicant is found otherwise eligible for the visa requested following completion of all  applicable screening requirements.

**Q4:  Does the consular officer have to consider a waiver for every applicant who is subject to the restrictions of the P.P., otherwise eligible for a visa and to which an exception does not apply?**

**A:** Yes, each applicant who meets the conditions described in the question posed above must be considered for a waiver, based on the purpose of travel and any other information provided by the applicant.  However, if the applicant fails to meet any one of the three waiver criteria outlined in PP 9645, the officer may proceed to refuse the case under refusal code EO17.  Consular officers should  check the appropriate box on the visa denial letter given to applicants subject to the P.P., indicating either that a waiver will not be granted or that waiver eligibility is being reviewed.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## Waivers:  Definitions

**REVISED Q1:  How should consular officers apply the phrase "close family member" in paragraph 24(d) of 17 STATE 97682 with respect to waivers under the P.P.?**
**A:**  The term "child, spouse, or parent" should generally be understood to be consistent with the definition of "immediate relative" at INA 201(b) & 9 FAM 502.2-2(B).  Although the INA definition only  includes child, spouse, or parent of a U.S. citizen, P.P.9645 also includes these relationships with  LPRs and aliens lawfully admitted into the United States on a valid nonimmigrant visa.  The term "child" generally refers to an unmarried person under 21 years of age.

If a consular officer believes that an applicant may be eligible for a waiver under paragraph 24(d) of 17 STATE 97682 because the applicant seeks to enter the United States to visit or reside with a close family member, but the close family member is not a child, spouse, or parent, then the consular officer may submit an email to countries-of-concern-inquiries@state.gov.  LEP

**Q2:  One of the requirements for all waivers under P.P. section 3(c) is that barring travel would cause "undue hardship."  What constitutes "undue hardship"?  What are some examples?**
**A:**  To establish that visa denial under the P.P. will cause undue hardship, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.  For further information on assessing "undue hardship," see the questions and answers under "Waivers: Undue Hardship," below.

**Q3:  Another requirement for a waiver under P.P. section 3(c) is that entry would be in the "national interest?"  What constitutes national interest?  What are some examples?**
**A:**  An applicant may meet the national interest condition *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

The visa referral or priority appointment request could impact the national interest determination for the waiver, particularly for cases sent to CA for consideration.  However, each determination is still made on a case-by-case basis, and a referral or priority appointment request is not one of the waiver categories listed in the P.P.  If the case doesn't clearly fit into one of the waiver categories, please follow the instructions in the operational ALDAC and email the case to countries-of-concern-inquiries@state.gov.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q4:  What are some examples of applicants who may be eligible for waivers?**
A:  Examples of circumstances in which a case-by-case waiver may be appropriate are listed in paragraph 24 of 17 STATE 97682.  Consular officers may not categorically grant waivers.  Each case must be considered on its own merit.

a)  The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

b)  The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;

c)  The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

d)  The applicant seeks to enter the United States to visit or reside with a close family

member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause

the foreign national undue hardship;

e)  The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f)  The applicant has been employed by, or on behalf of, the U.S. government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. government;

g)  The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the U.S. government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)  The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i)  The applicant is traveling as a U.S. government-sponsored exchange visitor; or

j)  The applicant is traveling to the United States at the request of a U.S. government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

**REVISED Q5:  What does "would not pose a threat to national security or public safety" mean?**
A:                                                                                                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-10-
AR-041

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP                                                                LEP

**Q6:  For purposes of waivers under P.P. Section 3(c)(iv)(B), what are "previously established significant contacts with the United States?"**
**A:**  "Previously established significant contacts" are contacts established prior to issuance of the P.P., generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current, opportunity.

**Q7:  For purposes of waivers under P.P. Section 3(c)(iv)(C), what are "significant business or professional obligations?"  What are some examples?**
**A:** "Significant business or professional obligations" in this context, refer to events or activities in the United States that must occur on or before specified dates, and the applicant's failure to attend by the required date could result in substantial harm to existing or potential commercial relationships.  Qualifying commercial relationships generally would be expected to currently generate income, have significant potential to do so in the future, or affect a large number of people.  Examples could include:  business meetings or trade shows that promote investment in the United States or by the United States in the host country; presenting at a large conference by an applicant who is an expert in the relevant field; a contractual requirement to provide service or  installation by an applicant with specialized knowledge; Locally Employed Staff traveling to the   United States for training required for their positions; or starring in a cultural performance in the  United States.

**Q8:  The P.P. describes a waiver category for infants, young children, and individuals needing urgent medical care, and also references waivers for others whose entry is "otherwise justified by the special circumstances of the case."  What constitutes "special circumstances" under PP Section 3(c)(iv)(E)?  What age are "young children?"**
**A:**                                                                LEP
                                                                Waivers
based on special circumstances other than the examples set forth in paragraph 24 of 17 STATE 97682 require a consular chief approval and submission of an email to countries-of-concern-inquiries@state.gov.  If the Visa Office concurs that the special circumstances meets the undue hardship and national interest criteria a waiver may be appropriate.                    LEP

"Young" children generally include those beyond infancy but not beyond primary or elementary school age.  In general, this would match our interview/fingerprint requirements, meaning younger than 14.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q9: What kind of documentation is needed for a waiver under Section 3(c)(iv)(F) to prove that someone employed by, or on behalf of, the U.S. government has "provided faithful and valuable service to the U.S. government?"**
**A:** For Locally Engaged Staff SIV applicants, this requirement has been satisfied by the COM committee's recommendation.

### Waivers: Undue Hardship

**Q1: How should I evaluate "undue hardship" when considering waiver eligibility?**
**A:** PP 9645 allows consular officers to grant waivers on a case-by-case basis if three conditions are met, including that the applicant can demonstrate denial of entry would cause undue hardship to the applicant. 17 STATE 97682 addressed undue hardship, noting that the applicant must demonstrate that "an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions…are lifted would defeat the purpose of travel."

LEP

**NEW Question (Q2): Many of the applicants subject to the P.P. come from, or currently reside in, conflict zones or countries with difficult conditions. May consular officers consider these conditions when evaluating undue hardship?**
**A:** No. Consular officers should not consider applicants' home country or third country conditions when evaluating undue hardship.

**Q3: For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** LEP **to the applicant?**
**A:**                                                                                                                             LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-12-
AR-043

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q4:  Where should we draw the line with regard to potential** LEP**?A:** LEP

LEP

**Q5:  For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** LEP **to the applicant?**

**A:** LEP

**Q6:  Where should we draw the line with regard to potential** LEP**?**
**A:** LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-13-
**AR-044**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**NEW Question (Q7):  Determining Undue Hardship**                                    **LEP**
under the waiver examples listed in paragraph 24(d) of 17 STATE 97682 seems
inconsistent for NIV and IV applicants. Should we look at family relationships differently
when it comes to NIV and IV applicants?
A: Paragraph 24(d) states: "The applicant seeks to enter the United States to visit or reside with a
close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully
admitted on a valid NIV, and the denial of entry during the suspension period would cause the
foreign national undue hardship." The nature of the hardship for a visa applicant will be different
depending on whether the applicant is planning a short-term family visit or intending to relocate
lawfully and permanently to the United States to be closer to family.



LEP

**NEW Question (Q8):  Would the "spouse" of an unconsummated proxy marriage qualify as
a close family member for waiver purposes?**
A:  No. As the applicant's marriage has not been consummated, the applicant does not qualify as
a spouse in the immigration context and therefore would also not qualify for a waiver based solely
on his or her relationship as the "spouse" to a U.S. citizen, LPR, or alien in lawful NIV status in
the United States.

**Q9:  For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I
consider                       LEP to the applicant?**
A:                                                                                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-14-
**AR-045**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q10: Where should we draw the line with regard to** LEP?

**A:** LEP

LEP

**Q11: Where should we draw the line with regard to** LEP
?

**A:** LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-15-
AR-046

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q12:  For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** LEP?

**A:** LEP

**Q13:  Where should we draw the line with regard to** LEP?

**A:** LEP

**Q14:  What if the applicant would be subject to hardship under more than one category listed in the Q&A (e.g.,** LEP)?

**A:** LEP

**Q15:  How should I evaluate hardship when a group of applicants is applying as a family?**
**A:** Derivative applicants are not automatically eligible for a waiver just because the principal applicant was found eligible for a waiver.  Each applicant in the family unit would need to be evaluated individually, based on the totality of the circumstances.  If you determine that the principal applicant satisfies the undue hardship requirement, you may consider the hardship that would be caused to his or her derivatives were the principal applicant to travel to the United States without the family.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-16-
AR-047

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q16:  Does the national interest determination have any effect on undue hardship?**
**A:**  Yes.  The required level of hardship to an applicant may vary with the level of U.S. national interest in facilitating the applicant's travel to the United States.  When assessing national interest, consular officers should consider hardship suffered by a U.S. person or entity, per 17 STATE 97682 at paragraph 23.  If an applicant's travel is related to a program or policy objective of the U.S. government, then the national interest can be considered higher, and the hardship to  the applicant would not need to be as severe.

**Q17:  How do we apply the undue hardship standard to applicants who are Canadian permanent residents who are applying for a visa at a location within Canada?**
**A:**  We have an overriding national interest in matters implicating our bilateral relationship with Canada.  We also have an excellent information sharing relationship with Canada and have full faith in identifying information Canada provides.  In light of this relationship, and given the longstanding and extensive travel by this category of applicants to the United States, any curtailment of their travel generally may be considered undue hardship.

**Q18:  How should consular officers document undue hardship in case notes?**
**A:**  Consular officers should clearly note the undue hardship, which generally requires existence of an unusual situation that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restriction imposed with respect to nationals of that country are lifted would defeat the purpose of travel.  Case notes should include the facts supporting this conclusion, or some other clear bases for finding undue hardship.

**Waivers:  Other Issues**

LEP

(Further explained in scenario/question below)

LEP

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-17-
AR-048

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEF



SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-18-

AR-049

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q5:  For cases other than urgent medical needs, what is the estimated time frame for CA to respond to questions relating to waivers?  Are there options to expedite responses?**
**A:**  In urgent cases, a response from the Visa Office can be provided within one business day, provided that the Visa Office has all the information needed.  If additional information is needed from post or if a case requires further discussion with other offices and agencies, the response may take longer and could take a week or more.

**REVISED Q6:  How should consular officers document the national interest in case notes?**
**A:**  To document national interest, the consular officer may write in case notes, "national interest requirements satisfied based on harm to [identify U.S. person or entity]" or describe other material U.S. interest.  Do not identify the U.S. person or entity by name, e.g., do not use "Jane Smith."  Rather, name the U.S. person by relationship, e.g., "spouse living in Michigan" or describe the U.S. entity, e.g., "U.S. community college."

**Q7:  How should consular officers document that an applicant "would not pose a threat to national security or public safety?"**
**A:**  To establish that an applicant's entry would not pose a threat to national security or public safety of the United States                                                    LEP

                                     Post must document that the applicant meets the national security/public safety requirement for a waiver under the P.P. by adding appropriate case notes. Additional instructions for  meeting this condition are available on CLASSNET in 17 STATE 56801 (unclassified excerpts  of this guidance are available on CA Web).

**Q8:  How should consular officers document waiver decisions in case notes?**
**A:**  Consular officers must reflect the category of waiver for which the applicant is eligible by noting:

    1) the category of waiver for which the applicant is eligible (i.e., citing the text from 17  STATE 97682);
    2) the undue hardship caused by denying entry during the suspension (or that there is sufficient basis in the category);
    3) the national interest;
    4) confirming that "no threat" was determined in accordance with CLASSNET guidance, omitting any specific details of the determination; and
    5) the position title of the manager concurring with the waiver (not the actual name of the officer).  Sole consular officers do not need concurrence from their supervisor for waivers or exceptions, but should consult with their VO/F post liaison officer for with questions.

                                                                                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q9:  How long will it take to issue a waiver?**
**A:**  The granting of a waiver under the P.P is a decision that is made by the consular officer and the manager as part of the adjudication.

LEP

**Q10:  If an applicant is not eligible for a waiver, how does the consular officer process the case?**
**A:**  NIV, DV, and IV applicants who are otherwise eligible for the visa, but who do not have an exception from the P.P.'s suspension of entry provision and who do not qualify for a waiver should be refused with the code "EO17," which indicates a refusal under INA 212(f).  Post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code  into NIV, or IVO – here "EO17".  The consular officer should provide the applicant a denial  letter noting the applicant will not be granted a waiver of the P.P.

LEP

**Q12:  How should consular officers document support from the Chief of Mission or Assistant Secretary concerning a case in the national interest?**
**A:**  Please make a case note in the system noting the COM or A/S support.

**Q13:  Should post add the name of the manager that approved the waiver?**
**A:**  No.  The title of the manager is sufficient.  The name should not be noted in the case notes.

**Q14:  In a single-officer section, or for cases adjudicated by the Consular Section Chief in a small section, may the Consular Section Chief self-certify eligibility for a waiver?**
**A:**  The consular section chief in a sole officer must receive concurrence from the Consular Country Coordinator if part of a multi-post mission or from VO via an email to countries-of-concern-inquiries@state.gov.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q15: What should we tell the public about waivers?**
**A:** Public talking points can be found on CA Web.

## NIV

**Q1: May I issue diplomatic visas for government officials who are nationals of the countries identified in the P.P.?**
**A:** Per paragraph 19(h) of 17 STATE 97682, nationals traveling on a diplomatic (A-1 or A-2), or diplomatic type (of any visa classification), NATO 1-6 visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa are excepted from the P.P. The exception also includes C-3 visas for individuals seeking to transit the U.S. on official travel. The exception does not extend to certain Venezuelan government officials and their family members traveling on a diplomatic type B-1, B-2, or B-1/B-2 visa. Applicants who do not fall within an exception may be considered for a waiver on a case-by-case basis.

**Q2: Who are considered "officials of government agencies" for processing visa restrictions on Venezuelan nationals of this P.P.?**
**A:**                                                                                    LEP

**Q3: Are derivative family members of Venezuelan government officials treated the same as the officials?**
**A:**                                                                                    LEP

**Q4. Are K visas treated as NIVs for purposes of PP9645 restrictions?**
**A:** Yes.

## IMMIGRANT VISAS

**Q1: May posts transfer to another post IV cases for applicants who are nationals of the eight countries named in the P.P.?**
**A:** Yes, posts may transfer IV cases to another post for affected applicants using the standard criteria to assess any transfer requests.

**Q2: Will NVC still schedule IV cases in all categories?**
**A:** The National Visa Center (NVC) will continue to schedule IV appointments for all categories and all nationalities.

**Q3: Do waivers or exceptions apply for IV cases?**
**A:** Yes. If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the country-specific visa restrictions applicable to his or her country of nationality, and if

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

so, whether the applicant falls within an exception or if a waiver applies under the P.P.  IV applicants who do not fit one of the exceptions and who do not qualify for a waiver should be refused EO17 and should be given a refusal letter noting that a waiver is not granted.

## DV

### Q1:  Are nationals of countries identified in the P.P. 9645 eligible for issuance under the Diversity Visa Program?

**A:**  P.P. 9645 suspends diversity visa issuance for nationals of every country under the P.P., except Venezuela.  In order to qualify for a diversity visa under the P.P. from one of the countries for which diversity visa issuance is suspended, the applicant must be covered by an exception under the P.P., or qualify for a waiver of the P.P.  DV applicants for 2018 will continue to be scheduled by KCC and post should interview the applicants.  If an applicant is otherwise eligible, the consular officer will need to determine if s/he qualifies for an exception or  a waiver pursuant to P.P. 9645.

### Q2:  Will the Kentucky Consular Center (KCC) still schedule DV cases for affected nationals?

**A:**  KCC is scheduling DV appointments for nationals of identified countries for DV 2018 cases.

### Q3:  Do waivers or exceptions apply for DV cases?

**A:**  Although on a case-by-case basis DV cases could fit within an exception or qualify for a waiver and should be evaluated to determine whether they fit within an exception or qualify for a  waiver, based on the Department's experience with the DV program, we anticipate that very few  DV applicants are likely to be excepted from the P.P.'s suspension or qualify for a waiver. DV  applicants who do not fit one of the exceptions or who do not qualify for a waiver should be  refused EO17 and be given a refusal letter indicating that a waiver is not granted.

## INA 221(g) Cases

### Q1:  Is it appropriate to deny cases under INA 221(g) when the applicant is subject to P.P. 9645?

**A:**  A refusal under 221(g) may be used if necessary to determine whether the applicant is otherwise eligible for a visa under the INA.  However, a final refusal under 221(g) should not be used for an applicant who is otherwise eligible and subject to the P.P.  Those applicants should be refused under refusal code EO17.                                                            LEP

**REVISED:  Q2:  If post receives the information needed to process a case to issuance under normal  circumstances (e.g.,**                        **LEP, submission of passport, etc.), does the consular officer then reassess the case to determine if it meets one of the exception(s) or waiver  criteria in order to complete processing?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** If an applicant who was previously refused under INA 221(g) subsequently overcomes the refusal and is determined to be otherwise eligible for a visa, the consular officer must then consider whether the applicant is subject to the P.P., whether any exceptions apply, and whether the applicant qualifies for a waiver. In short, process the case in accordance with the instructions in 17 STATE 97682.



LEP

### Non-Visa Travel Documents; Parole

**Q1: Can a visa be placed in a refugee travel document of a national from a country with which we have suspended travel based on P.P. 9645?**
**A:** A visa may be placed in the refugee travel document of such a national if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645. However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30); is issued by a competent authority; and shows the bearer's origin, identity, and nationality, if any, which is valid for the admission of the bearer into a foreign country. See 9 FAM 403.9-3 for guidance on passport requirements. Once the applicant qualifies for the visa, please use the reciprocity schedule for the country that issued the travel document to determine appropriate visa validity.

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-23-
AR-054

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q2:  Would an individual identified as being a foreign national admitted or paroled into the United States on or after the applicable effective date, or a foreign national who has a document other than a visa, valid on the applicable effective date or after be automatically excepted if they apply for a visa?  In other words, if the individual is excepted based on parole, advance parole or other status that permits him or her to travel to the United States and seek entry or admission, and then applies for a visa, is s/he excepted from the P.P. for the visa as well?**
**A:**  Yes. individuals who fit within any exception category of the P.P. are not subject to the P.P. for all purposes.  This is an exception category.

**Q3:  If an applicant from one of the affected countries was approved for humanitarian parole, is he/she excepted from the P.P.?**
**A:**  Any national who is paroled into the United States on or after the applicable effective date is excepted from the visa restrictions.  Please process these requests following current 9 FAM guidance.

**Q4:  Does the P.P. apply to V92 cases?**
**A:**  The P.P. does not affect V92 applicants, follow-to-join asylees, and post should adjudicate these cases per standard guidance.

**Q5:  Does the P.P. affect applicants granted asylum, permanent resident, or other status in a non-restricted country, carrying a travel document, refugee document, or other legal resident document from a non-restricted country, identifying them as a national of one of the restricted countries?  In other words, if the applicant does not hold a passport from one  of the restricted countries and instead carries some type of travel documentation issued by  a non-restricted country that identifies him or her as a national of one of the restricted  countries, does the P.P. apply?**
**A:**  Yes, the P.P. applies.  However, you may issue a visa in a refugee travel document if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645.  However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30) and is issued by a competent authority and shows (1) the bearer's origin. (2) identity. and (3) nationality. if any. which is valid for the admission of the bearer into a foreign country.  See 9 FAM 403.9-3 for guidance on passport requirements.

Waivers may not be granted categorically to nationals of an affected country who are subject to the P.P.; instead, waivers should be considered based on individual circumstances.  One of the individual circumstances listed in the P.P. is Canadian permanent residents who apply for visas at a U.S. consular section in Canada. Consular officers should verify the applicant's Canadian permanent residency status.  Consular officers must determinate that the applicant does not pose

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

a threat to U.S. national security or public safety in accordance with additional guidance that was made available in 17 STATE 56801 and                    LEP.

**Current and Prior Visa Holders**

**NEW Question (Q1):  What should posts do with the physical IV files for applicants that are refused EO17 due to PP9645?**
**A:** Post should maintain possession of the cases just as they would with other IV cases based on the possibility of the applicant overcoming the refusal, including if the applicable restriction in the P.P. is lifted.

**Q2:  How should posts deal with cases for nationals of countries subject to the P.P. whose visas were physically cancelled or revoked earlier this year based on E.O. 13769?**
**A:** Certain posts have already been asked to facilitate travel documents for this small group of travelers.  The P.P. states that these individuals are entitled to a travel document.  Please contact your VO/F post liaison officer for instructions if you are contacted by any individual requesting a travel document under Section 5(d) of the P.P.

**Q3:  How does the P.P. apply to previously issued visas?**
**A:** The P.P. does not apply to an individual who had a valid visa on the applicable effective date in Section 7 of the P.P.  In addition, an unrevoked, unexpired visa would generally be valid and therefore the bearer would be permitted to travel.

**REVISED: Q4:  If an applicant from one of the eight affected countries held a valid visa when E.O. 13769 was issued, but it expired before the applicable effective date under this P.P., is the  applicant excepted from the P.P.?**
**A:** An applicant who held a valid visa on the applicable effective date of the P.P. 9645 for that applicant qualifies for an exception, under paragraph 19(b) of 17 STATE 97682. An applicant who held a valid visa when E.O. 13769 was issued, but not on the applicable effective date of the P.P for that applicant, would not qualify for an exception based solely on having held a valid visa. However, such an applicant could qualify for an exception under paragraph 19(c) of 17 STATE 97682 if the applicant had a visa marked revoked or marked canceled as a result of E.O. 13769 such that the applicant is or was entitled to a visa or other valid travel document under section 6(d) of the P.P.

**Visa Refusals**

**Q1:  What refusal procedures should post follow?**
**A:** If the applicant is ineligible on some other ground unrelated to the P.P., post should refuse the application on that basis.  Visa applicants should only be refused under INA section 212(f) (although you will use refusal code "EO17" in CLASS) if the visa applicant is otherwise eligible, subject to the restrictions in the P.P., and does not benefit from one of the exceptions to the P.P. You must inform the visa applicant orally and in writing that his or her visa application is refused pursuant to the P.P. and cite to INA 212(f) as the basis.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Before you refuse an applicant under the P.P., you must determine whether the applicant may qualify for a waiver. The waiver decision may not be resolved on the same day as the in-person interview, because                                                        LEP. Following the interview, you should give the applicant a refusal letter indicating either that a waiver will not be granted or waiver eligibility is under review. In all cases, post should refuse the applicant using CLASS code EO17.                                                                                                      LEP

It is important that any refusal letter provided by post explicitly reflect that the applicant was considered for a waiver, either by noting a waiver will not be granted or waiver is under review. It is recommended that you retain a copy of the refusal letter provided to the applicant and scan it into the case.

**Q2: What CLASS entries should post make?**
**A:** Post should enter the refusal code "EO17" into NIV or IVO for applicants to whom the restrictions of the P.P. apply and who are not excepted from the P.P. As coordinated with DHS, this code represents a refusal under section 212(f) under the P.P. You should NOT use the refusal code for 221(g) after you have determined that the applicant is otherwise eligible for the visa, but is subject to the P.P. At that point, the only appropriate refusal code will be EO17.

**Q3: What should be included in the text of refusal letters?**
**A:** The following text should be used for NIV, IV, and DV refusals.

Consular officers must use the language below to inform NIV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.
>
> ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case. However, you may reapply for a visa at any time. If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-26-
**AR-057**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

demonstrate that your circumstances have changed since that application.

☐   The consular officer is reviewing your eligibility for a waiver under the Proclamation.  To approve a waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f).  You will be contacted with a final determination on your visa application as soon as practicable.

Consular officers must use the language below to inform IV and DV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645.  Today's decision cannot be appealed.

☐   Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.

☐   The consular officer is reviewing your eligibility for a waiver.  To approve your waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f).  You will be contacted with a final determination on your application as soon as practicable.

**Q4:  What refusal code should be used for applicant refused under P.P.?**
**A:**  Applicants who do not qualify for a visa under the P.P. and do not meet an exception should be refused under refusal code "EO17," not INA 221(g), while post is determining whether the applicant qualifies for a waiver and                        LEP.

**Q5:  How do I proceed with a case for an applicant refused under EO17 if he qualifies for a waiver?**
**A:**  After confirming the applicant qualifies for a waiver, post may overcome/waive the EO17 inadmissibility and annotate the visa foil "Presidential Proclamation Waived" and issue. This inadmissibility does not need to be CLOK deleted.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## Other Issues

**NEW Question (Q1):  An applicant was born in a country whose nationals are subject to visa restrictions under P.P. 9645.  However, post has determined that the applicant does not have the nationality of his/her country of birth.  Is the applicant still subject to visa restrictions under the P.P.?**
**A:**  No.  P.P. 9645 imposes visa restrictions only on nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.

While place of birth may be a good indicator of an applicant's nationality, an applicant's nationality may differ from his/her place of birth, whether because the applicant's place of birth does not have birthright citizenship (like Syria) or because the applicant renounced the citizenship of his/her place of birth.

Even if an applicant is a national of a country designated under the P.P., if the applicant is also a national of a non-designated country (i.e., the applicant is a dual national) and is traveling on a passport issued by a non-designated country, the applicant is excepted from the P.P. per paragraph 19(g) of 17 STATE 97682.

If post has sufficient information to determine that the applicant is not a national of a designated country, or that the applicant is a dual national of a non-designated country traveling on a passport issued by a non-designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.                                                                                      LEP

**New Question (Q2):  An applicant is traveling on a travel document issued by a country whose nationals are subject to visa restrictions under P.P. 9645.  However, the travel document reflects that the applicant is a national of a country whose nationals are not subject to visa restrictions under the P.P.  Is the applicant still subject to visa restrictions under the P.P.?**
   **A.**  No. P.P. 9645 imposes visa restrictions only on nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant. While the country of issuance of a travel document may be a good indicator of an

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-28-
**AR-059**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

applicant's nationality. an applicant's nationality may differ from the county of issuance of his/her travel document. This may be the case with a refugee who has resettled in a third country or an individual otherwise eligible to receive a travel document of a third country without holding the nationality of that country.

If post has sufficient information to determine that the applicant is not a national of a designated country. post should enter a case note explaining why the applicant is not subject to P.P. 9645. L
E
P

**Q3: The P.P. mentions Iraqi nationals. How to we process Iraqi visa applicants?**
**A:** Iraqi nationals are not subject to entry restrictions or limitations under the P.P.      LEP

**Q4: What information may post include on its website concerning the P.P.?**
**A:** Posts may include translations of information posted on travel.state.gov. but should not add any additional content that has not been cleared by CA.

**Q5: In what kind of cases does an applicant receive protection under the Convention Against Torture and is therefore excepted from the P.P.?**
**A:** This factor would not be part of the visa application process and is more intended for DHS consideration of the P.P.

**Q6: Are any additional steps necessary when requesting an ARIS waiver for an individual affected by P.P.?**
**A:** The order of consideration does not change in cases which the applicant requires an ARIS waiver. Once a consular officer has determined the applicant is eligible for the visa but for the ground of ineligibility for which the ARIS waiver is required. consular officers should make a determination as to whether an applicant is excepted from the P.P., or whether the applicant qualifies for a waiver. If the applicant has an exception from P.P. or qualifies for a waiver under P.P. 9645. then clearly document the applicant's exception or waiver under P.P. 9645 in the comments when requesting an ARIS waiver for an individual from one of the eight affected nations. CBP/ARO will adjudicate the waiver request normally once they see that a consular officer has made the determination that the applicant is not subject to the suspension and denoted that on the ARIS waiver request.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**March 12, 2018**

**Operational Q&As on P.P. 9645 in light of the U.S. Supreme Court orders of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 STATE 97682**

## Contents

BASICS ................................................................................................................................ 2

SCOPE ................................................................................................................................. 3

EXCEPTIONS ...................................................................................................................... 4

WAIVERS ............................................................................................................................ 7

Waivers: Definitions ........................................................................................................... 9

Waivers: Undue Hardship .................................................................................................. 12

Waivers: Other Issues **(REVISED CONTENT)** ............................................................. 17

NIV ..................................................................................................................................... 21

IMMIGRANT VISAS .......................................................................................................... 21

DV ....................................................................................................................................... 22

INA 221(g) Cases ............................................................................................................... 22

Non-Visa Travel Documents: Parole ................................................................................. 23

Current and Prior Visa Holders ......................................................................................... 25

Visa Refusals ...................................................................................................................... 25

Other Issues ........................................................................................................................ 28

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## BASICS

**Q1:  Following the lifting by the U.S. Supreme Court of the injunctions issued by U.S. District Courts in Hawaii and Maryland against P.P. 9645, does anything change for the adjudication of IVs, DVs, and NIVs?**

**A:**  Yes. P.P. 9645 calls for a suspension of the issuance of visas for categories of nationals of eight countries, with the precise visa restrictions varying by country and visa classification.  With the Supreme Court's orders lifting the lower courts' injunctions, the visa restrictions contained in the P.P. can now be applied to the relevant categories of nationals of all eight countries identified in the P.P., subject only to the exceptions and waivers provided for in the P.P.  Specifically, as a result of the Supreme Court's orders of December 4, 2017, the U.S. government may now fully apply the P.P.'s visa restrictions to individuals from Chad, Iran, Libya, Somalia, Syria, and Yemen.  There is no longer an exemption for nationals of those countries with "a credible claim of a bona fide relationship with a person or entity in the United States." Nationals of North Korea and Venezuela, who were not affected by the lower courts' injunctions, continue to be subject to the visa restrictions in the P.P.  There is also no exemption for nationals of these countries with a bona fide relationship.

**Q2:  What countries are affected by the Supreme Court's lifting of the injunctions of P.P. 9645?**

**A:**  Chad, Iran, Libya, Syria, Yemen, and Somalia.  Nationals of these countries are now fully subject to the visa restrictions in the P.P.  The previous exemption for nationals of these countries with "a credible claim of a bona fide relationship with a person or entity in the United States" is no longer applicable.

**Q3:  Does anything change for visa applicants who are nationals of North Korea and/or Venezuela?**

**A:**  No.  Nationals of North Korea and Venezuela were not affected by the lower courts' injunctions, so the Supreme Court's orders lifting the injunctions do not affect them.  Nationals of North Korea  and Venezuela continue to be subject to the visa restrictions in the P.P.

**Q4:  How does this P.P. affect adjudication standards for visas?**

**A:**  Nothing in the P.P. or guidance implementing the P.P. changes the legal standards or implementing guidance for adjudicating an applicant's eligibility for any visa category.  In every case involving a national of one of the eight countries named in the P.P., the consular officer should first determine whether the applicant is otherwise eligible under the INA, without regard  to the P.P. If you find an applicant ineligible (including under INA section 214(b)), post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code into NIV or IVO. **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



## SCOPE

**Q1: What visa restrictions does the P.P. impose now that the preliminary injunctions have been lifted?**
**A:** All the country-specific visa restrictions listed at paragraph 7 of 17 STATE 97682 are in effect. After determining that an applicant is otherwise eligible for the visa under the INA, you should then determine whether the applicant falls within the scope of the country-specific visa restrictions of the P.P., subject to applicable exceptions and waivers. Exceptions to the P.P. are found in paragraph 19 of 17 STATE 97682 and examples of circumstances in which a case-by- case waiver may be appropriate are found in paragraph 24 of 17 STATE 97682.

**Q2: Are the travel suspensions under this P.P. temporary?**
**A:** There is no end date for the visa restrictions in the P.P.; however, the P.P. requires a review every 180 days.

**Q3: Should consular officers revoke visas based on the P.P.?**
**A:** No. Previously issued visas should not be revoked based on the P.P. Posts should continue to follow existing revocation guidance.

**Q4: In what situations may a consular officer approve a visa for an individual from one of the affected countries while the visa restrictions are in effect?**
**A:** Applicants who are subject to the restrictions under the P.P. must be reviewed on a case-by-case basis. Consular officers may issue a visa to nationals covered by the P.P. only in cases where the applicant:
    a) Is found otherwise eligible for the visa classification requested under the INA without regard to the P.P., following completion of all applicable screening requirements; and

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-3-
**AR-063**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

    b) either
          i) Is excepted from the Proclamation; or
          ii) Qualifies for a waiver in accordance with the guidance on waivers below.

## EXCEPTIONS

**Q1: I understand that any national who had a valid visa on the applicable effective date of the P.P. qualifies for an exception under 19(b) of 17 STATE 97682. What about applicants who were issued visas after the applicable effective date and were either admitted or paroled into the United States? How should posts process their applications under the P.P.?**
A: Paragraph 19(e) of 17 STATE 97682 lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national." If you can confirm that an applicant was admitted or paroled into the United States after the P.P. went into effect, then the applicant is excepted from the P.P. Issuance of a visa after the effective date without proof of subsequent admission to the United States will not trigger this exception.



**Q3: How should consular officers annotate visas for applicants that are covered by an exception or qualify for a waiver?**
A: "Exception under Proclamation" or "Presidential Proclamation Waived."

Consular officers should annotate the visa "Exception under Proclamation" in all cases where the applicant is covered by the restrictions in the P.P. but meets an exception listed in paragraph 19 of 17 STATE 97682.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Consular officers should annotate the visa "Presidential Proclamation Waived" in all cases where the applicant is covered by the restrictions in the P.P., does not qualify for an exception listed in paragraph 19(g) of 17 STATE 97682, but meets the waiver criteria listed in paragraphs 21-29 of 17 STATE 97682.

Interviewing officers must also enter clear case notes stating the specific reason why the applicant is excepted or waived from the P.P.'s visa restrictions.

**Q4:  For those who are dual nationals of a country not subject to the P.P. and who are applying for a visa with a travel document from a non-designated country, how should the visa be annotated**?
**A:**  A dual national of a country designated under P.P. 9645 and of a country not designated under the P.P. who is traveling on a passport issued by a non-designated country, is excepted from the P.P.  If the applicant is otherwise eligible for a visa, the visa should be annotated "Exception under Proclamation" as the applicant meets the exception listed in paragraph 19 of 17 STATE 97682.

**Q5:  What are the exceptions for NIV, IV, and DV applicants?**
**A:** The exceptions are listed in paragraph 19 of 17 STATE 97682.  The following are excepted:

a) Any national who was in the United States on applicable effective date in Section 7 of the P.P. for that national, regardless of immigration status;
b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;
c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who qualifies for a visa or other valid travel document under section 6(d) of the P.P.;
d) Any lawful permanent resident (LPR) of the United States;
e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;
f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;
g) Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;
h) Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

**Q6:  What are the applicable effective dates for applicants seeking to qualify for an exception under paragraph 19(a) & (b) of 17 STATE 97682?**
**A:**  Applicable effective dates are the dates that P.P.9645 affected nationals of the eight countries identified in the P.P. (i.e. applicable effective date for nationals of Somalia, Syria, Libya, Iran, and Yemen is September 24; applicable effective date for nationals of Chad, Venezuela, and North Korea is October 18).

Individuals covered by P.P. 9645 who possess a valid visa or valid travel document generally will be permitted to travel to the United States, irrespective of when the visa was issued.  Paragraph 19(e) of 17 STATE 97682 lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national."  **LEP**

**Q7:  What is the difference between an exception from the P.P. and a waiver under the P.P.?**
**A:**  The P.P.'s visa restrictions do not apply to individuals who fall into one or more of the exception categories listed in paragraph 19 of 17 STATE 97682.  In contrast, if an applicant would be subject to a country-specific restriction in the P.P. and does not fall within an exception, the P.P. permits waivers of the P.P.'s restrictions for applicants who qualify under the waiver criteria.

**Q8:  Do consular officers need a consular manager's approval, or Washington approval, to determine an exception applies?**
**A:**  No.  A consular officer may make the determination that an applicant meets the qualifications for an exception from the P.P.  Consular managers at post should determine the workflow that best suits post's specific circumstances.

**Q9:  How should a consular officer document an exception?**
**A:**  When issuing an IV or an NIV to an individual who falls into one of the exception categories, the visa should be annotated to state, "Exception under Proclamation."  Interviewing officers must also enter a clear case note stating the specific reason why the applicant is excepted from the P.P.'s visa restrictions.

**Q10:  The guidance refers to "consular officers."  How does this affect other consular adjudicators?**
**A:**  "Consular officers" refers to individuals duly authorized to adjudicate visa applications.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q11:  If an applicant has family members traveling with them, does each applicant need to meet the exception criteria in the P.P.?**

**A:**  A derivative family member may only benefit from an exception if he or she individually meets the conditions of an exception in the P.P. If family members are traveling together and do not all benefit from an exception, consular officers should consider that factor in evaluating the applicants' waiver qualifications.

**Q12:  What should we tell the public about exceptions?**
**A:**  Public talking points can be found on CA Web.

## WAIVERS

**Q1:  The guidance in paragraph 25 of 17 STATE 97682, instructed officers to submit some waiver-related questions to VO/L/A for an Advisory Opinion while paragraph 28 instructed officers to submit other waiver-related questions to countries-of-concern-inquiries@state.gov.  How does this process work?**
**A:**  If the applicant does not fit under one of the undue hardship and national interest waiver examples in paragraph 24 of 17 STATE 97682, but the interviewing consular officer and consular manager believe that the applicant meets the undue hardship and national interest requirements for the waiver for other reasons, the consular officer should email the "countries-of-concern" mailbox and include the facts they believe meet the undue hardship and national interest requirements.  If the Visa Office concurs that a waiver may be justified, then post should determine if the national security/public safety requirement is met per 17 STATE 56801 and

**Q2: What are the waiver criteria for NIV, IV, and DV applicants?**
**A:**  Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

> **Criterion #1)**  Denying entry during the suspension period would cause undue hardship to the applicant –To establish that visa denial under the P.P. will cause **undue hardship**, the applicant must demonstrate to the consular officer's satisfaction that (1) an unusual situation exists that compels immediate travel by the applicant **and** (2) delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

> **Criterion #2)**  His or her entry would be in the national interest – The requirement for issuance to be in the **national interest** may be met *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.  For the purpose of implementing the P.P., a U.S. person or entity includes a U.S. citizen, a lawful permanent resident, an alien who is lawfully present in the United States, and a corporation, partnership, or other organization

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-7-

AR-067

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
active and operating within the United States.

**Criterion #3)**  His or her entry would not pose a threat to national security or public safety of the United States.  Additional information on satisfying this test was made available in 17 STATE 56801.

**Q3:  Who can grant a waiver?**
**A:**  The P.P. permits consular officers, with the concurrence of the visa chief (NIV or IV) or consular section chief, and following required administrative processing, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

      a) denying entry would cause undue hardship to the applicant;
      b) his or her entry would be in the national interest; and
      c) his or her entry would not pose a threat to national security or public safety.

The P.P. also authorizes Customs and Border Protection (CBP) to grant waivers, but provides that any waiver issued by a consular officer is effective both for the issuance of a visa and for any subsequent entry on that visa.  CBP has confirmed that it intends to honor waivers approved  by consular officers during the adjudication of the visa application.

P.P. Section 3(c) identifies several examples of circumstances in which a waiver may be appropriate, subject to a case-by-case determination that the three requirements above have been met, if the applicant is found otherwise eligible for the visa requested following completion of all  applicable screening requirements.

**Q4:  Does the consular officer have to consider a waiver for every applicant who is subject to the restrictions of the P.P., otherwise eligible for a visa, and to whom an exception does not apply?**

**A:** Yes, each applicant who meets the conditions described in the question posed above must be considered for a waiver, based on the purpose of travel and any other information provided by the applicant.  However, if the applicant fails to meet any one of the three waiver criteria outlined in PP 9645, the officer may proceed to refuse the case under refusal code EO17.  Consular officers should  check the appropriate box on the visa denial letter given to applicants subject to the P.P., indicating either that a waiver will not be granted or that waiver eligibility is being reviewed.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-8-
**AR-068**

### Waivers: Definitions

**Q1: How should consular officers apply the phrase "close family member" in paragraph 24(d) of 17 STATE 97682 with respect to waivers under the P.P.?**
**A:** The term "child, spouse, or parent" should generally be understood to be consistent with the definition of "immediate relative" at INA 201(b) & 9 FAM 502.2-2(B). Although the INA definition only includes child, spouse, or parent of a U.S. citizen, P.P.9645 also includes these relationships with LPRs and aliens lawfully admitted into the United States on a valid nonimmigrant visa. The term "child" generally refers to an unmarried person under 21 years of age.

If a consular officer believes that an applicant may be eligible for a waiver under paragraph 24(d) of 17 STATE 97682 because the applicant seeks to enter the United States to visit or reside with a close family member, but the close family member is not a child, spouse, or parent, then the consular officer may submit an email to countries-of-concern-inquiries@state.gov.

**Q2: One of the requirements for all waivers under P.P. section 3(c) is that barring travel would cause "undue hardship." What constitutes "undue hardship"? What are some examples?**
**A:** To establish that visa denial under the P.P. will cause undue hardship, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel. For further information on assessing "undue hardship," see the questions and answers under "Waivers: Undue Hardship," below.

**Q3: Another requirement for a waiver under P.P. section 3(c) is that entry would be in the "national interest?" What constitutes national interest? What are some examples?**
**A:** An applicant may meet the national interest condition *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

The visa referral or priority appointment request could impact the national interest determination for the waiver, particularly for cases sent to VO for consideration. However, each determination is still made on a case-by-case basis, and a referral or priority appointment request is not one of the waiver categories listed in the P.P. If the case doesn't clearly fit into one of the waiver categories, please follow the instructions in the operational ALDAC and email the case to countries-of-concern-inquiries@state.gov.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q4:  What are some examples of applicants who may be eligible for waivers?**
**A:**  Examples of circumstances in which a case-by-case waiver may be appropriate are listed in
paragraph 24 of 17 STATE 97682.  Consular officers may not categorically grant waivers.  Each
case must be considered on its own merit.

a) The applicant has previously been admitted to the United States for a continuous period
of work, study, or other long-term activity, is outside the United States on the applicable
effective date of the P.P. for the applicant, seeks to reenter the United States to resume
that activity, and the denial of reentry would impair that activity;

b) The applicant has previously established significant contacts with the United States but is
outside the United States on the applicable effective date of the P.P. for the applicant for
work, study, or other lawful activity;

c) The applicant seeks to enter the United States for significant business or professional
obligations and the denial of entry would impair those obligations;

d) The applicant seeks to enter the United States to visit or reside with a close family
member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully
admitted on a valid NIV, and the denial of entry during the suspension period would
cause the foreign national undue hardship;

e) The applicant is an infant, a young child, or adoptee, an individual needing urgent
medical care, or someone whose entry is otherwise justified by the special circumstances
of the case;

f) The applicant has been employed by, or on behalf of, the U.S. government (or is the
eligible dependent of such an employee) and the employee can document that he or she
has provided faithful and valuable service to the U.S. government;

g) The applicant is traveling for purposes related to an international organization designated
under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq.,
traveling for purposes of conducting meetings or business with the U.S. government, or
traveling to conduct business on behalf of an international organization not designated
under the IOIA;

h) The applicant is a Canadian permanent resident who applies for a visa at a location within
Canada;

i) The applicant is traveling as a U.S. government-sponsored exchange visitor; or

j) The applicant is traveling to the United States at the request of a U.S. government
department or agency for legitimate law enforcement, foreign policy, or national security
purposes.

**Q5:  What does "would not pose a threat to national security or public safety" mean?**
**A:**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-10-
**AR-070**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q6:  For purposes of waivers under P.P. Section 3(c)(iv)(B), what are "previously established significant contacts with the United States?"**
A:  "Previously established significant contacts" are contacts established prior to issuance of the P.P., generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current, opportunity.

**Q7:  For purposes of waivers under P.P. Section 3(c)(iv)(C), what are "significant business or professional obligations?"  What are some examples?**
A: "Significant business or professional obligations" in this context, refer to events or activities in the United States that must occur on or before specified dates, and the applicant's failure to attend by the required date could result in substantial harm to existing or potential commercial relationships.  Qualifying commercial relationships generally would be expected to currently generate income, have significant potential to do so in the future, or affect a large number of people.  Examples could include:  business meetings or trade shows that promote investment in the United States or by the United States in the host country; presenting at a large conference by an applicant who is an expert in the relevant field; a contractual requirement to provide service or  installation by an applicant with specialized knowledge; Locally Employed Staff traveling to the   United States for training required for their positions; or starring in a cultural performance in the  United States.

**Q8:  The P.P. describes a waiver category for infants, young children, and individuals needing urgent medical care, and also references waivers for others whose entry is "otherwise justified by the special circumstances of the case."  What constitutes "special circumstances" under PP Section 3(c)(iv)(E)?  What age are "young children?"**
A:  In this context, "special circumstances" will be case-specific, but may include **LEP**
or other humanitarian reasons for travel.  Waivers based on special circumstances other than the examples set forth in paragraph 24 of 17 STATE 97682 require a consular chief approval and submission of an email to countries-of-concern-inquiries@state.gov.  If the Visa Office concurs that the special circumstances meets the undue hardship and national interest criteria a waiver may be appropriate, **LEP**

"Young" children generally include those beyond infancy but not beyond primary or elementary school age.  In general, this would match our interview/fingerprint requirements, meaning younger than 14.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q9:  What kind of documentation is needed for a waiver under Section 3(c)(iv)(F) to prove that someone employed by, or on behalf of, the U.S. government has "provided faithful and valuable service to the U.S. government?"**
**A:**  For Locally Employed Staff SIV applicants, this requirement has been satisfied by the COM committee's recommendation.

### Waivers:  Undue Hardship

**Q1:  How should I evaluate "undue hardship" when considering waiver eligibility?**
**A:**  PP 9645 allows consular officers to grant waivers on a case-by-case basis if three conditions are met, including that the applicant can demonstrate denial of entry would cause undue hardship to the applicant.  17 STATE 97682 addressed undue hardship, noting that the applicant must demonstrate that "an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions…are lifted would defeat the purpose of travel."



**Q2:  Many of the applicants subject to the P.P. come from, or currently reside in, conflict zones or countries with difficult conditions.  May consular officers consider these conditions when evaluating undue hardship?**
**A:**  No.  Consular officers should not consider applicants' home country or third country conditions when evaluating undue hardship.

**Q3:  For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** ▮▮▮▮ **to the applicant?**
**A:** ▮▮▮▮

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-12-
**AR-072**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q4: Where should we draw the line with regard to potential**
**A:**

**Q5: For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** LEP **to the applicant?**
**A:**

**Q6: Where should we draw the line with regard to potential** LEP**?**
**A:**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q7:  Determining Undue Hardship** ████████████████ LEP **under the waiver examples listed in paragraph 24(d) of 17 STATE 97682 seems inconsistent for NIV and IV applicants.** ████████ LEP

**A:** Paragraph 24(d) states: "The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship." The nature of the hardship for a visa applicant will be different depending on whether the applicant is planning a short-term family visit or intending to relocate lawfully and permanently to the United States to be closer to family.

**LEP**



**Q8:  Would the "spouse" of an unconsummated proxy marriage qualify as a close family member for waiver purposes?**
**A:** No.  As the applicant's marriage has not been consummated, the applicant does not qualify as a spouse in the immigration context and therefore would also not qualify for a waiver based solely on his or her relationship as the "spouse" to a U.S. citizen, LPR, or alien in lawful NIV status in the United States.

**Q9:  For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** ██████ LEP **to the applicant?**
**A:** ████████████████████████████████ LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q10: Where should we draw the line with regard to** ▮▮▮▮ LEP **?**

**A:**

**Q11: Where should we draw the line with regard to hardship based on** ▮▮▮▮ LEP

**?**

**A:**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q12: For which waiver scenarios listed at paragraph 24 of 17 STATE 97682 should I consider** LEP**?**

A:

**Q13: Where should we draw the line with regard to** LEP**?**

A:

**Q14: What if the applicant would be subject to hardship under more than one category listed in the Q&A (e.g.,** LEP**)?**

A:

**Q15: How should I evaluate hardship when a group of applicants is applying as a family?**
A: Derivative applicants are not automatically eligible for a waiver just because the principal applicant was found eligible for a waiver. Each applicant in the family unit would need to be evaluated individually, based on the totality of the circumstances. If you determine that the principal applicant satisfies the undue hardship requirement, you may consider the hardship that would be caused to his or her derivatives were the principal applicant to travel to the United States without the family.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q16:  Does the national interest determination have any effect on undue hardship?**
**A:**  Yes.  The required level of hardship to an applicant may vary with the level of U.S. national interest in facilitating the applicant's travel to the United States.  When assessing national interest, consular officers should consider hardship suffered by a U.S. person or entity, per 17 STATE 97682 at paragraph 23.  If an applicant's travel is related to a program or policy objective of the U.S. government, then the national interest can be considered higher, and the hardship to the applicant would not need to be as severe.

**Q17:  How do we apply the undue hardship standard to applicants who are Canadian permanent residents who are applying for a visa at a location within Canada?**
**A:**  We have an overriding national interest in matters implicating our bilateral relationship with Canada.  We also have an excellent information sharing relationship with Canada and have full faith in identifying information Canada provides.  In light of this relationship, and given the longstanding and extensive travel by this category of applicants to the United States, any curtailment of their travel generally may be considered undue hardship.

**Q18:  How should consular officers document undue hardship in case notes?**
**A:**  Consular officers should clearly note the undue hardship, which generally requires existence of an unusual situation that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restriction imposed with respect to nationals of that country are lifted would defeat the purpose of travel.  Case notes should include the facts supporting this conclusion, or some other clear bases for finding undue hardship.

**Waivers:  Other Issues**



SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-17-
**AR-077**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP



**Q6:  How should consular officers document the national interest in case notes?**
**A:**  To document national interest, the consular officer may write in case notes, "national interest requirements satisfied based on harm to [identify U.S. person or entity]" or describe other material U.S. interest.  Do not identify the U.S. person or entity by name, e.g., do not use "Jane Smith."  Rather, name the U.S. person by relationship, e.g., "spouse living in Michigan" or describe the U.S. entity, e.g., "U.S. community college."  Case notes should include  the facts supporting this conclusion, or some other clear bases for finding national interest.

**Q7:  How should consular officers document that an applicant "would not pose a threat to national security or public safety?"**
**A:**  To establish that an applicant's entry would not pose a threat to national security or public safety of the United States **LEP**

Post must document that the applicant meets the national security/public safety requirement for a waiver under the P.P. by adding appropriate case notes.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-19-
**AR-079**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q8: How should consular officers document waiver decisions in case notes?**
**A:** Consular officers must reflect the category of waiver for which the applicant is eligible by
including supporting facts and noting:

> 1) the category of waiver for which the applicant is eligible (i.e., citing the text from
> 17 STATE 97682 or the Operational Q&As);
> 2) the undue hardship caused by denying entry during the suspension;
> 3) the national interest;
> 4) that "no threat" was determined in accordance with CLASSNET guidance.
> ; and
> 5) the position title of the manager concurring with the waiver (not the actual name
> of the officer) and VO concurrence received through countries-of-concern-
> inquiries@state.gov (if applicable). Sole consular officers do not need concurrence
> from their supervisor for waivers or exceptions, but should consult with their VO/F
> post liaison officer for with questions.



**Q9: How long will it take to issue a waiver?**
**A:** The granting of a waiver under the P.P is a decision that is made by the consular officer and
the manager as part of the adjudication.
there will be some delay.

**Q10: If an applicant is not eligible for a waiver, how does the consular officer process the
case?**
**A:** NIV, DV, and IV applicants who are otherwise eligible for the visa, but who do not have an
exception from the P.P.'s suspension of entry provision and who do not qualify for a waiver
should be refused with the code "EO17," which indicates a refusal under INA 212(f). Post
should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which
include informing the applicant of the reason for refusal and entering the appropriate refusal
code into NIV, or IVO – here "EO17". The consular officer should provide the applicant a
denial letter noting the applicant will not be granted a waiver of the P.P.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-20-
**AR-080**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



**Q12:  How should consular officers document support from the Chief of Mission or Assistant Secretary concerning a case in the national interest?**
A:  Please make a case note in the system noting the COM or A/S support.

**Q13:  Should post add the name of the manager that approved the waiver?**
A:  No.  The title of the manager is sufficient.  The name should not be noted in the case notes.

**Q14:  In a single-officer section, or for cases adjudicated by the Consular Section Chief in a small section, may the Consular Section Chief self-certify eligibility for a waiver?**
A:  The consular section chief in a sole officer must receive concurrence from the Consular Country Coordinator if part of a multi-post mission or from VO via an email to countries-of-concern-inquiries@state.gov.

**Q15:  What should we tell the public about waivers?**
A:  Public talking points can be found on CA Web.

**NIV**

**Q1:  May I issue diplomatic visas for government officials who are nationals of the countries identified in the P.P.?**
A:  Per paragraph 19(h) of 17 STATE 97682.  nationals traveling on a diplomatic (A-1 or A-2), or diplomatic type (of any visa classification). NATO 1-6 visa. C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa are excepted from the P.P.  The exception also includes C-3 visas for individuals seeking to transit the U.S. on official travel.  The exception does not extend to certain Venezuelan government officials and their family members traveling on a diplomatic type B-1, B-2, or B-1/B-2 visa.  Applicants who do not fall within an exception may be considered for a waiver on a case-by-case basis.

**Q2:  Who are considered "officials of government agencies" for processing visa restrictions on Venezuelan nationals of this P.P.?**
A:

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q3:  Are derivative family members of Venezuelan government officials treated the same as the officials?**
**A:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ LEF
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Q4. Are K visas treated as NIVs for purposes of P.P. 9645 restrictions?**
**A:** Yes.

## IMMIGRANT VISAS

**Q1:  May posts transfer to another post IV cases for applicants who are nationals of the eight countries named in the P.P.?**
**A:**  Yes. posts may transfer IV cases to another post for affected applicants using the standard criteria to assess any transfer requests.

**Q2:  Will NVC still schedule IV cases in all categories?**
**A:**  The National Visa Center (NVC) will continue to schedule IV appointments for all categories and all nationalities.

**Q3:  Do waivers or exceptions apply for IV cases?**
**A:**  Yes.  If the consular officer finds the applicant otherwise eligible for the visa. the consular officer will need to consider during the interview whether the applicant falls within the scope of  the country-specific visa restrictions applicable to his or her country of nationality. and if so. whether the applicant falls within an exception or if a waiver applies under the P.P.  IV applicants who do not fit one of the exceptions and who do not qualify for a waiver should be refused EO17 and should be given a refusal letter noting that a waiver is not granted.

## DV

**Q1:  Are nationals of countries identified in P.P. 9645 eligible for issuance under the Diversity Visa Program?**
**A:**  P.P. 9645 suspends diversity visa issuance for nationals of every country under the P.P.. except Venezuela.  In order to qualify for a diversity visa under the P.P. from one of the countries for which diversity visa issuance is suspended. the applicant must be covered by an exception under the P.P.. or qualify for a waiver of the P.P.  DV applicants for 2018 will continue to be scheduled by KCC and post should interview the applicants.  If an applicant is otherwise eligible. the consular officer will need to determine if s/he qualifies for an exception or   a waiver pursuant to P.P. 9645.

**Q2:  Will the Kentucky Consular Center (KCC) still schedule DV cases for affected nationals?**
**A:**  KCC is scheduling DV appointments for nationals of identified countries for DV 2018 cases.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q3:  Do waivers or exceptions apply for DV cases?**

**A:**  Although on a case-by-case basis DV cases could fit within an exception or qualify for a waiver and should be evaluated to determine whether they fit within an exception or qualify for a waiver, based on the Department's experience with the DV program, we anticipate that very few DV applicants are likely to be excepted from the P.P.'s suspension or qualify for a waiver. DV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17 and be given a refusal letter indicating that a waiver is not granted.

### INA 221(g) Cases

**Q1:  Is it appropriate to deny cases under INA 221(g) when the applicant is subject to P.P. 9645?**

**A:**  A refusal under 221(g) may be used if necessary to determine whether the applicant is otherwise eligible for a visa under the INA.  However, a final refusal under 221(g) should not be used for an applicant who is otherwise eligible and subject to the P.P.  Those applicants should be refused under refusal code EO17.

**Q2:  If post receives the information needed to process a case to issuance under normal circumstances (e.g.,** ⬛⬛⬛⬛ **, submission of passport, etc.), does the consular officer then reassess the case to determine if it meets one of the exception(s) or waiver criteria in order to complete processing?**

**A:**  If an applicant who was previously refused under INA 221(g) subsequently overcomes the refusal and is determined to be otherwise eligible for a visa, the consular officer must then consider whether the  applicant is subject to the P.P., whether any exceptions apply, and whether the applicant qualifies  for a waiver.  In short, process the case in accordance with the instructions in 17 STATE 97682.



SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-23-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



### Non-Visa Travel Documents: Parole

**Q1:  Can a visa be placed in a refugee travel document of a national from a country with which we have suspended travel based on P.P. 9645?**

**A:**  A visa may be placed in the refugee travel document of such a national if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645.  However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30). is issued by a competent authority; and shows the bearer's origin, identity, and nationality, if any, which is valid for the admission of the bearer into a foreign country. See 9 FAM 403.9-3 for guidance on passport requirements.  Once the applicant qualifies for the visa, please use the reciprocity schedule for the country that issued the travel document to determine appropriate visa validity.



**Q2:  Would an individual identified as being a foreign national admitted or paroled into the United States on or after the applicable effective date, or a foreign national who has a document other than a visa, valid on the applicable effective date or after be automatically excepted if they apply for a visa?  In other words, if the individual is excepted based on parole, advance parole or other status that permits him or her to travel to the United States and seek entry or admission, and then applies for a visa, is s/he excepted from the P.P. for the visa as well?**

**A:**  Yes, individuals who fit within any exception category of the P.P. are not subject to the P.P. for all purposes.  This is an exception category.

**Q3:  If an applicant from one of the affected countries was approved for humanitarian parole, is he/she excepted from the P.P.?**

**A:**  Any national who is paroled into the United States on or after the applicable effective date is excepted from the visa restrictions.  Please process these requests following current 9 FAM guidance.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q4: Does the P.P. apply to V92 cases?**
**A:** The P.P. does not affect V92 applicants. follow-to-join asylees. and post should adjudicate these cases per standard guidance.

**Q5: Does the P.P. affect applicants granted asylum, permanent resident, or other status in a non-restricted country, carrying a travel document, refugee document, or other legal resident document from a non-restricted country, identifying them as a national of one of the restricted countries? In other words, if the applicant does not hold a passport from one of the restricted countries and instead carries some type of travel documentation issued by a non-restricted country that identifies him or her as a national of one of the restricted countries, does the P.P. apply?**
**A:** Yes, the P.P. applies. However, you may issue a visa in a refugee travel document if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645. However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30) and is issued by a competent authority and shows (1) the bearer's origin. (2) identity. and (3) nationality. if any. which is valid for the admission of the bearer into a foreign country.  See 9 FAM 403.9-3 for guidance on passport requirements.

Waivers may not be granted categorically to nationals of an affected country who are subject to the P.P.; instead. waivers should be considered based on individual circumstances.  One of the individual circumstances listed in the P.P. is Canadian permanent residents who apply for visas at a U.S. consular section in Canada.  Consular officers should verify the applicant's Canadian permanent residency status.  Consular officers must determinate that the applicant does not pose a threat to U.S. national security or public safety in accordance with additional guidance that was made available in 17 STATE 56801 and ████████████ LGF.

**Current and Prior Visa Holders**

**Q1: What should posts do with the physical IV files for applicants that are refused EO17 due to P.P. 9645?**
**A:** Post should maintain possession of the cases just as they would with other IV cases based on the possibility of the applicant overcoming the refusal. including if the applicable restriction in the P.P. is lifted.

**Q2: How should posts deal with cases for nationals of countries subject to the P.P. whose visas were physically cancelled or revoked earlier this year based on E.O. 13769?**
**A:** Certain posts have already been asked to facilitate travel documents for this small group of travelers.  The P.P. states that these individuals are entitled to a travel document.  Please contact your VO/F post liaison officer for instructions if you are contacted by any individual requesting a travel document under Section 5(d) of the P.P.

**Q3: How does the P.P. apply to previously issued visas?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-25-
**AR-085**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** The P.P. does not apply to an individual who had a valid visa on the applicable effective date in Section 7 of the P.P. In addition, an unrevoked, unexpired visa would generally be valid and therefore the bearer would be permitted to travel.

**Q4:  If an applicant from one of the eight affected countries held a valid visa when E.O. 13769 was issued, but it expired before the applicable effective date under this P.P., is the applicant excepted from the P.P.?**
**A:** An applicant who held a valid visa on the applicable effective date of the P.P. 9645 for that applicant qualifies for an exception, under paragraph 19(b) of 17 STATE 97682. An applicant who held a valid visa when E.O. 13769 was issued, but not on the applicable effective date of the P.P. for that applicant, would not qualify for an exception based solely on having held a valid visa. However, such an applicant could qualify for an exception under paragraph 19(c) of 17 STATE 97682 if the applicant had a visa marked revoked or marked canceled as a result of E.O. 13769 such that the applicant is or was entitled to a visa or other valid travel document under section 6(d) of the P.P.

## Visa Refusals

**Q1:  What refusal procedures should post follow?**
**A:** If the applicant is ineligible on some other ground unrelated to the P.P., post should refuse the application on that basis. Visa applicants should only be refused under INA section 212(f) (although you will use refusal code "EO17" in CLASS) if the visa applicant is otherwise eligible, subject to the restrictions in the P.P., and does not benefit from one of the exceptions to the P.P. You must inform the visa applicant orally and in writing that his or her visa application is refused pursuant to the P.P. and cite to INA 212(f) as the basis.

Before you refuse an applicant under the P.P., you must determine whether the applicant may qualify for a waiver. The waiver decision may not be resolved on the same day as the in-person interview, because ████████████████████████████ LEP . Following the interview, you should give the applicant a refusal letter indicating either that a waiver will not be granted or waiver eligibility is under review. In all cases, post should refuse the applicant using CLASS code EO17. ████████████████████████ LEP

████████████████████████████████

It is important that any refusal letter provided by post explicitly reflect that the applicant was considered for a waiver, either by noting a waiver will not be granted or waiver is under review. It is recommended that you retain a copy of the refusal letter provided to the applicant and scan it into the case.

**Q2:  What CLASS entries should post make?**
**A:** Post should enter the refusal code "EO17" into NIV or IVO for applicants to whom the

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

restrictions of the P.P. apply and who are not excepted from the P.P. As coordinated with DHS, this code represents a refusal under section 212(f) under the P.P. You should NOT use the refusal code for 221(g) after you have determined that the applicant is otherwise eligible for the visa, but is subject to the P.P. At that point, the only appropriate refusal code will be EO17.

**Q3: What should be included in the text of refusal letters?**
**A:** The following text should be used for NIV, IV, and DV refusals.

Consular officers must use the language below to inform NIV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

> > ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case. However, you may reapply for a visa at any time. If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.

> > ☐ The consular officer is reviewing your eligibility for a waiver under the Proclamation. To approve a waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f). You will be contacted with a final determination on your visa application as soon as practicable.

Consular officers must use the language below to inform IV and DV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

> > ☐ Taking into account the provisions of the Proclamation, a waiver will not be

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-27-
**AR-087**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

granted in your case.

☐  The consular officer is reviewing your eligibility for a waiver.  To approve your waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f).  You will be contacted with a final determination on your application as soon as practicable.

**Q4:  What refusal code should be used for applicant refused under P.P.?**
**A:**  Applicants who do not qualify for a visa under the P.P. and do not meet an exception should be refused under refusal code "EO17," not INA 221(g), while post is determining whether the applicant qualifies for a waiver and ▓▓▓▓▓▓ LEP.

**Q5:  How do I proceed with a case for an applicant refused under EO17 if he qualifies for a waiver?**
**A:**  After confirming the applicant qualifies for a waiver, post may overcome/waive the EO17 inadmissibility and annotate the visa foil "Presidential Proclamation Waived" and issue.  This inadmissibility should not be CLOK deleted.


**Other Issues**

**Q1:  An applicant was born in a country whose nationals are subject to visa restrictions under P.P. 9645.  However, post has determined that the applicant does not have the nationality of his/her country of birth.  Is the applicant still subject to visa restrictions under the P.P.?**
**A:**  No.  P.P. 9645 imposes visa restrictions only on nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.

While place of birth may be a good indicator of an applicant's nationality, an applicant's nationality may differ from his/her place of birth, whether because the applicant's place of birth does not have birthright citizenship (like Syria) or because the applicant renounced the citizenship of his/her place of birth.

Even if an applicant is a national of a country designated under the P.P., if the applicant is also a national of a non-designated country (i.e., the applicant is a dual national) and is traveling on a passport issued by a non-designated country, the applicant is excepted from the P.P. per paragraph 19(g) of 17 STATE 97682.

If post has sufficient information to determine that the applicant is not a national of a designated country, or that the applicant is a dual national of a non-designated country traveling on a passport

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-28-
**AR-088**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

issued by a non-designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.

**Q2:  An applicant is traveling on a travel document issued by a country whose nationals are subject to visa restrictions under P.P. 9645.  However, the travel document reflects that the applicant is a national of a country whose nationals are not subject to visa restrictions under the P.P.  Is the applicant still subject to visa restrictions under the P.P.?**
A. No. P.P. 9645 imposes visa restrictions only on nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.  While the country of issuance of a travel document may be a good indicator of an applicant's nationality, an applicant's nationality may differ from the county of issuance of his/her travel document. This may be the case with a refugee who has resettled in a third country or an individual otherwise eligible to receive a travel document of a third country without holding the nationality of that country.

If post has sufficient information to determine that the applicant is not a national of a designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.

**Q3: The P.P. mentions Iraqi nationals.  How to we process Iraqi visa applicants?**
A:  Iraqi nationals are not subject to entry restrictions or limitations under the P.P.

**Q4:  What information may post include on its website concerning the P.P.?**
A:  Posts may include translations of information posted on travel.state.gov, but should not add any additional content that has not been cleared by CA.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-29-
AR-089

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q5: In what kind of cases does an applicant receive protection under the Convention Against Torture and is therefore excepted from the P.P.?**

**A:** This factor would not be part of the visa application process and is more intended for DHS consideration of the P.P.

**Q6: Are any additional steps necessary when requesting an ARIS waiver for an individual affected by P.P.?**

**A:** The order of consideration does not change in cases which the applicant requires an ARIS waiver. Once a consular officer has determined the applicant is eligible for the visa but for the ground of ineligibility for which the ARIS waiver is required, consular officers should make a determination as to whether an applicant is excepted from the P.P., or whether the applicant qualifies for a waiver. If the applicant has an exception from P.P. or qualifies for a waiver under P.P. 9645, then clearly document the applicant's exception or waiver under P.P. 9645 in the comments when requesting an ARIS waiver for an individual from one of the eight affected nations. CBP/ARO will adjudicate the waiver request normally once they see that a consular officer has made the determination that the applicant is not subject to the suspension and denoted that on the ARIS waiver request.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

September 20, 2018

## Operational Q&A on P.P. 9645 Travel Restrictions

This Q&A is intended to supplement guidance found at 9 FAM 302.14-10 and 304.5.

## Contents

BASICS.................................................................................................................... 2

SCOPE .................................................................................................................... 3

EXCEPTIONS ......................................................................................................... 4

WAIVERS ............................................................................................................... 7

Waivers:  Definitions ............................................................................................. 9

Waivers:  Undue Hardship ..................................................................................... 12

Waivers:  LEP ........................................................................................................ 18

Waivers: Case Notes and Documentation.............................................................. 20

Waivers: Other Issues............................................................................................. 22

NIV ......................................................................................................................... 23

IMMIGRANT VISAS.............................................................................................. 24

DV ........................................................................................................................... 24

INA 221(g) Cases.................................................................................................... 25

Non-Visa Travel Documents: Parole ..................................................................... 26

Current and Prior Visa Holders .............................................................................. 27

Visa Refusals........................................................................................................... 28

Other Issues............................................................................................................. 30

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## BASICS

**Q1:  Following the U.S. Supreme Court's decision in *Trump v. Hawaii* on June 26, 2018, does anything change for the  adjudication of IVs, DVs, and NIVs?**
**A:**  No.  The guidance in effect immediately prior to the decision remains current.  The Supreme Court's decision did not require any change in the implementation of P.P. 9645.

**Q2: Following P.P. 9723, issued on April 10, 2018, are nationals of Chad still subject to visa restrictions under P.P. 9645?**
**A:**  No.  While nationals of Chad were initially subject to visa restrictions under P.P. 9645, those restrictions were lifted on April 13, 2018 (at 12:01 a.m. Eastern Daylight Time), per P.P. 9723's amendment of P.P. 9645.  Please see 18 STATE 33378 for additional information on the lifting of visa restrictions for nationals of Chad.  Nationals of Chad who submitted visa applications that were denied EO17 and were not pending consideration of a waiver of P.P. 9645 as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, must submit a new visa application in order to be considered for a visa.  Applications for nationals of Chad that were denied EO17, were pending consideration of a waiver as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, and were **LEP** at that time may be processed to conclusion without regard to P.P. 9645. Applications for nationals of Chad denied EO17 that were **LEP** as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, may be processed to conclusion in accordance with directions provided **LEP**, once received.  In anticipation of future visa applications, VO has removed all EO17 lookouts from CLASS for Chadian nationals.  However, the fact that the applicant was refused under EO17 will remain as part of the historical record within the CCD.

**Q3:  What countries are now subject to P.P. 9645 travel restrictions?**
**A:**  Iran, Libya, North Korea, Somalia, Syria, Venezuela, and Yemen.  Nationals of these countries are fully  subject to the visa restrictions in the P.P.

**Q4:  How does the P.P. affect adjudication standards for visas?**
**A:**  Nothing in the P.P. or guidance implementing the P.P. changes the legal standards or implementing guidance for adjudicating an applicant's eligibility for any visa category.  In every case involving a national of one of the seven countries subject to visa restrictions under the P.P., as amended by P.P. 9723, the consular officer should first determine whether the applicant is otherwise eligible under the INA, without regard  to the P.P.  If you find an applicant ineligible (including under INA section 214(b)), post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include  informing the applicant of the reason for refusal and entering the appropriate refusal code into  NIV or IVO. **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
**AR-092**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

## SCOPE

**Q1:  What visa restrictions does the P.P. impose now that the preliminary injunctions have been lifted?**
A:  All the country-specific visa restrictions listed at 9 FAM 302.14-10(B)(1) are in  effect.  After determining that an applicant is otherwise eligible for the visa under the INA. you  should then determine whether the applicant falls within the scope of the country-specific visa  restrictions of the P.P.. subject to applicable exceptions and waivers.  Exceptions to the P.P. are  found at 9 FAM 302.14-10(B)(2) and examples of circumstances in which a case-by-case waiver may be appropriate are found at 9 FAM 302.14-10(D) paragraph (d).

**Q2:  Are the travel suspensions under this P.P. temporary?**
A:  There is no end date for the visa restrictions in the P.P.; however. the P.P. requires a review every 180 days.

**Q3:  Should consular officers revoke visas based on the P.P.?**
A:  No.   Previously issued visas should not be revoked based on the P.P.  Posts should continue to follow existing revocation guidance.

**Q4:  In what situations may a consular officer approve a visa for an individual from one of the affected countries while the visa restrictions are in effect?**
A:  Applicants who are subject to the restrictions under the P.P. must be reviewed on a case-by-case basis.  Consular officers may issue a visa to nationals covered by the P.P. only in  cases where the applicant:

> i) Is found otherwise eligible for the visa classification requested under the INA
>   without regard to the  P.P.. following completion of all applicable screening
>   requirements: and
> ii)    either
> > • Is excepted from the Proclamation: or

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

- Qualifies for a waiver in accordance with the guidance on waivers below.

## EXCEPTIONS

**Q1: I understand that any national who had a valid visa on the applicable effective date of the P.P. qualifies for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2). What about applicants who were issued visas after the applicable effective date and were either admitted or paroled into the United States? How should posts process their applications under the P.P.?**

**A:** 9 FAM 302.14-10(B)(2) paragraph (a)(5) lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national." If you can confirm that an applicant was admitted or paroled into the United States after the P.P. went into effect, then the applicant is excepted from the P.P. Issuance of a visa after the effective date without proof of subsequent admission to the United States will not trigger this exception.

**NEW Q2: Would an applicant still qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2) if the applicant used his/her single-entry visa prior to the applicable effective date? In other words, is a single-entry visa still considered valid after the applicant has been admitted to the United States?**

**A:** No. If the applicant has been admitted to the U.S. on a single-entry visa to the United States prior to the applicable effective date for that national, then the applicant would not qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2). The single-entry visa must not be considered valid after the applicant has been admitted to the U.S., since the applicant could no longer utilize the visa to make an application to an immigration officer at a port of entry for admission into the United States (see 9 FAM 102.3-22(c) for more information on the definition of visa validity). While the applicant will not qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2), consular officers should ensure that they also evaluate the applicant for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(1), since the applicant may have been in the United States on the applicable effective date.

**NEW Q3: Would an applicant still qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2) if the visa that was valid on the applicable effective date was later revoked?**

**A:** Yes. If the visa was a valid visa for the purposes of travel on the applicable effective date, then the applicant would qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2). The fact that the Department of State later revoked the visa (e.g., the applicant was no longer qualified for that particular visa classification or there was an error made regarding the validity period or number of entries) does not change the fact that the visa was valid on the applicable effective date. Note that visa revocations are typically effective immediately or upon an alien's departure from the United States if the alien is in the United States. See 9 FAM 403.11-4(A)(2) for more information.

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q5: How should consular officers annotate visas for applicants that are covered by an exception or qualify for a waiver?**
**A:** "Exception under Proclamation" or "Presidential Proclamation Waived."

Consular officers should annotate the visa "Exception under Proclamation" in all cases where the applicant is covered by the restrictions in the P.P. but meets an exception listed in paragraph 9 FAM 302.14-10(B)(2).

Consular officers should annotate the visa "Presidential Proclamation Waived" in all cases where the applicant is covered by the restrictions in the P.P., does not qualify for an exception listed at 9 FAM 302.14-10(B)(2). but meets the waiver criteria listed at 9 FAM 302.14-10(D).

Interviewing officers must also enter clear case notes stating the specific reason why the applicant is excepted or waived from the P.P.'s visa restrictions.

**Q6: For those who are dual nationals of a country not subject to the P.P. and who are applying for a visa with a travel document from a non-designated country, how should the visa be annotated?**
**A:** A dual national of a country designated under P.P. 9645 and of a country not designated under the P.P. who is traveling on a passport issued by a non-designated country, is excepted from the P.P. If the applicant is otherwise eligible for a visa, the visa should be annotated "Exception under Proclamation" as the applicant meets the exception listed at 9 FAM 302.14-10(B)(2).

**Q7: What are the exceptions for NIV, IV, and DV applicants?**
**A:** The exceptions are listed at 9 FAM 302.14-10(B)(2). The following are excepted:

a) Any national who was in the United States on applicable effective date in Section 7 of the P.P. for that national, regardless of immigration status;
b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;
c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who qualifies for a visa or other valid travel document under

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

section 6(d) of the P.P.;

d) Any lawful permanent resident (LPR) of the United States;
e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;
f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;
g) Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;
h) Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or
i) Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

**Q8: What are the applicable effective dates for applicants seeking to qualify for an exception per 9 FAM 302.14-10(B)(2) paragraphs (a)(1), (2), (5), or (6)?**
**A:** Applicable effective dates are the dates that the visa restrictions established by P.P.9645 took effect for affected nationals identified in the P.P.. The applicable effective date for nationals of Iran, Libya, Somalia, Syria,  and Yemen is September 24, 2017, without regard to court orders. The applicable effective date for nationals of Venezuela and  North Korea is October 18, 2017. The applicable effective date for nationals of Chad was also October 18, 2017, although P.P. 9723 lifted the visa restrictions on nationals of Chad effective April 13, 2018 (at 12:01 a.m. Eastern Daylight Time).

Individuals covered by P.P. 9645 who possess a valid visa or valid travel document generally will be permitted to travel to the United States, irrespective of when the visa was issued.    **LEP**

**Q9: What is the difference between an exception from the P.P. and a waiver under the P.P.?**
**A:** The P.P.'s visa restrictions do not apply to individuals who fall into one or more of the exception categories listed at 9 FAM 302.14-10(B)(2).  In contrast, if an applicant  would be subject to a country-specific restriction in the P.P. and does not fall within an  exception, the P.P. permits waivers of the P.P.'s restrictions for applicants who qualify under the  waiver criteria.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q10:  Do consular officers need a consular manager's approval, or Washington approval, to determine an exception applies?**
**A:**  No.  A consular officer may make the determination that an applicant meets the qualifications for an exception from the P.P.  Consular managers at post should determine the workflow that best suits post's specific circumstances.

**Q11:  How should a consular officer document an exception?**
**A:**  When issuing an IV or an NIV to an individual who falls into one of the exception categories, the visa should be annotated to state, "Exception under Proclamation."  Interviewing  officers must also enter a clear case note stating the specific reason why the applicant is excepted  from the P.P.'s visa restrictions.

**Q12:  The guidance refers to "consular officers."  How does this affect other consular adjudicators?**
**A:**  "Consular officers" refers to individuals duly authorized to adjudicate visa applications.

**Q13:  If an applicant has family members traveling with them, does each applicant need to meet the exception criteria in the P.P.?**
**A:**  A derivative family member may only benefit from an exception if he or she individually meets the conditions of an exception in the P.P.  If family members are traveling together and do not all benefit from an exception, consular officers should consider that factor in evaluating the applicants' waiver qualifications.

**Q14:  What should we tell the public about exceptions?**
**A:**  Public talking points can be found on CA Web.

**REVISED Q15:**                                                                                          **LEP**

**NEW Q16:  Does the asylee/refugee exception in 9 FAM 302.14-10(B)(2) paragraph (a)(9) apply to applicants who were granted Temporary Protected Status?**
**A:**  No.  Unlike the other statuses mentioned in 9 FAM 302.14-10(B)(2) paragraph (a)(9). TPS is a temporary benefit that does not lead to lawful permanent resident status.  A current or former TPS recipient would not be eligible for an exception under 9 FAM 302.14-10(B)(2) paragraph (a)(9).

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**NEW Q17:  Does an SB-1 (returning resident) IV applicant qualify for the LPR exception in 9 FAM 302.14-10(B)(2) paragraph (a)(4)?**
A: Prior to applying for an SB-1 IV, the applicant must obtain an approved DS-117, which is confirmation that the consular officer has determined that the applicant is an LPR.  Consequently, SB-1 IV applicants qualify for the LPR exception in in 9 FAM 302.14-10(B)(2) paragraph (a)(4). Conversely, if the consular officer were to disapprove the DS-117 application, then the applicant would not qualify for the LPR exception in in 9 FAM 302.14-10(B)(2) paragraph (a)(4).


## WAIVERS

**Q1:  The guidance in paragraph 25 of 17 STATE 97682 instructed officers to submit some waiver-related questions to VO/L/A for an Advisory Opinion while 9 FAM 302.14-10(D) paragraph (f)  instructs officers to submit waiver-related questions to countries-of-concern-inquiries@state.gov.  How does this process work?**
A:  If the applicant does not fit under one of the undue hardship and national interest waiver examples at 9 FAM 302.14-10(D) paragraph (d), but the interviewing consular officer and consular  manager believe that the applicant meets the undue hardship and national interest requirements  for the waiver for other reasons, the consular officer should email the "countries-of-concern" mailbox and include the facts they believe meet the undue hardship and national interest  requirements.  If the Visa Office concurs that a waiver may be justified, then post should determine if the national security/public safety requirement is met per 17 STATE 56801 and
        LEP.


**Q2: What are the waiver criteria for NIV, IV, and DV applicants?**
A:  Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

> **Criterion #1)**  Denying entry during the suspension period would cause undue hardship to the applicant –To establish that visa denial under the P.P. will cause **undue hardship**, the applicant must demonstrate to the consular officer's satisfaction that (1) an unusual situation exists that compels immediate travel by the applicant (for further information on what generally constitutes an "unusual situation that compels immediate travel" see the questions and answers under "Waivers: Undue Hardship," below) **and** (2) delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

> **Criterion #2)**  His or her entry would be in the national interest – The requirement for issuance to be in the **national interest** may be met *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.  For the purpose of implementing the P.P., a U.S. person or entity includes a U.S. citizen, a lawful permanent resident, an alien who is lawfully present in the United States, and a corporation, partnership, or other organization active and operating within the United States.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Criterion #3)**  His or her entry would not pose a threat to national security or public safety of the United States.  Additional information on satisfying this test was made available in 17 STATE 56801.                                                        **LEP**


**Q3:  Who can grant a waiver?**
**A:**  The P.P. permits consular officers, with the concurrence of the visa chief (NIV or IV) or consular section chief, and following required administrative processing, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

    a) denying entry would cause undue hardship to the applicant;
    b) his or her entry would be in the national interest; and
    c) his or her entry would not pose a threat to national security or public safety.

The P.P. also authorizes Customs and Border Protection (CBP) to grant waivers, but provides that any waiver issued by a consular officer is effective both for the issuance of a visa and for any subsequent entry on that visa.  CBP has confirmed that it intends to honor waivers approved by consular officers during the adjudication of the visa application.

P.P.  Section 3(c) identifies several examples of circumstances in which a waiver may be appropriate, subject to a case-by-case determination that the three requirements above have been met, if the applicant is found otherwise eligible for the visa requested following completion of all applicable screening requirements.

**Q4:  Does the consular officer have to consider a waiver for every applicant who is subject to the restrictions of the P.P., otherwise eligible for a visa, and to whom an exception does not apply?**

A: Yes, each applicant who meets the conditions described in the question posed above must be considered for a waiver, based on the purpose of travel and any other information provided by the applicant.  However, if the applicant fails to meet any one of the three waiver criteria outlined in PP 9645, the officer may proceed to refuse the case under refusal code EO17.   Consular officers should check the appropriate box on the visa denial letter given to applicants subject to the P.P., indicating either that a waiver will not be granted or that waiver eligibility is being reviewed.


**WAIVERS:  DEFINITIONS**


**Q1:  How should consular officers apply the phrase "close family member" in 9 FAM 302.14-10(D) paragraph (d)(4) with respect to waivers under the P.P.?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** The term "child. spouse. or parent" should generally be understood to be consistent with the definition of "immediate relative" at INA 201(b) & 9 FAM 502.2-2(B). Although the INA definition only includes child. spouse. or parent of a U.S. citizen. P.P.9645 also includes these relationships with LPRs and aliens lawfully admitted into the United States on a valid nonimmigrant visa. The term "child" generally refers to an unmarried person under 21 years of age.

If a consular officer believes that an applicant may be eligible for a waiver per 9 FAM 302.14-10(D) paragraph (d)(4) because the applicant seeks to enter the United States to visit or reside with a close family member. but the close family member is not a child. spouse. or parent. then the consular officer may submit an email to countries-of-concern-inquiries@state.gov.     **LEP**

**Q2: One of the requirements for all waivers under P.P. section 3(c) is that barring travel would cause "undue hardship." What constitutes "undue hardship"? What are some examples?**
**A:** To establish that visa denial under the P.P. will cause undue hardship. the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel. For further information on assessing "undue hardship." see the questions and answers under "Waivers: Undue Hardship." below.

**Q3: Another requirement for a waiver under P.P. section 3(c) is that entry would be in the "national interest?" What constitutes national interest? What are some examples?**
**A:** An applicant may meet the national interest condition *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

The visa referral or priority appointment request could impact the national interest determination for the waiver. particularly for cases sent to VO for consideration. However. each determination is still made on a case-by-case basis. and a referral or priority appointment request is not one of the waiver categories listed in the P.P. If the case doesn't clearly fit into one of the waiver categories. please follow the instructions in the operational ALDAC and email the case to countries-of-concern-inquiries@state.gov.

**Q4: What are some examples of applicants who may be eligible for waivers?**
**A:** Examples of circumstances in which a case-by-case waiver may be appropriate are listed at 9 FAM 302.14-10(D) paragraph (d). Consular officers may not categorically grant waivers. Each case must be considered on its own merit.

   a) The applicant has previously been admitted to the United States for a continuous period of work. study. or other long-term activity, is outside the United States on the applicable

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

b) The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;

c) The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

d) The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

e) The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f) The applicant has been employed by, or on behalf of, the U.S. government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. government;

g) The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the U.S. government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h) The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i) The applicant is traveling as a U.S. government-sponsored exchange visitor; or

j) The applicant is traveling to the United States at the request of a U.S. government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

**Q5: What does "would not pose a threat to national security or public safety" mean?**
**A:**                                                                            LEP

**Q6: For purposes of waivers under P.P. Section 3(c)(iv)(B), what are "previously established significant contacts with the United States?"**
**A:** "Previously established significant contacts" are contacts established prior to issuance of the P.P., generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current, opportunity.

**Q7: For purposes of waivers under P.P. Section 3(c)(iv)(C), what are "significant business**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-11-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

or professional obligations?" What are some examples?
A: "Significant business or professional obligations" in this context, refer to events or activities in the United States that must occur on or before specified dates, and the applicant's failure to attend by the required date could result in substantial harm to existing or potential commercial relationships. Qualifying commercial relationships generally would be expected to currently generate income, have significant potential to do so in the future, or affect a large number of people. Examples could include: business meetings or trade shows that promote investment in the United States or by the United States in the host country; presenting at a large conference by an applicant who is an expert in the relevant field; a contractual requirement to provide service or installation by an applicant with specialized knowledge; Locally Employed Staff traveling to the United States for training required for their positions; or starring in a cultural performance in the United States.

**Q8:** **The P.P. describes a waiver category for infants, young children, and individuals needing urgent medical care, and also references waivers for others whose entry is "otherwise justified by the special circumstances of the case." What constitutes "special circumstances" under PP Section 3(c)(iv)(E)? What age are "young children?"**
A: In this context, "special circumstances" will be case-specific, but may include LEP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or other humanitarian reasons for travel. Waivers based on special circumstances other than the examples set forth at 9 FAM 302.14-10(D) paragraph (d) require a consular chief approval and submission of an email to countries-of-concern-inquiries@state.gov. If the Visa Office concurs that the special circumstances meets the undue hardship and national interest criteria a waiver may be appropriate.                LEP

"Young" children generally include those beyond infancy but not beyond primary or elementary school age. In general, this would match our interview/fingerprint requirements, meaning younger than 14.

**Q9:** **What kind of documentation is needed for a waiver under Section 3(c)(iv)(F) to prove that someone employed by, or on behalf of, the U.S. government has "provided faithful and valuable service to the U.S. government?"**
A: For Locally Employed Staff SIV applicants, this requirement has been satisfied by the COM committee's recommendation.

**WAIVERS: UNDUE HARDSHIP**

**Q1:** **How should I evaluate "undue hardship" when considering waiver eligibility?**
A: PP 9645 allows consular officers to grant waivers on a case-by-case basis if three conditions are met, including that the applicant can demonstrate denial of entry would cause undue hardship to the applicant. 9 FAM 302.14-10(D) paragraph (b) addresses undue hardship, noting that the applicant must demonstrate that "an unusual situation exists that compels immediate travel by the

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

applicant and   that delaying visa issuance and the associated travel plans until after visa
restrictions…are lifted  would defeat the purpose of travel."

LEP

**Q2:  Many of the applicants subject to the P.P. come from, or currently reside in, conflict
zones or countries with difficult conditions.  May consular officers consider these conditions
when evaluating undue hardship?**
**A:**  No.  Consular officers should not consider applicants' home country or third country
conditions when evaluating undue hardship.

**Q3:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I
consider**       LEP  **to the applicant?**
**A:**                                                                                                       LEP

**Q4:  Where should we draw the line with regard to potential**          LEP?
**A:**                                                                                                       LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q5:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I consider** LEP **to the applicant?**

A:                                                                                                          LEP

**Q6:  Where should we draw the line with regard to potential** LEP **?**

A:                                                                                                          LEP

**Q7:  Determining Undue Hardship** LEP **under the waiver examples listed in 9 FAM 302.14-10(D) paragraph (d)(4) seems inconsistent for NIV and IV applicants.** LEP

A:                                                                                                          LEP

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-14-
**AR-104**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q8:  Would the "spouse" of an unconsummated proxy marriage qualify as a close family member for waiver purposes?**
**A:**  No.  As the applicant's marriage has not been consummated, the applicant does not qualify as a spouse in the immigration context and therefore would also not qualify for a waiver based solely on his or her relationship as the "spouse" to a U.S. citizen, LPR, or alien in lawful NIV status in the United States.

**Q9:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I consider** LEP **to the applicant?**
**A:**

LEP

**Q10:  Where should we draw the line with regard to** LEP**?**
**A:**

LEP

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**LEP**

**Q11:  Where should we draw the line with regard to hardship based on**    **LEP**
**?**
**A:**    **LEP**

**Q12:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I**
**consider**    **LEP** **?**
**A:**    **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q13: Where should we draw the line with regard to** LEP**?**
**A:** LEP

**Q14: What if the applicant would be subject to hardship under more than one category listed in the Q&A (e.g.,** LEP**)?**
**A:** LEP

**Q15: How should I evaluate hardship when a group of applicants is applying as a family?**
**A:** Derivative applicants are not automatically eligible for a waiver just because the principal applicant was found eligible for a waiver.   Each applicant in the family unit would need to be evaluated individually, based on the totality of the circumstances.  If you determine that the principal applicant satisfies the undue hardship requirement, you may consider the hardship that would be caused to his or her derivatives were the principal applicant to travel to the United States without the family.

**Q16: Does the national interest determination have any effect on undue hardship?**
**A:** Yes.  The required level of hardship to an applicant may vary with the level of U.S. national interest in facilitating the applicant's travel to the United States.   When assessing national interest, consular officers should consider hardship suffered by a U.S. person or entity, per 9 FAM 302.14-10(D) paragraph (c).  If an applicant's travel is related to a program or policy objective of the U.S. government, then the national interest can be considered higher, and the hardship to  the applicant would not need to be as severe.

**Q17: How do we apply the undue hardship standard to applicants who are Canadian permanent residents who are applying for a visa at a location within Canada?**
**A:** We have an overriding national interest in matters implicating our bilateral relationship with Canada.  We also have an excellent information sharing relationship with Canada and have full faith in identifying information Canada provides.  In light of this relationship, and given the longstanding and extensive travel by this category of applicants to the United States, any curtailment of their travel generally may be considered undue hardship.

**Q18: How should consular officers document undue hardship in case notes?**
**A:** Consular officers should clearly note the undue hardship, which generally requires existence of an unusual situation that compels immediate travel (for further information on what generally constitutes an "unusual situation that compels immediate travel" see the questions and answers under "Waivers: Undue Hardship") by the applicant and that delaying visa  issuance and the associated travel plans until after visa restriction imposed with respect to  nationals of that

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

country are lifted would defeat the purpose of travel.   Case notes should include  the facts supporting this conclusion, or some other clear bases for finding undue hardship.

**WAIVERS:**   LEP

**Q1:**                                                          .   **LEP**

**LEP**

**Q2:**                                                              **LEP**

**A:**                                               **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

LEP

**Q3:** LEP

**A:** LEP

**Q4:** LEP

**A:** LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
**AR-109**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Q5:                                                                          LEP

A:                                                                           LEP




NEW Q6:                                                                       LEP


A:                                                                           LEP




## WAIVERS:  CASE NOTES AND DOCUMENTATION

**Q1:  How should consular officers document the national interest in case notes?**
**A:**  To document national interest, the consular officer may write in case notes, "national interest
requirements satisfied based on harm to [identify U.S. person or entity]" or describe other
material U.S. interest.  Do not identify the U.S. person or entity by name, e.g., do not use "Jane
Smith."   Rather, name the U.S. person by relationship, e.g., "spouse living in Michigan" or
describe the U.S. entity, e.g., "U.S. community college."  Case notes should include  the facts
supporting this conclusion, or some other clear bases for finding national interest.


**REVISED Q2:  How should consular officers document that an applicant "would not pose a
threat to  national security or public safety?"**
**A:**                                                                       LEP




**Q3:  How should consular officers document waiver decisions in case notes?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** Consular officers must reflect the category of waiver for which the applicant is eligible by including supporting facts and noting:

    1)  the category of waiver for which the applicant is eligible (i.e., citing the text from 9 FAM 302.14-10 or the Operational Q&A);

    2)  the undue hardship caused by denying entry during the suspension;

    3) the national interest;

    4)  that "no threat" was determined in accordance with CLASSNET guidance. **LEP** and

    5)  the position title of the manager concurring with the waiver (not the actual name of the officer) and VO concurrence received through countries-of-concern-inquiries@state.gov (if applicable).  Sole consular officers do not need concurrence from their supervisor for waivers or exceptions. but should seek VO concurrence on their decisions to grant waivers through countries-of-concern-inquiries@state.gov **LEP**

**LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-21-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q4:  How should consular officers document support from the Chief of Mission or Assistant Secretary concerning a case in the national interest?**
**A:**  Please make a case note in the system noting the COM or A/S support.

**Q5:  Should post add the name of the manager that approved the waiver?**
**A:**  No.  The title of the manager is sufficient.  The name should not be noted in the case notes.

## WAIVERS:  OTHER ISSUES

**Q1:  For cases other than urgent medical needs, what is the estimated time frame for CA to respond to questions relating to waivers?  Are there options to expedite responses?**
**A:**  In urgent cases, a response from the Visa Office can be provided within one business day, provided that the Visa Office has all the information needed.  If additional information is needed from post or if a case requires further discussion with other offices and agencies, the response may take longer and could take a week or more.

**Q2:  How long will it take to issue a waiver?**
**A:**  The granting of a waiver under the P.P is a decision that is made by the consular officer and the manager as part of the adjudication.  Because every waiver requires          **LEP**

here will be some delay.

**Q3:  If an applicant is not eligible for a waiver, how does the consular officer process the case?**
**A:**  NIV, DV, and IV applicants who are otherwise eligible for the visa, but who do not have an exception from the P.P.'s suspension of entry provision and who do not qualify for a waiver should be refused with the code "EO17," which indicates a refusal under INA 212(f).  Post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code into NIV, or IVO – here "EO17".  The consular officer should provide the applicant a denial letter noting the applicant will not be granted a waiver of the P.P.

**Q4:  In a single-officer section, or for cases adjudicated by the Consular Section Chief in a small section, may the Consular Section Chief self-certify eligibility for a waiver?**
**A:**  The consular section chief in a sole officer must receive concurrence from the Consular Country Coordinator if part of a multi-post mission or from VO via an email to countries-of-concern-inquiries@state.gov.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-22-
**AR-112**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q5:  What should we tell the public about waivers?**

A:  Public talking points can be found on CA Web.

**NEW Q6:  A consular officer is considering whether an applicant is eligible for a waiver but there are serious concerns about the validity of the applicant's identity.  How should the consular officer proceed?**

A.                                                                                                                LEP

## NONIMMIGRANT VISAS

**Q1:  May I issue diplomatic visas for government officials who are nationals of the countries identified in the P.P.?**
A:  Per 9 FAM 302.14-10(B) paragraph (2)(a)(8), nationals traveling on a diplomatic (A-1 or A-2), or diplomatic type (of any visa classification), NATO 1-6 visa, C-2 visa for travel to the United States, or G-1, G-2, G-3, or G-4 visa are excepted from the P.P.  The exception also includes C-3 visas for individuals seeking to transit the U.S. on official travel.  The exception does not extend to certain Venezuelan government officials and their family members traveling on a diplomatic type B-1, B-2, or B-1/B-2 visa.  Applicants who do not fall within an exception may be considered for a waiver on a case-by-case basis.

**Q2:  Who are considered "officials of government agencies" for processing visa restrictions on Venezuelan nationals of this P.P.?**
A:                                                                                                            LEP

**Q3:  Are derivative family members of Venezuelan government officials treated the same as the officials?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-23-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

A:                                                                                    LEP

**Q4. Are K visas treated as NIVs for purposes of P.P. 9645 restrictions?**
A: Yes.

## IMMIGRANT VISAS

**Q1: May posts transfer to another post IV cases for applicants who are nationals of the countries named in the P.P.?**
A: Yes. posts may transfer IV cases to another post for affected applicants using the standard criteria to assess any transfer requests.

**Q2: Will NVC still schedule IV cases in all categories?**
A: The National Visa Center (NVC) will continue to schedule IV appointments for all categories and all nationalities.

**Q3: Do waivers or exceptions apply for IV cases?**
A: Yes. If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the country-specific visa restrictions applicable to his or her country of nationality, and if so, whether the applicant falls within an exception or if a waiver applies under the P.P. IV applicants who do not fit one of the exceptions and who do not qualify for a waiver should be refused EO17 and should be given a refusal letter noting that a waiver is not granted.

## DIVERSITY VISAS

**Q1: Are nationals of countries identified in P.P. 9645 eligible for issuance under the Diversity Visa Program?**
A: P.P. 9645 suspends diversity visa issuance for nationals of every country under the P.P., except Venezuela. In order to qualify for a diversity visa under the P.P. from one of the countries for which diversity visa issuance is suspended, the applicant must be covered by an exception under the P.P., or qualify for a waiver of the P.P. DV applicants for 2018 will continue to be scheduled by KCC and post should interview the applicants. If an applicant is otherwise eligible, the consular officer will need to determine if s/he qualifies for an exception or a waiver pursuant to P.P. 9645.

**Q2: Will the Kentucky Consular Center (KCC) still schedule DV cases for affected nationals?**
A: KCC is scheduling DV appointments for nationals of identified countries for DV 2018 cases.

**Q3: Do waivers or exceptions apply for DV cases?**
A: Although on a case-by-case basis DV cases could fit within an exception or qualify for a

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

waiver and should be evaluated to determine whether they fit within an exception or qualify for a waiver, based on the Department's experience with the DV program, we anticipate that very few DV applicants are likely to be excepted from the P.P.'s suspension or qualify for a waiver. DV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17 and be given a refusal letter indicating that a waiver is not granted.

## INA 221(g) CASES

**Q1:  Is it appropriate to deny cases under INA 221(g) when the applicant is subject to P.P. 9645?**
**A:**  A refusal under 221(g) may be used if necessary to determine whether the applicant is otherwise eligible for a visa under the INA.  However, a final refusal under 221(g) should not be used for an applicant who is otherwise eligible and subject to the P.P. Those applicants should be refused under refusal code EO17.          **LEP**

**Q2:  If post receives the information needed to process a case to issuance under normal circumstances (e.g.,                         LEP , submission of passport, etc.), does the consular officer then reassess the case to determine if it meets one of the exception(s) or waiver  criteria in order to complete processing?**

**A:** If an applicant who was previously refused under INA 221(g) subsequently overcomes the refusal and is determined to be otherwise eligible for a visa, the consular officer must then consider whether the  applicant is subject to the P.P., whether any exceptions apply, and whether the applicant qualifies  for a waiver.  In short, process the case in accordance with the instructions in 9 FAM 302.14-10.

**LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

## NON-VISA TRAVEL DOCUMENTS; PAROLE

**Q1:  Can a visa be placed in a refugee travel document of a national from a country with which we have suspended travel based on P.P. 9645?**
**A:**  A visa may be placed in the refugee travel document of such a national if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645.  However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30): is issued by a competent authority: and shows the bearer's origin, identity, and nationality, if any, which is valid for the admission of the bearer into a foreign country.  See 9 FAM 403.9-3 for guidance on passport requirements.  Once the applicant qualifies for the visa, please use the reciprocity schedule for the country that issued the travel document to determine appropriate visa validity.

LEP

**Q2:  Would an individual identified as being a foreign national admitted or paroled into  the United States on or after the applicable effective date, or a foreign national who has a document other than a visa, valid on the applicable effective date or after be automatically excepted if they apply for a visa?  In other words, if the individual is excepted based on parole, advance parole or other status that permits him or her to travel to the United States and seek entry or admission, and then applies for a visa, is s/he excepted from the P.P. for the visa as well?**
**A:**  Yes, individuals who fit within any exception category of the P.P. are not subject to the P.P. for all purposes.  This is an exception category.

**Q3:  If an applicant from one of the affected countries was approved for humanitarian parole, is he/she excepted from the P.P.?**
**A:**  Any national who is paroled into the United States on or after the applicable effective date is excepted from the visa restrictions.  Please process these requests following current 9 FAM guidance.

**Q4:  Does the P.P. apply to V92 cases?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** The P.P. does not affect V92 applicants, follow-to-join asylees, and post should adjudicate these cases per standard guidance.

**Q5: Does the P.P. affect applicants granted asylum, permanent resident, or other status in a non-restricted country, carrying a travel document, refugee document, or other legal resident document from a non-restricted country, identifying them as a national of one of the restricted countries? In other words, if the applicant does not hold a passport from one of the restricted countries and instead carries some type of travel documentation issued by a non-restricted country that identifies him or her as a national of one of the restricted countries, does the P.P. apply?**
**A:** Yes, the P.P. applies. However, you may issue a visa in a refugee travel document if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645. However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30) and is issued by a competent authority and shows (1) the bearer's origin, (2) identity, and (3) nationality, if any, which is valid for the admission of the bearer into a foreign country. See 9 FAM 403.9-3 for guidance on passport requirements.

Waivers may not be granted categorically to nationals of an affected country who are subject to the P.P.; instead, waivers should be considered based on individual circumstances. One of the individual circumstances listed in the P.P. is Canadian permanent residents who apply for visas at a U.S. consular section in Canada. Consular officers should verify the applicant's Canadian permanent residency status. Consular officers must determinate that the applicant does not pose a threat to U.S. national security or public safety in accordance with additional guidance that was made available in 17 STATE 56801 and ⁣ ⁣ ⁣ ⁣ LEP .

## CURRENT AND PRIOR VISA HOLDERS

**Q1: What should posts do with the physical IV files for applicants that are refused EO17 due to P.P. 9645?**
**A:** Post should maintain possession of the cases just as they would with other IV cases based on the possibility of the applicant overcoming the refusal, including if the applicable restriction in the P.P. is lifted.

**Q2: How should posts deal with cases for nationals of countries subject to the P.P. whose visas were physically cancelled or revoked earlier this year based on E.O. 13769?**
**A:** Certain posts have already been asked to facilitate travel documents for this small group of travelers. The P.P. states that these individuals are entitled to a travel document. Please contact your VO/F post liaison officer for instructions if you are contacted by any individual requesting a travel document under Section 5(d) of the P.P.

**Q3: How does the P.P. apply to previously issued visas?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

A: The P.P. does not apply to an individual who had a valid visa on the applicable effective date in Section 7 of the P.P. In addition, an unrevoked, unexpired visa would generally be valid and therefore the bearer would be permitted to travel.

**Q4: If an applicant from one of the affected countries held a valid visa when E.O. 13769 was issued, but it expired before the applicable effective date under this P.P., is the applicant excepted from the P.P.?**

A: An applicant who held a valid visa on the applicable effective date of the P.P. 9645 for that applicant qualifies for an exception, per 9 FAM 302.14-10(B) (2) paragraph (a)(2). An applicant who held a valid visa when E.O. 13769 was issued, but not on the applicable effective date of the P.P for that applicant, would not qualify for an exception based solely on having held a valid visa. However, such an applicant could qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(3) if the applicant had a visa marked revoked or marked canceled as a result of E.O. 13769 such that the applicant is or was entitled to a visa or other valid travel document under section 6(d) of the P.P.

## VISA REFUSALS

**REVISED Q1: What refusal procedures should post follow?**

A: If the applicant is ineligible on some other ground unrelated to the P.P., post should refuse the application on that basis. Visa applicants should only be refused under INA section 212(f) (although you will use refusal code "EO17" in CLASS) if the visa applicant is otherwise eligible, subject to the restrictions in the P.P. and does not benefit from one of the exceptions to the P.P. You must inform the visa applicant orally and in writing that his or her visa application is refused pursuant to the P.P. and cite to INA 212(f) as the basis.

Before you refuse an applicant under the P.P., you must determine whether the applicant may qualify for a waiver. The waiver decision may not be resolved on the same day as the in-person interview, because **LEP**. Following the interview, you should give the applicant a refusal letter indicating either that a waiver will not be granted or waiver eligibility is under review. In all cases, post should refuse the applicant using CLASS code EO17. **LEP**

It is important that any refusal letter provided by post explicitly reflect that the applicant was considered for a waiver, either by noting a waiver will not be granted or waiver is under review. It is recommended that you retain a copy of the refusal letter provided to the applicant and scan it into the case.

**Q2: What CLASS entries should post make?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-28-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** Post should enter the refusal code "EO17" into NIV or IVO for applicants to whom the restrictions of the P.P. apply and who are not excepted from the P.P. As coordinated with DHS, this code represents a refusal under section 212(f) under the P.P. You should NOT use the refusal code for 221(g) after you have determined that the applicant is otherwise eligible for the visa, but is subject to the P.P. At that point, the only appropriate refusal code will be EO17.

**Q3: What should be included in the text of refusal letters?**
**A:** The following text should be used for NIV, IV, and DV refusals.

Consular officers must use the language below to inform NIV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.
>
> > ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case. However, you may reapply for a visa at any time. If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.
>
> > ☐ The consular officer is reviewing your eligibility for a waiver under the Proclamation. To approve a waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f). You will be contacted with a final determination on your visa application as soon as practicable.

Consular officers must use the language below to inform IV and DV applicants who are refused under Sections 212(f)) of the INA based on the P.P., checking one of the boxes to indicate whether a waiver may be granted.

> This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.
>
> > ☐ Taking into account the provisions of the Proclamation, a waiver will not be

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

granted in your case.

☐  The consular officer is reviewing your eligibility for a waiver.  To approve your waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States.  This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f).  You will be contacted with a final determination on your application as soon as practicable.

**Q4:  What refusal code should be used for applicants refused under P.P.?**
**A:**  Applicants who do not qualify for a visa under the P.P. and do not meet an exception should be refused under refusal code "EO17," not INA 221(g), while post is determining whether the applicant qualifies for a waiver and                   **LEP**.

**REVISED Q5:  How do I proceed with a case for an applicant refused under EO17 if he qualifies for a  waiver?**
**A:**  After confirming the applicant qualifies for a waiver, post must waive the EO17 inadmissibility and annotate the visa foil "Presidential Proclamation Waived" and issue.  This inadmissibility should not be CLOK deleted.

**Q6: When should I send a request to CLOK delete an EO17 refusal?**
A: Post should send a CLOK deletion request for an EO17 lookout when it was entered in error, or if an applicant who was appropriately refused EO17 during a prior application now qualifies for an exception or is applying in a non-designated visa class.                   **LEP**

For cases that do not clearly fit within the above examples, you must obtain concurrence from VO via countries-of-concern-inquiries@state.gov prior to requesting any EO17 CLOK deletion and state that you have received VO concurrence in your CLOK deletion request.

The Department has removed all past EO17 lookouts for Chadian nationals from CLASS due to the lifting of travel restrictions for nationals of Chad per P.P. 9723.  Note that in these cases, the historical record of the refusal will remain in the case in which it was originally entered; it is only the CLASS lookout that will be deleted.

## OTHER ISSUES

**Q1: An applicant was born in a country whose nationals are subject to visa restrictions**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-30-

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

under P.P. 9645.  However, post has determined that the applicant does not have the nationality of his/her country of birth.  Is the applicant still subject to visa restrictions under the P.P.?

**A:**  No.  P.P. 9645 imposes visa restrictions only on nationals of Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia.  If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.

While place of birth may be a good indicator of an applicant's nationality, an applicant's nationality may differ from his/her place of birth, whether because the applicant's place of birth does not have birthright citizenship (like Syria) or because the applicant renounced the citizenship of his/her place of birth.

Even if an applicant is a national of a country designated under the P.P., if the applicant is also a national of a non-designated country (i.e., the applicant is a dual national) and is traveling on a passport issued by a non-designated country, the applicant is excepted from the P.P. per 9 FAM 302.14-10(B)(2) paragraph (a)(7).

If post has sufficient information to determine that the applicant is not a national of a designated country, or that the applicant is a dual national of a non-designated country traveling on a passport issued by a non-designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.                                                                                    **LEP**

**Q2:  An applicant is traveling on a travel document issued by a country whose nationals are subject to visa restrictions under P.P. 9645.  However, the travel document reflects that the applicant is a national of a country whose nationals are not subject to visa restrictions under the P.P.  Is the applicant still subject to visa restrictions under the P.P.?**

**A.** No.  P.P. 9645 imposes visa restrictions only on nationals of Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia.  If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.  While the country of issuance of a travel document may be a good indicator of an applicant's nationality, an applicant's nationality may differ from the county of issuance of his/her travel document.  This may be the case with a refugee who has resettled in a third country or an individual otherwise eligible to receive a travel document of a third country without holding the nationality of that country.

**LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q3:  The P.P. mentions Iraqi nationals.  How do we process Iraqi visa applicants?**
**A:**  Iraqi nationals are not subject to entry restrictions or limitations under the P.P.   LEP

**Q4:  What information may post include on its website concerning the P.P.?**
**A:**  Posts may include translations of information posted on travel.state.gov, but should not add any additional content that has not been cleared by CA.

**Q5:  In what kind of cases does an applicant receive protection under the Convention Against Torture and is therefore excepted from the P.P.?**
**A:**  This factor would not be part of the visa application process and is more intended for DHS consideration of the P.P.

**Q6:  Does the P.P. foreclose the possibility that an applicant could benefit from a regular visa waiver, such as those available through ARIS or from USCIS pursuant to an I-601 application?**
**A:**  No, an applicant could still benefit from an NIV or IV waiver.  In the case of an IV waiver, you would need to refuse the case using the appropriate ground of refusal under INA 212(a).  If USCIS approved the applicant's I-601 waiver and provided the approval to post, you would then evaluate whether the applicant can satisfy P.P. 9645's waiver criteria.

In the case of an NIV waiver, once a consular officer has determined the applicant is eligible for the visa but for the  ground of ineligibility for which the ARIS waiver is required, consular officers should make a determination as to whether an applicant is excepted from the P.P., or whether the applicant qualifies for a P.P. 9645 waiver.  If the applicant has an exception from P.P. or qualifies for a waiver under P.P. 9645, then  clearly document the applicant's exception or waiver under P.P. 9645 in the comments when requesting an ARIS  waiver for an individual from one of the affected nations.  CBP/ARO will adjudicate the  waiver request normally once they see that a consular officer has made the determination that the  applicant is not subject to the suspension and denoted that on the ARIS waiver request.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**November 5, 2018**

**Operational Q&A on P.P. 9645 Travel Restrictions**

**This Q&A is intended to supplement guidance found at 9 FAM 302.14-10 and 304.5.**

**Contents**

BASICS ........................................................................................................... 2
SCOPE ............................................................................................................ 3
EXCEPTIONS ................................................................................................. 4
WAIVERS ........................................................................................................ 7
Waivers: Definitions ...................................................................................... 9
Waivers: Undue Hardship ........................................................................... 12
Waivers: **LEP** ............................................................................................... 18
Waivers: Case Notes and Documentation .................................................. 20
Waivers: Other Issues .................................................................................. 22
NIV ................................................................................................................ 23
IMMIGRANT VISAS ..................................................................................... 24
DV .................................................................................................................. 24
INA 221(g) Cases .......................................................................................... 25
Non-Visa Travel Documents; Parole ........................................................... 26
Current and Prior Visa Holders ................................................................... 27
Visa Refusals ................................................................................................ 28
Other Issues .................................................................................................. 30

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

## BASICS

**Q1:  Following the U.S. Supreme Court's decision in *Trump v. Hawaii* on June 26, 2018, does anything change for the  adjudication of IVs, DVs, and NIVs?**
A:  No.  The guidance in effect immediately prior to the decision remains current.  The Supreme Court's decision did not require any change in the implementation of P.P. 9645.

**Q2: Following P.P. 9723, issued on April 10, 2018, are nationals of Chad still subject to visa restrictions under P.P. 9645?**
A:  No.  While nationals of Chad were initially subject to visa restrictions under P.P. 9645, those restrictions were lifted on April 13, 2018 (at 12:01 a.m. Eastern Daylight Time), per P.P. 9723's amendment of P.P. 9645.  Please see 18 STATE 33378 for additional information on the lifting of visa restrictions for nationals of Chad.  Nationals of Chad who submitted visa applications that were denied EO17 and were not pending consideration of a waiver of P.P. 9645 as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, must submit a new visa application in order to be considered for a visa.  Applications for nationals of Chad that were denied EO17, were pending consideration of a waiver as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, and were not **LEP** at that time may be processed to conclusion without regard to P.P. 9645. Applications for nationals of Chad denied EO17 that were **LEP** as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, may be processed to conclusion in accordance with directions provided **LEP**, once received.  In anticipation of future visa applications, VO has removed all EO17 **LEP** for Chadian nationals.  However, the fact that the applicant was refused under EO17 will remain as part of the historical record within the CCD.

**Q3:  What countries are now subject to P.P. 9645 travel restrictions?**
A:  Iran, Libya, North Korea, Somalia, Syria, Venezuela, and Yemen.  Nationals of these countries are fully  subject to the visa restrictions in the P.P.

**Q4:  How does the P.P. affect adjudication standards for visas?**
A:  Nothing in the P.P. or guidance implementing the P.P. changes the legal standards or implementing guidance for adjudicating an applicant's eligibility for any visa category.  In every case involving a national of one of the seven countries subject to visa restrictions under the P.P., as amended by P.P. 9723, the consular officer  should first determine whether the applicant is otherwise eligible under the INA, without regard  to the P.P.  If you find an applicant ineligible (including under INA section 214(b)), post should  follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include  informing the applicant of the reason for refusal and entering the appropriate refusal code into  NIV or IVO. **LEP**

**LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP



## SCOPE

**Q1:  What visa restrictions does the P.P. impose now that the preliminary injunctions have been lifted?**
**A:**  All the country-specific visa restrictions listed at 9 FAM 302.14-10(B)(1) are in  effect.  After determining that an applicant is otherwise eligible for the visa under the INA, you  should then determine whether the applicant falls within the scope of the country-specific visa  restrictions of the P.P., subject to applicable exceptions and waivers.  Exceptions to the P.P. are  found at 9 FAM 302.14-10(B)(2) and examples of circumstances in which a case-by-case waiver may be appropriate are found at 9 FAM 302.14-10(D) paragraph (d).

**Q2:  Are the travel suspensions under this P.P. temporary?**
**A:**  There is no end date for the visa restrictions in the P.P.; however, the P.P. requires a review every 180 days.

**Q3:  Should consular officers revoke visas based on the P.P.?**
**A:**  No.   Previously issued visas should not be revoked based on the P.P.  Posts should continue to follow existing revocation guidance.

**Q4:  In what situations may a consular officer approve a visa for an individual from one of the affected countries while the visa restrictions are in effect?**
**A:**  Applicants who are subject to the restrictions under the P.P. must be reviewed on a case-by-case basis.  Consular officers may issue a visa to nationals covered by the P.P. only in  cases where the applicant:

> i) Is found otherwise eligible for the visa classification requested under the INA
>     without regard to the  P.P., following completion of all applicable screening
>     requirements; and
> ii)    either
>
> > • Is excepted from the Proclamation; or

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

- Qualifies for a waiver in accordance with the guidance on waivers below.

## EXCEPTIONS

**Q1:**                                                                          LEP



**Q2: How should consular officers annotate visas for applicants that are covered by an exception or qualify for a waiver?**
**A:** "Exception under Proclamation" or "Presidential Proclamation Waived."

Consular officers should annotate the visa "Exception under Proclamation" in all cases where the applicant is covered by the restrictions in the P.P. but meets an exception listed in paragraph 9 FAM 302.14-10(B)(2).

Consular officers should annotate the visa "Presidential Proclamation Waived" in all cases where the applicant is covered by the restrictions in the P.P., does not qualify for an exception listed at 9 FAM 302.14-10(B)(2). but meets the waiver criteria listed at 9 FAM 302.14-10(D).

Interviewing officers must also enter clear case notes stating the specific reason why the applicant is excepted or waived from the P.P.'s visa restrictions.

**Q3: For those who are dual nationals of a country not subject to the P.P. and who are applying for a visa with a travel document from a non-designated country, how should the visa be annotated?**
**A:** A dual national of a country designated under P.P. 9645 and of a country not designated under the P.P. who is traveling on a passport issued by a non-designated country. is excepted from the P.P. If the applicant is otherwise eligible for a visa. the visa should be annotated "Exception under Proclamation" as the applicant meets the exception listed at 9 FAM 302.14-10(B)(2).

**Q4: What are the exceptions for NIV, IV, and DV applicants?**
**A:** The exceptions are listed at 9 FAM 302.14-10(B)(2).   The following are excepted:

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

a) Any national who was in the United States on applicable effective date in Section 7 of the P.P. for that national, regardless of immigration status;

b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;

c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who qualifies for a visa or other valid travel document under section 6(d) of the P.P.;

d) Any lawful permanent resident (LPR) of the United States;

e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;

f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;

g) Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;

h) Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, C-3 visas for individuals seeking to transit the U.S. on official travel, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

**Q5: What are the applicable effective dates for applicants seeking to qualify for an exception per 9 FAM 302.14-10(B)(2) paragraphs (a)(1), (2), (5), or (6)?**
**A:** Applicable effective dates are the dates that the visa restrictions established by P.P.9645 took effect for affected nationals identified in the P.P. The applicable effective date for nationals of Iran, Libya, Somalia, Syria, and Yemen is September 24, 2017, without regard to court orders. The applicable effective date for nationals of Venezuela and North Korea is October 18, 2017. The applicable effective date for nationals of Chad was also October 18, 2017, although P.P. 9723 lifted the visa restrictions on nationals of Chad effective April 13, 2018 (at 12:01 a.m. Eastern Daylight Time).

Individuals covered by P.P. 9645 who possess a valid visa or valid travel document generally will be permitted to travel to the United States, irrespective of when the visa was issued. 9 **LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q6:  What is the difference between an exception from the P.P. and a waiver under the P.P.?**
**A:**  The P.P.'s visa restrictions do not apply to individuals who fall into one or more of the exception categories listed at 9 FAM 302.14-10(B)(2).  In contrast, if an applicant would be subject to a country-specific restriction in the P.P. and does not fall within an exception, the P.P. permits waivers of the P.P.'s restrictions for applicants who qualify under the waiver criteria.

**Q7:  Do consular officers need a consular manager's approval, or Washington approval, to determine an exception applies?**
**A:**  No.  A consular officer may make the determination that an applicant meets the qualifications for an exception from the P.P.  Consular managers at post should determine the workflow that best suits post's specific circumstances.

**Q8:  How should a consular officer document an exception?**
**A:**  When issuing an IV or an NIV to an individual who falls into one of the exception categories, the visa should be annotated to state, "Exception under Proclamation."  Interviewing officers must also enter a clear case note stating the specific reason why the applicant is excepted from the P.P.'s visa restrictions.

**Q9:  The guidance refers to "consular officers."  How does this affect other consular adjudicators?**
**A:**  "Consular officers" refers to individuals duly authorized to adjudicate visa applications.

**Q10:  If an applicant has family members traveling with them, does each applicant need to meet the exception criteria in the P.P.?**
**A:**  A derivative family member may only benefit from an exception if he or she individually meets the conditions of an exception in the P.P.  If family members are traveling together and do not all benefit from an exception, consular officers should consider that factor in evaluating the applicants' waiver qualifications.

**Q11:  What should we tell the public about exceptions?**
**A:** Public talking points can be found on CA Web.

**Q12: I understand that any national who had a valid visa on the applicable effective date of the P.P. qualifies for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2).  What about applicants who were issued visas after the applicable effective date and were either admitted or paroled into the United States?  How should posts process their applications under the P.P.?**
**A:** 9 FAM 302.14-10(B)(2) paragraph (a)(5) lists an exception from the P.P.'s visa restrictions for "any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P. for that national."  If you can confirm that an applicant was admitted or paroled into the United States after the P.P. went into effect, then the applicant is excepted from the P.P.  Issuance of a visa after the effective date without proof of subsequent admission to the United States will not trigger this exception.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q13: Would an applicant still qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2) if the applicant used his/her single-entry visa prior to the applicable effective date?  In other words, is a single-entry visa still considered valid after the applicant has been admitted to the United States?**
A: No.  If the applicant has been admitted to the U.S. on a single-entry visa to the United States prior to the applicable effective date for that national, then the applicant would not qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2).  The single-entry visa must not be considered valid after the applicant has been admitted to the U.S., since the applicant could no longer utilize the visa to make an application to an immigration officer at a port of entry for admission into the United States (see 9 FAM 102.3-22(c) for more information on the definition of visa validity).  While the applicant will not qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2), consular officers should ensure that they also evaluate the applicant for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(1), since the applicant may have been in the United States on the applicable effective date.

**Q14: Would an applicant still qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2) if the visa that was valid on the applicable effective date was later revoked?**
A: Yes.  If the visa was a valid visa for the purposes of travel on the applicable effective date, then the applicant would qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(2).  The fact that the Department of State later revoked the visa (e.g., the applicant was no longer qualified for that particular visa classification or there was an error made regarding the validity period or number of entries) does not change the fact that the visa was valid on the applicable effective date.  Note that visa revocations are typically effective immediately or upon an alien's departure from the United States if the alien is in the United States.  See 9 FAM 403.11-4(A)(2) for more information.

**NEW Q15:  How should we apply the exception at 9 FAM 302.14-10(B)(2) paragraph (a)(3) for individuals whose visas were "marked revoked or marked canceled as a result of Executive Order 13769?"  Weren't all visas for affected nationalities provisionally revoked as a result of EO 13769, the first iteration of the travel restrictions?  And would those provisionally revoked visas count as being "marked revoked or marked canceled" per 9 FAM 302.14-10(B)(2) paragraph (a)(3)?**
A:  EO 13769 suspended entry into the United States for applicants from the following countries for 90 days as of January 27, 2017: Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen, subject to some exceptions.  On January 28, 2017, the Department issued guidance in 17 STATE 8708 provisionally revoking valid visas issued to any affected nationals.  These provisional revocations were lifted on February 3, 2017, in accordance with a ruling from the federal district court in Washington State (see 17 STATE 11004).  Consequently, if a visa applicant can prove to the satisfaction of the consular officer that they were affected by the provisional revocations in place as a result of EO 13769, then that visa applicant would qualify for the exception at 9 FAM 302.14-10(B)(2) paragraph (a)(3).  The visa foil does not need not be physically cancelled nor does the revocation need to have been entered in the systems for a consular officer to find that their visa was "marked revoked or marked canceled."

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q16:  Does an SB-1 (returning resident) IV applicant qualify for the LPR exception in 9 FAM 302.14-10(B)(2) paragraph (a)(4)?**
A: Prior to applying for an SB-1 IV, the applicant must obtain an approved DS-117, which is confirmation that the consular officer has determined that the applicant is an LPR.  Consequently, SB-1 IV applicants qualify for the LPR exception in in 9 FAM 302.14-10(B)(2) paragraph (a)(4). Conversely, if the consular officer were to disapprove the DS-117 application, then the applicant would not qualify for the LPR exception in in 9 FAM 302.14-10(B)(2) paragraph (a)(4).

**Q17: Does the dual national exception at 9 FAM 302.14-10(B)(2) paragraph (a)(7) also apply to Iranian F, M, and J applicants and Somali NIV applicants or does the consular officer still need to          LEP    in these cases?**
A:  While Iranian F, M, and J applicants and Somali NIV applicants are not subject to the visa restrictions of P.P. 9645,                                                                              **LEP**

regardless of whether they are travelling on a passport issued by a non-designated country. Because they are not subject to the visa restrictions in P.P. 9645, no P.P 9645 exceptions, including the dual national exception or waiver instructions, apply to this population.  In addition to the          **LEP**  for these applicants, consular officers should always review the FAM to evaluate whether there is any other reason to          **LEP**

**Q18:  Does the asylee/refugee exception in 9 FAM 302.14-10(B)(2) paragraph (a)(9) apply to applicants who were granted Temporary Protected Status?**
A:  No.  Unlike the other statuses mentioned in 9 FAM 302.14-10(B)(2) paragraph (a)(9). TPS is a temporary benefit that does not lead to lawful permanent resident status.  A current or former TPS recipient would not be eligible for an exception under 9 FAM 302.14-10(B)(2) paragraph (a)(9).

## WAIVERS

**REVISED Q1:  The guidance in paragraph 25 of 17 STATE 97682 instructed officers to submit some  waiver-related questions to VO/L/A for an Advisory Opinion while 9 FAM 302.14-10(D) paragraph (f)  instructs officers to submit waiver-related questions to countries-of-concern-inquiries@state.gov.  How does this process work?**
A: If the applicant does not fit under one of the undue hardship and national interest waiver examples at 9 FAM 302.14-10(D) paragraph (d), but the interviewing consular officer and consular  manager believe that the applicant meets the undue hardship and national interest requirements  for the waiver for other reasons, the consular officer should email the "countries-of-concern"  mailbox and include the facts they believe meet the undue hardship and national interest  requirements.  If the Visa Office concurs that a waiver may be justified, then post should determine if the national security/public safety requirement is met per 17 STATE 56801 and          **LEP** if the applicant is **LEP**                    .

**Q2: What are the waiver criteria for NIV, IV, and DV applicants?**
A:  Consular officers may grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Criterion #1)**  Denying entry during the suspension period would cause undue hardship to the applicant –To establish that visa denial under the P.P. will cause **undue hardship**, the applicant must demonstrate to the consular officer's satisfaction that (1) an unusual situation exists that compels immediate travel by the applicant (for further information on what generally constitutes an "unusual situation that compels immediate travel" see the questions and answers under "Waivers: Undue Hardship," below) **and** (2) delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

**Criterion #2)**  His or her entry would be in the national interest – The requirement for issuance to be in the **national interest** may be met *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.  For the purpose of implementing the P.P., a U.S. person or entity includes a U.S. citizen, a lawful permanent resident, an alien who is lawfully present in the United States, and a corporation, partnership, or other organization active and operating within the United States.

**Criterion #3)**  His or her entry would not pose a threat to national security or public safety of the United States.  Additional information on satisfying this test was made available in 17 STATE 56801.                                          **LEP**

**Q3:  Who can grant a waiver?**
**A:**  The P.P. permits consular officers, with the concurrence of the visa chief (NIV or IV) or consular section chief, and following required administrative processing, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the following criteria apply:
  a) denying entry would cause undue hardship to the applicant;
  b) his or her entry would be in the national interest; and
  c) his or her entry would not pose a threat to national security or public safety.

The P.P. also authorizes Customs and Border Protection (CBP) to grant waivers, but provides that any waiver issued by a consular officer is effective both for the issuance of a visa and for any subsequent entry on that visa.  CBP has confirmed that it intends to honor waivers approved by consular officers during the adjudication of the visa application.

P.P.  Section 3(c) identifies several examples of circumstances in which a waiver may be appropriate, subject to a case-by-case determination that the three requirements above have been met, if the applicant is found otherwise eligible for the visa requested following completion of all applicable screening requirements.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q4: Does the consular officer have to consider a waiver for every applicant who is subject to the restrictions of the P.P., otherwise eligible for a visa, and to whom an exception does not apply?**

A: Yes. each applicant who meets the conditions described in the question posed above must be considered for a waiver, based on the purpose of travel and any other information provided by the applicant. However, if the applicant fails to meet any one of the three waiver criteria outlined in PP 9645. the officer may proceed to refuse the case under refusal code EO17. Consular officers should check the appropriate box on the visa denial letter given to applicants subject to the P.P., indicating either that a waiver will not be granted or that waiver eligibility is being reviewed.

**WAIVERS: DEFINITIONS**

**REVISED Q1: How should consular officers apply the phrase "close family member" in 9 FAM 302.14-10(D) paragraph (d)(4) with respect to waivers under the P.P.?**
A: The term "child. spouse. or parent" should generally be understood to be consistent with the definition of "immediate relative" at INA 201(b) & 9 FAM 502.2-2(B). Although the INA definition only includes child. spouse. or parent of a U.S. citizen. P.P.9645 also includes these relationships with LPRs and aliens lawfully admitted into the United States on a valid nonimmigrant visa. The term "child" generally refers to an unmarried person under 21 years of age.

If a consular officer believes that an applicant may be eligible for a waiver per 9 FAM 302.14-10(D) paragraph (d)(4) because the applicant seeks to enter the United States to visit or reside with a close family member, but the close family member is not a child. spouse. or parent, then the consular officer may submit an email to countries-of-concern-inquiries@state.gov.   **LEP**

**Q2: One of the requirements for all waivers under P.P. section 3(c) is that barring travel would cause "undue hardship." What constitutes "undue hardship"? What are some examples?**
A: To establish that visa denial under the P.P. will cause undue hardship. the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel. For further information on assessing "undue hardship." see the questions and answers under "Waivers: Undue Hardship," below.

**Q3: Another requirement for a waiver under P.P. section 3(c) is that entry would be in the "national interest?" What constitutes national interest? What are some examples?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:** An applicant may meet the national interest condition *if a U.S. person or entity* would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

The visa referral or priority appointment request could impact the national interest determination for the waiver, particularly for cases sent to VO for consideration. However, each determination is still made on a case-by-case basis, and a referral or priority appointment request is not one of the waiver categories listed in the P.P. If the case doesn't clearly fit into one of the waiver categories, please follow the instructions in the operational ALDAC and email the case to countries-of-concern-inquiries@state.gov.

**Q4: What are some examples of applicants who may be eligible for waivers?**
**A:** Examples of circumstances in which a case-by-case waiver may be appropriate are listed at 9 FAM 302.14-10(D) paragraph (d). Consular officers may not categorically grant waivers. Each case must be considered on its own merit.

a) The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

b) The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;

c) The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

d) The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

e) The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f) The applicant has been employed by, or on behalf of, the U.S. government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. government;

g) The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the U.S. government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h) The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i) The applicant is traveling as a U.S. government-sponsored exchange visitor; or

j) The applicant is traveling to the United States at the request of a U.S. government

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

department or agency for legitimate law enforcement, foreign policy, or national security purposes.

**REVISED Q5:  What does "would not pose a threat to national security or public safety" mean?**
A:                                                                                                    LEP

**Q6:  For purposes of waivers under P.P. Section 3(c)(iv)(B), what are "previously established significant contacts with the United States?"**
A:  "Previously established significant contacts" are contacts established prior to issuance of the P.P., generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current, opportunity.

**Q7:  For purposes of waivers under P.P. Section 3(c)(iv)(C), what are "significant business or professional obligations?"  What are some examples?**
A:  "Significant business or professional obligations" in this context, refer to events or activities in the United States that must occur on or before specified dates, and the applicant's failure to attend by the required date could result in substantial harm to existing or potential commercial relationships.  Qualifying commercial relationships generally would be expected to currently generate income, have significant potential to do so in the future, or affect a large number of people.  Examples could include:  business meetings or trade shows that promote investment in the United States or by the United States in the host country; presenting at a large conference by an applicant who is an expert in the relevant field; a contractual requirement to provide service or installation by an applicant with specialized knowledge; Locally Employed Staff traveling to the United States for training required for their positions; or starring in a cultural performance in the United States.

**REVISED Q8:  The P.P. describes a waiver category for infants, young children, and individuals  needing urgent medical care, and also references waivers for others whose entry is  "otherwise justified by the special circumstances of the case."  What constitutes "special  circumstances" under PP Section 3(c)(iv)(E)?  What age are "young children?"**
A:  In this context, "special circumstances" will be case-specific, but may include LEP
_____ or other humanitarian reasons for travel.  Waivers based on special circumstances other than the examples set forth at 9 FAM 302.14-10(D) paragraph (d) require a consular chief approval and submission of an email to countries-of-concern-inquiries@state.gov.  If the Visa Office concurs that the special circumstances meets the undue  hardship and national interest criteria a waiver may be appropriate.                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

"Young" children generally include those beyond infancy but not beyond primary or elementary school age. In general, this would match our interview/fingerprint requirements, meaning younger than 14.

**Q9: What kind of documentation is needed for a waiver under Section 3(c)(iv)(F) to prove that someone employed by, or on behalf of, the U.S. government has "provided faithful and valuable service to the U.S. government?"**
**A:** For Locally Employed Staff SIV applicants, this requirement has been satisfied by the COM committee's recommendation.

## WAIVERS: UNDUE HARDSHIP

**Q1: How should I evaluate "undue hardship" when considering waiver eligibility?**
**A:** PP 9645 allows consular officers to grant waivers on a case-by-case basis if three conditions are met, including that the applicant can demonstrate denial of entry would cause undue hardship to the applicant. 9 FAM 302.14-10(D) paragraph (b) addresses undue hardship, noting that the applicant must demonstrate that "an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions…are lifted would defeat the purpose of travel."



LEP

**Q2: Many of the applicants subject to the P.P. come from, or currently reside in, conflict zones or countries with difficult conditions. May consular officers consider these conditions when evaluating undue hardship?**
**A:** No. Consular officers should not consider applicants' home country or third country conditions when evaluating undue hardship.

**Q3: For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

consider          **LEP** **to the applicant?**

**A:**                                                                                      LEP

**Q4:  Where should we draw the line with regard to potential          LEP?**

**A:**                                                                                      LEP

**Q5:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I
consider          LEP to the applicant?**

**A:**                                                                                      LEP

**Q6:  Where should we draw the line with regard to potential          LEP?**

**A:**                                                                                      LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

LEP

**Q7:  Determining Undue Hardship**   LEP

**A:** 9   LEP

LEP

LEP

**Q8:  Would the "spouse" of an unconsummated proxy marriage qualify as a close family member for waiver purposes?**
**A:**  No.  As the applicant's marriage has not been consummated, the applicant does not qualify as a spouse in the immigration context and therefore would also not qualify for a waiver based solely on his or her relationship as the "spouse" to a U.S. citizen, LPR, or alien in lawful NIV status in the United States.

**Q9:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I consider   LEP to the applicant?**
**A:**   LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q10:  Where should we draw the line with regard to**                    LEP ?
**A:**                                                                       LEP

LEP

LEP

**Q11:  Where should we draw the line with regard to**                    LEP

**A:**                                                                      LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

AR-138

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

**Q12:  For which waiver scenarios listed at 9 FAM 302.14-10(D) paragraph (d) should I consider**          LEP ?

A:          LEP

**Q13:  Where should we draw the line with regard to**          LEP ?

A:          LEP

**Q14:  What if the applicant would be subject to**          LEP
?

A:          LEP

**Q15:  How should I evaluate hardship when a group of applicants is applying as a family?**
A:  Derivative applicants are not automatically eligible for a waiver just because the principal applicant was found eligible for a waiver.   Each applicant in the family unit would need to be evaluated individually, based on the totality of the circumstances.  If you determine that the principal applicant satisfies the undue hardship requirement, you may consider the hardship that would be caused to his or her derivatives were the principal applicant to travel to the United States without the family.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q16:  Does the national interest determination have any effect on undue hardship?**
**A:**  Yes.  The required level of hardship to an applicant may vary with the level of U.S. national interest in facilitating the applicant's travel to the United States.    When assessing national interest, consular officers should consider hardship suffered by a U.S. person or entity, per 9 FAM 302.14-10(D) paragraph (c).  If an applicant's travel is related to a program or policy objective of the U.S. government, then the national interest can be considered higher, and the hardship to  the applicant would not need to be as severe.


**Q17:  How do we apply the undue hardship standard to applicants who are Canadian permanent residents who are applying for a visa at a location within Canada?**
**A:**  We have an overriding national interest in matters implicating our bilateral relationship with Canada.  We also have an excellent information sharing relationship with Canada and have full faith in identifying information Canada provides.  In light of this relationship, and given the longstanding and extensive travel by this category of applicants to the United States, any curtailment of their travel generally may be considered undue hardship.


**Q18:  How should consular officers document undue hardship in case notes?**
**A:**  Consular officers should clearly note the undue hardship, which generally requires existence of an unusual situation that compels immediate travel (for further information on what generally constitutes an "unusual situation that compels immediate travel" see the questions and answers under "Waivers: Undue Hardship") by the applicant and that delaying visa  issuance and the associated travel plans until after visa restriction imposed with respect to  nationals of that country are lifted would defeat the purpose of travel.    Case notes should include  the facts supporting this conclusion, or some other clear bases for finding undue hardship.


**WAIVERS:**   LEP


**Q1:**                                                                                    LEP
**A:**                                                                       LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-18-
**AR-140**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

-   LEP

  LEP

**REVISED**   LEP

**A:**   LEP

  LEP

**Q3:**   LEP

**A:**   LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

LEP

**REVISED**                                                                                        LEP

A:                                                                                                 LEP

Q5:                                                                                                LEP

A:                                                                                                 LEP

Q6:                                                                                                LEP

A:                                                                                                 LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
**LEP**

## WAIVERS:  CASE NOTES AND DOCUMENTATION

**Q1:  How should consular officers document the national interest in case notes?**
**A:**  To document national interest. the consular officer may write in case notes. "national interest requirements satisfied based on harm to [identify U.S. person or entity]" or describe other material U.S. interest.  Do not identify the U.S. person or entity by name. e.g., do not use "Jane Smith."   Rather, name the U.S. person by relationship. e.g.. "spouse living in Michigan" or describe the U.S. entity. e.g.. "U.S. community college."  Case notes should include  the facts supporting this conclusion. or some other clear bases for finding national interest.

**REVISED Q2:  How should consular officers document that an applicant "would not pose a threat to  national security or public safety?"**
**A:**  To establish that an applicant's entry would not pose a threat to national security or public safety of the United States a                                                                                    **LEP**

                                    he consular officer must document that the applicant meets the national security/public safety requirement for a waiver under the P.P. by adding appropriate case notes. including a note                                                                              **LEP**




**Q3:  How should consular officers document waiver decisions in case notes?**
**A:**  Consular officers must reflect the category of waiver for which the applicant is eligible by including supporting facts and  noting:

    1)  the category of waiver for which the applicant is eligible (i.e.. citing the text from 9 FAM 302.14-10 or the Operational Q&A);
    2)  the undue hardship caused by denying entry during the suspension;
    3) the national interest;
    4)  that "no threat" was determined in accordance with CLASSNET guidance.
                                                   **LEP** and

    5)  the position title of the manager concurring with the waiver (not the actual name of the  officer) and VO concurrence received through countries-of-concern-inquiries@state.gov (if applicable). Sole consular officers do not need concurrence from their supervisor for waivers  or exceptions. but should seek VO concurrence on their decisions to grant waivers through countries-of-concern-inquiries@state.gov
                                **LEP** _

LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION



LEP

**Q4:  How should consular officers document support from the Chief of Mission or Assistant Secretary concerning a case in the national interest?**
**A:**  Please make a case note in the system noting the COM or A/S support.

**Q5:  Should post add the name of the manager that approved the waiver?**
**A:**  No.   The title of the manager is sufficient.   The name should not be noted in the case notes.

**WAIVERS:  OTHER ISSUES**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q1: For cases other than urgent medical needs, what is the estimated time frame for CA to respond to questions relating to waivers? Are there options to expedite responses?**
**A:** In urgent cases, a response from the Visa Office can be provided within one business day, provided that the Visa Office has all the information needed. If additional information is needed from post or if a case requires further discussion with other offices and agencies, the response may take longer and could take a week or more.

**REVISED Q2: How long will it take to issue a waiver?**
**A:** The granting of a waiver under the P.P is a decision that is made by the consular officer and the manager as part of the adjudication. Because every waiver applicant who is LEP

requires                                                                    LEP

there will be some delay.

**Q3: If an applicant is not eligible for a waiver, how does the consular officer process the case?**
**A:** NIV, DV, and IV applicants who are otherwise eligible for the visa, but who do not have an exception from the P.P.'s suspension of entry provision and who do not qualify for a waiver should be refused with the code "EO17," which indicates a refusal under INA 212(f). Post should follow established refusal procedures in 9 FAM 403.10-3 and 9 FAM 504.11-3, which include informing the applicant of the reason for refusal and entering the appropriate refusal code into NIV, or IVO – here "EO17". The consular officer should provide the applicant a denial letter noting the applicant will not be granted a waiver of the P.P.

**Q4: In a single-officer section, or for cases adjudicated by the Consular Section Chief in a small section, may the Consular Section Chief self-certify eligibility for a waiver?**
**A:** The consular section chief in a sole officer must receive concurrence from the Consular Country Coordinator if part of a multi-post mission or from VO via an email to countries-of-concern-inquiries@state.gov.

**Q5: What should we tell the public about waivers?**
**A:** Public talking points can be found on CA Web.

**REVISED Q6: A consular officer is considering whether an applicant is eligible for a waiver but there are serious concerns about the validity of the applicant's identity. How should the consular officer proceed?**
**A.**                                                                    LEP

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

LEP

## NONIMMIGRANT VISAS

**Q1:  May I issue diplomatic visas for government officials who are nationals of the countries identified in the P.P.?**
A:  Per 9 FAM 302.14-10(B) paragraph (2)(a)(8). nationals traveling on a diplomatic (A-1 or A-2). or diplomatic type (of any visa classification). NATO 1-6 visa. C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa are excepted from the P.P. The exception also includes  C-3 visas for individuals seeking to transit the U.S. on official travel.  The exception does not  extend to certain Venezuelan government officials and their family members traveling on a  diplomatic type B-1, B-2, or B-1/B-2 visa.  Applicants who do not fall within an exception may  be considered for a waiver on a case-by-case basis.

**Q2:  Who are considered "officials of government agencies" for processing visa restrictions on Venezuelan nationals of this P.P.?**
A:                                                                                                         LEP


**Q3:  Are derivative family members of Venezuelan government officials treated the same as the officials?**
A:                                                                                                         LEP


**Q4. Are K visas treated as NIVs for purposes of P.P. 9645 restrictions?**
A:  Yes.


## IMMIGRANT VISAS

**Q1:  May posts transfer to another post IV cases for applicants who are nationals of the countries named in the P.P.?**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
AR-146

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**A:**  Yes. posts may transfer IV cases to another post for affected applicants using the standard criteria to assess any transfer requests.

**Q2:  Will NVC still schedule IV cases in all categories?**
**A:**  The National Visa Center (NVC) will continue to schedule IV appointments for all categories and all nationalities.

**Q3:  Do waivers or exceptions apply for IV cases?**
**A:**  Yes.  If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the country-specific visa restrictions applicable to his or her country of nationality, and if so, whether the applicant falls within an exception or if a waiver applies under the P.P.  IV applicants who do not fit one of the exceptions and who do not qualify for a waiver should be refused EO17 and should be given a refusal letter noting that a waiver is not granted.

## DIVERSITY VISAS

**Q1:  Are nationals of countries identified in P.P. 9645 eligible for issuance under the Diversity Visa Program?**
**A:**  P.P. 9645 suspends diversity visa issuance for nationals of every country under the P.P.. except Venezuela.  In order to qualify for a diversity visa under the P.P. from one of the countries for which diversity visa issuance is suspended. the applicant must be covered by an exception under the P.P.. or qualify for a waiver of the P.P.  DV applicants for 2018 will continue to be scheduled by KCC and post should interview the applicants.  If an applicant is otherwise eligible. the consular officer will need to determine if s/he qualifies for an exception or a waiver pursuant to P.P. 9645.

**Q2:  Will the Kentucky Consular Center (KCC) still schedule DV cases for affected nationals?**
**A:**  KCC is scheduling DV appointments for nationals of identified countries for DV 2018 cases.

**Q3:  Do waivers or exceptions apply for DV cases?**
**A:**  Although on a case-by-case basis DV cases could fit within an exception or qualify for a waiver and should be evaluated to determine whether they fit within an exception or qualify for a waiver, based on the Department's experience with the DV program. we anticipate that very few DV applicants are likely to be excepted from the P.P.'s suspension or qualify for a waiver.  DV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17 and be given a refusal letter indicating that a waiver is not granted.

## INA 221(g) CASES

**Q1:  Is it appropriate to deny cases under INA 221(g) when the applicant is subject to P.P.**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**9645?**

**A:**  A refusal under 221(g) may be used if necessary to determine whether the applicant is otherwise eligible for a visa under the INA.  However, a final refusal under 221(g) should not be used for an applicant who is otherwise eligible and subject to the P.P.  Those applicants should be refused under refusal code EO17.                                                **LEP**

**REVISED Q2:  If post receives the information needed to process a case to issuance under normal  circumstances (e.g.,                         LEP, submission of passport, etc.), does the consular officer then reassess the case to determine if it meets one of the exception(s) or waiver  criteria in order to complete processing?**

**A:**  If an applicant who was previously refused under INA 221(g) subsequently overcomes the refusal and is determined to be otherwise eligible for a visa, the consular officer must then consider whether the  applicant is subject to the P.P.. whether any exceptions apply, and whether the applicant qualifies  for a waiver.  In short. process the case in accordance with the instructions in 9 FAM 302.14-10.

Note:                                                                                                        **LEP**

**NON-VISA TRAVEL DOCUMENTS; PAROLE**

**Q1:  Can a visa be placed in a refugee travel document of a national from a country with**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

which we have suspended travel based on P.P. 9645?

**A:** A visa may be placed in the refugee travel document of such a national if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645. However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30): is issued by a competent authority; and shows the bearer's origin, identity, and nationality, if any, which is valid for the admission of the bearer into a foreign country. See 9 FAM 403.9-3 for guidance on passport requirements. Once the applicant qualifies for the visa, please use the reciprocity schedule for the country that issued the travel document to determine appropriate visa validity.



LEP

**Q2: Would an individual identified as being a foreign national admitted or paroled into the United States on or after the applicable effective date, or a foreign national who has a document other than a visa, valid on the applicable effective date or after be automatically excepted if they apply for a visa? In other words, if the individual is excepted based on parole, advance parole or other status that permits him or her to travel to the United States and seek entry or admission, and then applies for a visa, is s/he excepted from the P.P. for the visa as well?**

**A:** Yes, individuals who fit within any exception category of the P.P. are not subject to the P.P. for all purposes. This is an exception category.

**Q3: If an applicant from one of the affected countries was approved for humanitarian parole, is he/she excepted from the P.P.?**

**A:** Any national who is paroled into the United States on or after the applicable effective date is excepted from the visa restrictions. Please process these requests following current 9 FAM guidance.

**Q4: Does the P.P. apply to V92 cases?**

**A:** The P.P. does not affect V92 applicants, follow-to-join asylees, and post should adjudicate these cases per standard guidance.

**REVISED Q5: Does the P.P. affect applicants granted asylum, permanent resident, or other status in a non-restricted country, carrying a travel document, refugee document, or other legal resident document from a non-restricted country, identifying them as a national of one of the restricted countries? In other words, if the applicant does not hold a passport from one of the restricted countries and instead carries some type of travel documentation issued by a non-restricted country that identifies him or her as a national**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
-27-
AR-149

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

of one of the restricted countries, does the P.P. apply?

A: Yes, the P.P. applies. However, you may issue a visa in a refugee travel document if the consular officer determines that the applicant is otherwise eligible for a visa under the INA and subsequently determines that the applicant qualifies for an exception or waiver under P.P. 9645. However, the consular officer must first determine whether refugee travel document meets the definition of passport as provided by INA 101(a)(30) and is issued by a competent authority and shows (1) the bearer's origin, (2) identity, and (3) nationality, if any, which is valid for the admission of the bearer into a foreign country. See 9 FAM 403.9-3 for guidance on passport requirements.

Waivers may not be granted categorically to nationals of an affected country who are subject to the P.P.; instead, waivers should be considered based on individual circumstances. One of the individual circumstances listed in the P.P. is Canadian permanent residents who apply for visas at a U.S. consular section in Canada. Consular officers should verify the applicant's Canadian permanent residency status. Consular officers must determinate that the applicant does not pose a threat to U.S. national security or public safety in accordance with additional guidance that was made available in 17 STATE 56801 and                                      LEP

## CURRENT AND PRIOR VISA HOLDERS

**Q1:  What should posts do with the physical IV files for applicants that are refused EO17 due to P.P. 9645?**

A: Post should maintain possession of the cases just as they would with other IV cases based on the possibility of the applicant overcoming the refusal, including if the applicable restriction in the P.P. is lifted.

**Q2:  How should posts deal with cases for nationals of countries subject to the P.P. whose visas were physically cancelled or revoked earlier this year based on E.O. 13769?**

A: Certain posts have already been asked to facilitate travel documents for this small group of travelers. The P.P. states that these individuals are entitled to a travel document. Please contact your VO/F post liaison officer for instructions if you are contacted by any individual requesting a travel document under Section 5(d) of the P.P.

**Q3:  How does the P.P. apply to previously issued visas?**

A: The P.P. does not apply to an individual who had a valid visa on the applicable effective date in Section 7 of the P.P. In addition, an unrevoked, unexpired visa would generally be valid and therefore the bearer would be permitted to travel.

**Q4:  If an applicant from one of the affected countries held a valid visa when E.O. 13769 was issued, but it expired before the applicable effective date under this P.P., is the applicant excepted from the P.P.?**

A: An applicant who held a valid visa on the applicable effective date of the P.P. 9645 for that

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

applicant qualifies for an exception. per 9 FAM 302.14-10(B) (2) paragraph (a)(2). An applicant who held a valid visa when E.O. 13769 was issued, but not on the applicable effective date of the P.P for that applicant, would not qualify for an exception based solely on having held a valid visa. However, such an applicant could qualify for an exception per 9 FAM 302.14-10(B)(2) paragraph (a)(3) if the applicant had a visa marked revoked or marked canceled as a result of E.O. 13769 such that the applicant is or was entitled to a visa or other valid travel document under section 6(d) of the P.P.

## VISA REFUSALS

**REVISED Q1: What refusal procedures should post follow?**
**A:** If the applicant is ineligible on some other ground unrelated to the P.P., post should refuse the application on that basis. Visa applicants should only be refused under INA section 212(f) (although you will use refusal code "EO17" in CLASS) if the visa applicant is otherwise eligible, subject to the restrictions in the P.P., and does not benefit from one of the exceptions to the P.P. You must inform the visa applicant orally and in writing that his or her visa application is refused pursuant to the P.P. and cite to INA 212(f) as the basis.

Before you refuse an applicant under the P.P., you must determine whether the applicant may qualify for a waiver. The waiver decision may not be resolved on the same day as the in-person interview, because for applicants **LEP**              **LEP** is required before a waiver can be granted. Following the interview, you should give the applicant a refusal letter indicating either that a waiver will not be granted or waiver eligibility is under review. In all cases, post should refuse the applicant using CLASS code EO17.                                        **LEP**

It is important that any refusal letter provided by post explicitly reflect that the applicant was considered for a waiver, either by noting a waiver will not be granted or waiver is under review. It is recommended that you retain a copy of the refusal letter provided to the applicant and scan it into the case.

**Q2: What CLASS entries should post make?**
**A:** Post should enter the refusal code "EO17" into NIV or IVO for applicants to whom the restrictions of the P.P. apply and who are not excepted from the P.P. As coordinated with DHS, this code represents a refusal under section 212(f) under the P.P. You should NOT use the refusal code for 221(g) after you have determined that the applicant is otherwise eligible for the visa, but is subject to the P.P. At that point, the only appropriate refusal code will be EO17.

**Q3: What should be included in the text of refusal letters?**
**A:** The following text should be used for NIV, IV, and DV refusals.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

Consular officers must use the language below to inform NIV applicants who are refused under Sections 212(f)) of the INA based on the P.P.. checking one of the boxes to indicate whether a waiver may be granted.

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

☐ Taking into account the provisions of the Proclamation. a waiver will not be granted in your case. However, you may reapply for a visa at any time. If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again. and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.

☐ The consular officer is reviewing your eligibility for a waiver under the Proclamation. To approve a waiver. the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States. and that your entry would be in the national interest of the United States. This can be a lengthy process. and until the consular officer can make an individualized determination on these three factors. your visa application will remain refused under Section 212(f). You will be contacted with a final determination on your visa application as soon as practicable.

Consular officers must use the language below to inform IV and DV applicants who are refused under Sections 212(f)) of the INA based on the P.P.. checking one of the boxes to indicate whether a waiver may be granted.

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

☐ Taking into account the provisions of the Proclamation. a waiver will not be granted in your case.

☐ The consular officer is reviewing your eligibility for a waiver. To approve your waiver. the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process. and until the consular officer can make an individualized determination on these three factors.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION
your application will remain refused under Section 212(f).  You will be contacted
with a final determination on your application as soon as practicable.

**Q4:  What refusal code should be used for applicants refused under P.P.?**
**A:**  Applicants who do not qualify for a visa under the P.P. and do not meet an exception should
be refused under refusal code "EO17." not INA 221(g). while post is determining whether the
applicant qualifies for a waiver                      **LEP** .

**Q5:  How do I proceed with a case for an applicant refused under EO17 if he qualifies for a
waiver?**
**A:**  After confirming the applicant qualifies for a waiver. post must waive the EO17
inadmissibility and annotate the visa foil "Presidential Proclamation Waived" and issue.  This
inadmissibility should not be CLOK deleted.

**Q6: When should I send a request to CLOK delete an EO17 refusal?**
A: Post should send a CLOK deletion request for an EO17 lookout when it was entered in error. or
if an applicant who was appropriately refused EO17 during a prior application now qualifies for an
exception or is applying in a non-designated visa class.                      **LEP**

For cases that
do not clearly fit within the above examples. you must obtain concurrence from VO via countries-
of-concern-inquiries@state.gov prior to requesting any EO17 CLOK deletion and state that you
have received VO concurrence in your CLOK deletion request.

The Department has removed all past EO17 lookouts for Chadian nationals from CLASS due to
the lifting of travel restrictions for nationals of Chad per P.P. 9723.  Note that in these cases. the
historical record of the refusal will remain in the case in which it was originally entered: it is only
the CLASS lookout that will be deleted.

## OTHER ISSUES

**Q1:  An applicant was born in a country whose nationals are subject to visa restrictions
under P.P. 9645. However, post has determined that the applicant does not have the
nationality of his/her country of birth.  Is the applicant still subject to visa restrictions under
the P.P.?**
**A:**  No.  P.P. 9645 imposes visa restrictions only on nationals of Iran. Libya. North Korea. Syria.
Venezuela. Yemen. and Somalia.  If post has determined that a visa applicant is not a national of
one of these countries. then the P.P. does not apply to the applicant.

While place of birth may be a good indicator of an applicant's nationality. an applicant's

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

nationality may differ from his/her place of birth, whether because the applicant's place of birth does not have birthright citizenship (like Syria) or because the applicant renounced the citizenship of his/her place of birth.

Even if an applicant is a national of a country designated under the P.P., if the applicant is also a national of a non-designated country (i.e., the applicant is a dual national) and is traveling on a passport issued by a non-designated country, the applicant is excepted from the P.P. per 9 FAM 302.14-10(B)(2) paragraph (a)(7).

If post has sufficient information to determine that the applicant is not a national of a designated country, or that the applicant is a dual national of a non-designated country traveling on a passport issued by a non-designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.                                                           **LEP**

**LEP**

**Q2:  An applicant is traveling on a travel document issued by a country whose nationals are subject to visa restrictions under P.P. 9645.  However, the travel document reflects that the applicant is a national of a country whose nationals are not subject to visa restrictions under the P.P.  Is the applicant still subject to visa restrictions under the P.P.?**
**A.** No.  P.P. 9645 imposes visa restrictions only on nationals of Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia.  If post has determined that a visa applicant is not a national of one of these countries, then the P.P. does not apply to the applicant.  While the country of issuance of a travel document may be a good indicator of an applicant's nationality, an applicant's nationality may differ from the county of issuance of his/her travel document.  This may be the case with a refugee who has resettled in a third country or an individual otherwise eligible to receive a travel document of a third country without holding the nationality of that country.

If post has sufficient information to determine that the applicant is not a national of a designated country, post should enter a case note explaining why the applicant is not subject to P.P. 9645.  If
                                                                            **LEP**

**LEP**

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

**Q3: The P.P. mentions Iraqi nationals. How do we process Iraqi visa applicants?**
**A:** Iraqi nationals are not subject to entry restrictions or limitations under the P.P.   LEP


**Q4: What information may post include on its website concerning the P.P.?**
**A:** Posts may include translations of information posted on travel.state.gov, but should not add any additional content that has not been cleared by CA.

**Q5: In what kind of cases does an applicant receive protection under the Convention Against Torture and is therefore excepted from the P.P.?**
**A:** This factor would not be part of the visa application process and is more intended for DHS consideration of the P.P.

**Q6: Does the P.P. foreclose the possibility that an applicant could benefit from a regular visa waiver, such as those available through ARIS or from USCIS pursuant to an I-601 application?**
**A:** No, an applicant could still benefit from an NIV or IV waiver. In the case of an IV waiver, you would need to refuse the case using the appropriate ground of refusal under INA 212(a). If USCIS approved the applicant's I-601 waiver and provided the approval to post, you would then evaluate whether the applicant can satisfy P.P. 9645's waiver criteria.

In the case of an NIV waiver, once a consular officer has determined the applicant is eligible for the visa but for the  ground of ineligibility for which the ARIS waiver is required, consular officers should make a determination as to whether an applicant is excepted from the P.P., or whether the applicant qualifies for a P.P. 9645 waiver. If the applicant has an exception from P.P. or qualifies for a waiver under P.P. 9645, then  clearly document the refusal's exception or waiver under P.P. 9645 in the comments when requesting an ARIS  waiver for an individual from one of the affected nations. CBP/ARO will adjudicate the  waiver request normally once they see that a consular officer has made the determination that the  applicant is not subject to the suspension and denoted that on the ARIS waiver request.

SENSITIVE BUT UNCLASSIFIED
FOR DEPARTMENT OF STATE INTERNAL USE ONLY – NOT FOR OTHER
DISTRIBUTION

# Cables

SBU Excerpt from 17 State 56801 with Updates

**1. (SBU) SUMMARY:** This cable provides guidance to consular officers on assessing whether an affected visa applicant poses a threat to the national security or public safety of the United States for the purposes of a waiver of the suspension of visa issuance and entry under Presidential Proclamation 9645. Please refer to 17 State 97682 for guidance on adjudicating visa applications for nationals affected by the Proclamation, determining whether an exception applies, and determining whether the applicant qualifies for a waiver based on undue hardship and whether his or her entry would be in the national interest. Consular officers will use this guidance only if a consular officer has concluded that the applicant is otherwise eligible for a visa, without regard to the Proclamation; that the applicant does not fall within one of the exceptions to the Proclamation; that suspension of entry would cause an undue hardship; and that an applicant's entry to the United States would be in the national interest. If those criteria are met, then the consular officer must follow this guidance in determining the third element of the applicant's waiver eligibility: the applicant's entry would not pose a threat to national security or public safety of the United States. **[Update:  Note that, as a final step, all applicants** LEP **and are receiving waiver consideration** LEP **before post determines eligibility under the national security prong of the P.P. 9645 waiver criteria.] End Summary.**

**2. (SBU)** Executive Order (E.O.) 13780 directed the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, to "conduct a worldwide review to identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the" Immigration and Nationality Act. As a result of that review, DHS developed information sharing standards foreign governments must meet which fall into three categories: 1) identity management information, 2) national security and public safety information, and 3) national security and public safety risk assessment. The third category was created to provide an overall risk assessment related to specific country conditions. The Proclamation imposes visa restrictions on the countries deemed "inadequate" on information sharing. The visa restrictions are tailored for each country so long as that country remains inadequate in its information-sharing capabilities and practices, despite U.S. government efforts to secure the needed information.

**3. (SBU)** To assess whether an affected applicant poses a threat to national security or public safety, consular officers must understand the specific circumstances that led to each country's designation as inadequate. A country deemed by the President to be inadequate, by definition, does not provide the U.S. government with adequate information to reliably ensure the applicant is not a threat to the national security or public safety. Therefore, a consular officer's assessment of whether an applicant poses a threat to the national security or public safety will require a case by case determination to verify that an applicant's identity as recorded in a passport is bona fide and that there is no indication that he or she has engaged in terrorist or criminal activities.

**4. (SBU)** Because these assessments will be resource intensive for posts and interagency partners, these measures should only be employed after the consular officer has found that the applicant is otherwise eligible for the visa without regard to PP 9645, does not fall within one of the exceptions to the Proclamation, and satisfies the other two requirements for a waiver – namely undue hardship and national interest as described in 17 STATE 97682 and the

SBU Excerpt from 17 State 56801 with Updates

SBU Excerpt from 17 State 56801 with Updates

Operational Q and A on CAWeb. If the applicant does not meet either the undue hardship or national interest requirements, the consular officer should refuse the application as described in 17 STATE 97682. If the applicant satisfies both of those requirements, the consular officer should then proceed to the national security requirement below. This will require the consular officer first assess **LEP**

**5.** (SBU) **Information Sharing Criteria Descriptions:** Below are the information sharing standards as detailed to the president by the Secretary of Homeland Security, in consultation with the Department of State and Director of National Intelligence.

1) Identity Management Information: This category defines the type of information the United States expects foreign governments to provide in order to determine that the individual seeking an immigration benefit is who s/he claims to be. It focuses on improving the integrity of travel documents, which will remain the baseline identity requirement for travel to the United States. The criteria in this category include:

   a) Whether the country issues electronic passports embedded with pertinent biographic and biometric data;
   b) Whether the country reports lost and stolen passports; and,
   c) Whether the country makes available identity information that is not present in the passport upon request.

2) National Security and Public Safety Information: This category defines the type of information the United States expects foreign governments to provide in order to identify actual or potential terrorists, criminals, and other national security threat actors, as well as fraudulent applicants. The criteria include:

   a) Whether the country makes available known or suspected terrorist information, including information on foreign fighters;
   b) Whether the country makes available criminal history information upon request; and,
   c) Whether the country provides passport and national identity document exemplars.

3) National Security and Public Safety Risk Assessment: This category considers three national security risk indicators relevant to the U.S. government's ability to vet a country's nationals to determine admissibility to the United States. The criteria include:

   a) Whether the country is a known or potential terrorist safe haven:
   b) Whether countries that are participants in the Visa Waiver Program (VWP) meet all the statutory and policy requirements of the Program; and

SBU Excerpt from 17 State 56801 with Updates

**c)** Whether the country regularly takes back its nationals who are subject to a final order of removal from the United States.

LEP



SBU Excerpt from 17 State 56801 with Updates



LE

SBU Excerpt from 17 State 56801 with Updates



CLASSIFICATION: UNCLASSIFIED
Page 1 of 9

**From:** SMART Archive
**Sent:** 9/24/2017 9:52:58 PM
**To:** SMART Core
**Subject:** PRESIDENTIAL PROCLAMATION: ENHANCING VETTING CAPABILITIES AND PROCESSES FOR DETECTING ATTEMPTED ENTRY INTO THE UNITED STATES BY TERRORISTS OR OTHER PUBLIC-SAFETY THREATS - GUIDANCE TO VISA-ISSUING POSTS

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 17 STATE 97682 |
| **Date/DTG:** | Sep 25, 2017 / 250150Z SEP 17 |
| **From:** | SECSTATE WASHDC |
| **Action:** | SOMALIA, USMISSION *ROUTINE*; ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Subject:** | PRESIDENTIAL PROCLAMATION: ENHANCING VETTING CAPABILITIES AND PROCESSES FOR DETECTING ATTEMPTED ENTRY INTO THE UNITED STATES BY TERRORISTS OR OTHER PUBLIC-SAFETY THREATS - GUIDANCE TO VISA-ISSUING POSTS |

1. (SBU) This ALDAC provides general information on the implementation of a Presidential Proclamation ("P.P.") titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists and other Public-Safety Threats." Further guidance on implementation of specific provisions of the P.P. will follow and may be found in internal Q&As and other internal materials. All visa-issuing posts should carefully review the P.P., this ALDAC, additional operational guidance, and press guidance in preparing to implement the P.P. Consular officers can find the most up to date guidance, public talking points, additional operational resources and the full text of the P.P. on CA Web.

2. (SBU) Summary: On September 24, 2017, the President issued a Presidential Proclamation (P.P.) titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or other Public-Safety Threats."

3. (SBU) The President issued the P.P., pursuant to his authority under sections 212(f) and 215(a)(1) of the Immigration and Nationality Act (INA) and other authorities, to suspend entry into the United States of certain nationals from the following eight countries: Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia as of the P.P.'s effective dates. The effective dates are described in greater detail in subsequent paragraphs. The P.P. imposes different restrictions on the issuance of immigrant (IV) and nonimmigrant visas (NIV) for, and the entry of, nationals of those eight countries, subject to exceptions and waivers set forth in the P.P. Applicants will be reviewed on a case-by-case basis, with consular officers taking into account the scope and exception provisions in the P.P. and the applicant's possible qualification for a waiver.

4. (SBU) The temporary suspension of travel imposed in Section 2 of Executive Order (E.O.) 13780 expired on

CLASSIFICATION: UNCLASSIFIED

**AR-163**

September 24, 2017. End summary.

Phased Implementation of the P.P.

5. (SBU) There are two phases of implementation for the nationals of the eight countries subject to the P.P., so consular offices should pay close attention to the implementation schedule as described below.

**Phase 1**: The restrictions established in Section 2 of the P.P. are effective at 3:30 p.m. EDT on Sunday, September 24, 2017 until 12:01 a.m. EDT on Wednesday, October 18, 2017 for the following categories of foreign nationals:

a) **Nationals of Iran, Libya, Syria, Yemen, and Somalia.** These nationals were generally subject to the 90-day travel suspension in E.O. 13780, although some fit within the enumerated exceptions or qualified for a waiver under the terms of the E.O. These nationals in some or all visa categories are subject to suspension of visa issuance under the P.P., subject to a modified list of exceptions and an amended waiver approval process as described in paragraphs 19-29. Pursuant to the terms of the P.P., during Phase 1, consular officers are to apply the visa restrictions consistent with the Supreme Court's order of June 26, 2017 and the U.S. District Court in Hawaii's order of July 13, 2017, which exempted from the suspension of entry applicants who had a credible claim of a bona fide relationship with a close family member or entity in the United States (see paragraph 30). If the national does not qualify for this exception, the consular officer must apply the visa restrictions, exceptions, and waivers as outlined in this cable immediately.

b) **Nationals of Sudan.** These nationals were subject to the travel suspension in E.O. 13780, but are not subject to visa restrictions under the P.P. As of 3:30 p.m. EDT on Sunday, September 24, 2017, Sudanese nationals are no longer subject to travel suspension under the E.O. and are not subject to visa restrictions under the P.P. Consular officers should process visa applications from Sudanese nationals in accordance with standard procedures.

**Phase 2**: Beginning 12:01 a.m. EDT on Wednesday, October 18, 2017:

a) **Nationals of Chad, North Korea, and Venezuela**: Nationals of Chad, North Korea, and Venezuela are subject to the visa restrictions, exceptions, and waivers as outlined in this cable.

b) **Nationals of Iran, Libya, Syria, Yemen, and Somalia**: Nationals of Iran, Libya, Syria, Yemen, and Somalia who were exempt from application of E.O. 13780 and from application of the P.P. during Phase 1 because they had a credible claim of a bona fide relationship with a close family member or entity in the United States are now subject to the operational guidance in this cable as outlined in paragraph 6 as of this date.

General Visa Processing Pursuant to the P.P.

6. (SBU) The P.P. instructs the Departments of State and Homeland Security to apply country-specific visa restrictions to nationals of the eight countries named in the P.P. Consular officers should follow the steps below to adjudicate NIV, IV, and DV applications. The P.P., including its exceptions and waivers of the visa restrictions, apply to nationals from the eight countries, regardless of where they apply for visas. Consular officers must determine whether an applicant is subject to a country-specific restriction, and whether an exception applies, and consider whether the applicant may qualify for a waiver on a case-by-case basis during the course of a visa interview, subject to any further procedures required before a final determination can be made on the waiver. In every case involving a national of one of the eight countries named in the P.P., consular officers should follow these steps:

**Step 1**: Determine whether the applicant is otherwise eligible for a visa under the INA without regard to the P.P.

AR-164

**Step 2**: Determine whether the applicant falls within the scope of the country-specific visa restrictions (see paragraph 7).

**Step 3**: If the applicant falls within the scope of the country-specific visa restrictions, determine whether the applicant fits in any of the categories of exceptions to the P.P. (see paragraphs 19-20).

**Step 4**: If the applicant falls within the scope of the country-specific visa restrictions and does not fit any of the categories of exceptions under the P.P., determine whether the applicant qualifies for a waiver (see paragraphs 21-29).

**Step 5**: Issue or refuse the visa accordingly.

Country-specific Visa Restrictions under the P.P.

7. (SBU) The P.P.'s visa restrictions and suspension of entry provisions were specifically tailored for each country with the goals of reducing the security threat the unrestricted entry of nationals of those countries might pose and encouraging improved host government cooperation on information sharing practices. Consular officers should carefully review the visa restrictions for nationals of the eight countries subject to the P.P. below. For nationals subject to the visa restrictions discussed in this paragraph, consular officers should consider whether the national fits within one of the enumerated exceptions or qualifies for a waiver in accordance with paragraphs 19-29 of this cable:

a) Nationals of Chad – The issuance of visas to nationals of Chad is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All regular and official-type B-1, B-2, and B-1/B-2 visas

b) Nationals of Iran – The issuance of visas to nationals of Iran is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All NIVs, except for F, M, and J visas, and those specified in paragraph 19(h). During Phase 1, F, M, and J visas will require **LEP** if the consular officer determines that the applicant is otherwise eligible for a visa and the applicant does not have a credible claim to a bona fide relationship with a close family member of entity in the United States. During Phase 2, all F, M, and J visas will require **LEP** if the consular officer determines that the applicant is otherwise eligible for a visa. Guidance on enhanced screening and vetting required by the P.P. for Phase 2 will be sent septel.

c) Nationals of Libya – The issuance of visas to nationals of Libya is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All regular and official-type B-1, B-2, and B-1/B-2 visas

d) Nationals of North Korea – The issuance of visas to nationals of North Korea is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All NIVs, except as specified in paragraph 19(h)

e) Nationals of Syria – The issuance of visas to nationals of Syria is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All NIVs, except as specified in paragraph 19(h)

f)  Nationals of Venezuela — The issuance of visas to nationals of Venezuela is suspended for the following visa categories:
   - B-1, B-2, and B-1/B-2 visas, including regular, official-type, and diplomatic-type visas, for officials of the Ministry of the Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations and their immediate family members. This is the only limitation on the exceptions provided in paragraph 19(h). Guidance regarding additional measures as mentioned in the P.P. will be sent septel.

g)  Nationals of Yemen — The issuance of visas to nationals of Yemen is suspended for the following visa categories:
   - All immigrant and diversity visas
   - All regular and official-type B-1, B-2, and B-1/B-2 visas

h)  Nationals of Somalia — The issuance of visas to nationals of Somalia is subject to the following guidance:
   - All immigrant and diversity visa issuance is suspended
   - All NIVs, except those specified in paragraph 19(h), will require **LEP** if the consular officer determines the applicant is otherwise eligible for a visa. During Phase 1, the **LEP** does not apply to NIV applicants who have a credible claim of a bona fide relationship with a close family member or entity in the United States. During Phase 2, all NIV applicants will require **LEP** if the consular officer determines the applicant is otherwise eligible for a visa. Guidance on additional scrutiny required by the P.P. for Phase 2 will be sent septel.

Visa Processing for Iraqi Nationals

8. (SBU) Pursuit to the P.P., Iraqi nationals seeking to enter the United States are not subject to entry restrictions or limitations. Consular officers should continue to follow enhanced vetting guidance as outlined in 17 STATE 25814 and 17 STATE 52856.

NIV Processing for Nationals Subject to the P.P.

9. (SBU) GSS vendors and posts should continue scheduling interviews for NIV applicants of the eight nationalities subject to the P.P. NIV applicants presenting passports from any of the eight countries subject to the P.P. should be interviewed and adjudicated in accordance with the restrictions listed in paragraph 7.

10. (SBU) Applicants found ineligible for a visa based on grounds unrelated to the P.P. should be refused according to standard procedures. The appropriate refusal code should be entered into the Consular Lookout and Support System (CLASS). See 9 FAM 303.3-4(A). Posts must follow existing FAM guidance in 9 FAM 304.2 and 304.3 to determine whether **LEP** an Advisory Opinion (AO) must be submitted. Posts must follow guidance about exceptions (paragraphs 19-20) and waivers (paragraphs 21-29) for issuing or refusing visas pursuant to the P.P.

11. (SBU) If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality (paragraph 7), and if so, whether an exception applies (paragraphs 19-20) or whether the applicant qualifies for a waiver (paragraphs 21-29). NIV applicants who are subject to the restrictions but who do not fit one of the exceptions should be refused EO17. If, after proper procedures, the applicant subsequently qualifies for a waiver, the officer must waive the EO17 refusal in NIV before issuing the visa. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web.

CLASSIFICATION: UNCLASSIFIED
Page 5 of 9

IV Processing for Nationals Subject to the P.P.

12. (SBU) The National Visa Center (NVC) will continue to schedule IV appointments for all IV categories and all nationalities. Posts should continue to interview all IV applicants presenting passports from any of the eight countries subject to the P.P.

13. (SBU) IV Applicants found ineligible for a visa based on grounds unrelated to the P.P. should be refused according to standard procedures. The appropriate refusal code should be entered into the CLASS.

14. (SBU) If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality (paragraph 7), and if so, whether an exception applies (paragraph 19) or whether the applicant qualifies for a waiver (paragraphs 21-29).

15. (SBU) IV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17. Consular officers may send an AO request to VO/L/A in these cases but are not required to submit one. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web.

DV Processing for Nationals Subject to the P.P.

16. (SBU) The Kentucky Consular Center will continue to schedule DV appointments for all eligible nationalities, and posts should interview the applicants.

17. (SBU) If the applicant is not eligible for the visa without regard to the P.P., the applicant should be refused according to standard procedures. The appropriate refusal code should be entered into CLASS.

18. (SBU) If an applicant is found otherwise eligible for the DV, the consular officer will need to consider during the interview whether the applicant has an exception from the P.P. (paragraph 19), and if not, whether the applicant qualifies for a waiver (paragraphs 21-29). Based on the Department's experience with the DV program, very few DV applicants are likely to fit within an exception or to qualify for a waiver. DV applicants who do not fit one of the exceptions or who do not qualify for a waiver should be refused EO17. Consular officers may send AO requests to VO/L/A in these cases but are not required to do so. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web.

Exceptions to the P.P.

19. (SBU) The P.P.'s suspension of entry does not apply to the following:

   a) Any national who was in the United States on the applicable effective date of the P.P. for that national, regardless of immigration status;
   b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;
   c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who is entitled to a visa or other valid travel document under section 6(d) of the P.P.;
   d) Any lawful permanent resident (LPR) of the United States;
   e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;
   f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;
   g) Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-

designated country;

h)   Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or

i)   Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

20. (SBU) When issuing an IV, NIV, or DV to an individual who falls into one of the visa restrictions listed in paragraph 7 based on an exception in paragraph 19, the visa should be annotated to state, "Exception under Proclamation." Interviewing officers must also enter a clear case note stating the specific reason why the applicant has an exception.

<u>Waiver Qualifications and Process</u>

21. (SBU) The P.P. permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the visa case meets all of the following three conditions:

a)   Denying entry would cause undue hardship to the applicant;
b)   His or her entry would not pose a threat to the national security or public safety of the United States; and
c)   His or her entry would be in the U.S. national interest.

22. (SBU) To establish that visa denial under the P.P. will meet the undue hardship condition, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

23. (SBU) An applicant may meet the national interest condition if a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

24. (SBU) Consular officers may not categorically grant case-by-case-waivers. The P.P. includes the following examples where case-by-case waivers may be appropriate:

a)   The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

b)   The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;

c)   The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

d)   The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

e)   The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f)   The applicant has been employed by, or on behalf of, the U.S. Government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. Government;

g)   The applicant is traveling for purposes related to an international organization designated under the

International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the United States Government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)   The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i)   The applicant is traveling as a U.S. Government-sponsored exchange visitor; or

j)   The applicant is traveling to the United States at the request of a U.S. Government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

25. (SBU) Waivers based on special circumstances other than the examples set forth in paragraph 24(e) require a consular chief approval and submission of an AO to VO/L/A. With VO's concurrence, the consular officer may approve a waiver based on other special circumstances.

26. (SBU) Additional guidance on making the national security/public safety determination will be sent via septel. The septel will address ways to mitigate the risks of making such a determination notwithstanding the national security and public safety risks identified in the P.P and assessing the sufficiency of available information. Officers who determine that an applicant meets the undue hardship and the national interest conditions of the three-prong test in paragraph 21 should refuse the applicant EO17 until additional guidance referenced in this paragraph regarding determining that the applicant would not pose a threat to national security or public safety is available.

27. (SBU) If the applicant qualifies for a waiver based on criteria in paragraphs 21-26 (including consideration of the guidance to be sent septel), the consular officer may issue the visa with the concurrence of a Visa Unit chief (IV or NIV) or the Consular Section chief and after receiving from VO as described in paragraph 25. The officer should waive the EO17 refusal in the NIV or IVO system. The visa should be annotated to read, "Presidential Proclamation Waived." Case notes must reflect the basis for the waiver: the undue hardship that would be caused by denying entry during the suspension; the national interest; the reasons the applicant does not pose a threat to U.S. national security or public safety; and the position title of the manager concurring with the waiver.

28. (SBU) If the applicant does not qualify under one of the waiver category examples in paragraph 24, but the interviewing officer and consular manager believe that the applicant meets the waiver requirements of undue hardship and national interest, the consular officer should submit the case to the Visa Office via email to countries-of-concern-inquiries@state.gov for consideration. The Visa Office will review requests and reply to posts within two business days.

29. (SBU) If the applicant is not able to satisfy any of the three tests: the undue hardship; national interest; or no threat to U.S. national security or public safety, no waiver is available and the consular officer must refuse the application under the EO17 refusal code.

Definitions of "Close Family" and "U.S. Entity"

30. (SBU) In light of the referenced court orders, "close family" is currently defined as a parent, including parent-in-law, spouse, fiancé, child, adult son or daughter, son-in-law, daughter-in-law, sibling, brother-in-law, sister-in-law, grandparent, grandchild, aunt, uncle, niece, nephew, and first-cousin. For all relationships, half or step status is included (e.g., "half-brother" or "step-sister"). "Close family" does not include any other "extended" family members. A credible claim of a bona fide relationship with a "U.S. entity" must be formal, documented, and formed in the ordinary course rather than for the purpose of evading suspension of entry under E.O. 13780. This guidance will be applicable during Phase 1 for those countries subject to E.O. 13780. Pursuant to the President's determination in the P.P., this guidance will no longer be operative under Phase 2 of implementation of the P.P.

Processing V92 and V93 cases

31. (SBU) The P.P. does not affect V92 applicants (follow-to-join asylees), and post should adjudicate these cases per standard guidance.

32. (SBU) While the P.P. does not affect V93 applicants (follow-to-join refugees), they continue to be subject to Section 6 of E.O. 13780, which remains in effect, subject to the Supreme Court exceptions. Post must continue processing and adjudicate V93 cases to determine their qualifications as normal and then determine if one of the Supreme Court exceptions apply. We believe that based on their follow-to-join status, most V93 applicants will qualify for an exemption based on their relationship with the petitioner in the U.S. If posts have any questions about as specific case please reach out to your VO/F liaison. VO will send guidance when Section 6 of E.O. 13780 no longer applies to V93 cases.

33. (SBU) Posts with questions regarding this guidance should contact their post liaison officer in CA/VO/F.

34. (U) Minimize considered.

| | |
|---|---|
| **Signature:** | Tillerson |
| **Drafted By:** | CA/VO/F:Katie Plona |
| **Cleared By:** | CA: KChristensen |
| | CA: PMarigliano |
| | CA/VO: KKing |
| | CA/VO: ERamotowski |
| | CA/VO/F:MAParker |
| | CA/VO/F: JNantais |
| | CA/VO/L: DNewman |
| | CA/VO/L: NPerry |
| | CA/VO/L: MMcNeil |
| | CA/VO/L: TDerentz |
| | CA/VO/L: LNeilan |
| | CA/VO/SAC: TSmith |
| | CA/VO/SAC: EHoffmann |
| | L/CA: JOsborn |
| | L/CA: ARavjani |
| | L/CA: DSalie |
| | L/CA: MMadad |
| | M: JWhiteley |
| | P: LSnyder |
| | S/P: TFrideres |
| | D: JShufflebarger |
| | EAP: RLee |
| | EUR: SPierson |
| | WHA: RPoynter |
| | AF: RScott |
| | NEA: ASchedlbauer |
| | CT: WMuCulla |
| | PRM: LBartlett |
| | AF-EX: BDille |
| | EAP-EX: JDerosa |
| | WHA-EX: KSullivan |
| | EUR-IO-EX: JMennuti |

AR-170

CLASSIFICATION: UNCLASSIFIED
Page 9 of 9

|                       |                          |
|-----------------------|--------------------------|
|                       | NEA-SCA-EX: SInzerillo   |
|                       | SES\AllenDC2             |
| **Approved By:**      | CA/FO:Risch, Carl C      |
| **Released By:**      | CA_FO:Eichenberg, Amy E  |
| **XMT:**              | SANAA, AMEMBASSY         |
|                       |                          |
| **Dissemination Rule:** | Archive Copy           |

UNCLASSIFIED
SBU

From: SMART Archive
Sent: 10/19/2017 7:58:30 PM
To: SMART Core
Subject: Updated Processing Guidelines for Presidential Proclamation 9645

UNCLASSIFIED
SBU



| | |
|---|---|
| MRN: | 17 STATE 105674 |
| Date/DTG: | Oct 19, 2017 / 192344Z OCT 17 |
| From: | SECSTATE WASHDC |
| Action: | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| E.O.: | 13526 |
| TAGS: | CMGT, CVIS |
| Captions: | SENSITIVE |
| Reference: | 17 STATE 97682 |
| Subject: | Updated Processing Guidelines for Presidential Proclamation 9645 |

1. (SBU) This ALDAC provides updated guidance on the implementation of Presidential Proclamation 9645 (Proclamation) titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists and other Public-Safety Threats." The U.S. District Court for the District of Hawaii enjoined enforcement and implementation of sections 2(a), (b), (c), (e), (g), and (h) of the Proclamation on October 17. On October 18, the U.S. District Court for the District of Maryland also enjoined enforcement of these sections to substantially the same extent.

2. (SBU) In light of the court orders, consular officers must immediately stop applying Proclamation-related restrictions or limitations to nationals of Chad, Iran, Libya, Syria, Yemen, and Somalia, regardless of whether they have a credible claim of a bona fide relationship with a close family member or entity in the United States. Cases for these nationals should be processed in accordance with all applicable laws, rules, and regulations using standard procedures outlined in the Foreign Affairs Manual. The court orders did not affect Proclamation sections 2(d) and (f). Therefore, posts should implement the Proclamation for nationals from North Korea and Venezuela, as indicated in 17 STATE 97682, sections of which are available on OpenNet and CAWeb, and 17 STATE 56801, available in its entirety on ClassNet. As a reminder, E.O. 13780 Section 2 travel or entry- related restrictions or limitations are no longer in effect.

3. (SBU) If post refused the case of a national of Chad, Iran, Libya, Syria, Yemen, or Somalia under the Proclamation using refusal code EO17 pending a determination whether the applicant is eligible for a waiver under the Proclamation, then post should reopen the case, overcome the denial, and issue the visa, absent other reasons for refusal unrelated to the Proclamation. Do not request a CLOK for the EO17 refusal code, as it was appropriate at the time of adjudication. Cases refused under the Proclamation with code EO17 not considered for a waiver should remain closed and applicants may submit a new application.

4. (SBU) Applicants found ineligible for a visa based on grounds unrelated to the Proclamation should be refused according to standard procedures. The appropriate refusal code should be entered into the Consular

Lookout and Support System (CLASS). See 9 FAM 303.3-4(A). Posts must follow guidance in 9 FAM 304.2 and 304.3 to determine whether an **LEP** or an Advisory Opinion (AO) must be submitted.

5. (SBU) Consular officers can find the most up-to-date guidance, public talking points, additional operational resources, and the full text of the Proclamation on CA Web. Posts with questions regarding this guidance should contact their post liaison officer in CA/VO/F.

6. (U) Minimize considered.

| | |
|---|---|
| **Signature:** | Tillerson |
| **Drafted By:** | CA/VO/F:Johnny Lo |
| **Cleared By:** | CA:KChristensen |
| | CA:PMarigliano |
| | CA/VO:ERamotowski |
| | CA/VO:KKing |
| | CA/VO/F:MParker |
| | CA/VO/F:NWalcott |
| | CA/VO/F:KPlona |
| | CA/VO/F:JMcMillian |
| | CA/VO/F:LOverman |
| | CA/VO/I:MPaschke |
| | CA/VO/L:DNewman |
| | CA/VO/L:NPerry |
| | CA/VO/SAC:TSmith |
| | L/CA:SKerr |
| | AF/EX:BDille |
| | EAP/EX:DLaMontagne |
| | NEA-SCA/EX:SInzerillo |
| | WHA/EX:RPeterson |
| | EUR-IO/EX:JSommer |
| | D:DOstertag |
| | P:LSnyder |
| | S/P:TFrideres |
| | M:JWhiteley |
| | SES\SmolikCE |
| **Approved By:** | CA:CRisch |
| **Released By:** | CA_FO:Kight, Daniel E |
| **XMT:** | SANAA, AMEMBASSY |
| | |
| **Dissemination Rule:** | Archive Copy |

UNCLASSIFIED
SBU

**From:** SMART Archive
**Sent:** 11/15/2017 7:20:28 PM
**To:** SMART Core
**Subject:** GUIDANCE FOR ISSUING VISAS - NINTH CIRCUIT NARROWS INJUNCTION OF PRESIDENTIAL
PROCLAMATION 9645 - ENHANCING VETTING CAPABILITIES AND PROCESSES FOR DETECTING
ATTEMPTED ENTRY INTO THE UNITED STATES BY TERRORISTS OR OTHER PUBLIC-SAFETY THREATS

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 17 STATE 114026 |
| **Date/DTG:** | Nov 16, 2017 / 160017Z NOV 17 |
| **From:** | SECSTATE WASHDC |
| **Action:** | SOMALIA, USMISSION *ROUTINE*; <br> ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT |
| **Captions:** | SENSITIVE |
| **Subject:** | GUIDANCE FOR ISSUING VISAS - NINTH CIRCUIT NARROWS INJUNCTION OF <br> PRESIDENTIAL PROCLAMATION 9645 - ENHANCING VETTING CAPABILITIES AND <br> PROCESSES FOR DETECTING ATTEMPTED ENTRY INTO THE UNITED STATES BY <br> TERRORISTS OR OTHER PUBLIC-SAFETY THREATS |

1. (SBU) Summary: The U.S. Court of Appeals for the Ninth Circuit partially granted the U.S. government's motion to stay the injunction of Presidential Proclamation 9645 ("the P.P."). This ALDAC provides information on the implementation of the P.P. in light of the Court's order. All visa-issuing posts should carefully review this ALDAC, additional operational guidance, and press guidance in preparing to further implement the P.P., to the extent permitted by the Ninth Circuit's ruling, beginning at open of business, local time, on Thursday, November 16. Consular officers can find the most up to date guidance, public talking points, additional operational resources, and the full text of the P.P. and relevant court orders on CA Web (http://intranet.ca.state.sbu/content/caweb/visas/news/100011.html). This guidance supersedes 17 STATE 97682 and 17 STATE 105674. End Summary.

2. (SBU) On November 13, the U.S. Court of Appeals for the Ninth Circuit granted, in part, the government's motion for an emergency stay of the U.S. District Court for the District of Hawaii's October 17, preliminary injunction. The preliminary injunction prohibited the U.S. government from enforcing or implementing Sections 2(a), (b), (c), (e), (g), and (h) of P.P. 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or other Public-Safety Threats." Under the Ninth Circuit's ruling, the earlier preliminary injunction is stayed, except as to "foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States."

3. (SBU) As a result, beginning open of business, local time on Thursday, November 16, when processing visas for nationals of Chad, Iran, Libya, Syria, Yemen, and Somalia, posts should begin applying the restrictions or limitations in the P.P. except for foreign nationals of these countries who have a credible claim of a bona fide relationship with a person or entity in the United States, as defined below. The Ninth Circuit's order did not

affect P.P. Sections (d) and (f). Therefore, posts should continue implementing the P.P. for nationals of North Korea and Venezuela.

4. (SBU) The President issued the P.P. pursuant to his authority under sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and other authorities, to suspend entry into the United States of certain nationals from the following eight countries: Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. The P.P. imposes different restrictions on the issuance of immigrant (IV) and nonimmigrant visas (NIV) for, and the entry of, nationals of those eight countries, subject to exceptions and waivers set forth in the P.P. Applicants will be reviewed on a case-by-case basis, with consular officers taking into account the scope and exception provisions in the P.P. and relevant court orders and the applicant's possible qualification for a waiver.

Implementation of the P.P.

5. (SBU) The restrictions established in Section 2 of the P.P. for nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia begin at open of business, local time, on Thursday, November 16, as follows:

   a) **Nationals of Chad, Iran, Libya, Somalia, Syria, and Yemen.** If otherwise eligible, these nationals in some visa categories are subject to suspension of visa issuance under the P.P., subject to a modified list of exceptions and an amended waiver approval process as described in paragraphs 19-29. In accordance with the relevant court orders, consular officers are to apply the P.P.'s visa restrictions for nationals of these six countries except to individuals who have a credible claim of a bona fide relationship with a close family member or entity in the United States (see definition in paragraph 30). If the national is not covered by that exception, the consular officer must apply the visa restrictions, exceptions and waivers as outlined in this cable, beginning open of business, local time, on Thursday, November 16.

   b) **Nationals of North Korea and Venezuela:** If otherwise eligible, nationals of North Korea and Venezuela are subject to the visa restrictions, exceptions, and waivers as outlined in this cable. The Ninth Circuit ruling does not affect the P.P. provisions regarding nationals of these two countries, as those provisions were not subject to the District Court's injunction. Therefore, a credible claim of a bona fide relationship to a person or an entity in the United States is not an available exception for nationals from these two countries.

General Visa Processing Pursuant to the P.P.

6. (SBU) The P.P. instructs the Departments of State and Homeland Security to apply country-specific visa restrictions to nationals of the eight countries named in the P.P. Consular officers should follow the steps below to adjudicate NIV, IV, and DV applications. The P.P. and relevant court orders, including its exceptions and waivers of the visa restrictions, and relevant court orders, apply to nationals from the eight countries regardless of where they apply for visas. Consular officers must determine whether an applicant, who is otherwise eligible for a visa, is subject to a country-specific restriction; whether an exception applies; and consider whether the applicant may qualify for a waiver on a case-by-case basis during the course of a visa interview, subject to any further procedures required before a final determination can be made on the waiver. In every case involving a national of one of the eight countries named in the P.P., consular officers should follow these steps:

   **Step 1:** Determine whether the applicant is otherwise eligible for a visa under the INA without regard to the P.P. If not otherwise eligible, refuse under the appropriate section of the INA. Only if found otherwise eligible, proceed to Step 2.

   **Step 2:** If otherwise eligible, determine whether the applicant falls within the scope of the country-specific visa restrictions (see paragraph 7). If not, issue the visa accordingly.

   **Step 3:** If the applicant falls within the scope of the country-specific visa restrictions, determine whether

the applicant fits in any of the categories of exceptions to the P.P. (see paragraphs 19-20) or for a national of Chad. Iran. Libya. Syria. Yemen. or Somalia, has a credible claim of a bona fide relationship to a person or an entity in the United States (see definition in paragraph 30). If so. issue the visa accordingly.

**Step 4:** If the applicant falls within the scope of the country-specific visa restrictions but does not fit any of the categories of exceptions under the P.P., determine whether the applicant qualifies for a waiver (see paragraphs 21-29). If so. issue the visa accordingly (see paragraphs 27-28).

**Step 5:** If the applicant does not qualify for a waiver. refuse the visa accordingly (see paragraph 29).

Country-Specific Visa Restrictions under the P.P.

7. (SBU) The P.P.'s visa restrictions and suspension of entry provisions were specifically tailored for each country with the goals of reducing the security threat the unrestricted entry of nationals of those countries might pose and encouraging improved host government cooperation on information sharing practices. Consular officers should carefully review the visa restrictions for nationals of the eight countries subject to the P.P. below. For nationals subject to the visa restrictions discussed in this paragraph. consular officers should consider whether the national has a credible claim of a bona fide relationship to a person or an entity in the United States (see paragraph 30 for further guidance) or fits within one of the enumerated exceptions or qualifies for a waiver in accordance with paragraphs 21-29 of this cable:

a)   Nationals of Chad – The issuance of visas to nationals of Chad without a credible claim of a bona fide relationship with a person or entity in the United States is suspended for the following visa categories:
   * All self-petitioning employment-based first preference applicants with no job offer in the United States. special immigrant visas under INA 101a(27). and diversity visas
   * All regular and official-type B-1. B-2, and B-1/B-2 visas, except for diplomatic-type B-1. B-2. or B1/B2 visas

b)   Nationals of Iran – The issuance of visas to nationals of Iran without a credible claim of a bona fide relationship with a person or entity in the United States is suspended for the following visa categories:
   * All self-petitioning employment-based first preference visas with no job offer in the United States. special immigrant visas under INA 101a(27). and diversity visas
   * All B-1, B-2 and B-1/B-2, C-1, D. or I visas. except for diplomatic-type B-1. B-2. or B1/B2 visas. All F. M, and J visas **LEP**. including for nationals of Iran who have a credible claim of a bona fide relationship with a person or entity in the United States. if the consular officer determines that the applicant is otherwise eligible for a visa. **LEP**

c)   Nationals of Libya – The issuance of visas to nationals of Libya without a credible claim of a bona fide relationship with a person or entity in the United States is suspended for the following visa categories:
   * All self-petitioning employment-based first preference visas without a job offer in the United States and special immigrant visas under INA 101a(27). and diversity visas
   * All regular and official-type B-1. B-2, and B-1/B-2 visas. except for diplomatic-type B-1. B-2. or B1/B2 visas

d)   Nationals of North Korea – The issuance of visas to nationals of North Korea is suspended for the following visa categories:
   * All immigrant and diversity visas
   * B-1. B-2 and B-1/B-2. C-1. D. or I visas. except for diplomatic-type B-1. B-2. or B1/B2 visas

e)   Nationals of Syria – The issuance of visas to nationals of Syria without a credible claim of a bona fide relationship with a person or entity in the United States is suspended for the following visa categories:

- All self-petitioning employment-based first preference visas without a job offer in the United States, special immigrant visas under INA 101a(27), and diversity visas
- B-1, B-2 and B-1/B-2, C-1, D, or I visas, except for diplomatic-type B-1, B-2, or B1/B2 visas

f) Nationals of Venezuela – The issuance of visas to nationals of Venezuela is suspended for the following visa categories:
- B-1, B-2 and B-1/B-2 visas, including regular, official-type, and diplomatic-type visas, for officials of the Ministry of the Popular Power for Interior, Justice and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the Popular Power for Foreign Relations and their immediate family members. This is the only limitation on the exceptions provided in paragraph 19(h). Guidance regarding additional measures as mentioned in the P.P. can be found in 17 STATE 56801.

g) Nationals of Yemen – The issuance of visas to nationals of Yemen without a credible claim of a bona fide relationship with a person or entity in the United States is suspended for the following visa categories:
- All self-petitioning employment-based first preference visas without a job offer in the United States, special immigrant visas under INA 101a(27), and diversity visas
- All regular and official-type B-1, B-2, and B-1/B-2 visas, except for diplomatic-type B-1, B-2, or B1/B2 visas

h) Nationals of Somalia – The issuance of visas to nationals of Somalia without a credible claim of a bona fide relationship with a person or entity in the United States is subject to the following guidance:
- All self-petitioning employment-based first preference visas without a job offer in the United States, special immigrant visas under INA 101a(27), and diversity visas
- NIV processing may continue, however, all NIVs, except those specified in paragraph 19(h), will **LEP**, including for nationals of Somalia who have a credible claim of a bona fide relationship with a person or entity in the United States, if the consular officer determines the applicant is otherwise eligible for a visa. **LEP**

Visa Processing for Iraqi Nationals

8. (SBU)                                                                                                    **LEP**

NIV Processing for Nationals Subject to the P.P.

9. (SBU) GSS vendors and posts should continue scheduling interviews for NIV applicants of the eight nationalities subject to the P.P. NIV applicants presenting passports from any of the eight countries subject to the P.P. should be interviewed and adjudicated in accordance with the restrictions listed in paragraph 7.

10. (SBU) Applicants found ineligible for a visa based on grounds unrelated to the P.P. should be refused according to standard procedures. The appropriate refusal code should be entered into the Consular Lookout and Support System (CLASS). See 9 FAM 303.3-4(A). **LEP**

Posts must follow guidance about exceptions (paragraphs 19-20) and waivers (paragraphs 21-29) for issuing or refusing visas pursuant to the P.P.

11. (SBU) If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality (paragraph 7), and if so, whether: (i) for a national of Chad, Iran, Libya, Syria,

Yemen, or Somalia who is applying for a visa in one of the classes listed for that country in Paragraph 7, above, the applicant has a credible claim of a bona fide relationship with a person or entity in the United States, (ii) an exception under the P.P. applies (paragraphs 19), or (iii) the applicant qualifies for a waiver (paragraphs 21-29). NIV applicants who are subject to the restrictions, but who do not have a credible claim of a bona fide relationship with a person or entity in the United States or fit one of the exceptions should be refused E017. If, after proper procedures, the applicant subsequently qualifies for a waiver, the officer must overcome the E017 refusal in NIV before issuing the visa. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web (http://intranet.ca.state.sbu/content/caweb/visas/news/100011.html).

IV Processing for Nationals Subject to the P.P.

12. (SBU) The National Visa Center (NVC) will continue to schedule IV appointments for all IV categories and all nationalities. Posts should continue to interview all IV applicants presenting passports from any of the eight countries subject to the P.P.

13. (SBU) IV Applicants found ineligible for a visa based on grounds unrelated to the P.P. should be refused according to standard procedures. The appropriate refusal code should be entered into the CLASS.

14. (SBU) If the consular officer finds the applicant otherwise eligible for the visa, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality (paragraph 7), and if so, whether: (i) for a national of Chad, Iran, Libya, Syria, Yemen, or Somalia who is applying for a self-petitioning employment-based first preference visa with no job offer in the United States or a special immigrant visas under INA 101a(27), the applicant has a credible claim of a bona fide relationship with a person or entity in the United States, (ii) an exception under the P.P. applies (paragraph 19), or (iii) the applicant qualifies for a waiver (paragraphs 21-29).

15. (SBU) IV applicants covered by the P.P. who do not fit one of the exceptions should be refused E017. If, after proper procedures, the applicant subsequently qualifies for a waiver, the officer must overcome the E017 refusal before issuing the visa. Consular officers may send an AO request to VO/L/A in these cases but are not required to submit one. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web (http://intranet.ca.state.sbu/content/caweb/visas/news/100011.html).

DV Processing for Nationals Subject to the P.P.

16. (SBU) The Kentucky Consular Center will continue to schedule DV appointments for all eligible nationalities, and posts should interview the applicants.

17. (SBU) If the applicant is not eligible for the visa without regard to the P.P, the applicant should be refused according to standard procedures. The appropriate refusal code should be entered into CLASS.

18. (SBU) If an applicant is found otherwise eligible for the DV, the consular officer will need to consider during the interview whether the applicant falls within the scope of the visa restrictions applicable to his or her country of nationality (paragraph 7), and if so, whether: (i) for a national of Chad, Iran, Libya, Syria, Yemen, or Somalia, the applicant has a credible claim of a bona fide relationship with a person or entity in the United States, (ii) an exception under the P.P. applies (paragraph 19), or (iii) the applicant qualifies for a waiver (paragraphs 21-29). Based on the Department's experience with the DV program, very few DV applicants are likely to fit within an exception or to qualify for a waiver. DV applicants covered by the P.P. who do not fit one of the exceptions should be refused E017. If, after proper procedures, the applicant subsequently qualifies for a waiver, the officer must overcome the E017 refusal before issuing the visa. Consular officers may send AO requests to VO/L/A in these cases, but are not required to do so. For more information on appropriate refusal procedures, CLASS refusal codes, and text of refusal letters, please refer to the Operational Q&As on CA Web (http://intranet.ca.state.sbu/content/caweb/visas/news/100011.html).

Exceptions to the P.P.

19.  (SBU) Under the terms of the P.P., the suspension of entry does not apply to the following:

    a)  Any national who was in the United States on the applicable effective date of the P.P. for that national, regardless of current immigration status;

    b)  Any national who had a valid visa on the applicable effective date of the P.P. for that national;

    c)  Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who is entitled to a visa or other valid travel document under section 6(d) of the P.P.;

    d)  Any lawful permanent resident (LPR) of the United States;

    e)  Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;

    f)  Any national who has a document other than a visa — such as a transportation letter, an appropriate boarding foil, or an advance parole document — valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;

    g)  Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;

    h)  Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or

    i)  Any national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

20.  (SBU) When issuing an IV, NIV, or DV to an individual who falls into one of the visa restrictions listed in paragraph 7, based on an exception in paragraph 19, or for nationals of Chad, Iran, Libya, Syria, Yemen, or Somalia, the applicant having a credible claim of a bona fide relationship with a person or entity in the United States, the visa should be annotated to state, "Exception under Proclamation." Interviewing officers must also enter a clear case note stating the specific reason why the applicant has an exception.

Waiver Qualifications and Process

21.  (SBU) The P.P. permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that the visa case meets all of the following three conditions:

    a)  His or her entry would not pose a threat to the national security or public safety of the United States
            LEP and

    b)  Denying entry would cause undue hardship to the applicant;

    c)  His or her entry would be in the U.S. national interest.

22.  (SBU) To establish that the applicant's entry would not pose a threat to national security or public safety of the United States,                        LEP.
In addition, posts must consider the guidance in 17 STATE 56801.

23.  (SBU) To establish that visa denial under the P.P. will meet the undue hardship condition, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans until after visa restrictions imposed with respect to nationals of that country are lifted would defeat the purpose of travel.

24.  (SBU) An applicant may meet the national interest condition if a U.S. person or entity would suffer hardship

if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

25.  (SBU) Consular officers may not categorically grant case-by-case-waivers.  The P.P. includes the following examples where case-by-case waivers may be appropriate based on undue hardship and national interest:

a)  The applicant has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the applicable effective date of the P.P. for the applicant, seeks to reenter the United States to resume that activity, and the denial of reentry would impair that activity;

b)  The applicant has previously established significant contacts with the United States but is outside the United States on the applicable effective date of the P.P. for the applicant for work, study, or other lawful activity;

c)  The applicant seeks to enter the United States for significant business or professional obligations and the denial of entry would impair those obligations;

d)  The applicant seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship;

e)  The applicant is an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

f)  The applicant has been employed by, or on behalf of, the U.S. government (or is the eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the U.S. government;

g)  The applicant is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C 288 et seq., traveling for purposes of conducting meetings or business with the U.S. government, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)  The applicant is a Canadian permanent resident who applies for a visa at a location within Canada;

i)  The applicant is traveling as a U.S. government-sponsored exchange visitor; or

j)  The applicant is traveling to the United States at the request of a U.S. government department or agency for legitimate law enforcement, foreign policy, or national security purposes.

26.  (SBU) Additional guidance on making the national security/public safety determination can be found in 17 STATE 56801.  An unclassified version can be found on CA Web (http://infranet.ca.state.sbu/content/caweb/visas/news/100011.html).  This guidance addresses ways to mitigate the risks of making such a determination notwithstanding the national security and public safety risks identified in the P.P and assessing the sufficiency of available information.

27.  (SBU) If the applicant qualifies for a waiver based on the undue hardship and national interest criteria described in paragraphs 21-25, the consular officer should                                          **LEP**

                              and with the concurrence of a Visa Unit chief (IV or NIV) or the Consular Section chief, the consular officer may issue the visa.  The visa should be annotated to read, "Presidential Proclamation Waived."  Case notes must reflect the basis for the waiver: the undue hardship that would be caused by denying entry during the suspension; the national interest; the reasons the applicant does not pose a threat to U.S. national security or public safety; and the position title of the manager concurring with the waiver.

28.  (SBU) If the applicant does not fit under one of the undue hardship and national interest waiver examples in paragraph 25, but the interviewing officer and consular manager believe that the applicant nevertheless meets the undue hardship and national interest requirements for waiver consideration, the consular officer should submit an Advisory Opinion to the appropriate VO/L/A contact.  Upon VO/L/A approval, post                          **LEP** and proceed as described in paragraph 27.

29.  (SBU) Unless the applicant is able to satisfy all the three tests: undue hardship, national interest, and no

threat to U.S. national security or public safety.  **LEP** no waiver is available, and the consular officer must refuse the application under the EO17 refusal code.

Qualifying "Close Family" and "U.S. Entity" Relationships

30. (SBU) For purposes of applying the Ninth Circuit's November 13 order – which preserved the District Court injunction for individuals with a credible claim of a bona fide relationship to a person or an entity in the United States – "person" in the United States is defined as a parent, including parent-in-law, spouse, fiancé, child, adult son or daughter, son-in-law, daughter-in-law, sibling, brother-in-law, sister-in-law, grandparent, grandchild, aunt, uncle, niece, nephew, and first-cousin. For all relationships, half or step status is included (e.g., "half-brother" or "step-sister"). The definition does not include any other "extended" family members. A credible claim of a bona fide relationship with a "U.S. entity" must be formal, documented, and formed in the ordinary course, rather than for the purpose of evading suspension of entry under the P.P. *Note:  If you determine an applicant has established eligibility for a nonimmigrant visa in a classification other than a B, C-1, D, or I visa, then the applicant is exempt from the P.P., as their bona fide relationship to a person or entity is inherent in the visa classification. Eligible derivatives of these classifications are also exempt. Likewise, if you determine an applicant has established eligibility for an immigrant visa in the following classifications – immediate relatives, family-based, and employment-based (other than certain self-petitioning employment-based first preference applicants with no job offer in the United States and SIV applicants under INA 101a(27)) – then the applicant and any eligible derivatives are exempt from the P.P.* As noted in paragraph 5, this guidance is applicable only for nationals of Iran, Libya, Syria, Yemen, Somalia, and Chad.

31. (SBU) In contrast with the above definition of "person," for purposes of the court order, the definition of "close family," for purposes of the appropriate waiver category (see paragraph 25 section d), is the limited definition found in section 201(b) of the INA. This limits the relationship to spouses, children under the age of 21, and parents. While the INA definition includes only children, spouses, and parents of a U.S. citizen, in the context of the P.P. it also includes these relationships with LPRs and aliens lawfully admitted on a valid nonimmigrant visa in addition to U.S. citizens.

Processing V92 and V93 cases

32. (SBU) The P.P. does not affect V92 applicants (follow-to-join asylees), and post should adjudicate these cases per standard guidance.

33. (SBU) While the P.P. does not affect V93 applicants (follow-to-join refugees), V93 case processing is currently suspended pursuant to a October 23, 2017 memorandum from the Secretaries of State and Homeland Security and the Director of National Intelligence, except for V93 cases processed by the Resettlement Support Centers in Kenya and Thailand. Processing of V93 cases elsewhere will resume once the additional security measures called for in the memorandum are in place. If posts have any questions about as specific case please reach out to your VO/F liaison. VO will send guidance when the suspension of V93 cases is lifted.

34. (SBU) Posts with questions regarding this guidance should contact their post liaison officer in CA/VO/F.

35. (U) Minimize considered.

| Signature: | Tillerson |
|---|---|
| **Drafted By:** | CA/VO/F :Lisa Overman |
| **Cleared By:** | CA: KChristensen |
| | CA/VO: ERamotowski |
| | CA/VO: KKing |
| | CA/VO/F: MAParker |

CA/VO/F: JWebster
CA/VO/F: NWalcott
CA/VO/L: DNewman
CA/VO/L: NPerry
L/CA: ARavjani
L/CA: SKerr
M: JWhiteley
P: LSnyder
S/P: CPeterson
D: KNanavatty
AF/EX: BDille
EAP/EX: DLaMontagne
WHA/EX: RPeterson
EUR-IO/EX: JSommer
NEA-SCA/EX: JSmith
PRM: KGauger
SES\SullivanAL

| | |
|---|---|
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO:Eichenberg, Amy E |
| **XMT:** | SANAA, AMEMBASSY |
| | |
| **Dissemination Rule:** | Archive Copy |

UNCLASSIFIED
SBU

**From:** SMART Archive
**Sent:** 12/6/2017 2:29:40 PM
**To:** SMART Core
**Subject:** Visa Processing Guidance: Supreme Court Lifts Prelimary Injunctions of Presidential Proclamation 9645

## UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 17 STATE 120862 |
| **Date/DTG:** | Dec 06, 2017 / 061927Z DEC 17 |
| **From:** | SECSTATE WASHDC |
| **Action:** | SOMALIA, USMISSION *ROUTINE*; ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT, 1A, 1C, 1N, 2M, 6P, 2A, 1E, 4L, 4S, 2P, 2E, 2N, KP, VE, TD, IR, LY, SY, YE, SO |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 17 STATE 97682 B) 17 STATE 114574 C) 17 STATE 56801 |
| **Subject:** | Visa Processing Guidance: Supreme Court Lifts Prelimary Injunctions of Presidential Proclamation 9645 |

1. (SBU) Summary: This ALDAC supersedes ref B and provides updated information on the implementation of Presidential Proclamation 9645 (P.P. 9645) titled, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats" following two U.S. Supreme Court orders dated December 4, 2017. Beginning at opening of business local time on December 8, 2017, posts should follow the guidance below and in ref A to fully implement P.P. 9645. End Summary.

2. (SBU) On December 4, 2017, the U.S. Supreme Court granted the U.S. government's motions for emergency stays of preliminary injunctions issued by U.S. District Court in Hawaii and Maryland. Those preliminary injunctions prohibited the U.S. government from fully enforcing or implementing the visa restrictions in P.P. 9645 against nationals of six countries: Chad, Iran, Libya, Syria, Yemen, and Somalia. The injunctions did not affect implementation of restrictions against nationals of North Korea and Venezuela. As a result of the Supreme Court's December 4 orders, the U.S. government may now fully implement all of the provisions of P.P. 9645 pending the outcome of ongoing cases before the Fourth and Ninth Circuit Courts of Appeals.

3. (SBU) Beginning at opening of business local time on December 8, 2017, posts should follow the guidance for "Phase 2" in ref A, which details procedures for fully implementing the provisions of P.P. 9645. This is the original guidance issued by the Department following the issuance of P.P. 9645.

4. (SBU) Additional guidance on making national security/public safety determinations when considering waivers under P.P. 9645 can be found in ref C, which is the septel referred to in paragraph 26 of ref A. **LEP** are required for all waiver cases. Unclassified excerpts of this guidance are on the CA Web (http://intranet.ca.state.sbu/content/caweb/visas-news/presidential-proclamation.html).

5. (SBU) Posts with questions regarding the instructions in this cable should contact their post liaison officer in CA/VO/F. As always, we appreciate posts continued efforts implementing P.P. 9645.

**MINIMIZE CONSIDERED**

| | |
|---|---|
| **Signature:** | Tillerson |
| **Drafted By:** | CA/VO/F:Jonathan Webster |
| **Cleared By:** | CA:PMarigliano |
| | CA/VO:ERamotowski |
| | CA/VO/F:MParker |
| | CA/VO/F:JNantais |
| | CA/VO/F:CParker |
| | CA/VO/F:NWalcott |
| | CA/VO/L:DNewman |
| | CA/VO/L:NPerry |
| | L/CA:SKerr |
| | EUR-IO/EX:JSommer |
| | WHA/EX:RPeterson |
| | NEA-SCA/EX:AStowe |
| | AF/EX:BDille |
| | EAP/EX:MVerloop |
| | S/P:CPeterson |
| | M:JWhiteley |
| | D:KNanavatty |
| | P:LSnyder |
| | CA:KChristensen |
| | SES\EdwardsenTE |
| **Approved By:** | CA:Carl C. Risch |
| **Released By:** | CA_FO:Mastin, Paul E |
| **XMT:** | SANAA, AMEMBASSY |
| | |
| **Dissemination Rule:** | Archive Copy |

UNCLASSIFIED
SBU

F-2018-07065
UNCLASSIFIED

## UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 18 STATE 33378 |
| **Date/DTG:** | Apr 11, 2018 / 111742Z APR 18 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS, PREL, PTER, ASEC, ECON, PINR, PINS, SMIG, PBTS, DHS, KCRM, KJUS, TD |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 17 STATE 97682 |
| | B) 18 STATE 5468 |
| | C) 17 STATE 120862 |
| **Subject:** | April 10 Presidential Proclamation: Implementation Guidance and Discontinuance of Travel Restrictions for Nationals of Chad |

1. (SBU) SUMMARY: The Presidential Proclamation, "Maintaining Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats," (https://www.whitehouse.gov/presidential-actions/presidential-proclamation-maintaining-enhanced-vetting-capabilities-processes-detecting-attempted-entry-united-states-terrorists-public-safety-threats/) released April 10, 2018 (hereinafter the April 10 Proclamation) amended Presidential Proclamation 9645 (P.P. 9645) "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into The United States by Terrorists or Other Public-Safety Threats" (https://www.whitehouse.gov/presidential-actions/presidential-proclamation-enhancing-vetting-capabilities-processes-detecting-attempted-entry-united-states-terrorists-public-safety-threats/). The April 10 Proclamation removes all visa restrictions and entry suspensions imposed by P.P. 9645 on nationals of Chad. As noted in the April 10 Proclamation, the Government of Chad made substantial advances in information-sharing and identity-management practices and now meets the requirements for the removal of travel restrictions. The Department will resume normal visa processing for nationals of Chad beginning at 12:01 a.m., Eastern Daylight Time, on April 13, 2018. END SUMMARY.

2. (SBU) The President issued P.P. 9645 on September 24, 2017. The proclamation suspended entry into the United States of certain nationals from eight countries: Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia (Ref A). These restrictions followed a global review of countries' adequacy in information-sharing and identity-management criteria identified by the Department of Homeland Security (DHS) in a July 2017 report to the President as a baseline for the kinds of information required from foreign governments to support U.S. immigration and visa vetting processes.

3. (SBU) P.P. 9645 Section 4 requires the Secretary of Homeland Security, in consultation with

UNCLASSIFIED
F-2018-07065

F-2018-07065
UNCLASSIFIED

the Secretary of State, Attorney General, and Director of National Intelligence, to submit a report to the President every 180 days (Ref B). This report includes appropriate recommendations to adjust, newly impose, or remove entry restrictions based on an updated worldwide assessment of countries' information-sharing and identity-management practices. The Secretary of Homeland Security presented the first 180-day report to the President on March 30, 2018. The report recommended to the President that he discontinue travel restrictions on nationals of Chad due to the government of Chad's improvement in several key areas that allowed it to meet the requirements. Following receipt of this report, the President issued the April 10 Proclamation, removing all P.P. 9645 travel restrictions on nationals of Chad.

4. (SBU) Beginning at 12:01 a.m., Eastern Daylight Time, on April 13, 2018, posts should discontinue applying the current P.P. 9645 guidance (Ref C) to nationals of Chad. Effective that date, consular officers should resume normal processing of visa applications received from nationals of Chad. Nationals of Chad whose visa applications were denied under EO17 that were not pending consideration of a waiver of P.P. 9645 as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, must submit a new visa application in order to be considered for a visa. Applications for nationals of Chad denied under EO17 that were           LEP  as of 12:01 a.m., Eastern Daylight Time, on April 13, 2018, may be processed to conclusion in accordance with directions provided               LEP , once received.

5. (SBU) Visa restrictions for nationals of all other countries subject to P.P. 9645 remain in place, following processing guidance in Ref C.

6. (SBU) Posts with questions regarding this guidance should contact their post liaison officer in CA/VO/F. Talking points are available on CAWeb.

| | |
|---|---|
| **Signature:** | Sullivan |
| **Drafted By:** | VO/F:Whalen, Sean |
| **Cleared By:** | CA:Christensen, Karen L |
| | CA:Marigliano, Peter J |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO/F:Parker, Morgan A |
| | CA/VO/L:Perry, Nicholas |
| | CA/VO/L:Newman, David S |
| | CA/VO/L/A:McNeil, Matthew C |
| | CA/VO/F:Parker, Christine D |
| | CA/VO/F:Webster, Jonathan K |
| | CA/VO/SAC:Kaplan, Dean M |
| | CA/VO/SAC:Smith, Timothy W |
| | L/CA:Ravjani, Abbas R |

F-2018-07065
UNCLASSIFIED

F-2018-07065
UNCLASSIFIED

L/CA:Osborn, Judith L

WHA/EX:Peterson, Richard J

EAP/EX:Verloop, Marja D

NEA-SCA/EX:Stowe, Andrew D

AF/EX:Dille, Benjamin B

EUR-IO/EX:Sommer, Jimmi N

M:Whiteley, John W

P:Snyder, Lorelei G

S/P:Frideres, Taryn F

D:Nanavatty, Katharine B

SES\WellsAS

**Approved By:**      CA:Risch, Carl C

**Released By:**      CA_FO:Stadem, Erica L

**XMT:**              SANAA, AMEMBASSY

**Dissemination Rule:**      Archive Copy

## UNCLASSIFIED
SBU

F-2018-07065
UNCLASSIFIED

UNCLASSIFIED

**UNCLASSIFIED**
SBU



| | |
|---|---|
| **MRN:** | 18 STATE 65964 |
| **Date/DTG:** | Jun 27, 2018 / 272238Z JUN 18 |
| **From:** | SECSTATE WASHDC |
| **Action:** | SOMALIA, USMISSION *ROUTINE*; ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT, 1A, 1C, 2M, 6P, 2A, 4L, 4S, 2P, KP, VE, IR, LY, SY, YE, SO, 1N, 1E, 2E, 2N |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 17 STATE 120862 |
| | B) 17 STATE 97682 |
| | C) 17 STATE 56801 |
| | D) 18 STATE 33378 |
| | E) 17 STATE 114574 |
| | F) 17 STATE 105674 |
| **Subject:** | Visa Processing Guidance - Supreme Court Determines that Presidential Proclamation 9645 Visa Restrictions are Lawful |

1. (SBU) Summary: This ALDAC supersedes the instructions in reftels E and F and provides updated information on the implementation of Presidential Proclamation 9645 (P.P. 9645) titled, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats" following the U.S. Supreme Court decision in *Trump v. Hawaii*, dated June 26, 2018. Posts should continue to follow the guidance below and in reftels A, B, C, and D to fully implement P.P. 9645. End Summary.

2. (SBU) On June 26, 2018, the U.S. Supreme Court issued a decision in the case of *Trump v. Hawaii*, ruling that P.P. 9645 was a lawful exercise of the President's authority under the Immigration and Nationality Act. Consistent with the Supreme Court's ruling, the U.S. government will continue fully implementing the visa restrictions in P.P. 9645 for certain nationals of seven countries: Iran, Libya, Syria, Yemen, Somalia, North Korea, and Venezuela. (While nationals of Chad were initially listed as being subject to visa restrictions in P.P. 9645, per reftel D, P.P. 9723 removed all visa restrictions on nationals of Chad.)

3. (SBU) Posts should continue to follow the guidance in reftels A, B, C, and D in implementing the provisions of P.P. 9645 for nationals of Iran, Libya, Syria, Yemen, Somalia, North Korea, and Venezuela. This ALDAC supersedes the guidance in reftels E and F.

4. (SBU) If, after reviewing this cable, reftels, and the guidance on CAWeb (https://intranet.ca.state.sbu/content/caweb/visas/news/presidential-proclamation.html), if posts

**AR-188**

have additional questions on P.P. 9645's implementation, they should contact CA/VO/F via the countries-of-concern-inquiries@state.gov email.  As always, we appreciate posts' continued efforts implementing P.P. 9645.

| | |
|---|---|
| **MINIMIZE CONSIDERED** | |
| **Signature:** | Pompeo |
| **Drafted By:** | CA/VO/F/ET:Sean Whalen |
| **Cleared By:** | CA: PMarigliano |
| | CA/VO: ERamotowski |
| | CA/VO: MParker |
| | CA/VO/F: JWebster |
| | CA/VO/F: NWalcott |
| | CA/VO/F/OI: LOverman |
| | CA/VO/L: DNewman |
| | CA/VO/L: NPerry |
| | CA/VO/L/A: MMcNeil |
| | CA/VO/L/A: LNeilan |
| | CA/VO/L/A: TDerentz |
| | CA/P: KLang |
| | L/CA: JOsborn |
| | M: KKirkland |
| | AF/EX: DCurtis |
| | EAP/EX: DLaMontagne |
| | EUR-IO/EX: PMurray |
| | NEA-SCA/EX: JSmith |
| | WHA/EX: RPeterson |
| | PRM: DSpruell |
| | SES\MeiselJS |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO:Eichenberg, Amy E |
| **XMT:** | SANAA, AMEMBASSY: ST PETERSBURG, AMCONSUL |
| **Dissemination Rule:** | Archive Copy |

**UNCLASSIFIED**
SBU

F-2018-07065

M_CA_VO-1-26-00389016

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 18 STATE 110910 |
| **Date/DTG:** | Nov 02, 2018 / 021558Z NOV 18 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | LEP |
| **Captions:** | LEP |
| **Subject:** | LEP |

1. (SBU) SUMMARY:                                                       LEP

END SUMMARY.

2. (SBU) On December 8, 2017, the Department began full implementation of P.P. 9645, which restricts and limits entry into the United States of nationals of certain countries.           LEP
                                                                      P.P. 9645
authorizes consular officers to grant waivers of these restrictions for applicants who meet hardship and national interest-related criteria, if their entry would not pose a threat to the national security or public safety of the United States.  To assess this "no threat to the national security or public safety" prong of P.P. 9645 waiver eligibility, current guidance instructs consular officers to                                                          LEP

3. (SBU)                                                               LEP

4. (SBU) NOTE:                                                         LEP

AR-190

F-2018-07065

M_CA_VO-1-26-00389016



LEP

5. (SBU)                                                    LEP

| | |
|---|---|
| **Signature:** | Pompeo |
| **Drafted By:** | CA/VO/SAC/CT:Megan Ahearn |
| **Cleared By:** | CA:Christensen, Karen L |
| | CA:Marigliano, Peter J |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO:Mesquita, Mario M |
| | CA/VO/SAC:Kaplan, Dean M |
| | CA/VO/SAC/CT:Hoffmann, Erin R |
| | CA/VO/F:Parker, Morgan A |
| | CA/VO/F/OI:Whalen, Sean |
| | CA/VO/L/A:Derentz, Tiffany N |
| | CA/VO/L/R:Beaumont, Taylor W |
| | CA/VO/L:Newman, David S |
| | AF/EX:Reynolds, Christopher R |
| | CA/P:Carstens, Virgil W |
| | EAP/EX:Harlow, Graham B |
| | EUR-IO/EX:Sommer, Jimmi N |
| | WHA/EX:Peterson, Richard J |
| | M:Kirkland, Kendra D |
| | NEA-SCA/EX:Stowe, Andrew D |
| | L/CA:Madad, Mahvish Z. |
| | SES\MoppertBS |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO:Stewart, Sarah C |
| **XMT:** | BASRAH, AMCONSUL: SANAA, AMEMBASSY: ST PETERSBURG, AMCONSUL |

F-2018-07065

UNCLASSIFIED

**Dissemination Rf le:**          Archive Copy

UNCLASSIFIED
SBU

UNCLASSIFIED

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 19 STATE 8106 |
| **Date/DTG:** | Feb 04, 2019 / 041816Z FEB 19 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *IMMEDIATE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 17 STATE 52856 |
| | B) 17 STATE 25814 |
| | C) 17 STATE 60239 |
| | D) 18 STATE 19874 |
| | E) 18 STATE 118790 |
| **Subject:** | Updated Guidance on Enhanced Vetting of Visa Applicants |

1. (U) THIS IS AN ACTION REQUEST. THIS GUIDANCE SUPERSEDES REF A
PARAGRAPHS 10-12 AND PARAGRAPHS 6-9 IN REF B. 9 FAM 303.4-4, 9 FAM 304.2-2,
9 FAM 304.2-4(A), 9 FAM 304.5-9(E), AND 7 FAH-1 H-230 WILL BE UPDATED
ACCORDINGLY.

2. (SBU) Summary: The Department and its interagency partners continue to refine procedures
to ensure that enhanced vetting is as effective as possible and best serves the objective of
increasing the safety and security of the American people, as outlined by the March 6, 2017,
Presidential Memorandum and E.O. 13780. Implementing posts' enhanced vetting plans is key
to achieving the goals of these two orders.                                        **LEP**

                                           In light of these advancements, this cable provides posts a
revised framework for applying the enhanced vetting called for by the President's March 6,
2017 (and announced in Reftel A) to individual visa applications. End summary.

3. (SBU) ACTION REQUEST: To facilitate implementing the revised procedures in this cable,
posts should                                                                       **LEP**

LEP

Posts' enhanced vetting plans will be posted on the Enhanced Vetting resource site located on the Visa Home Page tab in the Consular Classified Intranet.

4. (SBU)                                                                    LEP

UPDATED GUIDANCE FOR ENHANCED VETTING PLANS

5. (SBU)                                                                    LEP

These instructions only apply to enhanced vetting plans developed at post and do not affect other requirements, such as P.P. 9645 or Special Clearance and Issuance Procedures in 9 FAM 304.5.

ADJUDICATING CASES THAT MEET POST'S ENHANCED VETTING CRITERIA

6. (SBU) The purpose of post's enhanced vetting criteria is to alert adjudicators at that post of the need to delve deeper into particular applications that warrant additional scrutiny. Consular officers should consider adjudication as a decision tree, in which a first decision for most NIV applicants is whether the applicant is ineligible under INA 214(b) or any other section of law. If the applicant is otherwise issuable, a second decision point is whether the applicant meets any of the enhanced vetting criteria outlined in post's plan. If so, post may select one or more of the options outlined in paragraph 7. Additional decision points would include whether the applicant requires any additional special clearances.

7. (SBU) For any applicant that falls within the scope of the enhanced vetting criteria, but is not ineligible under INA 214(b) or any other section of the law, post may use one or more of the following options to fulfill the enhanced vetting called for in E.O. 13780 and the President's March 6, 2017, Memorandum:

--Conduct a more detailed analysis of whether INA 214(b) applies, conferring with a consular manager as needed: Posts should remember that a refusal under INA 214(b) is appropriate in cases in which the applicant is unable to demonstrate to the adjudicator's

satisfaction that s/he will abide by the requirements of the visa category.    **LEP**



**LEP**

--    **LEP**

--    **LEP**

F-2018-07065

LEP

--Submit an AO in the circumstances cited in 9 FAM 304.3-2:  Most AOs may be submitted informally via email, except in limited circumstances.  If an adjudicator is uncertain whether an AO must be submitted formally, he/she may email their VO/L/A attorney-adviser.

LEP

LEP

## ADJUDICATING TCN APPLICANTS

8.  (SBU) Concerning scrutiny of TCN applicants, posts must continue to follow guidance outlined in 9 FAM 403.10-2(B)(2) and 9 FAM 302.1-2(B)(2).  While referring to the enhanced vetting plan of the applicant's nationality is not mandatory (particularly since an applicant applying in his/her home country may be quite different than one applying in a third country), enhanced vetting plans of other countries are available and may serve as a useful resource.  Additionally, Posts should specifically address TCN applicants from Presidential Proclamation 9645 nationalities in their enhanced vetting plans.

LEP

## ADDITIONAL INFORMATION

10.  (SBU) Posts are reminded that visas may not be denied on the basis of race, religion, ethnicity, national origin, political views, gender, or sexual orientation.

11.  (SBU) For any general questions concerning post's enhanced vetting plans or the requirements outlined in this cable, posts should contact CA-SMVetting@state.gov.  For  LEP or AO-specific questions, posts should contact the VO/SAC email collectives

F-2018-07065

UNCLASSIFIED

(https://intranet.ca.state.sbu/content/caweb/offices/visa-services/who-s-who-in-ca-vo/screening-analysis-and-coordination.html) or their VO/L/A attorney-adviser (https://intranet.ca.state.sbu/content/caweb/offices/visa-services/who-s-who-in-ca-vo/legal-affairs.html#la). 9 FAM 304.2-2, 9 FAM 304.2-4(A), 9 FAM 303.4-4, 9 FAM 304.5-9(E), AND 7 FAH-1 H-230 will be updated accordingly.

| | |
|---|---|
| **Signature:** | Pompeo |
| **Drafted By:** | CA/VO/F:Walcott, Naomi |
| **Cleared By:** | CA:Christensen, Karen L |
| | CA:Marigliano, Peter J |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO:Mesquita, Mario M |
| | CA/VO/F:Parker, Morgan A |
| | CA/VO:Cordell, Jenny R |
| | CA/VO/F/IE:Marwaha, Brianne C |
| | CA/VO/F/ET:Snider, Marc A |
| | CA/VO/SAC:Kaplan, Dean M |
| | CA/VO/SAC/CT:Hoffmann, Erin R |
| | CA/VO/L:Herndon, Megan |
| | CA/VO/L/R:Beaumont, Taylor W |
| | CA/VO/L/A:Derentz, Tiffany N |
| | CA/VO/I:McInerney, Brian G |
| | CA/VO/I:Ali, Nausher |
| | CA/FPP:Pomainville, Brett G |
| | CA:Benning, Douglass R |
| | CA/EX:McEvoy, Meredith C |
| | CA/EX/PAS:Evans, Michael P |
| | CA/P:Ball, Teresa S |
| | EAP/EX:LaMontagne, David M |
| | AF/EX:Reynolds, Christopher R |
| | EUR-IO/EX:Sommer, Jimmi N |
| | NEA-SCA/EX:Al-Laham, Eliza F |
| | M:Bentley, Pamela J |
| | WHA/EX:Peterson, Richard J |
| | SES\EdwardsenTE |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO:Giauque, Ivna |
| **XMT:** | BASRAH, AMCONSUL; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL |
| **Dissemination Rule:** | Archive Copy |

UNCLASSIFIED
SBU

07065

# Presentations

**U.S. VISAS**
U.S. Department of State · Bureau of Consular Affairs

AR-200

# Presidential Proclamation (P.P.) 9645

## CA/VO

October 11, 2017

# Rules of Engagement

- Presentation will be recorded and posted on CAWeb

- Questions should be asked in the chat box.  If we are not able to answer your question either during or at the end of the presentation, we will update the Q&As.

- Stay in regular contact with your VO/F post liaison, especially if you have questions.

- Be sure to regularly check CAWeb for updates under Executive Actions: Information and Guidance.

AR-201

# Presenters

Visa Office/Field Operations (VO/F)

      James McMillian

      Joel Nantais

      Lisa Overman

      Katie Plona

Visa Office/Legal Affairs/Advisory Opinions (VO/L/A)

      Tiffany Derentz

      Matt McNeil

      Linda Neilan

AR-202


Agenda

- Overview of E.O. 13780 Section 2 Process

- Presidential Proclamation Basics
  - Designated countries
  - Phased implementation

- Exceptions and Waivers

- Resources

AR-203

# Overview of Section 2 Process

- Section 2 of Executive Order 13780

- Information Sharing Criteria

- Worldwide Engagement

- Report and Final Determination

AR-204

# Presidential Proclamation Basics

- Phased implementation

- Section 2 travel suspension under E.O. 13780 expired September 24

- Presidential Proclamation 9645 took effect on September 24 at 3:30pm EDT

AR-205

# Presidential Proclamation Basics

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas | Exceptions |
|---|---|---|---|
| Chad | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |
| Iran | No nonimmigrant Visas | No immigrant or diversity visas | F, M, J student visas LEP |
| Libya | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |
| North Korea | No nonimmigrant Visas | No immigrant or diversity visas | |
| Somalia | No restrictions (but note additional vetting requirements) | No immigrant or diversity visas | |
| Syria | No nonimmigrant Visas | No immigrant or diversity visas | |
| Venezuela | No regular, diplomatic, or official type B-1, B-2, and B-1/B-2 visas for certain government officials and their immediate family members. | No restrictions | |
| Yemen | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |

AR-206

7 of 19

# Presidential Proclamation Basics

## Phase 1

- Began September 24 at 3:30pm EDT

- Syria, Iran, Somalia, Yemen, Libya

- P.P. exceptions and waivers available

- Bona fide relationship exception available

## Phase 2

- Starts October 18 at 12:01am EDT

- Syria, Iran, Somalia, Yemen, Libya **+** *Chad, North Korea, Venezuela*

- P.P. exceptions and waivers available

- **No** bona fide relationship exception

AR-207

8 of 19

# Exceptions

a) Any national who was in the United States on the applicable effective date of the P.P. for that national, regardless of immigration status;

b) **Any national who had a valid visa on the applicable effective date of the P.P. for that national;**

c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who is entitled to a visa or other valid travel document under section 6(d) of the P.P.;

d) Any lawful permanent resident (LPR) of the United States;

e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;

AR-208

# Exceptions

f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;

g) **Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;**

h) Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; **except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas;** or

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States;

j) or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

AR-209

## Exceptions – Process

AR-210

- If the applicant qualifies for an exception, issue

  Annotate: *"Exception under Proclamation"*

- If an applicant does not qualify for an exception, post should refuse the case with code EO17.

## Waivers – Process

AR-211

- If the applicant doesn't qualify for an exception, but meets the criteria for a waiver, post should refuse the case with code EO17.

- Once guidance is available, post can overcome/waive the EO17 refusal if the applicant meets all criteria.
    Annotate: *"Presidential Proclamation Waived"*
    Do not CLOK "EO17" refusal

# Waivers – Undue Hardship

AR-212

- Satisfaction of consular officer that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel

- Additional guidance on what constitutes undue hardship will be included in an updated version of the Operational Q&As

# Waivers – National Interest

- Satisfaction of consular officer that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted

- Additional guidance on what constitutes national interest will be included in an updated version of the Operational Q&As

AR-213

14 of 19

# Waivers – Proclamation examples

- The three-prong test (undue hardship, national interest, and national security/public safety threat) applies to all waiver decisions

- Consular officers may not categorically grant case-by-case waivers

- The P.P. includes the following examples where case-by-case waivers may be appropriate

AR-214

15 of 19

# Waivers – Proclamation examples

a) previously admitted to U.S. for a continuous period of work, study, or other long-term activity, outside U.S. on applicable effective date, seeks to reenter to resume activity, denial would impair that activity;

b) significant contacts with the U.S. but outside the U.S. on applicable effective date for work, study, or other lawful activity;

c) seeks to enter U.S. for significant business or professional obligations and denial of entry would impair those obligations;

d) seeks to enter U.S. to visit or reside with **a close family member (e.g., a spouse, child, or parent) [use INA definition of immediate relative]** who is a USC, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause undue hardship;

e) an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

AR-215

16 of 19

# Waivers — Proclamation examples

AR-216

f)   has been employed by, or on behalf of, the USG (or is eligible dependent of such an employee) and can document that he or she has provided faithful and valuable service to the USG;

g)   traveling for purposes related to an IOIA-designated international organization, traveling for purposes of conducting meetings or business with the USG, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)   permanent resident of Canada who applies for a visa at a location within Canada;

i)   traveling as a USG-sponsored exchange visitor;

j)   traveling to the U.S. for legitimate law enforcement, foreign policy, or national security purposes at the request of the USG.

# Waivers – Questions

Questions about waivers, including special circumstances, should be sent to:

countries-of-concern-inquiries@state.gov

If an AO is necessary, the countries-of-concern team will inform post.

AR-217

# Resources

CAWeb – <u>Executive Actions:  Information and Guidance</u>

TSG updates

<u>Who's Who in Field Operations</u> – for post liaisons

AR-218



**AR-219**

# Presidential Proclamation (P.P.) 9645

## CA/VO

### December 13, 2017

To access the audio, dial:

**US Toll Free Number:** LEP ▮▮▮▮▮

**USA Caller Paid:** LEP ▮▮▮▮▮

**Access Code:** LEP ▮▮▮▮

# Rules of Engagement

- Presentation will be recorded and posted on CAWeb

- Questions should be asked in the chat box.  If we are not able to answer your question either during or at the end of the presentation, we will update the Q&As.

- Stay in regular contact with your VO/F post liaison, especially if you have questions.

- Be sure to regularly check CAWeb for updates under Presidential Proclamation: Information and Guidance.

AR-220

Slide 2

# Presenters

Visa Office/Field Operations (VO/F)
>James McMillian
>Joel Nantais
>Sean Whalen

Visa Office/Legal Affairs/Advisory Opinions (VO/L/A)
>Tiffany Derentz
>Matt McNeil
>Linda Neilan

Visa Office/Screening, Analysis and Coordination (VO/SAC)
>Erin Hoffmann
>Megan Ahearn

AR-221

# Presidential Proclamation Basics

AR-222

- Effective date for Iran, Libya, Somalia, Syria, and Yemen is September 24.

- Effective date for Chad, North Korea, and Venezuela is October 18.

- Court orders
  - Full implementation resumed Dec. 8
  - No longer a bona fide relationship exception.

Slide 4


Agenda

- Overview of P.P. Basics

- Application of Waiver Criteria
  - National Interest
  - Undue Hardship
  - National Security/Public Safety

- Resources

AR-223

Slide 5

# Country-Specific Restrictions

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas |
|---------|--------------------|-------------------------------|
| Chad* | No regular or official type B-1, B-2, and B-1/B-2 visas . *UPDATE: As of April 13, 2018 – nationals of Chad are no longer subject to visa restrictions. | No immigrant or diversity visas. *UPDATE: As of April 13, 2018 – nationals of Chad are no longer subject to visa restrictions. |
| Iran | No nonimmigrant Visas (EXCEPT: F, M, J visas (additional vetting requirements apply)) | No immigrant or diversity visas |
| Libya | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| North Korea | No nonimmigrant Visas | No immigrant or diversity visas |
| Somalia | No restrictions (additional vetting requirements apply) | No immigrant or diversity visas |
| Syria | No nonimmigrant Visas | No immigrant or diversity visas |
| Venezuela | No regular, diplomatic, or official type B-1, B-2, and B-1/B-2 visas for certain government officials and their immediate family members (VO has entered EO17 CLASS hits on affected individuals). | No restrictions |
| Yemen | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |

AR-224

Slide 6

# Exceptions to P.P.

a) Any national who was in the United States on the applicable effective date of the P.P. for that national, regardless of immigration status;

b) Any national who had a valid visa on the applicable effective date of the P.P. for that national;

c) Any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 who is entitled to a visa or other valid travel document under section 6(d) of the P.P.;

d) Any lawful permanent resident (LPR) of the United States;

e) Any national who is admitted to or paroled into the United States on or after the applicable effective date of the P.P for that national;

Slide 7

AR-225

# Exceptions to P.P. Continued

f) Any national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of the P.P. for that national or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission;

g) **Any dual national of a country designated under the P.P. when traveling on a passport issued by a non-designated country;**

h) **Any national traveling on a diplomatic (A-1 or A-2) or diplomatic-type visa (of any classification), NATO-1-6 visas, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; except certain Venezuelan government officials and their family members traveling on a diplomatic-type B-1, B-2, or B1/B2 visas; or**

i) Any national who has been granted asylum; any refugee who has already been admitted to the United States;

j) or any individual who has been granting withholding of removal, advance parole, or protection under the Convention Against Torture.

AR-226

Slide 8

# Exceptions – Process

- If the applicant qualifies for an exception, enter case notes stating the reason why applicant qualifies, issue, and

  Annotate: *"Exception under Proclamation"*

- If an applicant does <u>not</u> qualify for an exception, post should refuse the case with code EO17.

AR-227

Slide 9

9 of 33

## Waivers – Process

- Refuse the case with code EO17.

- Check appropriate box on refusal letter and inform applicant of refusal.

- Post must consider a waiver - determine whether applicant satisfies the three prong test for waiver

- If applicant found to meet national interest and undue hardship prongs, assess no threat to national security/public safety and <sup>LEP</sup>.

- If found eligible for waiver, waive the EO17 refusal, <u>enter appropriate case notes</u>, and

    Annotate: ***"Presidential Proclamation Waived"***

    Do not CLOK "EO17" refusal.

Slide 10

AR-228

# Waiver Criteria – Three-Prong Test

- Denying entry would cause **undue hardship** to the applicant;

- His or her entry would not pose a **threat to the national security or public safety** of the United States; and

- His or her entry would be in the **U.S. national interest.**

AR-229

Slide 11

# Waivers – Examples from P.P.
## (~~Paragraph 24 of 17 STATE 97682~~ 9 FAM 302.14-10(D) as of May 22, 2018

a) previously admitted to U.S. for a continuous period of work, study, or other long-term activity, outside U.S. on applicable effective date, seeks to reenter to resume activity, denial would impair that activity;

b) has **previously established significant contacts** with the U.S. but outside the U.S. on applicable effective date for work, study, or other lawful activity (**contacts established prior to issuance of the PP, generally long-term and, in the commercial context, essential to a business or professional obligation or significant, current opportunity**);

c) seeks to enter U.S. for significant business or professional obligations and denial of entry would impair those obligations **(see p. 9; Q7 )**

d) seeks to enter U.S. to visit or reside with **a close family member (e.g., a spouse, child, or parent) [use INA definition of immediate relative]** who is a USC, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause undue hardship;

AR-230

Slide 12

# Waivers – Examples from P.P. Cont...

~~Paragraph 24 of 17 STATE 97682~~ 9 FAM 302.14-10(D) as of May 22, 2018

e)   an infant, a young child (under 14), or adoptee, an individual needing urgent medical care, **or someone whose entry is otherwise justified by the special circumstances of the case**;

f)   has been employed by, or on behalf of, the USG (or is eligible dependent of such an employee) and can document that he or she has provided faithful and valuable service to the USG;

g)   traveling for purposes related to an IOIA-designated international organization, traveling for purposes of conducting meetings or business with the USG, or traveling to conduct business on behalf of an international organization not designated under the IOIA;

h)   permanent resident of Canada who applies for a visa at a location within Canada;

i)   traveling as a USG-sponsored exchange visitor;

j)   traveling to the U.S. for legitimate law enforcement, foreign policy, or national security purposes at the request of the USG.

AR-231

Slide 13

# Waivers – Unique "Special Circumstances"

Email countries-of-concern-inquiries@state.gov if:

- do not clearly fit into one of the examples in ~~paragraph 24 of 17 STATE 97682 9 FAM 302.14 10(D)~~ as of May 22, 2018

- believe undue hardship and national interest requirements otherwise met

VO will advise whether it concurs that a waiver may be justified or whether an AO is needed.

Slide 14

AR-232

# Waivers – National Interest

Applicant must demonstrate to satisfaction of consular officer that:

- **a U.S. person or entity** would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted

AR-233

Slide 15

# Waivers – National Interest & Undue Hardship

- Required level of hardship may vary with the level of U.S. national interest in facilitating the applicant's travel to the U.S.

- If travel is related to a program or policy objective of the USG, the national interest can be considered higher, and the hardship to applicant would not need to be as severe.

AR-234

Slide 16

# Waivers – Undue Hardship

Applicant must demonstrate to satisfaction of consular officer that:

- an unusual situation exists that compels immediate travel by the applicant; and

- delaying visa issuance and the associated travel plans would defeat the purpose of travel.

AR-235

# Waivers — Undue Hardship

## Types of hardship to consider:

LEP

- 
- 
- 
- 
- 

AR-236

Slide 18

## Waivers – Undue Hardship –

LEP

- SHOULD be considered for applicants whose circumstances fit within these examples:  17 STATE 97682 ¶ 24: (a), (b), (c), (f), (h), (i)

- MAY be considered in any other case

- Drawing the Line – what should be considered "undue" hardship?

AR-237

Slide 19



Waivers – Undue Hardship -

LEP

LEP

AR-238

Slide 20

## Waivers – Undue Hardship -

LEP

- SHOULD be considered for applicants whose circumstances fit within these examples: 17 STATE 97682 ¶ 24: (b), (d), (e), (f), (h)

- MAY be considered in any other case

- Drawing the Line – what should be considered "undue" hardship?

AR-239

Slide 21



# Waivers – Undue Hardship –

LEP

LEP

AR-240

## Waivers – Undue Hardship –

LEP

AR-241

- SHOULD be considered for applicants whose circumstances fit within these examples: 17 STATE 97682 ¶ 24: (a), (b), (c), (e), (f), (h), (i)

- MAY be considered in any other case

- Drawing the Line – what should be considered "undue" hardship?

Slide 23



# Waivers – Undue Hardship –

LEP

LEP

AR-242

Slide 24

# Waivers – Undue Hardship –

LEP

- MAY be considered in other cases

- Drawing the Line – what should be considered "undue" hardship?

AR-243





Waivers – Undue Hardship –

LEP

AR-244

## Waivers – Undue Hardship –
LEP

- SHOULD be considered for applicants whose circumstances fit within these examples: 17 STATE 97682 ¶ 24: (g), (i), (j)

- MAY be considered in any other case

AR-245

- 

LEP

Slide 2

# Waivers – No Threat to National Security or Public Safety

Applicant must demonstrate to satisfaction of consular officer that:

- His or her entry would not pose a threat to national security or public safety of the United States by confirming:
  - The identity in the passport is bona fide; and
  - There is no indication the applicant has engaged in criminal or terrorist activities.

AR-246

Slide 28



# Waivers –

Slide 29



Waivers –

AR-248

Slide 30



# Waivers –

AR-249



Waiver

LEP

LEP

AR-250

# Resources

CAWeb – Presidential Proclamation

TSG updates

Who's Who in Field Operations – for post liaisons

9 FAM 302.14-10 – Updated May 22, 2018

AR-251

Slide 33

AR-252

## U.S. VISAS
U.S. Department of State • Bureau of Consular Affairs

# Presidential Proclamation (P.P.) 9645

## CA/VO

November 28, 2018



Question 1

DP

AR-253

# Question 1 Results

DP

AR-254

# Question 2

DP

AR-255

# Question 2 Results

DP

AR-256

# Question 3



AR-257

DP

# Question 3 Results

DP

AR-258



# Question 4

DP

AR-259

# Question 4 Results

DP

AR-260

# Question 5

AR-261

DP

# Question 5 Results

DP

AR-262



# Question 6

DP

AR-263

# Question 6 Results

DP

AR-264



# Question 7

DP

AR-265

# Question 7 Results



DP

AR-266



Question 8

AR-267

DP

# Question 8 Results

DP

AR-268

# Question 9



DP

AR-269



# Question 9 Results

DP

AR-270



# Question 10

DP

AR-271

# Question 10 Results

DP

AR-272



# Question 11

AR-273

# Question 11 Results

DP

AR-274



# Question 12

DP

AR-275

# Question 12 Results

DP



AR-276



# Question 13

DP

AR-277

# Question 13 Results

DP

AR-278



# Question 14

DP

AR-279

# Question 14 Results

DP

AR-280



# Question 15

DP

AR-281

# Question 15 Results

DP

AR-282

# Submitted Questions



DP

AR-283

# Resources

DP

AR-284

CA Press Guidance

CA Press Guidance
September 24, 2017

## HOLD LINES - Presidential Proclamation: "ENHANCING VETTING CAPABILITIES AND PROCESSES FOR DETECTING ATTEMPTED ENTRY INTO THE UNITED STATES BY TERRORISTS OR OTHER PUBLIC-SAFETY THREATS"

- We are working closely with the Departments of Homeland Security and Justice to review the President's Proclamation to ensure that we implement it in accordance with its terms, in a clear and orderly fashion, and without compromising national security.

- The Proclamation provides a timeframe for making operational adjustments and implementing its provisions. We will keep the public informed about changes affecting travelers to the United States.

- The President determined that imposing certain restrictions on these countries is critical to addressing the threat that existing information-sharing deficiencies present to the security and welfare of the United States and putting pressure on host governments to remedy these deficiencies.

- The Department will not be revoking nonimmigrant or immigrant visas based on this proclamation.

- At this time, U.S. embassies and consulates will continue to process visa applications while applying all appropriate screening measures.

- The U.S. government's national security-focused visitor screening and vetting procedures are designed to effectively identify individuals who could pose a threat to the United States. We welcome this opportunity to improve our systems and procedures.

## IF ASKED ABOUT ANY OPERATIONAL QUESTIONS:

- The Proclamation provides a timeframe which will allow the relevant agencies to make operational adjustments and implement its provisions.

- At this time, U.S. embassies and consulates will continue to process visa applications while applying all appropriate screening measures.

- The Proclamation provides categories of exemptions and authorizes the Department of State to **approve waivers, under certain conditions, on a case-by-case basis, thereby allowing for visas to be issued, if the applicants otherwise are eligible.**

- We do not plan to cancel any scheduled visa appointments, and will review each case carefully to ensure it is processed appropriately under the Proclamation.

- We will keep the public apprised of changes affecting travelers to the United States.

*Q: Will State provisionally revoke visas from nationals of affected countries?*

- The Department will not be revoking nonimmigrant or immigrant visas based on this proclamation.

- The Proclamation will not apply to various categories of travelers from the designated countries, including those with valid visas, but we defer to DHS for questions about travel.

- We will keep the public apprised of changes affecting travelers to the United States.

*Q: Will you process waivers for those affected?  How do I qualify for a waiver to be issued a visa?*

- The Proclamation authorizes the Department of State to **approve waivers, under certain conditions, on a case-by-case basis, thereby allowing for visas to be issued, if the applicants otherwise are eligible.**

- At this time, we do not plan to cancel any scheduled visa appointments, and will review each case carefully to ensure it is processed appropriately under the Proclamation.

- We will keep the public apprised of changes affecting travelers to the United States.

*Q: How does the Supreme Court decision affect implementation?*

- We refer you to the Department of Justice.

*Q: What has been communicated to U.S. embassies and consulates?*

- We are providing operational guidance to our embassies and consulates around the world.

- *If pressed:* Instructions to our embassies and consulates are internal communications, which we do not share publicly.

Drafted:     CA/P:  Ashley Garrigus, ext. 5-6148

Cleared:     CA/VO: ERamotowski    (ok)
             CA/VO/F/OI: LOverman  (ok)
             CA/VO/L: DNewman      (ok)
             CT/Press: RShore      (ok)
             AF/Press: AJacobsen   (ok)
             WHA/Press: AAura       (ok)
             NEA/Press: GVincent   (ok)
             EAP/RSP: BLai         (ok)
             EAP/P: MCavey         (ok)
             DS/Press: DBates      (info by request)
             PRM/Press: CHarris    (ok)
             L/HRR: MPickering     (ok)
             L/CA: MMadad          (ok)
             M: JWhiteley          (ok)
             P:  LSnyder           (ok)
             S/P:  CEspinosa       (ok)
             D: KNanavetty         (ok)
             DHS: DLapan           (info)
             NSC:

CA Press Guidance
September 26, 2017

**Presidential Proclamation:  Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or other Public-Safety Threats**

*CONTEXT:  A global review was conducted to determine what additional information is needed from each foreign country to assess whether foreign nationals who seek to enter the United States pose a security or safety threat.  As part of that review, the Department of Homeland Security developed a comprehensive set of criteria and applied it to the information-sharing practices, policies, and capabilities of governments on a worldwide basis.  At the end of that review, which included a 50-day period of engagement with foreign governments, the President received recommendations for imposing restrictions on seven countries classified as "inadequate" and one country classified as "at risk" of becoming "inadequate" based on the criteria developed by the Department of Homeland Security*

- After an extensive review and engagement with countries around the world, the President received recommendations for restrictions on nationals of eight countries.  The Presidential Proclamation directs the Departments of State and Homeland Security to restrict and limit the entry of nationals of these countries in order to protect the security and welfare of the United States.

- The restrictions are tailored to each country, reflecting the unique factors in place in the country.

- The Presidential Proclamation will be implemented in an orderly way.  No visas will be revoked under the Proclamation.  The restrictions are not intended to be permanent.

- The suspension of entry in the Proclamation does not apply to individuals who are inside the United States or who had a valid visa on the effective date of the Proclamation, even after their visas expire or they leave the United States.

- Until October 18, 2017, for countries designated under the Presidential Proclamation that were not designated under Executive Order 13780, U.S. embassies and consulates will continue to process visa applications under standard procedures, while applying all appropriate screening measures.

**AR-290**

## SECTION 2 REPORT PROCESS

**Implementing Section 2(e) of Executive Order 13780 consisted of multiple steps:**

- The Department of Homeland Security (DHS) developed a comprehensive set of criteria to assess countries' information sharing policies and practices as well as their national security and public-safety risk.

- In close cooperation with DHS, we conducted a worldwide review of what, if any, additional information would be needed from each foreign country to assess adequately whether their nationals seeking to enter the United States pose a security or safety threat.

- Following this review, DHS analyzed the information collected from each country against the criteria it had established.

- The Department of State then engaged foreign countries to encourage them to improve their performance with respect to the criteria established by DHS, working with some countries to enhance their information-sharing, modernize identity documents, or to formulate a plan to do so.

  - o As an example of this engagement: Sixteen countries were originally identified as "inadequate" based on the criteria developed by the Department of Homeland Security.  We continued to engage with them – and, as a result, eight of these countries were no longer "inadequate" at the end of the engagement period and were not named in the final Presidential Proclamation.

- Following that robust engagement period, DHS made recommendations to the President.

*Q: Will you be releasing the Section 2 reports?*

- The reports are classified to protect national security, and are therefore not subject to release.

*Q: What did some countries do to avoid being found "inadequate"? How did you work with those countries?*

- All countries were advised of the information sharing criteria on July 12.

- To avoid restrictions, the nations that did not appear to meet the criteria at that time took action to do so, such as increasing their information sharing or committing to an adequate plan to do so in the near future.

## COUNTRY RESTRICTIONS

### *Q: Which countries are designated?*

- The Proclamation maintained, modified, or eased restriction on five of six countries currently designated by Executive Order 13780. Those countries are Iran, Libya, Syria, Yemen, and Somalia.

- The Proclamation lifted restrictions on one of six countries that had been designated by Executive Order 13780: Sudan. As of Sunday, September 24, 2017, Sudanese nationals are no longer subject to travel restrictions under the Executive Order.

- It added restrictions and/or additional vetting on three additional countries found to not meet baseline requirements, but that were not included in Executive Order 13780. These countries are: Chad, North Korea, and Venezuela.

- This chart summarize the restrictions:

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas |
|---|---|---|
| Chad | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Iran | No nonimmigrant visas except F, M, and J student visas | No immigrant or diversity visas |
| Libya | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| North Korea | No nonimmigrant visas | No immigrant or diversity visas |

| Syria | No nonimmigrant visas | No immigrant or diversity visas |
| Venezuela | No B-1, B-2 or B-1/B-2 visas of any kind for officials of the following government agencies: Ministry of Interior, Justice, and Peace; the Administrative Service of Identification, Migration, and Immigration; the Corps of Scientific Investigations, Judicial, and Criminal; the Bolivarian Intelligence Service; and the People's Power Ministry of Foreign Affairs, and their immediate family members. | No restrictions |
| Yemen | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Somalia | | No immigrant or diversity visas |

*Q: Why do the suspensions differ for each country?*

- Restrictions were customized, as appropriate, given the unique conditions and deficiencies of each country, as well as other country-specific national security considerations.

*Q: Are the travel suspensions under this Presidential Proclamation temporary?*

- There is no end date on the Presidential Proclamation. However there will be a process to periodically review countries for removal from the restrictions based on their compliance with the criteria developed by DHS.

*Q: How can countries be removed from the travel suspension?*

- We will continue to work with identified countries to address information sharing deficiencies that resulted in their recommendation for travel restrictions.

- The Secretary of Homeland Security, in consultation with the Secretary of State and Attorney General, will regularly review and recommend countries for removal of these restrictions as circumstances warrant, such as an improvement in information sharing practices.

AR-293

*Q: Why these countries?*

**Chad** – Although it is an important partner, especially in the fight against terrorists, the government in Chad does not adequately share public-safety and terrorism-related information, and several terrorist groups are active within Chad or in the surrounding region, including elements of Boko Haram, ISIS-West Africa, and al-Qa'ida in the Islamic Maghreb.

**Iran** – The government in Iran regularly fails to cooperate with the United States Government in identifying security risks; is the source of significant terrorist threats; is state sponsor of terrorism; and fails to receive its nationals subject to final orders of removal from the United States.

**Libya** – Although it is an important partner, especially in the area of counterterrorism, the government in Libya faces significant challenges in sharing several types of information, including public-safety and terrorism-related information; has significant inadequacies in its identity-management protocols; has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States; and has a substantial terrorist presence within its territory.

**North Korea** – The government in North Korea does not cooperate with the United States Government in any respect and fails to satisfy all information-sharing requirements.

**Somalia** – Although it satisfies minimum U.S. information-sharing requirements, the government in Somalia still has significant identity-management deficiencies; is recognized as a terrorist safe haven; remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States; and struggles to govern its territory and to limit terrorists' freedom of movement, access to resources, and capacity to operate.

**Syria** – The government in Syria regularly fails to cooperate with the U.S. Government in identifying security risks; is the source of significant terrorist threats; has been designated as a state sponsor of terrorism; has significant inadequacies in identity-management protocols; and fails to share public-safety and terrorism information.

**AR-294**

**Venezuela** – The government in Venezuela is uncooperative in verifying whether its citizens pose national security or public-safety threats; fails to share public-safety and terrorism-related information adequately; and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States.

**Yemen** – Although it is an important partner, especially in the fight against terrorism, the government in Yemen faces significant identity-management challenges, which are amplified by the notable terrorist presence within its territory; fails to satisfy critical identity-management requirements; and does not share public-safety and terrorism-related information adequately.

*Q: How many people will this affect?*

- The Presidential Proclamation does not apply to those with valid visas or those who are in the United States on the day it goes into effect.

- As visa demand is cyclical and affected by a number of factors, we cannot estimate how many future visa applicants will be subject these restrictions. Visa issuance data by month and by fiscal year is available on travel.state.gov.

*Q: Why is a certain visa category permitted if the country was found deficient overall in information sharing?  Doesn't any visa issuance pose a threat?*

- The restrictions imposed by the President were carefully considered to prevent the entry of foreign nationals for whom the U.S. government lacks sufficient information to assess the risk they pose.  The President also considered foreign policy, national security, and counter terrorism goals of the United Sates in determining the restrictions.

*Q: How did you determine which categories should be suspended?*

- The restrictions and limitations are chosen to both encourage cooperation of the foreign governments to comply with the information sharing standards as well as to protect the United States until such time as the improvements occur.

*Q: Why do you give different treatment to different categories of visas?  Aren't NIVs or IVs screened the same?*

- Restrictions were customized, as appropriate, given the unique conditions in and deficiencies of each country, as well as other country-specific considerations.

## IMPLEMENTATION AND TIMELINE

### *Q: How are you implementing the Proclamation?*

- We will not cancel any previously scheduled visa appointments. Any individual who wishes should apply for a visa and disclose during the visa interview any information that might qualify the individual for an exception or a waiver. A consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation, and, if so, whether the applicant qualifies for an exception or a waiver.

- A consular officer can only determine whether an applicant is subject to a national-specific measure, is excepted, or qualifies for a waiver on a case-by-case basis during the course of a visa interview.

- All measures, exemptions, and waivers apply to nationals from the eight countries wherever they apply for visas.

### *Q: When does it go into effect?*

- The restrictions and limitations took effect at 3:30 p.m. eastern daylight time on September 24, 2017, for foreign nationals who were subject to the suspension of entry under section 2 of E.O. 13780, except Sudan, and who lack a credible claim of a bona fide relationship with a person or entity of the United States.

- The restrictions and limitations take effect at 12:01 a.m. eastern daylight time on October 18, 2017, for all other foreign nationals subject to the suspension of entry under section 2 of E.O. 13780 except Sudan, and for nationals of Chad, North Korea, and Venezuela.

- We will not cancel previously scheduled visa application appointments. In accordance with all applicable court orders, executive orders, and proclamations, for nationals of the eight designated countries, a consular officer

**AR-296**

will make a determination in the course of the interview whether an applicant otherwise eligible for a visa is exempt from the Presidential Proclamation or, if not, whether the applicant may be eligible for a waiver under the Presidential Proclamation, and may be issued a visa.

### *Q: Why is there an extended implementation period?*

- We will implement the Presidential Proclamation in an orderly and organized manner. During the implementation period, we will communicate specific guidance to our posts overseas.

### *Q: How does this Presidential Proclamation affect adjudication standards for visas?*

- Nothing in the Presidential Proclamation changes current legal and policy guidance for eligibility for any visa category. The first step in every adjudication is to ensure that an applicant is eligible under U.S. law. If the applicant is not eligible, the visa application will be denied.

- For applicants who are eligible for a visa, consular officers will then apply the appropriate guidance from the Presidential Proclamation and the Department to determine if a visa may be issued.

- **IF PRESSED:** Any fraud reviews or other concerns about eligibility must be resolved prior to reviewing availability of an exemption or waiver under the Presidential Proclamation.

### *Q: What has been communicated to U.S. embassies and consulates?*
- We are providing operational guidance to our embassies and consulates around the world for a smooth and orderly implementation.

- *If pressed:* Instructions to our embassies and consulates are internal communications, which we do not share publicly.

## WAIVERS AND EXCEPTIONS

### *Q: Are there exceptions?*

AR-297

- Yes.  Exceptions are outlined in the Presidential Proclamation.

- The suspension of entry pursuant to section 2 of the Proclamation does not apply to:
  - any national who was in the United States on the applicable effective date of the Proclamation for that national;
  - any national who had a valid visa on the applicable effective date of the Proclamation for that national;
  - any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 and who qualifies for a visa or other valid travel document under section 6(d) of the Proclamation;
  - any lawful permanent resident of the United States;
  - any foreign national who is admitted to or paroled into the United States on or after the effective date of this proclamation;
  - any foreign national who has a document other than a visa, valid on the effective date of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission, such as an advance parole document;
  - any dual national of a country designated under section 2 of this proclamation when the individual is traveling on a passport issued by a non-designated country;
  - any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; or
  - any foreign national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

***Q:  Section 3 states that individuals with a valid visa are not subject to the travel restrictions.  What about after their visa expires and they leave the country?  Are they then subject to the Presidential Proclamation when they apply to renew their visa?***

- Individuals who are present in the United States or who have a valid visa on the effective date of the Proclamation are excepted from the travel restrictions.  A consular officer will assess the impact of the Proclamation on any individual applicant on a case-by-case basis as part of the visa interview.

**AR-298**

*Q: How does an applicant apply for a waiver?*

- The Proclamation permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that:

  a) Denying entry during the suspension period would cause undue hardship;
  b) His or her entry would not pose a threat to national security or public safety of the United States; and
  c) His or her entry would be in the national interest.

  - As specified in the Presidential Proclamation, consular officers may issue visas to nationals of countries identified in the Proclamation on a case-by-case basis, when they determine – in coordination with consular management and other U.S. government officials as necessary – that issuance is in the national interest, the applicant poses no threat to the United States, and denial of the visa would cause undue harm.

  - An individual who wishes to travel to the United States should apply for a visa and disclose during the visa interview any information that might qualify the individual for an exception or for a waiver. In coordination with consular management, a consular officer will carefully review each case to determine if the applicant is affected by the Proclamation and, if so, whether the case qualifies for a waiver.

Approved:  CA/FO: A/S Risch                    ok

Drafted: Kevin Brosnahan, 202-485-6151

Clearances:
       CA/VO: ERamotowski                    ok
       CA/VO: KKing                              ok
       CA/VO/F: MAParker                      ok
       CA/VO/F: JNantais                        ok
       CA/VO/OI: CParker                      ok
       CA/VO/L: DNewman                      ok
       L/CA: SKerr                                  ok
       AF/ERA:  RScott                           ok
       WHA-Press: AAura                        ok
       NEA-Press: JReynolds                    ok
       EAP-Press: KAdams                       info
       CT/TSI: DRowen/CBuddenhagen      ok
       M: CCappiello                              ok
       P: LSnyder                                  ok
       S/P: CPeterson                            ok
       D:  KNanavatty                            info

CA Press Guidance
November 15, 2017

**Presidential Proclamation: Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or other Public-Safety Threats**

*Context: On November 13, 2017, the Ninth Circuit partially lifted an earlier preliminary injunction against enforcement of portions of Presidential Proclamation 9645.*

- The Ninth Circuit Court's November 13, 2017 decision allows the Presidential Proclamation to be implemented for nationals of Chad, Iran, Libya, Syria, Somalia, and Yemen who lack a credible claim of a bona fide relationship with a person or an entity in the United States. Enforcement of the Presidential Proclamation provisions relating to North Korea and Venezuela were not subject to the previous injunction and continue unaffected.

- We will implement these aspects beginning at the opening of business, local time, on Thursday November 16, 2017.

- The Presidential Proclamation directs the Departments of State and Homeland Security to restrict the entry of certain nationals of designated countries in order to protect the security and welfare of the United States. The restrictions are tailored to each country covered by the Proclamation, reflecting the unique factors in place in the country.

- The Presidential Proclamation will be implemented in an orderly way, consistent with relevant court orders. No visas will be revoked under the Proclamation. The restrictions may be continued, terminated, modified, or supplemented based on whether the country improves its identity-management and information-sharing protocols and procedures.

- The suspension of entry in the Proclamation does not apply to individuals who are inside the United States or who had a valid visa on the applicable effective date, as described in the Proclamation, even after their visas expire or they depart the United States.

## SECTION 2 REPORT PROCESS

## Implementing section 2(e) of Executive Order 13780 consisted of multiple steps:

- The Department of Homeland Security (DHS) developed a comprehensive set of criteria to assess countries' information sharing policies and practices as well as their national security and public-safety risk.

- In close cooperation with DHS, we conducted a worldwide review of what, if any, additional information would be needed from each foreign country to adequately assess whether their nationals seeking to enter the United States pose a security or safety threat.

**AR-301**

- Following this review, DHS analyzed the information collected from each country against the criteria it had established.

- The Department of State then engaged foreign countries to encourage them to improve their performance with respect to the criteria established by DHS, working with some countries to enhance their information-sharing, modernize identity documents, or formulate a plan to do so.

- Following that robust engagement period, DHS made recommendations to the President.

*Q: Will you be releasing the Section 2 reports?*

- We refer you to DHS, who authored the report.

*Q: What did some countries do to avoid being found "inadequate?"  How did you work with those countries?*

- All countries were advised of the information sharing criteria on July 12.

- To avoid restrictions, a number of countries that did not appear to meet the criteria at that time took action to do so, such as increasing their information sharing or committing to an adequate plan to do so in the near future.

## COUNTRY RESTRICTIONS

*Q: Which countries are covered by the Proclamation?*

- The Proclamation maintained or modified restrictions on five of six countries that were covered by Executive Order 13780.  Those countries are Iran, Libya, Syria, Yemen, and Somalia.

- The Proclamation lifted restrictions on one of six countries that had been included in Executive Order 13780: Sudan.  As of Sunday, September 24, 2017, Sudanese nationals were no longer subject to travel restrictions under the Executive Order.

- The Proclamation added restrictions and/or additional vetting on three additional countries that did not meet baseline requirements.  These countries are Chad, North Korea, and Venezuela.

- This chart summarize the restrictions for each country, subject to recent court orders, as well as exceptions and waivers included in the Presidential Proclamation:

**AR-302**

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas |
|---|---|---|
| Chad | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Iran | No nonimmigrant visas except F, M, and J student visas | No immigrant or diversity visas |
| Libya | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| North Korea | No nonimmigrant visas | No immigrant or diversity visas |
| Syria | No nonimmigrant visas | No immigrant or diversity visas |
| Venezuela | No B-1, B-2 or B-1/B-2 visas (including diplomatic type visas) for officials of the following government agencies: Ministry of the Popular Power for Interior, Justice, and Peace; the Administrative Service of Identification, Migration, and Immigration; the Scientific, Penal and Criminal Investigation Service Corps; the Bolivarian National Intelligence Service; and the Ministry of the People's Power for Foreign Affairs, and their immediate family members. | No restrictions |
| Yemen | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Somalia | | No immigrant or diversity visas |

*Q: Why do the suspensions differ for each country?*

- Restrictions were customized, as appropriate, given the unique conditions and deficiencies of each country, as well as other country-specific national security considerations.

**AR-303**

***Q: What is the impact of the Ninth Circuit's November 13, 2017 order partially lifting the preliminary injunction against enforcement of the Presidential Proclamation?***

- Under the Ninth Circuit's order partially lifting the Hawaii District Court's preliminary injunction, the government may begin implementing the provisions of the Presidential Proclamation for nationals of Chad, Iran, Libya, Somalia, Syria, and Yemen except for nationals of those countries "who have a credible claim of a bona fide relationship with a person or entity in the United States." The Ninth's Circuit's order does not impact enforcement of the Presidential Proclamation provisions relating to North Korea and Venezuela, which we continue to implement.

***Q: Are the travel suspensions under this Presidential Proclamation temporary?***

- There is no end date on the Presidential Proclamation. However, there will be a process to periodically review countries for removal from the restrictions based on their compliance with the criteria developed by DHS.

***Q: How can countries be removed from the travel suspension?***

- We will continue to work with identified countries to address information sharing deficiencies that resulted in their recommendation for travel restrictions.

- The Secretary of Homeland Security, in consultation with the Secretary of State and Attorney General, will regularly review and recommend countries for removal of these restrictions as circumstances warrant, such as an improvement in information sharing practices.

***Q: Why these countries?***

**Chad** – Although it is an important partner, especially in the fight against terrorists, the government in Chad does not adequately share public-safety and terrorism-related information, and several terrorist groups are active within Chad or in the surrounding region, including elements of Boko Haram, ISIS-West Africa, and al-Qa'ida in the Islamic Maghreb.

**Iran** – The government in Iran regularly fails to cooperate with the U.S. government in identifying security risks; is the source of significant terrorist threats; is a state sponsor of terrorism; and fails to receive its nationals subject to final orders of removal from the United States.

**Libya** – Although it is an important partner, especially in the area of counterterrorism, the government in Libya faces significant challenges in sharing several types of information,

including public-safety and terrorism-related information; has significant inadequacies in its identity-management protocols; has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States; and has a substantial terrorist presence within its territory.

**North Korea** – The government in North Korea does not cooperate with the U.S. government in any respect and fails to satisfy all information-sharing requirements.

**Somalia** – Although it satisfies minimum U.S. information-sharing requirements, the government in Somalia still has significant identity-management deficiencies; is recognized as a terrorist safe haven: remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States; and struggles to govern its territory and to limit terrorists' freedom of movement, access to resources, and capacity to operate.

**Syria** – The government in Syria regularly fails to cooperate with the U.S. government in identifying security risks; is the source of significant terrorist threats; has been designated as a state sponsor of terrorism; has significant inadequacies in identity-management protocols; and fails to share public-safety and terrorism information.

**Venezuela** – The government in Venezuela is uncooperative in verifying whether its citizens pose national security or public-safety threats; fails to share public-safety and terrorism-related information adequately; and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States.

**Yemen** – Although it is an important partner, especially in the fight against terrorism, the government in Yemen faces significant identity-management challenges, which are amplified by the notable terrorist presence within its territory; fails to satisfy critical identity-management requirements; and does not share public-safety and terrorism-related information adequately.

## *Q: How many people will this affect?*

- The Presidential Proclamation does not apply to those with valid visas or those who are in the United States on the day it goes into effect.

- As visa demand is cyclical and affected by a number of factors, we cannot estimate how many future visa applicants will be subject these restrictions. Visa issuance data by month and by fiscal year is available on travel.state.gov.

*Q: Why is a certain visa category permitted if the country was found deficient overall in information sharing?  Doesn't any visa issuance pose a threat?*

- The restrictions imposed by the President were carefully considered to prevent the entry of foreign nationals for whom the U.S. government lacks sufficient information to assess the risk they pose.  The President also considered foreign policy, national security, and counterterrorism goals of the United Sates in determining the restrictions.

*Q: How did you determine which categories should be suspended?*

- The restrictions and limitations are chosen to both encourage cooperation of the foreign governments to comply with the information sharing standards as well as to protect the United States until such time as the improvements occur.

*Q: Why do you give different treatment to different categories of visas?  Aren't NIVs or IVs screened the same?*

- Restrictions were customized, as appropriate, given the unique conditions in and deficiencies of each country, as well as other country-specific considerations.

## IMPLEMENTATION AND TIMELINE

*Q: How are you implementing the Proclamation?*

- We will further implement the Presidential Proclamation, to the full extent permitted under applicable court orders, beginning at the opening of business, local time, on Thursday November 16, 2017.

- We will not cancel any previously scheduled visa appointments.  Any individual who wishes to apply for a visa may do so and should disclose during the visa interview any information that might qualify the individual for an exception or a waiver.  A consular officer will carefully review each case to determine whether the applicant is subject to the restrictions in the Proclamation and recent court orders, and, if so, whether the applicant qualifies for an exception or a waiver.

- Such determinations are made on a case-by-case basis during the course of a visa interview.

- All measures, exceptions, and waiver criterion apply to nationals from the eight countries regardless of where they apply for a visa.

*Q: When does it go into effect?*

- The restrictions for North Korea and Venezuela went into effect on October 18 and remain intact.

AR-306

- Restrictions for Chad, Iran, Libya, Somalia, and Yemen, consistent with recent court orders, will begin open of business, local time, on Thursday, November 16.

- We will not cancel previously scheduled visa application appointments. In accordance with all applicable court orders, executive orders, and proclamations, for nationals of the eight designated countries, a consular officer will make a determination in the course of the interview whether an applicant who is otherwise eligible for a visa is exempt from the Presidential Proclamation or, if not, whether the applicant may be eligible for a waiver under the Presidential Proclamation, and may be issued a visa.

*Q.  What will the implementation on look like?  What exactly will change?*

- In accordance with the Presidential Proclamation and recent court orders, nationals of Chad, Iran, Libya, Somalia, Syria, and Yemen who do not have credible claim to a bona fide relationship with a person or an entity in the United States will now be subject to the Proclamation, including to the provisions relating to exceptions and waivers. Those applicants who believe they have a credible claim to a bona fide relationship with a person or an entity in the United States may apply for a visa as usual.

- The Proclamation sets out several situations in which an applicant may qualify for a waiver on a case-by-case basis. They include situations where the applicant is traveling to visit or reside with a close family member (e.g., a spouse, child or parent), so long as all the conditions for a waiver are met.

*Q.  How did CBP agents receive guidance on the changes?*

- We refer you to DHS for information on guidance provided to CBP agents.

*Q:  How does this Presidential Proclamation affect adjudication standards for visas?*

- Nothing in the Presidential Proclamation changes current legal and policy guidance for eligibility for any visa category. The first step in every adjudication is to ensure that an applicant is eligible under U.S. law. If the applicant is not eligible, the visa application will be denied.

- For applicants who are eligible for a visa, consular officers will then apply the appropriate guidance on the Presidential Proclamation, which takes into account recent court orders, to determine if a visa may be issued.

- **IF PRESSED:** Any fraud reviews or other concerns about eligibility must be resolved prior to reviewing availability of an exception or waiver under the Presidential Proclamation.

**AR-307**

*Q: What has been communicated to U.S. embassies and consulates?*

- We are providing operational guidance to our embassies and consulates around the world for a smooth and orderly implementation.

- *If pressed:* Instructions to our embassies and consulates are internal communications, which we do not share publicly.

## WAIVERS AND EXCEPTIONS

*Q: Are there exceptions?*

- In accordance with recent court orders, nationals of Chad, Iran, Libya, Somalia, Syria, and Yemen who believe they have a credible claim to a bona fide relationship with a person or entity in the United States may apply for a visa as usual, detailing their relevant relationship for the consular officer during the visa interview.

- Other exceptions are outlined in the Presidential Proclamation.

- The suspension of entry pursuant to section 2 of the Proclamation does not apply to:
  - any national who was in the United States on the applicable effective date of the Proclamation for that national;
  - any national who had a valid visa on the applicable effective date of the Proclamation for that national;
  - any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 and who qualifies for a visa or other valid travel document under section 6(d) of the Proclamation;
  - any lawful permanent resident of the United States;
  - any foreign national who is admitted to or paroled into the United States on or after the applicable effective date of this proclamation for that national;
  - any foreign national who has a document other than a visa – such as a transportation letter, an appropriate boarding foil, or an advance parole document – valid on the applicable effective date of this proclamation for that national or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission;
  - any dual national of a country designated under section 2 of this proclamation when the individual is traveling on a passport issued by a non-designated country;
  - any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; or

**AR-308**

- any foreign national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

*Q: Section 3 states that individuals with a valid visa are not subject to the travel restrictions. What about after their visa expires and they leave the country? Are they then subject to the Presidential Proclamation when they apply to renew their visa?*

- Individuals who are present in the United States or who have a valid visa on the applicable effective date noted in the Proclamation for those nationals are excepted from the travel restrictions. A consular officer will assess the impact of the Proclamation on any individual applicant on a case-by-case basis as part of the visa interview.

*Q: How does an applicant apply for a waiver?*

- The Proclamation permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the consular officer's satisfaction that:

    a) Denying entry during the suspension period would cause undue hardship;
    b) His or her entry would not pose a threat to national security or public safety of the United States; and
    c) His or her entry would be in the national interest.

- As specified in the Presidential Proclamation, consular officers may issue visas to nationals of countries identified in the Proclamation on a case-by-case basis, when they determine – in coordination with consular management and other U.S. government officials as necessary – that issuance is in the national interest, the applicant poses no threat to the United States, and denial of the visa would cause the applicant undue hardship.

- An individual who wishes to travel to the United States should apply for a visa and disclose during the visa interview any information that might qualify the individual for an exception or for a waiver. In coordination with consular management, a consular officer will carefully review each case to determine if the applicant is subject to the restrictions in the Proclamation and, if so, whether the case qualifies for a waiver.

*Q: The Proclamation states that visiting a close family member (e.g. parent, child, spouse) would be possible grounds for a waiver. What is a close family member?*

- For waiver purposes, we are using section 201(b) of the INA, which provides a definition of immediate relative, to interpret the term close family member as used in the waiver category. This limits the relationship to spouses, children under the age of 21, and parents. While the

AR-309

INA definition includes only children, spouses, and parents of a U.S. citizen, in the context of the Presidential Proclamation it also includes these relationships with LPRs and aliens lawfully admitted on a valid nonimmigrant visa in addition to U.S. citizens.

Updated 11-14-2017: Kevin Brosnahan, 202-485-6151

Clearances:

| | |
|---|---|
| CA/VO: ERamotowski | (ok) |
| CA/VO: KKing | (ok) |
| CA/VO/F: MAParker | (ok) |
| CA/VO/F: JWebster | (ok) |
| CA/VO/F: NWalcott | (ok) |
| CA/VO/OI: LOverman | (ok) |
| CA/VO/L: DNewman | (ok) |
| L/CA: SKerr | (ok) |
| L/CA: ARavjani | (ok) |
| AF/ERA: RScott | (ok) |
| WHA-Press: AAura | (info by request) |
| NEA-Press: JReynolds | (ok) |
| EAP-Press: ATarver | (info by request) |
| CT/TSI: WMcCulla | (ok) |
| M: CCappiello | (ok) |
| P: LSnyder | (ok) |
| S/P: CPeterson | (ok) |
| D: KNanavatty | (info) |

CA Press Guidance
December 7, 2017

### Presidential Proclamation Implementation Following the Supreme Court's Decisions

- We will begin fully implementing Presidential Proclamation 9645 at the opening of business (local time) on Friday, December 8, 2017, as permitted by the Supreme Court's December 4, 2017 orders.

- In September, following an extensive review and engagement with countries around the world, the President received recommendations for restrictions on entry into the United States for nationals of eight countries. The Presidential Proclamation signed on September 24 directed the Departments of State and Homeland Security to restrict the entry of nationals of these countries in order to protect the security and welfare of the United States.

- The Presidential Proclamation will be implemented in an orderly way. No visas will be revoked under the Proclamation. The restrictions are not intended to be permanent.

- The restrictions are tailored to each country.

- The suspension of entry in the Proclamation does not apply to individuals who are inside the United States or who had a valid visa on the effective date of the Proclamation, as defined in Section 7 of the Proclamation, even after their visa expires or they leave the United States.

## IF PRESSED:

- We have been implementing the restrictions for nationals of North Korea and Venezuela since October 16, 2017. Following the Ninth Circuit Court of Appeals' order on November 13, 2017, on November 16, 2017, we began implementing the restrictions for nationals of Chad, Iran, Libya, Syria, and Yemen who lacked a credible claim of a bona fide relationship with a U.S. person or entity. The Supreme Court's orders of December 4 allow the Departments of State and Homeland Security to implement the Presidential Proclamation in full.

## SECTION 2 REPORT PROCESS

**Implementing Section 2(e) of Executive Order 13780 consisted of multiple steps:**

- The Department of Homeland Security (DHS) developed a comprehensive set of criteria to assess countries' information sharing policies and practices as well as their national security and public-safety risk.

- DHS, in close cooperation with the Department of State and the Director of National Intelligence, conducted a worldwide review of what, if any, additional information would be needed from each foreign country to assess adequately whether their nationals seeking to enter the United States pose a security or safety threat.

- Following this review, DHS analyzed the information collected from each country against the criteria it had established.

- The Department of State then engaged foreign countries to encourage them to improve their performance with respect to the criteria established by DHS, working with some countries to enhance their information-sharing, modernize identity documents, or to formulate a plan to do so.

- Following that robust engagement period, DHS made recommendations to the President.

*Q: Will you be releasing the Section 2 reports?*

- The reports contain classified information, and are therefore not subject to release.

*Q: What did some countries do to avoid being found "inadequate"? How did you work with those countries?*

- All countries were advised of the information sharing criteria on July 12.

- To avoid restrictions, the nations that did not appear to meet the criteria at that time took action to do so, such as increasing their information sharing or committing to an adequate plan to do so in the near future.

**COUNTRY RESTRICTIONS**

*Q: Which countries are designated?*

- The Proclamation maintained, modified, or eased restriction on five of the six countries that had been designated by Executive Order 13780. Those countries are Iran, Libya, Syria, Yemen, and Somalia.

- The Proclamation lifted restrictions on one of six countries that had been designated by Executive Order 13780: Sudan. As of Sunday, September 24, 2017, Sudanese nationals are no longer subject to travel restrictions under the Executive Order.

- It added restrictions and/or additional vetting on three additional countries found to not meet baseline requirements, but that were not included in Executive Order 13780. These countries are: Chad, North Korea, and Venezuela.

- This chart summarize the restrictions:

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas |
|---------|--------------------|-----------------------------|
| Chad | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Iran | No nonimmigrant visas except F, M, and J visas | No immigrant or diversity visas |
| Libya | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| North Korea | No nonimmigrant visas | No immigrant or diversity visas |
| Syria | No nonimmigrant visas | No immigrant or diversity visas |
| Venezuela | No B-1, B-2 or B-1/B-2 visas of any kind for certain officials of the following government agencies: Ministry of Interior, Justice, and Peace; the Administrative Service of Identification, Migration, and Immigration; the Corps of Scientific Investigations, Judicial, and Criminal; the Bolivarian Intelligence Service; and the People's Power Ministry of Foreign Affairs, and their immediate family members. | No restrictions |
| Yemen | No B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas |
| Somalia | No entry restrictions; additional scrutiny of applicants | No immigrant or diversity visas |

*Q: Why do the suspensions differ for each country?*

- Restrictions were customized, as appropriate, given the specific conditions each country, as well as other country-specific national security considerations.

*Q: Are the travel suspensions under this Presidential Proclamation temporary?*

**AR-314**

- There is no end date on the Presidential Proclamation. However there will be a process to periodically review countries for removal from the restrictions based on their compliance with the criteria developed by DHS.

*Q: How can countries be removed from the travel suspension?*

- We will continue to work with identified countries to address information sharing deficiencies that resulted in their recommendation for travel restrictions.

- The Secretary of Homeland Security, in consultation with the Secretary of State and Attorney General, will regularly review and recommend countries for removal of these restrictions as circumstances warrant, such as an improvement in information sharing practices.

*Q: Why these countries?*

**Chad** – Although it is an important partner, especially in the fight against terrorists, the government in Chad does not adequately share public-safety and terrorism-related information, and several terrorist groups are active within Chad or in the surrounding region, including elements of Boko Haram, ISIS-West Africa, and al-Qa'ida in the Islamic Maghreb.

**Iran** – The government in Iran regularly fails to cooperate with the United States Government in identifying security risks; is the source of significant terrorist threats; is state sponsor of terrorism; and fails to receive its nationals subject to final orders of removal from the United States.

**Libya** – Although it is an important partner, especially in the area of counterterrorism, the government in Libya faces significant challenges in sharing several types of information, including public-safety and terrorism-related information; has significant inadequacies in its identity-management protocols; has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States; and has a substantial terrorist presence within its territory.

**North Korea** – The government in North Korea does not cooperate with the United States Government in any respect and fails to satisfy all information-sharing requirements.

**Somalia** – Although it satisfies minimum U.S. information-sharing requirements, the government in Somalia still has significant identity-management deficiencies; is recognized as a terrorist safe haven; remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States; and struggles

AR-315

to govern its territory and to limit terrorists' freedom of movement, access to resources, and capacity to operate.

**Syria** – The government in Syria regularly fails to cooperate with the U.S. Government in identifying security risks; is the source of significant terrorist threats; has been designated as a state sponsor of terrorism; has significant inadequacies in identity-management protocols; and fails to share public-safety and terrorism information.

**Venezuela** – The government in Venezuela is uncooperative in verifying whether its citizens pose national security or public-safety threats; fails to share public-safety and terrorism-related information adequately; and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States.

**Yemen** – Although it is an important partner, especially in the fight against terrorism, the government in Yemen faces significant identity-management challenges, which are amplified by the notable terrorist presence within its territory; fails to satisfy critical identity-management requirements; and does not share public-safety and terrorism-related information adequately.

### *Q: How many people will this affect?*

- The Presidential Proclamation does not apply to those with valid visas or those who were in the United States on the day it went into effect.

- As visa demand is cyclical and affected by a number of factors; we cannot estimate how many future visa applicants will be subject to these restrictions. Visa issuance data by month and by fiscal year is available on travel.state.gov.

### *Q: Why is a certain visa category permitted if the country was found deficient overall in information sharing? Doesn't any visa issuance pose a threat?*

- The restrictions imposed by the President were carefully considered to prevent the entry of foreign nationals for whom the U.S. government lacks sufficient information to assess the risk they pose. The President also considered foreign policy, national security, and counter terrorism goals of the United Sates in determining the restrictions.

### *Q: How did you determine which categories should be suspended?*

- The restrictions and limitations are chosen to both encourage cooperation of the foreign governments to comply with the information sharing standards as well as to protect the United States until such time as the improvements occur.

*Q: Why do you give different treatment to different categories of visas?  Aren't NIVs or IVs screened the same?*

- Restrictions were customized, as appropriate, given the specific conditions in each country, as well as other country-specific considerations.

## IMPLEMENTATION AND TIMELINE

*Q:  How are you implementing the Proclamation?*

- We will not cancel any previously scheduled visa appointments.  Any individual who wishes should apply for a visa and disclose during the visa interview any information that might qualify the individual for an exception or a waiver.  A consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation, and, if so, whether the applicant qualifies for an exception or a waiver.

- A consular officer can only determine whether an applicant is subject to a national-specific measure, is excepted, or qualifies for a waiver on a case-by-case basis at or after a visa interview.

- All measures, exemptions, and waivers apply to nationals from the eight countries wherever they apply for visas.

*Q:  When does it go into effect?*

- The Supreme Court's orders of December 4, 2017, allow the Departments of State and Homeland Security to implement the Presidential Proclamation in full.  That will begin on Friday, December 8, 2017, local time, in the United States and at posts around the world. The restrictions for Venezuelan and North Korean nationals have been in effect since October 18, 2017, and remain in effect.

- We will not cancel previously scheduled visa application appointments.  In accordance with the Presidential Proclamation, for nationals of the eight designated countries, a consular officer will determine, after a visa interview and any other required administrative procedures, whether an applicant otherwise eligible for a visa is exempt from the Presidential Proclamation or, if not, whether the applicant may be eligible for a waiver under the Presidential Proclamation, and may be issued a visa.

*Q: How does this Presidential Proclamation affect adjudication standards for visas?*

- Nothing in the Presidential Proclamation changes current legal and policy guidance for eligibility for any visa category.  The first step in every adjudication is to determine whether an applicant is eligible under the Immigration and Nationality Act (INA).  If the applicant is not eligible, the visa application will be denied.

- For applicants who are eligible for a visa under the INA, consular officers will then apply the appropriate guidance from the Presidential Proclamation and the Department to determine if a visa may be issued.

- **IF PRESSED:** Any fraud reviews or other concerns about eligibility must be resolved prior to reviewing availability of an exemption or waiver under the Presidential Proclamation.

### *Q: What has been communicated to U.S. embassies and consulates?*
- We are providing operational guidance to our embassies and consulates around the world for a smooth and orderly implementation.

- *If pressed:* Instructions to our embassies and consulates are internal communications, which we do not share publicly.

## WAIVERS AND EXCEPTIONS

### *Q: Are there exceptions?*

- Yes. Exceptions are outlined in the Presidential Proclamation.

- The suspension of entry pursuant to section 2 of the Proclamation does not apply to:
  - any national who was in the United States on the applicable effective date of the Proclamation for that national;
  - any national who had a valid visa on the applicable effective date of the Proclamation for that national;
  - any national whose visa was marked revoked or marked canceled as a result of Executive Order 13769 and who qualifies for a visa or other valid travel document under section 6(d) of the Proclamation:
  - any lawful permanent resident of the United States;
  - any foreign national who is admitted to or paroled into the United States on or after the effective date of this proclamation;
  - any foreign national who has a document other than a visa, valid on the effective date of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission, such as an advance parole document;
  - any dual national of a country designated under section 2 of this proclamation when the individual is traveling on a passport issued by a non-designated country;
  - any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa: or
  - any foreign national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

AR-318

*Q: Section 3 states that individuals with a valid visa are not subject to the travel restrictions. What about after their visa expires and they leave the country? Are they then subject to the Presidential Proclamation when they apply to renew their visa?*

- Individuals who are present in the United States or who have a valid visa on the effective date of the Proclamation, as defined in Section 7 of the Proclamation, are excepted from the travel restrictions. A consular officer will assess the impact of the Proclamation on any individual applicant on a case-by-case basis at or after a visa interview.

*Q: How does an applicant apply for a waiver?*

- The Proclamation permits consular officers to grant waivers and authorize the issuance of a visa on a case-by-case basis when the applicant demonstrates to the officer's satisfaction that:

    a) Denying entry during the suspension period would cause undue hardship;
    b) His or her entry would not pose a threat to national security or public safety of the United States; and
    c) His or her entry would be in the national interest.

- As specified in the Presidential Proclamation, consular officers may issue visas to nationals of countries identified in the Proclamation on a case-by-case basis, when they determine – in coordination with consular management and other U.S. government officials as necessary – that issuance is in the national interest, the applicant poses no threat to the United States, and denial of the visa would cause undue harm.

- An individual who wishes to travel to the United States should apply for a visa and disclose during the visa interview any information that might qualify the individual for an exception or for a waiver. In coordination with consular management, and following any required administrative processing, a consular officer will carefully review each case to determine if the applicant is affected by the Proclamation and, if so, whether the case qualifies for a waiver.

CA/AF Press Guidance
April 10, 2018

## VISAS: New Presidential Proclamation (April 10, 2018)

- President Trump signed a Presidential Proclamation today removing visa restrictions for Chad effective April 13, 2018.

- As part of the periodic review of countries, Chad was found to meet the baseline criteria established by DHS.  Specifically, Chad has made significant progress toward modernizing its passport documents, regularizing processes for routine sharing of criminal and terrorist threat information, and improving procedures for reporting of lost and stolen passports.

- DHS and State organized a site visit to Chad in December 2017 to discuss specific deficiencies and potential remedies with relevant officials.  The Secretary of State continued positive and productive discussions with his counterparts in Chad during a March 2018 visit.

- Chad is a critical and vital partner to the U.S. counterterrorism mission.  Chad made significant strides and now has met the criteria established in the Proclamation.

## *THE PROCESS*

- On September 24, following an extensive review and engagement period with countries around the world, the President signed Proclamation 9645 that directed the Departments of State and Homeland Security to restrict the entry of certain nationals of countries identified as deficient in information sharing practices, subject to limited exceptions and waivers on a case-by-case basis, in order to protect the security and welfare of the United States.  The September 24 Presidential Proclamation has been fully implemented since December 8, 2017.

- After implementing the September 24 Presidential Proclamation, we continued working with identified countries to address information sharing deficiencies that resulted in their recommendation for travel restrictions. Per the September 24 Proclamation's provisions, the Department of State consulted with the Department of Homeland Security on a process to consider

AR-320

adjustments to the restrictions based on countries' compliance with information-sharing and identity-management criteria.

- Since implementing these measures, the administration has recorded significant improvements with identity management and information sharing with foreign governments.

## CHAD:

**Q: How many nationals of Chad were denied visas under the September 24 Presidential Proclamation?**

- We are not able to provide those statistics on visa applications. From December 8, 2017 through April 1, 2018, more than 430 applicants from all countries subject to the September 24 Proclamation were cleared for waivers after a consular officer determined the applicants satisfied all criteria and completed all required processing. Many of those applicants already have received their visas.

## IF PRESSED ON OTHER ASPECTS OF THE PROCLAMATION:

**Q:  Iraq was included on the first Executive Order, and referenced in the September 24 Presidential Proclamation, do you have an update?**

- Iraq has worked closely with the United States, and specifically with the FBI, to upgrade its bio-data collection systems to help protect against criminal and terrorists threats. In addition, Iraq has shared information on such threats with us and is in the process of upgrading to an E-passport system to improve security even further. Iraq has provided numerous exemplars of its identification documents to prevent attempts at counterfeiting, and has provided travel documents for its nationals ordered removed from the United States who wish to voluntarily return to Iraq.

## Q. Which countries are designated? Why?

- Visa restrictions remain in place for Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. While Somalia generally satisfies the minimum information-sharing requirements, its performance with respect to the baselines in other categories demonstrates that it presents special circumstances that warrant specific restrictions and security enhancements to

**AR-321**

protect the American people. Please see the September 24 Presidential Proclamation for further details.

**Q: Do you have an update on Libya's engagement?**

- We have actively engaged with the Government of Libya to review their compliance and plans for improvements. At this time, Libya has not met the information-sharing and other requirements as set forth in the September 24 Presidential Proclamation.

**Q:  How can countries be removed from the travel suspension?**

- We will continue to work with identified countries to address information sharing deficiencies that resulted in their recommendation for travel restrictions.

- The Secretary of Homeland Security, in consultation with the Secretary of State and Attorney General, will regularly review and recommend countries for removal of these restrictions as circumstances warrant, such as an improvement in information sharing practices.

Drafted: Kevin Brosnahan, 202-485-6151

Clearance:

| | |
|---|---|
| CA/VO/F: JWebster | (ok) |
| CA/VO/F: CParker | (ok) |
| CA/VO/L: NPerry | (ok) |
| CA/VO/L: DNewman | (ok) |
| CA/VO: ERamotowski | (ok) |
| L/CA: ARavjani | (ok) |
| CT/Press: RShore | (ok) |
| CT/AEAA: VNelson | (ok) |
| CT/HS/TSI: ACotton | (ok) |
| NEA/Press/Iraq: PRodriguez | (ok) |
| NEA/Press/Iran: JReynolds | (ok) |
| AF/PDPA: CSchirm | (ok) |
| AF/C/Chad: MDeLaGarza | (ok) |
| M: CCappiello | (ok) |
| P: LSnyder | (ok) |
| D: KNanavatty | (info ) |
| S/P: CPeterson | (ok) |

CA Press Guidance
June 26, 2018

**Presidential Proclamation – Supreme Court Decision: Holding Lines**

- On June 26, 2018, the United States Supreme Court issued a decision regarding Presidential Proclamation 9645, ruling that the Proclamation was a lawful exercise of the President's authority under the Immigration and Nationality Act.

- Consistent with the Court's decision, the Department will continue processing visa applications in accordance with the Presidential Proclamation for subject nationals of the seven affected countries (Iran, Libya, North Korea, Somalia, Syria, Yemen, Venezuela).

- As of December 8, 2017, the Department has fully implemented Presidential Proclamation 9645.

Lead Bureau(s): CA

Drafted:       CA/P: Carmen Hills, 202-485-6148

Clearances:

| | |
|---|---|
| CA/VO: MParker | (ok) |
| CA/VO/F/OI: LOverman | (ok) |
| CA/VO/F: NWalcott | (ok) |
| CA/VO/F: JWebster | (ok) |
| CA/VO/L: DNewman | (ok) |
| CA/VO/L: NPerry | (ok) |
| NEA/Press: GVincent | (ok) |
| AF/Press: CSchirm | (ok) |
| SCA/Press: NJohnson | (ok) |
| WHA/PPC: TSpiceland | (ok) |
| WHA/AND: LOrtega | (ok) |
| L/CA: JOsborn | (ok) |
| D: EHattingh | (ok) |
| P: LSnyder | (ok) |
| S/P: T Frideres | (ok) |
| M: KKirkland | (ok) |
| M/PRI: ALarkin | (ok) |

Other Documents



AR-327

AR-328



# Adjudicator Flowcharts

| Iran | Syria |
| Libya | Venezuela |
| North Korea | Yemen |
| Somalia | |

Exception Eligibility    Waiver Eligibility

SBU

# Iranian National



# Libyan National



# North Korean National



# Somali National



# Syrian National



# Venezuelan National



# Yemeni National



# Exception Eligibility Determination



AR-336

**Common exception categories**
- *19(a) in U.S. on PP effective date*
- *19(b) Valid docs on PP effective date*
- *19(e) Legal entry on/after effective date*
- *19(g) Dual-national on non-designated PPT*
- *19(h) Dip/Dip-type, C-2, G1-4, NATOs*

SBU

# Waiver Eligibility Determination



(U) Iraq and Syria: ISIS-Dominant Territory and Losses as of January 2017



AR-338

# VWP Act and the E.O. – Both Apply!

| VWP Improvement Act of 2015 | | Executive Order No. 13780 | |
|---|---|---|---|
| **Dual Nationality** | **Travel History** | **Dual Nationality** | **Travel History** |
| Is the person a dual national of a VWP country plus Iran, Iraq, Sudan, or Syria? | Was the person a national of a VWP country who was in Libya, Iran, Iraq, Somalia, Sudan, Syria, or Yemen on or after March 1, 2011? | Is the person a dual national of a non-listed country plus Libya, Iran, Somalia, Sudan, Syria, or Yemen? | The E.O. does not have any stipulations regarding prior travel to countries of concern. |
| **If yes**, the conditions of the VWP Act apply, and the individual must obtain a visa prior to traveling to the United States. | **If yes**, then the conditions of the VWP Act apply, which means the individual must obtain a visa prior to traveling to the United States. | Regardless of whether the person is a dual national with one of the six countries listed in the E.O., the conditions in the E.O. will only apply if the person applies for a visa with a passport issued by Libya, Iran, Somalia, Sudan, Syria, or Yemen. | |
| **If no**, the person may still be eligible for VWP travel unless the travel-based restrictions of the VWP Act apply. | **If no**, the person may still be eligible for VWP travel unless the dual nationality restrictions of the VWP Act apply. | | |

Note: Exemptions and waivers exist as detailed in 16 State 5742 and 16 State 67962. Although the new E.O. doesn't apply to Iraq, the restrictions of the VWP Act regarding Iraqi dual nationality remain in effect.

SENSITIVE BUT UNCLASSIFIED

AR-339

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case. However, you may reapply for a visa at any time. If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer. If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.

☐ The consular officer is reviewing your eligibility for a waiver under the Proclamation. To approve a waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f). You will be contacted with a final determination on your visa application as soon as practicable.

Immigrant Visa

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645. Today's decision cannot be appealed.

☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.

☐ The consular officer is reviewing your eligibility for a waiver. To approve your waiver, the consular officer must determine that denying your entry would cause undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f). You will be contacted with a final determination on your application as soon as practicable.

# Country-specific Restrictions

| Country | Nonimmigrant Visas | Immigrant and Diversity Visas | Exceptions |
|---|---|---|---|
| Chad | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |
| Iran | No nonimmigrant Visas | No immigrant or diversity visas | F, M, J student visas   LEP |
| Libya | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |
| North Korea | No nonimmigrant Visas | No immigrant or diversity visas | |
| Somalia | No restrictions (but note additional vetting requirements) | No immigrant or diversity visas | |
| Syria | No nonimmigrant Visas | No immigrant or diversity visas | |
| Venezuela | No regular, diplomatic, or official type B-1, B-2, and B-1/B-2 visas for certain government officials and their immediate family members. | No restrictions | |
| Yemen | No regular or official type B-1, B-2, and B-1/B-2 visas | No immigrant or diversity visas | |

AR-342

# **Exceptions from Presidential Proclamation**

- On the effective date of P.P. for that national's country
  - Did the applicant have a U.S. visa?
  - Was the applicant physically present inside the United States (regardless of status)?

- Is the applicant
  - An LPR?
  - A national who was admitted or paroled into the U.S. on of after September x, 2017?
  - A V92, follow-to-join asylee?
  - A V93 follow-to-join refugee? (NB: While P.P. does not affect V93 applicants, they continue to be subject to section six of E.O. 13780)
  - A dual national, traveling on a passport not affected by this P.P.?
  - Traveling on a diplomatic (A-1 or A-2) or diplomatic-type (of any classification) visa, NATO visa, C-2 visa for travel to the U.S., or G-1, G-2, G-3, or G-4 visa? (This exemption does not apply to nationals of Venezuela)

- Does the applicant qualify for a visa or other travel document under section 5(d) of the P.P., because his or her visa was revoked or cancelled as a result of E.O. 13769 of January 27, 2017?

- Does the applicant have a document, other than a visa, valid on the effective date of the P.P. for that national's country, that permits him or her to travel to the U.S. and seek entry or admission (such as advance parole)?

- Has the applicant been granted asylum; admitted to the U.S. as a refugee; or granted withholding of removal, advance parole, or protection under CAT?

**IF YES TO ANY ABOVE, APPLICANT IS EXCEPTED FROM PRESIDENTIAL PROCLAMATION AND THE VISA SHOULD BE ANNOTATED WITH "Exception under Proclamation"**

AR-343

## <u>Waivers from Presidential Proclamation</u>

<u>Applicant May Qualify for Waiver When the following exist</u>:

**Undue hardship AND National interest AND No threat to national security or public safety**

1. Undue Hardship*
   - Satisfaction of consular officer that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel.

2. National Interest*
   - Satisfaction of consular officer that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

3. National Security and Public Safety**

*Additional guidance on undue hardship and national interest is contained in 17 STATE 97682 and the Operational Q&As on CAWeb.

**Guidance on National Security and Public Safety is contained in 17 STATE 56801. An SBU excerpt is on CAWeb

**IF YES TO ALL THREE CRITERIA ABOVE, WITH CONSULAR MANAGER CONCURRENCE, APPLICANT IS ELIGIBLE FOR A WAIVER FROM THE PRESIDENTIAL PROCLAMATION AND THE VISA SHOULD BE ANNOTATED WITH "Presidential Proclamation Waived"**

**Post should send any questions about waivers, including special circumstances, to countries-of-concern-inquiries@state.gov for guidance. If an AO is required, the countries-of-concern team will notify post.**

AR-344

## Examples of Waivers in the P.P.

**The three-prong test (undue hardship, national interest, and national security/public safety threat) applies to all waiver decisions. Consular officers may not categorically grant waivers. The P.P. includes the following examples where case-by-case waivers may be appropriate:**

- previously admitted to U.S. for a continuous period of work, study, or other long-term activity, outside U.S. on applicable effective date, seeks to reenter to resume activity, denial would impair that activity;
- significant contacts with the U.S. but outside the U.S. on applicable effective date for work, study, or other lawful activity;
- seeks to enter U.S. for significant business or professional obligations and denial of entry would impair those obligations;
- seeks to enter U.S. to visit or reside with a close family member (e.g., a spouse, child, or parent) **[use INA definition of immediate relative]** who is a USC, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause undue hardship;
- an infant, a young child, or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;
- has been employed by, or on behalf of, the USG (or is eligible dependent of such an employee) and can document that he or she has provided faithful and valuable service to the USG;
- traveling for purposes related to an IOIA-designated international organization, traveling for purposes of conducting meetings or business with the USG, or traveling to conduct business on behalf of an international organization not designated under the IOIA;
- permanent resident of Canada who applies for a visa at a location within Canada;
- traveling as a USG-sponsored exchange visitor;
- traveling to the U.S. for legitimate law enforcement, foreign policy, or national security purposes at the request of the USG.

AR-345

# Government Records Declaration

## DECLARATION OF CHLOE DYBDAHL

I, Chloe Dybdahl, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  I am employed by the U.S. Department of State as an Attorney Adviser in the Advisory Opinions Division, Office of Legal Affairs of the Visa Office, Bureau of Consular Affairs.  In that capacity I am authorized to search the electronic Consular Consolidated Database ("CCD") of the U.S. Department of State, Bureau of Consular Affairs, for records of immigrant and nonimmigrant visa applications.  The CCD contains electronic data recording visa applications, and visas issued and refused, at U.S. diplomatic and consular posts worldwide.

2.  In relation to *Farangis Emami, et al. v. McAleenan, et al.*, Case No: 18-cv-1587-JD (N.D. Cal.), I have reviewed the Second Amended Complaint and additional information provided by the Department of Justice, which set forth the names and other personal information concerning individuals identified in the Second Amended Complaint.

3.  This Declaration identifies individuals as their names appear in the CCD which may not match with how their names appear in the Second Amended Complaint.

**The following information relates to identified individuals who applied for immigrant visas based on immigrant visa petitions filed by U.S. citizen or lawful permanent resident family members and approved by United States Citizenship and Immigration Services ("USCIS").**

4.  The CCD reflects that the immigrant visa petition assigned case number ABD2010550001 was filed by Afrooz KHARAZMI on behalf of Afshan ALAMSHAHZADEH, year and place of birth: 1975, Iran, as the sibling of a U.S. citizen. The CCD reflects the following information regarding Ms. Alamshahzadeh's visa application.

- On January 7, 2018, Ms. Alamshahzadeh appeared for an interview at the U.S. Embassy in Abu Dhabi and applied for an immigrant visa.  The consular officer refused the immigrant visa application under Immigration and Naturalization Act ("INA") § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered her for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.
- On March 7, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Alamshahzadeh's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Alamshahzadeh is undergoing consideration for a waiver of the Proclamation's entry restrictions.  The Government has not completed the

necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

5. The CCD reflects that the immigrant visa petition assigned case number YRV2017596006 was filed by Tanaz TOLOUBEYDOKHTI on behalf of Fathollah TOLOU BEYDOKHTI, year and place of birth: 1952, Iran, as the parent of a U.S. citizen. The CCD reflects the following information regarding Mr. Tolou Beydokhti's visa application.

- On December 21, 2017, Mr. Tolou Beydokhti appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered him for a waiver of the Proclamation's entry restrictions and determined he failed to show national interest and personal hardship if he did not travel to the United States.

6. The CCD reflects that the immigrant visa petition assigned case number YRV2017581007 was filed by Tanaz TOLOUBEYDOKHTI on behalf of Behnaz MALEKGHAEINI, year and place of birth: 1959, Iran, as the parent of a U.S. citizen. The CCD reflects the following information regarding Ms. Malekghaeini's visa application.

- On December 21, 2017, Ms. Malekghaeini appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered her for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.

7. The CCD reflects that the immigrant visa petition assigned case number DMS2017734006 was filed by Najib ADI on behalf of Mona NASRI, year and place of birth: 1948, Syria, as the parent of a U.S. citizen. The CCD reflects the following information regarding Ms. Nasri's visa application.

- On December 26, 2017, Ms. Nasri appeared for an interview at the U.S. Embassy in Amman and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered her for a waiver of the Proclamation's entry restrictions. The consular officer made a preliminary determination that the personal hardship and national interest prongs were met and consulted with the Visa Office regarding whether Ms. Nasri's entry could pose a threat to national security or public safety.

- On April 18, 2019, the consular section at the U.S. Embassy in Amman contacted Ms. Nasri and asked her to reappear for reinterview and bring updated documents.
- As of this writing, Ms. Nasri is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused in accordance with the Proclamation.

8. The CCD reflects that the immigrant visa petition assigned case number DJI2016837024 was filed by Ismail ALGHAZALI on behalf of Hend Ali Mohammed Musleh AL LAHABI, year and place of birth: 1992, Yemen, as the spouse of a U.S. citizen. The CCD reflects the following information regarding Ms. Al Lahabi's visa application.

- On January 3, 2018, Ms. Al Lahabi appeared for an interview at the U.S. Embassy in Djibouti and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered her for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.
- On July 9, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Al Lahabi's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Al Lahabi is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. 1182(f), in accordance with the Proclamation.

9. The CCD reflects that the immigrant visa petition assigned case number DJI2016841007 was filed by Malik AL MATHIL on behalf of Shaima Abdo Saleh AL MATHIL, year and place of birth: 1995, Yemen, as the spouse of a U.S. citizen. The CCD reflects the following information regarding Ms. Al Mathil's visa application.

- On July 31, 2017, Ms. Al Mathil appeared for an interview at the U.S. Embassy in Djibouti and applied for an immigrant visa. The consular officer refused the visa application under INA § 221(g), 8 U.S.C. §1201(g), for administrative processing.
- On December 17, 2017 the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Al Mathil for a waiver of the

Proclamation's entry restrictions determined that she failed to show national interest and personal hardship if she did not travel to the United States.

- On May 23, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Al Mathil's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Al Mathil is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

10. The CCD reflects that the immigrant visa petition assigned case number DJI2016805011 was filed by Khalil Ali NAGI on behalf of Anwaar Yahya Ahmed ALFAKEH, year and place of birth: 1997, Yemen, as the spouse of a U.S. citizen. The CCD reflects the following information regarding Ms. Alfakeh's visa application.

- On October 30, 2017, Ms. Alfakeh appeared for an interview at the U.S. Embassy in Djibouti and applied for an immigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On March 7, 2018 the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Alfakeh for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.
- On July 12, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Alfakeh's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Alfakeh is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

11. The CCD reflects that the immigrant visa petition assigned case number KLL2015855006 was filed by Hezam ALARQABAN on behalf of Jameeleh Kasem Munassar ALI, year and place of birth: 1971, Yemen, as the spouse of a lawful permanent resident. The CCD reflects the following information regarding Ms. Ali's visa application.

- On March 31, 2016, Ms. Ali appeared for an interview at the U.S. Embassy in Kuala Lumpur and applied for an immigrant visa. Ms. Ali applied with eleven derivative children. The consular officer refused the visa applications under INA §221(g), 8 U.S.C. §1201(g), for proof of relationship.
- On February 10, 2017, the consular officer refused Ms. Ali under INA §212(a)(10)(A), 8 U.S.C. §1182(a)(10)(A), as an alien practicing polygamy, and returned the petition to USCIS for review and possible revocation.
- On December 26, 2017, the consular section at the U.S. Embassy in Kuala Lumpur received a request to transfer the case to the U.S. Embassy in Djibouti.
- On April 1, 2018, the consular section at the U.S. Embassy in Djibouti received the immigrant visa petition reaffirmed from USCIS.
- On May 31, 2018 the consular officer refused the immigrant visa applications under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Ali for a waiver of the Proclamation's entry restrictions. The consular officer made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Ali's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Ali is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa applications remain refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

12. The CCD reflects that the immigrant visa petition assigned case number CSB2017719001 was filed by Abdurraouf GSEAA on behalf of Marwa Mohamed B ALI, year and place of birth: 1991, Libya, as the spouse of a U.S. citizen. The CCD reflects the following information regarding Ms. Ali's visa application.

- On July 12, 2018, Ms. Ali appeared for an interview at the U.S. Embassy in Tunis and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Ali for a waiver of the Proclamation's entry restrictions. The consular officer made a preliminary determination that the personal hardship and national interest prongs were met and consulted with the Visa Office regarding whether her entry could pose a threat to national security or public safety.
- On April 26, 2019, the consular officer determined Ms. Ali was eligible for a waiver of the Proclamation's entry restrictions and issued her an immigrant visa.

13. The CCD reflects that the immigrant visa petition assigned case number JHN2017589003 was filed by Sudi WARDERE on behalf of Bashir Tahlil ROBLE, year and place of birth: 1980, Somalia, as the spouse of a U.S. citizen. The CCD reflects the following information regarding Mr. Roble's visa application.

- On February 5. 2018. Mr. Roble appeared for an interview at the U.S. Consulate General in Johannesburg and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f). 8 U.S.C. § 1182(f). in accordance with Presidential Proclamation 9645 then considered Mr. Roble for a waiver of the Proclamation's entry restrictions. The consular officer made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether his entry could pose a threat to national security or public safety.

- As of this writing. Mr. Roble is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime. the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

14. The CCD reflects that the immigrant visa petition assigned case number ADD2016722042 was filed by Khadija ADEN on behalf of Abdirashid Ahmed JAMA. year and place of birth: 1997, Ethiopia. as the child of a lawful permanent resident. The CCD reflects the following information regarding Mr. Jama's visa application.

- On June 11. 2018. Mr. Jama appeared for an interview at the U.S. Embassy in Addis Ababa and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f). 8 U.S.C. § 1182(f). in accordance with Presidential Proclamation 9645 then considered Mr. Jama for a waiver of the Proclamation's entry restrictions. The consular officer made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether his entry could pose a threat to national security or public safety.

- As of this writing. Mr. Jama is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime. the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

**The following information relates to identified individuals who applied for immigrant visas based on immigrant visa self-petitions approved by USCIS they filed on their own behalf.**

15. The CCD reflects that the immigrant visa self-petition assigned case number YRV2016504010 was filed by Behnam BABALOU. year and place of birth: 1979, Iran, as an alien investor. The CCD reflects the following information regarding Mr. Babalou's visa application.

- On May 24, 2016, Mr. Babalou appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On December 21, 2017 the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Mr. Babalou for a waiver of the Proclamation's entry restrictions and determined that he failed to show national interest and personal hardship if he did not travel to the United States.
- On January 29, 2018, the consular section at the U.S. Embassy in Yerevan received a request to reconsider the waiver.
- On February 2, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Mr. Babalou's entry could pose a threat to national security or public safety.
- As of this writing, Mr. Babalou is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa applications remain refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

16. The CCD reflects that the immigrant visa self-petition assigned case number YRV2016724008 was filed by Hoda MEHRABI MOHAMMADABADI, year and place of birth: 1984, Iran, as an alien investor. The CCD reflects the following information regarding Ms. Mehrabi Mohammadabadi's visa application.

- On February 23, 2017, Ms. Mehrabi Mohammadabadi appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On December 14, 2017 the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Mehrabi Mohammadabadi for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.
- On February 5, 2018, the consular section at the U.S. Embassy in Yerevan received a request from Ms. Mehrabi Mohammadabadi's representative to submit additional documents and information in support of her waiver request. The consular section responded encouraging submission of additional information.
- On September 13, 2018, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether his entry could pose a threat to national security or public safety.

- As of this writing. Ms. Mehrabi Mohammadabadi is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

17. The CCD reflects that the immigrant visa self-petition assigned case number YRV2017538001 was filed by Mahdi AFSHAR ARJMAND, year and place of birth: 1976, Iran, as an alien of extraordinary ability. The CCD reflects the following information regarding Mr. Afshar Arjmand's visa application.

- On July 25, 2017, Mr. Afshar Arjmand appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On January 11, 2018, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Mr. Afshar Arjmand for a waiver of the Proclamation's entry restrictions and determined that he failed to show national interest and personal hardship if he did not travel to the United States.
- On February 25, 2019, the consular section at the U.S. Embassy in Yerevan received additional information from Mr. Afshar Arjmand in support of his waiver request. The consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether his entry could pose a threat to national security or public safety.
- As of this writing, Mr. Afshar Arjmand is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

18. The CCD reflects that the immigrant visa self-petition assigned case number RDJ2017593001 was filed by Ehsan HEIDARYAN, year and place of birth: 1985, Iran, as an alien of extraordinary ability. The CCD reflects the following information regarding Mr. Heidaryan's visa application.

- On December 22, 2017, Mr. Heidaryan appeared for an interview at the U.S. Consulate General in Rio de Janeiro and applied for an immigrant visa. The consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then

considered Mr. Heidaryan for a waiver of the Proclamation's entry restrictions and determined that he failed to show national interest and personal hardship if he did not travel to the United States.

- On January 29, 2018, the consular section at the U.S. Consulate General in Rio de Jainero received additional information from Mr. Heidaryan in support of his waiver request. The consular officer determined that the document was insufficient to establish U.S. national interest in support of a waiver of the Proclamation's entry restrictions.

19. The CCD reflects that the immigrant visa self-petition assigned case number YRV2016595003 was filed by Najmeh MAHARLOUEI, year and place of birth: 1976, Iran, as an alien of exceptional ability. The CCD reflects the following information regarding Ms. Maharlouei's visa application.

- On October 6, 2016, Ms. Maharlouei appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On December 21, 2017, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Maharlouei for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.

20. The CCD reflects that the immigrant visa self-petition assigned case number YRV2017526002 was filed by Nastaran HAJI HEYDARI, year and place of birth: 1979, Iran, as an alien of exceptional ability. The CCD reflects the following information regarding Ms. Haji Heydari's visa application.

- On October 26, 2017, Ms. Haji Heydari appeared for an interview at the U.S. Embassy in Yerevan and applied for an immigrant visa. Ms. Haji Heydari applied with a derivative spouse and child. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for administrative processing.
- On January 12, 2018, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Haji Heydari for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.

21. The CCD reflects that the immigrant visa self-petition assigned case number ABD2016830007 was filed by Mohamad Abdul Hadi HAMAMI, year and place of birth: 1977, Syria, as an alien of exceptional ability. The CCD reflects the following information regarding Mr. Hamami's visa application.

- On July 25, 2017, Mr. Hamami appeared for an interview at the U.S. Consulate General in Abu Dhabi and applied for an immigrant visa. The consular officer

refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for additional documents in support of his visa eligibility.

- On August 5, 2018, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645. The consular officer cannot consider Mr. Hamami for a waiver of the Proclamation's entry restrictions until such time as he provides additional documents and information in support of his eligibility for the immigrant visa classification sought.

**The following information relates to identified individuals who applied for nonimmigrant fiancé visas under INA §101(a)(15)(K), 8 U.S.C. §1101(a)(15)(K), as a fiancé of a U.S. citizen.**

22. The CCD reflects that the nonimmigrant visa petition assigned case number YRV2016718001 was filed by Soheil VAZEHRAD on behalf of Atefehossadat MOTAVALIABYAZANI, year and place of birth: 1985, Iran, as the fiancé of a U.S. citizen. The CCD reflects the following information regarding Ms. Motavaliabyazani's visa application.

- On October 20, 2016, Ms. Motavaliabyazani appeared for an interview at the U.S. Embassy in Yerevan and applied for a nonimmigrant visa. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for additional documents in support of her visa eligibility.
- On January 25, 2017, the consular section at the U.S. Embassy in Yerevan received additional documents in support of Ms. Motavaliabyazani's visa eligibility.
- On January 3, 2018 the consular officer refused the nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645 then considered Ms. Motavaliabyazani for a waiver of the Proclamation's entry restrictions and determined that she failed to show national interest and personal hardship if she did not travel to the United States.
- On February 22, 2018, the consular section at the U.S. Embassy in Yerevan received additional documents in support of Ms. Motavaliabyazani's waiver eligibility.
- On March 22, 2019, the consular officer on reconsideration made a preliminary determination that the personal hardship and national interest prongs were met and is in consultation with the Visa Office regarding whether Ms. Motavaliabyazani's entry could pose a threat to national security or public safety.
- As of this writing, Ms. Motavaliabyazani is undergoing consideration for a waiver of the Proclamation's entry restrictions. The Government has not completed the necessary security assessments as to be properly vetted to determine eligibility for a waiver of the Proclamation's entry restrictions. It is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request. In the meantime, the visa application remains refused under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with the Proclamation.

**The following information relates to identified individuals who applied for nonimmigrant tourist visas under INA §101(a)(15)(B), 8 U.S.C. §1101(a)(15)(B), as a temporary visitor for business or pleasure who maintain a residence abroad that they have no intention of abandoning.**

23. The CCD reflects a nonimmigrant B visa application by Roghayeh AZIZIKOUTENAEI, year and place of birth: 1961, Iran. The CCD reflects the following information regarding Ms. Azizikoutenaei's visa application.

- On September 12, 2017, Ms. Azizikoutenaei applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.
- On January 10, 2018, the consular officer refused Ms. Azizikoutenaei's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Ms. Azizikoutenaei for a waiver of the Proclamation's entry restrictions and determined that she failed to show personal hardship if she did not temporarily visit the United States.

24. The CCD reflects a nonimmigrant B visa application by Hojjatollah AZIZIKOUTENAEI, year and place of birth: 1957, Iran. The Second Amended Complaint states that Mr. Azizikoutenaei is related to U.S. citizen Bamshad Azizi. The CCD reflects the following information regarding Mr. Azizikoutenaei's visa application.

- On September 12, 2017, Mr. Azizikoutenaei applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.
- On January 10, 2018, the consular officer refused Mr. Azizikoutenaei's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Mr. Azizikoutenaei for a waiver of the Proclamation's entry restrictions and determined that he failed to show personal hardship if he did not temporarily visit the United States.

25. The CCD reflects a nonimmigrant B visa application by Farajollah FARNOUDIAN, year and place of birth: 1953, Iran. The Second Amended Complaint states that Mr. Farnoudian is related to lawful permanent resident Mitra Farnoodian-Tedrick and U.S. citizen Clyde Jean Tedrick. The CCD reflects the following information regarding Mr. Farnoudian's visa application.

- On September 17, 2017, Mr. Farnoudian applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.
- On January 7, 2018, the consular officer refused Mr. Farnoudian's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with

Presidential Proclamation 9645, then considered Mr. Farnoudian for a waiver of the Proclamation's entry restrictions and determined that he failed to show personal hardship if he did not temporarily visit the United States.

26. The CCD reflects a nonimmigrant B visa application by Farangis EMAMI, year and place of birth: 1956, Iran. The Second Amended Complaint states that Ms. Emami is related to lawful permanent resident Mitra Farnoodian-Tedrick and U.S. citizen Clyde Jean Tedrick. The CCD reflects the following information regarding Ms. Emami's visa application.

- On October 17, 2017, Ms. Emami applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.
- On January 7, 2018, the consular officer refused Ms. Emami's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Ms. Emami for a waiver of the Proclamation's entry restrictions and determined that she failed to show personal hardship if she did not temporarily visit the United States.

27. The CCD reflects a nonimmigrant B visa application by Zahra ROUZBEHANI, year and place of birth: 1957, Iran. The CCD reflects the following information regarding Ms. Rouzbehani's visa application.

- On October 19, 2017, Ms. Rouzbehani applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), for Ms. Rouzbehani to provide a valid passport.
- On December 21, 2017, the consular section at the U.S. Consulate General in Dubai received Ms. Rouzbehani's passport.
- On December 24, 2017, the consular officer refused Ms. Rouzbehani's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Ms. Rouzbehani for a waiver of the Proclamation's entry restrictions and determined that she failed to show personal hardship if she did not temporarily visit the United States.

28. The CCD reflects a nonimmigrant B visa application by Bahram CHARKHTAB TABRIZI, year and place of birth: 1957, Iran. The Second Amended Complaint states that Mr. Charkhtab Tabrizi is a lawful permanent resident. The Second Amended Complaint also states that Mr. Charkhtab Tabrizi is related to lawful permanent resident also named Bahram Charkhtab Tabrizi. The CCD reflects the following information regarding Mr. Charkhtab Tabrizi's visa application.

- On October 19, 2017, Mr. Charkhtab Tabrizi applied for a nonimmigrant tourist visa at the U.S. Consular General in Dubai. The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.

- On January 7, 2018, the consular officer refused Mr. Charkhtab Tabrizi's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Mr. Charkhtab Tabrizi for a waiver of the Proclamation's entry restrictions and determined that he failed to show personal hardship if he did not temporarily visit the United States.

29.  The CCD reflects two nonimmigrant B visa applications by Mohammad Mehdi MOZAFFARY, year and place of birth: 1949, Iran.  The Second Amended Complaint states that Mr. Mozaffary is related to lawful permanent resident named Marvam Mozafari.  The CCD reflects the following information regarding Mr. Mozaffary's visa applications.

- On December 28, 2016, Mr. Mozaffary applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai.  The consular officer refused the visa application under INA §214(b), 8 U.S.C. §1184(b), because Mr. Mozaffary failed to overcome the presumption that he was an intending immigrant.
- On July 30, 2017, Mr. Mozaffary applied for a nonimmigrant tourist visa at the U.S. Consulate General in Dubai.  The consular officer refused the visa application under INA §221(g), 8 U.S.C. §1201(g), administrative processing.
- On January 10, 2018, the consular officer refused Mr. Mozaffary's nonimmigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f), in accordance with Presidential Proclamation 9645, then considered Mr. Mozaffary for a waiver of the Proclamation's entry restrictions and determined that he failed to show personal hardship if he did not temporarily visit the United States.

Washington, D.C.
May 09, 2019                                    Chloe Dybdahl