SIRINE SHEBAYA (*pro hac vice*)
NIMRA AZMI (*pro hac vice*)*
JOSEPH SAEI (CA SBN 321341)*
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
Telephone: (202) 897-2622
Facsimile: (202) 508-1007
sirine@muslimadvocates.org
nimra@muslimadvocates.org
yusuf@muslimadvocates.org

SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
LOTFI LEGAL, LLC
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974
shabnam@lotfilegal.com
veronica@lotfilegal.com

*Attorneys for Plaintiffs*

* *Not admitted to practice in D.C.; practice limited to federal courts and agencies*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FARANGIS EMAMI, et al., | Case No. 3:18-cv-01587-JD |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT** |
| KIRSTJEN NIELSEN, et al., | |
| Defendants. | Judge: Hon. James Donato |
| | Hearing: July 25, 2019, 10 a.m. |
| | Place: San Francisco U.S. Courthouse, Courtroom 11, 19th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ....................................................................................................... 1

LEGAL STANDARD ................................................................................................. 2

RELEVANT BACKGROUND................................................................................... 3

ARGUMENT .............................................................................................................. 3

    I. PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR CLAIMS FOR RELIEF.................................................................................................................... 3

        A. Plaintiffs have adequately stated claims under the APA................................... 3

            i.    Plaintiffs have stated an *Accardi* claim. .................................................. 3

            ii.   The guidance is arbitrary and capricious under the APA........................... 4

        B. Plaintiffs have adequately stated due process and equal protection claims........................... 5

            i.    Due process .............................................................................................. 6

            ii.   Equal protection ....................................................................................... 9

        C. Plaintiffs have adequately stated a mandamus claim .................................... 10

    II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ..... 11

        A. Summary judgment is premature because defendants have failed to provide the complete administrative record........................................................... 12

            i.    The AR is incomplete because Defendants have improperly narrowed its scope. ... 13

            ii.   The AR is incomplete because Defendants only provide documents from Defendant DOS. .................................................................................. 13

            iii.  The AR is incomplete because it fails to include multiple DOS documents concerning the implementation of the Proclamation................................. 15

            iv.  The AR is incomplete because Defendants used improper exemptions to withhold critical information about the national security prong............................. 18

            v.    The AR is incomplete because Defendants failed to provide a privilege log........... 20

        B. Summary judgment is inappropriate because numerous disputes of material fact remain. ................................................................................................. 21

        C. The AR confirms Plaintiffs' allegations and highlights the need for further factfinding............................................................................................... 22

            i.    The record supports Plaintiffs' *Accardi* claims. .................................... 22

            ii.   The record supports Plaintiffs' allegation that the guidance is arbitrary and capricious. ................................................................................. 23

1

2   CONCLUSION ................................................................................................. 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Alabama v. North Carolina,*
  560 U.S. 330 (2010)...................................................................................................... 2

*Am. Hosp. Ass'n v. Burwell,*
  812 F.3d 183 (D.C. Cir. 2016) ................................................................................... 11

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles,*
  648 F.3d 986 (9th Cir. 2011)........................................................................................ 2

*Bennett v. Spear,*
  520 U.S. 154 (1997)................................................................................................. 3, 4

*Brown v. Holder,*
  763 F.3d 1141 (9th Cir. 2014)...................................................................................... 7

*Bustamante v. Mukasey,*
  531 F.3d 1059 (9th Cir. 2008)...................................................................................... 6

*Cardenas v. United States,*
  826 F.3d 1164 (9th Cir. 2016)...................................................................................... 6

*Chemehuevi Indian Tribe v. Jewell,*
  767 F.3d 900 (9th Cir. 2014).................................................................................. 21, 22

*Ching v. Mayorkas,*
  725 F.3d 1149 (9th Cir. 2013)...................................................................................... 6

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
  401 U.S. 402 (1971).................................................................................................... 12

*Emami v. Nielsen,*
  365 F. Supp. 3d 1009 (N.D. Cal. 2019) ....................................................................... 2

*Inst. for Fisheries Res. v. Burwell,*
  No. Civ. 16-1574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017)........................... 13

*Int'l Longshoremen's Ass'n, AFL-CIO v. Nat'l Mediation Bd.,*
  No. Civ. 04-824-RBW, 2005 WL 850358 (D.D.C. Mar. 30, 2005)...................... 2, 21

*Int'l Refugee Assistance Project v. Trump,*
  373 F. Supp. 3d 650 (D. Md. 2019)..................................................................... passim

*J.L. v. Cissna,*
   374 F.Supp. 3d 855 (N.D. Cal. 2019) ........................................................................... 7

*J.L. v. Cissna,*
   No. Civ. 18-4914-NC, 2019 WL 2223803 (N.D. Cal. May 22, 2019) ................................. 13

*Judulang v. Holder,*
   565 U.S. 42 (2011) ................................................................................................4, 12, 23

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ...................................................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).......................................................................................................2

*McGary v. City of Portland,*
   386 F.3d 1259 (9th Cir. 2004)........................................................................................ 8

*Metts v. Murphy,*
   363 F.3d 8 (1st Cir. 2004)............................................................................................. 7

*Motor Vehicles Mfr. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ................................................................................................ 4, 23

*Nat. Res. Def. Council, Inc. v. Train,*
   519 F.2d 287 (D.C. Cir. 1975) ...............................................................................2, 13, 21

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry,*
   168 F. Supp. 3d 268 (D.D.C. 2016)............................................................................... 11

*Nw. Immigrant Rights Project v. USCIS,*
   325 F.R.D. 671 (W.D. Wash. 2016) ............................................................................. 22

*Nw. Motorcyle Ass'n v. U.S. Dep't of Agric.,*
   18 F.3d 1468 (9th Cir. 1994)..........................................................................................2

*Patel v. Reno,*
   134 F.3d 929 (9th Cir. 1998).......................................................................................11

*People of State of Cal. ex rel. Lockyer v. United States Dep't of Agriculture,*
   Nos. Civ. 05-3508-EDL & 05-4038-EDL, 2006 WL 708914
   (N.D. Cal. Mar. 16, 2006) ....................................................................................... 12, 18

*Perry v. Sindermann,*
   408 U.S. 593 (1972)......................................................................................................7

*Portland Audubon Soc. v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1993) ............................................................................ 2, 3, 12

*Ramos v. Nielsen*,
    321 F.Supp. 3d 1083 (N.D. Cal. 2018) ...................................................................... 7

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) ...................................................................................... 7

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. Civ. 17-5211-WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) ................. 20

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. Civ. 17-5211-WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ......... 17, 20

*S.E.C. v. Gowrish*,
    No. Civ. 09-5883-SI, 2010 WL 1929498 (N.D. Cal. May 12, 2010) ..................... 19

*San Francisco Bay Conservation & Dev. Comm'n v. United States Army Corps of Eng'rs*,
    No. Civ. 16-5420-RS, 2018 WL 3846002 (N.D. Cal. Aug. 13, 2018) .............. 12, 20

*Sierra Club v. Zinke*,
    No. Civ. 17-7187-WHO, 2018 WL 3126401 (N.D. Cal. June 26, 2018) ......14, 20, 22

*Singh v. Cissna*,
    No. Civ. 18-782-SKO, 2018 WL 4770737 (E. D. Cal. Oct. 1, 2018) ....................... 7

