# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Farangis Emami, et al., Plaintiffs, v. Kirstjen Nielsen, et al., Defendants. | Case No. 3:18-cv-01587-JD |
| Pars Equality Center, et al., Plaintiffs, v. Mike Pompeo, et al., Defendants. | Case No. 3:18-cv-07818-JD  **DECLARATION OF FORMER CONSULAR OFFICERS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT** |

### DECLARATION OF FORMER CONSULAR OFFICERS

We, Sarah Gardiner, LEKISHA GUNN, and Christopher Richardson, hereby declare as follows:

1. We are former consular officers who worked for Defendant Department of State. We make this declaration based on our personal knowledge in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment in the above-captioned cases.

2. In our role as consular officers for Defendant Department of State, we completed consular tours of duty during our tenure with Defendant Department of State. In our role as consular officers, we were assigned to conduct visa interviews and issue visas.

3. We were employed at the following U.S. Embassies, for the following periods of time, in the following positions:

DECLARATION OF FORMER
CONSULAR OFFICERS                              1                    Case No. 3:18-cv-01587-JD

- Sarah Gardiner, U.S Embassy Madrid, Vice Consul, August 2016- October 2017
- Lekisha Gunn, U.S. Consulate General Monterrey, Vice Consul, April 2014 - March 2016
- Christopher Richardson, U.S. Consulate, Lagos, Nigeria (Vice Consul), 2011-2013, U.S. Embassy Managua, Nicaragua 2013 – 2015 (Consul), U.S. Consulate Karachi, Pakistan 2015 – 2016 (Consul), U.S. Embassy Madrid, Spain (Consul) 2016 – 2018.

4. The Proclamation requires applicants subject to its terms to demonstrate their qualification for waivers by showing that denial of entry to the United States would impose undue hardship upon the applicant, that the applicant's entry is in the national interest, and that the applicant's entry would not pose a threat to the national security of public safety of the United States.

5. The majority of *Emami* and *Pars* Plaintiffs have been informed that their case necessitated additional "administrative processing."

6. This administrative processing is a barrier for many applicants to determining where they meet the third, "national security risk" prong. Information released to the public by the Department of State regarding training and guidance issued to consular officers on the subject of determination of waiver eligibility for applicants subject to Proclamation 9645 suggests that the "administrative processing" component of the Proclamation 9645 waiver process may have been modeled after security-related vetting for other visa categories. The released guidance further stated that consular officers at the State Department may need to "consult" with other government offices, including offices in other government agencies, in order to determine if an applicant does/does not qualify for the third "national security risk" prong.

7. In our experience as consular officers, "administrative processing" on national security grounds for other visa categories which involved interaction and concurrence with other entities within the U.S. government was not "consultative" with consular officers. Rather, consular officers lose visibility into evaluations of an applicant's case when they submit requests for security review to offices in Washington. In our experience, following submission of an

application to offices in Washington for "administrative processing" on national security grounds by a consular official and after an indefinite and often extended period of time, a consular official receives a "yes/no" determination regarding an applicant's eligibility to receive a visa on national security grounds. Far from being a consultative process, consular officers have no knowledge as to which government offices reviewed the case and by what standards they judged the applicant. Moreover, in our experience, individual consular officers cannot request additional information or appeal a security determination that they believe to be improper. In these scenarios, consular officers essentially make a recommendation as to an applicant's eligibility for a waiver, with the final determination made by an opaque grouping of offices in Washington. Accordingly, we believe that consular officers have limited discretion in assessing the viability of the national security prong pursuant to Proclamation 9645. Because the assessment of the national security prong is removed from the consular officers, consular officers do not and cannot have sole discretion in issuing waivers pursuant to Proclamation 9645.

8. As established by the released guidance, the national security vetting process is critical to a determination of whether a waiver will be issued pursuant to the Proclamation. As such, the waiver process cannot be fully understood without a clearer understanding of this national security vetting process. Absent additional documents and insight into the determination of eligibility concerning the national security prong of the Proclamation, it is impossible to evaluate how objectively, fairly, or rigorously the waiver process is being applied.

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

DATED: June 26, 2019

*Sarah Gardiner /cro*

Sarah Gardiner

*[signature]*

Lekisha Gunn

DECLARATION OF FORMER
CONSULAR OFFICERS                              3                         Case No. 3:18-cv-01587-JD

Christopher Richardson