# Exhibit 7

# Fact Sheet

## Background

- Every year, the United States grants lawful permanent resident status to approximately 1.1 million individuals from all across the world.
- In FY 2016, the United States issued approximately 10.4 million nonimmigrant visas to individuals from all across the world.
- In FY 2016, U.S. Customs and Border Protection officers processed more than 390 million travelers at air, land, and sea ports of entry, including more than 119 million travelers at airports of entry.
- Over the last five years, international travel has grown 15 percent overall and 26 percent at airports. International travel at U.S. airports of entry increased 6 percent from FY2015. Over the next five years, international travel is projected to increase at an annual rate of 4 percent.

## National Security Baseline

- The Administration's top priority is ensuring the safety and security of the American people.
- The Administration remains focused on raising the baseline for national security standards.
- Section 2 of Executive Order 13780 requires the Administration to determine what minimum information is needed from each foreign country to adjudicate an application by a national of that country for an immigration benefit and determine that the individual is not a security or public safety threat.
- The previous screening/vetting status quo for border and immigration security must be improved for individuals from certain countries, if the United States is to adequately counter terrorism and transnational crime threats against its people.
- The new requirements reflect best practices derived from proven and effective security partnerships, such as the Visa Waiver Program, and from internationally-recognized law enforcement and national security initiatives, such as the adoption of ePassports to prevent fraud and counterfeiting.
- These include electronic passports, the sharing of criminal data, reporting lost/stolen passports, and providing data on known and suspected terrorists.
- Sharing of this information is particularly critical for those areas of the world where risk is higher, such as those countries with significant terrorist populations that may seek to conduct attacks in the U.S. and who repeatedly fail to take back their nationals subject to a final order of removal thereby taxing our immigration system.

## Robust Review and Engagement Process

- Section 2 of Executive Order 13780 consisted of multiple steps:
    - We conducted a worldwide review of information-sharing practices.
    - We analyzed the information collected in that review to establish a new information-sharing standard that protects U.S. national security.

- o We communicated the new standard globally. Where practicable, we worked with those countries we determined were not meeting it to enhance their information-sharing or formulate a plan to do so.
- o Following that robust engagement period, we made recommendations based on the results of that engagement to further national security.

- First, Section 2(b) of Executive Order 13780 directed the Secretary of Homeland Security, in consultation with the Secretary of State and Director of National Intelligence, to "conduct a worldwide review to identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the INA (adjudication) in order to determine that the individual is not a security or public-safety threat."
- After analyzing the information collected in that review, the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, submitted a report that established baseline requirements for 1) information sharing about identity management; 2) information sharing about national security and public safety; and 3) national security and public-safety risk factors. The information sharing requirements reflect a combination of long-standing U.S. government goals and standards established by international bodies, such as the United Nations (UN), the International Civil Aviation Organization (ICAO), and INTERPOL.
- As directed under Section 2(d), the Secretary of State then requested that all foreign governments initially assessed as not supplying adequate information to begin to do so, or provide an adequate plan to do so, within 50 days of notification.
- After the 50-day period, Section 2(e) of the Executive Order instructed the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, to submit to the President a list of countries that have not provided the information requested, have not provided an adequate plan to do so, and do not adequately share through other means. Following an assessment of those countries, and in consultation with interagency stakeholders, the DHS Secretary made her final recommendation to the President on foreign nationals who should be subject to travel restrictions or other lawful actions, due to deficiencies in identity management or information sharing, and/or other risk factors in place in those countries.
- The Department of State engaged with foreign governments in order to meet these new standards for information sharing. We have been working, where necessary, with willing foreign governments to design a plan to provide the information requested.
- The Administration will keep the public informed, if and when there is information to share, about changes affecting travelers to the United States who may be affected by these changes.

## Country-Specific Travel Restrictions:

- The United States maintained, modified, or eased restriction on 5 of 6 countries currently designated by Executive Order 13780. Those countries are Iran, Libya, Syria, Yemen, and Somalia.
- The United States lifted restrictions on 1 of 6 countries currently designated by Executive Order 13780: Sudan.

