JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
GISELA A. WESTWATER
Assistant Director
DAVID KIM
P. ANGEL MARTINEZ
Trial Attorneys

Ben Franklin Station, P.O. Box 878
Washington, DC 20044
Telephone: (202) 598-8085 / (202) 532-4094
Email: Angel.Martinez2@usdoj.gov
        David.Kim4@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARANGIS EMAMI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN K. MCALEENAN, In His Official Capacity As Acting Director of the Department of Homeland Security, [1] et al., <br><br> Defendants. | Case No. 3:18-cv-01587-JD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. James Donato <br> Hearing: July 25, 2019, 10 a.m. <br> Place: San Francisco U.S. Courthouse, <br>         Courtroom 11, 19th Floor |

---

[1] Under Fed. R. Civ. P. 25(d), Acting Director Kevin K. McAleenan, in his official capacity, is substituted for his predecessor, Kirstjen M. Nielsen.

## **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A.    Plaintiffs' allegation that the waiver guidance is arbitrary and capricious does not state a claim for relief............................................................... 1

    B.    Plaintiffs' allegation that Defendants have breached their own guidance and adopted a "de facto policy of blanket [waiver] denials" does not state a claim for relief, and in the alternative, Defendants are entitled to summary judgment. ....................................................... 3

        1.    Defendants respectfully disagree with the characterization of Plaintiffs challenge as one under *Accardi*... ............................................ 3

        2.    Even if Plaintiffs' allegations are legally sufficient as an *Accardi* claim, Defendants are entitled to summary judgment on that claim.................................................................................. 5

            i.    The AR refutes each of the factual allegations that this Court previously held were sufficient to allow Plaintiffs' *Accardi* claim to survive the pleading stage. ....................................................................................... 5

            ii.    The AR conclusively rebuts each of Plaintiffs' arguments opposing summary judgment. ...................................... 6

            iii.    There are no remaining *genuine* disputes of material fact on Plaintiffs' *Accardi* claim. .................................................. 8

    C.    Plaintiffs have not stated a claim for relief for violation of the Constitution.................................................................................................. 11

    D.    Plaintiffs have not stated a claim for mandamus relief....................................... 13

III. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Alharbi v. Miller*,
   368 F. Supp. 3d 527 (E.D.N.Y. 2019) ................................................................. 6, 11

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................... 4

*Capistrano v. Dep't of State*,
   267 F. App'x 593 (9th Cir. 2008) ......................................................................... 14

*Carrasco-Escobar v. Lynch*,
   670 F. App'x 538 (9th Cir. 2016) ......................................................................... 11

*Chai v. Carroll*,
   48 F.3d 1331 (4th Cir. 1995) ................................................................................. 2

*Chun v. Powell*,
   223 F. Supp. 2d 204 (D.D.C. 2002) ................................................................ 14, 15

*De Mercado v. Mukasey*,
   566 F.3d 810 (9th Cir. 2009) ............................................................................... 11

*Dep't of Commerce v. New York*,
   588 U.S. ___, 2019 WL 2619473 (2019) ............................................................ 2, 3

*Gebhardt v. Nielsen*,
   879 F.3d 980 (9th Cir. 2018) ............................................................................... 11

*Kerry v. Din*,
   135 S. Ct. 2128 (2015) ........................................................................................ 11

*Lujan v. Nat'l Wildlife Fed'n.*,
   497 U.S. 871 (1990) ........................................................................................... 4, 5

*Luna-Mastache v. Holder*,
   469 F. App'x 546 (9th Cir. 2012) ......................................................................... 11

*Mendoza-Calvillo v. Holder*,
   521 F. App'x 579 (9th Cir. 2013) ......................................................................... 11

*Norton v. So. Utah Wilderness, All.*,
   542 U.S. 55 (2004) ................................................................................................ 4

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018) ............................................................................... 12

*Sianipar v. Holder*,
   584 F. App'x 353 (9th Cir. 2014) ......................................................................... 11

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ............................................................................ 11, 12, 13

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) .................................................................................................. 3

**STATUTES**

5 U.S.C. § 701(a)(1) ...................................................................................................... 2

5 U.S.C. § 701(a)(2) .................................................................................................. 2, 9

5 U.S.C. § 702 ............................................................................................................... 4

8 U.S.C. § 1153(f) ....................................................................................................... 14

8 U.S.C. § 1182(f) .................................................................................................. 2, 12

28 U.S.C. § 1361 ......................................................................................................... 13

