JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
SAMUEL GO
Senior Litigation Counsel, Office of Immigration Litigation
District Court Section
NICOLE GRANT
P. ANGEL MARTINEZ
DAVID KIM
Trial Attorneys, Office of Immigration Litigation

    Ben Franklin Station, P.O. Box 878
    Washington, D.C. 20044
    Telephone: (202) 532-4094
    Email: david.kim4@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PARS EQUALITY CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MIKE POMPEO, *et al.*, <br><br> Defendants. <br><br> *and* <br><br> FARANGIS EMAMI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN NIELSEN, *et al.*, <br><br> Defendants. | CASE Nos. 18-cv-7818-JD <br>             18-cv-1587-JD <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY - 1
CASE NOS. 18-CV-7818 JD & 18-CV-1587-JD

Defendants submit this response to Plaintiffs' notice of a recent decision in *Mayor and City Council of Baltimore v. Donald J. Trump, et al.* ("*Baltimore*"), No. 18-cv-03636-SAG (D. Md. Sept. 20, 2019). At the heart of that case is an update to the Foreign Affairs Manual ("FAM") affecting how consular officers assess whether an applicant is ineligible for a visa under 8 U.S.C. § 1182(a)(4), based on a likelihood at any time to become a "public charge." Contrary to Plaintiffs' assertion, *Baltimore* does not implicate any of the legal issues under review by this Court. To the extent that any association can be drawn, it is only incidental, limited to the fact that each case broadly concerns decisions made by consular officers. Beyond that, none of the discrete findings in *Baltimore* have any bearing on this case, and the Court should discount Plaintiffs' notice of supplemental authority accordingly.

Plaintiffs contend that the decision in *Baltimore* is relevant for four reasons, but a proper reading confutes that claim. First, although the *Baltimore* court did rule that 5 U.S.C. § 701 does not bar review of the plaintiff's claims regarding the FAM update under the Administrative Procedure Act ("APA"), the conditions on which the court premised its ruling are altogether absent here. In *Baltimore*, the court found the plaintiffs' claims to be reviewable because (1) "the APA specifies procedures that agencies must follow when engaging in 'substantive' or 'legislative' rulemaking," and (2) "the [Immigration and Nationality Act] provides a meaningful standard against which to assess whether the FAM change is arbitrary and capricious." *Baltimore*, Dkt. No. 59, at 45. Neither ground exists in this case. As Defendants have explained, the Proclamation is not a legislative rule of any kind, and, unlike the FAM change in *Baltimore*, does not alter any existing administrative scheme. *See Pars Equality Center*, Dkt. No. 78, at 10. The Proclamation, instead, was created by the President as a foreign policy tool to remedy "ongoing deficiencies" in the vetting protocols of certain identified countries. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2399 (2018). Thus, the Proclamation—issued as it was solely pursuant to the President's authority to suspend entry of "any class" of aliens, 8 U.S.C. § 1182(f)—is not the product of any substantive or legislative rulemaking, nor was the President, in devising the Proclamation, subject to the APA's procedures. *Cf. Franklin v. Massachusetts*, 505 U.S. 788 (1992) ("[T]he final action complained of is that of the President, and the President *is not an agency* within the meaning of the Act. Accordingly, there is no final agency action that may be reviewed under the APA standards." (emphasis added)). Further, as

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY - 2
CASE NOS. 18-CV-7818 JD & 18-CV-1587-JD

Defendants explained in their motion for summary judgment, *see Pars Equality Center*, Dkt. No. 120, at 9, because the President, in exercising his broad mandate to govern entry into the United States, was the Proclamation's exclusive author, there is no "meaningful standard" against which the Proclamation—including the implementation of the waiver process—can be judged. *See Heckler v. Chaney*, 470 U.S. 821, 821 (1985). In short, where this case involves neither rulemaking nor any meaningful standards against which to judge the President's exercise of broad authority under 8 U.S.C. § 1182(f), it is incorrect that *Baltimore* supports a finding of reviewability in these actions.

