December 2, 2019

The Honorable James Donato
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    *Emami v. Nielsen, et al.*, **3:18-cv-01587-JD**;
             *Pars Equality Center, et al. v. Pompeo*, *et al.*, **3:18-cv-07818-JD**

Dear Judge Donato:

      Pursuant to the Court's April 25, 2014 Standing Order for Discovery in Civil Cases ¶ 18, Plaintiffs respectfully submit this letter to compel Defendants to provide an Administrative Record that removes all redactions where Defendants have claimed a "law enforcement privilege" applies.

      On September 12, 2019, this Court ordered Defendants to provide Plaintiffs with a privilege log for the heavily redacted administrative record.  Over two months later, Defendants provided the log.  For every one of the twenty-three redacted documents, the log asserts a purported "law enforcement privilege" ("LEP") as the basis for redaction, with one redaction further denoted as deliberative process.

      Defendants initially declined Plaintiffs' request to provide legal authority for the privilege. One week after declining, Defendants offered Plaintiffs a single, unpublished, out-of-district case citation.  Plaintiffs submit that the LEP does not exist as the blanket privilege Defendants are asserting and that even if this Court were to recognize such a privilege, Defendants' privilege assertions are insufficient and should be disregarded. Plaintiffs request that this Court compel Defendants to provide unredacted versions of all documents partially withheld pursuant to the LEP.

      **I.**      **Background**

      This Court has permitted Plaintiffs to pursue discovery on claims that Defendants have violated the *Accardi* doctrine by implementing and applying Proclamation 9645's "waiver process" in a manner inconsistent with applicable rules and regulations.

      Previously, Defendants provided an Administrative Record ("AR") comprised of various Department of State cables, FAQs, and presentations, and sections of the Foreign Affairs Manual. Most of this AR is redacted, including parts that appear to describe waiver processing.

      On September 12, 2019, this Court ordered Plaintiffs to serve a privilege log containing "the basic information needed to be able to test defendants' claims of privilege." Order, ECF 141 3:28-4:1. Two months later, Defendants provided a log, but instead of providing that "basic information," the log perfunctorily asserts that all but one of Defendants' redactions are tied to the LEP.  One LEP-labeled redaction is also marked as deliberative-process privileged.

The Honorable James Donato
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
December 2, 2019
Page 2

On November 18, Plaintiffs emailed Defendants noting that the asserted "privilege" is actually a FOIA exemption, and requesting that Defendants provide precedent establishing the LEP's existence. Defendants declined, noting only that they take the "continued position that the law enforcement privilege applies here, and [that] their assertion of it is unchanged."

At Plaintiffs' request, the parties met and conferred by phone on November 25. On that call, Defendants cited a single, unpublished case from another district court in support of their use of the LEP here. That case noted that "the Ninth Circuit has only mentioned the law enforcement privilege in passing," and did not find the LEP applicable to that case's facts. *See BofI Federal Bank v. Ehrart*, No. 15cv2353 BAS (NLS), 2016 WL 4150983, at *2 (S.D. Cal. Aug. 5, 2016).

Seeking to avoid an impasse, Plaintiffs asked Defendants to agree to an "Attorneys' Eyes Only" protective order. Defendants refused. Plaintiffs then asked Defendants to join in a request for this Court to review the materials *in camera*; Defendants acknowledged this Court's authority to require that review in considering this motion to compel, but declined to join in the request.

## II. Defendants Erroneously Rely On an Unrecognized Privilege

Defendants appear to be relying on a FOIA exemption for "records of information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). That exemption does not provide a valid basis to withhold evidence in a civil litigation. FOIA exemptions were "not intended to create evidentiary privileges for civil discovery . . . . They were intended only to permit the withholding of certain types of information from the public generally." *Kerr v. U.S. Dist. Ct. for the N.D. Cal.*, 511 F.2d 192, 198-99 (9th Cir.), *aff'd* 426 U.S. 394 (1976). In fact, the "U.S. Supreme Court and the Ninth Circuit have yet to recognize or reject a 'law enforcement privilege.'" *Shah v. DOJ*, 714 F. App'x 657, 658-59 n.1 (9th Cir. 2017).

Plaintiffs submit that this Court should decline to recognize a "law enforcement" privilege.

## III. Defendants Do Not Properly Assert a Law Enforcement Privilege

If this Court concludes that an LEP may exist, Defendants' conclusory justifications for its application fall short. If the LEP exists, Defendants must meet three requirements: (1) there must be a formal claim of privilege by the head of the department having control over the information; (2) assertion of the privilege must be based on the official's personal consideration; and (3) the information for which the privilege is claimed must be specified, with an explanation why it falls within the scope of the privilege. *See Wagafe v. Trump*, No. C17-94, 2017 WL 5990134 (W.D. Wash. Oct. 19, 2017) (citing *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)).

Defendants have not complied with the first two requirements—the privilege logs were apparently prepared by counsel without a department head's review or personal consideration.

