## DECLARATION OF ELLEN COLLERAN

Pursuant to 28 U.S.C. § 1746, I, Ellen Colleran, declare and state as follows:

1.      I am employed by the U.S. Department of State (the "Department") as Chief of the International Division in the Office of Fraud Prevention Programs ("FPP") in the Department's Bureau of Consular Affairs.  In this role I am head of the International Division and I have served in that capacity since June 2019.  Additionally, I have served as a Foreign Service Officer with the Department since 2006.  In my time with the Department, I have worked at posts overseas, at Department headquarters, and within the Bureau of Consular Affairs.   I have personally adjudicated thousands of visa applications and managed consular officers as they adjudicated visa applications.

2.      The matters contained in this declaration are based upon my review of redactions made to the administrative record produced in the cases of *Farangis Emami, et al. v. McAleenan, et al.*, Case No: 18-cv-1587-JD, and *Pars Equality Center, et al. v. Pompeo, et al.*, Case No: 18-cv-7818, in the United States District Court of the Northern District of California, my personal knowledge, and information acquired in my official capacity in the performance of my official functions.  I submit this declaration as the formal assertion invoking the law enforcement privilege for the information redacted.

3.      For the reasons mentioned in the below paragraphs, public disclosure of the information withheld by these redactions would pose a risk to national security or public safety.  Because these documents apply to ongoing and future vetting and adjudication of visa applications, even disclosure under a protective order would not mitigate the risk of deliberate or inadvertent exposure because the withheld privileged information would be provided to third

parties outside of the federal government and affect the United States' ability to maintain secure and effective national security investigative processes.

4.    The mission of FPP is to deter fraud in consular services and to contribute to U.S. border security.  FPP works to identify, prevent, and disrupt passport, visa, and other types of immigration fraud.  Among others, FPP serves the following groups: fraud prevention personnel at overseas posts; consular officers overseas; consular managers; and border security officials. CA/FPP is also a liaison with the Department's Diplomatic Security and Bureau of International Narcotics and Law Enforcement Affairs, as well as the Department of Homeland Security and other federal agencies and interagency organizations concerned with security of the United States and preventing immigration fraud.  FPP works together with the Office of Visa Services in the Department's Bureau of Consular Affairs ("VO") to develop screening tools and procedures and to provide fraud detection training to consular officers.  FPP analyzes fraud trends and disseminates anti-fraud information and contributes to the design and development of secure U.S. travel documents.

5.    I have reviewed the redactions to the administrative record filed in connection with this litigation.  The redacted items include non-public portions of the Foreign Affairs Manual ("FAM") marked Sensitive but Unclassified ("SBU"), questions and answers ("Q & As") posted on an internal Department website available only to consular officials, unclassified cables directed to consular sections overseas, and other materials prepared for trainings of consular personnel.  I have determined that all of the redacted material constitutes non-public information that, if released, would undermine the ability of consular officers to apply and enforce immigration law, facilitate fraud, and pose harm to the national security and public safety of the United States.

6.      Section 212(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a), enumerates specific categories of aliens who "are ineligible to receive visas and ineligible to be admitted to the United States." In determining whether an applicant is eligible for a visa and may seek admission to the United States on the basis of that visa, the adjudicating consular officer must consider all of the grounds of ineligibility under Section 212(a) and other provisions of law, including INA Section 212(f). In order to carry out their obligations in adjudicating visa applications, consular officers interview most aliens applying for visas. The consular officers review representations about the applicants' health, criminal activity, financial status, employment, and associations to determine whether any provision of the INA would render the aliens ineligible for a U.S. visa. The consular officer also reviews all information available from additional sources including the panel physician, fraud investigations, interagency screening and vetting, the Department, other consular posts, and other sources that may possess information relevant to the alien's eligibility for a U.S. visa.

