|  |  |
|---|---|
| 40-11-114.03, 40-82-103.03 | **U.S. Department of Justice**<br>Civil Division<br>Office of Immigration Litigation |

**VIA CM/ECF**                                                              April 21, 2019

Honorable James Donato
United States District Court for the Northern District of California

**Re:** *Emami v. Nielsen*, No. 18-cv-1587-JD, and *Pars Equality Center v. Pompeo*, No. 18-cv-7818-JD

Dear Judge Donato:

    We submit this response opposing Plaintiffs' March 16, 2020 letter request to compel additional questioning of Defendants' witness Joel Nantais. *See Emami*, ECF No. 147. We ask that the Court deny Plaintiffs' request to prolong discovery beyond the Proclamation's waiver process, where Mr. Nantais provided full and forthright testimony during the one-day deposition allowed by the Court regarding his declaration describing the State Department's statistical report on the implementation of Presidential Proclamation 9645. *See Emami*, ECF Nos. 122, 146. Indeed, we are surprised to see a few minor issues that arose at the deposition magnified into a motion practice in this Court and an effort to re-depose Mr. Nantais, particularly given that Plaintiffs ended their deposition several hours early.

    Defendants have met all their obligations to provide the limited discovery that was permitted by this Court. And Mr. Nantais's testimony conclusively demonstrates the legitimacy and accuracy of the detailed statistical report that was the subject of his declaration and deposition. That report backs up the administrative record in demonstrating that Plaintiffs' sole surviving claim in this case—their assertion that the entire waiver process is somehow a "sham" in violation of the *Accardi* doctrine—is not true. As a result, we respectfully request that the Court issue a briefing schedule for the parties to file motions for summary judgment (or, for Defendants, a supplement to the motion for summary judgment that Defendants filed on June 13, 2019). *See Emami*, ECF No. 98.

    **Mr. Nantais's Candid Deposition Testimony.** On February 19, 2020, Mr. Nantais appeared for a Rule 30(b)(6) deposition, which the Court specified should be directed to "the statements in his declaration, without limitation." *Emami*, ECF No. 146. As the Director for Domestic Operations within the State Department's Visa Office, Mr. Nantais had overseen the preparation of the report and, as evidenced by his declaration, could best speak to the precise steps taken by the office to organize reams of raw numerical data into relevant groupings for the congressionally mandated report. Indeed, it is because of his particular role and expertise that Defendants identified Mr. Nantais as the "person most knowledgeable about the report" and provided him for the deposition per the Court's order. *See Emami*, ECF agNo. 146, at 4.

    During the deposition, Mr. Nantais testified candidly about the report's methodology. Even in their opening letter, Plaintiffs raise no issue with the substance or tone of his responses to questions that concerned the report's accuracy or reliability. *See Emami*, ECF No. 147. For

instance, Mr. Nantais explained that, to generate the quarterly report, his office received three Excel spreadsheets from the Consular Systems Technology Office ("CA/CST") each month. Nantais Tr. (attached hereto as Ex. A) at 96-97; *Emami*, ECF No. 135-1, ¶ 34. The bottom line, as Mr. Nantais explained, is that the report reflects a straightforward aggregation of consular data collected around the world, and is not readily susceptible to the sort of manipulation or errors that would be required to support any theory that it overstates the actual number of waiver grants. *See* Nantais Tr. at 96-102. Other than a query about extra processing received by Somali visa applicants—which is covered in Mr. Nantais's declaration—Plaintiffs' counsel asked no other questions regarding the report's methodology. Nantais Tr. at 102-03; *Emami*, ECF No. 135-1, ¶ 39. Instead, acknowledging that the time was still "early," they proposed breaking for lunch. Nantais Tr. at 103. They also opted to conclude their questioning of Mr. Nantais at 2:32 p.m.—well before the expiration of the seven hours that they had been allotted to ask questions about the report. *Id.* at 180.

**Identities of Low-Level State Department Employees.** Despite Defendants' good-faith compliance with the Court's order to provide the "person most knowledgeable about the report"—namely, Mr. Nantais—and though Plaintiffs had ample opportunity to inquire into the report's methodology at the one-day deposition, Plaintiffs have aggrandized a trivial dispute during the deposition over whether Mr. Nantais would name subordinate officials who may have assisted in preparing his declaration for submission. *See Emami*, ECF No. 122, at 4; Nantais Tr. at 36-46. Plaintiffs argue that they are entitled to the identities of such employees even though Mr. Nantais identified all the offices that had participated in the normal clearance process for his declaration. Nantais Tr. at 43, 48-50, 52-53. As he explained, "the process of drafting pretty much any document at the Department of State" involves "clearing [the] paper through relevant offices" to ensure the accuracy and utility of the reported information, and those offices are staffed by civil service employees. *Id.* at 42-43. Thus, to the extent that his declaration did benefit from a review process to confirm that his information was accurate in all respects, that serves only to *enhance* its reliability.

