United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARANGIS EMAMI, et al., | Case No. 18-cv-01587-JD |
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT** |
| KIRSTJEN NIELSEN, et al., | Re: Dkt. No. 98 |
| Defendants. | |

| | |
|---|---|
| PARS EQUALITY CENTER, et al., | Case No. 18-cv-07818-JD |
| Plaintiffs, | |
| v. | Re: Dkt. No. 120 |
| MIKE POMPEO, et al., | |
| Defendants. | |

These related cases concern Presidential Proclamation 9645, "Enhancing Vetting

Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or

Other Public-Safety Threats." 82 Fed. Reg. 45161 (2017) (the "Proclamation"). The

Proclamation sharply curtailed, and in some cases completely suspended, entry into the United

States by nationals of Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen and Somalia. *Id*.

at 45162, 45165-67.[1] Plaintiffs focus on nationals of Iran, Libya, Somalia, Syria and Yemen, and

challenge the government's handling of a waiver program that would allow exceptions for entry

into the United States in certain circumstances. The gravamen of the complaints is that the

---

[1] The restrictions on nationals of Chad have been lifted. Presidential Proclamation No. 9723, 83 Fed. Reg. 15937 (Apr. 10, 2018).

United States District Court
Northern District of California

1    government created guidance for waivers which it has systematically ignored to deny the vast

2    majority of waiver applications.

3          The Court granted in part and denied in part a motion to dismiss in the *Emami* case with

4    leave to amend, finding that plaintiffs had plausibly stated a claim under the *Accardi* doctrine.

5    Dkt. No. 74 (*Emami*) at 16.  The heart of this claim was that "the State Department has acted

6    arbitrarily and unlawfully by disregarding its own procedures and rules in administering the

7    waiver program" established by the Proclamation.  *Id*. at 14.  The *Emami* plaintiffs filed a second

8    amended complaint.  Dkt. No. 75 (*Emami*).  As the *Emami* motion to dismiss proceedings were

9    under way, the *Pars* case was transferred here from the Western District of Washington.  Dkt. No.

10   80 (*Pars*).  The operative complaint in that case remains the initial complaint.  Dkt. No. 1 (*Pars*).

11   Defendants have filed motions to dismiss, or to obtain summary judgment for, the second

12   amended complaint in *Emami* and the complaint in *Pars*.  Dkt. No. 98 (*Emami*); Dkt. No. 120

13   (*Pars*).  This order resolves those motions.

**DISCUSSION**

15         The parties' familiarity with the record is assumed.  The prior dismissal order provides a

16   detailed statement of the case and plaintiffs' claims, and the governing standards for a motion to

17   dismiss.  Dkt. No. 74 (*Emami*).

18   **I.    MOTIONS TO DISMISS**

19         **A.    *Pars* Complaint**

20         The Court has not been called upon to review the plausibility of the *Pars* complaint until

21   now.  The analysis of the *Emami* complaint in the dismissal order applies in full measure here, and

22   streamlines the discussion.

23              **1.    Justiciability**

24         The Court squarely answered the government's justiciability objection in *Emami*.

25   Dismissal for lack of a justiciable controversy was denied because the *Emami* plaintiffs are not

26   suing over "individual consular officer decisions on the merits . . . [or] the outcome of any

27   particular consular officer's decision in a given case."  Dkt. No. 74 (*Emami*) at 11-12.  They are

28   "challenging systemic practices with respect to the waiver program, and not individualized

2

1    determinations for any specific person." *Id*. at 12. So too in the *Pars* complaint. *See* Dkt. No. 1

2    (*Pars*); Dkt. No. 125 (*Pars*) at 6 ("Plaintiffs do not seek review of any individual, discretionary

3    decision by a consular officer," rather, "they seek review of the policies and practices that

4    Defendants have adopted to implement the Proclamation"). This is a justiciable controversy

5    properly before the Court.

