

|  |  |
|---|---|
| 40-82-103.03 | **U.S. Department of Justice**<br>Civil Division<br>Office of Immigration Litigation |

*Washington, D.C. 20530*

**VIA CM/ECF**                                                                            August 21, 2020

Honorable James Donato
United States District Court for the Northern District of California

      Re:    *Emami v. Nielsen*, No. 18-cv-1587-JD, and *Pars Equality Center v. Pompeo*, No. 18-cv-7818-JD

Dear Judge Donato:

      This letter responds to Plaintiffs' April and July 2020 discovery letters, *Emami*, Dkt. Nos. 151, 154. In their April letter, Plaintiffs demand documents pursuant to their Third Set of Requests for Production ("RFP3"), alleging that Defendants previously had not responded. Dkt. No. 151. In their July letter, Plaintiffs demand that Defendants produce materials identified in their First and Second Sets of Requests for Production ("RFP1" and "RFP2"). Dkt. No. 154. As explained more fully below, Defendants have in fact responded to RFP3, *see* Ex. A (Defendants' Written Objections and Responses to Plaintiffs' Third Set of Requests for Production), and the grounds for their opposition to a number of those requests are detailed in their July 2020 discovery letter. Dkt. No. 157. As for RFP1 and RFP2, the Court's September 2019 discovery order relieved Defendants of any obligations on those requests, *see* Dkt. No. 122, at 1 ("This order resolves the multiple discovery disagreements between the parties…."); that order rejected Plaintiffs' proposed plan for indefinite discovery and allowed only certain categories of materials on which discovery could go forward. Defendants have consistently complied with those limits by (i) offering to provide, contingent on Plaintiffs' identification, materials referenced but not included in the Administrative Record ("AR") "to the extent [they] relate to the issues of (1) the process by which applicants were permitted to submit documents and demonstrate eligibility for a waiver, or (2) the scope of individual consular officers' discretion to grant or deny waivers"; (ii) producing a privilege log; (iii) setting forth a declaration on the methodology of a congressional report; and (iv) presenting the declarant for a deposition that Plaintiffs chose to terminate early and whose veracity Plaintiffs have never challenged.

      This Court's September 2019 order remains binding. Plaintiffs, however, continue to ask for irrelevant, broad, and burdensome discovery that is disproportionate to—and deviates from—the Court's narrowing of their claims and the limited discovery it has allowed in this APA case. *See, e.g.*, Dkt. No. 157. This has led to multiple impasses requiring the Court's intervention. If the Court orders further discovery, Defendants remain committed to abiding by the Court's parameters in consideration of relevance, proportionality, burden, and confidentiality concerns. *See id.* This includes submitting a declaration—potentially followed by a deposition—from an experienced consular manager, who, having served at several posts overseas and overseen visa adjudications under the Proclamation, can speak knowledgeably about how the State Department is applying its own waiver guidance.

**Defendants Have Complied Fully and in Good Faith
with the Court's Directives on Discovery in this APA Case**

The Court has narrowed Plaintiffs' claims and clarified that these are fundamentally *Accardi* cases concerning "whether the State Department has failed to abide by its own rules and procedures for the waiver program that was created pursuant to Presidential Proclamation 9645." Dkt. No. 122 at 1. The Court held, "[t]he gravamen of the complaint is that the government has flouted its own guidelines and statements about case-by-case determinations of waiver applications in favor of a policy of blanket denials." Dkt. No. 74 at 12; *see* Dkt. No. 152 at 2-3 (finding that Plaintiffs' *Accardi* claim is based on the APA).

