**MUSLIM ADVOCATES**
MATTHEW CALLAHAN (307782)
P.O. Box 34440
Washington, DC 20043
Telephone: (202) 897-1892
Facsimile: (202) 508-1007

**LOTFI LEGAL, LLC**
SHABNAM LOTFI (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)
P.O. Box 64
Madison, WI 53701
Telephone: (608) 259-6226
Facsimile: (208) 977-9974
shabnam@lotfilegal.com
veronica@lofitlegal.com

**MAYER BROWN LLP**
ERIC B. EVANS (Bar No. 232476)
3000 El Camino Real
Two Palo Alto Square, Ste. 300
Palo Alto, CA 94306
Telephone: (650) 331-2063
Facsimile: (650) 331-4563
eevans@mayerbrown.com

*Attorneys for Emami Plaintiffs*

**NATIONAL IMMIGRATION LAW CENTER**
MAX S. WOLSON (pro hac vice)
P.O. Box 34573
Washington, DC 20043
Telephone: (202) 216-0261
Facsimile: (202) 216-0266

**ARNOLD & PORTER KAYE SCHOLER LLP**
JOHN A. FREEDMAN (pro hac vice)
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

**ARNOLD & PORTER KAYE SCHOLER LLP**
DANIEL B. ASIMOW (SBN 165661)
Three Embarcadero Center,10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

**ASIAN AMERICANS ADVANCING JUSTICE-ASIAN LAW CAUCUS**
HAMMAD ALAM  (SBN 284186)
55 Columbus Ave.
San Francisco, CA  94111
Telephone:     (415) 848-7711

**IRANIAN AMERICAN BAR ASSOCIATION**
ELICA S. VAFAIE (CA SBN 284186)
BABAK G. YOUSEFZADEH (CA SBN 235974)
5185 MacArthur Blvd. NW, Suite 624
Washington, DC  20016
Telephone:     (415) 774-3191

**COUNCIL ON AMERICAN-ISLAMIC RELATIONS, CALIFORNIA**
ZAHRA A. BILLOO (SBN 267634)
BRITTNEY REZAEI (SBN 309567)
3160 De La Cruz Blvd., Suite 110
Santa Clara, CA  95054
Telephone:    (408) 986-9874
Facsimile:      (408) 986-9875

*Attorneys for Pars Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO

PARS EQUALITY CENTER, et al.,

      Plaintiffs,

v.

WILLIAM BURNS, et al.,

      Defendants.

PARS EQUALITY CENTER, *et al.*,

      *and*

FARANGIS EMAMI, *et al.*,

      Plaintiffs,

v.

ALEJANDRO MAYORKAS *et al.*,

      Defendants.

Case Nos. 3:18-cv-07818-JD
          3:18-cv-1587-JD

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO LIFT STAY**

| | |
|---|---|
| Hearing: | September 2, 2021, 10:00 a.m. |
| Place: | San Francisco U.S. Courthouse, Courtroom 11, 19th Floor |
| Judge: | Hon. James Donato |

## NOTICE OF MOTION TO LIFT STAY

PLEASE TAKE NOTICE that on September 2, at 10:00am, before the Honorable James Donato of the United States District Court for the Northern District of California, in Courtroom 11 of the 19th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will move this Court to lift the stay in this case.

The basis for this request is set forth more fully in the following Motion to Lift Stay.

# INTRODUCTION

Plaintiffs request that this Court lift the stay of this matter for purposes of filing Plaintiffs' motion for summary judgment.  Initially, Defendants agreed to join in that motion, indicating that they intended thereafter to file a motion dismiss.  Incredibly, after two weeks of further unwarranted delay, Defendants withdrew their consent.

Defendants did so reiterating their frivolous belief that this matter is moot, but indicating that they would wait for two months for a status conference in this case and then orally move the Court to declare the case moot.  Put another way, Defendants contend that this Court has no jurisdiction to handle this case yet intend to let it sit on the Court's docket, subject to this Court's stay order, for as long as the Court will allow, rather than engage in substantive briefing to make that claim.  Defendants' decision is consistent with their only legal strategy evinced during this litigation—unethically delaying the proceedings and disregarding fundamental rules of practice and procedure, resting assured that every day that this case avoids a ruling on the merits is a day that Defendants have successfully continued to harm tens of thousands of individuals, including named and organizational plaintiffs.  While the Muslim Ban has been rescinded, its harms, and Defendants' commitment to continuing its harms, remain in effect.

