BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation,
District Court Section
SAMUEL P. GO
Assistant Director
NICOLE GRANT
P. ANGEL MARTINEZ
Senior Litigation Counsel
DAVID KIM
Trial Attorney
    Ben Franklin Station, P.O. Box 878
    Washington, DC 20044
    Telephone: (202) 532-4094
    Email: David.Kim4@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PARS EQUALITY CENTER, *et al.*,<br>                    Plaintiffs,<br>          v.<br>MIKE POMPEO, *et al.*,<br>          Defendants.<br>          *and*<br>FARANGIS EMAMI, *et al.*,<br>          Plaintiffs,<br>          v.<br>CHAD F. WOLF, *et al.*,<br>          Defendants. | Case Nos.    18-cv-7818-JD<br>                      18-cv-1587-JD<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT**<br><br>Judge:        Hon. James Donato<br>Hearing Date:  June 9, 2022<br>Hearing Time: 10:00 a.m. |

1

## <u>TABLE OF CONTENTS</u>

2    I.    INTRODUCTION ...................................................................................1

3    II.    BACKGROUND ....................................................................................2

4         A.  Proclamation 9645 .....................................................................2

5         B.  Proclamation 10141 ...................................................................2

6         C.  Plaintiffs' Complaints ................................................................4

7         D.  The Court's Prior Orders ............................................................5

8         E.  Status of Plaintiffs' Visa Cases .................................................5

9              1.  *Emami* Plaintiffs ..........................................................5

10              2.  *Pars* Plaintiffs .............................................................6

11    III.    STANDARD OF REVIEW ...................................................................8

12         A.  The APA .....................................................................................8

13         B.  Rule 56 .......................................................................................8

14    IV.    ARGUMENT .......................................................................................9

15         A.  Plaintiffs' claims are moot because the President recinded Proclamation 9645............9

16         B.  Plaintiffs do not suffer any continuing harms from the Department's implemenation of the waiver provisions in Proclamation 9645. .........................................12

17

18         C.  The Court should deny summary judgment for Plaintiffs, where Proclamation 9645 has been resinded and Plaintiffs are not suffering from any lingering harms.  ..........15

19    V.    CONCLUSION......................................................................................16

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

i

# <u>TABLES OF AUTHORITIES</u>

*Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ................................................................................................. 5

*Ample Bright Dev., Ltd. v. Comis Int'l*,
  No. 11-cv-1329-MMM, 2012 WL 13008152 (C.D. Cal. June 4, 2012) ................. 17

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ................................................................................. 17

*Arab Am. C.R. League v. Trump*,
  399 F. Supp. 3d 717 (E.D. Mich. 2019) ................................................................. 11

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ................................................................................................... 9

*Barton* v. *Barr*,
  140 S. Ct. 1442 (2020) .............................................................................................. 5

*Camp v. Pitts*,
  411 U.S. 138 (1973) ................................................................................................. 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................... 17

*Corales v. Bennett*,
  567 F.3d 554 (9th Cir. 2009) ................................................................................. 17

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
  522 F.3d 925 (9th Cir. 2008) ................................................................................... 9

*Darchini v. Pompeo*,
  No. 19-1417-JVS, 2020 WL 3051089 (C.D. Cal. Mar. 18, 2020) ......................... 10

*Far Nw. Dev. Co. LLC v. Cmty. Ass'n Underwriters of Am. Inc.*,
  362 F. App'x 861 (9th Cir. 2010) ........................................................................... 17

*Farhat v. Hartford Life & Accident Ins. Co.*,
  439 F. Supp. 2d 957 (N.D. Cal. 2006) ..................................................................... 8

*Fence Creek Cattle Co. v. Forest Serv.*,
  602 F.3d 1125 (9th Cir. 2010) ................................................................................. 8

*Gjoci v. Dep't of State*,
  No. 21-cv-294-RCL, 2021 WL 3912143 (D.D.C. Sept. 1, 2021) ......................... 15

*Hamamoto v. Ige*,
  881 F.3d 719 (9th Cir. 2018) ................................................................................... 9

*Kavoosian v. Blinken*,
  No. 20-55325, 2021 WL 1226734 (9th Cir. 2021) ........................................... 9, 10

*Lands Council v. McNair*,
  537 F.3d 981 (9th Cir. 2008) ................................................................................... 8

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

ii

*League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen,*
　615 F.3d 1122 (9th Cir. 2010) ............................................................................ 8

*Lewis v. Cont'l Bank Corp.,*
　494 U.S. 472 (1990) ........................................................................................... 9

*Louhghalam v. Trump,*
　230 F. Supp. 3d 26 (D. Mass. 2017) ................................................................. 16

*Motaghedi v. Blinken,*
　No. 19-cv-01466-DAD, 2021 WL 1193873 (E.D. Cal. Mar. 30, 2021) ................. 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
　463 U.S. 29 (1983) ............................................................................................. 8

*Najafi v. Pompeo,*
　No. 19-cv-05782-KAW, 2020 WL 1067015 (N.D. Cal. Mar. 5, 2020) ................... 11

*Nw. Motorcycle Ass'n v. U.S. Dep't Agric.,*
　18 F.3d 1468 (9th Cir. 1994) ............................................................................. 8

*Occidental Eng'g Co. v. INS,*
　753 F.2d 766 (9th Cir. 1985) ............................................................................. 9

*Preiser v. Newkirk,*
　422 U.S. 395 (1975) ........................................................................................... 15

*Sierra Club v. Mainella,*
　459 F. Supp. 2d 76 (D.D.C. 2006) .................................................................... 8, 9