*Singh v. Holder*,
    No. Civ. 13-4958-EMC, 2014 WL 117397 (N.D. Cal. Jan. 10, 2014) ................... 11

*Stanley v. Illinois*,
    405 U.S. 645 (1972) ..................................................................................................... 6

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ................................................................................ 3, 12

*Tolan v. Cotton*,
    572 U.S. 650 (2014) ..................................................................................................... 2

*W. Ctr. for Journalism v. Cederquist*,
    235 F.3d 1153 (9th Cir. 2000) .................................................................................... 2

## **STATUTES**

28 U.S.C. § 1361 ............................................................................................................ 10

5 U.S.C. § 555(b) ................................................................................................................... 11

5 U.S.C. § 706 ....................................................................................................................... 12

**<u>OTHER AUTHORITIES</u>**

FOIA Letter from Muslim Advocates and Center for Constitutional Rights
  to DHS, DOS, CBP, and USCIS Re: Waiver Process Under Presidential
  Proclamation 9645 (Jan. 23, 2018) ..................................................................................... 14

Press Release, Muslim Advocates,
  *Attorneys Sue for Info on Hundreds of Muslim Ban Waiver Denials* (June 28, 2018) ............. 14

1

## <u>INTRODUCTION</u>

2

Plaintiffs in this action are U.S. citizens, lawful permanent residents, and Iranian, Libyan,

3

Somali, Syrian, and Yemeni visa applicants who continue to suffer ongoing harms because of

4

Defendants' failure to properly implement a waiver process under Presidential Proclamation 9645

5

("the Proclamation"). They are separated from family and loved ones at critical times in their lives

6

including pregnancy, marriage, childbirth, and medical need; forced to live in desperate or

7

dangerous circumstances; and experiencing severe financial difficulties. Each of their

8

circumstances fits squarely within one or more of the examples offered in the Proclamation and

9

agency guidance as a situation where a waiver grant may be appropriate.

10

Defendants' motion to dismiss is largely a rehash of arguments this Court has already

11

considered and rejected. As this Court found in its February 4, 2019 Order, ECF No. 74, Plaintiffs

12

do not challenge individual visa denials; rather, they challenge Defendants' implementation of the

13

waiver process generally. Plaintiffs' allegations continue to support the conclusion that the

14

agencies are not following their own guidance, and that the guidance itself is arbitrary and

15

capricious.

16

Plaintiffs' revised allegations also state claims for constitutional violations resulting from

17

Defendants' failure to implement a meaningful waiver process. Contrary to Defendants' assertion,

18

Plaintiffs supplemented their allegations in their Second Amended Complaint, ECF No. 81-1

19

("SAC"), and in the intervening time another court has allowed substantially similar claims to

20

move forward, relying in part on Ninth Circuit precedent. *See generally Int'l Refugee Assistance

21

Project v. Trump*, 373 F. Supp. 3d 650 (D. Md. 2019).

22

Far from justifying summary judgment in their favor, the Administrative Record ("AR")

23

Defendants have submitted in this case further demonstrates that nothing has materially changed

24

since the last time this Court took up their attempt to dispose of the case. The record in this case

25

shows that Defendants continue to violate their own waiver guidance in multiple ways, and further

26

highlights the arbitrary and capricious nature of the guidance. As Plaintiffs have repeatedly

27

clarified and as this Court has recognized, the core of the complaint is not that *no* guidance has

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 1

been issued at all, but rather that the issued guidance has not been followed; that the guidance itself is arbitrary and capricious; and that it violates Plaintiffs' constitutional rights. An incomplete AR showing that one Defendant has issued guidance is fundamentally unresponsive to the allegations in the complaint, and does not justify a grant of summary judgment.

Accordingly, this Court should deny Defendants' motion to dismiss in full, and should deny their motion for summary judgment to allow for further fact-finding.

## **LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations of the complaint as true, construe its pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party. *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles,* 648 F.3d 986 (9th Cir. 2011); *W. Ctr. for Journalism v. Cederquist,* 235 F.3d 1153, 1154 (9th Cir. 2000); *Emami v. Nielsen,* 365 F. Supp. 3d 1009, 1018 (N.D. Cal. 2019).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only "where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina,* 560 U.S. 330, 344 (2010); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). The moving party must prove that no "rational trier of fact" could find for the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), and courts must view the facts in the light most favorable to the nonmoving party. *Tolan v. Cotton,* 572 U.S. 650, 651 (2014).

In an APA case, summary judgment is further inappropriate where the administrative record is incomplete. *See Nat. Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975); *Int'l Longshoremen's Ass'n, AFL-CIO v. Nat'l Mediation Bd.,* No. Civ. 04-824-RBW, 2005 WL 850358, at *4 (D.D.C. Mar. 30, 2005). A complete administrative record must include "everything that was before the agency pertaining to the merits of its decision," *Portland Audubon Soc. v. Endangered Species Comm.,* 984 F.2d 1534, 1548 (9th Cir. 1993). "An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'"

*Id.* The complete record includes "all documents and materials directly or indirectly considered by agency decision-makers," including "evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

## RELEVANT BACKGROUND

Under the Proclamation, all immigrants and various categories of non-immigrants from five predominantly Muslim countries—Iran, Libya, Somalia, Syria, and Yemen—are subject to an indefinite ban, unless they can "demonstrate" that: (1) denial of entry would cause them "undue hardship"; (2) their entry would not pose a threat to national security or public safety; and (3) their entry would be in the national interest. SAC ¶¶ 57, 60. A waiver is the only means by which covered individuals from the banned countries may enter the United States. *Id.* ¶ 57.

As detailed in their SAC, Plaintiffs have alleged that Defendants have implemented the waiver provisions of the Proclamation in an arbitrary and capricious manner, have failed to follow their own guidance in implementing the waiver process, and have created a process designed to result in mass denials. *See generally* SAC ¶¶ 62-94, 313-316, 324. They seek relief from this Court pursuant to the APA and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## ARGUMENT

## I.  PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR CLAIMS FOR RELIEF.

### A.  Plaintiffs have adequately stated claims under the APA.

#### i.    Plaintiffs have stated an *Accardi* claim.

This Court has already found that Plaintiffs adequately stated an APA claim under the *Accardi* doctrine. As this Court detailed in its February 4, 2019 Order ("February Order"), Plaintiffs have sufficiently alleged that Defendants "created rules and procedures for the waiver program . . . and recognized the materials [they] promulgated as such." ECF No. 74 at 14. These rules and procedures constitute final agency action: Defendants have been implementing the waiver provisions of the Proclamation for more than 18 months, and the guidance they have promulgated constitutes the "consummation" of the agency's decision-making process. *Bennett v.*

*Spear,* 520 U.S. 154, 177-78 (1997) (final agency action "must mark the 'consummation' of the agency's decisionmaking process" and "affect[] the legal rights" of individuals to whom it applies). It is undisputed that those agency actions have "affected the legal rights" of impacted individuals. *Id.* at 178*; see* SAC ¶¶ 95-302. Plaintiffs' claims are therefore well within the traditional province of the APA. *See generally* ECF No. 57 at 9-15.