- The United States added restrictions and/or additional vetting on 3 additional countries found to not meet baseline requirements, but that were not included in Executive Order 13780. These countries are: Chad, North Korea, and Venezuela.
- The country specific restrictions are as follows:
    - Chad – Although it is an important partner, especially in the fight against terrorists, the government in Chad does not adequately share public-safety and terrorism-related information, and several terrorist groups are active within Chad or in the surrounding region, including elements of Boko Haram, ISIS-West Africa, and al-Qa'ida in the Islamic Maghreb. Accordingly, the entry into the United States of nationals of Chad, as immigrants, and as nonimmigrants on business (B-1), tourist (B-2), and business/tourist (B-1/B-2) visas, is suspended.
    - Iran – The government in Iran regularly fails to cooperate with the United States Government in identifying security risks; is the source of significant terrorist threats; is state sponsor of terrorism; and fails to receive its nationals subject to final orders of removal from the United States. Accordingly, the entry into the United States of nationals of Iran as immigrants and as nonimmigrants is suspended, except that entry by nationals of Iran under valid student (F and M) and exchange visitor (J) visas is not suspended, although such individuals will be subject to enhanced screening and vetting requirements.
    - Libya – Although it is an important partner, especially in the area of counterterrorism, the government in Libya faces significant challenges in sharing several types of information, including public-safety and terrorism-related information; has significant inadequacies in its identity-management protocols; has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States; and has a substantial terrorist presence within its territory. Accordingly, the entry into the United States of nationals of Libya, as immigrants, and as nonimmigrants on business (B-1), tourist (B-2), and business/tourist (B-1/B-2) visas, is suspended.
    - North Korea – The government in North Korea does not cooperate with the United States Government in any respect and fails to satisfy all information-sharing requirements. Accordingly, the entry into the United States of nationals of North Korea as immigrants and nonimmigrants is suspended.
    - Somalia – Although it satisfies minimum U.S. information-sharing requirements, the government in Somalia still has significant identity-management deficiencies; is recognized as a terrorist safe haven; remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States; and struggles to govern its territory and to limit terrorists' freedom of movement, access to resources, and capacity to operate. Accordingly, the entry into the United States of nationals of Somalia as immigrants is suspended, and nonimmigrants traveling to the United States will be subject to enhanced screening and vetting requirements.
    - Syria – The government in Syria regularly fails to cooperate with the U.S. Government in identifying security risks; is the source of significant terrorist threats; has been designated as a state sponsor of terrorism; has significant inadequacies in identity-management protocols; and fails to share public-safety and terrorism information. Accordingly, the entry into the United States of nationals of Syria as immigrants and nonimmigrants is suspended.

- - Venezuela – The government in Venezuela is uncooperative in verifying whether its citizens pose national security or public-safety threats; fails to share public-safety and terrorism-related information adequately; and has been assessed to be not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States. Accordingly, the entry into the United States of certain Venezuelan government officials and their immediate family members as nonimmigrants on business (B-1), tourist (B-2), and business/tourist (B-1/B-2) visas is suspended.
  - Yemen – Although it is an important partner, especially in the fight against terrorism, the government in Yemen faces significant identity-management challenges, which are amplified by the notable terrorist presence within its territory; fails to satisfy critical identity-management requirements; and does not share public-safety and terrorism-related information adequately. Accordingly, the entry into the United States of nationals of Yemen as immigrants, and as nonimmigrants on business (B-1), tourist (B-2), and business/tourist (B-1/B-2) visas, is suspended.
- The Secretary of Homeland Security also assesses Iraq as inadequate according to the baseline criteria, but has determined that entry restrictions and limitations under a Presidential proclamation are not warranted because of the close cooperative relationship between the United States and the democratically elected government of Iraq, the strong United States diplomatic presence in Iraq, the significant presence of United States forces in Iraq, and Iraq's commitment to combating the Islamic State of Iraq and Syria (ISIS).
  - The Secretary recommends, however, that nationals of Iraq who seek to enter the United States be subject to additional scrutiny to determine if they pose risks to the national security or public safety of the United States.

## New Baseline for Information Sharing to Support Visa and Immigration Vetting Determinations:

I. <u>Identity Management</u>: Establishing identity is a critical factor in effective immigration vetting. Under this standard, countries must improve passport integrity by:

   1. <u>Issuing secure passports</u>: International Civil Aviation Organization (ICAO)-compliant biometric passports (known as ePassports).
   2. <u>Reporting lost and stolen passport</u> information to Interpol in a timely, routine, and consistent basis.
   3. <u>Sharing additional information</u> upon request by the U.S. Government to validate an applicant's identity.