**REGULATIONS**

22 C.F.R. § 41.105(a) ................................................................................................. 11

22 C.F.R. § 42.42 ........................................................................................................ 14

22 C.F.R. § 42.81(e) ................................................................................................... 14

## I. INTRODUCTION

In this unusual action, Plaintiffs' allegations have shifted over time, but their latest brief provides at least some clarity. They now concede that they do not challenge the denial of any given visa or waiver, which inherently includes the time it has taken to issue a waiver in any particular case. *See* Doc. 104 at 1. And they no longer allege that "no guidance has been issued at all," *id.* at 1-2—a concession they must make because they know that such allegation from their first Complaint is not true. *See, e.g.,* Doc. 34 ¶ 2.

Plaintiffs have now clarified that they have four claims: (1) the guidance issued by the State Department to implement the Proclamation is "arbitrary and capricious"; (2) the agencies "are not following their own guidance" in violation of *Accardi*; (3) the alleged lack of "a meaningful waiver process" has violated Plaintiffs' constitutional rights; and (4) mandamus is warranted because the waiver process is taking too long for certain Plaintiffs, and was improperly applied in one family's case. Doc. 104 at 1-2, 10-11; *see also* SAC ¶¶ 63-94, 311-339, Prayer for Relief.

As explained in Defendants' motion and below, none of these challenges states a claim on which relief can be granted. If the Court continues to be of the view that the *Accardi* claim survives the pleading stage, then Defendants are now entitled to summary judgment, because the Administrative Record demonstrates beyond dispute that the waiver process is not, as Plaintiffs allege, a "sham."

## II. ARGUMENT

### A. Plaintiffs' allegation that the waiver guidance is arbitrary and capricious does not state a claim for relief.

At the outset, this Court did not permit this claim to go forward the last time it considered Plaintiffs' complaint, c*ompare* Doc. 34 ¶¶ 318-19, 339 *with* Doc. 74 at 16. Indeed, such claim has multiple fatal defects as a matter of law, evident in the Court's decision allowing solely a challenge framed under *Accardi* to proceed. *See* Doc. 74 at 16. Because Plaintiffs rework this claim into their Opposition Brief, Defendants set forth its many fatal defects.

*First*, as Defendants have previously explained, the only source of law that governs the waiver process is the Proclamation, which created the process. *See* Doc. 42 at 7-9, Doc. 58 at 5-

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT                    3:18-cv-01587-JD
1

7. The President was not required by 8 U.S.C. § 1182(f) to create any waiver process. Having done so, however, the Proclamation alone determines how the guidance should operate, and the Proclamation explicitly states that it does not create privately enforceable rights. Proclamation, § 9(c). The APA is explicit that it does not apply "to the extent that … statutes preclude judicial review," 5 U.S.C. § 701(a)(1). Here, the waiver guidance is a creature of the Proclamation as opposed to a statute, and the Proclamation precludes judicial review by stating that it is not privately enforceable. 8 U.S.C. § 1182(f) permits the President to suspend entirely the entry of certain aliens to the United States. Upon the issuance of the Proclamation, therefore, Plaintiffs had no statutory rights to enforce. Nonetheless, the Proclamation then created the discretionary waiver process at issue here, but it expressly does not create any privately enforceable rights, as explained above. Plaintiffs cite no authority allowing an arbitrary and capricious claim in circumstances similar to those here: a statute gives the President authority to exclude individuals from a certain program (here, the visa program); the President's creates discretionary relief from that suspension; and somehow such discretionary relief allows an APA challenge.

*Second,* the APA does not apply to agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2); *see* Doc. 42 at 4-5, Doc. 58 at 3. That describes the waiver guidance, which implements the Proclamation's conferral of discretionary authority on the agencies to create a waiver process. The Proclamation does not supply any standard that would permit judicial review of whether the guidance adopted by the State Department is the best way to achieve the Proclamation's instruction that consular officers should determine who should receive a waiver, because the Proclamation left the question of how to implement that process up to the agencies.

*Third*, Courts have recognized that there is no private right of action to enforce obligations imposed on executive branch officials by executive orders. *E.g., Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995).

Even if this claim were legally possible, Plaintiffs have not stated a plausible claim for relief. The Supreme Court recently explained that the arbitrary and capricious standard is highly deferential. *Dep't of Commerce v. New York*, 588 U.S. ___, 2019 WL 2619473, at *10 (2019). The APA does not permit courts to substitute their own view of how an administrative program

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT                                                                                                    3:18-cv-01587-JD

should work. *Id.*; *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("[A]dministrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."). Plaintiffs cannot show that the State Department's guidance to consular officers about waivers is outside "the bounds of reasoned decisionmaking." *Dep't of Commerce*, 588 U.S. ___, 2019 WL 261947319, at *10 (internal quotation marks omitted).