Second, the *Baltimore* court's ruling on finality is also not pertinent to this case. As Defendants have consistently noted, Plaintiffs have failed to identify a discrete agency action to challenge. Instead, they surmise that the government's implementation of the waiver provisions is, in its entirety, a sham because the percentage of waiver grants seems to them too low—notwithstanding that the specific number of waivers granted is legally irrelevant to whether or not the waiver process as set out in the Proclamation exists, and that the cumulative number of visas issued pursuant to a waiver has risen steadily over time. *See Emami*, Dkt. No. 124. But even if Plaintiffs' complaint were viewed as a systematic challenge to the waiver process, it is unclear from their notice how *Baltimore* supports their claim of finality. If anything, that court's opinion only underscores the point that Defendants have been making from the outset of this case that "an agency action is final if it (1) marks the consummation of the agency's decisionmaking process and (2) is an action by which rights or obligations have been determined, or from which legal consequences will flow." *Baltimore*, Dkt. No. 59, at 50 (internal quotation marks and formatting omitted). Here, as part of their *Accardi* claim, Plaintiffs contend that the State Department's waiver guidance can be regarded as a final agency action. *See Emami*, Dkt. No. 104, at 3-4. Defendants, however, have explained that such guidance does not "complete" the Proclamation in any way, but simply serves to illustrate how the broadly worded waiver provisions may be applied, and that it is the individualized waiver *assessments* of consular officers that give the provisions actual effect. *See Emami*, Dkt. No. 107, at 4. Likewise, because the guidance functions strictly as a reference for consular officers—without adding to or otherwise altering the substance of the waiver criteria—it is incapable of dictating the outcome in any one case; that is to say, no legal consequences can actually flow from the guidance. *See id.*

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY - 3
CASE NOS. 18-CV-7818 JD & 18-CV-1587-JD

...
Third, with regard to notice-and-comment rulemaking procedures, it bears repeating that the Proclamation is not a rule—either substantive or procedural—and does not alter any existing regulatory scheme. Thus, 5 U.S.C. § 553 is inapplicable to the waiver provisions, which give rise to no occasion for notice-and-comment rulemaking. The decision in *Baltimore* does nothing to alter this conclusion: In that case, the court rejected the defendants' argument that they were exempt from the notice-and-comment process because the FAM is an interpretive—as opposed to a legislative—rule. *See Baltimore*, Dkt. No. 59, at 61-68. As the *Baltimore* court saw it, the FAM amendments were in fact legislative and thus warranted notice and comment. *See id.* at 66. Here, the distinction between legislative and interpretive rules, so crucial in *Baltimore*, is immaterial because the Proclamation is not a rule at all, but, as mentioned above, a foreign policy device designed to exert diplomatic pressure on certain countries "to improve their [vetting] practices." *Hawaii*, 138 S. Ct. at 2421. The upshot is that *Baltimore* lends no reason to find that notice-and-comment rulemaking procedures are required for the Proclamation or any related guidance.

Fourth and finally, the *Baltimore* court's ruling as to the plaintiffs' equal protection claim is of no consequence here, where this Court has already dismissed all of Plaintiffs' constitutional claims. *See Emami*, Dkt. No. 74, at 16-18. To the extent that the *Emami* plaintiffs might be trying to revive their equal protection claim, it still would suffer from the same "problems" identified by this Court in its dismissal order: namely, their inference of discriminatory intent "is not nearly as obvious as [they] suggest, and demands assumptions unsupported by non-conclusory allegations of fact"; the Supreme Court rejected the assumption that the Proclamation "illegally discriminates on the basis of nationality"; and the Supreme Court "has already concluded in reviewing the Proclamation that 'the Government has set forth a sufficient national security justification to survive rational basis review.'" *Id.* at 17-18 (quoting *Hawaii*, 138 S. Ct. at 2423).

* * *

Consequently, for all the foregoing reasons, Defendants respectfully request that the Court disregard Plaintiffs' suggestion that *Baltimore* has any bearing on this case, and analyze the issues irrespective of the noticed decision.

DATED: October 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

AUGUST F. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

SAMUEL GO
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section

DAVID KIM
P. ANGEL MARTINEZ
NICOLE GRANT
Trial Attorneys
Office of Immigration Litigation

/s/ *David Kim*

***Attorneys for Federal Defendants***

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY - 5
CASE NOS. 18-CV-7818 JD & 18-CV-1587-JD