The Honorable James Donato
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
December 2, 2019
Page 3

Defendants also do not explain why their redactions would fall within the LEP's scope. Instead, they repeat the same boilerplate statement that each redaction "[c]ontains law-enforcement sensitive information regarding interagency screening and vetting and evaluation of visa eligibility which could risk circumvention of the proper application of the INA."

Such cursory explanations have been deemed insufficient by courts in this circuit. In *Wagafe*, the Government refused to provide the identities of prospective class members, "contend[ing], broadly, that releasing the identities of potential class members could lead individuals to potentially alter their behavior, conceal evidence of wrongdoing, or attempt to influence others in a way that could affect national security interests." 2017 WL 5990134 at *2. The district court rejected that explanation, holding that "[s]uch a vague, brief explanation that consists of mere speculation and a hypothetical result" did not suffice. *Id.*

The Government's assertion here fares no better, as their boilerplate description does not provide a basis for asserting privilege over any particular document. For example, it cannot be discerned whether the Government is attempting to shield the names of databases, the steps or actors in a vetting process, or the offices contacted for information. Confronted with this fact, Defendants declined to provide further clarification. This Court cannot be asked to resolve a privilege dispute without knowing what the privilege subject entails.

### IV. The Needs of Plaintiffs' Case-Specific Claims Outweigh Any Purported Harms

Even if the Court decides that Defendants' boilerplate language sufficiently asserts an LEP, Defendants cannot show that "public interest in nondisclosure" outweighs the "need of a particular litigant for access to the privileged information." *Wagafe*, 2017 WL 5990134 at *2 (citing *In re Sealed Case*, 856 F.2d at 272). The LEP is not an absolute privilege. *See, e.g., Ibrahim v. DHS*, No. C 06-00545 WHA, 2013 WL 1703367, at *4 (N.D. Cal. Apr. 19, 2013) (noting that the court must "weigh[] the competing interests" when determining whether the privilege applies).

Plaintiffs' clear need for the information outweighs any interest in nondisclosure. To date, the Court has permitted discovery only on Plaintiffs' *Accardi* claims, which are premised upon the Government's failure to follow its own regulations and rules in implementing the waivers process under the Muslim Ban. It is undisputed that the redacted materials comprise a substantial portion of these policies. Plaintiffs' *Accardi* claims require an ability to understand that guidance fully. It is improbable that the Government's cursory asserted interest of the public interest in withholding outweighs the "hallowed principle . . . that 'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.'" (ECF 141 2:24-27 (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotations omitted))). Even if the

The Honorable James Donato
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
December 2, 2019
Page 4


Government had sufficiently justified its exclusions, the balance requires disclosure. At minimum, the Court should review the documents *in camera* to test the adequacy of Defendants' assertions.

### V.  Minimal Protective Efforts From the Court Would Alleviate Defendants' Purported Concerns

In the interest of reaching a resolution, Plaintiffs offered to stipulate to a protective order to obtain the necessary discovery. Specifically, Plaintiffs proposed entering into an "Attorneys' Eyes Only" protective order.  Defendants rejected the offer without further explanation, stating simply that they had considered it and decided not to agree.  In the course of discussions, Defendants have neither proffered why that protective order is insufficient nor offered any alternative, lesser means of addressing this dispute.  Defendants' response to a motion to compel will not be the appropriate first time to attempt to justify their stance.

In light of the foregoing, Plaintiffs respectfully request that this Court order Defendants to provide unredacted versions of all documents that Defendants redacted under a purported LEP.

Respectfully submitted,

| | |
|---|---|
| /s/ *John A. Freedman* | /s/ *Eric B. Evans* |
| JOHN A. FREEDMAN (appearance *pro hac vice*) | ERIC B. EVANS (SBN 232476) |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **MAYER BROWN LLP** |
| 601 Massachusetts Ave., NW | 3000 El Camino Real |
| Washington, DC  20001-3743 | Two Palo Alto Square, Suite 3000 |
| Telephone:  (202) 942-5000 | Palo Alto, CA 94306 |
| Facsimile:   (202) 942-5999 | Telephone:  (650) 331-2063 |
| Email:          john.freedman@arnoldporter.com | Facsimile:   (650) 331-4563 |
| | Email:          eevans@mayerbrown.com |
| /s/ *Max S. Wolson* | *Counsel for Emami Plaintiffs* |
| MAX S. WOLSON (appearance *pro hac vice*) | |
| **NATIONAL IMMIGRATION LAW CENTER** | |
| P.O. BOX 34573 | |
| Washington, DC  20043 | |
| Telephone:  (202) 216-0261 | |
| Facsimile:   (202) 216-0266 | |
| Email:          wolson@nilc.org | |

*Counsel for Pars Plaintiffs*

## ATTESTATION OF CONCURRENCE IN THE FILING

Pursuant to Civil Local Rule 5-1(i)(3), I declare that concurrence has been obtained from all counsel to file this document with the Court.

/s/ *John A. Freedman*
JOHN A. FREEDMAN