7.      The information redacted from the administrative record—in small portions of the non-public SBU portions of the FAM and in the Q & As, unclassified cables, and other training materials—describe techniques and procedures for the enforcement of the INA's bars to admissibility, most specifically INA section 212(a) and (f). This information is law enforcement sensitive because its disclosure could facilitate fraud and compromise national security. Specifically, public disclosure of the criteria for seeking interagency screening and vetting, or of groups of visa applicants about whom there may be derogatory information and therefore require screening and vetting or other consultation, would enable aliens who are intent on circumventing the law to conceal or misrepresent information that would trigger such additional review and that could uncover derogatory information related to their eligibility for a visa. In essence, it would

create a roadmap to evade processes and procedures consular officers use to properly apply the INA and conceal information that would otherwise lead to proper finding that the alien was ineligible for a U.S. visa, including for security-related concerns. Fraud on the part of such aliens would frustrate implementation of the INA by consular officers, a law that was enacted to bar the entry of certain aliens into the United States. Such evasion of the INA would create a national security vulnerability.

8.     The Department of State has previously determined that information regarding interagency screening and vetting and other law enforcement liaison activities required by INA section 105 cannot be disclosed as it might reveal sensitive internal law enforcement procedures and if disclosed will risk circumvention or evasion of the law. The statute specifically directs liaison between the Department of State and internal security officers of the U.S. Government with a view to "…a coordinated, uniform, and efficient administration of this Act [the INA], and all other immigration and nationality laws." Disclosure of the redacted information might reveal not only when and how consular officers seek such information in order to properly apply the INA but also might reveal sensitive internal law enforcement case handling. If such laws are evaded, the consular officer could issue a visa to an alien who was not only ineligible for a visa but who specifically sought a U. S. visa in order to harm the national security and public safety of the United States.

9.     Because interagency partners provide law enforcement sensitive information to consular officers for the purpose of determining whether a visa applicant poses a threat to national security and public safety or has any other ground of visa ineligibility, such information has long been held at a minimum to be sensitive but unclassified and often at a higher classification. Such information has been protected from any disclosure outside the U.S. government as long as I have

worked for the Department.  My understanding is that the protection of such information is long-standing across several administrations.

10.     Disclosure of information that the Department and consular officers obtain from law enforcement and intelligence agencies could impair consular officers' ability to share and receive necessary information to determine whether an alien is eligible for a U.S. visa because of potential impact to other agencies missions or operations.  Specifically, disclosure could harm the collaborative relationship between the Department, consular officers, and interagency partners, which could degrade consular officers' ability to obtain all information necessary to determine an alien's eligibility for a U.S. visa and thereby thwart proper application of the law.

11.     Based upon my professional experience, I have concluded that such fraud risk and risk to national security are a reasonable and justified concern should these documents be released.  My office assists consular officers in investigating and determining when an alien may be ineligible for a visa based on any provision of U.S. law.  Both in my work in my current office and as a consular officer, I have encountered aliens who have altered their representations about their memberships, affiliations, and activities after being denied a visa.  As visa records are confidential under INA section 222(f), I cannot provide specific details.  Because these documents apply to past, current, and future practices for vetting and investigating aliens for visa ineligibility grounds, any disclosure to third parties outside of the U.S. government would create an ongoing risk of fraud.  Specifically, disclosure would cripple a consular officer's ability to properly vet aliens on their visa eligibility, undermine the integrity of the immigration process, and thereby pose a threat to the national security and public safety of the United States.

12.     In sum, disclosing any criteria for requesting or processing a request for interagency vetting as set out in the nonpublic SBU portions of the FAM, and the other sensitive information

redacted from the Q & As, unclassified cables, and other training materials could reasonably be expected to disclose law enforcement sensitive information, techniques, and procedures, and could reasonably be expected to risk national security and circumvention of the law by visa applicants.

13.    Based on the reasons set forth above, I invoke the law enforcement privilege for the requested information which the Government seeks to keep withheld from disclosure.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 20 day of December, 2019, at Washington, D.C.

Ellen Colleran, Chief, International Division
Office of Fraud Prevention Programs
Bureau of Consular Affairs
U.S. Department of State