In any case, the identities of low-level State Department employees were lines of inquiry inconsistent with the "targeted" discovery allowed by the Court or the function of this Rule 30(b)(6) deposition, in which Mr. Nantais was the official charged with explaining the compilation of the report, *on behalf of* the Department. Indeed, his designation as such was apt, where he possessed "personal knowledge" of the subject based on his "work and experience at the Department of State," as well as his "role in overseeing Domestic Operations and the promulgation of the congressional reports." *Id.* at 45-46. Indeed, as the transcript shows, Mr. Nantais attested that he took "responsibility for all the information" in his declaration, had "reviewed the declaration before [he] signed it," and was "aware of all the information it contains and the accuracy and veracity of that information." *Id.* at 42-43.

Plaintiffs do not explain what aspects of Mr. Nantais's declaration or the congressional report—the sole concern of the deposition—demands further probing into the identities of low-level State Department employees. They claim to want to pursue "critical questioning on the extent of Mr. Nantais's knowledge of information in his declaration and the process by which State Department reports are created," but that was the rationale for the deposition, not a request to probe additional State Department personnel. *Id.* at 8-180. To reiterate, Defendants provided

Mr. Nantais for "a 1-day deposition" as the "person most knowledgeable about the report," and he in turn testified openly about how the report was compiled—a fact Plaintiffs do not dispute.[1] *See Emami*, ECF No. 122, at 4.

The government's objections at the deposition were driven primarily by personal privacy concerns in identifying low-level State Department employees without consultation or careful consideration of those personal interests. And Plaintiffs have not provided any reason in their letter to weigh those interests, where they have shown no need to reveal the identities of ancillary agency personnel in a Rule 30(b)(6) setting. If anything, allowing Plaintiffs to delve gratuitously into the identities of rank-and-file officials merely because Mr. Nantais's declaration underwent a standard clearance process would tend to "discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions"—the type of concerns protected by the deliberative process privilege. *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992) (internal quotation marks omitted). In short, where Plaintiffs were unimpeded in asking any question they wished to ask on the report's methodology—which Mr. Nantais then answered in full—they are unable to demonstrate any need for the identities of other agency personnel, or to show that they were prejudiced by not receiving that information.

**Alleged "Coaching."**  Opposing counsel's allegation that Defendants' counsel somehow "coached" Mr. Nantais in his testimony about the report is similarly false and refuted by the transcript. They cite only two places in the 218-page transcript of a multi-hour deposition to allege prevalent "coaching." *Emami*, ECF No. 147 (citing Nantais Tr. at 39-41, 84-91). The first example (pp. 39-41) involves the decision to invoke a privilege as to the identities of low-level State Department personnel, so it has no connection to the assertion that there was coaching—instead, it was a break "for the sole purpose of determining whether a privilege should be asserted." *See* Court's Standing Order for Discovery in Civil Cases Before Judge Donato, ¶ 13. The second example (pp. 84-91) also did not involve coaching. That break was requested because of a long and disarrayed line of questioning on changes in "reports"—an imprecise term that conflated different types of reports.[2] *Id.* at 79-88. We alerted opposing counsel that their questions were confusing and needed to be tailored to the quarterly report. *Id.* at 85. Ultimately, Mr. Nantais was able to dispel any confusion by explaining that the number of waiver grants, being a cumulative figure, would increase with each successive iteration of the quarterly report. *Id.* at 88-89. Mr. Nantais also explained precisely what transpired during the short break. *Id.* at 92-94. Thus, contrary to opposing counsel's reckless assertion of "coaching," the transcript reflects that we made a good-faith effort to ensure the deposition proceeded efficiently and without waste, while Mr. Nantais rendered testimony that was clear, independent, and objective. Further, throughout the deposition, we were mindful—and sought to remind opposing counsel—of the Court's order circumscribing the deposition to the report's methodology, in addition to the limits that it otherwise imposed on discovery. *See Emami*, ECF No. 122.

---

[1] Indeed, opposing counsel conceded during the deposition that he had deposed "hostile witnesses," and that Mr. Nantais was "not one." Nantais Tr. at 92-93.

[2] At one point in the exchange, opposing counsel asked about changes in the rates of waiver grants or refusals "[w]ith regard to reports . . . prepared by [Mr. Nantais's] office in response to requests from other offices within the Department of State or perhaps other agencies regarding the implementation of Presidential Proclamation 9645." Nantais Tr. at 87-88.

In light of the foregoing, the government respectfully asks that the Court deny Plaintiffs' request to compel further questioning of Mr. Nantais. As the transcript shows, Plaintiffs exhausted all their questions about the report's methodology at the one-day deposition, and Mr. Nantais answered all those questions with consummate honesty, evenhandedness, and professionalism. There are now no outstanding issues under this Court's discovery order. Mr. Nantais's declaration and deposition testimony meticulously laid out how the report is produced, and the evidence resolves any questions about the accuracy of the State Department's statistics, which show that the waiver process is being regularly implemented, with more waivers granted every month. The "targeted" discovery that the Court permitted is thus concluded, and Defendants respectfully urge the Court to permit resolution of summary judgment.

Sincerely,

AUGUST E. FLENTJE
Special Counsel

SAMUEL GO
Senior Litigation Counsel

*s/ David Kim*
DAVID KIM
P. ANGEL MARTINEZ
NICOLE GRANT
Trial Attorneys
U.S. Department of Justice