6                            **2.    APA Claim**

7            Defendants' request to dismiss the APA claim in *Pars* is denied. Defendants say that the

8    APA does not apply at all. Dkt. No. 120 (*Pars*) at 9-10. But as the Court has already determined,

9    the Administrative Procedure Act "creates a 'basic presumption of judicial review for one

10   suffering legal wrong because of agency action,'" and our circuit has construed the APA "to

11   provide for 'broad judicial review of agency action.'" Dkt. No. 74 (*Emami*) at 13 (quoting

12   *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S.Ct. 361, 370 (2018), and *Regents of the*

13   *Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 494 (9th Cir. 2018)). Agency action

14   is not immunized from review just because it might be linked to a Presidential Proclamation. *See*

15   *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018) ("insofar as DOJ and

16   DHS have incorporated the Proclamation by reference into the Rule, we may consider the validity

17   of the agency's proposed action, including its 'rule . . . or the equivalent'"); *Chamber of*

18   *Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) ("agency regulations that

19   implement an executive order are reviewable under the APA").

20           The *Pars* complaint is based on a final agency action properly subject to judicial review.

21   Defendants say that plaintiffs have "fail[ed] . . . to direct their complaint against any 'final agency

22   action,'" Dkt. No. 128 (*Pars*) at 2-3, but that is not a fair characterization of plaintiffs' complaint.

23   The *Pars* plaintiffs have identified, and are challenging, a final agency action consisting of "the

24   'worldwide guidance' referenced in the State Department's February 22 letter and the State

25   Department guidance, cables, sample Q's & A's and instructions referenced in the Richardson

26   declaration," along with other actions taken by defendants in reliance of Section 3(c) of the

27   Proclamation. Dkt. No. 1 (*Pars*) ¶¶ 279-80. Plaintiffs further allege that these actions resulted in

28   a waiver process in which, among other things, "visa applicants have been denied waivers without

1   ever having received notice of a waiver process, and/or have been denied waivers without ever

2   having had a consular interview or other opportunity to provide evidence of their eligibility for a

3   waiver, in contravention of 22 C.F.R. §§ 41.121 and 42.81, which state that when refusing the

4   issuance of a visa, a consular officer must inform the visa applicant 'whether there is, in law or

5   regulations, a mechanism (such as a waiver) to overcome the refusal.'" *Id*. ¶ 281 (quoting 22

6   C.F.R. § 41.121(b)(1)).  Plaintiffs also allege that the government has implemented a waiver

7   process in which "consular officers do not have discretion over whether and when to grant a

8   waiver, and thus no discretion over whether they may grant a visa to an individual subject to the

9   Proclamation, in contravention of the Proclamation itself as well as 8 U.S.C. § 1104(a), which

10  states that consular officers have complete discretion over the issuance of visas and that such

11  discretion may not be circumscribed by the Secretary of State." *Id*. ¶ 284.

12       Defendants suggest that "the Proclamation [is] the only relevant source of law in this

13  case," Dkt. No. 128 (*Pars*) at 2-3, but plaintiffs have identified a number of legal tests with which

14  to assay the government's conduct, and defendants have not demonstrated that plaintiffs have

15  missed the mark.  In effect, plaintiffs are following *Trump v. Hawaii*, 138 S.Ct. 2392, 2408

16  (2018), where the Supreme Court measured the Proclamation against the provisions of the

17  Immigration and Nationality Act, even after finding that the President had lawfully exercised his

18  "broad discretion to suspend the entry of aliens into the United States" under § 1182(f) of that

19  statute.  *See Hawaii*, 138 S.Ct. at 2411 ("We may assume that § 1182(f) does not allow the

20  President to expressly override particular provisions of the INA.  But plaintiffs have not identified

21  any conflict between the statute and the Proclamation").  In this case, plaintiffs have plausibly

22  alleged conflicts between the government's actions, 22 C.F.R. §§ 41.121 and 42.81, the

23  Proclamation, and 8 U.S.C. § 1104(a).  Defendants effectively concede the point by sidestepping

24  the conflict allegations with factual arguments, such as "each Plaintiff received exactly what the

25  regulations require," Dkt. No. 120 (*Pars*) at 11, and "Plaintiffs are wrong that consular officers are

26  denied discretion to grant waivers," Dkt. No. 128 (*Pars*) at 7.