*First*, Defendants have responded to RFP3. *See* Ex. A. Defendants have produced information responsive to Plaintiffs' requests for information pertaining to the methodology behind the State Department's quarterly reports on the Proclamation. *See id.*, Requests Nos. 2-5. Indeed, Defendants relayed even such granular information as the list of all 100 data fields (and their descriptions) extracted from the Visa Office Information Service database and other Consolidated Consular Database programs to generate the raw Excel spreadsheets then used to compile the final published statistics. *Id.*; *see also* Dkt. No. 135-1 ¶ 34. At Plaintiffs' request, Defendants also provided the lists of all 28 data fields from the nonimmigrant visa adjudication system software and all 25 data fields from the immigrant visa adjudication system software likewise used to produce the quarterly reports. Ex. A, Requests Nos. 2-5; *see also* Dkt. No. 134-1 ¶ 34. While the data fields are irrelevant to Plaintiffs' *Accardi* claim, Defendants provided the information in good faith, because it did not trigger privilege concerns. Further, through the AR, Defendants have already provided the guidance on how consular officers interpret interagency vetting results. Ex. A, Answer to Request No. 7.

In contrast, the remaining requests in RFP3 were properly objectionable. Plaintiffs first demanded *all* of the diffuse, unprocessed data regarding individual visa applicants in the underlying Excel spreadsheets used to generate the waiver statistics. Ex. A, Request No. 1. In doing so, they overlooked the detailed explanation of Joel Nantais, the then Domestic Operations Director for the State Department's Visa Office, that the spreadsheets contained applicant-specific biographic data (e.g., dates of birth), visa adjudication histories (e.g., issuance and refusal dates), visa-specific data (e.g., free-form annotation texts), and interagency screening vetting data (e.g., request dates and response codes).[1] Dkt. No. 135-1 ¶ 37. This request is overbroad and disproportionate to the issue of whether the State Department is following its own waiver guidance; it is overly burdensome given the volume involved; and it is at odds with the confidentiality protections of 8 U.S.C. § 1202(f). On this last point, Plaintiffs' request calls for all manner of statutorily protected confidential information about individual visa applicants. Defendants have repeatedly warned that, in addition to being precluded by the principles underlying consular nonreviewability, the disclosure of this information is precluded by 8 U.S.C. § 1202(f), which provides that records of the Department of State and of diplomatic and consular

---

[1] In September 2019, the spreadsheets covered more than 150 data fields on approximately 200,000 visa applications, many of which either qualified for one of the Proclamation's exceptions or were not subject to the Proclamation in the first place, thus obviating the need for a waiver. *Emami*, Dkt. No. 135-1 ¶ 34. The number of processed claims has increased substantially since then, particularly after the State Department implemented an enhanced automated screening and vetting process for all visa claims, which has allowed for faster adjudications without compromising national security.

offices pertaining to the issuance or refusal of visas "shall be considered confidential." Moreover, to the extent such records include information on individuals who are United States citizens and lawful permanent residents, the Privacy Act of 1974 would likely apply. Plaintiffs had a full opportunity to question "the official who oversaw the production of the quarterly reports," but they ended the deposition early after having exhausted all their questions and have never disputed the veracity of his testimony. *See, e.g.,* Dkt. No. 150.

Plaintiffs also ask that Defendants produce *all* case notes drafted by consular officers while reviewing visa applications subject to the Proclamation. Ex. A, Request No. 6. In doing so, they not only ignore the aforementioned confidentiality protections extended to visa records by statute, *see* 8 U.S.C. § 1202(f), but also stray into an area that the Court has already explicitly deemed irrelevant and unreviewable—namely, individual consular decision-making. Dkt. No. 74 at 11-12 ("Those issues do not require review of an individual consular officer's decision.") (recognizing the limits of the doctrine of consular nonreviewability). Additionally and independently, compliance with Plaintiffs' request would prove especially burdensome and impracticable where consular officers are not required to write any particular case notes or to scan any notes produced—which are saved as images and not text-searchable—into consular systems. Ex. A, Answer to Request No. 6. Accordingly, if compliance were compelled, the State Department would have to manually comb through millions of documents to identify, screen, and redact case notes that make some mention of the Proclamation. Even then, there is no guarantee that *all* Proclamation-related case notes—as Plaintiffs demand—would be captured because consular officers are not directed to flag such case notes with a particular code and may not have even made any explicit reference to the Proclamation.[2]

Similarly, Plaintiffs requested "[a]ll correspondence to and from consular posts to countries-of-concern-inquiries@state.gov regarding waiver assessments pursuant to Proclamation 9645." Ex. A, No. 8. This request is objectionable for the same reasons as their request for case notes and runs afoul of the same statutory confidentiality protections. It is also severely disproportionate to the narrowed scope of these cases and would force an unfair and massive burden on Defendants. Specifically, because the countries-of-concern-inquiries mailbox is not restricted to emails about the Proclamation or its waiver process, agency personnel "would have to manually review every email record sent to the mailbox to cull those emails that do pertain to the limited claims presented in these cases." Ex. A, Answer to Request No. 8. Mr. Nantais had explained all this to Plaintiffs at his deposition. Dkt. No. 150-1 at 43.