Plaintiffs now move this Court to put an end to Defendants' desired delay and to lift the stay so that Plaintiffs can expeditiously seek judgment that entitles Plaintiffs to the full relief sought in this action.  Whether in the course of that briefing, or by separate motion, Defendants would likewise be able to assert their dispositive claim in writing.

# BACKGROUND

Since 2018, Plaintiffs have been litigating the instant challenges to Defendants' unlawful rulemaking when Defendants implemented the waiver provision of Presidential Proclamation 9645.  Proclamation 9645, which the current Administration rightfully acknowledges to have been a Muslim Ban, foreclosed entry into the United States by nationals of several majority-Muslim countries.  The Muslim Ban contained a so-called "waiver" provision, however, potentially providing that otherwise-banned individuals may enter the country if they established

three factors: that their entry was in the national interest, that they would face undue hardship if not permitted to travel, and that their interest would not be contrary to national security concerns.

Defendants implemented the Muslim Ban waiver provision by promulgating rules, including amendments to the Foreign Affairs Manual, as well as interstitial directives, presentations, and policies.  Although these promulgated rules directly and conclusively shaped the outcome of waiver decisions, Defendants did not engage in notice and comment rulemaking before promulgating them.  Likewise, Defendants' rules contained multiple facially irrational provisions, for which the Administrative Record Defendants have provided in this litigation affords no justification, rendering the rules arbitrary and capricious.  Unsurprisingly, these arbitrarily established rules resulted in the denial of waivers for over 40,000 persons from majority-Muslim countries seeking visas (including Plaintiffs) and were characterized by incredibly low waiver grant rates, remaining as low as single-digit percentages in June of 2019,[1] and never improving beyond approximately two denials for every one waiver issued.[2]

On January 20, 2021, President Biden rescinded the Muslim Ban, calling it "a stain on our national conscience[,] . . . inconsistent with our long history of welcoming people of all faiths and no faith at all."[3]  As part of that rescission, President Biden directed Defendants to conduct a 45-day review to ascertain how to ameliorate the harms the Muslim Ban inflicted upon tens of thousands of visa applicants, as well as their families, employers, and communities, prior to the rescission.[4]

---

[1] Department of State Report, Implementation of Proclamation 9645 December 8, 2017 to June 30, 2019 (2019), https://travel.state.gov/content/dam/visas/presidentialproclamation/Quarterly-Report-of-Implementation-of-Presidential-Proclamation-9645_June_2019.pdf ("The data below reflect that . . . approximately six percent of subject applicants hav[e] been issued a visa pursuant to the waiver process as of June 30, 2019.")

[2] In total, Defendants reported considering 66,626 waivers for applicants, granting only 37% (24,750).  *See* Department of State Report, Implementation of Presidential Proclamations (P.P.) 9645 and 9983 December 8 2018 to January 20, 2021 at 3 (2021) https://travel.state.gov/content/dam/visas/presidentialproclamation/PP-9645_Montly-Public-Reporting-January%202021.pdf.

[3] Proclamation No. 10141, 86 Fed. Reg. 14 (Jan. 20, 2021) https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-ending-discriminatory-bans-on-entry-to-the-united-states/.

[4] *See id.* § 2(b) (establishing parameters of 45-day review).

Plaintiffs hoped that the 45-day review would resolve this matter by providing relief to all harmed individuals.  In light of that hope, the Court *sua sponte* stayed this matter on March 23, 2021, terminated several pending discovery motions, and administratively closed this case.[5]  The Court has scheduled a status hearing in this matter for September 2, 2021, by which time the case will have been stayed for over five months.[6]

Plaintiffs' hopes proved entirely misplaced.  Following the 45-day review, Defendants determined that only some of the people harmed by the Muslim Ban would be entitled to recourse.  Specifically, Defendants have declared that only those immigrant visa applicants who were denied pursuant to the Muslim Ban *after* January 20, 2020, would be permitted to seek reconsideration of their original applications, and that they would not be required to pay fees to do so.[7]

On June 7, 2021, the parties submitted a joint status report.[8]  Therein, Defendants noted that multiple individual plaintiffs remain who were denied waivers while the Muslim Ban and its unlawful waiver guidance were in place and who, on the face of Defendants' status report, have no prospect of change in those denials.[9]  Despite expressly identifying plaintiffs who are still harmed by the challenged policymaking, Defendants continued their pattern of suggesting mootness in status reports while declining to take any action to affirmatively move this Court to dismiss the case, which would of course necessitate Defendants fully briefing their claim and Plaintiffs having a proper brief in opposition to respond.