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.,*
　643 F.3d 701 (9th Cir. 2011) ............................................................................. 9

## STATUTES

5 U.S.C. § 702 ............................................................................................................ 8

5 U.S.C. § 704 ............................................................................................................ 8

5 U.S.C. § 706 ............................................................................................................ 8

5 U.S.C. § 706(2)(A) ................................................................................................... 8

5 U.S.C. § 706(2)(A)-(D) ............................................................................................. 4

8 U.S.C. § 1101(a)(3) .................................................................................................. 5

8 U.S.C. § 1154(a)(1)(I)(ii)(II) .................................................................................... 7

8 U.S.C. § 1182(a)(3)(B) ............................................................................................. 6

8 U.S.C. § 1201(d) ...................................................................................................... 13

8 U.S.C. § 1201(g) ...................................................................................................... 6

8 U.S.C. § 1351 ........................................................................................................... 13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

iii

28 U.S.C. § 1361 ..................................................................................................... 4

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 2, 11, 15

Fed. R. Civ. P. 12(h)(3) ............................................................................... 2, 11, 15

Fed. R. Civ. P. 56(a) .......................................................................................... 2

Fed. R. Civ. P. 41(a)(1) ...................................................................................... 11

Fed. R. Civ. P. 56(c) ............................................................................................ 8

## **REGULATIONS**

22 C.F.R. § 22.1 .................................................................................................. 12

22 C.F.R. § 41.102 .............................................................................................. 13

22 C.F.R. § 41.107 .............................................................................................. 13

22 C.F.R. § 42.81 ........................................................................................... 4, 12

22 C.F.R. § 42.71 ............................................................................................... 12

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

iv

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3            This litigation no longer presents a live controversy, as the waiver process implemented by

4    the U.S. Department of State ("Department") that is the sole subject of these lawsuits no longer

5    exists.  Almost five years ago, Plaintiffs raised a challenge to the implementation of the waiver

6    provisions in Presidential Proclamation 9645, *Enhancing Vetting Capabilities and Processes for*

7    *Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats*

8    ("Proclamation 9645").  82 Fed. Reg. 45161 (Sept. 24, 2017).  The Court allowed Plaintiffs' claims

9    to proceed in a limited way, repeatedly clarifying that these cases concern whether the Department

10   "has acted arbitrarily and unlawfully by disregarding its own procedures and rules in administering

11   the waiver program."  *See, e.g.*, *Emami*, Doc. No. 74 at 13-16.

12           However, on January 20, 2021, President Biden revoked Proclamation 9645.  He explained

13   that this proclamation, as well as a series of related executive orders, were "a stain on our national

14   conscience," "inconsistent with our long history of welcoming people of all faiths and no faith at

15   all," and "just plain wrong."  *See* Presidential Proclamation No. 10141, *Ending Discriminatory*

16   *Bans on Entry to the United States* ("Proclamation 10141"), 86 Fed. Reg. 7005 (Jan. 20, 2021).

17   The President directed the Department to take certain remedial steps for affected noncitizens.

18   Accordingly, the Department implemented Proclamation 10141, issuing procedures to redress the

19   impact of Proclamation 9645 on affected noncitizens—procedures that ousted the aforementioned

20   waiver process implemented under Proclamation 9645.  *See* U.S. Dep't of State Bureau of

21   Consular Affairs, *Rescission of Proclamations 9645 and 9983* ("Rescission of Proclamations 9645

22   and 9983") (Mar. 10, 2021).[1]  As a result of the Department's subsequent actions, Proclamation

23   9645 has no continuing effect. *See Emami*, Doc. No. 189; *Emami*, Doc. No. 191.  Thus, Plaintiffs'

24   claims—which all challenge the Department's implementation of Proclamation 9645—are moot.

25           Consequently, for these reasons further explained below, the Court should deny Plaintiffs'

26

27   [1]      *Available at* https://travel.state.gov/content/travel/en/News/visas-news/rescission-of-
28   presidential-proclamations-9645-and-9983.html (last visited May 12, 2022).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

motion for summary judgment and dismiss their claims as moot. *See* Fed. R. Civ. P. 12(b)(1), (h)(3); Fed. R. Civ. P. 56(a).

## II.     BACKGROUND

### A.     Proclamation 9645

On September 24, 2017, former President Trump issued Proclamation 9645, suspending the entry of nationals of several identified countries into the United States and directing that the Secretary of State ("Secretary") and Secretary of Homeland Security adopt guidance "addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *See* 82 Fed. Reg. 45161 §§ 2, 3.  The Department promulgated internal guidance and also provided public information on the waiver process.  *See Emami*, Doc. No. 42 at 2.  Between December 8, 2017, and December 31, 2020, consular officers issued 24,397 immigrant and nonimmigrant visas pursuant to waivers.  U.S. Dep't of State Bureau of Consular Affairs, *Presidential Proclamation 9645 and Presidential Proclamation 9983*.[2]

### B.     Proclamation 10141

On January 20, 2021, President Biden issued Proclamation 10141, revoking Proclamation 9645 and directing the resumption of visa case processing in a manner consistent with that revocation.  86 Fed. Reg. 7005; *see* Rescission of Presidential Proclamations 9645 and 9983. Regarding the abrogated waiver process, Proclamation 10141 states, at section 2, "Resumption of Visa Processing and Clearing the Backlog of Cases in Waiver Processing":

> a) The Secretary of State shall direct all Embassies and Consulates, consistent with applicable law and visa processing procedures, including any related to coronavirus disease 2019 (COVID-19),[3] to resume visa processing in a manner consistent with the revocation of the Executive Order and Proclamations specified in section 1 of

---

[2]     *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/presidential-proclamation9645.html?wcmmode= disabled (last visited May 12, 2022).