As this Court also previously found, agencies are required to follow their own rules and procedures. *See* February Order at 14. Plaintiffs have alleged multiple ways in which Defendants have systematically disregarded their own "procedures and rules in administering the waiver program." *Id.*; *see also* ECF No. 57 at 10-12. For example, Plaintiffs have alleged that applicants are not being considered at the interview and are oftentimes not allowed to submit documents in support of their waiver eligibility. February Order at 15. Plaintiffs have also alleged that consular officers do not have discretion to grant waivers. *Id.* at 15-16; *see also* ECF 57 at 10-12. Those allegations remain sufficient to state a claim under the *Accardi* doctrine.[1]

ii.   The guidance is arbitrary and capricious under the APA.

It is equally well-established that agencies are required to engage in reasoned decision-making to adopt policies; that that reasoning must precede the policy and must not simply consist of post-hoc rationalizations; and that agency action is arbitrary when it operates in an irrational manner. *See Judulang v. Holder,* 565 U.S. 42, 45, 55, 61 (2011) (agency action must be well-reasoned and agency action that is arbitrary "becomes no less so by simple dint of repetition"); *Motor Vehicles Mfr. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 49-50 (1983) ("courts may not accept…counsel's *post hoc* rationalizations for agency action.").

Plaintiffs have adequately alleged that agency guidance and processes implementing the

---

[1] Mindful of this Court's admonishment not to relitigate matters that the Court addressed in its February Order, *see* April 11, 2019 Transcript of Proceedings at 9, Plaintiffs do not address justiciability and the non-applicability of the doctrine of consular non-reviewability here. This Court already determined that the doctrine of consular non-reviewability is inapplicable, and that the claims raised in this case are justiciable. February Order at 11-12; *see also* ECF No. 57.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 4

waiver provisions have been arbitrary and capricious on their face, and that the agencies have provided no explanation for their decisions. SAC ¶ 313. For example, the guidance states that applicants bear the burden of demonstrating that they meet the waiver criteria, but simultaneously denies them the opportunity to apply for or submit evidence in support of a waiver. SAC ¶¶ 64-65; SAC Ex. D, Jay Gairson Decl., ECF No. 77-5 ("Gairson Decl."). The guidance publicly states that consular officers make waiver decisions at the interview, yet also simultaneously appears to instruct consular officers that they can refuse but not grant waivers, and that all waiver grant requests are to be directed to the central Visa Office in Washington, D.C. SAC Ex. B, Christopher Richardson Decl., ECF No. 77-3. The agency guidance states that candidates are considered automatically, but fails to explain how candidates who had interviews prior to the date of the Proclamation could possibly have received that consideration "at the interview." *See* SAC ¶ 64. The agency guidance also fails to explain how candidates can be considered automatically when in the ordinary course of applying for most visa categories covered by the ban, no information bearing on the three waiver criteria is submitted. SAC Ex. D, Gairson Decl. In practice, implementation has varied wildly across consulates. SAC ¶ 74-76; SAC Ex. D, Gairson Decl. The agency guidance, moreover, defines several key terms in a manner that defies explanation, without providing any reasoning or justification for those departures from past usage. SAC ¶¶ 69, 74; Ex. 1, Mahsa Khanbabai Decl. These allegations are sufficient to state a claim that Defendants' guidance has been arbitrary and capricious under the APA.

Consequently, Defendants' motion to dismiss their APA claims should be denied.

**B. Plaintiffs have adequately stated due process and equal protection claims.**

In its February Order, this Court granted Plaintiffs leave to amend their constitutional claims. February Order at 17-18. Consistent with that Order, Plaintiffs expanded the complaint's allegations in order to clarify the scope of their constitutional claims, to allege specific liberty and property interests underlying those claims—including a liberty interest that has explicitly been recognized by the Ninth Circuit—and to draw out the inferences that render an Equal Protection claim viable after *Trump v. Hawaii*. *Compare* Pls.' First Am. Compl., ECF No. 34 ("FAC") ¶¶

322-334 *with* SAC ¶¶ 319-332.  Defendants fail to acknowledge these changes and largely fail to address Plaintiffs' arguments. For the reasons set forth below, this Court should deny their motion to dismiss Plaintiffs' constitutional claims.

   i.   Due process

   As alleged in their SAC, Plaintiffs' fundamental rights include a right to the "integrity of the family unit." *Stanley v. Illinois,* 405 U.S. 645, 651 (1972). Although this Court found that the FAC did not sufficiently allege a protected interest, *see* February Order at 17, Plaintiffs amended their allegations, withdrew their substantive due process claims, and now focus solely on procedural due process rights arising out of liberty and property interests the Ninth Circuit has recognized.

   The Ninth Circuit has concluded that the due process interest in family unity applies to U.S. citizen family members' visa applications. *See Bustamante v. Mukasey,* 531 F.3d 1059, 1062 (9th Cir. 2008); *Ching v. Mayorkas,* 725 F.3d 1149, 1157 (9th Cir. 2013) ("The right to live with and not be separated from one's immediate family is 'a right that ranks high among the interests of the individual' and that cannot be taken away without procedural due process."); *see also Int'l Refugee Assistance Project v. Trump*, 373 F. Supp. 3d 650, 677 (D. Md. 2019) (denying government's motion to dismiss procedural due process and equal protection challenges to the Proclamation and stating that the Ninth Circuit "has specifically endorsed the existence" of a protected liberty interest in family members' visa applications). The Supreme Court has not foreclosed a due process analysis based on those interests; rather, the controlling concurrence in *Kerry v. Din* supports an analysis that assumes the existence of such a right. *See Din,* 135 S.Ct. 2128 (2015) (assuming without deciding that U.S. citizen has procedural due process right with respect to family members' visa application); *Cardenas v. United States,* 826 F.3d 1164, 1167 (9th Cir. 2016) (noting that J. Kennedy's concurrence in *Din* is controlling). As the Court in *IRAP* recently concluded, where Plaintiffs raise a novel legal claim and the existence of a liberty interest is in dispute, dismissal is not warranted because "plaintiffs are entitled to an opportunity to develop evidence before the merits are resolved." *IRAP* at 677 (quoting *Metts v. Murphy,* 363 F.3d 8, 11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 6

(1st Cir. 2004) (*en banc*) (per curiam)).

In their SAC, Plaintiffs allege the existence of other liberty and property interests that Defendants barely address. Plaintiffs allege that due process rights attach to the statutory rights granted by Congress to prospective immigrants and non-immigrants. SAC ¶ 322. Plaintiffs further allege an unreasoned infringement on reliance interests that were created by the expectation of a reasoned and orderly visa application process. *See Perry v. Sindermann,* 408 U.S. 593, 601 (1972) (a person's interest in a benefit is a property interest for due process purposes if there are rules or mutually explicit understandings that support the claim of entitlement to the benefit). In comparable contexts, the Ninth Circuit and other courts in this circuit have recognized that such mutually explicit understandings can undergird procedural due process claims. *See, e.g., Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.,* 908 F.3d 476, 514 (9th Cir. 2018); *Ramos v. Nielsen,* 321 F.Supp. 3d 1083, 1120 (N.D. Cal. 2018); *J.L. v. Cissna,* 374 F.Supp. 3d 855, 869 (N.D. Cal. 2019); *Singh v. Cissna,* No. Civ. 18-782-SKO, 2018 WL 4770737, at *12 (E. D. Cal. Oct. 1, 2018) (quoting *Ching v. Mayorkas,* 725 F.3d 1149, 1156) (9th Cir. 2013). In this case, Plaintiffs had a reasonable expectation that their visa and waiver adjudications would receive full and fair consideration according to the established statutory and regulatory framework, which includes the waiver guidance agencies have promulgated. Plaintiffs have alleged that the waiver process is failing to provide such full and fair consideration, thereby infringing upon Plaintiffs' protected property interests. SAC ¶¶ 322.