II. <u>National Security and Public Safety Information</u>: Effective admissibility decisions cannot be made without knowledge of a traveler's potential criminal or terrorist history. Countries must:

   1. <u>Identify serious criminals</u>: Provide data regarding whether nationals applying for a U.S. visa, admissions, or immigration benefit are serious criminals.
   2. <u>Provide data on known or suspected terrorists</u>: Proactively share biographic and biometric information about known and suspected terrorists (KST), including foreign fighters.
   3. <u>Provide national identity documentation</u>: Share exemplars of their passports and identity cards.
   4. <u>Partnership with travel industry</u>: Ensure that the airlines and vessel operators are not impeded from providing the USG with information about people traveling to the United States.

III. <u>National Security and Public-Safety Risk Assessment</u>: The criteria assessed in this category include:

   1. Whether the country is a known or potential terrorist safe haven.
   2. Whether the country is a participant in the Visa Waiver Program and whether it meets all of its requirements.
   3. Whether the country regularly fails to receive its nationals subject to final orders of removal from the United States.

# FAQs

**Q: What was the basis for the requirements?**
A. The Section 2(b) report submitted by the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, established baseline requirements for 1) identity management practices and 2) information sharing on national security and public safety threats. The requirements reflect a combination of long-standing U.S. Government goals, as well as standards established by international bodies such as the United Nations (UN), the International Civil Aviation Organization (ICAO), and INTERPOL. They incorporate best practices derived from proven and effective security partnerships, such as the Visa Waiver Program, and from internationally-recognized identity management practices, law enforcement practices, and national security initiatives, such as the adoption of ePassports to prevent fraud and counterfeiting.

**Q: What was the methodology for evaluating foreign governments against information sharing requirements?**
A: The U.S. Government review involved an evaluation of foreign government's information sharing practices against the requirements established in the Section 2(b) report. The evaluation was based on an analysis of current practices, as well as additional input gathered during the 50-day engagement period with foreign governments and USG personnel on the ground in these countries.

**Q: Why do the restrictions differ by country?**
A: Restrictions were tailored, as appropriate, given the unique conditions in and deficiencies of each country, as well as other country-specific considerations.

**Q. Which countries are designated? Why?**
A. Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia. While Somalia generally satisfies the minimum information-sharing requirements, its performance with respect to the baseline's other categories demonstrates that it presents special circumstances that warrant specific restrictions and security enhancements to protect the American people. Please see the Presidential proclamation for further details

**Q. Who does the new Proclamation apply to?**
A. Restrictions were tailored, as appropriate given the unique conditions in and deficiencies of each country. In general, the proclamation applies to nationals from the covered countries applying for a U.S. visa, effective immediately for nationals of countries subject to entry restrictions under Executive Order 13780 who lack a bona fide connection to a person or entity in the United States, and 21 days after issuance for all other individuals covered in the proclamation. Prospective visa applicants from the countries covered by the proclamation should review their intended visa category closely as, in some cases, the President limited travel restrictions to certain visa types.

Further, the suspension of entry pursuant to section 2 of the proclamation does not apply to:

(i)   any lawful permanent resident of the United States;(ii)   any foreign national who is admitted to or paroled into the United States on or after the effective date of this proclamation;

(iii)   any foreign national who has a document other than a visa, valid on the effective date of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission, such as an advance parole document;

(iv)   any dual national of a country designated under section 2 of this proclamation when the individual is traveling on a passport issued by a non-designated country;

(v)   any foreign national traveling on a diplomatic or diplomatic-type visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; or

(vi)   any foreign national who has been granted asylum; any refugee who has already been admitted to the United States; or any individual who has been granted withholding of removal, advance parole, or protection under the Convention Against Torture.

### Q. Will visas be revoked?
**A.** No.  The proclamation is expressly limited to individuals who do not have a valid visa on the effective date of the proclamation.

### Q. How can countries be removed from the travel suspension?
**A.** Under Executive Order 13780, the Secretary of Homeland Security may recommend to the President the removal of a country from the proclamation or an adjustment of the travel restrictions imposed on its nationals at any time.  As noted in the President's proclamation, restrictions should remain in place until such time as the Secretary of Homeland Security is satisfied, after consulting with the Secretary of State and the Attorney General, that the information necessary from that country to ensure the proper vetting and screening of its nationals has been made available and that doing so is in the security and welfare interests of the United States.  We intend to work closely with countries to ensure they meet the requirements.