Additionally, Plaintiffs repeatedly complain, both in their Opposition Brief and their letter brief, that the Administrative Record ("AR") does not respond to their claim that the waiver guidance is arbitrary and capricious. *See* Doc. 104 at 11-21, Doc. 90. But that is because the AR was never meant to respond to that claim, which is not valid under Rule 12(b)(6), as explained above. This Court did not allow Plaintiffs' arbitrary-and-capricious claim to go forward last time; instead the only theory that the Court found viable was Plaintiffs' challenge framed under *Accardi*. Doc. 74 at 16. The AR therefore addresses, and is fully responsive to, the Plaintiffs' challenge as this Court framed and allowed it. Therefore, Plaintiffs are fundamentally mistaken in their belief that they are entitled to an AR explaining how and why the State Department developed every aspect of the discretionary waiver guidance, and that mistake pervades Part II of their Opposition Brief. *See* Doc. 104 at 11-21.

**B. Plaintiffs' allegation that Defendants have breached their own guidance and adopted a "de facto policy of blanket [waiver] denials" does not state a claim for relief, and in the alternative, Defendants are entitled to summary judgment.**

**1. Defendants respectfully disagree with the characterization of Plaintiffs' challenge as one under *Accardi*.**

The government respectfully disagrees with the Court's earlier conclusion that *Accardi* applies to this case. *See* Doc. 74 at 13-16; Doc. 98 at 7-8. The flaw in such reasoning is that Plaintiffs have never identified any final agency action, which is required by the APA, in support of their contention that Defendants have adopted a "*de facto* policy of blanket denials." *See* Doc. 74 at 15. Plaintiffs cannot state an APA claim without identifying with specificity the final agency action that they challenge as a supposed breach of the State Department's existing

guidance. 5 U.S.C. §§ 702, 704; *see also Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 61-65 (2004); *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 890-93 (1990).

Contrary to Plaintiffs' suggestion, Doc. 104 at 3-4, the guidance documents cannot constitute the final agency action for a purported *Accardi* claim. Plaintiffs' characterization distorts the purpose and function of the State Department's internal guidance, which does not, as Plaintiffs allege, "administer" the Proclamation, but only explicates its broadly-worded provisions for the benefit of the agency personnel actually tasked with putting them into effect. Further, even if the Court were to find that this guidance—issued for the limited purpose of helping consular officers to apply the waiver criteria—were still somehow a "consummation" of administrative process, that guidance does not itself give rise to any "legal consequences"—only the individual consular decisions rendered pursuant to that guidance do. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Because such guidance serves only as a general reference for consular officers—whose role it remains to make individualized, fact-specific assessments of waiver claims—it is incapable of dictating any outcome in a particular case and, at most, simply informs the deliberative process that precedes the rendering of a final decision by the consular officer. In short, judicial review of Plaintiffs' nebulous challenge to the waiver process is improper, where they cannot show that the government's overall implementation of the Proclamation's waiver provisions is a final agency action. *See Lujan*, 497 U.S. at 890.

Furthermore, Plaintiffs' theory under *Accardi* is that, *after* issuing the guidance, the State Department then failed to comply with that guidance *when making some later decision*. But Plaintiffs fail to identify what agency decision they think violated the guidance. The only possible agency action that could qualify as a breach of the State Department's guidance would be consular officers' decisions to deny waivers in individual cases. But Plaintiffs have been clear that they do not challenge individual decisions, Doc. 104 at 1, nor could they, because of the doctrine of consular nonreviewability. *See* Doc. 42 at 5-7, Doc. 58 at 3-4, Doc. Indeed, rather than reject the applicability of the doctrine of consular nonreviewability as Plaintiffs mischaracterize, Doc. 104 at 4 n.1, this Court has already recognized that consular nonreviewability could be impermissibly infringed here. Doc. 74 at 18. Therefore, given their

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT                                                                                 3:18-cv-01587-JD

inability to challenge individual decisions as a final agency action, Plaintiffs' generalized challenge to the "implementation of the waiver program" is not a cognizable APA challenge.

### 2. Even if Plaintiffs' allegations are legally sufficient as an *Accardi* claim, Defendants are entitled to summary judgment on that claim.