27       The Court also declines to dismiss at this juncture plaintiffs' allegation that defendants'

28  implementation of the waiver provision violated the APA's notice-and-comment requirements.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    Dkt. No. 125 (*Pars*) at 11; Dkt. No. 1 (*Pars*) ¶ 287 ("Defendants' actions, as set forth above, affect

2    the Plaintiffs' substantive rights and were made without observance of procedure required by law

3    in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D)."). "[W]hen an agency

4    promulgates regulations other than 'interpretative rules, general statements of policy, or rules of

5    agency organization, procedure, or practice,' 5 U.S.C. § 553(b)(A), the statute provides the public

6    with pre-promulgation notice and comment. 5 U.S.C. § 553(b), (c)." *Alcaraz v. Block*, 746 F.2d

7    593, 610-11 (9th Cir. 1984) (internal citation omitted). The government cites *Innovation Law Lab*

8    *v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019), for the proposition that the State Department's

9    waiver guidance was not required to go through notice-and-comment rulemaking because it was

10   merely "a 'general statement of policy' to guide the exercise of discretion by its officials." Dkt.

11   No. 128 (*Pars*) at 6. But that is not consistent with plaintiffs' allegations here. Plaintiffs have

12   plausibly alleged for 12(b)(6) purposes that defendants have issued guidance which resulted in a

13   waiver process in which consular officers had no discretion to exercise at all. Dkt. No. 1 (*Pars*)

14   ¶¶ 279, 284. The government may, however, raise the argument again if warranted at a later stage

15   of the case, after development of the record.

16                    **3.      *Accardi* Claim**

17           As a second claim, the *Pars* plaintiffs essentially re-allege their first claim in the

18   alternative, this time under the "*Accardi* Doctrine & Administrative Procedure Act." Dkt. No. 1

19   (*Pars*) ¶¶ 289-94. It will go forward for the reasons stated in the *Emami* order with respect to the

20   *Accardi* doctrine. The government says that "*Accardi* has no relevance here, where the

21   Proclamation and its related guidance are neither regulations nor internal documents that create

22   any procedural rights." Dkt. No. 120 (*Pars*) at 10. This is in effect an improper request for

23   reconsideration of the *Emami* order, *see* Civil L.R. 7-9, and in any event, the *Accardi* doctrine is

24   not so circumscribed, as the government's own case citations demonstrate. In *Montilla v.*

25   *Immigration and Naturalization Service*, 926 F.2d 162, 167 (2d Cir. 1991), the court held that

26   "[t]he *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of

27   due process. . . . Its ambit is not limited to rules attaining the status of formal regulations. As the

28   Supreme Court noted 'where the rights of individuals are affected, it is incumbent upon agencies

                                                       5

United States District Court
Northern District of California

1    to follow their own procedures.'"   The *Montilla* court further noted that "[t]he doctrine has

2    continued vitality, particularly where a petitioner's rights are 'affected.'"   *Id*.

3          Two other aspects of the *Montilla* case are relevant here.  It does not stand for the

4    proposition, as the government suggests, that "even assuming that an *Accardi* claim could survive

5    a motion to dismiss, the only relief available would be limited to a 'remand' with instructions for

6    the agency to comply."  Dkt. No. 120 (*Pars*) at 11.  In *Montilla*, a remand to the Board of

7    Immigration Appeals made sense because petitioner's sole contention on appeal was that "the

8    immigration judge did not follow the applicable regulation protecting an alien's right to counsel, 8

9    C.F.R. § 242.16(a) (1990), and that this error constituted a denial of due process" in his

10   deportation proceeding.  926 F.2d at 166, 170.  The *Montilla* court never said that a remand was

11   the only option for an *Accardi* violation; to the contrary, it emphasized that the doctrine was "still

12   alive and well" and that it was a "judicially-evolved rule ensuring fairness."  *Id*. at 168.  This

13   underscores the flexibility inherent in the doctrine to fashion a remedy that fits the wrong.