*Second*, regarding RFP1 and RFP2, as mentioned above, those predated and were fully addressed by the Court's discovery order issued on September 12, 2019. Dkt. No. 122 at 1 ("This order resolves the multiple discovery disagreements between the parties that are outlined in the joint discovery report."); Dkt. No. 117. Defendants have complied fully with that order. *See supra* at 1 (noting Defendants' production of a privilege log, a detailed declaration on the methodology of a Congressional report, and the declarant's deposition, as well as Defendants' offer to provide any materials that Plaintiffs believed might have been referenced but not included in the AR).

In sum, as set forth in their July 2020 discovery letter, *see* Dkt. No. 157, Defendants reiterate their commitment to fulfilling their discovery obligations in keeping with the Court's

---

[2] A visa applicant subject to the Proclamation could be refused on unrelated grounds—without having to undergo any consideration for an exception or waiver under the Proclamation. Thus, a case note cannot be categorized as "Proclamation-related" merely because it pertains to an applicant who falls within a class of individuals described in the Proclamation.

defined parameters and offer to provide a declaration—followed potentially by a deposition—from a consular manager with relevant experience administering the waiver process. Further, to allow these cases to proceed to an efficient resolution, Defendants respectfully request clarification on the scope of discovery and a protective order that would prohibit Plaintiffs from further issuing improper discovery requests.

                                                          Sincerely,

                                                          AUGUST E. FLENTJE
                                                          Special Counsel

                                                          SAMUEL P. GO
                                                          Assistant Director

                                                          DAVID KIM
                                                          NICOLE GRANT
                                                          P. ANGEL MARTINEZ
                                                          Trial Attorneys
                                                          U.S. Department of Justice

# Exhibit A

(Defendants' Written Objections and Responses to Plaintiffs'
Third Set of Requests for Production)

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
SAMUEL P. GO
Assistant Director, Office of Immigration Litigation
District Court Section
NICOLE GRANT
P. ANGEL MARTINEZ
DAVID KIM
Trial Attorneys, Office of Immigration Litigation

    Ben Franklin Station, P.O. Box 878
    Washington, D.C. 20044
    Telephone: (202) 532-4094
    Email: david.kim4@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PARS EQUALITY CENTER, *et al.*, | CASE Nos. 18-cv-7818-JD |
| Plaintiffs, | 18-cv-1587-JD |
| v. | District Court Judge James Donato |
| MIKE POMPEO, *et al.*, | |
| Defendants. | **DEFENDANTS' WRITTEN OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION** |
| and | |
| FARANGIS EMAMI, *et al.*, | |
| Plaintiffs, | |
| v. | |
| KIRSTJEN NIELSEN, *et al.*, | |
| Defendants. | |

DEFENDANTS' RESPONSE TO      1      Case Nos. 3:18-cv-01587-JD
PLAINTIFFS' THIRD SET OF                           3:18-cv-07818-JD
REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants respond to Plaintiffs' Third Set of Requests for Production ("RFPs"). Defendants submit these responses and objections without conceding the relevancy or materiality of the subject matter of any request or of any document, or that any responsive materials exist. Defendants' responses and objections are not intended to be, and shall not be construed as, agreement with Plaintiffs' characterization of any facts, circumstances, or legal obligations. Defendants do not admit, adopt, or acquiesce in any factual or legal contention, presumption, or characterization contained in the RFPs.