Defendants have offered nothing whatsoever to address the still-extant harms inflicted upon the thousands of immigrant visa applicants who were denied visas between January 27, 2017, and January 20, 2020.[10]  Defendants have offered nothing whatsoever to the over-25,000

---

[5] *Emami* ECF No. 176.

[6] *Emami* ECF No. 180.

[7] Press Statement, Ned Price, Department Spokesperson, Department of State (March 8, 2021) DOS Statement, https://www.state.gov/the-departments-45-day-review-following-the-revocation-of-proclamations-9645-and-9983/.

[8] *Emami* ECF No. 179.

[9] *Id.* at 10-11.

[10] As of January 2021, 13,609 applicants denied immigrant visas under the Ban received those denials in the three years preceding January 20, 2020, and are thus ineligible for reconsideration.

nonimmigrant visa applicants who were denied waivers, and therefore denied their visas, since the Muslim Ban went into effect.[11]  The circumstances of those unassisted categories remain exactly today as they did prior to President Biden's inauguration: they remain separated from family, friends, and opportunities, and those separations would not be ongoing but for being denied waivers pursuant to Defendants' unlawful rulemaking.

Plaintiffs in this case include individuals, and an organizational client who represents individuals, who fall into that still-equally-harmed category.  Numerous members of the proposed class likewise fall into those categories.  Absent relief from this Court, multiple named Plaintiffs, an organizational client, and numerous members of the proposed class will continue to live out the repercussions of Defendants' unlawful rulemaking notwithstanding the end of the Muslim Ban.

Defendants have repeatedly attempted to mislead this Court into dismissing this matter as moot, yet have also entirely refused to file a motion to dismiss on that basis.  Specifically, Defendants have repeatedly asserted that the Muslim Ban's rescission ameliorates all of the harms of the Ban's years-long existence, despite acknowledging that pre-rescission visa denials remain effective for individual Plaintiffs.  Defendants' logic in doing so is absurd, requiring the Court to don blinders and ignore the 40,000 people still actively harmed by virtue of Defendants' prior arbitrary and capricious policies.

Previously, Defendants produced what they stated was the full and complete Administrative Record in this matter.  Despite claiming its completeness, the Administrative Record plainly offers no support for Defendants' unlawful rulemaking decisions, and Plaintiffs now intend to seek summary judgment based on Defendants' certified record.

---

*See supra* n.2 at 3 (noting number of immigrant visa applicants "Not Qualified for Waiver, Ineligible under P.P. 9645/P.P. 9983).  Defendants have never complied with class discovery obligations and have provided no recent information, so it is unclear what portion of those 13,609 denials preceded the January 20, 2020 cutoff Defendants have set for reconsideration eligibility.

[11] *See id.* (noting 28,267 nonimmigrant visa applicants "Not Qualified for Waiver, Ineligible under P.P. 9645/P.P. 9983).

Subsequent to the June 7, 2021, Joint Status Report, the Court set a status conference in this matter for September 2, 2021.  While Plaintiffs maintain that Defendants' compliance with their discovery obligations has been woefully deficient and improper, Plaintiffs are prepared to move forward on several of their claims that require no further discovery to rule in Plaintiffs' favor.  To that effect, on June 21, 2021, Plaintiffs indicated to Defendants that they desired to file a motion to lift the stay in this matter and to file a motion for summary judgment timed such that the motion would be ready for hearing, in accordance with this Court's local rules, at that September 2, 2021 status conference.[12]  Plaintiffs noted that, in the course of that briefing, Defendants would be able to properly brief their mootness claims, enabling the Court to efficiently rule on dual claims of entitlement to full and final disposition of this case.