[3]     Proclamation 10141 did not revoke or otherwise change any laws, regulations, or executive orders dealing with COVID-19, including Presidential Proclamation 9992, which suspended the entry of Iranians to the United States.  *See* 86 Fed. Reg. 7005.  That proclamation, instead, was later revoked by Presidential Proclamation 10294, on October 25, 2021.  86 Fed. Reg. 59603, Advancing the Safe Resumption of Global Travel During the COVID-19 Pandemic.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

this proclamation.

b) Within 45 days of the date of this proclamation, the Secretary of State shall provide to the President a report that includes the following elements:

i. The number of visa applicants who were being considered for a waiver of restrictions under Proclamation 9645 or 9983 on the date of this proclamation and a plan for expeditiously adjudicating their pending visa applications.

ii. A proposal to ensure that individuals whose immigrant visa applications were denied on the basis of the suspension and restriction on entry imposed by Proclamation 9645 or 9983 may have their applications reconsidered. This proposal shall consider whether to reopen immigrant visa applications that were denied due to the suspension and restriction on entry imposed by Proclamation 9645 or 9983, whether it is necessary to charge an additional fee to process those visa applications, and development of a plan for the Department of State to expedite consideration of those visa applications.

iii. A plan to ensure that visa applicants are not prejudiced as a result of a previous visa denial due to the suspension and restriction on entry imposed by Proclamation 9645 or 9983 if they choose to re-apply for a visa.

86 Fed. Reg. 7005–06.

As a result, the Department implemented Proclamation 10141, issuing procedures and engaging in notice-and-comment rulemaking, where necessary to implement discretionary policy decisions, to redress the impact of Proclamation 9645:

Following the Department's review, **immigrant visa (IV) applicants** who were previously refused due to either P.P. 9645 or 9983 and were determined not to qualify for a waiver before January 20, 2020, may reapply for a visa by submitting a new visa application (DS-260) and paying a new visa application processing fee. In the alternative, IV applicants refused due to either P.P. 9645 or 9983 who were determined not to qualify for a waiver on or after January 20, 2020, may request their local embassy or consulate to reconsider their case within one year of the date of their waiver refusal without submitting a new application or paying a new visa application processing fee, consistent with Department regulations.  IV applicants who were refused due to either P.P. 9645 or 9983 and whose eligibility for a waiver was still being evaluated as of January 20, 2021, will continue to have their applications processed.  Embassies and consulates are prioritizing the adjudication of applications for those individuals who, as of January 20, 2021, were awaiting an outcome from the P.P. 9645/9983 waiver process.

**Nonimmigrant visa applicants** who were previously refused due to either P.P. 9645 or 9983 and did not qualify for a waiver will need to submit a new visa application (DS-160) and pay a new visa application processing fee if they wish to reapply for a visa.

Pursuant to President Biden's proclamation, **the Department can immediately process visa applications for individuals from the affected countries.**  Please note that the rescission of P.P.s 9645 and 9983 does not necessarily mean that your local U.S. embassy or consulate is able to immediately schedule all affected applicants for visa interviews.  The resumption of routine visa services during the

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

3

ongoing COVID-19 pandemic, prioritized after services to U.S. citizens, will occur on a post-by-post basis, consistent with the Department's guidance for safely returning our workforce to Department facilities.  U.S. Embassies and Consulates have continued to provide emergency and mission-critical visa services since the beginning of the COVID-19 pandemic and will continue to do so as they are able. Applicants, including those previously denied due to P.P. 9645 or 9983, should consult the website of their nearest U.S. embassy or consulate to determine if their case qualifies for expedited processing.  As post-specific conditions improve, our missions will begin providing additional services, culminating eventually in a complete resumption of routine visa services.

Rescission of Presidential Proclamations 9645 and 9983.[4]

## C.    Plaintiffs' Complaints

In related cases from 2018, Plaintiffs brought claims challenging the Department's implementation of the waiver provisions of Proclamation 9645.  *See Emami* 2d Am. Compl., Doc. No. 81-1; *Pars* Compl., Doc. No. 1.

*Emami* and *Pars* Plaintiffs raised similar claims: (1) a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(D), alleging the waiver process was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, *Emami* 2d Am. Compl. ¶¶ 311–18; *Pars* Compl. ¶¶ 278–87; (2) an *Accardi* claim, alleging Defendants failed to follow their own stated policy, *Emami* 2d Am. Compl. ¶¶ 311–18; *Pars* Compl. ¶¶ 288–94; and (3) a Fifth Amendment Due Process clause claim, alleging the waiver process violated their procedural due process rights, *Emami* 2d Am. Compl. ¶¶ 319–26; *Pars* Compl. ¶¶ 295–306.  In addition, *Emami* Plaintiffs raised a Fifth Amendment Equal Protection clause claim, alleging the waiver process discriminated against them on the basis of national origin and religion, *Emami* 2d Am. Compl. ¶¶ 327–32, and a claim under the Mandamus Act, 28 U.S.C. § 1361, alleging Defendants failed to develop meaningful guidance and a waiver process, *Emami* 2d Am. Compl. ¶¶ 333–39.  The *Pars* complaint also includes an allegation of a legal violation for lack of notice and comment.  *Pars* Compl. ¶ 69."

---

[4]    22 C.F.R. § 42.81(e) provides for reconsideration of a previously refused immigrant visa application and, if such reconsideration is sought within one year of the refusal, no new fees are required.  No similar provisions exists for nonimmigrant visa applications.