The Ninth Circuit has also recognized that where "challenged action by the Administration [is] otherwise illegitimate and unlawful, the deprivation of Plaintiffs' liberty interests in family integrity, even if typically insufficient to defeat the government's interest in enforcing valid immigration laws, may be unlawful where it is not supported by a legitimate government interest." *Ramos v. Nielsen,* 321 F.Supp. 3d 1083, 1120 (N.D. Cal. 2018); *see also Brown v. Holder,* 763 F.3d 1141, 1149 (9th Cir. 2014) ("[C]onstitutional rights [a]re implicated 'when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights'"). Here, Plaintiffs have alleged that Defendants' actions are "otherwise illegitimate and unlawful"

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 7

1    under the APA, and have disputed the existence of a legitimate government interest, which

2    ultimately is a question of fact in this context. At the motion to dismiss stage, these allegations are

3    sufficient to support a procedural due process claim under the Fifth Amendment.

4         Thus, Plaintiffs have alleged several protected liberty and property interests that give rise to

5    procedural due process rights. These due process theories "ha[ve] . . . not [been] foreclosed by the

6    Supreme Court" and therefore should not be dismissed at this stage. *IRAP* at 677. At the motion to

7    dismiss stage, "dismissals 'are especially disfavored in cases where the complaint sets forth a novel

8    legal theory that can best be assessed after factual development.'" *McGary v. City of Portland,* 386

9    F.3d 1259, 1279 (9th Cir. 2004). Here, further factual development is needed to determine whether

10   Defendants have infringed on a protected liberty or property interest without a legitimate interest.

11        Defendants further contend that even if a liberty or property interest exists, Plaintiffs have

12   received the process they are due by virtue of a bare citation to INA 212(f)—the statutory provision

13   that undergirds the Proclamation—contained in their refusal letters. But unlike in *Din,* that citation

14   does not actually provide the specific ground for the grant or denial of a waiver. Instead, it merely

15   cites to the legal instrument that created the waiver process, thereby providing no meaningful

16   information at all to prospective visa holders and their family members. Moreover, the upshot of

17   the holding in *Kerry v. Din* is not that a bare statutory citation suffices. Rather, the reasoning in

18   both *Din a*nd *Kleindienst v. Mandel*, 408 U.S. 753 (1972), relies centrally on the existence of an

19   orderly process of meaningful consular review: both cases involved multiple document

20   submissions by the applicant and consideration by the consular official, along with specific reasons

21   provided for the ultimate denial. *See Din,* 135 S.Ct. at 2140-42 (Kennedy, J., concurring); *Mandel,*

22   408 U.S. at 757-59; *see also IRAP* at 676-677. Plaintiffs have alleged that no such process has

23   been followed or generated with respect to waivers and that this absence of process violates their

24   due process rights. Defendants have failed to meaningfully respond to these allegations.

25        Further, as the Court in *IRAP* found in declining to dismiss Plaintiffs' due process claims,

26   where Plaintiffs were denied waivers without any opportunity to apply or be considered, and where

27   their interviews had taken place prior to the Proclamation taking effect, that "scenario [is] not

28   PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
     FOR SUMMARY JUDGMENT
     CASE NO.: 3:18-CV-01587 - 8

controlled by *Din.*" *IRAP* at 677 ("Where Plaintiffs have alleged a lack of due process arising from the failure to implement and follow waiver procedures contemplated by the Proclamation, a scenario not controlled by *Din,* the Court declines to find at the motion to dismiss stage that [the Plaintiff whose waiver was denied] received due process as a matter of law.") For the same reasons, this Court should also decline to dismiss Plaintiffs' procedural due process claims.

ii.    Equal protection

As this Court has recognized, in *Trump v. Hawaii,* 138 S.Ct. 2392 (2018), the Supreme Court relied centrally on the existence of a meaningful waiver process to conclude that Plaintiffs were unlikely to succeed in establishing that the Proclamation was motivated by discriminatory animus. February Order at 3. The SAC alleges the absence of such a process, and alleges further that in the absence of a meaningful waiver process, the only remaining ground for disparate treatment of visa applicants is discrimination on the basis of national origin or religion. SAC ¶ 329-330. Although, as this Court noted in its Order, *Hawaii* precludes the *assumption* that waiver and visa denials are motivated by discriminatory animus, *see* February Order at 17, it does not preclude the allegation that in the absence of a reasoned and meaningful waiver process, the denials are *in fact* motivated by such animus—an allegation that requires factual development in order to be adjudged on the merits. *See IRAP* at 678 (discussing continuing viability of equal protection challenge against the Proclamation).

Plaintiffs have also amended their allegations to conform with this Court's note "that the equal protection claim would likely be subject to rational basis review." February Order at 18. Although this standard of review poses a "sizeable roadblock," *id.*, it does not preclude success on the merits. As the *IRAP* court noted, "[a]lthough rational basis is a highly deferential standard, it does not always require rejection of a challenge" to government action. *IRAP* at 670; *see also id.* at 670-672 (discussing cases where government action was invalidated pursuant to rational basis review).

Ultimately, Defendants' characterization of the holding in *Hawaii* fails to recognize the preliminary nature of a preliminary injunction decision. Moreover, the preliminary determination

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 9

the Supreme Court made in that case extended only to the face of the Proclamation, and not to the implementation of its waiver provisions, which the Court assumed to be a reasonable and meaningful process. *See* SAC ¶¶ 56, 329. As the *IRAP* court noted in analyzing equal protection claims against the underlying Proclamation, discriminatory animus may still be the motivating force behind these denials, if Plaintiffs are able to refute, through development of the record, all of the government's stated justifications for the Proclamation. *See IRAP* at 671. The same reasoning applies, with equal if not greater force, to an equal protection challenge against the waiver process itself. If Plaintiffs are able to refute, through development of the record, all of Defendants' stated justifications for the manner in which the waiver process operates, their equal protection challenge could succeed. This Court should therefore decline to dismiss the equal protection claim at this stage.

### C. Plaintiffs have adequately stated a mandamus claim.

In their FAC, Plaintiffs had included a mandamus claim relating to the issuance of guidance under the Proclamation. The relief sought there was duplicative of the relief Plaintiffs sought under the APA. In their SAC, pursuant to the Court's permission, *see* February Order at 18, Plaintiffs amended the mandamus claim to account for the greater—and now unreasonable—length of time that has passed, and to seek a different form of relief. SAC ¶¶ 333-339. Plaintiffs also added a claim on behalf of a plaintiff whose family's visas had been approved prior to the effective date of the Proclamation but whose visas were subsequently *revoked* pursuant to the Proclamation. Those mandamus claims are now ripe, and are not duplicative of Plaintiffs' systematic claims under the APA and the Due Process Clause.[2]

District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

---

[2] Despite Defendants' inexplicable insistence on mischaracterizing Plaintiffs' claims, the SAC nowhere asks for a retraction of all visa denials; rather, it requests a full and fair consideration of waivers with an opportunity for individuals to demonstrate their eligibility for waivers, and timely adjudication of their applications. *See* SAC Prayer for Relief.