### Q: Does the President have this authority?
**A.** Yes. The President has constitutional and statutory authority, including pursuant to Section 212(f) of the Immigration and Naturalization Act, which states:

(f) Suspension of entry or imposition of restrictions by President

Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate. Whenever the Attorney General

finds that a commercial airline has failed to comply with regulations of the Attorney General relating to requirements of airlines for the detection of fraudulent documents used by passengers traveling to the United States (including the training of personnel in such detection), the Attorney General may suspend the entry of some or all aliens transported to the United States by such airline.

### Q: When do the restrictions and limitations take effect?

**A.** The restrictions and limitations took effect at 3:30 p.m. eastern daylight time on September 24, 2017, for foreign nationals who were subject to the suspension of entry under section 2 of E.O. 13780, and who lack a credible claim of a bonda fide relationship with a person or entity of the United States. The restrictions and limitations take effect at 12:01 a.m. eastern daylight time on October 18, 2017, for all other foreign nationals subject to the suspension of entry under section 2 of E.O. 13780, and for nationals of Chad, North Korea, and Venezuela.

# Press Release

## President Donald J. Trump Announces Enhanced National Security Measures
*New security measures establish minimum requirements for international cooperation to support U.S. visa and immigration vetting*

WASHINGTON – Today, President Donald J. Trump announced the establishment of enhanced national security measures, aimed at creating—for the first time in history—minimum requirements for international cooperation to support visa and immigration vetting and adjudications for individuals seeking entry to the United States. This is a critical step toward establishing an immigration system that protects Americans' safety and security in an era of dangerous terrorism and transnational crime.

"Following an extensive review by the Department of Homeland Security, we are taking action today to protect the safety and security of the American People by establishing a minimum security baseline for entry into the United States." President Trump said. "We cannot afford to continue the failed policies of the past, which present an unacceptable danger to our country. My highest obligation is to ensure the safety and security of the American People, and in issuing this new travel order, I am fulfilling that sacred obligation."

The Department of Homeland Security, in cooperation with other executive departments and agencies, developed the new baseline requirements based on accepted international norms, best practices, and expert determinations regarding the minimum information the United States needs to validate traveler identities, prevent fraud, and ensure individuals do not represent a national security or public-safety threat.

All countries share responsibility to prevent terrorist attacks, transnational crime, and immigration fraud. In accordance with section 2 of Executive Order 13780, if foreign countries do not meet the United States Government's traveler vetting and information sharing requirements, their nationals may not be allowed to enter the United States or may face other travel restrictions, with certain exceptions.

Most countries in the world now meet the new baseline, which is an important element of ensuring our security. The United States Government shared the new requirements with foreign governments in July. They were warned that failure to comply would have consequences and were given 50 days to work with the United States to make improvements. In response, a number of nations that were not in compliance took action by, for example, increasing their information sharing with the United States regarding terrorism threats, enhancing travel document security, or improving their reporting of lost and stolen passports.

Some countries, however, are not yet in compliance with the new baseline, or have remained willfully non-compliant. Accordingly, the Secretary of Homeland Security has recommended, and the President has approved, tailored travel restrictions to keep our country safe and encourage countries to meet our baseline requirements. These restrictions will help prevent potential terrorists and criminals from reaching our shores. These visa restrictions will also put

pressure on foreign governments to live up to their obligations by enhancing security and sharing essential information with the United States.

Countries that do not adequately adhere to the new requirements include Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen. The President has also determined that while Iraq did not meet the baseline, entry restrictions are not warranted under the September 24 proclamation. The Secretary of Homeland Security recommends, however, that nationals of Iraq who are traveling to the United States be subject to additional scrutiny. Additionally, the President and the Secretary of Homeland Security determined that while Somalia generally satisfies the minimum information-sharing requirements, it presents special circumstances that warrant specific restrictions and security enhancements to protect the American people.

The restrictions being imposed on these eight countries are conditional and may be lifted as they work with the United States Government to ensure the safety of Americans. We look forward to all countries meeting the new requirements for cooperation with the United States as we continue to take steps necessary to protect our national security.

Additional information, including details on the phased implementation, can be found by reading the **Fact Sheet** and **FAQ**.