Defendants are entitled to summary judgment on Plaintiffs' challenge, even if characterized as an *Accardi* claim, because the AR demonstrates beyond a doubt that a "de facto policy of blanket denials" Plaintiffs allege does not exist. *See* Doc. 74 at 15. The waiver process is genuine. More than 3000 waivers have been granted to visa applicants subject to the Proclamation, and thousands of additional applicants have preliminarily passed the first two criteria and are waiting on a national-security assessment. *See* State Dep't Report. A plaintiff has herself been issued a visa pursuant to a waiver. AR at 347-59 ¶ 12. Others are still under consideration and working their way through the process. *Id.* ¶¶ 4, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 22.

#### i. The AR refutes each of the factual allegations that this Court previously held were sufficient to allow Plaintiffs' *Accardi* claim to survive the pleading stage.

*First*, the records declaration shows that none of these Plaintiffs received "summary" denials of a waiver, even if their visa interviews took place "before the Proclamation went into effect." Doc. 74 at 15; *see* AR at 347-59. Each plaintiff was genuinely considered, and many are still in queue to be considered. AR at 347-59. The AR shows that none of the Plaintiffs were denied an "opportunity to submit" information relevant to a waiver, *see id.*; Doc. 74 at 15—many of them passed the first two prongs (the two for which information provided by the applicant would be relevant) and are simply waiting on a national-security assessment, as to which the consular officers receive information from national-security vetting partners. AR at 347-59; Doc. 98 at 15-17.

*Second*, the AR shows conclusively that Plaintiffs are wrong that "consular officers do not have discretion to grant waivers." Doc. 104 at 4; *see also id.* at 17 (arguing that emails from consular officers seeking recommendations about waivers or requesting affirmation of their decision to grant a waiver, produced pursuant to a FOIA request, reveal that consular officers do

not truly have discretion). But as Defendants have explained, the ultimate decision to grant or deny a waiver is always made by the consular officer. Doc. 98 at 17-20. Of course, the officer makes her decision after consulting with others, including supervisors and national-security vetting partners. *Id.* at 19-20; *see, e.g.,* AR 157. That is unsurprising: an individual consular officer does not have access to the full range of information about whether a given applicant might pose a national-security threat. She instead seeks the advice of other government entities who do possess that sort of information, and consulting with consular managers helps provide consistency in adjudication of waiver requests. The fact that consular officers are instructed to engage in consultation before making their decision does not at all show that the decision is not ultimately the consular officers' to make.

*Finally*, Defendants have already explained that the Declaration of former State Department employee Christopher Richardson, *see* Doc. 74 at 15-16, Doc. 98 at 18-19, is not reliable, and the court hearing the case where that declaration was presented (without ever being subject to adversarial testing) rejected those plaintiffs' claims and dismissed the case. *See Alharbi v. Miller*, 368 F. Supp. 3d 527 (E.D.N.Y. 2019).

Accordingly, in light of the AR showing full consideration of each Plaintiff's waiver eligibility, thousands of waivers granted worldwide, and thousands more under consideration (pending a national-security assessment), no reasonable factfinder could conclude, as Plaintiffs maintain, that "the waiver process is a sham." *See* Doc. 74 at 16; AR 347-59.

### ii. The AR conclusively rebuts each of Plaintiffs' arguments opposing summary judgment.

*First*, several of Plaintiffs' objections to the AR are based on their contention that the AR does not rebut their claim that "the guidance is arbitrary and capricious." Doc. at 11. As explained above, that claim fails as a matter of law, and the government is not required to produce an AR to respond to it.

*Second*, Plaintiffs also contend that the AR does not provide "meaningful information about whether and how the guidance is being implemented." *Id.* That is incorrect. The AR shows exactly how the guidance was applied in each of the named plaintiffs' cases, and it shows that the process was applied correctly. AR 347-59. There are no other relevant materials that bear on

that question, which alleges a "sham" process that does not exist, and which is therefore not amenable to a typical administrative record. The government cannot produce an administrative record for an agency decision—to systematically deny nearly all waivers—that does not exist in reality. The government has attempted, instead, to provide the information that is relevant to the claim as this Court framed it. *See* Doc. 74 at 13-16.