14         *Montilla* is also notable for applying *Accardi* as a freestanding claim, untethered to the

15   APA or other statute.  This is entirely consistent with the decision in *Accardi* itself, which was not

16   based on the APA.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  The

17   Court has reached the same conclusion as *Montilla* that an *Accardi* claim can stand on its own and

18   "is at heart a claim of procedural fairness that owes as much to the Due Process Clause as to the

19   Administrative Procedures Act."  Dkt. No. 122 (*Emami*) at 2 (citing *Jefferson v. Harris*, 285 F.

20   Supp. 3d 173, 185 (D.D.C. 2018)).  Plaintiffs' decision to tie their *Accardi* claim to the APA is

21   analytically questionable, and they may find that they have imposed on themselves unnecessary

22   burdens by doing that.  The request to dismiss the *Pars* plaintiffs' second claim under the *Accardi*

23   doctrine is denied.

24              **4.     Fifth Amendment Due Process Claim**

25         Plaintiffs' third claim directly under the Due Process Clause of the Fifth Amendment for a

26   violation of procedural due process cannot go forward.  In the *Emami* order, the Court dismissed

27   this claim due to plaintiffs' "inability to allege a deprivation of an interest protected by the Due

28   Process Clause."  Dkt. No. 74 (*Emami*) at 17.  This is a separate and different inquiry from the one

1    under *Accardi*, and is subject to different standards.  The *Pars* plaintiffs ask the Court to

2    "reconsider its view," Dkt. No. 125 (*Pars*) at 12, on the basis of a circuit decision from 2008.  *See*

3    *id.* at 12-13 (citing *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008)).  This is also an

4    improper request for reconsideration, and it is unpersuasive in that *Bustamante* pre-dates *Kerry v.*

5    *Din*, 135 S.Ct. 2128 (2015), the main basis for the Court's prior order on this issue, by nearly a

6    decade.  The third claim is dismissed.

7              **B.       *Emami* Second Amended Complaint**

8              The second amended complaint in *Emami*, and the attendant motion to dismiss arguments,

9    are *Groundhog Day* or déjà vu all over again, depending on one's taste in clichés.  The allegations

10   and arguments on both sides are virtually unchanged.

11             The *Emami* SAC continues to suffer from vague and conflicting allegations.  To take one

12   example, the SAC says that defendants have failed to issue any guidance at all.  *See*, *e.g.*, Dkt. No.

13   75 (*Emami*) ¶ 313 ("Defendants have either failed to promulgate guidance or have promulgated

14   guidance that is arbitrary and capricious on its face").  This is an inherently odd assertion,

15   especially in light of plaintiffs' own complaint exhibits in which the State Department recognized

16   its online postings as its "outward facing guidance" for waivers.  Dkt. No. 74 (*Emami*) at 14.

17   Plaintiffs try to walk this back in their opposition to the motion to dismiss, where they say that

18   their claim "is not that *no* guidance has been issued at all, but rather that the issued guidance has

19   not been followed; that the guidance itself is arbitrary and capricious; and that it violates

20   Plaintiffs' constitutional rights."  Dkt. No. 104 (*Emami*) at 1-2.  In light of this admission, the

21   portions and claims in the SAC alleging that no guidance was issued are dismissed.  The Court

22   will not catalog here the other vague and inconsistent allegations in the SAC, but if they become

23   an issue in the case, they are likely to meet a similar disposition.

24             The government's request to dismiss the first claim under the APA is denied.  Plaintiffs

25   allege, among other things, that the government has "failed to follow their own policies and

26   procedures," and have "put in place a waiver process in which applicants are denied waivers

27   without ever receiving notice or an opportunity to apply [and] applicants are denied waivers

28   without having had a consular interview since the time the Proclamation went into effect."  Dkt.

United States District Court
Northern District of California

7

1    No. 75 (*Emami*) ¶ 314.  Plaintiffs allege that these actions should be invalidated under *Accardi*,

2    347 U.S. 260.  *Id*. ¶ 317.  The Court has already found this to be a viable claim, Dkt. No. 74

3    (*Emami*), and that conclusion holds.

4         The second and third claims for relief under the Fifth Amendment are again dismissed

5    based on an "inability to allege a deprivation of an interest protected by the Due Process Clause."