## GENERAL OBJECTIONS

Defendants make the following General Objections:

1. Defendants object to the instructions and definitions set forth in Plaintiffs' RFPs to the extent that they deviate from or purport to impose requirements other than or in addition to those required by the Federal Rules of Civil Procedure. Defendants also object to Plaintiffs' RFPs to the extent that they seek information outside the restricted scope of discovery permissible under the Federal Rules of Civil Procedure and the Court's September 12, 2019 discovery order. *See Emami*, ECF No. 122; *Pars*, ECF No. 141.

2. Defendants object to Plaintiffs' RFPs to the extent that they call for information that is protected by the law enforcement privilege, the deliberative process privilege, the attorney-client privilege, or other applicable privileges. These responses are not intended, nor should they be construed, as a waiver or relinquishment of any part of the protections afforded by any applicable privilege or immunity.

3. Defendants object to Plaintiffs' RFPs to the extent that they call for information not relevant to the subject matter of the litigation or not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendants object to Plaintiffs' RFPs to the extent that they call for documents that are already in Plaintiffs' possession, custody, or control, regardless of whether the documents were previously produced in this litigation, in other litigation, or in response to a FOIA request.

5. Defendants object to Plaintiffs' RFPs to the extent that they call for information that has already been produced to Plaintiffs or is available from a less burdensome source.

## INDIVIDUAL RESPONSES AND OBJECTIONS

**REQUEST NO. 1:**

All copies of the monthly data reports requested by the Visa Office, Bureau of Consular Affairs, U.S. Department of State from CA/CST in Excel spreadsheet form used to generate the Quarterly Reports on Proclamation 9645's implementation until the present as referenced in the Declaration of Joel Nantais ("Nantais Decl.") ¶ 34.

**ANSWER:**

Defendants object to Request No. 1 as vague and overbroad in that it seeks information far beyond the limited issue presented of Plaintiffs' allegation that the State Department is not following its own waiver guidance. Defendants have already provided Plaintiffs with a declaration from and deposition of the official who oversaw the production of the quarterly reports, the accuracy and reliability of which Plaintiffs have not contested. To the extent that this request far exceeds the information already provided by Defendants, it is unduly burdensome and lacks proportionality and relevance. *See* Fed. R. Civ. P. 26(b)(1). Further, to the extent that the information sought goes beyond information already publicly available, the request would likely

be precluded by the statutory prohibition on the disclosure of "records . . . pertaining to the issuance or refusal or visas or permits to enter the United States[.]" 8 U.S.C. § 1202(f). This request also seeks disclosure of information that may be highly sensitive and confidential or barred from disclosure by the Privacy Act. To the extent that Plaintiffs seek statistical information on the implementation of the Proclamation on a monthly basis, those reports are publicly available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/presidential-proclamation9645.html?wcmmode=disabled.

**REQUEST NO. 2:**

Descriptions of values in the monthly data reports requested by the Visa Office, Bureau of Consular Affairs, U.S. Department of State from CA/CST in Excel spreadsheet form used to generate the June Quarterly Report on Proclamation 9645's implementation.

**ANSWER:**

Defendants object to providing this information as it does not go to the APA or *Accardi* claims, as framed by the Court, and lacks relevance. However, because the information is not privileged, Defendants provide the following:

*Data fields are listed as received from the Consular Systems & Technology (CST) Ad Hoc Reporting team. Descriptions are not authoritative and are provided for reference only.*

| VOIS & CCD DATA FIELDS | DESCRIPTION |
|---|---|
| **RECNUM** | Record number |
| **SYSTEM_KEY** | Unique identifier |
| **ORIGINATING_SITE_CD** | Originating site (Post) code |
| **ORIGINATING_SYSTEM_CD** | Originating system code |
| **ORIGINATING_SYSTEM_KEY** | Originating system key |
| **ORIGINATING_PERSON_ID** | Originating person ID |
| **ORIGINATING_REQUEST_ID** | Originating request ID |
| **PREVIOUS_REQUEST_ID** | Previous request ID |