On June 24, Defendants responded, agreeing to move to lift the stay in this matter and indicating their intent to move this Court to dismiss this matter as moot.[13]  Defendants' response left certain confusion as to the form of dispositive briefing, leading Plaintiffs to seek clarification only eight minutes later.[14]  Specifically, though Defendants' response made clear their consent to lift the stay, their message made it unclear whether they desired to separately brief a motion to dismiss, or whether they desired to do so in the course of briefing on Plaintiffs' forthcoming motion.

Defendants waited a full week to respond to Plaintiffs' near-immediate request for clarification.  In that week-delayed response, Defendants requested additional time to "confer[] internally" and provide a "comprehensive response[.]"  Defendants made no indication of an intent to change their consent to lifting the stay.[15]

Incredibly, on July 7—17 days after Plaintiffs first sought Defendants' consent and 14 days after Defendants consented to lifting the stay—Defendants withdrew their consent. Defendants again contended that the case is moot.[16]  Rather than use the time preceding the status conference to move the Court to declare as such, Defendants noted they would instead

---

[12] Ex A at 4-5.
[13] *Id.* at 3-4.
[14] *Id.* at 2-3.
[15] *Id.* at 1-2.
[16] *Id.* at 1.

orally seek dismissal during the status conference in this matter.  By September 2, 225 days will have passed since Defendants claim this matter became moot, with none of those 225 days having included a proper motion to dismiss from Defendants asserting that claim.  Meritorious claims of mootness do not sit for hundreds of days.

In light of the above, Plaintiffs file this motion, which was delayed nearly three weeks by Defendants' vacillation.  Plaintiffs will be prepared to expeditiously file their motion for summary judgment, either as a proposed supplement to this motion or as a proper motion following the stay lifting, prior to the current September 2, 2021 hearing date.

## ARGUMENT

The stay in this matter should be lifted because it prolongs harms to Plaintiffs, promises to be of indefinite duration, and precludes efficient resolution of this litigation.  Just as the Court has the power to impose stays of litigation, so too does the Court have the equivalent power and discretion to lift a stay.[17]  In determining whether a case should be stayed, the Ninth Circuit requires that a court weigh "the competing interests which will be affected by the granting or refusal to grant a stay[.]"[18]  In so doing, the court considers: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[19]  Here, each of these factors requires dissolving the stay.

**A. Plaintiffs are now, and will continue to be, harmed by the Stay**

A stay must generally be imposed for only a limited and identifiable duration; indefinite stays require greater justification.[20]  The potential that a case may in some indeterminate time be

---

[17] *See, e.g., Thomas v. Home Depot USA Inc.*, No. C06-02705 MJJ, 2007 WL 2140917, at *1 (N.D. Cal. July 25, 2007).

[18] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

[19] *Id.*

[20] *See Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it.")

mooted does not justify an indefinite stay.[21]  Nor does rescission of a policy mean that harms from the policy must have ceased.[22]

In implementing the Muslim Ban's waiver provisions, Defendants engaged in unlawful rulemaking, contravening both the APA's notice and comment requirements and the prohibition on arbitrary and capricious decision-making.  For example, Defendants promulgated guidance that directed that individuals living in war or conflict zones (as many Yemeni visa applicants did and do) did not establish that a visa applicant faced an "undue hardship," one of the requirements to obtain a waiver.  Defendants did not solicit input on this cruel and facially irrational rule and offered no contemporaneous reasoning for the same.  That unlawful rule, and the numerous additional unlawful provisions which Defendants promulgated for the waiver program, had direct consequences—tens of thousands of individuals, including individual Plaintiffs and organizational Plaintiff's clients, were separated from families, employment, and opportunities despite being plainly within the circumstances described on the face of the Muslim Ban's waiver provision.

---

[21] *See*, *e.g.*, *Ariz. Yage Assembly v. Barr*, 3:20-cv-3098-WHO, 2020 WL 5629833, at *7 (N.D. Cal. 2020) (denying stay despite purported impending relevant regulations in part because "the timeframe [wa]s too indeterminate").