**D.     The Court's Prior Orders**

On February 4, 2019, the Court granted in part and denied in part Defendants' motion to dismiss, *Emami*, Doc. No. 42, explaining that Plaintiffs' claim for relief before the Court is whether the Department did in fact implement the waiver provisions in accordance with its own guidance, and it allowed Plaintiffs to amend their complaint.  *See Emami*, Doc. No. 74.  Specifically, the Court allowed Plaintiffs' claims to proceed in a limited way, as a challenge under *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), concerning whether the Department "has acted arbitrarily and unlawfully by disregarding its own procedures and rules in administering the waiver program."  *See Emami*, Doc. No. 74 at 13-16; *see also id.* at 16-19 (dismissing Plaintiffs' constitutional and mandamus claims); *Emami*, Doc. No. 85 at 9 (directing the parties to "consider the *Emami* order to be the baseline for both the complaint[s], what can and can't go forward in *Pars* . . .").  Since its February 4, 2019, order, the Court has reiterated that the core of the remaining claims is "whether the State Department has failed to abide by its own rules and procedures for the waiver program that was created pursuant to . . . Proclamation 9645."  *Emami*, Doc. No. 122 at 1; *accord Emami*, Doc. No. 152 at 1-2 ("The gravamen of the complaints is that the government created guidance for waivers which it has systematically ignored to deny the vast majority of waiver applications.").

**E.     Status of Plaintiffs' Visa Cases**

**1.     *Emami* Plaintiffs**

*Emami* Plaintiffs include (1) U.S. citizens and lawful permanent residents who filed immigrant petitions on behalf of noncitizen family members, (2) U.S. citizens and lawful permanent residents whose noncitizen family members applied for an immigrant or nonimmigrant visa, and (3) noncitizens who filed applications for immigrant or nonimmigrant visas which consular officers refused. *Emami* 2d. Am. Compl., Doc. No. 81-1 ¶¶ 11–12, 16–45, 95–302, 304.[5]

*Emami* involved 26 noncitizens, who sought either an immigrant or nonimmigrant visa.

---

[5]     This brief uses "noncitizen" as equivalent to the statutory term "alien."  *See Barton* v. *Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

5

Attach. A (Updated Status Chart for *Emami* and *Pars* Plaintiffs).  As of the date of this filing, consular officers have issued visas to 15 of them after finding them eligible: Najib Adi, Ismail Alghazali, Khalil Ali Nagi, Hezam Alarqaban, Abdurraouf Gseaa, Hooda Mehrabi Mohammadabadi, Mahdi Afshar Arjmand, Afrooz Kharazmi, Sudi Wardere, Malik Al Mathil, Najmeh Maharlouei, Soheil Vazehrad, Fathollah Tolou Beydokhti, Behnaz Malekghaeini, and Mohamad Hamami.[6]  *Id.*  Of the remaining 11 noncitizens, four applied for an immigrant visa, and the status of their visa cases is as follows:

- Abdirashid Ahmed Jama: Mr. Jama failed to appear for a scheduled re-interview on October 10, 2019, and he failed to respond to an inquiry, made on October 7, 2021, about rescheduling his appointment for an interview.  *Id.*

- Nastaran Haji Heydari: Per Ms. Heydari's request made on March 11, 2022, the U.S. Embassy in London accepted the transfer of her visa case.  The consular section in London contacted Ms. Heydari regarding next steps but she has not responded.  *Id.*

- Ehsan Heidaryan: Mr. Heidaryan's application was reconsidered pursuant to Proclamation 10141 and refused under 8 U.S.C. § 1201(g).  *Id.*

- Behnam Babalou: On April 27, 2021, a consular officer refused Mr. Babalou's visa application under 8 U.S.C. § 1182(a)(3)(B), and he has not sought reconsideration or made a new visa application.  *Id.*

Of the remaining seven noncitizens, all seven applied for nonimmigrant tourist visas; none of those seven have reapplied for tourist visas since Proclamation 9645 was rescinded and they would no longer need a waiver.  *Id.*

## 2.    *Pars* Plaintiffs

*Pars* Plaintiffs include (1) U.S. citizens and lawful permanent residents whose noncitizen family members applied for an immigrant or nonimmigrant visa, (2) noncitizens who filed

---

[6]    On October 30, 2019, Plaintiffs Atefehossadat Motavaliabyazani and Soheil Vazehrad, were found eligible for waivers by a consular officer and issued visas, moved to voluntarily dismiss their claims and to withdraw from the lawsuit.  *Emami* Doc. No. 132, Notice of Voluntary Dismissal at 2.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

6

applications for immigrant or nonimmigrant visas which consular officers refused; and (3) two organizations: Pars Equality Center, which asserts standing on behalf of itself and its clients, and OneAmerica, which asserts standing on behalf of itself.  *Pars* Compl. ¶¶ 16–42.

*Pars* involved 25 noncitizens, who applied for either an immigrant or nonimmigrant visa. Attach. A.  As of the date of this filing, consular officers have issued visas to 17 of them after finding them eligible: Amina Barre Ali, Sumayo Barre Ali, Abdullah Saddam Ahmed Saddam, Seyed Mostafa Azimi, Hood Yahya Abdulqader Hael Ghaleb, Mitra Hannani, Sanaz Mehrfar, Aliakbar Khadiri, Abbas Ebadat, Hamid Ebadat, Nehad Shamsan Taher Al Ammari, Donya Berimavandi, Hoda Safaei, Mahsa Sadat Kashani, Afshin Raghebi, Afasaneh Fatoorehchi, and Jane Doe #1.  *Id.*

Of the remaining eight, five had their visa applications refused by consular officers and Plaintiffs acknowledge their claims are moot.  *Emami*, Doc. No. 189 at 8–9.