A court may grant mandamus relief if the plaintiff has a clear right to relief; the Defendant has a clear duty to act; and there is no other adequate remedy available to the plaintiff. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 295-96 (D.D.C. 2016). Here, Plaintiffs have a clear right to have their visa applications adjudicated within a reasonable time, and Defendants have a clear duty to fully and fairly adjudicate those applications within a reasonable time. *See* 5 U.S.C. § 555(b).

Most Plaintiffs in this action have been waiting for well over a year for their applications to be processed. *See, e.g.,* SAC ¶ 337. That delay is unreasonable. *See Singh v. Holder*, No. Civ. 13-4958-EMC, 2014 WL 117397, at *7 (N.D. Cal. Jan. 10, 2014) (upholding a mandamus claim where plaintiff's application was pending for six months after his interview); *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1998). As in *Singh*, consular officers have at their disposal all of Plaintiffs' documents, and have had them for well over six months. Defendants have failed to carry out their obligations under the law to adjudicate Plaintiffs' applications. Plaintiffs are entitled to a writ of mandamus directing Defendants to do so.

## II. <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED</u>

Defendants' motion for summary judgment is premature and fundamentally flawed. As an initial matter, in each iteration of their complaint, including the SAC, Plaintiffs have alleged that Defendants have failed to follow their own internal guidance. SAC ¶¶ 314-316. In response, Defendants submitted a version of that internal guidance without submitting *any* meaningful information about whether and how the guidance is being implemented, or whether it is systematically being followed. *See generally* Administrative R., ECF No. 98-1 ("AR"). The AR is thus largely unresponsive to Plaintiffs' *Accardi* claims and cannot form the basis for summary judgment in Defendants' favor.

Plaintiffs have also alleged that the guidance is arbitrary and capricious. SAC ¶ 312-313. In order to refute that claim, Defendants would have had to provide information on the reasoning and decision-making process that led to the adoption of the guidance. *See Judulang v. Holder,*

565 U.S. 42, 45 (2011). Rather than doing so, they have cherry-picked records for inclusion and have provided no information whatsoever on the decision-making process. As such, they have failed to provide this Court with the complete picture it needs to evaluate the questions presented. *See Portland Audubon Soc. v. Endangered Species Comm.,* 984 F.2d 1534, 1548 (9th Cir. 1993) ("An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'") And as set forth below, the guidance they did provide supports Plaintiffs' claim that it is arbitrary and capricious.

Thus, rather than justifying Defendants' request for summary judgment, the AR highlights the continuing existence of numerous disputes of fact, and ultimately helps support Plaintiffs' claims under the APA.

**A. Summary judgment is premature because defendants have failed to provide the complete administrative record.**

The AR forms the backbone of an APA suit, and the APA mandates that Defendants disclose the full AR to the court in order to allow it to make an informed ruling on an APA claim. *See* 5 U.S.C. § 706. *See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971). A complete administrative record critically includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor,* 885 F.2d 551, 555 (9th Cir. 1989). *See also People of State of Cal. ex rel. Lockyer v. United States Dep't of Agriculture,* Nos. Civ. 05-3508-EDL & 05-4038-EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (finding that a complete AR also included documents relied on by subordinates who made recommendations to decision-maker). While the AR is presumed to be complete, Plaintiffs can overcome this presumption by "identify[ing] the allegedly omitted materials with sufficient specificity and identify[ing] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *See San Francisco Bay Conservation & Dev. Comm'n v. United States Army Corps of Eng'rs,* No. Civ. 16-5420-JCS, 2018 WL 3846002, at *2 (N.D. Cal. Aug. 13, 2018) (internal quotations omitted). As set forth below, Plaintiffs have identified several

ways in which the AR is fundamentally incomplete and is therefore inadequate for a full review of the merits of Plaintiffs' APA claims. *See Nat. Res. Def. Council, Inc.*, 519 F.2d 287, 292 (D.C. Cir. 1975). *See also* ECF Nos. 90, 96 (letter briefs disputing the completeness of the AR); Ex. 2, Former Consular Officials' Decl.

      i.     The AR is incomplete because Defendants have improperly narrowed its scope.

     Defendants' AR is artificially narrow and improperly constrains this Court's review of Plaintiffs' APA claims. Defendants' own certification of the AR confirms this point. It states that the AR "consists of information on the relevant visa applications as of May 9, 2019, and internal guidance relating to visa adjudications under Presidential Proclamation 9645 provided to consular officers responsible for those applications." The certification does not reference materials provided by non-U.S. Department of State ("DOS") Defendant agencies. Nor does it address the heart of Plaintiffs' APA claim: whether Defendants have flouted their own guidelines in their implementation of the Proclamation's waiver provisions. *See J.L. v. Cissna*, No. Civ. 18-4914-NC, 2019 WL 2223803, at *3 (N.D. Cal. May 22, 2019) (holding that Defendants' certification was facially deficient because it failed to specify the correct agency action); *Inst. for Fisheries Res. v. Burwell*, No. Civ. 16-1574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (finding that the agency had relied "on an overly narrow understanding of the universe of materials that may need to be included in the administrative record"). The AR contains no information at all about the application of the guidance, including the manner in which consular officers consider supplemental information from applicants, when consular officers issue waivers, how they work with consular managers and the Visa Office, how processing can be expedited, and why the grant rates are so low. *See generally* AR, ECF No. 98-1. As such, the AR fundamentally fails to address Plaintiffs' claims and is insufficient to form the basis for summary judgment.

      ii.    The AR is incomplete because Defendants only provide documents from Defendant DOS.

     Although DOS, U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS") are

Defendants in this case, and each participated in the creation and issuance of guidance implementing the Proclamation's waiver provisions, the AR is made up exclusively of records from Defendant DOS. The Proclamation mandated that the Secretaries of State and Homeland Security "*shall* coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate," Presidential Proclamation 9645, 82 Fed. Reg. 45168 (Sept. 24, 2017), § 3(c) (emphasis added). The AR references this coordination,[3] but fails to include any materials from Defendant DHS, or from any Defendant other than DOS. It also fails to include any materials that these agencies considered, together or separately, in arriving at the guidance that was ultimately issued.

FOIA documents released to Plaintiffs' counsel confirm other Defendant agencies' material involvement in developing waiver guidance and processes, thereby illustrating the fundamental incompleteness of the AR. *See Sierra Club v. Zinke*, No. Civ. 17-7187-WHO, 2018 WL 3126401, at *4 (N.D. Cal. June 26, 2018) (plaintiffs may establish incompleteness of the record through materials received from FOIA). For example, in response to a January 23, 2018 FOIA request to Defendants DOS, DHS, CBP, and USCIS,[4] Plaintiffs' counsel received several documents relevant to Defendant DHS' implementation of the Proclamation, including its waivers provisions.[5] None of these documents were included in the AR. Through FOIA, Plaintiffs' counsel

---

[3]  For example, a September 24, 2017 State Department press guidance states "We are working closely with the Departments of Homeland Security and Justice to review the President's Proclamation to ensure that we implement it in accordance with its terms, in a clear and orderly fashion, and without compromising national security." AR-286.