*Third*, Plaintiffs say, Doc. 104 at 13, that the AR does not address the application of the guidance, including how consular officers consider supplemental information from applicants, when consular officers issue waivers, how they work with consular managers, how processing can be expedited, and why the grant rate is low. But the AR explains many of those things, and others have been explained by the government's briefs. *See, e.g.,* Doc. 98 at 12-15 (internal guidance), 15-17 (national security vetting), 17-19 (consular officers' role and interaction with managers), 20-21 (application process, including submission of supplemental information); AR 051, 145. To take just one example, the grant rate is not low: 5% of those considered for waivers have received them, and more than 12,000 applicants have preliminarily passed the first two prongs and are waiting only on a national-security assessment. *See* State Dep't Report.

*Fourth*, Plaintiffs complain, Doc. 104 at 13-14, that the AR contains only materials from the Department of State. As the government has explained, that is because only the consular officers of the State Department adjudicate visas and waivers for visa applicants, and the State Department issued the applicable guidance, so it is the State Department's operations that are relevant under *Accardi*.

*Fifth*, Plaintiffs object, Doc. 104 at 15-16, that the AR does not include earlier versions of waiver guidance and a Deloitte report from January 2018, which was 18 months ago and less than two months after the waiver process started in December 2017. But the opening phase of setting up the waiver process is not relevant to Plaintiffs' *Accardi* claim that the government is not complying with its guidance currently in effect.

*Sixth*, Plaintiffs object, Doc. 104 at 16, that the AR does not discuss expedition of certain cases. As the government has explained, Doc. 98 at 11, the State Department, in its discretion, occasionally requests expedition of national-security vetting based on unusually pressing circumstances—for example, a spouse abroad about to give birth. *See Moody v. Pompeo*, No. 19-

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT                                                                                                          3:18-cv-01587-JD
7

1151, Order at 5 (D.D.C. May 13, 2019) (explaining availability of expedited processing when warranted); *see, e.g.,* AR 145. But expedition is not relevant to Plaintiffs' *Accardi* claim because it is discretionary.

*Seventh*, Plaintiffs complain of the absence of a privilege log, Doc. 104 at 20. As explained more fully in Defendants' June 10, 2019 letter to the Court, this is an exclusively record-review case and the Ninth Circuit has never held that privileged materials must be prepared for an administrative record; the majority rule is that such deliberative materials are not part of the record; and Plaintiffs have failed to sufficiently rebut the presumed completeness of the AR. Doc. 96 at 3.

*Finally*, Plaintiffs protest that the AR does not contain information regarding national-security vetting, Doc. 104 at 18-19. But that information is classified or otherwise intensely protected as a matter of national security, and Plaintiffs are not entitled to see that information. That is especially so given that Plaintiffs have never so much as alleged facts to support a claim that consular officers have failed to comply with the State Department's own guidance regarding national-security vetting. *See* Doc. 81-1. Moreover, much of the vetting is conducted not by the State Department but by national-security partners, and those agencies would not be subject to the State Department's guidance.

### iii. There are no remaining *genuine* disputes of material fact on Plaintiffs' *Accardi* claim.

*First*, there is no genuine dispute over whether consular officers have discretion to grant waivers. *See* Doc. 104 at 21, 23. Consular officers *have* this discretion. *E.g.,* Doc. 98 at 17-18. As explained above, Richardson's declaration in a different case—which the court there rejected—is not reliable because he had no experience adjudicating waiver claims. *E.g., id.* at 18-19. None of Plaintiffs' other declarants purports to have experience adjudicating waivers under the Proclamation. The fact that consular officers seek advice from supervisors to ensure consistent treatment across cases, and rely on national-security expert agencies to assess national-security concerns, is not surprising and does not conflict with the State Department's guidance. The guidance itself instructs consular officers to seek this consultation. *See, e.g.,* AR 19, 39, 68, 79-80, 99 131, 157-59, 169. Consequently, the fact that consular officers engage in

consultation cannot support an *Accardi* claim because it is consistent with the guidance. To the extent that Plaintiffs argue that, by asking consular officers to seek advice from consular managers and national-security experts, the guidance violates the Proclamation, that allegation fails to state a claim for relief, because the Proclamation does not confer privately enforceable rights, as explained above.

*Second*, there is no genuine dispute over whether any plaintiff received a systematic denial without any "opportunity to demonstrate their waiver eligibility." Doc. 104 at 23; *see also id.* at 21. One named Plaintiff was issued a visa pursuant to a waiver. AR 347-59 ¶ 12. Others have had their applications adjudicated and are moving through the process. AR 347-59. Several have passed the first two prongs and are waiting only on a national-security assessment. *Id.* ¶¶ 4, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 22. The records declaration conclusively rebuts any suggestion that any named Plaintiff was refused an opportunity to seek a waiver. While Plaintiffs also say, Doc. 104 at 23, that the waiver process is not "orderly," the APA provides no cause of action to challenge agency action on the ground that a plaintiff believes it should be better organized. In any case, the waiver process is in fact orderly, as the AR shows, even if the volume of applications makes it more time consuming than Plaintiffs would like. AR 347-59.