6    Dkt. No. 74 (*Emami*) at 17.  The Court has also determined that the equal protection claim "holds

7    together only if it is assumed that the Proclamation unconstitutionally excludes Muslims or

8    illegally discriminates on the basis of nationality, a proposition that the Supreme Court turned

9    aside in *Hawaii*."  *Id*. (citing 138 S.Ct. at 2413-23).  The Court further noted that the equal

10   protection claim was likely to be subject to rational basis review, and that the Supreme Court "has

11   already concluded in reviewing the Proclamation that 'the Government has set forth a sufficient

12   national security justification to survive rational basis review.'  *Hawaii*, 138 S.Ct. at 2423."  *Id*. at

13   18.  The *Emami* plaintiffs' Fifth Amendment claims are virtually unchanged from their previous

14   versions, and the Court sees no reason to reach a different conclusion on either claim.

15        The mandamus claim is dismissed.  The claim focuses on defendants' alleged "fail[ure] to

16   develop meaningful guidance," Dkt. No. 75 (*Emami*) ¶ 336, an allegation that plaintiffs have now

17   retracted.  Plaintiffs have added a claim for unreasonable delay on decisions on individual visa and

18   waiver applications.  *Id*. ¶ 337.  But "[m]andamus is an extraordinary remedy and is available to

19   compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain;

20   (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from

21   doubt, and (3) no other adequate remedy is available."  *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th

22   Cir. 2003); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of

23   mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if

24   he has exhausted all other avenues of relief and only if the defendant owes him a clear

25   nondiscretionary duty.").  Plaintiffs do not identify any source of law that mandates that decisions

26   be issued within a certain period of time, and the decisions on individual waiver applications are

27   inherently discretionary.  *See* 82 Fed. Reg. at 45168 ("a consular officer, or the Commissioner,

28

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    United States Customs and Border Protection (CBP), or the Commissioners' designee, as

2    appropriate, may, in their discretion, grant waivers on a case-by-case basis").

3    **II.    SUMMARY JUDGMENT**

4    The government's motions for summary judgment are denied.  The government relies on

5    an "administrative record" to "show[] that defendants have applied the waiver provision in an

6    orderly way."  Dkt. No. 98 (*Emami*) at 11.  But this does not account for the *Accardi* claims, and

7    "there is no 'administrative record' when the essence of the claim is that the government has failed

8    to act in accordance with its own rules and regulations."  Dkt. No. 122 (*Emami*) at 2.  In addition,

9    the multiple discovery dispute letters that have been filed in these cases underscore the degree to

10   which the parties disagree about the material facts and what the "administrative record" might

11   properly contain.  These factual disputes preclude summary judgment at this time.  *See Federal*

12   *Trade Commission v. D-Link Systems, Inc.*, No. 17-cv-00039-JD, 2018 WL 6040192 (N.D. Cal.

13   Nov. 5, 2018).  It is also doubtful that plaintiffs have had a full and fair opportunity to take

14   discovery from defendants and test the evidence the government has presented as the

15   administrative record.

16                                   **CONCLUSION**

17   In the *Pars* case, defendants' motion to dismiss is denied as to plaintiffs' APA claim and

18   *Accardi* claim, but granted as to the Fifth Amendment claim.  The summary judgment motion is

19   denied without prejudice.

20   In the *Emami* case, defendants' motion to dismiss is denied for plaintiffs' APA claim, but

21   granted for plaintiffs' Fifth Amendment Due Process and Equal Protection claims, and the

22   mandamus claim.  Defendants' summary judgment motion is denied without prejudice.

23   On this record, the Court declines to provide yet another round of pleading amendments to

24   either set of plaintiffs.  The *Emami* plaintiffs have had multiple opportunities to amend, in which

25   case the Court's discretion to deny further amendment is especially broad.  *See Chodos v. West*

26   //

27   //

28   //

9

1    *Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  So too for the *Pars* plaintiffs, given the

2    procedural context of these closely related cases.

3            **IT IS SO ORDERED.**

4    Dated:  June 5, 2020

6    _____

7    JAMES DONATO
     United States District Judge