| | |
|---|---|
| **CIDN_ID** | Case ID number |
| **PASSPORT_NUMBER_TXT** | Passport number |
| **SPONSOR_NAME** | Sponsor name |
| **EMPLOYER_NAME** | Employer name |
| **APPLICANT_SURNAME** | Applicant surname |
| **APPLICANT_GIVEN_NM** | Applicant given name |
| **APPLICANT_DOB_DTE** | Applicant date of birth |
| **REQUEST_REASON** | Request reason |
| **REQUEST_REASON** | Request reason |
| **REQUEST_REASON** | Request reason |
| **REQUEST_REASON** | Request reason |
| **REQUEST_REASON** | Request reason |
| **REQUEST_REASON_DISC_IND** | Request reason |
| **STATUS_1_REQUEST_SENT_IND** | Request sent |
| **STATUS_2_REQUEST_SENT_IND** | Request sent |
| **STATUS_3_REQUEST_SENT_IND** | Request sent |
| **STATUS_4_REQUEST_SENT_IND** | Request sent |
| **STATUS_5_REQUEST_SENT_IND** | Request sent |
| **STATUS_6_REQUEST_SENT_IND** | Request sent |
| **STATUS_7_REQUEST_SENT_IND** | Request sent |
| **VISA_CLASS_CODE** | Visa class code |
| **NATIONALITY_CODE** | Nationality code |
| **POB_COUNTRY_CD** | Place of Birth country code |
| **FSC_COUNTRY_CD** | Foreign state of chargeability country code |
| **TYPE_DESC** | Description of type |
| **FINAL_RESPONSE_CD_IND** | Response code indicator |
| **FOLLOWUP_IND** | Follow-up indicator |
| **VO_ANALYST_REVIEWER** | VO Analyst reviewer |
| **PRM_ANALYST** | PRM analyst |
| **REVIEWER** | Reviewer |
| **STATUS_DESC** | Status desc |
| **CLEARANCE_STATUS_DESC** | Clearance status desc |
| **DRAFT_DATE** | Draft date |
| **TRANSMIT_DATE** | Transmission date |
| **CREATE_DATE** | Created date |
| **RETURN_DATE** | Return date |
| **CLOSED_DATE** | Closed date |
| **RECEIVED_DATE** | Received date |
| **PROCESSED_DATE** | Processed date |
| **CLR_PTNR_RETURN_TYPE_DESC** | Description of return type |
| **RESPONSE_CD** | Response code |
| **INITIAL_STATUS_1_CODE** | Response indicator |

| | |
|---|---|
| **INITIAL_STATUS_2_CODE** | Response indicator |
| **INITIAL_STATUS_3_CODE** | Response indicator |
| **INITIAL_STATUS_4_CODE** | Response indicator |
| **INITIAL_STATUS_5_CODE** | Response indicator |
| **INITIAL_STATUS_6_CODE** | Response indicator |
| **INITIAL_STATUS_7_CODE** | Response indicator |
| **FINAL_STATUS_1_CODE** | Response indicator |
| **FINAL_STATUS_2_CODE** | Response indicator |
| **FINAL_STATUS_3_CODE** | Response indicator |
| **FINAL_STATUS_4_CODE** | Response indicator |
| **FINAL_STATUS_5_CODE** | Response indicator |
| **FINAL_STATUS_6_CODE** | Response indicator |
| **FINAL_STATUS_7_CODE** | Response indicator |
| **FINAL_STATUS_1_DATE** | Response date |
| **FINAL_STATUS_2_DATE** | Response date |
| **FINAL_STATUS_3_DATE** | Response date |
| **FINAL_STATUS_4_DATE** | Response date |
| **FINAL_STATUS_5_DATE** | Response date |
| **FINAL_STATUS_6_DATE** | Response date |
| **FINAL_STATUS_7_DATE** | Response date |
| **STATUS_1_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_2_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_3_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_4_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_5_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_6_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **STATUS_7_RETURN_TYPE_CNTRB_IND** | Type indicator |
| **OPEN_DAYS_CNT** | Count of days open |
| **DRAFT_DAYS_CNT** | Count of days in draft |
| **PENDING_DAYS_CNT** | Count of days pending |
| **AFTER_RECEIVED_DAYS_CNT** | Count of days after received |
| **CLR_PTNR_PROCESSING_DAYS_CNT** | Processing Days count |
| **VO_PROCESSING_DAYS_CNT** | Processing Days count |
| **PROMPT_DATA** | Prompt data |
| **STATUS_1_COMMENTS** | Comments |
| **STATUS_2_COMMENTS** | Comments |
| **STATUS_3_COMMENTS** | Comments |
| **STATUS_4_COMMENTS** | Comments |
| **STATUS_5_COMMENTS** | Comments |
| **STATUS_6_COMMENTS** | Comments |
| **STATUS_7_COMMENTS** | Comments |
| **CNT** | Count |
| **COMMENTS** | Comments |