[22]  Plaintiffs do not attempt to litigate the entirety of mootness herein given Plaintiffs' continued stance that the appropriate way for Defendants to meet their burden in a dispositive argument is through actually filing a motion and not through asides in status reports or stay arguments. Nonetheless, the reality that harms can outlast an unlawful policy shows why the stay is likewise harmful.  *See*, *e.g.*, *Vineyard v. Hollister Elementary School Dist.*, 64 F.R.D. 580, 584 (N.D. Cal. 1974) (holding that rescission of discriminatory maternity leave policy did not moot challenge where, *inter alia*, school board "still did not see fit to treat plaintiff equally with other employees" following rescission); *see also Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (rejecting mootness where union issued refund notice of fees at issue in case because even though plaintiffs did not seek prospective relief, the validity of the refund notice itself remained at issue); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007) (rejecting mootness for damage claims arising out of repealed ordinance); *Ellis v. Campbell*, No. CIV S-05-0316 FCD DAD P, 2007 WL 2009802, at *1 (E. D. Cal. July 6, 2007) (noting that occurrence of a subsequent parole hearing does not moot challenge to earlier parole denial). *See*, *e.g.*, *Citizens for Clean Energy v. U.S. Dep't of Interior*, No. 4:17-cv-00030-BMM, 2021 US Dist. LEXIS 104560 (D. Mont. June 3, 2021) (declining to stay case where challenged policy had been rescinded but ongoing harms from prior policy remained possible).

---

The Administration's rescission of the Muslim Ban provides relief to only a very limited subset of the tens of thousands of already-impacted individuals: those who were both immigrant visa applicants and who had been denied after January 20, 2020.   Defendants have identified *nothing* that they have done or will do for the thousands of immigrant visa applicants denied prior to January 20, 2020.  Defendants have identified *nothing* that they have done or will do for any nonimmigrant visa applicants denied under the Muslim Ban, who number in the tens of thousands.  Defendants have provided *no reason whatsoever* to expect that those broad categories of people—categories which include several individual Plaintiffs and clients of organizational Plaintiff—will see any change in their circumstances by dint of the Ban's rescission.  **As long as Defendants' unlawful rulemaking remains a but-for cause of people being unable to travel to and enter the United States, a live controversy exists.**  Defendants have provided no reason to believe that those individuals who remain harmed will see their circumstances changed.  To the extent that some speculative possibility exists—and Plaintiffs are aware of no such possibility—the support for that speculation is not apparent and the timing is necessarily indeterminate.

Nor is the ability to reapply now that the Ban is gone a solution.  First, asking an immigrant visa applicant who was denied under the Muslim Ban to reapply effectively forces that individual to start the visa application process over again. They have to resubmit required documentation and fees; wait for background checks that, on their own, often result in years-long delays; and wait for an interview at embassies that are backlogged to the tune of hundreds of thousands of cases due to the pandemic—necessarily resulting in prolonged waits. This is a particularly unjust result for individuals who had already bided their required time, but whose time happened to fall during a period where unlawful and now-rescinded regulations applied.

Second, the process for reapplying will, for many applicants, be exceptionally costly and arduous.  Applications often require the assistance of counsel, obtaining expensive and/or difficult to obtain documents, and international travel to the nearest consular processing office.

Absent Defendants' readjudication of wrongfully denied applications without applying the unlawful guidance, people thus face a Hobbesian choice—remain separated from family

members in the United States due to denials wrought by the unlawful rulemaking, or remain separated due to potential years of delay while encountering a redux of expense and effort to submit a new application, post-rescission. All individuals not entitled to reconsideration—which include *all* nonimmigrant visa applicants and all immigrant visa applicants who were denied waivers and visas before January 20, 2020—thus remain harmed by the rescission.

Maintaining the stay prolongs the Plaintiff-harming status quo with no prospect of circumstances changing. Plaintiffs face no likelihood of obtaining alternate relief pending resumption of this matter, and thus remain indefinitely and unalterably separated from the people and opportunities they would have had but for Defendants' unlawful rulemaking. Lifting the stay and proceeding to summary judgment briefing is necessary to end those harms.

## B. Defendants face no hardship from dissolving the stay

In contrast to Plaintiffs, Defendants face no harms whatsoever from lifting the stay. Defendants could only wish to prolong the stay for two reasons: 1) because of a claim that Defendants are harmed by being required to litigate this case in the ordinary course; or 2) because some future, unforeseen policy-making process may moot additional Plaintiffs' claims. The former is not a cognizable harm in a stay analysis.[23] And the latter lacks even a modicum of definiteness—Defendants make no claim that there are forthcoming further actions to end harms to remaining Plaintiffs and the class at large.[24]

Lifting the stay and proceeding with briefing on Plaintiffs' summary judgment motions would give the Defendants the opportunity to litigate the argument (they have repeatedly made) that this suit is moot. Defendants are thus directly harmed by a stay—being required to continue to monitor, tend to, and argue a matter that Defendants contend is moot and fit for dismissal.