Of the final three noncitizens, the status of their visa cases is as follows:

- Mohsen Zamani: Mr. Mohsen's eligibility to apply for a diversity visa expired at the end of Fiscal Year 2017.  Attach. A; *see* 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

- Alireza Dehghanzadeh: Ms. Dehghanzadeh applied for a nonimmigrant tourist visa, and she has not applied for another tourist visa.  Attach. A.

- Fakhrossadat Hosseini: Mr. Hosseini applied for a nonimmigrant tourist visa, and he has not applied for another tourist visa.  *Id.*

In addition, consular officers have found eligible and issued visas to most of the clients of the organization Pars Equality Center who were identified to undersigned counsel: Sanaz Mehrfar, Minoo Mostaan, Hoda Safaei, Mahsa Sadat Kashani, Mitra Hannani, Hamid Ebadat, Abbas Ebadat, Ebrahim Farajzadeh Deroee, and Aliakbar Khadiri.  *Emami*, Doc. No. 189 at 11–13.  While these individuals are not individually named plaintiffs in these suits, the adjudications of their visa applications underscore the regularity with which consular officers continue to process and consider visa applications.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

7

## III.   STANDARD OF REVIEW

### A.   The APA

The APA provides for judicial review of final agency actions. 5 U.S.C. §§ 702, 704. Courts may set aside a final agency action under the APA if that action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010). This is a deferential standard, whereby courts review an administrative decision to determine whether the agency "articulated a rational connection between the factual findings and its decision." *Fence Creek Cattle Co. v. Forest Serv.*, 602 F.3d 1125, 1132 (9th Cir. 2010). Under the "arbitrary and capricious" standard, the scope of review "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Farhat v. Hartford Life & Accident Ins. Co.*, 439 F. Supp. 2d 957, 966 (N.D. Cal. 2006) (holding that a court "cannot substitute" its judgment for the agency's when reviewing for abuse of discretion). Instead, a court's "proper role is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc).

The administrative record is the exclusive basis for the Court's review. *See id.* at 743-44 ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("[T]he focal point for judicial review should be the administrative record in existence, not some new record made initially in the reviewing court.").

### B.   Rule 56

Courts may resolve APA challenges by summary judgment. *See Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). Where, as here, a case involves APA review of a final agency action, "the standard set forth in [Federal Rule of Civil Procedure] 56(c) does not apply because of the limited role of a court in reviewing the administrative record." *Sierra*

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

8

*Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006); *see Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985) ("[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."). Instead, for such cases, summary judgment serves as the mechanism for deciding, as a matter of law, whether the challenged agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *See Sierra Club*, 459 F. Supp. 2d at 90.

## IV.   ARGUMENT

### A.   Plaintiffs' claims are moot because the President rescinded Proclamation 9645.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate," *id.*, not just when the complaint was filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (citation omitted). Thus, federal courts lack jurisdiction under Article III of the U.S. Constitution if a case is moot. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008). A case is moot "if there exists no present controversy as to which effective relief can be granted." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks and citation omitted).

Here, now that the President rescinded Proclamation 9645, Plaintiffs' complaints are moot—there is no longer an entry suspension for these individuals, and no longer a waiver process. *See Kavoosian v. Blinken*, No. 20-55325, 2021 WL 1226734 at *1 (9th Cir. 2021) ("Plaintiffs-Appellants' operative complaint seeks declaratory and injunctive relief regarding the enforcement of Presidential Proclamation 9645. . . . PP 9645 has since been revoked.  Accordingly, Plaintiffs-Appellants' appeal presents no active controversy as to which this court could grant relief." (citation omitted)).  Put simply, a live controversy has ceased to exist.

Indeed, every court to examine this issue has dismissed the challenge to the Department's implementation of the waiver provisions in Proclamation 9645 as moot.  In particular, the Ninth Circuit has concluded that this type of case—grounded on Proclamation 9645 and its waiver procedures—does not present an active controversy and should be dismissed for mootness.  *See Kavoosian*, 2021 WL 1226734, at *1.  In *Kavoosian*, the plaintiffs brought APA, due process, equal protection, and mandamus claims, alleging "patterns and policies [that caused] the withholding of waiver adjudications" under Proclamation 9645, as well as "secretly promulgated guidance on the waiver adjudication scheme." *Darchini v. Pompeo*, No. 19-1417-JVS, 2020 WL 3051089, at *1 (C.D. Cal. Mar. 18, 2020), *appeal dismissed sub nom.*, *Kavoosian v. Blinken*, No. 20-55325, 2021 WL 1226734 (9th Cir. Feb. 9, 2021).  On appeal, the Ninth Circuit reasoned that the plaintiffs' claims were moot because Proclamation 10141 "direct[ed] visa processing to resume in a manner similar to that which [the plaintiffs sought] in their operative complaint"— thus providing the same relief that Plaintiffs seek in these cases.  *Id.*