[4] *See* FOIA Letter from Muslim Advocates and Center for Constitutional Rights to DHS, DOS, CBP, and USCIS Re: Waiver Process Under Presidential Proclamation 9645 (Jan. 23, 2018), https://www.law.columbia.edu/sites/default/files/microsites/gender-sexuality/Social_Justice_Advocacy/muslim_ban_foia_proclamation_waivers.pdf; *see also* Press Release, Muslim Advocates, *Attorneys Sue for Info on Hundreds of Muslim Ban Waiver Denials* (June 28, 2018), https://www.muslimadvocates.org/attorneys-sue-for-info-on-hundreds-of-muslim-ban-waiver-denials/.

[5] These documents include an email in which DHS officials discuss circulating Proclamation guidance to visa issuing posts (Ex. 3); an email sharing talking points for the Proclamation (Ex. 4), noting that questions regarding the Proclamation will "flow to DHS at Post"; and a DHS memorandum to the Secretary regarding the Proclamation (Ex. 5). The FOIA productions, which

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 14

also received a memorandum and a muster from CBP described as "Implementing Guidance for the Waiver Provision of Presidential Proclamation 9645." *See* Ex. 8. Although directly relevant to Plaintiffs' claims, Defendants also inexplicably failed to include these CBP materials in the AR. FOIA documents obtained from USCIS include a January 2018 email distributing screening questions for applicants pursuant to EO 13780, which strongly suggests that similar documents were created and distributed pursuant to the Proclamation. *See* Ex. 9. These documents establish that Defendants DHS, USCIS, and CBP have been involved with developing and implementing waiver guidance and processes. Nonetheless, the AR fails to include any materials from any Defendants other than DOS.

  iii. <u>The AR is incomplete because it fails to include multiple DOS documents concerning the implementation of the Proclamation.</u>

  As further indicia of incompleteness, even the documents produced for Defendant DOS fail to include relevant materials Plaintiffs' counsel obtained through FOIA. For example, in its November 21, 2018 FOIA production, Defendant DOS included an undated All Diplomatic and Consular Posts ("ALDAC") cable that provides guidance to visa-issuing posts for the implementation of the Proclamation, including how visa interviews should be handled and the waiver qualification process. *See* Ex. 10. Another FOIA document shows a mass email to consular officers that provided guidance on how they could seek approval for waivers under the

---

remain ongoing, to date have also included a DHS Implementation Plan for the EO 13780 (Ex. 6), "Response to Queries" and FAQ, answering questions such as whether EO 13780 was a means to ban Muslims from entering the country and how it was being implemented (Ex. 7); a document titled "New Baseline for Information Sharing to Support Visa and Immigration Vetting Determinations," explaining national security vetting (Ex. 7), strongly suggesting the existence of a DHS Implementation Plan for the Proclamation and other iterations of the foregoing documents tailored to the Proclamation. Likewise, a January 2018 Office of the Inspector General ("OIG") report discussing DHS' implementation of EO 13780 heavily references waivers, including CBP grants of waivers, indicating that DHS continues to be involved with developing policy around waivers for the Proclamation. *Available at* https://www.oig.dhs.gov/sites/default/files/assets/2018-01/OIG-18-37-Jan18.pdf. To the extent that the waiver implementation policy described in the OIG report changed between EO 13780 and the Proclamation, Plaintiffs have received no indicia or explanation from Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 15

Proclamation—highlighting their inability to approve such waivers on their own. *See* Ex. 11. These documents and materials are critical to Plaintiffs' claims, and should form the core of the AR in this case. Defendants inexplicably did not include either of these documents in the AR.

Defendant DOS, in response to the same FOIA request, also provided a Deloitte-created monthly report, dated January 2018, on the implementation of waiver procedures under the Proclamation. *See* Exs. 12 and 13. The January 2018 report shows outcomes for waiver applicants—information that is critical to whether Defendants are abiding by their own policies and whether they are applying the guidance in an arbitrary and capricious way. The report also notes that "visa systems at posts do not document whether the applicant failed to meet these requirements [undue hardship/national interest] in a standard way," emphasizing additional gaps in the program's implementation. Ex. 12 at 2. As the report observes, "[v]isa issuances for nationalities and non-immigrant visa (NIV) types covered by the Proclamation were down 96% from the same period 12 months ago even though applications were down only 2%." *Id.* at 8. This supports Plaintiffs' claim that the waiver process has been implemented in an arbitrary and capricious manner designed to result in almost-uniform denials. Defendants failed to include this and other State Department reports, copies of the Deloitte reports, or any other materials created by consultants for Defendant agencies that illustrate their implementation of the Proclamation and its waivers provision.[6]

While Defendants argue that the waiver process "offers the ability to expedite processing in appropriate [sic] cases," Defs.' Mot. to Dismiss or, Alternatively, for Summ. J. ("Defs.' MTD/MSJ") at 11, ECF No. 98, the AR is largely silent on this issue. However, documents received through FOIA mention subjecting a waiver application to expedited processing by "clearing partners", *see* Ex. 14, or to an expedited Security Advisory Opinion ("SAO"), *see* Ex.

---

[6] Even the March 2019 State Department report Defendants selected fails to support their contention that the waiver process is producing reasonable results. The report shows that the grant rate has actually *declined* from the last time this Court was considering a Motion to Dismiss by Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 16

15. These references are completely absent from the AR, which does not contain any materials that elucidate either of these important waiver-related procedures.[7]

Moreover, the DOS FOIA production includes several emails from consular officers requesting approval for waivers from the Visa Office. *See, e.g.,* Exs. 16, 17, 18. These documents highlight consular officers' complete lack of discretion in issuing waivers, by showing that they are required to seek permission from the Visa Office for each case. They also highlight the core role the Visa Office played and continues to play in the adjudication of waivers. Yet, the AR does not include any guidance or standards that the Visa Office uses in granting or denying consular officers' requests for waivers.

Additionally, emails from the DOS FOIA response show the absence of a clear process, and the *ad hoc* manner in which the waiver guidance was developed. In one FOIA email, a Visa Office official interprets the national interest prong as including a compelling governmental interest that could be fulfilled by a showing of "congressional interest." *See* Ex. 19. This interpretation does not appear anywhere in the AR. This email, and others like it that include information that consular officers rely upon in their waiver determinations, should be part of the AR even according to Defendants' own narrow certification.

Further, the AR fails to include materials like emails, memoranda, or notes that may have been directly or indirectly considered in Defendants' promulgation of the waivers process. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. Civ. 17-5211-WHA, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017) (ordering DHS to complete the AR by providing missing pieces such as "all emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision to rescind DACA."); *see also People*

---

[7] Although Defendants state that Plaintiffs did not challenge the national security prong of the Proclamation, that assertion is difficult to understand. Plaintiffs have challenged the entire process, without breaking out each prong, and have not exempted any portion of it from their allegations, but have included information pertinent to all aspects of the process. *See, e.g.,* SAC Ex. D, Gairson Decl.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 17

*of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. Civ. 05-3508-EDL & 05-4038-EDL, 2006 WL 708914, at *3 (N.D. Cal. Mar. 16, 2006) (ordering an agency to complete the AR by providing "correspondence between and among the parties involved, e-mail messages, agency meeting notices, draft analyses, assessments of alternatives."). From the face of the AR, it is obvious that Defendants provided no emails, memoranda, notes, or other such relevant material related to the development and implementation of the waiver process. Through FOIA, undersigned Plaintiffs' counsel has received and continues to receive emails in which drafts of guidance were exchanged and commented upon. *See, e.g.,* Ex. 20. Such material, crucial to determining how the waiver process was developed and how it is being implemented, is part of the AR. Its exclusion renders the AR fundamentally incomplete.