*Third*, there is no genuine dispute over whether "the national security vetting is tailored appropriately." Doc. 104 at 21. The national-security aspect of waiver consideration is not subject to any sort of "tailoring" requirement; the Proclamation instructed the agencies to use their discretion to determine the best way to assess whether any given applicant poses a threat to national security or public safety, and the agencies' judgments on that issue are committed to agency discretion by law and are not subject to judicial review. Proclamation, § 3(c)(ii); 5 U.S.C. § 701(a)(2). Also, the thousands of granted waivers conclusively rebut Plaintiffs' suggestion that national security vetting "result[s] in almost uniform denials." *Compare* Doc. 104 at 21 with State Dep't Report (reflecting approximately 3,000 visas issued pursuant to waivers and over 12,000 waiver requests undergoing security vetting after findings that national interest and undue hardship factors were met); *see also* Doc. 98 at 21-22.

*Fourth*, there is no genuine dispute over whether the guidance is being "systematically disregarded." Doc. 104 at 21. The records declaration describing the cases of all the named

Plaintiffs shows that the waiver process is proceeding just as it should, consistent with the guidance. AR 347-59.

*Fifth*, there is no genuine dispute over whether "any kind of application process exists for waivers." Doc. 104 at 21. The State Department has repeatedly explained, including in public and to Congress, that visa applicants are not required to complete any additional application for a waiver; they are instead considered automatically for a waiver when the Proclamation applies to their case, thereby reducing the burden on the applicant. *See* State Dep't Report,[2] State Dep't Website.[3] Plaintiffs have offered no basis to dispute this fact.

*Finally*, there is no genuine dispute over whether the State Department has breached its own guidance by consular officers "refus[ing] to accept documents in support waiver eligibility." Doc. 104 at 23. Instead, the guidance states that applicants should disclose information relevant to a waiver in their visa application, not through separate documents. State Dep't Website; A.R. 296, 299, 306, 309, 317, 319; *see also* Doc. 98 at 3-4. The State Department uses a uniform visa application form, which is designed to simplify the process for both applicants and consular officers, and the AR shows that the Proclamation does not affect the adjudication standards for visa applications. AR 15, 317. The burden remains on the applicant to establish his or her eligibility for a visa, which necessarily includes his or her eligibility for a waiver (since approval of a waiver results in the issuance of a visa). While an applicant may submit documents to a consular officer to demonstrate undue hardship, the State Department does not require every applicant to submit separate documents specifically related to hardship. Notably, not every applicant would necessarily be able to satisfy this additional requirement. This is consistent with waiver provisions in similar contexts. *See, e.g.,* Foreign Affairs Manual ("FAM") 305.4-3, available at https://fam.state.gov/fam/09FAM/09FAM030504.html. (providing guidance on nonimmigrant visa waivers). And it is also consistent with 22 C.F.R. § 41.105(a) and 42.65(a),

---

[2] *Available at* https://travel.state.gov/content/dam/visas/presidentialproclamation/Combined%20-%20Report%20on%20Implementation%20of%20PP%209645%20December%2007%202017%20to%20March%2031%202019.pdf.

[3] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information resources/presidentialproclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT                                                                                  3:18-cv-01587-JD

which, for nonimmigrant and immigrant visas, respectively, authorize consular officers to require documents that consular officials themselves deem necessary to establish eligibility. Accordingly, any allegation on an inability to submit additional documents specifically for waiver purposes is inappropriate for an *Accardi* claim in this context, because the guidance does not require consular officers to accept such documents. Accepting all additional documents is not necessary, for example, when, as in many instances here, a consular officer has already determined that an applicant satisfies the national interest and undue hardship prongs and is undergoing the national security assessment.