| | |
|---|---|
| **ADDL_DATA** | Additional free text data (line 1) |
| **ADDL2** | Additional free text data (line 2) |
| **ADDL3** | Additional free text data (line 3) |
| **ADDL4** | Additional free text data (line 4) |
| **ADDL5** | Additional free text data (line 5) |
| **ADDL6** | Additional free text data (line 6) |
| **ADDL7** | Additional free text data (line 7) |
| **ADDL8** | Additional free text data (line 8) |

**REQUEST NO. 3:**

A complete list of the 28 data fields from the NIV software pulled by the software script that generated the monthly data reports from CA/CST used to generate the June Quarterly Report on Proclamation 9645's implementation as referenced in the Nantais Decl. ¶ 34.

**ANSWER:**

Defendants object to providing this information as it does not go to the APA or *Accardi* claims, as framed by the Court, and lacks relevance. However, because the information is not privileged, Defendants provide the following:

> *Data fields are listed as received from the Consular Systems & Technology (CST) Ad Hoc Reporting team. Descriptions are not authoritative and are provided for reference only.*

| NIV DATA FIELDS | DESCRIPTION |
|---|---|
| **SYSTEM_KEY** | Unique identifier |
| **ADJUD_DTE** | Adjudication date |
| **ADJUD_STATUS_CD** | Adjudication status code |
| **ADJUD_STATUS_DESC** | Adjudication status description |
| **DATA_ENTRY_DTE** | Data entry date |
| **POST_CD** | Post code |
| **AUTH_DTE** | Authorization date |
| **IDENT_IND** | IDENT indicator |
| **IDENT_IND_DESC** | IDENT indicator description |
| **AUTHORIZED_DTE** | Authorization date |
| **NATIONALITY_CD** | Nationality code |
| **BIRTH_PLACE_COUNTRY_CD** | Place of birth country code |

DEFENDANTS' RESPONSE TO　　　　7　　　　Case Nos. 3:18-cv-01587-JD
PLAINTIFFS' THIRD SET OF　　　　　　　　　　　　　　　　3:18-cv-07818-JD
REQUESTS FOR PRODUCTION

| | |
|---|---|
| **BIRTH_DTE** | Birth date |
| **BIRTH_DTE_CONVERTED** | Birth date converted |
| **NIV_APPLICANT_ID** | NIV Applicant ID |
| **REFUSAL_SEQ_NUM** | Refusal sequence number |
| **REFUSAL_CD** | Refusal code |
| **OVERCOME_WAIVER_IND** | Overcome or waiver indicator |
| **REFUSAL_COMMENT_TXT** | Refusal comment text |
| **OW_STATUS_DESC** | Overcome or waiver status description |
| **OVERCOME_WAIVER_CD** | Overcome or waiver code |
| **VISA_CLASS_CD** | Visa class code |
| **VISA_ANNOTATION_LINE1_TXT** | Visa annotation text (line 1) |
| **VISA_ANNOTATION_LINE2_TXT** | Visa annotation text (line 2) |
| **VISA_ANNOTATION_LINE3_TXT** | Visa annotation text (line 3) |
| **VISA_ANNOTATION_LINE4_TXT** | Visa annotation text (line 4) |
| **MIN_ADJUD_DTE** | Minimum (first) adjudication date |
| **AGEON_ADJUDDTE** | Age on date of adjudication |
| **CASEMEMO_UNDERAGE14** | Case memo indicator of applicants under age 14 |

**REQUEST NO. 4:**

A complete list of the 25 data fields from the IVO software pulled by the software script that generated the monthly data reports from CA/CST used to generate the June Quarterly Report on Proclamation 9645's implementation as referenced in the Nantais Decl. ¶ 34.