---

[23] *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity[.]" (internal citation and quotation omitted)).

[24] *See Ariz. Yage Assembly*, 2020 WL 5629833, at *7-8 (justifying stay rejection by noting "there [wa]s no guarantee that the plaintiffs' claims would be affected, let alone mooted, by the existence of new regulations"); *see also Washington v. U.S. Dep't of State*, No. C18-1115RSL, 2019 U.S. Dist. LEXIS 20123, at *3-4 (W.D. Wash. Feb. 7, 2019) (rejecting stay where "federal defendants failed to do anything more than baldly assert that the final rules would impact the outcome of th[e] case").

Defendants' erroneous belief that the matter is now moot can only justify lifting the stay and so moving, not continuing to let the case languish.

### C. Lifting the Stay and proceeding with Summary Judgment Briefing is the most efficient means to resolve this case

Proceeding with summary judgment briefing will result in an efficient resolution of this matter, unmatched by either postponing further proceedings or some speculative unannounced and unforeseen Defendant actions. Concluding that the waiver rules were enacted without the required notice and comment or that they were arbitrary and capricious rulemaking will effectively end this case, leaving only the question of class certification remaining. While Plaintiffs are confident that Defendants' mootness claims are neither factually nor legally correct, Defendants' belief to the contrary means Defendants also believe an expeditious conclusion is possible.

### CONCLUSION

In light of the aforementioned reasons, Plaintiffs respectfully request that this Court lift the stay in this matter to permit summary judgment briefing to proceed.

DATED:  July 13, 2021                    Respectfully submitted,

_/s/_ Shabnam Lotfi                           _/s/_ John A. Freedman
SHABNAM LOTFI (*pro hac vice*)                JOHN A. FREEDMAN (*pro hac vice*)
VERONICA SUSTIC (*pro hac vice*)              **ARNOLD & PORTER KAYE SCHOLER LLP**
**LOTFI LEGAL, LLC**                          601 Massachusetts Ave., NW
P.O. Box 64                                   Washington, DC  20001-3743
Madison, WI 53701

                                              MAX S. WOLSON (*pro hac vice*)
MATTHEW CALLAHAN (Bar No.,                    **NATIONAL IMMIGRATION LAW CENTER**
307782)                                       P.O. Box 34573
**MUSLIM ADVOCATES**                          Washington, D.C.  20043
P.O. Box 34440                                wolson@nilc.org
Washington, DC 20043
Telephone: (202) 897-1892
Facsimile: (202) 508-1007                     DANIEL B. ASIMOW (SBN 165661)
                                              **ARNOLD & PORTER KAYE SCHOLER LLP**
                                              Three Embarcadero Center, 10th Floor
                                              San Francisco, CA  94111

ERIC B. EVANS (Bar No. 232476)
**MAYER BROWN LLP**
3000 El Camino Real
Two Palo Alto Square, Suite 3000
Palo Alto, CA  94306

*Attorneys For Emami Plaintiffs*

ZAHRA A. BILLOO (SBN 267634)
BRITTNEY REZAEI (SBN 309567)
**COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, CALIFORNIA**
3160 De La Cruz Blvd., Suite 110
Santa Clara, CA  95054
Telephone:   (408) 986-9874
Facsimile:    (408) 986-9875
zbilloo@cair.com
brezaei@cair.com

HAMMAD ALAM  (SBN 284186)
**ASIAN AMERICANS ADVANCING
JUSTICE-ASIAN LAW CAUCUS**
55 Columbus Ave.
San Francisco, CA  94111
Telephone:   (415) 848-7711
hammada@advancingjustice-alc.org

ELICA S. VAFAIE (CA SBN 284186)
BABAK G. YOUSEFZADEH (CA SBN 235974)
**IRANIAN AMERICAN BAR ASSOCIATION**
5185 MacArthur Blvd. NW, Suite 624
Washington, DC  20016
Telephone:    (415) 774-3191
president@iaba.us

*Attorneys for Pars Plaintiffs*