Similar cases in other district courts within the Ninth Circuit have also been dismissed on mootness grounds.  For example, in *Motaghedi v. Blinken*, the plaintiffs alleged the Government "unlawfully withheld adjudications of case-by-case waivers of [Proclamation] 9645." No. 19-cv-01466-DAD, 2021 WL 1193873, at *1 (E.D. Cal. Mar. 30, 2021).  The plaintiffs there argued that their claims were not moot even after the rescission of Proclamation 9645 because individuals whose visas had not been adjudicated were "suffering ongoing injury." *Id.*  The court, however, noted that the operative complaint—which, like Plaintiffs' complaints here, was filed before the revocation—failed to allege any facts that addressed the defendants' conduct since Proclamation 10141 was issued, "let alone suggest" that they were violating the new proclamation.  *Id.*  As a result, the court found it "difficult . . . to discern how it could possibly find that the operative complaint ha[d] not been rendered moot." *Id.*  After the court ordered the plaintiffs to show cause why their complaint should not be dismissed as moot, they moved for voluntary dismissal and the court closed the case. *See Motaghedi v. Blinken*, No. 19-cv-01466-DAD, Doc No. 94 (Apr. 20, 2021) (Attach. B); *id.*, Doc. No. 96 (Apr. 22, 2021) (Attach. B).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

10

1    Further, in a case nearly identical to this one, the plaintiffs in *Najafi v. Pompeo* alleged that

2    the Government was withholding adjudications of case-by-case waivers under Proclamation 9645,

3    and that it had "privately promulgated guidance on the waiver adjudication scheme that was

4    inconsistent with [Proclamation] 9645." No. 19-cv-05782 (KAW), 2020 WL 1067015, at *1 (N.D.

5    Cal. Mar. 5, 2020) (cleaned up).  But after the rescission of Proclamation 9645 and the *Kavoosian*

6    decision, the court issued an order in which it concluded that the plaintiffs challenged only how

7    Proclamation 9645 had been implemented, and that the case appeared to be moot because that

8    proclamation was revoked.  *Najafi v. Pompeo*, No. 19-cv-5782-KAW, Doc. No. 97 (N.D. Cal. Feb.

9    2, 2021) (Attach. C).  After the court ordered the plaintiffs to show cause, they filed a stipulation

10    of dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).  *Id.*, Doc. 98

11    (N.D. Cal. Feb. 17, 2021).

12    In addition to these developments in the Ninth Circuit, the Sixth Circuit likewise dismissed

13    a similar case involving Proclamation 9645 for mootness.  In *Arab Am. C.R. League v. Trump*,

14    individuals alleging an interest in the immigrant visa applications of their noncitizen immediate

15    relatives, along with a few organizational plaintiffs, claimed constitutional violations stemming

16    from Proclamation 9645, including that its "waiver process—which would exempt individuals

17    from the entry restrictions on a case-by-case basis—[was] a sham." 399 F. Supp. 3d 717, 722-724

18    (E.D. Mich. 2019), *motion to certify appeal granted*, No. 17-10310, 2019 WL 5684371 (E.D.

19    Mich. Nov. 1, 2019).   But on an interlocutory appeal of the district court's denial of the

20    Government's motion to dismiss, the Sixth Circuit concluded that "mootness preclude[d] [it] from

21    reviewing the merits of [the lower court's] order," and remanded the case with instructions to

22    dismiss the plaintiffs' claims.  *Arab Am. Civil Rights League, et al. v. Donald Trump*, et al., No.

23    19-2375, Doc. No. 56-2 (6th Cir. Feb 10, 2021) (citation omitted) (Attach. D).

24    For the foregoing reasons—principally, that the very agency action against which Plaintiffs

25    direct their complaints has been completely abrogated—the Court should dismiss Plaintiffs' claims

26    for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1), (h)(3).

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

**B.      Plaintiffs do not suffer any continuing harms from the Department's implementation of the waiver provisions in Proclamation 9645.**

Despite the Department's actions to rescind and to remediate the effects of the old proclamation, Plaintiffs argue that they suffer continuing harm from the waiver process.  Pls' Mem. of P. & A., Doc. No. 197 ("Pls' Mot."), at 1-2.  Plaintiffs are wrong.

The Department has clearly laid out the process under Proclamation 10141 by which consular officers are to reconsider immigrant visa applications previously refused under Proclamation 9645, as permitted by existing statutory and regulatory authorities.   Further, Plaintiffs who want to reapply for nonimmigrant tourist visas need only to take advantage of that defined process to apply for visas.

For instance, the four *Emami* Plaintiffs who applied for immigrant visas while Proclamation 9645 was in effect have not had to file new applications or pay new processing fees to be reconsidered: As the Department has explained and consistent with its regulations, an applicant is exempt from having to pay a second fee if the applicant was previously denied an immigrant visa, the sole ground of ineligibility was based on Proclamation 9645, and the applicant is applying again for an immigrant visa.  U.S. Dep't of State Bureau of Consular Affairs, *Immigrant Visa Fee Exemption for Applicants Previously Refused under Presidential Proclamation 9645 and 9983*.[7]   The Department "amended its regulations at 22 C.F.R. 22.1 and 42.71, governing immigrant visa (IV) fees," to provide for this exemption.[8]  *Id.*   Thus, the four immigrant visa applicants in these cases—Abdirashid Ahmed Jama, Nastaran Haji Heydari, Ehsan Heidaryan, and

---

[7]      *Available at* https://travel.state.gov/content/travel/en/News/visas-news/iv-fee-exemption-for-applicants-previously-refused-under-pps-9645-and-9983.html (last visited May 12, 2022).