> iv. <u>The AR is incomplete because Defendants used improper exemptions to withhold critical information about the national security prong.</u>

Given that national security screening is a core component of the Proclamation's waiver process, an AR that provides *no* insight into that screening or its development and implementation cannot be considered complete. *See* Ex. 2, Former Consular Officers' Decl. Defendants assert that a "substantial portion" of the guidance provided to consular officers concerns this security vetting. Defs.' MTD/MSJ at 16. Yet almost all references to the national security process are redacted from the AR. *See generally* AR, ECF No. 98-1. In many instances, the same information that is redacted from the AR was included in FOIA productions to undersigned counsel, and provides essential high-level information about the SAO process in waiver adjudications. *See* Exs. 15, 21, 22. An understanding of this process, and whether it is circular or designed to result in almost-uniform denials, *see* SAC Ex. D, Gairson Decl., is essential to Plaintiffs' claims in this case.

In yet another example, Defendant DOS disclosed unredacted versions of Cable 17 STATE 97682 in two separate FOIA productions to Plaintiffs' counsel—its October 24, 2018 production, in which the document is marked "release in full", and its November 21, 2018 production, in which the document is marked "unclassified." *See* Exs. 22, 23. The same cable appears in redacted form in the AR. *See* AR-163-72. In the AR, information pertaining to visa processing for Somalia and

1   Iran is redacted pursuant to the law enforcement privilege ("LEP"). AR-165-66. But the FOIA

2   version shows that the information redacted by Defendants is far from the type of information that

3   would compromise law enforcement techniques. *See S.E.C. v. Gowrish*, No. Civ. 09-5883-SI,

4   2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) ("The purpose of the law enforcement privilege

5   is [*inter alia*] 'to prevent disclosure of law enforcement techniques and procedures.'"). Rather,

6   Defendants redacted that certain Iranian and Somali visa applicants would require the "submission

7   of a mandatory Donkey SAO", Ex. 22 at 3-5, and that during a prior phase of implementation,

8   certain Somali visa applicants did not require a mandatory Donkey SAO. *See id.* at 4-5. These are

9   not details of confidential law enforcement techniques in specific cases. Instead, these are

10  generally known security processing protocols that are being applied in a particular manner in the

11  context of waivers. *See, e.g.,* SAC Ex. D, Gairson Decl. The redacted statements do not provide

12  any details that could be used to circumvent the security protocol and, as such, the use of LEP in

13  this context is plainly inappropriate.

14      Likewise, in the October 24, 2018 DOS FOIA production, Plaintiffs received Advisory

15  Opinion 33378 ("AO 33378") in unredacted form. The same AO appears in the AR at 185-87.

16  There, one word is redacted pursuant to LEP. The FOIA version reveals the redacted word to be

17  "SAO." *See* Ex. 24 at 2. A simple reference to an "SAO" does not constitute the type of

18  information subject to LEP. The withheld information would help shed light on how Defendants

19  developed and implemented one of the three prongs of the waiver process, where many

20  applications fail or end up in interminable processing. *See* Ex. 2, Former Consular Officers' Decl.

21      Defendants have not justified their use of any exemptions or privileges to redact

22  information from the AR, providing no basis upon which this Court can assess whether those

23  redactions are justified, and as discussed, many of these redactions appear unwarranted. *See S.E.C.*,

24  2010 WL 1929498, at *2 (N.D. Cal. May 12, 2010) (rejecting government's assertion of the law

25  enforcement privilege, because it had not "presented a compelling justification" for the privilege's

26  application). As such, the AR they have provided remains fundamentally incomplete.

27

28  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
    FOR SUMMARY JUDGMENT
    CASE NO.: 3:18-CV-1587 - 19

1      In addition to these documents, the March 2019 State Department report Defendants

2  submitted, *see* ECF No. 95, discusses a March 6, 2017 interagency memorandum regarding

3  screening and vetting procedures and describes the creation of an automated process to "determine

4  whether any additional review is required to determine whether the applicant has satisfied the

5  national security and public safety waiver criterion." Neither this memorandum nor any

6  information about this screening process appear in the AR. Thus, Defendants have almost entirely

7  failed to disclose documents concerning the development and implementation of national security

8  standards pursuant to the Proclamation.

9      v.    <u>The AR is incomplete because Defendants failed to provide a privilege log.</u>

10     Compounding their overzealous redactions, Defendants have failed to provide a privilege

11  log to justify the withheld information. Courts in this district have regularly held that a privilege

12  log is required for materials redacted or withheld from the AR. *See, e.g., Regents of the Univ. of*

13  *Cal. v. U.S. Dep't of Homeland Sec.*, No. Civ. 17-5211-WHA, 2017 WL 4642324, at *4–5 (N.D.

14  Cal. Oct. 17, 2017); *Sierra Club v. Zinke*, No. Civ. 17-7187-WHO, 2018 WL 3126401, at *5 (N.D.

15  Cal. June 26, 2018); *San Francisco Bay Conservation & Dev. Comm'n v. United States Army*

16  *Corps of Eng'rs*, No. Civ. 16-5420-JCS, 2018 WL 3846002, at *7 (N.D. Cal. Aug. 13, 2018). A

17  privilege log provides one of the only means for verifying whether a purported privilege is properly

18  claimed for any given document. *See Sierra Club,* 2018 WL 3126401, at *5. As the court in *San*

19  *Francisco Bay* observed, "[a]llowing agencies discretion to determine which internal

20  communications to include or withhold, without explanation or even bare assertion of privilege,

21  'would invite all manner of mischief.'" 2018 WL 3846002, at *7 (quoting *Regents of the Univ. of*

22  *Cal. v. U.S. Dep't of Homeland Sec.*, No. Civ. 17-5211-WHA, 2018 WL 1210551, at *6 (N.D. Cal.

23  Mar. 8, 2018)). From the redacted documents included in the FOIA productions, it is apparent that

24  Defendants asserted privilege in the AR in an overbroad manner. Accordingly, a privilege log is

25  required to permit this Court to examine the justification for Defendants' withholding of critical

26  documents and to ensure the completeness of the AR.

27

28  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT
CASE NO.: 3:18-CV-01587 - 20

Because the record is incomplete, summary judgment is inappropriate at this stage. *See Nat. Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975); *Int'l Longshoremen's Ass'n, AFL-CIO v. Nat'l Mediation Bed.*, No. Civ. 04-824-RBW, 2005 WL 850358, at *4 (D.D.C. Mar. 30, 2005).