### C. Plaintiffs have not stated a claim for relief for violation of the Constitution

At the outset, Plaintiffs have abandoned their substantive due process claim, Doc. 1-4 at 6, and this Court has already held that the Plaintiffs have no constitutional right to have their non-citizen family members residing abroad receive a visa or a waiver. Doc. 74 at 16-17 (dismissing Plaintiffs' constitutional claim based on an alleged right to the "integrity of the family unit"). Numerous courts, many in the Ninth Circuit, have also rejected this purported constitutional right. *See Alharbi v. Miller*, -- F. Supp. 3d --, 2019 WL 1367758 (E.D.N.Y. Mar. 26, 2019) (dismissing Establishment Clause and Due Process challenges to waiver process); *see also Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018); *Carrasco-Escobar v. Lynch*, 670 F. App'x 538 (9th Cir. 2016); *Sianipar v. Holder*, 584 F. App'x 353, 354 (9th Cir. 2014); *Mendoza-Calvillo v. Holder*, 521 F. App'x 579 (9th Cir. 2013); *Luna-Mastache v. Holder*, 469 F. App'x 546, 547 (9th Cir. 2012); *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009).

Plaintiffs' arguments in support of their constitutional claims are flawed. *See* Doc. 104 at 5-10. *First*, Plaintiffs reliance on the concurrence in *Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015) (Kennedy, J., concurring), is misplaced. *See* Doc. 104 at 6, 8. A majority of the Supreme Court in *Hawaii* recently clarified the meaning of that opinion: even assuming that a constitutional right exists in these circumstances, it is satisfied by the denial of a visa and a statutory citation that provides the reason why the visa was denied. *Hawaii*, 138 S. Ct. at 2419. Here, each Plaintiff (except those who were granted a visa) indisputably received a written notice that included a citation to 8 U.S.C. § 1182(f) as the basis for the denial. *E.g.,* Doc. 104 at 8.

Therefore, Plaintiffs have each received all that the Constitution requires, per the Supreme Court's instruction. Plaintiffs fail to even address the Supreme Court's recent clarification of this constitutional claim in *Hawaii*. Instead, Plaintiffs focus on arguing that *Din* and *Kleindienst v. Mandel*, 408 U.S. 753 (1972), relied on "the existence of an orderly process." Doc. 104 at 8. But that is a distortion of how the Supreme Court recently characterized those holdings in *Hawaii*. Notwithstanding, the immigration provisions at issue in *Din* and *Mandel* were about individual adjudication decisions, whereas here § 1182(f) grants the President the power to suspend entry of certain aliens altogether.

*Second*, Plaintiffs do not have any "due process rights attach[ed] to the statutory rights granted by Congress to" visa applicants. *See* Doc. 104 at 7. Congress permitted the President to suspend entry of aliens under 8 U.S.C. § 1182(f), and the Supreme Court held that the President lawfully exercised that authority. *Hawaii*, 138 S. Ct. at 2407-2416. Federal law provides them no additional "rights" from which a procedural due process claim could conceivably flow.

*Third*, Plaintiffs do not have "reliance interests that were created by the expectation of a reasoned and orderly visa application process." Doc. 104 at 7. The Proclamation explicitly disclaims creating any privately enforceable rights that could give rise to a lawsuit based on reliance interests. Proclamation, § 9(c); *see also* Doc. 98 at 8-9. Further, this case is not like *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018*),* because it does not involve "mutually explicit understandings." Doc. 104 at 7. The Ninth Circuit in *Regents* reasoned that those plaintiffs had come forward and revealed their immigration status to the government, in exchange for certain promises. *Regents,* 908 F.3d at 514-16. But nothing comparable occurred here. No applicant was promised a waiver, or a decision on a waiver within any period of time.

*Fourth*, Plaintiffs' argument, Doc. 104 at 7, that the waiver process "is not supported by a legitimate government interest" cannot be reconciled with *Hawaii*, which upheld the Proclamation after finding it justified by more than one legitimate interest: protecting national security and encouraging foreign governments to provide additional needed information to the United States. *Hawaii*, 138 S. Ct. at 2408-2409. After *Hawaii*, Plaintiffs cannot plausibly contend that the State Department's waiver process has no rational basis.

*Finally*, Plaintiffs similarly do not have a plausible Equal Protection Claim because they cannot show that the Proclamation, and the accompanying waiver process, lacks any rational basis. The Supreme Court already determined that the Proclamation rests on more than one rational basis: protecting national security and advancing the government's foreign-policy objective of obtaining additional information from foreign governments. *Id.* Most of Plaintiffs' factual allegations on this point are rebutted by the AR evidencing their different positions in the waiver process. AR 347-59. Notwithstanding—whether Plaintiffs allege that almost-uniform waiver denials or that the "absence of a reasoned and meaningful waiver process," Doc. 104 at 9, are tantamount to illegal discrimination—the Supreme Court rejected almost all of the same allegations in *Hawaii*, 138 S. Ct. at 2417-18, 2421, and this Court similarly already rejected that line of fallacious arguments. Doc. 74 at 17.