**ANSWER:**

Defendants object to providing this information as it does not go to the APA or *Accardi* claims, as framed by the Court, and lacks relevance. However, because the information is not privileged, Defendants provide the following:

> *Data fields are listed as received from the Consular Systems & Technology (CST) Ad Hoc Reporting team. Descriptions are not authoritative and are provided for reference only.*

| IVO DATA FIELDS | DESCRIPTION |
|---|---|
| **SYSTEM_KEY** | Unique identifier |
| **ADJUD_DTE** | Adjudication date |
| **REFUSAL_CD_SEQ_NUM** | Refusal sequence number |

| | | |
|---|---|---|
| DEFENDANTS' RESPONSE TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION | 8 | Case Nos. 3:18-cv-01587-JD 3:18-cv-07818-JD |

| | |
|---|---|
| REFUSAL_CD | Refusal code |
| SITE_CD | Site (Post) code |
| PPT_NATIONALITY_CD | Passport nationality code |
| IDENT_IND | IDENT indicator |
| IDENT_RETURN_STATUS | IDENT return status |
| CASE_ID | Case ID number |
| APPLICANT_ID | Applicant ID number |
| APPLICANT_NAME | Applicant name |
| BIRTH_DTE | Birth date |
| PA_RELATIONSHIP_CD | Principal applicant relationship code |
| PA_RELATIONSHIP_DESC | Principal applicant relationship description |
| BIRTH_PLACE_COUNTRY_CD | Birth place country code |
| BIRTH_PLACE_CITY_NAME | Birth place city name |
| FSC_CD | Foreign state of chargeability code |
| VISA_CLASS_CD_USED | Visa class code used |
| VISA_ANNOTATION_TEXT1 | Visa annotation text (line 1) |
| VISA_ANNOTATION_TEXT2 | Visa annotation text (line 2) |
| VISA_ANNOTATION_TEXT3 | Visa annotation text (line 3) |
| VISA_ANNOTATION_TEXT4 | Visa annotation text (line 4) |
| MIN_ADJUD_DTE | Minimum (first) adjudication date |
| AGEON_ADJUDDTE | Age on date of adjudication |
| CASEMEMO_UNDERAGE14 | Case memo indicator of applicants under age 14 |
| SUBJECT_TXT | Text indicating applicant subject to PP 9645 |

**REQUEST NO. 5:**

A complete list of the "about 100" data fields from VOIS and other CCD programs pulled by the software script that generated the monthly data reports from CA/CST used to generate the June Quarterly Report on Proclamation 9645's implementation as referenced in the Nantais Decl. ¶ 34.

**ANSWER:**

*See* Responses to Requests Nos. 2-4.

**REQUEST NO. 6:**

For each visa applicant referenced in the monthly data reports requested by the Visa Office, Bureau of Consular Affairs, U.S. Department of State from CA/CST in Excel spreadsheet form used to generate the Quarterly Reports on Proclamation 9645's implementation, the case notes associated with each case, including, but not limited to, the consular official's assessment of an individual's eligibility for each prong of the waiver, whether countries-of-concern-inquiries@state.gov was consulted, whether a consular manager was consulted, whether administrative processing was requested for a case, and if available, the type of administrative processing sought and its result, including initial case notes and any additions or edits made by subsequent users.