[8]      As the Department's guidance explains, before the amendments to the regulations, 22 C.F.R. § 42.81(e) included a provision that an immigrant visa "applicant is not required to pay a new application fee when seeking reconsideration of a visa refusal within one year of the refusal date by providing additional evidence that overcomes the ineligibility on which the visa was denied."  Immigrant Visa Fee Exemption for Applicants Previously Refused under Presidential Proclamation 9645 and 9983.  Thus, applicants who were refused on or after January 20, 2020, are able to "benefit under that regulation and fee exemption, because they are presumed to have sought reconsideration of their prior refusals on January 20, 2021, when the President issued P.P. 10141." *Id.*  The Department engaged in rulemaking to provide relief from fees for reconsideration of immigrant visa applications that fell outside the existing authority.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

12

Behnam Babalou—cannot point to any part of the reconsideration process where consular officers have not given effect to the rescission of the Proclamation.  Instead, insofar as their visa applications might remain refused under grounds other than Proclamation 9645, that is because they failed to appear for a scheduled re-interview (Abdirashi Ahmed Jama), respond to consular information regarding how to schedule a new interview (Ehsan Heidaryan), reapply after being denied on grounds unrelated to Proclamation 9645 (Behnam Babalou), or transfer to a different U.S. Embassy than the one where the consular officer was undertaking the reconsideration of the application (Nastaran Haji Heydari).  They remain free to contact the U.S. Embassies or Consulates regarding their visa applications for further reconsideration.

The same goes for the remaining Plaintiffs who applied for nonimmigrant tourist visas. There are seven such individuals in *Emami* and two in *Pars*.  None of them, however, have taken the basic step of reapplying for a nonimmigrant visa.  The Department has made clear that "[n]onimmigrant visa applicants who were previously refused due to either [Proclamation 9645] and did not qualify for a waiver will need to submit a new visa application (DS-160) and pay a new visa application processing fee if they wish to reapply for a visa."  Rescission of Presidential Proclamations 9645 and 9983.  Plaintiffs object that "[t]his relief . . . does not purport to cover . . . nonimmigrant visa applicants denied visas" under Proclamation 9645, Pls' Mot. at 9, but they have not identified any statute or regulation that would allow consular officers to reconsider previously refused nonimmigrant visas.  Nor have they identified any provision that would exempt them from having to pay the fees required for a nonimmigrant visa application, 8 U.S.C. § 1351 and 22 C.F.R. § 41.107, appear in person for a consular interview, 22 C.F.R. § 41.102, or submit to a physical or mental examination if necessary in the consular officer's opinion, 8 U.S.C. § 1201(d).  Plaintiffs are unable to identify any source of existing law or regulation that would allow consular officers to reconsider refused tourist visa applications or waive tourist visa applications fees, unlike the regulations that allow for such reconsideration and fee waivers for immigrant visa applicants.

As to the nonimmigrant visa applicants, Plaintiffs also suggest that they face "substantial, logistical costs and hurdles" and "cannot, as a practical matter, get the visa interview appointments

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

13

. . . necessary to adjudicate [their] applications." Pls' Mot. at 9.  But those hurdles cannot be attributed to Proclamation 9645 or the waiver process that they challenge here.  All nine of the individuals who want to apply for nonimmigrant tourist visas are nationals of Iran, where the United States has not had a diplomatic presence for over four decades, so even if the Proclamation had never been issued they would have had to depart Iran and apply in a country where there is a U.S. Embassy or Consulate.  Further, the Department provides a tool that lists nonimmigrant visa appointment wait times for a given U.S. Embassy or Consulate.  *See* Visa Appointment Wait Times, *available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/wait-times.html# (last visited May 12, 2022).  Within the surrounding region, the appointment wait time for tourist visa applications in Dubai—where all nine individuals traveled in 2017 and 2018 to attend their prior visa interviews—is approximately three months.  *Id.*  The wait times in Muscat (in Oman) and Kuwait are even shorter, 14 and seven calendar days, respectively.  *Id.*  The wait times that can readily be found on the Department's website cast serious doubt on Plaintiffs' blanket assertion that it is practically impossible to secure an appointment slot. *See* Pls' Mot. at 9.  In short, while these nine individuals might prefer to apply for nonimmigrant tourist visas based on their situation from more than four years ago, they have not explained why they cannot apply for visas and have consular officers consider their eligibility now that Proclamation 9645 has been fully rescinded.  Plaintiffs' reference to the hardships posed by travel does not distinguish them from other individuals seeking short-term travel to the United States who must make take comparable steps to be considered for visas.

One of the identified nonimmigrant visa applicants here, Afasaneh Fatoorehchi, exemplifies this scenario.  Ms. Fatoorehchi was found eligible and issued a tourist visa when she applied in Dubai in 2017.  She was issued a three-month, single-entry tourist visa, which has since expired.[9]  She suffered no harm from the Proclamation and has not made a new visa application

---

[9]     Visa reciprocity for Iranian tourist visa applicants specifies that if the consular officer fins them eligible and issues them a visa, the visa may be issued for a maximum of only three months and for one single entry to the United States.  U.S. Dep't of State – Bureau of Consular Affairs, *Iran – Reciprocity Schedule*, available at https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/IranIslamicRepublicof.html (last

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

14

since.  She is in the same position as those Plaintiffs who were refused nonimmigrant visas under Proclamation 9645.  The law requires all of them to make new tourist visa applications if they still wish to travel to the United States.

In sum, while Plaintiffs may point to the fact that not all of them have received visas, these cases are moot, as Proclamation 9645 has been rescinded, and consular officers have reconsidered previously refused immigrant visa applications without requiring new applications or fees, even as they have acted on any applications filed by Plaintiffs who still desire to travel temporarily to the United States on nonimmigrant visas.  The Court, accordingly, should dismiss these cases for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1), (h)(3).

### C. The Court should deny summary judgment for Plaintiffs, where Proclamation 9645 has been rescinded and Plaintiffs are not suffering from any lingering harms.