**B. Summary judgment is inappropriate because numerous disputes of material fact remain.**

Summary judgment is further inappropriate because there are multiple outstanding disputes of material fact. *See Chemehuevi Indian Tribe v. Jewell*, 767 F.3d 900, 903 (9th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). Those disputes include:

- Whether consular officials have the discretion and authority to grant waivers. *See* SAC Ex. B, Richardson Decl.; Ex. 1, Mahsa Khanbabai Decl.;

- Whether Plaintiffs who had their interviews prior to the Proclamation going into effect are being considered at all, or instead are systematically being denied visas and waivers. *See* Ex. 1, Mahsa Khanbabai Decl.;

- Whether the national security vetting is tailored appropriately, or whether it is designed to result in almost uniform denials. *See* SAC Ex. D, Gairson Decl.;

- Whether the guidance is being implemented with uniformity or whether it is being systematically disregarded. *See* Ex. 1, Mahsa Khababai Decl.; and

- Whether any kind of application process exists for waivers under the Proclamation. *See* Ex. 1, Mahsa Khanbabai Decl.

Further, the AR contains inaccurate information even in the barebones bullet points it provides for each individual Plaintiff. For example, the AR states that Plaintiff Hamami's application was denied because he failed to submit supplemental documentation, an assertion Defendants repeat in their brief. AR-355; Defs.' MTD/MSJ at 5. That is inaccurate. Mr. Hamami did provide all the requested documentation at his August 2018 interview, but was informed by a consular officer that although he was otherwise eligible for the visa category for which he was applying, the officer could not grant his application because of the Proclamation. Ex. 28, Rachel

1    Zoghlin Decl. Thus, even at the individual level, the information Defendants have provided in

2    the AR is subject to dispute.

3         In light of these ongoing disputes of material fact, summary judgment is unwarranted,

4    and further development of the factual record is required. *See Chemehuevi Indian Tribe v.*

5    *Jewell*, 767 F.3d 900, 903 (9th Cir. 2014).

6    **C. The AR confirms Plaintiffs' allegations and highlights the need for further
        factfinding.**

7

8         Although Defendants claim that this Court's review should be limited to the

9    fundamentally incomplete AR, Defendants themselves refer to materials that are not included

10   anywhere in the AR. *See* Defs.' MTD/MSJ at 22-23 (relying on State Department statistics), 20

11   (referring to information on the State Department website), 4 (referring to FOIA records).

12   Plaintiffs have submitted these same FOIA records along with declarations that support their

13   contention that the AR is incomplete. *See Sierra Club v. Zinke*, No. Civ. 17-7187-WHO, 2018

14   WL 3126401, at *4 (N.D. Cal. June 26, 2018) (plaintiffs may establish incompleteness of the

15   record through materials received from FOIA). These same materials, many of which are

16   contained in the FOIA reading room Defendants reference in their own motion, *see* Defs.'

17   MTD/MSJ at 4, also illustrate the ongoing need for further factfinding in this case and should be

18   considered in this context. Moreover, Plaintiffs' complaint includes class allegations and

19   constitutional claims, both of which support review of materials beyond the incomplete AR. *See*

20   SAC ¶¶ 303-310, 319-332; *see also Nw. Immigrant Rights Project v. USCIS,* 325 F.R.D. 671,

21   692 (W.D. Wash. 2016) (noting that information relating to class certification "is presumably

22   available through discovery" in APA action).

23        Even if consideration of summary judgment were appropriate at this stage—a contention

24   Plaintiffs dispute—the record does not support Defendants' position. Far from warranting

25   summary judgment in their favor, the evidence in this case confirms Plaintiffs' allegations.

26        i.    The record supports Plaintiffs' *Accardi* claims.

27        The record in this case illustrates at least the following violations of agency guidance:

28   PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
     FOR SUMMARY JUDGMENT
     CASE NO.: 3:18-CV-01587 - 22

- Although the guidance states that consular officials make decisions about waivers, AR-7, 9, 19, 157-59, consular officials are not empowered to make such decisions. *See* Exs. 16, 17, 18, FOIA emails requesting permission for waiver; SAC Ex. B, Richardson Decl.; Ex. 1, Mahsa Khanbabai Decl.; Ex. 2, Former Consular Officers' Decl.;

- Although the guidance states that applicants must demonstrate their eligibility for a waiver, AR-19, no orderly means or method by which applicants can do so has been provided. *See* Khanbabai Decl.; SAC Ex. D, Jay Gairson Decl.;

- Although the guidance states that consular officials must consider waiver eligibility for each applicant, AR-7-11, many applicants had their interviews prior to the Proclamation's effective date and have consequently not had any opportunity to demonstrate their waiver eligibility. *See* Mahsa Khanbabai Decl.; SAC Ex. D, Gairson Decl.

- Although the guidance provides that applicants may submit information relevant to their waiver eligibility at the interview, Defs.' MTD/MSJ at 20-21 (referencing DOS website guidance and 22 C.F.R. § 42.81(e)), consulates have refused to accept documents in support of waiver eligibility. *See* SAC Ex. H, Attorney correspondence with Abu Dhabi consulate; SAC Ex. D, Gairson Decl.

ii.    The record supports Plaintiffs' allegation that the guidance is arbitrary and capricious.

The record further supports Plaintiffs' contention that the guidance is arbitrary and capricious on its face. A policy does not pass muster under the APA merely because it exists and is consistently enforced. *See Judulang v. Holder*, 565 U.S. 42, 61, 45 (2011) ("Arbitrary agency action becomes no less so by simple dint of repetition.") (agencies are required to "provide a reasoned explanation for [their] action[s]."); *see also Motor Vehicles Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 49-50 (1983) (rejecting rescission of regulation where "agency submitted no reason[] at all" for decision to rescind). As discussed in section I.A.ii *supra*, the guidance includes numerous seemingly irrational or contradictory requirements, and unreasoned departures from commonly understood definitions of key terms. And while the guidance states that everyone receives the same consideration, waiver grants are almost unheard

of except in cases that garner media attention or congressional involvement or both. *See* Ex. 1,

Mahsa Khanbabai Decl. Even practitioners who work on a large volume of waiver cases remain

confused about the manner in which eligibility determinations are made. *Id.* For all these reasons,

the record supports the conclusion that the guidance is arbitrary and capricious.

Consequently, this Court should deny Defendants' Motion for Summary Judgment on

Plaintiffs' APA claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, Alternatively, for Summary

Judgment should be denied in full.

Dated: June 27, 2019                          Respectfully Submitted,
       Washington, D.C.

                         */s/ Sirine Shebaya*
                         SIRINE SHEBAYA (*pro hac vice*)
                         NIMRA AZMI (*pro hac vice*)*
                         JOSEPH SAEI (CA SBN 321341)*
                         MUSLIM ADVOCATES
                         P.O. Box 34440
                         Washington, D.C. 20043
                         Telephone: (202) 897-2622
                         Facsimile: (202) 508-1007
                         Email: sirine@muslimadvocates.org

                         SHABNAM LOTFI (*pro hac vice*)
                         VERONICA SUSTIC (*pro hac vice*)
                         LOTFI LEGAL, LLC
                         P.O. Box 64
                         Madison, WI 53701
                         Telephone: (608) 259-6226
                         Facsimile: (208) 977-9974

                         *Attorneys for Plaintiffs*

                         *\*Not admitted to practice in D.C.; practice limited*
                         *to federal courts and agencies.*