### D. Plaintiffs have not stated a claim for mandamus relief.

Plaintiffs are not entitled to claim an "unreasonable" delay in issuing waivers. *See* Doc. 104 at 10. Plaintiffs have not shown "a duty owed to the plaintiff," as required for mandamus, 28 U.S.C. § 1361, because, as mentioned above, the Proclamation is the only source of law that governs the waiver process, it is not privately enforceable, it provides that waiver decisions are discretionary, and it does not guarantee a decision on a waiver within any set period of time. Therefore, mandamus relief is inappropriate. As the AR shows, while the first two waiver prongs can usually be resolved relatively quickly, the national-security vetting takes more time, and requires cooperation with multiple vetting partners. *See, e.g.,* AR 157; Doc. 98 at 15-17. There are more than 12,000 applicants waiting for a national-security assessment. State Dep't Report. The volume is the source of the delay. And Plaintiffs should not be permitted to bring a lawsuit that would allow them to unfairly skip to the front of the line.

In addition, Plaintiffs are not entitled to mandamus on behalf of a family member whose visa was supposedly unlawfully revoked. *See* Doc. 104 at 10. Such relief would conflict with consular nonreviewability (and with Plaintiffs' admission that they do not challenge decisions in individual cases). Indeed, consular nonreviewability applies even when there is an allegation that a consular officer made a mistake of law in adjudicating the application. *See Capistrano v. Dep't*

*of State*, 267 F. App'x 593, 594-95 (9th Cir. 2008); *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (citations omitted); *see also* Doc. 42 at 6-7. In any case, if Plaintiffs believe that a mistake was made, they are able to request reconsideration by presenting further evidence to the consular officer regarding eligibility for up to one year from the date of refusal. *See* 22 C.F.R. § 42.81(e).

Further, Plaintiffs' Opposition Brief refers to a plaintiff whose family's visas were allegedly issued prior to the effective date of the Proclamation but then subsequently revoked pursuant to it. *See* Doc. 104 at 10. This reference corresponds to Plaintiff Mr. Alarqaban and his wife and eleven derivative children. *See* SAC ¶¶ 147-156, 338. But the allegations are implausible, and the AR establishes the lack of wrongdoing on the part of the State Department. In the SAC, Plaintiffs allege that Ms. Ali and her derivatives were issued visas in February 2017, SAC ¶ 149. Nonetheless, the AR reflects that at that time, the immigrant visa petition on their behalf was pending with United States Citizenship and Immigration Service (USCIS) for review and possible revocation, following the consular officer's refusal of Ms. Ali's visa under § 1182(a)(10)(A) as an alien practicing polygamy. AR 350-51 ¶ 11. The State Department did not receive the reaffirmed petition from USCIS until April 2018. *Id.*. Under 8 U.S.C. § 1153(f) and 22 C.F.R. 42.42, having an approved petition is a condition precedent to being issued an immigrant visa. Therefore, Ms. Ali and the derivatives could not have legally been issued a visa, and if they were issued one while the petition was pending with USCIS, then that issuance would have been in clear legal error and the visa would have to be revoked. Indeed, while Plaintiffs allege that Ms. Ali and her derivatives' visas were "canceled and stamped 'revoked without prejudice,'" they do not plausibly allege, and the AR refutes, that any such revocation was improperly based on the Proclamation. *See* SAC ¶ 150; AR 150-51 ¶ 11. On the other hand, following the State Department's receipt of the immigrant visa petition from USCIS in April 2018, the consular officer followed the established process and guidance by refusing the applications under § 1182(f) under the Proclamation and made a preliminary determination that the personal hardship and national interest prongs were met. *Id.* These visa applications are part

of the approximately 12,000 undergoing national security vetting. *See* State Dep't Report. Far from a violation of the State Department's guidance, these applicants' processes are altogether clear evidence that the waiver process is established, orderly, and definitely not a "sham."

### III. CONCLUSION

For the foregoing reasons and those in Defendants' Motion, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice or grant summary judgment to Defendants.

Dated: July 5, 2019                     Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
United States Department of Justice, Civil Division

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

GISELA A. WESTWATER
Assistant Director

By: */s/ P. Angel Martinez*
P. ANGEL MARTINEZ
DAVID KIM
Trial Attorneys