**ANSWER:**

Defendants object to Request No. 6 as it is vague and overbroad and does not go to Plaintiffs' APA or *Accardi* claims. To the extent that the request purports to ask for documents and communications that underlay individualized waiver assessments, in disregard of the fact that consular officers are not directed or required to generate any particular case notes or to scan such notes (which are not text-searchable) into consular systems, it is impracticable, unduly burdensome, and lacking in proportionality and relevance. *See, e.g.*, *Emami*, ECF No. 135-1, ¶¶ 13, 48. To the extent that the information sought goes beyond information already publicly available, the request would likely be precluded by the statutory prohibition on the disclosure of "records . . . pertaining to the issuance or refusal or visas or permits to enter the United States[.]" 8 U.S.C. § 1202(f). This request also seeks disclosure of information that may be protected by privileges including law enforcement privilege and deliberative process privilege, and may be classified or highly sensitive and confidential or barred from disclosure by the Privacy Act.

| | | |
|---|---|---|
| DEFENDANTS' RESPONSE TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION | 10 | Case Nos. 3:18-cv-01587-JD<br>3:18-cv-07818-JD |

Additionally, the request purports to ask for information subject to the principles of consular nonreviewability, and discovery of which is precluded by the Court's orders of February 4, 2019 and June 5, 2020. *See Emami*, ECF Nos. 74 and 150; *Pars*, ECF No. 152.

**REQUEST NO. 7:**

All guidance on how consular officers should interpret the findings of interagency vetting and screening information when assessing an individual's eligibility for a visa and waiver under Proclamation 9645 as referenced in the Deposition of Joel Nantais ("Nantais Dep.") at 147:2-8.

**ANSWER:**

This information has already been fully provided in Defendants' complete certified administrative record, *see* ECF No. 98-1; *Pars*, ECF No. 120-1, and the Court has not yet ruled on the privilege assertions.

**REQUEST NO. 8:**

All correspondence to and from consular posts to countries-of-concern-inquiries@state.gov regarding waiver assessments pursuant to Proclamation 9645.

**ANSWER:**

Defendants object to Request No. 8 as it is vague and overbroad and does not go to Plaintiffs' APA or *Accardi* claims. Plaintiffs disregard the fact that the countries-of-concern-inquiries@state.gov mailbox contains emails unrelated to the waiver process or the Proclamation more generally, as well as the fact that the State Department would have to manually review every email record sent to the mailbox to cull those emails that do pertain to the limited claims presented in these cases. *See Emami*, ECF No. 150-1, at 43. Accordingly, the request is impracticable, unduly burdensome, and lacking in proportionality and relevance. To the extent that the information sought goes beyond information already publicly available, the request

would likely be precluded by the statutory prohibition on the disclosure of "records . . . pertaining to the issuance or refusal or visas or permits to enter the United States[.]" 8 U.S.C. § 1202(f). The request also seeks disclosure of information that may be protected by privileges including law enforcement privilege, deliberative process privilege, and attorney-client privilege, and may be classified or highly sensitive and confidential or barred from disclosure by the Privacy Act. Additionally, the request purports to ask for information subject to the principles of consular nonreviewability, and discovery of which is precluded by the Court's orders of February 4, 2019 and June 5, 2019. *See Emami*, ECF Nos. 74 and 150; *Pars*, ECF No. 152. Responsive information that may be produced has already been released in FOIA and can be searched here: https://foia.state.gov/Search/Results.aspx?searchText=countries-of-concern-inquiries@state.gov&beginDate=20171208&endDate=&publishedBeginDate=20171208&publishedEndDate=&caseNumber=.

**REQUEST NO. 9:**

Interagency reports regarding data on issuance, refusals, and nationality of applicants created by the Visa Office prior to the Quarterly Report as referenced in Nantais Dep. at 67:6-68:18.

**ANSWER:**

Defendants object to providing this information as it does not go to the APA or *Accardi* claims, as framed by the Court. The request is vague and overly broad. The Department of State has chosen to publish other statistical reports on the Proclamation and various general reports (e.g., Annual Reports of the Visa Office), all of which are publicly available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/presidential-proclamation9645.html.

DATED: July 17, 2020

AUGUST E. FLENTJE
Special Counsel

SAMUEL P. GO
Assistant Director

*s/ David Kim*
DAVID KIM
P. ANGEL MARTINEZ
NICOLE GRANT
Trial Attorneys
U.S. Department of Justice

DEFENDANTS' RESPONSE TO
PLAINTIFFS' THIRD SET OF
REQUESTS FOR PRODUCTION

13

Case Nos. 3:18-cv-01587-JD
3:18-cv-07818-JD