In their motion, Plaintiffs address none of the facts or legal developments that render their claims moot, including that their challenge is solely to Proclamation 9645's waiver process—and not to the Department's implementation of Proclamation 10141—and that every one of them who has taken the requisite steps to be reconsidered has in fact been reconsidered, with most of them being found eligible for and issued visas, either before Proclamation 9645 was rescinded with a waiver or after when no waiver was necessary.  Instead, they advance arguments that fail to refute the conclusion that Proclamation 9645 has no further effect in their cases. Those arguments are addressed in turn below.

First, Plaintiffs claim that the implementation of Proclamation 9645's waiver provisions violated the APA.  Pls' Mot. at 12.  But Proclamation 9645 and its attendant waiver process no longer exist, and as that waiver process is the entire subject of these lawsuits, any decision by the Court on the lawfulness of its implementation would be strictly advisory.  *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395 (1975); *see also Gjoci v. Dep't of State*, No. 21-cv-294-RCL, 2021 WL

---

visited May 12, 2022).  Thus, if any of the tourist visa applicant Plaintiffs had been found eligible and issued tourist visas when they applied more than four years ago, those visas would have expired long ago, and they would have to reapply in any regard—putting them in the exact same position they are in now.

3912143 (D.D.C. Sept. 1, 2021); *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 33 (D. Mass. 2017) (finding plaintiffs' claims for injunctive relief moot in light of the President's clarification that the proclamation at issue did not apply to lawful permanent residents).

Second, Plaintiffs argue that agency guidance materials relating to Proclamation 9645, such as the Foreign Affairs Manual ("FAM") and cables, constituted a challengeable final agency action. Pls' Mot. at 13–15. That guidance, however, became defunct with the revocation of Proclamation 9645, and thus any ruling on that front would amount to an advisory opinion.

Third, Plaintiffs contend that the Department's waiver guidance required notice-and-comment rulemaking. Pls' Mot. at 16–20. But, again, the waiver process no longer exists, and whether or not notice-and-comment rulemaking was required for the Department to circulate its waiver guidance among consular personnel is moot.

Fourth, Plaintiffs argue that individual waiver decisions by consular officers were somehow arbitrary and capricious. Pls' Mot. at 20-23. Because the Proclamation and all of its waiver provisions are no longer in effect, Plaintiffs' argument is moot and this Court can provide nothing more than an advisory opinion on actions that were taken years ago.

Finally, Plaintiffs argue that their claims against Proclamation 9645's waiver process are not foreclosed by the doctrine of consular nonreviewability. Pls' Mot. at 24-25. The waiver process does not exist anymore, and thus this issue—like the others—is moot.

This Court should follow the Ninth Circuit and other district courts addressing similar claims challenging Proclamation 9645's waiver process and dismiss these cases because there is no live controversy with respect to the waiver-guidance issue here and Plaintiffs' complaints do not challenge Defendants' implementation of the new proclamation.

## V. CONCLUSION

For the foregoing reasons, these cases should be dismissed. Proclamation 9645 has been rescinded, and there is no live controversy over the defunct waiver process that is the sole concern of this litigation. There is no legal or factual basis on which Plaintiffs can continue to press their claims against a waiver process that no longer exists. Alternatively, for the reasons stated, Plaintiffs have not met their burden for summary judgment, despite having been on notice to come

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

16

1  forward with all of their evidence and arguments.  At the same time, Defendants are entitled to

2  summary judgment, including because Proclamation 9645 has no continuing effect on Plaintiffs.

3  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ("[D]istrict courts are widely acknowledged to

4  possess the power to enter summary judgments sua sponte so long as the losing party was no notice

5  that she had to come forward with all of her evidence."); *Corales v. Bennett*, 567 F.3d 554, 570

6  (9th Cir. 2009) ("[E]ven if Defendants had not explicitly moved for summary judgment on [all

7  claims], it is recognized that a district court has the authority to decide an issue on summary

8  judgment sua sponte, if the losing party was on notice to come forward with its evidence."); *Arce*

9  *v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) ("[T]he court must first give the parties notice and

10  time to respond, unless the party against which summary judgment is granted has already had a

11  "full and fair opportunity to ventilate the issues."); *Far Nw. Dev. Co. LLC v. Cmty. Ass'n*

12  *Underwriters of Am. Inc.*, 362 F. App'x 861, 863 (9th Cir. 2010) ("A sua sponte grant of summary

13  judgment was appropriate because the Association was able to fully present its arguments to the

14  court."); *see, e.g.*, *Ample Bright Dev., Ltd. v. Comis Int'l*, No. 11-cv-1329-MMM, 2012 WL

15  13008152, at *5 (C.D. Cal. June 4, 2012) ("Although Ample Bright is the party seeking summary

16  judgment, the court has authority to enter summary judgment sua sponte for the nonmoving party,

17  so long as the moving party was on notice that it had to come forward with all of its evidence.").

18  The Court should therefore rule in the Government's favor.

19

20      Dated: May 12, 2022               Respectfully Submitted,

21                                        BRIAN BOYNTON

Principal Deputy Assistant Attorney General
Civil Division

23                                        WILLIAM C. PEACHEY

Director, Office of Immigration Litigation
District Court Section

25                                        SAMUEL P. GO

Assistant Director

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

17

1

2                                By:

NICOLE GRANT
P. ANGEL MARTINEZ
Senior Litigation Counsel
DAVID KIM
Trial Attorney
/s/ *David Kim*

Ben Franklin Station, P.O. Box 878
Washington, DC 20044
Tel.: (202) 532-4094
Email: David.Kim4@usdoj.gov

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DISMISSAL AS MOOT
Nos. 18-cv-7818-JD & 18-cv-1587-JD

18